UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,           :

vs.                                 :        19 Cr. 373 (PGG)

MICHAEL AVENATTI,                   :

            Defendant.              :
_____


**DEFENDANT AVENATTI'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO DISMISS INDICTMENT FOR
FAILURE TO STATE AN OFFENSE AND BECAUSE THE
<u>EXTORTION STATUTES ARE VAGUE-AS-APPLIED</u>**

Scott A. Srebnick
SCOTT A. SREBNICK, P.A.
201 South Biscayne Boulevard
Suite 1210
Miami, FL 33131
Telephone: (305) 285-9019
Facsimile:  (305) 377-9937
E-Mail:  Scott@srebnicklaw.com


Jose M. Quinon
JOSE M. QUINON, P.A.
2333 Brickell Avenue, Suite A-1
Miami, FL 33129
Telephone:  (305) 858-5700
Facsimile:  (305) 358-7848
E-Mail:  jquinon@quinonlaw.com

*Attorneys for Defendant Michael Avenatti*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

    I.     PRELIMINARY STATEMENT ........................................................... 1

    II.    LEGAL DISCUSSION ...................................................................... 1

        A.  Legal Standard on a Motion to Dismiss ............................................. 1

        B.  The Charges ...................................................................................... 2

        C.  Extortion: The Requirement of "Wrongfulness" ................................. 3

        D.  As a Matter of Law, The Conduct Alleged is not "Wrongful" ........................... 4

        E.  The Extortion Statutes are Vague as Applied ................................... 16

CONCLUSION ....................................................................................................... 17

CERTIFICATE OF SERVICE ................................................................................ 18

# TABLE OF AUTHORITIES

CASES:                                                                                    Page

*Barbaro v. United States*,
    No. 04-Civ-1500 (TPG), 2005 WL 991908, *3
    (S.D.N.Y. Apr. 27, 2005) ................................................................................................4

*Bouveng v. NYG Capital, LLC*,
    175 F.Supp.3d 280 (S.D.N.Y. 2016) .....................................................................9, 12

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ........................................................................................................6

*Kelly v. Schmidberger*,
    806 F.2d 44 (2d Cir. 1986) .............................................................................................6

*Kolender v. Lawson*,
    461 U.S. 352 (1983). ....................................................................................................16

*Officemax, Inc. v. Cinotti*,
    966 F.Supp.2d 74 (E.D.N.Y. 2013) ...........................................................................17

*Revson v. Cinque & Cinque, P.C.*,
    221 F.3d 71 (2d Cir. 2000) .............................................................................................8

*Susman v. Bank of Israel*,
    56 F.3d 450 (2d Cir. 1995) .............................................................................................9

*United States v. Albertson*,
    971 F.Supp. 837 (D.Del. 1997) .........................................................................4, 5, 6, 14

*United States v. Aleynikov*,
    676 F.3d 71 (2d Cir. 2012) .............................................................................................1

*United States v. Brunshtein*,
    344 F.3d 91 (2d Cir. 2003) ...........................................................................................16

*United States v. Clarke*,
    No. 05-Cr-17 (DAB), 2006 WL 3615111
    (S.D.N.Y. Dec. 7, 2006) .................................................................................................1

*United States v. Clemente*,
    640 F.2d 1069 (2d Cir. 1981) .................................................................................4, 5, 8

CASES:                                                                                    Page

*United States v. Coss*,
    677 F.3d 278 (6th Cir. 2012) ......................................................................................5

*United States v. Enmons*,
    410 U.S. 396 (1973) ..............................................................................................5, 13

*United States v. Hoskins*,
    73 F.Supp.3d 154 (D.Conn. 2014) ..........................................................................16

*United States v. Jackson,*
    180 F.3d 55 (2d Cir. 1999), *on reh'g*, 196 F.3d 383 (2d Cir. 1999) ................... passim

*United States v. Klos*,
    No. CR11-0233-PHX DGC. 2012 WL 4120413
    (D.Ariz. Sept. 19, 2012) ...........................................................................................8

*United States v. Kozminski*,
    487 U.S. 931 (1988) .................................................................................................13

*United States v. Milani*,
    739 F.Supp. 216 (S.D.N.Y. 1990) ...........................................................................16

*United States v. Pendergraft*,
    297 F.3d 1198 (11th Cir. 2002) ..................................................................... 5, 9, 10

*United States v. Rahman*,
    189 F.3d 88 (2d Cir. 1999) .......................................................................................16

