LAW OFFICES
# SCOTT A. SREBNICK, P.A.

SCOTT A. SREBNICK*
* ALSO ADMITTED IN NEW YORK

201 S. Biscayne Boulevard
Suite 1210
Miami, Florida 33131

Tel: 305-285-9019
Fax: 305-377-9937
E-mail: scott@srebnicklaw.com
www.srebnicklaw.com

August 29, 2019

**Via ECF**
Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

      Re:   *United States v. Michael Avenatti*, No. 19-cr-373 (PGG)
             **Request for a two-month adjournment of trial date**

Dear Judge Gardephe:

      We represent defendant Michael Avenatti in the above-referenced case. In accordance with the deadline set by the Court at last week's status conference, we write to request a brief two-month adjournment of the trial date from November 12, 2019 until January 6, 2020 so that we may adequately prepare our defense of Mr. Avenatti and represent him competently at trial. To the extent that the proposed trial date conflicts with AUSA Daniel Richenthal's trial in another case (which I believe is currently scheduled to commence on January 21, 2020), we would ask the Court to schedule the trial for early February 2020.[1] We have not previously requested an adjournment of the trial date and we do not anticipate the need for any additional ones. A trial in early January 2020 would be 7 ½ months since the Indictment was returned.

      As the Court knows, Mr. Avenatti is also charged in two other federal criminal cases. The other case pending in this district (*United States v. Avenatti*, No. 19-cr-374 (DAB) (the "Daniels case")) does not yet have a trial date. The case pending against Mr. Avenatti in the Central District of California (*United States v. Avenatti*, No. 19-00061 (JVS)) is scheduled to begin trial on May 19, 2020. Mr. Avenatti has moved to transfer the Daniels case to the Central District of California. Mr. Avenatti is also facing multiple other proceedings, including ongoing bar hearings and civil lawsuits in which he is a defendant. A trial date in January or February 2020 would not conflict with trials in any of these other matters.

      This request is based primarily on the number of matters that we expect will have to be litigated over the course of the next several months, the difficulty in preparing for trial until the Court rules on those matters and the scope of the trial becomes clear, the additional discovery that we are seeking, and the fact that undersigned counsel needs to review the

---

[1] Undersigned counsel Jose Quinon is scheduled to be in trial in federal court in San Juan, Puerto Rico, commencing on December 9, 2019. Thus, he is unavailable to try this case in December.

evidence from the California case and the Daniels case (which has yet to be produced in full) to properly advise Mr. Avenatti about whether to exercise his constitutional right to testify and, in the event he chooses to, in order to adequately prepare him for cross-examination.

### A. The Charges

The Indictment charges Mr. Avenatti in four counts with: conspiracy under §371 to violate 18 U.S.C. §875(d) (Count One), conspiracy to violate the Hobbs Act, 18 U.S.C. §1951 (Count Two), a substantive violation of §875(d) (Count Three), and attempted extortion under §1951 (Count Four). The essence of the charges is that Mr. Avenatti allegedly conspired with "CC-1" (attorney Mark Geragos) to threaten Nike with reputational damage and economic harm by disclosing evidence of Nike's misconduct at a press conference if Nike did not agree to certain settlement demands, which included a monetary damages amount for his client, Coach Gary Franklin, and an internal investigation of Nike to be led by Mr. Avenatti and Mr. Geragos.

At all relevant times beginning in March 2019, Mr. Avenatti and Mr. Geragos were representing Coach Franklin of the California Supreme, a team in the Nike Elite Youth Basketball League, in an effort to settle Coach Franklin's legal claims against Nike. Coach Franklin was claiming that Nike executives undertook in 2016-17 to: a) force Coach Franklin to redirect money to the "handlers" of amateur players and their family members, in violation of NCAA rules, or risk losing his Nike EYBL team; b) direct Coach Franklin to create false invoices to disguise the payments as travel expenses and a fake sponsorship for a 501(c)(3) organization; and c) force Coach Franklin to allow two other individuals, including one with a criminal record, to take over the California Supreme "17U" team in order to steer one of the players from Adidas to the Nike sponsored league. Coach Franklin alleged that he was a "whistleblower" who was "forced out" by Nike executives when he no longer was willing to go along with their schemes, thus causing him monetary damages and damaging his brand and reputation. Coach Franklin expressed repeatedly to Mr. Avenatti and others that his goals in approaching Nike were to obtain justice and restitution. And, the evidence shows that, to Coach Franklin, "justice" meant cleaning up corruption within Nike grassroots basketball and getting rid of the rogue actors within Nike. (Dkt. #29:12-23).

