

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 5, 2019

**BY ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

> **Re:**   ***United States v. Michael Avenatti*,**
> **19 Cr. 373 (PGG)**

Dear Judge Gardephe:

The Government respectfully submits this letter in opposition to the letter motion filed last week by the defendant in the above-captioned matter, requesting a two-month adjournment of his trial scheduled to commence on November 12, 2019 (Dkt. No. 42 ("Def. Ltr.")). The defendant seeks to delay his trial "based primarily on the number of matters that we expect will have to be litigated," and the alleged "difficulty in preparing for trial until this Court rules on those matters and the scope of the trial becomes clear." (Def. Ltr. 1.) This motion is meritless. None of the matters raised in the defendant's letter warrants a lengthy adjournment—indeed, many are plainly without merit—and, in any event, each of them can and, if necessary, will be litigated under the pretrial schedule already set by the Court.

## I.     Factual Background

This case is straightforward. It concerns the unlawful and wrongful use of information taken by the defendant from a client (or potential client) to extort a public corporation into making substantial payments to the defendant. Specifically, as outlined in the criminal complaint and Indictment, during the course of phone calls and meetings, almost all of which were audio- or video-recorded, the defendant threatened, among other things, to hold a press conference on the eve of Nike's quarterly earnings call and the start of the annual National Collegiate Athletic Association men's basketball tournament, at which he would announce allegations of misconduct by employees of Nike. (Indictment ¶ 1.) The defendant stated that he would refrain from holding that press conference and harming Nike only if Nike made a payment of $1.5 million to a client of the defendant in possession of information potentially damaging to Nike (identified in the Indictment as "Client-1"), and further agreed to "retain" the defendant and another individual (identified in the Indictment as "CC-1") to conduct an "internal investigation"—an investigation that Nike did not request—for which the defendant demanded to be paid, at a minimum, between $15 million and $25 million. (*Id.*) Alternatively, the defendant demanded a total payment of $22.5 million to guarantee "confidentiality" and so that he would "ride off into the sunset." (*Id.* ¶¶ 1, 18(d).)

Honorable Paul G. Gardephe
United States District Judge
September 5, 2019
Page 2

As captured by audio- and video-recording devices, the defendant's extortionate demands were anything but routine efforts of an attorney merely advocating for his client, as he baselessly asserts in his letter (Def. Ltr. 2-3).  Over the course of calls and meetings with representatives of Nike, the defendant focused on payments directed *to him*, explaining that Nike must hire *him* to conduct an internal investigation, but even if Nike chose to hire another firm to conduct an internal investigation, Nike would still be required to pay *the defendant* at least twice the fees of any other firm.  (Indictment ¶ 12(c).)  The defendant later insisted that he be paid more than $9 million (*id.* ¶ 17(b)), a demand which grew to a $12 million retainer to be paid immediately and to be "deemed earned when paid," with a minimum guarantee of $15 million and a maximum fee of $25 million, "unless the scope changes" (*id.* ¶ 18(a)).  When informed by an outside attorney for Nike (identified in the Indictment as "Attorney-1") that Attorney-1 had never received a $12 million retainer from Nike and never done an investigation for Nike "that breaks $10 million," the defendant responded, in part, by asking whether Attorney-1 has ever "held the balls of the client in your hand where you could take five to six billion dollars market cap off of them?"  (*Id.* ¶ 18(b).)

And notably, when Attorney-1 asked whether Nike could resolve the defendant's demands by paying only Client-1, the defendant responded not that Nike should increase its payment to his client, but rather that he did not think it made sense for Nike to pay his client an "exorbitant sum of money . . . in light of his role in this."  (Indictment ¶ 18(b).)  The defendant later stated:  "If [Nike] wants to have one confidential settlement and we're done, they can buy that for twenty-two and half million dollars and we're done. . . .  Full confidentiality, we ride off into the sunset. . . ." (*Id.* ¶ 18(d).)  Shortly after those demands were made, and consistent with the threats the defendant communicated, the defendant posted a message to Twitter, writing, in reference to an article about a prior prosecution involving employees of a rival company: "Something tells me that we have not reached the end of this scandal.  It is likely far far broader than imagined . . . ." (*Id.* ¶ 19.)  After posting that message to Twitter, the defendant sent by text message to CC-1 a link to the Twitter message and wrote to CC-1, "Warning shot."  (*Id.* ¶ 21.)

While the defendant, as discussed further below, writes in his letter that, in his view, the "scope of the trial" is considerably broader, the Government presently expects its case-in-chief to take approximately one week.

## II.    Procedural History

On March 24, 2019, the defendant was charged in Complaint 19 Mag. 2927 with transmission of interstate communications with intent to extort and conspiracy to do the same, and extortion and conspiracy to do the same.  (Dkt. No. 1.)  On May 22, 2019, the grand jury returned Indictment 19 Cr. 373 (PGG) charging the defendant with the same offenses.  (Dkt. No. 8.)  On June 19, 2019, this Court issued an order setting forth a schedule for pretrial motions and pretrial submissions, and scheduling the trial for November 12, 2019.  (Dkt. No. 20.)

