UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                :

vs.                                                              :          19 Cr. 373 (PGG)

MICHAEL AVENATTI,                               :

                        Defendant.                        :
_____


**DEFENDANT AVENATTI'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR ISSUANCE OF
RULE 17(C) SUBPOENA DUCES TECUM TO NIKE, INC.**

Scott A. Srebnick
SCOTT A. SREBNICK, P.A.
201 South Biscayne Boulevard
Suite 1210
Miami, FL 33131
Telephone: (305) 285-9019
Facsimile:  (305) 377-9937
E-Mail:  Scott@srebnicklaw.com


Jose M. Quinon
JOSE M. QUINON, P.A.
2333 Brickell Avenue, Suite A-1
Miami, FL 33129
Telephone:  (305) 858-5700
Facsimile:  (305) 358-7848
E-Mail:  jquinon@quinonlaw.com

*Attorneys for Defendant Michael Avenatti*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

    I.      PRELIMINARY STATEMENT .......................................................................... 1

    II.    LEGAL DISCUSSION ....................................................................................... 2

        A.  The Charges ................................................................................................ 2

        B.  Legal Standard ........................................................................................... 3

        C.  Subpoena Duces Tecum to Custodian of Records of Nike, Inc. ........................ 6

            Nike Requests #1-3 ....................................................................................... 7

            Nike Request #4 ............................................................................................. 9

        D.  Timing and Procedure .............................................................................. 10

CONCLUSION ................................................................................................................... 10

CERTIFICATE OF SERVICE ........................................................................................... 11

**TABLE OF AUTHORITIES**

**CASES**:                                                                   Page

*Bowman Dairy Co. v. United States*,
    341 U.S. 214 (1951) ......................................................................................4, 5

*Davis v. Alaska*,
    415 U.S. 308 (1974) ......................................................................................9

*In re Irving*,
    600 F.2d 1027 (2d Cir. 1979) .....................................................................4

*In re Martin Marietta Corp.*,
    856 F.2d 619 (4th Cir. 1988) .....................................................................5

*United States v. Beckford*,
    964 F.Supp. 1010 (E.D.Va.1997) ..............................................................5

*United States v. Cavollo*,
    No. 10-cr-654 HB, 2012 WL 1195194 (S.D.N.Y. Apr. 9, 2012)................6

*United States v. Clemente*,
    640 F.2d 1069 (2d Cir. 1981) ....................................................................2

*United States v. Gatto*,
    295 F.Supp.3d 336 (S.D.N.Y. 2018) .........................................................8

*United States v. Iozia*,
    13 F.R.D. 335 (SDNY 1952) .....................................................................4

*United States v. Jackson,*
    180 F.3d 55 (2d Cir. 1999),
    *on reh'g*, 196 F.3d 383 (2d Cir. 1999) ......................................................2

*United States v. Larouche Campaign*,
    841 F.2d 1176 (1st Cir. 1988) ...................................................................6

*United States v. Libby*,
    432 F. Supp. 2d 26 (D.D.C. 2006) ............................................................6

*United States v. Murray*,
    297 F.2d 812 (2d Cir. 1962) ......................................................................6

**CASES**:                                                                                  Page

*United States v. Nixon*,
        418 U.S. 683 (1974) ....................................................................................3, 4, 5, 6, 8

*United States v. Skelos*,
        No. 15-cr-317, 2018 WL 2254538 (S.D.N.Y. May 17, 2018) ...................................5, 6

*United States v. Tomison*,
        969 F. Supp. 587 (E.D. Cal. 1997) ...............................................................................6


**STATUTES**:

18 U.S.C. §371 .............................................................................................................................2

18 U.S.C. §875 ................................................................................................................ passim

18 U.S.C. §1951 .............................................................................................................. passim


**UNITED STATES CONSTITUTION**:

AMEND VI................................................................................................................................1, 5


**MISCELLANEOUS**:

Fed. R. Crim. P. 17(c) .................................................................................................... passim

NCAA Division 1 Manual ..........................................................................................................8

Defendant Michael Avenatti, through counsel, and pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure and the Compulsory Process Clause of the Sixth Amendment, respectfully submits this Memorandum of Law in support of his Motion for Issuance of Subpoenas Duces Tecum to Nike, Inc.

