LAW OFFICES
# SCOTT A. SREBNICK, P.A.

SCOTT A. SREBNICK*
* ALSO ADMITTED IN NEW YORK

201 S. Biscayne Boulevard
Suite 1210
Miami, Florida 33131

Tel: 305-285-9019
Fax: 305-377-9937
E-mail: scott@srebnicklaw.com
www.srebnicklaw.com

September 10, 2019

**Via ECF**
Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

  Re: *United States v. Michael Avenatti*, No. 19-cr-373 (PGG)
    **Defendant's Reply re Request for a two-month**
    **adjournment of trial date**

Dear Judge Gardephe:

  We represent defendant Michael Avenatti in this case. We write in reply to the government's response (Dkt. #49) to our request for a two-month adjournment of the trial date.

  Mr. Avenatti is seeking a two-month adjournment of the trial date – his first and only request -- because of a multitude of discovery issues, legal issues, and trial preparation requirements that will make it exceedingly difficult for his counsel to be adequately prepared to try the case in November 2019. The government does not identify any reasons why it cannot try this case in early January 2020 -- no scheduling conflicts, no issues with witness availability, or the like – and no reasons why a short delay would prejudice the government. The requested adjournment would mean that the time period from filing of the Indictment until disposition of the case would be *far less* than the median of 14.1 months in this district.[1] Given that Mr. Avenatti is fighting for his liberty in three separate federal criminal cases on two coasts, we ask the Court to exercise its discretion in favor of a brief adjournment to allow counsel to be adequately prepared.

  Undersigned counsel are not seeking an adjournment of the current deadlines for the parties to file responses and replies to the pending motions, file and respond to motions in limine, and submit voir dire requests and proposed jury instructions, all of which are due by October 11, 2019. (Dkt. #20). Rather, we request that the Court simply move the trial date back two months with the hope that the Court will schedule a conference or oral argument in late October or early November, after all of the submissions have been made, so that the parties can be aware of the Court's rulings and then marshal resources to efficiently prepare for trial

---

[1] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2019.pdf (statistics for twelve-month period ending June 30, 2019)

1

in early January in accordance with the Court's view of the law. This is particularly important because Mr. Avenatti faces costly litigation on multiple fronts. Undersigned counsel must make choices about, among other things, which fact witnesses to subpoena for trial and which expert witnesses to engage for trial based on the Court's rulings.[2]

Importantly, the discovery in this case is not yet complete, as government counsel informed undersigned counsel on Friday, September 6, that the government just received production from Apple of data from Mr. Avenatti's i-Cloud account in response to a search warrant that was signed on August 13, 2019. Mr. Avenatti does not know the volume or type of data that Apple has produced. However, we would expect that the data will contain information protected by the attorney-client and work product privileges, both between Mr. Avenatti (as lawyer) and his own clients, as well as Mr. Avenatti (as client) and various lawyers. While government counsel has indicated that there is a filter team of prosecutors in place to conduct the privilege review, we are conferring with government counsel this afternoon to confirm that undersigned counsel will have an opportunity to object to determinations by the filter team regarding privilege and crime-fraud before materials are turned over to the prosecution team. If we cannot reach an agreement on the procedure, we may seek appointment of an independent third party to conduct that review, *see United States v. Stewart*, No. 02 Cr 396 (JGK), 2002 WL 1300059 (S.D.N.Y. June 11, 2002); *United States v. Abbell*, 914 F.Supp. 519 (S.D.Fla. 1995), and would be prepared to raise this issue with the Court by letter motion no later than tomorrow, September 11, 2019.

An adjournment of the trial is also necessary for undersigned counsel to review the relevant discovery being produced in the two other federal cases with which Mr. Avenatti is charged. Notably, the USAO-SDNY does not disclaim an intent to cross-examine Mr. Avenatti about the facts of those other cases should he testify. Instead, the USAO-SDNY argues that Mr. Avenatti already has the materials, but the federal prosecutors in California have acknowledged that they have not yet produced to the defense in that case the underlying evidence related to claims being made by Mr. Avenatti's former clients. *See* Dkt. #49, at pp. 5-9, in No. 8:19-cr-00061 (C.D.Ca. July 22, 2019). Because the USAO-SDNY prosecutors have no duty to disclose evidence they may use solely for impeachment purposes, absent an adjournment, the USAO-SDNY would have the advantage of cross-examining Mr. Avenatti about matters, and possibly with documents, that undersigned will not be prepared to address.