*United States v. Sattar*,
    272 F.Supp.2d 348 (S.D.N.Y. 2003) ........................................................................16

*United States v. Stevens*,
    559 U.S. 460 (2010) ..............................................................................................6, 7

*United States v. Strauss*,
    999 F.2d 692 (2d Cir. 1993) .....................................................................................16

*United States v. Webster AV Management, LLC*,
    No. 16-cv-09913-PGG (S.D.N.Y.) ...........................................................................12

*Vermande v. Hyundai Motor America, Inc.*,
    352 F.Supp.2d 195 (D.Conn. 2004) .........................................................................13

CASES:                                                                                                    Page

*Viacom Intern. Inc. v. Icahn*,
    747 F.Supp. 205 (S.D.N.Y. 1990) .................................................................................14


STATUTES:

18 U.S.C. §371 ..........................................................................................................................2

18 U.S.C. §875 ................................................................................................................. passim

18 U.S.C. §1951 ............................................................................................................... passim


UNITED STATES CONSTITUTION:

AMEND I ......................................................................................................................... passim

AMEND V ...................................................................................................................1, 16, 17

Defendant Michael Avenatti, through counsel, and pursuant to Rule 12(b)(3)(B)(V) of the Federal Rules of Criminal Procedure and the Due Process Clause of the Fifth Amendment, respectfully submits this Memorandum of Law in support of his Motion to Dismiss Indictment for Failure to State an Offense and Because the Extortion Statues are Vague-as-Applied.

## I.      PRELIMINARY STATEMENT

This case involves the unprecedented prosecution of a civil plaintiff's lawyer for extortion for allegedly threatening, during agreed-upon settlement discussions, to publicly expose misconduct at a Fortune 100 company (Nike) unless the company settled claims that had a direct nexus to the misconduct.  The Indictment should be dismissed in its entirety for two interrelated reasons.  First, the Indictment fails to state an offense because the conduct, as alleged, is not "wrongful" under either 18 U.S.C. §875(d) or 18 U.S.C. §1951; instead, it describes conduct that is carved out from prosecution by prevailing extortion jurisprudence and protected by the First Amendment.  Second, the extortion statutes are vague-as-applied to Mr. Avenatti because they do not provide sufficient notice to an attorney that he/she may be prosecuted for threatening to truthfully expose misconduct directly related to his client's claims for legal and equitable relief.

## II.      LEGAL DISCUSSION

### A.      Legal Standard on a Motion to Dismiss

"[A] federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012).  When deciding a motion to dismiss an indictment for failure to state an offense, a district court is required to accept all factual allegations in the indictment as true. *United States v. Clarke*, No. 05-Cr-17 (DAB), 2006 WL 3615111, *1 (S.D.N.Y. Dec. 7, 2006).

B.    **The Charges**

The Indictment charges Mr. Avenatti in four counts with: conspiracy under §371 to violate 18 U.S.C. §875(d) (Count One), conspiracy to violate the Hobbs Act, 18 U.S.C. §1951 (Count Two), a substantive violation of §875(d) (Count Three), and attempted extortion under §1951 (Count Four).  The essence of the charges is that Mr. Avenatti engaged in a scheme to allegedly extort Nike by threatening to damage Nike's reputation and cause Nike economic harm if Nike did not agree to make multi-million dollar payments to Mr. Avenatti and CC-1, who were assisting Client-1 in an effort to settle his claims against Nike.

For purposes of this motion, Mr. Avenatti accepts as true the Indictment's allegations that he threatened and intended to cause reputational damage and serious economic harm to Nike by conducting a press conference to expose Nike's misconduct if Nike did not meet Mr. Avenatti's settlement demands.  The "Extortion Scheme" section of the Indictment details the evolution of the settlement discussions among Mr. Avenatti, CC-1 and Nike attorneys over the course of a three-day period from March 19-21, 2019.  *See* DE8:5-16, ¶¶12-18.  Initially, at a meeting on March 19, the alleged demand was for a payment of $1.5 million to Client-1 and hiring Mr. Avenatti and CC-1 to conduct an internal investigation or pay Mr. Avenatti and CC-1 at least twice the fees of any other firm hired.  *See* DE8:6, ¶12c.  During a telephone conference on March 20, the alleged demand was for $1.5 million for Client-1 and for Mr. Avenatti and CC-1 to be retained by Nike and be paid at least $10 million.  *See* DE8:9, ¶17b-d.  At a meeting on March 21, the alleged demand for the internal investigation was for a $12 million retainer with a minimum guarantee of $15 million and a maximum of $25 million unless the scope changed.  *See* DE8:11, ¶18a.  When the Nike attorney asked whether the

matter could be settled just by paying Client-1, rather than retaining Mr. Avenatti and CC-1, Mr. Avenatti proposed to settle the claims for $22.5 million.  *See* DE8:12, ¶18d.