All four counts of the Indictment require proof of "wrongfulness" by Mr. Avenatti. *See United States v. Clemente*, 640 F.2d 1069, 1077 (2d Cir. 1981) (discussing §1951); *United States v. Jackson*, 180 F.3d 55, 67-71 (2d Cir. 1999), *on reh'g*, 196 F.3d 383 (2d Cir. 1999). As explained in the memoranda filed in support of Mr. Avenatti's pending motions to dismiss, not all threats to reputation or of economic harm are inherently wrongful. *Jackson*, 180 F.3d at 67; (Dkt. #35:10-12). Where the charge is extortion by fear of economic harm or threats to reputation, a defendant is entitled to present evidence related to his/her "plausible claim of right." *Jackson, supra*. To be sure, in *Jackson*, the Second Circuit on rehearing found that the district court's error in failing to instruct the jury on "wrongfulness" was harmless because Jackson had failed to present legally sufficient evidence to support a plausible claim of right to any amount of money, much less $40 million. *Jackson*, 196 F.3d at 387-89.

This case presents additional complexities regarding the "claim of right" and settlement negotiations not present in *Jackson* because the evidence will show, among other things, that:

1) At all times, Mr. Avenatti was a lawyer (*i.e.*, agent) representing Coach Gary Franklin (*i.e.*, principal) in confidential settlement negotiations with experienced Nike attorneys;

2) No non-lawyers ever participated in any of the settlement communications;[2]

3) It was agreed to by all of the lawyers for the parties *before the first settlement communication and several times thereafter* (including after the FBI began monitoring the communications) that all of the communications related to settling Mr. Franklin's claims and were covered by FRE 408;

4) Unlike *Jackson*, the threatened press conference was in connection with a *contemplated lawsuit* that would have been filed and would have made public the very same allegations of misconduct that Mr. Avenatti allegedly threatened to expose to the media, regardless of the sequence of which occurred first;

5) Coach Franklin actually had multiple plausible claims against Nike and was prepared to litigate those claims;

6) At the first meeting, a Nike lawyer expressed the need to examine Franklin's contract and evaluate the legal claims before countering the settlement demands;

7) At the first meeting, a Nike lawyer expressed that Nike had an interest in conducting an internal investigation surrounding these allegations before Mr. Avenatti provided *any* estimate of the cost for him and Mr. Geragos to conduct the investigation; and

8) posturing and puffery about the value of the claim and the demands made to settle the claim – which can include requests for changes in corporate governance, appointment of costly monitors and inspectors, etc. -- are routine in confidential settlement discussions among lawyers. (Dkt. #29:45 n.19; Dkt. #29:46-47).

It is Mr. Avenatti's position that the exception to the extortion statutes for threats of litigation and related conduct apply here. *See generally United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002); *Bouveng v. NYG Capital, LLC*, 175 F.Supp.3d 280, 320 (S.D.N.Y. 2016). Otherwise, the extortion statutes are vague-as-applied to his conduct. The complexity of applying the extortion statute in this context was detailed in the memoranda of law filed in connection with the motion to dismiss (Dkt. #35).

---

[2] The only two Nike employees/executives Mr. Avenatti or Mr. Geragos ever had any contact with about Mr. Franklin or the settlement demands were both lawyers – Mr. Casey Kaplan, Nike's *Senior Counsel for Global Litigation and Investigations*, and Mr. Rob Leinwand, Nike's *Vice President of Global Litigation and Employment Counsel.*

## B. Scope of the Trial

Because Mr. Avenatti is entitled to prove that Coach Franklin had a plausible claim of right, we anticipate that there will be substantial litigation over the course of the next few months on the scope of the evidence that may be offered at trial to prove that plausible claim. It is Mr. Avenatti's position that he should be entitled to, among other things, present : a) evidence of the misconduct directed by Nike, and other collaborators, aimed at Coach Franklin in order to prove that Coach Franklin would have been entitled to receive compensatory damages for the harm to him and the California Supreme brand; b) evidence of broader misconduct directed by Nike across the Elite Youth Basketball League to prove Coach Franklin's plausible entitlement to punitive or exemplary damages; c) evidence that internal investigations of public companies are routine in matters of this sort and can be extraordinarily expensive; and d) evidence that litigants in settlement negotiations often make demands for remedies that they might not otherwise be able to obtain at trial.

Evidence of the broader misconduct by Nike further corroborates what Coach Franklin and his advisor Jeffrey Auerbach initially told Mr. Avenatti about Coach Franklin's claims and the widespread nature of Nike's corruption of amateur basketball, and further establishes the correctness of Mr. Avenatti's belief at the time about the merits and potential value of Coach Franklin's claims. This evidence also demonstrates that the amounts being demanded by Mr. Avenatti for him and Mr. Geragos to conduct an internal investigation were in good faith and commensurate with what other lawyers would charge in connection with investigations of that potential scope. Finally, evidence of widespread misconduct by Nike – including whether Nike properly responded to a grand jury subpoena which was reportedly served on Nike in 2017 -- is relevant to show the motivation of Nike representatives to testify in favor of, and curry favor with, the government. *See generally Davis v. Alaska*, 415 U.S. 308 (1974).