On August 14, 2019, the defendant filed a motion to dismiss the indictment for vindictive and selective prosecution.  (Dkt. Nos. 28-30.)  On August 16, 2019, the defendant filed a motion for a bill of particulars.  (Dkt. Nos. 31-33.)  On August 19, 2019, the defendant filed a motion to dismiss the indictment for failure to state an offense and because the extortion statutes are allegedly

Honorable Paul G. Gardephe
United States District Judge
September 5, 2019
Page 3

vague as applied.  (Dkt. Nos. 34-36.)  The Government's response to these motions is due on
September 19, 2019.  (*See* Dkt. No. 20.)

### III.   Applicable Law

"Whether or not to adjourn a trial date is traditionally within the discretion of the trial
judge."  *United States v. Scopo*, 861 F.2d 339, 344 (2d Cir. 1988) (internal quotation marks
omitted).

### IV.   Discussion

None of the reasons the defendant provides justifies an adjournment of the trial, much less
the two-month adjournment that he seeks.

*First*, the defendant points to "additional complexities" regarding his proffered defense as
justifying delay in this case, among them the facts that, at the time of the charged conduct, the
defendant and CC-1 were each attorneys, and they asserted during certain of the communications
with Nike's representatives that the negotiations were covered by Rule 408 of the Federal Rules
of Evidence.  (Def. Ltr. 3)  Certainly none of these facts, alone or in combination, warrants a two-
month adjournment of the trial date, and the defendant unsurprisingly points to no authority
supporting the proposition that a law degree or license permits an individual to engage in extortion,
or that the invocation of Rule 408 immunizes such conduct.  It plainly does not.

In suggesting to the contrary, the defendant attempts to distinguish what he did from the
conduct at issue in *United States v. Jackson*, 180 F.3d 55 (2d Cir.), *on reh'g*, 196 F.3d 383 (2d Cir.
1999).  (*See* Def. Ltr. 3.)  That attempt fails.  The defendant contends that, "[u]nlike [in] *Jackson*,
the threatened press conference [here] was in connection with a ***contemplated lawsuit*** that would
have been filed."  (*Id.* (emphasis in original).)  As an initial matter, there is no support for the
defendant's factual claim—to the contrary, the defendant's explicitly-stated threat was to cause
Nike bad publicity by holding a press conference at a commercially sensitive time and thereby to
harm Nike financially.  In any event, *Jackson* did involve a plausible legal claim.  As the Second
Circuit explained, the defendant in that case claimed that she had a legitimate claim to financial
support from the victim.  *Jackson*, 180 F.3d at 71.  The court concluded, ultimately, that no rational
juror could have found that the defendant's demand for $40 million had a plausible *nexus* to any
such claim for support.  *Jackson*, 196 F.3d at 387.  The facts here are hardly dissimilar, where the
defendant demanded payments for *himself* of at least $12 million based on his client's potential
claim arising from a $72,000 contract, a claim that the defendant himself repeatedly asserted was
worth only $1.5 million to his client.

Indeed, on the facts of this case, the defendant's training and experience as an attorney are
proof not of innocence, but of guilt.  For example, the defendant's violation in the course of his
extortionate conduct of the rules of professional conduct governing his practice of law corroborates
the wrongfulness of his conduct.  *See, e.g.*, California State Bar Rules of Professional Conduct,
Rule 1.4 (regarding communication with clients), Rule 1.6 (regarding confidential information of
a client), Rule 1.7 (regarding conflicts of interest), Rule 1.8.2 (regarding use of client information);
*see also* Cal. Bus. & Prof. Code §§ 6147(a) & 6148(a) (requiring written retainer agreements).  In

Honorable Paul G. Gardephe
United States District Judge
September 5, 2019
Page 4

any event, even assuming the relevance of any of the facts asserted by the defendant, the "complexities" he identifies are factual issues for the jury, not a basis to delay trial, much less for months.

*Second*, the defendant contends that the "scope of the trial" requires a delay to allow additional time for litigation over his ability to put his victim on trial—a defense that the defendant's counsel recently described to this Court as "equivalent to trying to prove a civil case" within a criminal trial. (Aug. 22, 2019 Tr., at 8.)  In particular, the defendant asserts that he believes he will be entitled to seek to obtain and then present evidence of, among other things, "broader misconduct directed by Nike," regardless of whether such alleged misconduct has any connection to the facts of this case or was known to him at the time he acted. (Def. Ltr. 4.)  He also asserts that he anticipates litigation regarding Rule 17(c) subpoenas and motions regarding, among other things, the relevance of particular evidence and disclosure of materials, witness immunity, Rule 404(b), potential use of a jury questionnaire, and preclusion of evidence under Federal Rule of Evidence 408.[1]  (*Id.* 4-6.)  None of these motions is provides any basis for delay. To the contrary, similar such litigation is standard in the months preceding trial.