## I.   **PRELIMINARY STATEMENT**

Mr. Avenatti seeks the issuance of a subpoena duces tecum requiring early production of various items in the possession of the Custodian of Records of Nike, Inc.  The proposed subpoena duces tecum is attached as Exhibit 1 to the Declaration of Scott A. Srebnick, filed contemporaneously herewith.  Mr. Avenatti requests production on or before October 15, 2019.  Specifically, Mr. Avenatti seeks the following:

1. All text messages and e-mails to or from Nike employees Carlton DeBose and/or Jamal James discussing or referencing payments for the benefit of California Supreme players DeAndre Ayton, Brandon McCoy, and/or Bol Bol, in 2016-17;

2. All text messages and emails to or from Nike employees Carlton DeBose, Jamal James, John Stovall, Nico Harrison, and/or Rachel Baker discussing or referencing the payment to amateur basketball players and/or their families or agents, between January 1, 2016, and March 25, 2019;

3. All false invoices that Nike employees Carlton DeBose and/or Jamal James directed or participated in (whether directly or indirectly) to hide payments (whether cash or otherwise) to amateur basketball players and/or their families or agents (including handlers), between January 1, 2016, and March 25, 2019;

4. The federal grand jury subpoena(s) served upon Nike by the USAO-SDNY and all certificates of authentication/production indicating when Nike, Inc., produced the documents in ##1-3, if at all, to the government.

## II.    LEGAL DISCUSSION

### A.    The Charges

The Indictment charges Mr. Avenatti in four counts with: conspiracy under §371 to violate 18 U.S.C. §875(d) (Count One), conspiracy to violate the Hobbs Act, 18 U.S.C. §1951 (Count Two), a substantive violation of §875(d) (Count Three), and attempted extortion under §1951 (Count Four).  The essence of the charges is that Mr. Avenatti engaged in a scheme to allegedly extort Nike by threatening to damage Nike's reputation and cause Nike economic harm by holding a press conference if Nike did not agree to certain settlement demands made by Mr. Avenatti and Mark Geragos.  Mr. Avenatti and Mr. Geragos were representing Coach Gary Franklin, Sr., in an effort to settle Coach Franklin's claims against Nike.

All four counts of the Indictment require proof of "wrongfulness."  *See United States v. Clemente*, 640 F.2d 1069, 1077 (2d Cir. 1981) (discussing §1951); *United States v. Jackson,* 180 F.3d 55, 67-71 (2d Cir. 1999), *on reh'g*, 196 F.3d 383 (2d Cir. 1999) (concluding that although §875(d) does not define "extortion," the "intent to extort" element in §875(d) incorporates a "wrongfulness component" similar to §1951); *see generally* DE29; DE35.    In *Jackson*, the Second Circuit held that "not every threat to make a disclosure that would harm another person's reputation is wrongful," and "it is material whether the defendant had a claim of right to the money demanded."  *Id.* at 70.  Mr. Avenatti contends that his conduct was not "wrongful" because, among other reasons, his alleged threats (a) were made during confidential settlement negotiations among lawyers; (b) were in furtherance of settling plausible legal claims that Franklin had against Nike, (c) had a direct nexus to those plausible

claims, and (d) were part of contemplated and anticipated litigation that would have been filed in the public record.[1]

The parties have not yet exchanged witness lists in this case.  However, the defense anticipates that the government will call one or more Nike representatives (executives, in-house counsel, or outside lawyers from Boies Schiller Flexner) to testify at trial inasmuch as Nike representatives participated in the meetings and phone calls that are the subject of the charges in the case.

**B.**     **Legal Standard**

Rule 17(c) of the Federal Rules of Criminal Procedure, which governs the issuance of subpoenas *duces tecum*, provides for the production of documents in advance of trial.  Rule 17(c)(1) provides:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

As the Supreme Court held in *United States v. Nixon*, 418 U.S. 683 (1974), a party may obtain a subpoena for the pretrial production of documents where (a) the information sought is evidentiary and relevant; (b) the documents are not otherwise procurable reasonably in advance of trial by the exercise of due diligence; (c) the party cannot properly prepare for trial without such production in advance of trial and failure to obtain the documents may lead unreasonably to delay the trial; and (d) the application is made in good faith and is not intended