The government describes this case as a "straightforward" case concerning "the unlawful and wrongful use of information *taken by the defendant from a client* (or potential client) to extort a public corporation into making substantial payments to the defendant." (Dkt. #49:1). That description is belied by the evidence. Rather, this case involves information

---

[2] Because a number of witnesses with relevant information in this case live on the west coast – either in California (*e.g.*, Franklin, Auerbach) or Oregon (Nike witnesses) -- the expense to serve subpoenas on witnesses and arranging for their travel and lodging in this case will be substantial. *See* Fed.R.Civ.P. 17(d). Moreover, the cost of retaining experts will be even greater.

*voluntarily provided* to Mr. Avenatti by a client – Coach Gary Franklin, Sr. of the California Supreme – who had valid legal claims, felt that he was wronged by Nike, stated that he was willing to "fall on the sword" to obtain "justice" from Nike, and engaged Mr. Avenatti to pursue those legal claims. (Dkt. #29:20; Dkt. #30-9:2).[3]

Indeed, the case is anything but straightforward, as evidenced by the fact that a highly experienced criminal defense lawyer who participated in all of the relevant phone calls and meetings (Mark Geragos) did not view the conduct as criminal. Rather, this is the type of case that "necessitates judicial line drawing. All can agree that the Hobbs Act has been expanded to cover conduct beyond that contemplated by Congress in drafting the statute. The question then becomes: what is the principled basis for drawing the line between legality and illegality? Further, is not a criminal defendant entitled to fair warning his conduct will transgress that line?" *United States v. Albertson*, 971 F.Supp. 837, 849 (D. Del. 1997).

The government improperly seeks to bifurcate the two components of the settlement demand made by Mr. Avenatti on behalf of Coach Franklin in order to fit the theory of prosecution the government advanced publicly on the date of Mr. Avenatti's arrest: that Mr. Avenatti was acting *solely* out of his own self-interest in demanding to be paid to conduct an internal investigation. This was before the government obtained the plethora of text and e-mail communications evidencing that Coach Franklin and a consultant, Jeffrey Auerbach, strategized for a year about how to hold Nike accountable and root out the corruption. Coach Franklin's desire for both "justice" and "restitution" was expressed by him and Mr. Auerbach on numerous occasions before they sought legal assistance from Mr. Avenatti. Coach Franklin wanted Nike to commit to "[c]lean up and reorganize Nike EYB and grassroots basketball by installing new management and procedures to best prevent this type of abuse and criminal activity from happening in the future," (Dkt. #29:19; Dkt. #30-8), and "get rid of the corruption and corrupt execs." (Dkt. #29:21).

Moreover, contrary to the government's contention that "there is no support for the defendant's factual claim" that the proposed press conference was in connection with a contemplated lawsuit, (Dkt. #49:3), the evidence is overwhelming that *at all times*, the parties were communicating for the purpose of *settling Mr. Franklin's legal claims*:

- *First*, Mr. Geragos stated in one of his first written communications with Nike's in-house litigation counsel that the purpose of the proposed first meeting was to have a "confidential mediation discussion."

---

[3] The evidence provided to Mr. Avenatti by Coach Franklin, through his advisor Jeffrey Auerbach, included bank statements, text messages, false invoices, newspaper articles, a civil complaint filed in a similar case involving Adidas, a PowerPoint presentation, and a memo of a conversation that Auerbach had with a high-ranking Nike executive. (Dkt. ##30-4; 30-10; 30-12; 30-13; 30-14).

3

- *Second*, when Mr. Geragos next spoke to Nike's outside counsel, Mr. Wilson, on March 13, 2019, they again discussed that the meeting was going to be a "mediated discussion" between lawyers on behalf of their clients.

- *Third*, at the first meeting (March 19), which was the first time Mr. Avenatti communicated with Nike or its lawyers, the very first words of substance out of Mr. Avenatti's mouth were that the conversation would be covered by Rule 408 as a confidential settlement discussion, and that nothing discussed would be admissible *in any litigation*. (Dkt. #30-15:2).[4] Nike lawyer Scott Wilson (from Boies Schiller Flexner) agreed that the meeting was covered by 408. (Dkt. #30-15:2). Mr. Avenatti then immediately stated, "I represent a whistleblower who has information that Nike directed the whistleblower to make payments to the number one pick in last year's draft." Mr. Avenatti later went on to repeat that he "represent[s] a whistleblower" who had been "squeezed out of his contract." And "I believe he has a claim for breach of contract, tortious interference, and potentially other claims." (Dkt. #30-15:2-3).