For purposes of the analysis set forth below, however, it is significant what the Indictment does ***not*** allege.  It does not allege that Mr. Avenatti was threatening to publicly expose ***false*** information about Nike; it does not allege that Mr. Avenatti was threatening to disclose information that was ***unrelated to*** Client-1's claim against Nike; it does not allege that Client-1's claim was frivolous or even meritless; it does not allege that Mr. Avenatti did not intend to file a lawsuit on behalf of Client-1 to pursue the related claims if the matter did not settle; and it does not allege that the demand for an internal investigation was unrelated to Client-1's claims.

### C.    Extortion: The Requirement of "Wrongfulness"

Title 18, United States Code, Section 875(d) provides that

> Whoever, with ***intent to extort*** from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another … shall be fined under this title or imprisoned not more than two years, or both.

(Emphasis added).  Title 18, United States Code, Section §1951(a) provides that

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery ***or extortion*** or attempts or conspires so to do, … shall be fined under this title or imprisoned not more than twenty years, or both.

(Emphasis added).   The term "extortion" is defined in §1951(b)(2) as "the obtaining of property from another, with his consent, induced by ***wrongful*** use of actual or threatened force, violence, or fear, or under color of official right."  (Emphasis added).

All four counts of the Indictment require proof of "wrongfulness."  *See, generally, United States v. Clemente*, 640 F.2d 1069, 1077 (2d Cir. 1981) (discussing §1951); *United States v. Jackson,* 180 F.3d 55, 67-71 (2d Cir. 1999), *on reh'g*, 196 F.3d 383 (2d Cir. 1999) (concluding that although §875(d) does not define "extortion," the "intent to extort" element in §875(d) incorporates a "wrongfulness component" similar to §1951).  Accordingly, all four counts must be dismissed because the allegations, even as accepted as true, do not describe "wrongful" conduct under the law.

### D.    As a Matter of Law, The Conduct Alleged is not "Wrongful"

 "The Hobbs Act does not define 'wrongful;' instead, courts have been left to determine on a case-by-case basis whether the Hobbs Act extends to the conduct at issue." *United States v. Albertson*, 971 F.Supp. 837, 842-43 (D.Del. 1997).  Because the crime of extortion may be committed in multiple ways (violence, force, economic fear, color of official right), courts have had occasion to consider, and grapple with, the element of "wrongfulness" in various contexts.   In the classic extortion case, involving threatened ***force*** or ***violence***, the "wrongfulness" element is easy to analyze and apply because the law is clear that it is inherently wrongful to threaten force or violence as a means of collecting payment, even payment to which one might be entitled.  *See, e.g., Barbaro v. United States*, No. 04-Cv-1500 (TPG), 2005 WL 991908, *3 (S.D.N.Y. Apr. 27, 2005) ("Physical injury and violence are inherently wrongful and to threaten or use them in order to obtain property is what is made criminal under the Hobbs Act."); *see also Jackson*, 180 F.3d at 69 (noting that under the Hobbs Act definition of extortion, "the use of a threat can be wrongful because it causes the victim to

fear a harm that is itself wrongful, such as physical injury, or because the means is wrongful, such as violence.").[1]  After all, threats to use force and cause physical injury are *mala in se.*

In the context of a charge of extortion using ***economic*** fear (§1951) or reputational threats (§875(d)), however, the analysis becomes more complicated because "the line separating the legitimate economic threat from the wrongful (and hence extortionate) demand can be a fine one indeed."  *Albertson*, 971 F.Supp. at 843.  The lack of clarity stems from the fact that the use of ***economic*** fear or a threat to injure the reputation of another is not ***inherently wrongful***.  *Clemente*, 640 F.2d at 1077 ("It is obvious that the use of fear of financial injury is not inherently wrongful."); *Jackson*, 180 F.3d at 70 (observing that, "as we discussed in [*Clemente*], a threat to cause economic loss is not inherently wrongful").