Litigation over the scope of the evidence that will be allowed to prove a plausible claim of right may arise in various contexts, including:

a) motions for issuance of subpoenas pursuant to Rule 17(c) seeking evidence to prove the claim of right;

b) motions to quash the subpoenas;

c) motions under *Giglio* for disclosure of additional evidence of Nike's misconduct;[3]

d) motions *in limine* to exclude or admit fact evidence related to the claim of right;

e) motions *in limine* relating to the scope of permissible expert testimony on the claim of right.

f) motions for protective order filed by individuals who may assert their Fifth Amendment privilege, which would require the court to assess whether the claim is

---

[3] To date, the government has produced to Mr. Avenatti approximately 2,680 pages of documents they have received from Nike. Some of those are included within the exhibits attached to Dkt #30. However, based on the highest Bates number of the documents produced to Mr. Avenatti, it appears that the government has received at least 12,000 pages from Nike, and perhaps much more.

valid, whether the individual has already waived the privilege, whether the court should order the government to grant immunity as a matter of due process, and whether the witness should be required to invoke the privilege before the jury.

There will likely be responses and possibly replies filed to the above motions. Moreover, this non-exhaustive list is in addition to other motions that Mr. Avenatti and the government may file before trial, including but not limited to:

g) a motion related to 404(b) evidence and the admissibility of attorney ethics rules;

h) a motion to exclude evidence of Mr. Avenatti's finances;

i) a motion for a jury questionnaire;

j) a motion to exclude settlement negotiations from evidence under the litigation privilege and/or Rule 408; and

k) an unknown number of government motions *in limine*.

With respect to 404(b) evidence, possible expert testimony, and other pre-trial disclosures, the parties are presently conferring about a schedule for disclosure. The above is also in addition to the responses and replies that need to be filed on Mr. Avenatti's pending dismissal motions.

According to the current schedule (Dkt. #20), the pretrial motions will be fully briefed by October 3, 2019, and the motions *in limine*, proposed voir dire, and requests to charge are due Friday, October 11, 2019. Responses to the motions *in limine* will be due a short time thereafter which, given the number of likely motions, will be a difficult task while also preparing for trial.

## C.     The California Case, Rule 404(b), and Mr. Avenatti's Right to Testify

As noted above, Mr. Avenatti is also dealing with other serious legal proceedings which threaten his liberty and his livelihood. He is charged in California with various offenses, including but not limited to wire fraud, bank fraud, bankruptcy fraud, and tax offenses. The essence of the wire fraud charges is that Mr. Avenatti allegedly defrauded clients of settlement funds that were paid to his law firm. On July 26, 2019, the USAO-SDNY provided as discovery in this case more than 5,000 pages of documents, labeled California State Bar Materials (Bates numbers USAO373_29941 through 35004). Those materials include a copy of the California indictment and documents related to multiple Bar complaints filed by former clients against Mr. Avenatti. As the government has not yet provided undersigned with its Rule 404(b) notice, we do not know how/whether the government intends to use these materials in its case-in-chief. At a minimum, however, government counsel have advised undersigned that, should Mr. Avenatti exercise his right to testify, they reserve the right to inquire about the matters in the California indictment (and presumably the other New York indictment) on cross-examination of Mr. Avenatti.

Undersigned counsel cannot provide effective and competent advice to Mr. Avenatti about whether to testify without reviewing the evidence related to the former clients in those

cases in greater detail and with greater depth. Nor can undersigned counsel adequately represent Mr. Avenatti at trial or properly prepare Mr. Avenatti for cross-examination without this knowledge. Given the scope of other work to be done, undersigned have not even begun to tackle its review of the California evidence.

The Rule 16 discovery in the California case is not yet complete – including relevant evidence about the allegations regarding the former clients -- and is not scheduled to be complete until November or December.[4] *See* Dkt. #49, at p.5, in Case No. 8:19-cr-00061 (C.D.Ca. July 22, 2019). Undersigned counsel need additional time to review the evidence related to the former clients prior to trial.

## CONCLUSION

For the foregoing reasons, Mr. Avenatti respectfully requests that the Court grant a two-month adjournment of the trial date so that counsel can be adequately prepared to try the case.

Thank you for your consideration of this request.

Respectfully,

*/s/ Scott A. Srebnick*

Scott A. Srebnick
Jose M. Quinon

cc:   Counsel of Record (via ECF)

---

[4] The government has started a privilege review and has indicated that it will begin making an initial production of emails and other records relating to the former clients in September 2019. Dkt. #49:9, in Case No. 8:19-cr-00061 (C.D.Ca. July 22, 2019).