Moreover, although the Court need not engage at this time with the merits of the defendant's anticipated motions or defense theories, it is apparent that much of the litigation he envisions (just like his pending motions) will involve nothing more than improper attempts to seek to distract or confuse the jury through the presentation of inadmissible evidence in support of a legally invalid defense.  Specifically, the defendant appears to seek to prove what he casts as misconduct by Nike—his victim—in the guise of demonstrating that Client-1's potential claim against Nike had merit.  (Def. Ltr. 4.)  But whether Client-1 had a potentially meritorious contractual claim against Nike has no relevance to the defendant's extortionate threats aimed at extracting payments for *himself. See Jackson*, 180 F.3d at 71 ("where a threat of harm to a person's reputation seeks money or property to which the threatener does not have, and cannot reasonably believe she has, a claim of right . . . the threat is inherently wrongful"); *United States v. Sturm*, 870 F.2d 769, 774 (1st Cir. 1989) (conduct is wrongful where "the alleged extortioner knew that he was not legally entitled to the property in question").

Moreover, even if the merits of Client-1's potential claim had some relevance, it would be relevant only insofar as it was known to the defendant at the time he acted.  The alleged evidence that the defendant seeks to obtain and/or present—evidence *not* in his possession (or that of Client-1) and *not* known to him or his client at the time of his conduct—has no possible relevance to his contemporaneous knowledge or intent.  It is thus inadmissible.  This very point was made in *Jackson*, where the Second Circuit observed that the district court properly permitted the defendant to introduce evidence of her belief that the victim was her father and of what she "thought or

---

[1] As to his Rule 408 argument, the defendant claims that delay may be occasioned by "a motion to exclude settlement negotiations from evidence under the litigation privilege and/or Rule 408." (Def. Ltr. 5.)  This claim is baseless.  The present schedule already contemplates a timeline for motions *in limine*, and Rule 408 (even if it did apply) makes explicit in multiple ways that it would not bar admission of evidence in this case, not least of which because it does not bar the admission of conduct or statements "when offered in a criminal case," Fed. R. Evid. 408.

Honorable Paul G. Gardephe
United States District Judge
September 5, 2019
Page 5

intended" at the time "on the basis that such testimony would be relevant to whether her intent was extortionate or legitimate." *Jackson*, 196 F.3d at 387.  The contrary is equally true.  It is improper for the defendant to seek to prove that he did not make an extortionate threat because, after he was charged, he obtained evidence that a client might have had a claim related to the threat or might have had a claim worth more than the defendant thought at the time, or that the claim may ultimately have been successful, had it been brought and litigated.  Indeed, it is an "established principle that, when a threat is made to injure the reputation of another, the truth of the damaging allegations underlying the threat is not a defense to a charge of extortion." *Jackson*, 180 F.3d at 66.  The defendant is not entitled to delay his trial by asserting in conclusory fashion that, contrary to settled law, such evidence is relevant or that litigation concerning it is so complex that he needs a multiple-month adjournment.

*Third*, the defendant contends that an adjournment is necessary to permit his attorney sufficient time to prepare the defendant to weigh his right to testify. (Def. Ltr. 5-6.)  Among other things, the defendant contends that additional time is needed for him to review *his own* attorney misconduct file, including complaints previously made against him by prior clients. (*Id.* 5.)  To be clear, the Government has not yet indicated any intention of using such material, but in any event, the materials are not sufficiently voluminous as to warrant a multiple-month adjournment. That is particularly true given that they were made available by the Government to the defendant on June 24 and July 26, 2019—some 4.5 and 3.5 months prior to trial, respectively—and include materials and events already familiar to the defendant.  The defendant also suggests that he needs additional time to review discovery produced in the case against him in California (*id.* 6), but that case concerns separate events, as described in a detailed 60-page indictment; the Government understands that the materials cited in that indictment were produced to the defendant months ago; and the defendant is represented in that case by separate counsel.  There is no need for counsel here to personally "tackle" all of "the California evidence" (*id.*), but even if there were, he has time, in consultation with the defendant's other retained counsel, to do so.  Of course, as in any case, the Government will provide notice of its intent to introduce evidence pursuant to Rule 404(b), if any, well in advance of trial.

## V.      Conclusion

For the foregoing reasons, the defendant's motion should be denied.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:     s/ Matthew D. Podolsky
         Matthew D. Podolsky
         Daniel C. Richenthal
         Robert B. Sobelman
         Assistant United States Attorneys
         (212) 637-1947/2109/2616

cc:      Counsel of Record (by ECF)