---

[1] Mr. Avenatti incorporates by reference the legal analysis set forth in his Memorandum of Law in Support of Motion to Dismiss for Failure to State an Offense, and Because the Extortion Statutes are Vague-as-Applied.  *See* Dkt. #35 (filed Aug. 19, 2019).

as a general "fishing expedition." *In re Irving*, 600 F.2d 1027, 1034 (2d Cir. 1979) (citing *Nixon*, 418 U.S. at 699-700).  The Supreme Court explained that a subpoena for documents under Rule 17 "was not intended to provide a means of discovery for criminal cases[;] ... [rather,] its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials...." *Nixon,* 418 U.S. at 698-99 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951)).

Rule 17(c)(2) provides two grounds for objection to a Rule 17 subpoena: (a) that compliance would be unreasonable or (b) oppressive. *See also Nixon*, 418 U.S. at 698 ("A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise."). In *Nixon*, the Court considered a request by the Special Prosecutor to obtain recordings of conversations between known participants at identified times in the White House. In upholding the denial of President Nixon's motion to quash the subpoenas, the Supreme Court held that the movant had adequately demonstrated the relevancy, admissibility, and specificity of the information sought, thus justifying the enforcement of the subpoena. More specifically, the Court "followed Judge Weinfeld's formulation in *United States v. Iozia*, 13 F.R.D. 335, 338 (SDNY 1952)" requiring a showing that:

> (1) the documents are evidentiary ... and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition."

*Nixon*, 418 U.S. at 699. In a footnote, the Court reserved on whether the *Iozia* standard—or a lower one, instead—should "apply in its full vigor when the subpoena duces tecum is issued

to third parties rather than to government prosecutors." *Nixon* 418 U.S at 700 n.12 ("We need not decide whether a lower standard exists because we are satisfied that the relevance and evidentiary nature of the subpoenaed tapes were sufficiently shown as a preliminary matter to warrant the District Court's refusal to quash the subpoena.").  However, "courts in the Second Circuit have almost unanimously applied *Nixon* to subpoenas served on third-parties."  *United States v. Skelos*, No. 15-cr-317, 2018 WL 2254538, *2 (S.D.N.Y. May 17, 2018).

The *Nixon* test is met by establishing that the subpoena is designed to obtain relevant and admissible evidence for consideration by the jury at trial:

> While Rule 17(c) is limited to evidentiary materials, that is not to say that the materials subpoenaed must actually be used in evidence. It is only required that a good faith effort be made to obtain evidence.

*In re Martin Marietta Corp*., 856 F.2d 619, 622 (4th Cir. 1988) (citing *Bowman Dairy Co.,* 341 U.S. at 219-20 (1951)).  So long as the documents sought pursuant to the subpoena are evidentiary, the defendant has a statutory (Rule 17) *and constitutional* (Sixth Amendment) right to have them available *during* the trial. And to the extent that early production of those documents expedites the trial, Rule 17(c) provides a mechanism for inspection of those documents *before* the trial:

> Rule 17(c) reflects the command of the Sixth Amendment that the full power and processes of the courts are available to defendants in criminal cases to help them defend against the charges brought by the Government. And, because it was enacted in order to "expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials," *Bowman Dairy Co. v. United States,* 341 U.S. 214, 220 (1951), Rule 17(c) is more far reaching than testimonial subpoenas.

*United States v. Beckford*, 964 F. Supp. 1010, 1016 (E.D. Va. 1997).

> [W]here evidence relevant to guilt or punishment is in a third party's possession and is too massive for the defendant to adequately review unless obtained prior

to trial, pre–trial production through Rule 17(c) is necessary to preserve the defendant's constitutional right to obtain and effectively use such evidence at trial. *See United States v. Murray*, 297 F.2d 812, 821 (2d Cir. [1962]) (interpreting *Bowman* as saying that Rule 17(c) permits pretrial production if it is necessary for the moving party to use the material as evidence at trial).

*United States v. Tomison*, 969 F. Supp. 587, 593 (E.D. Cal. 1997).