- *Fourth*, Mr. Avenatti then outlined the *evidence* that he had against Nike, including e-mails, text messages, bogus invoices, and travel records supporting Mr. Franklin's claims; Mr. Avenatti allowed Mr. Wilson to review the evidence. (Dkt. #30-15:2-6). Nike lawyer Wilson later commented to the other two lawyers that one of the documents "appeared to be from a draft complaint or memo." (Dkt. #30-15:5). Nike lawyer Rob Leinwand, the Vice President of Global *Litigation* and Employment Counsel, then told Mr. Avenatti "*I get the claims*," but stated he needed to study Coach Franklin's contract. (Dkt. #30-15:6).

- *Fifth*, at the meeting two days later on March 21, 2019, Mr. Avenatti reiterated that the discussion was governed by Rule 408 – a rule of evidence that governs admissibility of evidence at trial – and Nike lawyer Wilson again agreed.

---

[4] By relying on the notes of the March 19 meeting furnished by Boies Schiller to the government, Mr. Avenatti is not vouching for their accuracy in all respects. Mr. Avenatti contends that all settlement discussions should be excluded at trial under Fed.R.Evid. 501, *see, e.g., Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003) (recognizing federal common law privilege for communications made in furtherance of settlement under Rule 501 and protecting from third-party discovery an alleged bribe offer made during settlement discussions), and the litigation privilege. This argument will be the subject of a motion *in limine*. How Rule 408 fits into the analysis will also be addressed in that motion. At a minimum, however, the government is incorrect when it argues that Rule 408 "does not bar the admission of conduct or statements 'when offered in a criminal case.'" (Dkt. #49:4, n.1). After the 2006 Amendment, Rule 408 bars the admission in criminal cases of statements made during compromise negotiations, *United States v. Davis*, 596 F.3d 852, 860 n.6 (D.C. Cir. 2010), except under certain circumstances. *See, e.g., United States v. Gannaway*, 477 Fed. Appx. 618, *4 (11th Cir. 2012); Fed.R.Evid. 408(b).

4

- *Sixth*, the draft of the General Release and Settlement Agreement that Mr. Avenatti presented to Nike lawyer Wilson at the conclusion of the meeting on March 21, 2019, expressly stated that the settlement "is being made for the express and sole purpose of avoiding expensive, protracted litigation relating to disputes that have arisen between the parties." (Dkt. #30-17:2).

Thus, the case and Mr. Avenatti's alleged guilt are not straightforward at all. Rather, this case will necessitate the type of judicial line drawing not encountered in the average criminal case, nor even in the typical extortion case: for example, does "wrongfulness" – *i.e.*, the line between a lawful demand and an extortionate one that can result in years of incarceration -- turn on whether the evidence of Nike's misconduct would be first exposed in a threatened press conference versus a threatened publicly-filed lawsuit? Does "wrongfulness" depend on the amount or type of demand made during an agreed-upon settlement negotiation of a plausible claim? What evidence is admissible to prove the plausibility of the claim? Does the government intend to argue that the *amount* of the demand to settle Coach Franklin's claim was extortionate because it was too high? Does it intend to argue that the estimated cost of the internal investigation was too high, or that Mr. Avenatti was not entitled to demand an internal investigation, led by him and Mr. Geragos, as part of the settlement of Coach Franklin's claim?

We submit that a *pretrial* charge conference – sufficiently in advance of trial – is necessary in this case given the complexity of (a) applying the extortion statutes to a lawyer's demand for settlement of a client's plausible claim, (b) the recognized exception to the extortion statutes for threats to cause economic loss through litigation (even in bad faith), *see United States v. Pendergraft*, 297 F.3d 1198, 1206 (11th Cir. 2002), (c) the fact that the information that Mr. Avenatti allegedly threatened to disclose in a press conference would have become public in the contemplated litigation of Coach Franklin's plausible claims, and (d) Nike's own arguable duty to publicly disclose material misconduct (i.e. to the SEC). *See* Dkts. ##29, 35, 42. All of these factors, and others, distinguish this case from *United States v. Jackson*, 180 F.3d 55 (2d Cir.), *on reh'g*, 196 F.3d 383 (2d Cir. 1999). The Court's rulings on the anticipated *in limine* motions and a discussion of the proposed jury instructions at a charge conference would enable counsel to efficiently marshal resources and try the case in early January 2020 in a manner that is consistent with the Court's view of the law.

For each of these reasons, Mr. Avenatti respectfully requests that the Court grant an adjournment of the trial date, until January 2020, and schedule a conference in late October or early November to hear argument on the then-pending motions and requests to charge.

Respectfully,

*/s/ Scott A. Srebnick*

Scott A. Srebnick
Jose M. Quinon