Indeed, "the fear of economic loss is an 'animating force of our economic system, and, therefore, is not inherently wrongful."  *United States v. Pendergraft*, 297 F.3d 1198, 1206 (11th Cir. 2002) (citations omitted).  In the economic context, "[t]he law of extortion has always recognized the paradox that extortion often criminalizes the contemporaneous performance of otherwise independently lawful acts."  *United States v. Coss*, 677 F.3d 278, 285 (6th Cir. 2012).  Legal scholars have unsuccessfully "struggled to reconcile this paradox" by attempting to adduce a "principled explanation for the distinction between lawful bargaining and criminal extortion…"  *Id.*  Thus, "the precise contours of what does and does not constitute extortion remain undefined and often riddled with inconsistency and circularity in a variety of criminal

---

[1] Even in the violence context, there is an exception for violence used in labor disputes.  *See United States v. Enmons*, 410 U.S. 396, 401 (1973) (holding that the "use of force to achieve legitimate labor ends" was not punishable under the Hobbs Act to avoid the scenario where it might be applied to "[t]he worker who threw a punch on a picket line, or the striker who deflated the tires on his employer's truck…").

contexts." *Id*; *see also Albertson*, 971 F.Supp. at 849 ("Tying the law to the facts of each case necessitates judicial line-drawing.  All can agree that the Hobbs Act has been expanded to cover conduct beyond that contemplated by Congress in drafting the statute.  The question then becomes: what is the principled basis for drawing the line between legality and illegality? Further, is not a criminal defendant entitled to fair warning his conduct will transgress that line?"). The difficulty in defining the contours of "wrongful" extortion using economic fear stems from the risk that the statute will be applied to punish hard and lawful bargaining.

This case presents a prime example of that paradox.  Mr. Avenatti is being charged with a speech crime.  Every one of the acts of speech attributed to Mr. Avenatti in the Indictment was ***independently*** lawful and ***independently*** protected by the First Amendment.  He had the right to publicly expose truthful information about Nike's misconduct.[2]  He had the right to demand from Nike a settlement of his client's claims, as attorneys do across the country every day.  He had the right to demand a settlement on terms that may seem extraordinary to some, as is often the case when attorneys make opening settlement demands.  He had the right to demand attorney's fees for himself as part of the overall settlement of his client's claims.  And, Nike had no inherent right to be free from exposure of its own misconduct.

Thus, the relevant question is what ***combination*** of circumstances renders these independently lawful acts of protected speech – which include economic fear and threats to reputation -- "wrongful" under the extortion statutes, such that they are "integral to criminal

---

[2] By contrast, statements of ***false*** facts are not protected by the First Amendment.  *Kelly v. Schmidberger*, 806 F.2d 44, 47 (2d Cir. 1986) (citing *Gertz v. Robert Welch, Inc.,*, 418 U.S. 323, 339-340 (1974)); *United States v. Stevens*, 559 U.S. 460, 468 (2010) (listing the categories of speech whose prevention and punishment do not raise a constitutional problem: obscenity, defamation, fraud, incitement, and speech integral to criminal conduct).  There is no allegation that Mr. Avenatti was intending to expose untruthful information or defame Nike.

conduct" and not protected by the First Amendment. *Stevens*, 559 U.S. at 471. The case law provides some guidance but, in the end, lacks consistency. Yet, one proposition seems clear: there is a societal danger inherent in criminalizing threats to reputation, or the exploitation of fear, by attorneys pursuing settlements during agreed-upon settlement discussions. For that reason, the courts have crafted exceptions to the "wrongfulness" requirement, thereby exempting certain categories of economic fear inducing behavior from the reach of the extortion statutes as a matter of law.

At one end of the spectrum is the use of economic fear or threats to reputation to collect a debt that one is legitimately owed, justified by a plausible claim of right. Thus, a private club that threatens to publicize a list of members delinquent in their dues, and thus expose them to public shame and ridicule if the members do not promptly pay their outstanding account balances, ***does not commit extortion***. *See Jackson,* 180 F.3d at 67, 70-71. This is so, even though the club is threatening to injure the reputation of the members. Similarly, "the purchaser of an allegedly defective product may threaten to complain to a consumer protection agency or to bring suit in a public forum if the manufacturer does not make good on its warranty. ***Or she may threaten to enlist the aid of a television 'on-the-side-of-the-consumer' program***…We doubt that Congress intended §875(d) to criminalize acts such as these." *Id.* at 67 (emphasis added). To be sure, the Second Circuit in *Jackson* made it clear that it is not wrongful to threaten the reputation of another if the threatener has, or reasonably believes he/she has, a plausible claim of right, and the threatened disclosures have a nexus to that claim of right. *Id.* at 71.