Moreover, "[d]ocuments bearing on a witness's decision to 'cooperate with the government' or any bias towards the defendant … can be proper subjects of a Rule 17(c) motion because those types of documents may themselves be admissible into evidence." *Skelos*, 2018 WL 2254538, at *2; *accord United States v. Cavollo*, No. 10-cr-654 HB, 2012 WL 1195194, at *2 (S.D.N.Y. Apr. 9, 2012); *see also United States v. Larouche Campaign*, 841 F.2d 1176 (1st Cir. 1988) (requiring pretrial production of evidence that would likely show a witness's bias).  With respect to admissibility, the Court is to apply a flexible standard at this stage.  *See generally United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) ("Admittedly it will often be difficult at the pretrial stage to determine with precision the admissibility of certain documents; therefore, if a document is arguably relevant and admissible under the Rules of Evidence, the *Nixon* 'evidentiary' requirement is likely satisfied.").  Although courts sometimes delay the production of impeaching evidence under Rule 17(c) until after the witness testifies, courts retain the discretion to determine the timing and manner of production to avoid unnecessary delay and disruption of the trial.  *Skelos*, *supra*.

## C.    Subpoena Duces Tecum to Custodian of Records of Nike, Inc.

As noted above, the subpoena duces tecum to Nike seeks production of the following documents in Nike's possession:

1. All text messages and e-mails to or from Nike employees Carlton DeBose and/or Jamal James discussing or referencing payments for the benefit of

California Supreme players DeAndre Ayton, Brandon McCoy, and/or Bol Bol, in 2016-17;

2. All text messages and emails to or from Nike employees Carlton DeBose, Jamal James, John Stovall, Nico Harrison, and/or Rachel Baker discussing or referencing the payment to amateur basketball players and/or their families or agents, between January 1, 2016, and March 25, 2019;

3. All false invoices that Nike employees Carlton DeBose and/or Jamal James directed or participated in (whether directly or indirectly) to hide payments (whether cash or otherwise) to amateur basketball players and/or their families or agents (including handlers), between January 1, 2016, and March 25, 2019;

4. The federal grand jury subpoena(s) served upon Nike by the USAO-SDNY and all certificates of authentication/production indicating when Nike, Inc., produced the documents in ##1-3, if at all, to the government.

### Nike Requests #1-3

As detailed in Dkt. #29, the bases for Franklin's legal claims against Nike included measures that Nike executives, including DeBose and James, undertook in 2016-17 to: a) force Franklin to redirect money to the "handlers" of amateur players and their family members, in violation of NCAA rules, or risk losing his Nike EYBL team; b) direct Franklin to create false invoices to disguise the payments as travel expenses and a fake sponsorship for a 501(c)(3) organization; and c) force Franklin to allow two other individuals (Freedman and McDonald) to take over the California Supreme "17U" team in order to steer one of the players "handled" by McDonald from Adidas to the Nike sponsored league, thus damaging Franklin's brand and reputation.  Jeffrey Auerbach brought these matters to the attention of Nike executive John Slusher on or about February 6, 2019.  *See* Dkt. 30-10, at p.6.

The discovery provided by the government contains evidence that Nike executives were involved in arranging and coordinating payments to amateur players and that the conduct extended well beyond the California Supreme.  Some of that evidence was included in the

exhibits filed in connection with Mr. Avenatti's motion to dismiss the indictment for selective and vindictive prosecution.  (*E.g.,* Dkt. ##30-4; 30-5, 30-16); *see* also Declaration of Scott A. Srebnick, Esq., in support of Rule 17(c) motion (filed contemporaneously herewith), Exh. 2. Payments to a college-bound high school player and his/her family are expressly prohibited by NCAA Rules.  *See generally* NCAA Division 1 Manual, Bylaw 12; *see also* NCAA Bylaw 12.1.2 ("An individual loses amateur status and thus shall not be eligible for intercollegiate competition in a particular sport if the individual … (b) accepts a promise of pay…").  Paying amateur players, knowing that such payments would render the players ineligible for the college scholarships, can be punished under federal criminal law, *as evident in the recent convictions involving Adidas employees in this district.  See United States v. Gatto*, 295 F.Supp.3d 336, 345-49 (S.D.N.Y. 2018).  Moreover, using false invoices to conceal (and deduct) illegal payments, especially through charitable organizations, may violate criminal tax statutes.