At the other end of the spectrum are pure shakedowns with no plausible claim of right. So, when the "boss" at the New York waterfront demands regular cash payments from shipping

companies in exchange for having their cargo loaded and unloaded without interruption, that conduct is wrong. *Clemente*, 640 F.2d at 1078.  In that scenario, there is no claim of right at all -- payment is induced by the threat of calling a work stoppage unrelated to any bona fide labor dispute.  Or, as in *Jackson*, when an adult woman demands $40 million from a well-known comedian, the threat to publicly claim that she is his child born out of wedlock is wrongful because the woman has no possible legal claim, and the payment of that money would not be in settlement of any legal claim.  *Jackson, supra.*

At the "wrongful" end of the spectrum are also threats that have no nexus to the plausible claim, such that the demand for settlement is driven ***only*** by the threat of public exposure.  An example of this is "when a person seeks to collect a debt by threatening to reveal publicly the debtor's marital infidelity.  Because the marital infidelity has no nexus to the claimed debt, the threat to reveal it is wrongful."  *United States v. Klos*, No. CR11-0233-PHX DGC. 2012 WL 4120413, *2 (D.Ariz. Sept. 19, 2012).

Between the two ends of the spectrum, or perhaps in a category of their own, are cases involving litigation-related threats.  Courts have largely exempted such threats from the extortion statutes as a matter of law because, by its very nature, litigation is inherently threatening and poses a risk of economic loss to all parties.  Every day of the week, across the nation, in settlement discussions, mediation sessions, and plea negotiations, lawyers, including prosecutors, use fear and threats of harm and reputational damage, both overtly and more subtly, as leverage to settle civil cases and secure guilty pleas.  They often use hardball tactics and colorful language.  *See Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 80 (2d Cir. 2000) (vacating sanctions imposed on attorney who employed numerous tactics, including threatening to tarnish the reputation of the opposing party, rejecting claim that they were

"extortionate in nature" and noting that "[a]n attorney is entitled to warn the opposing party of his intention to assert colorable claims, as well as to speculate about the likely effect of those claims being brought."); *see also Susman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995) (vacating sanctions based, in part, on attorney's pre-lawsuit threats of adverse publicity and stating that "unless such measures are needed to protect the integrity of the judicial system or a criminal defendant's right to a fair trial, a court's steps to deter attorneys from, or to punish them for, speaking to the press have serious First Amendment implications.").  Further, they often make exorbitant demands for legal and equitable relief that they may or may not be able to obtain after a verdict but are acceptable within the context of settlement discussions.

In fact, while one might expect that a ***bad-faith*** threat to file ***a completely frivolous claim*** is "wrongful" under the extortion statutes, it is not.  The law accepts that using fear of economic injury by threatening litigation can never be punished as extortion because "a lawsuit filed by lawful means is not 'wrongful' as defined by the Hobbs Act, and courts would be wary of holding that the 'filing of a meritless lawsuit is … extortionate lest every unsuccessful lawsuit lead to an extortion claim and thus chill resort to the courts.'"  *Bouveng v. NYG Capital, LLC,* 175 F.Supp.3d 280, 320 (S.D.N.Y. 2016) (Gardephe, J.) (citations omitted).  Indeed, "even threats of meritless litigation or the actual pursuit of such litigation, have been held not to constitute acts of extortion…"  *Id.* (citation omitted).  Even beyond that, at least one court has held that when a party threatens frivolous litigation with ***false evidence*** against a potential defendant, the conduct is not "wrongful" under the extortion statutes because "under our system, parties are encouraged to resort to courts for the redress of wrongs and the enforcement of rights."  *Pendergraft*, 297 F.3d at 1206.  "We trust the courts, and their time-tested

9

procedures, to produce reliable results, separating validity from invalidity, honesty from dishonesty." *Id.*[3]

In light of this well-recognized carve-out for litigation threats, it plainly was acceptable (*i.e.,* not extortion) for Mr. Avenatti to threaten to file a lawsuit against Nike in the public record, exposing the very same misconduct he threatened to ***first*** make public in a press conference, if Nike did not satisfy the two components of his settlement demand. Indeed, had Mr. Avenatti threatened to engage in bad faith litigation of frivolous claims of misconduct against Nike for the ***sole purpose*** of embarrassing Nike in the public arena – which he did not -- the conduct would not be "wrongful" under extortion law. Therein lies the ultimate irony; under the government's theory, it was "wrongful" for Mr. Avenatti to threaten the release of ***truthful*** information about Nike's misconduct via a pre-lawsuit press conference but it would not have been "wrongful" for him to threaten the release of ***false*** information via a lawsuit followed by a press conference. That is not, and cannot be, the law. Where a client has a valid lawsuit that will become public, the merits of an extortion charge cannot turn on the sophistry of whether the lawsuit is followed by the press conference or vice versa.