Mr. Avenatti satisfies the *Nixon* test as to the Nike documents.  There is no doubt that the evidence exists, as the defense is in possession of at least a small subset of it.  However, it is not clear whether Nike has produced all such evidence to the government.  It is Mr. Avenatti's position that he should be entitled to, among other things, present: a) evidence of the misconduct directed by Nike, and other collaborators, aimed at Coach Franklin; and b) evidence of broader misconduct directed by Nike across amateur basketball.  The requested evidence is substantively relevant to prove the validity of Coach Franklin's claims and the scope of the investigation that was necessary to properly root out the misconduct.  Evidence of the broader misconduct by Nike further corroborates what Coach Franklin and his advisor Jeffrey Auerbach initially told Mr. Avenatti about Coach Franklin's claims and the widespread

nature of Nike's corruption of amateur basketball.  It further establishes the correctness of Mr. Avenatti's belief and state of mind at the time about the merits and potential value of Coach Franklin's claims and justifies Coach Franklin's litigation objective, as he expressed to Mr. Avenatti, to root out corruption at Nike.  Finally, evidence of widespread misconduct by Nike – that is, evidence that Nike has a problem that compares in scope with Adidas -- is relevant to show the motive of Nike representatives to testify in favor of, and curry favor with, the government (i.e. to avoid prosecutions similar to those brought against individuals affiliated with Adidas).  *See generally Davis v. Alaska*, 415 U.S. 308 (1974).

The entirety of the requested documents is not otherwise procurable reasonably in advance of trial by exercise of due diligence, as they are in the possession of a third party.  Mr. Avenatti cannot procure the information through other means, as the government has not committed to what additional Nike materials it intends to produce, and Mr. Avenatti does not know whether the government actually possesses all of the documents being sought.

Given the likely volume of such evidence, Mr. Avenatti cannot properly prepare for trial without such production and inspection in advance of trial.  Finally, the application is made in good faith and is not intended as a general 'fishing expedition" as Mr. Avenatti has demonstrated through his filings that Nike is in possession of documents responsive to the subpoena (Requests #1-3).

### Nike Request #4

According to published media reports, the USAO-SDNY served at least one grand jury subpoena on Nike EYBL in September 2017.   https://www.espn.com/mens-college-basketball/story/_/id/20847512/nike-elite-youth-basketball-league-served-subpoena-sources. Nike should be required to produce the federal grand jury subpoena(s) and the evidence (*e.g.,*

certificates of authenticity) indicating *when* it produced documents in response to that subpoena. On the date of Mr. Avenatti's arrest (March 25, 2019), Nike issued a statement that it "has been cooperating with the government's investigation into NCAA basketball for over a year." Yet, despite evidence produced by Nike to the government that its payments for the benefit of high school players was rampant, it does not appear that a single employee or executive at Nike has been held accountable. Mr. Avenatti seeks evidence in Nike's possession that it did not timely comply with the federal grand jury subpoena and therefore now has an even more powerful motive to please the prosecutors.

### D.   Timing and Procedure

Nike is represented by counsel, who have responded to subpoena(s) served by the government. Mr. Avenatti requests that Nike be directed to produce the requested materials to undersigned counsel's office on or before October 15, 2019. Mr. Avenatti will make the materials immediately available as reciprocal discovery in the event that Nike does not provide a copy to the government.

## III.   CONCLUSION

For the foregoing reasons, Mr. Avenatti respectfully requests that the Court authorize him to serve the subpoenas duces tecum on the Custodian of Records of Nike, Inc., with a return date of October 15, 2019.

Respectfully submitted,

By:   /s/Scott A. Srebnick
Scott A. Srebnick, P.A.
201 South Biscayne Boulevard
Suite 1210
Miami, FL 33131
Telephone: (305) 285-9019
Facsimile:  (305) 377-9937

E-Mail:  Scott@srebnicklaw.com


By:      /s/Jose M. Quinon
         Jose M. Quinon, P.A.
         2333 Brickell Avenue, Suite A-1
         Miami, FL 33129
         Telephone:  (305) 858-5700
         Facsimile:  (305) 358-7848
         E-Mail:  jquinon@quinonlaw.com

         *Attorneys for Defendant Michael Avenatti*


## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2019, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.


                   /s/Scott A. Srebnick
                   Scott A. Srebnick