As alleged, the Indictment fails under the Second Circuit's decision in *Jackson*. In *Jackson*, the defendant Autumn Jackson claimed to be the biological daughter of Bill Cosby, born out of wedlock to a woman with whom Cosby had an affair in the early 1970s. Although Cosby did not acknowledge paternity, he nonetheless provided financial support to Jackson and her mother for more than twenty years, including money for education, a car, and substance

---

[3] The Eleventh Circuit in *Pendergraft* described its holding as a "narrow one," in part because the defendant threatened litigation with false affidavits against a county government, implicating the First Amendment right to petition the government for the redress of grievances. *Pendergraft*, 297 F.3d at 1208.

abuse treatment. However, that was not enough for Jackson, who threatened to sell her story to the media (*The Globe*) if Cosby did not pay her $40 million. *Jackson*, 180 F.3d at 59-63. After Cosby reported the threat to the FBI, Cosby's representative "negotiated" a $24 million settlement with Jackson. A draft settlement agreement was prepared at the direction of the FBI, which provided that, in consideration for the $24 million, Jackson would "refrain from providing any information whatsoever about Mr. Cosby to any third party" and would "not initiate any further discussions with *The Globe* or any other media outlet, with respect to Ms. Jackson's story that she is the daughter of Mr. Cosby." *Id.* at 63-64. Jackson signed the agreement and she was arrested and charged with violating §875(d) for attempting to extort money from Cosby by threatening to harm his reputation.

The Second Circuit found error in the district court's failure to instruct the jury that "wrongfulness" was an element of §875(d), holding that "not every threat to make a disclosure that would harm another person's reputation is wrongful," and "it is material whether the defendant had a claim of right to the money demanded." *Id.* at 70. On rehearing, the Court found the instructional error to be harmless because there was no evidence on which a rational juror could conclude that Jackson had a plausible claim of right to the money under the law. *Jackson*, 196 F.3d at 387. Thus, as part of the "settlement," Cosby was not going to receive anything of value, such as a release from a plausible claim.

Here, the Indictment does not allege that Client-1 lacked a claim of right; rather, it suggests the opposite, by alleging that Client-1 had a contract that Nike had declined to renew, that Client-1 believed there was misconduct, and that Client-1 sought Mr. Avenatti's assistance in connection with "any claims Client-1 might have." DE8:¶8-9. Nor is there any allegation that Client-1 did not want an internal investigation, led by Mr. Avenatti, as part of the

11

settlement demand.[4]  Finally, there is no allegation that the threatened action – to publicly expose Nike's misconduct – was unrelated to Client-1's claim.  That is, there is no allegation that Mr. Avenatti was threatening to expose misconduct by Nike (*e.g.,* the marital infidelity example) that was separate and apart from Client-1's grounds for monetary and equitable remedies.

Admittedly, the Indictment alleges unique circumstances not squarely addressed by the case law because of the internal investigation component of the settlement demand.  But that is a distinction without a difference.  Plaintiffs, including the USAO-SDNY, routinely insist in civil lawsuit settlement agreements on requiring a defendant to implement a costly compliance program and having final approval authority over the selection of inspectors, monitors, and trainers implementing that compliance program.  *See, e.g.,* DE37-1 in *United States v. Webster AV Management, LLC*, No. 16-cv-09913-PGG (S.D.N.Y.), at ¶13, ¶46 (settlement agreement of Fair Housing Act violations between New York developer and government).  And it cannot be credibly argued that such a costly compliance program is unrelated to the claim of right because Client-1's claim involved misconduct by Nike.  It is simply an additional element of the relief being sought.  As this Court noted in *Bouveng*, at least under New York law, a threat to make public embarrassing allegations does not constitute extortion where that conduct is "part of a larger endeavor to obtain recompense for a perceived wrong."  *Bouveng*, 175 F.Supp.2d at 324 (citation omitted).  Had Mr. Avenatti initially

---

[4] While the Indictment alleges that "at no time did Avenatti inform Client-1 that he also planned to demand payments from Nike for himself and CC-1," (DE8:4,¶10), it is of no moment whether Mr. Avenatti mentioned to Client-1 how the internal investigation would be funded.  The point is that the government has not alleged – nor could it do so truthfully – that Client-1 had not authorized Mr. Avenatti to make various settlement demands, including an internal investigation.

demanded $1.5 million to settle Client-1's monetary damage claims and $25 million in attorney's fees for him and CC-1 for their representation of Client-1, and had never even mentioned an internal investigation, the conduct would not be "wrongful" under the extortion statutes despite the seeming unreasonableness of the demand.

In that regard, the ***amount*** of the demand does not, as a matter of law, dictate whether the threat is "wrongful."  The analysis must be informed by the principle that a criminal statute "must be strictly construed, and any ambiguity must be resolved in favor of lenity."  *United States v. Enmons*, 410 U.S. 396, 411 (1973).  The rule of lenity "promotes fair notice of prohibited conduct and reduces the likelihood that unintentionally criminal conduct will be penalized."  *United States v. Kozminski*, 487 U.S. 931, 952 (1988).  The risk of arbitrary enforcement would be intolerable if prosecutors, who often have no experience in settling, litigating, trying or valuing complex civil cases, were permitted to draw lines in deciding whether a settlement demand, made in agreed-upon settlement discussions, was too high and thus "wrongful."  Settlement demands are, by accepted practice, often unrealistic and imbued with "puffery or posturing rather than a fair or realistic appraisal of a party's damages." *Vermande v. Hyundai Motor America, Inc.*, 352 F.Supp.2d 195, 203 (D.Conn. 2004).  Further, there is simply no way to value a client's willingness to give up equitable relief (*e.g.*, cleaning up corruption) to right a perceived wrong.

Thus, the Indictment's allegation regarding the ***amount*** of the settlement demand – even using the $22.5 million amount proposed by Mr. Avenatti to relent on his demand to lead an internal investigation in exchange for "one confidential settlement," *see* DE8:12, ¶18d – does not and cannot render the conduct "wrongful."  Had Mr. Avenatti asked for $100 million or nearly five times that amount, the result would be the same.  The critical fact is that Nike

was going to receive something of value in return for the payment – the settlement of Client-1's legal claim – which distinguishes this case from *Jackson,* where she had **no** claim.

The "something of value" concept animated the decision in *Albertson*. There, the district court granted a judgment of acquittal on a single count of attempted extortion under §1951 where the defendant Albertson requested a $20,000 sponsorship of his semi-pro football team from a developer in return for Albertson's dropping his effort to lead an organized political opposition to a proposed land development. *Id.* at 839. The district court noted that Albertson, who threatened public opposition, was selling his inaction to the developer, which "was of considerable value." *Id.* at 843. Even though Albertson's proposition was "disgraceful, offensive, and ethically repugnant," his economic threats were not wrongful because the developer stood to receive "something of value" in return for the sponsorship. *Id.* at 850. The district court did not inject itself into an analysis of whether the $20,000 demand was too high. It was enough that Albertson was offering "something of value" to the developer – the settlement of a genuine underlying dispute. *Id.* at 847. In other words, the market would dictate the value of that settlement.

In surveying the legal landscape on economic extortion, the district court observed that the Second Circuit had "made pronouncements which favor Albertson's position that no conviction for extortion can lie when the payor has received something 'of value' in return." *Id.* The court also discussed the district court's opinion in a civil extortion case, *Viacom Intern. Inc. v. Icahn*, 747 F.Supp. 205 (S.D.N.Y. 1990). In *Viacom¸* the district court considered the difference between "hard bargaining" and "extortion" in the context of a company (Viacom) that, upon being threatened with a takeover by Carl Icahn, paid Icahn a "greenmail" premium for his shares in Viacom and received the shares and an eleven year standstill covenant in

14

return.  *Id.* at 213.  Although Icahn certainly employed "fear" to his advantage, the court found

the conduct was not wrongful, differentiating "hard-bargaining" from extortion as follows:

> In a "hard-bargaining" scenario the alleged victim has no pre-existing right to
> pursue his business interests free of the fear he is quelling by receiving value in
> return for transferring property to the defendant, but in an extortion scenario the
> alleged victim has a pre-existing entitlement to pursue his business interests free
> of the fear he is quelling by receiving value in return for transferring property
> to the defendant.

*Id.*

As examples of a pre-existing right to pursue business free of fear -- *i.e.*, the extortion

scenario -- the district court cited cases in which the victims were required to personally pay

the defendants to obtain the defendants' "influence" and "goodwill."  *Id.*  In that scenario, the

"something of value" is, as a matter of law, "imposed, unwanted, superfluous and fictitious,"

such as the boss at the waterfront requiring a company to hire a second worker to do the job

that another worker is already doing.  *Id.* (citation omitted).  The district court held that Icahn

provided something of value to Viacom in exchange for the payment – the shares of stock and

the standstill agreement – and that Viacom was not entitled to "a right to pursue its business

interests free of the problems and fears caused by the threat of a takeover by defendants."  *Id.*

Thus, there was no extortion as a matter of law.

The foregoing analysis compels the conclusion that the Indictment of Mr. Avenatti

cannot stand.  It is enough that Nike would have received "something of value" in exchange

for $22.5 million other than Mr. Avenatti's agreement to not conduct a press conference:

namely, the settlement of Client-1's claims.  This distinguishes the Indictment in this case from

*Jackson*, where the only thing that Cosby would receive in exchange for his payment to

Jackson was her promise not to publicly expose his paternity.  Moreover, Nike had no pre-

existing right to be free from public exposure of allegations of misconduct in its ranks or a lawsuit.  In fact, as a public company governed by SEC regulations, it arguably had an affirmative obligation to investigate and ***disclose any such misconduct***.

###         E.         The Extortion Statutes are Vague-as-Applied

Allowing this prosecution of Mr. Avenatti in view of extortion jurisprudence on "wrongfulness" would violate his Fifth Amendment right to due process.  A criminal statute "must 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'"  *United States v. Rahman*, 189 F.3d 88, 116 (2d Cir. 1999) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The "statute must give notice of the forbidden conduct and set boundaries to prosecutorial discretion."  *United States v. Brunshtein*, 344 F.3d 91, 98 (2d Cir. 2003).  When analyzing a vagueness challenge, "[a] court must first determine whether the statute gives the person or ordinary intelligence a reasonable opportunity to know what is prohibited and then consider whether the law provides explicit standards for those who apply it."  *United States v. Strauss*, 999 F.2d 692, 697 (2d Cir. 1993). A "void for vagueness " challenge "does not necessarily mean that the statute could not be applied in some cases but rather that, as applied to the conduct at issue in the criminal case, a reasonable person would not have notice that the conduct was unlawful and there are no explicit standards to determine that the specific conduct was unlawful."  *United States v. Sattar*, 272 F.Supp.2d 348, 357 (S.D.N.Y. 2003).

The resolution of a defendant's void for vagueness challenge ordinarily requires "a more expansive factual record to be developed at trial."  *See United States v. Hoskins*, 73 F.Supp.3d 154, 166 (D.Conn. 2014); *United States v. Milani*, 739 F.Supp. 216, 218 (S.D.N.Y.

1990).  Here, however, the Court need not wait until trial.  In the context of an attorney trying to settle a claim during agreed-upon settlement meetings and communications, as in this case, the statutes at issue and the case law interpreting those statutes at best provide insufficient guidance and leave a vacuum filled by vagueness.  The "wrongfulness" element of the extortion statutes is vague as applied to Mr. Avenatti's alleged conduct when considered against the backdrop of prevailing extortion jurisprudence, his freedom of speech under the First Amendment, the zone of confidentiality expected in settlement negotiations, and the accepted practices of "puffery" and "posturing" in making settlement demands.  The vagueness is further compounded by the existence of the "litigation privilege" which – at a minimum for defamation purposes -- contemplates a zone of protection for statements made in letters between attorneys and parties and during offers of settlement by attorneys.  *See, e.g., Officemax, Inc. v. Cinotti*, 966 F.Supp.2d 74, 79-81 (E.D.N.Y. 2013).  The Fifth Amendment and rule of lenity require dismissal of the Indictment.

## CONCLUSION

For the foregoing reasons, Mr. Avenatti respectfully requests that the Court dismiss the Indictment against him.

Respectfully submitted,

By:     /s/Scott A. Srebnick
        Scott A. Srebnick, P.A.
        201 South Biscayne Boulevard
        Suite 1210
        Miami, FL 33131
        Telephone: (305) 285-9019
        Facsimile:  (305) 377-9937
        E-Mail:  Scott@srebnicklaw.com

17

By:    /s/Jose M. Quinon
           Jose M. Quinon, P.A.
           2333 Brickell Avenue, Suite A-1
           Miami, FL 33129
           Telephone:  (305) 858-5700
           Facsimile:  (305) 358-7848
           E-Mail:  jquinon@quinonlaw.com

*Attorneys for Defendant Michael Avenatti*

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2019, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

/s/Scott A. Srebnick
Scott A. Srebnick