UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

                                     :

UNITED STATES OF AMERICA       :

                                      :

        - v. -             :        19 Cr. 373 (PGG)

                                        :

MICHAEL AVENATTI,           :

                                      :

               Defendant.     :

                                      :

------------------------------------------------------- x

# **MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA**
# **IN OPPOSITION TO THE DEFENDANT'S PRETRIAL MOTIONS**

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

Matthew D. Podolsky
Daniel C. Richenthal
Robert B. Sobelman
Assistant United States Attorneys
- *Of Counsel* -

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 1

I.    The Indictment Sufficiently Alleges Extortion ................................................ 5

  A.  Applicable Law ............................................................................................ 5

  B.  Discussion .................................................................................................... 7

II.    The Extortion Statutes Are Not "Vague" ...................................................... 13

  A.  Applicable Law .......................................................................................... 13

  B.  Discussion .................................................................................................. 14

III.    The Defendant's Selective or Vindictive Prosecution Claims Are Meritless ................... 16

  A.  Applicable Law .......................................................................................... 17

    1.  Selective Prosecution ........................................................................ 17

    2.  Vindictive Prosecution ...................................................................... 19

  B.  Discussion .................................................................................................. 20

    1.  The Defendant's Selective Prosecution Claim Fails ......................... 21

    2.  The Defendant's Vindictive Prosecution Claim Fails ....................... 24

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Wayte v. United States*, 470 U.S. 598, 607 (1985)........................................................... 17, 18, 23

*Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280 (S.D.N.Y. 2016).................................... 10, 11

*Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337 (1952)....................................... 6

*Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2004) ............................................................... 18

*Costello v. United States*, 350 U.S. 359 (1956) ............................................................... 5

*Hamling v. United States*, 418 U.S. 87 (1974).................................................... 5, 7, 8, 13

*La Suisse, Societe D'Assurances Sur La Vie v. Kraus*, No. 06 Civ. 4404 (CM) (GWG), 2014 WL 3610890 (S.D.N.Y. July 21, 2014) ..................................................................... 10, 11

*Maynard v. Cartwright*, 486 U.S. 356 (1988)................................................................... 14

*United States v. Alameh*, 341 F.3d 167 (2d Cir. 2003) ................................................... 17

*United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998) ................................................... 5, 7

*United States v. Armstrong*, 517 U.S. 456 (1996) ............................................... 17, 18, 20

*United States v. Bass*, 536 U.S. 862 (2002) (per curiam) ................................... 19, 22, 23

*United States v. Bout*, No. 08 Cr. 365 (SAS), 2011 WL 2693720 (S.D.N.Y. July 11, 2011) ........ 8

*United States v. Capo*, 817 F.2d 947 (2d Cir. 1987)........................................................ 6

*United States v. Coss*, 677 F.3d 278 (6th Cir. 2012) ............................................... 13, 15

*United States v. De La Pava*, 268 F.3d 157 (2d Cir. 2001) ............................................ 5

*United States v. Elie*, No. 10 Cr. 33 (LAK), 2012 WL 383403 (S.D.N.Y. Feb. 7, 2012) ............. 6

*United States v. Elson*, 968 F. Supp. 900 (S.D.N.Y. 1997) ............................................ 6

*United States v. Fares*, 978 F.2d 52 (2d Cir. 1992)............................................ 17, 18, 19, 21, 23

*United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011).................................................. 14

*United States v. Godwin-Painter,* No. CR415-100, 2015 WL 5838501 (S.D. Ga. Oct. 6, 2015) .. 9

*United States v. Goldberg*, 756 F.2d 949 (2d Cir. 1985) ......................................................... 6, 7

*United States v. Goodwin*, 457 U.S. 368  (1982) ......................................................... 19

*United States v. Halloran*, 821 F.3d 321 (2d Cir. 2016).............................................. 13, 15

*United States v. Hinton*, 703 F.2d 672 (2d Cir. 1983) ................................................ 20

*United States v. Jackson*, 180 F.3d 55 (2d Cir. 1999) ........................................... *passim*

*United States v. Jackson*, 196 F.3d 383 (2d Cir. 1999) ............................................ 12

*United States v. Jackson*, 986 F. Supp. 829 (S.D.N.Y. 1997) ................................... 15

*United States v. Johnson*, 171 F.3d 139 (2d Cir. 1999) (per curiam) ..................... 19, 24

*United States v. Koh*, 199 F.3d 632 (2d Cir. 1999)................................................... 19, 20

*United States v. Lewis*, 517 F.3d 20 (1st Cir. 2008) ................................................ 21

*United States v. Milani*, 739 F. Supp. 216 (S.D.N.Y. 1990).................................... 14

*United States v. Moon*, 718 F.2d 1210 (2d Cir. 1983) .............................................. 17, 18

*United States v. Murgio*, 209 F. Supp. 3d 698 (S.D.N.Y. 2016) .................................... 7

*United States v. Olvis*, 97 F.3d 739 (4th Cir. 1996)................................................ 21, 22

*United States v. Rosen*, 716 F.3d 691 (2d Cir. 2013)................................................ 13

*United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003) ............................................ 14

*United States v. Sanders*, 211 F.3d 711 (2d Cir. 2000) ........................................... 19, 20

*United States v. Smith*, 231 F.3d 800 (11th Cir. 2000) ............................................ 21

*United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009) .............................................. 20

## STATUTES

18 U.S.C. § 875......................................................................................................... 6, 15

18 U.S.C. § 1951....................................................................................................... 6, 15

RULES

Fed. R. Crim. P. 7 ................................................................................................................ 5

Fed. R. Crim. P. 29 .............................................................................................................. 6

OTHER

Indictment, *United States v. Avenatti*, 19 Cr. 374 (DAB) (S.D.N.Y. May 22, 2019)................... 24

Indictment, *United States v. Avenatti*, 19 Cr. 61 (JVS) (C.D. Cal. Apr. 10, 2019) ..................... 24

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the defendant's pretrial motions (1) to dismiss the Indictment for failure to state an offense or because the "extortion statutes" are purportedly vague as applied (Dkt. No. 35) ("Def. R. 12 Mem."); and (2) to dismiss the Indictment or, in the alternative, compel discovery for "vindictive and selective prosecution" (Dkt. No. 29) ("Def. 5th Amend. Mem.").[1]   The defendant's motions are entirely without merit and should be denied.

## STATEMENT OF FACTS

As charged, the defendant unlawfully and wrongfully used information obtained from his client (or potential client) in an effort to extort a public corporation into paying at least $15 million, not to the client but directly to the defendant himself.   Specifically, as set forth in a detailed complaint and the Indictment, during the course of phone calls and meetings, almost all of which were audio- or video-recorded, the defendant threatened, among other things, to hold a press conference on the eve of Nike's quarterly earnings call and the start of the annual National Collegiate Athletic Association men's basketball tournament, at which he would announce allegations of misconduct by employees of Nike.   (Indictment ¶ 1; Compl. ¶ 8.)  The defendant stated that he would refrain from holding that press conference and harming Nike only if Nike made a payment of $1.5 million to a client (or potential client) of the defendant (identified in the Indictment as "Client-1"), and further agreed to "retain" the defendant and another individual (identified in the Indictment as "CC-1") to conduct an "internal investigation"—an investigation that Nike did not request and the defendant had no right to be retained to conduct in any event—

---

[1] The defendant also filed a motion seeking disclosure of the identities of co-conspirators other than "CC-1," as defined in the Indictment.  (Dkt. No. 33.)  As the Government has provided the defendant with the information requested in that motion, it should be denied as moot.

for which the defendant demanded to be paid, at a minimum, between $15 million and $25 million. (Indictment ¶ 1; Compl. ¶ 8.) Alternatively, the defendant demanded a total payment of $22.5 million to guarantee "confidentiality" and so that he would "ride off into the sunset." (Indictment ¶¶ 1, 18(d); Compl. ¶ 12(d).)

Over the course of calls and meetings with representatives of Nike, the defendant focused on payments directed to him, explaining that Nike must hire him to conduct an internal investigation, but even if Nike chose to hire another firm to conduct an internal investigation, Nike would still be required to pay the defendant at least twice the fees of any other firm.  (Indictment ¶ 12(c); Compl. ¶ 10(c)(iii).)  The defendant later insisted that he be paid more than $9 million (Indictment ¶ 17(b); Compl. ¶ 11(d)(iv)), a demand that grew to a $12 million retainer to be paid immediately and to be "deemed earned when paid," with a minimum guarantee of $15 million and a maximum fee of $25 million, "unless the scope changes" (Indictment ¶ 18(a); Compl. ¶ 12(a)). When informed by an outside attorney for Nike (identified in the Indictment as "Attorney-1") that Attorney-1 had never received a $12 million retainer from Nike and never done an investigation for Nike "that breaks $10 million," the defendant responded, in part, by asking whether Attorney-1 has ever "held the balls of the client in your hand where you could take five to six billion dollars market cap off of them?"  (Indictment ¶ 18(b); Compl. ¶ 12(b).)

While the defendant, in his motion papers, repeatedly alleges that any demand for an internal investigation was driven by or for the benefit of Client-1, at no point in any of the recorded meetings did the defendant say as much.  Instead, the defendant repeatedly made his own demands for payment to himself.  And, in fact, when Attorney-1 asked whether Nike could resolve the defendant's demands by paying only Client-1, the defendant responded not that Nike should increase its payment to his client, but rather that he did not think it made sense for Nike to pay his

client an "exorbitant sum of money . . . in light of his role in this."  (Indictment ¶ 18(b); Compl. ¶ 12(c).)  The defendant later stated: "If [Nike] wants to have one confidential settlement and we're done, they can buy that for twenty-two and half million dollars and we're done. . . .  Full confidentiality, we ride off into the sunset . . . ."  (Indictment ¶ 18(d); Compl. ¶ 12(d).)

Shortly after those demands were made, and consistent with the threats the defendant communicated, the defendant posted a message to Twitter, writing, in reference to an article about a prior prosecution involving employees of a rival company: "Something tells me that we have not reached the end of this scandal.  It is likely far far broader than imagined . . . ."  (Indictment ¶ 19; Compl. ¶ 13.)  After posting that message to Twitter, the defendant sent by text message to CC-1 a link to the Twitter message and wrote to CC-1, "Warning shot."  (Indictment ¶ 21.)

On March 24, 2019, the defendant was arrested outside of the offices of counsel for Nike, having shown up for what the defendant had presented as Nike's final opportunity to accede to his extortionate demands.  The defendant was charged in Complaint 19 Mag. 2927 with transmission of interstate communications with intent to extort and conspiracy to commit the same, in violation of 18 U.S.C. §§ 371, 875(d), and 2; and extortion and conspiracy to commit the same, in violation of 18 U.S.C. §§ 1951 and 2.  (Dkt. No. 1.)

On May 22, 2019, the grand jury returned Indictment 19 Cr. 373 (PGG) charging the defendant with the same offenses.  (Dkt. No. 8.)  The Indictment set forth in detail the circumstances of the charged conduct as well as each of the elements of the charged offenses. (Indictment ¶¶ 1-24.)  As to Count One—conspiracy to transmit interstate communications with intent to extort—the Indictment alleged that the defendant and others known and unknown "knowingly and willfully did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, transmission of an interstate

3

communication with intent to extort, in violation of Title 18, United States Code, Section 875(d)."
(*Id.* ¶ 26.)  The Indictment further alleged it was an object of the conspiracy that the defendant and
others, "with intent to extort from a corporation any money and other thing of value, would and
did transmit in interstate commerce a communication containing a threat to injure the reputation
of a corporation"—elements that were also set forth as providing the basis of Count Three, which
charged the defendant with transmission of interstate communications with intent to extort.  (*Id.*
¶¶ 27, 32.)  With respect to Count Two—conspiracy to commit extortion—the Indictment alleged
that the defendant and others "knowingly did combine, conspire, confederate, and agree together
and with each other to commit extortion, as that term is defined in Title 18, United States Code,
Section 1951(b)(2), and thereby would and did obstruct, delay, and affect commerce and the
movement of articles and commodities in commerce, as that term is defined in Title 18, United
States Code, Section 1951(b)(3), including by the wrongful use of fear of economic loss."  (*Id.*
¶ 30.)  Finally, with respect to Count Four—extortion—the Indictment alleged that the defendant
"knowingly did attempt to commit extortion as that term is defined in Title 18, United States Code,
Section 195l(b)(2), and thereby would and did obstruct, delay, and affect commerce and the
movement of articles and commodities in commerce, as that term is defined in Title 18, United
States Code, Section 1951(b)(3)."  (*Id.* ¶ 34.)

## ARGUMENT

The defendant argues that the Court should (1) dismiss the Indictment because it fails
sufficiently to allege a crime; (2) dismiss the Indictment because the "extortion statutes" are
purportedly vague as applied to him; and (3) dismiss the Indictment because he has been
vindictively and/or selectively prosecuted, or, in the alternative, compel discovery regarding his
vindictive and selective prosecution claims.  The first two arguments fail as a matter of law—the

4

Indictment unquestionably satisfies the requirements of Rule 7 of the Federal Rules of Criminal Procedure, as it contains a plain, concise, and definite recitation the facts and charges alleged, and the theory charged is entirely consistent with clear, longstanding, and well-settled law.   The defendant's final argument, like much of the rest of his briefing, appears to be little more than an effort to seek distract the Court (and future potential jurors) from the defendant's criminal conduct, and has no basis in fact or law.

## I.        The Indictment Sufficiently Alleges Extortion

### A.        Applicable Law

It is well-settled that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits."  *Costello v. United States*, 350 U.S. 359, 363 (1956).  "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also* Fed. R. Crim. P. 7(c).  To state an offense, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998).

Where, as here, the charging instrument meets those basic requirements, dismissal of an otherwise facially valid indictment is an "'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights."  *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (citation omitted).  In particular, where a motion to dismiss the indictment is, at core, a challenge to the sufficiency or quality of the evidence the Government may adduce at trial to establish the defendant's guilt of the crimes charged, a defendant must wait until after the

close of the Government's case-in-chief at trial or after the jury's verdict before contesting the sufficiency of the evidence. *See* Fed. R. Crim. P. 29; *see also, e.g.*, *United States v. Elie*, No. 10 Cr. 336 (LAK), 2012 WL 383403, at *1 (S.D.N.Y. Feb. 7, 2012) ("[T]here is no summary judgment in criminal cases. . . . [A] pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." (internal quotation marks omitted)); *United States v. Elson*, 968 F. Supp. 900, 905 (S.D.N.Y. 1997). In short, on a pretrial motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, the allegations of the indictment must be taken as true. *See Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952); *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).

The Hobbs Act provides, in relevant part, that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do" shall be guilty of a crime. 18 U.S.C. § 1951(a). The Hobbs Act further defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear." *Id.* § 1951(b)(2). The Second Circuit has "repeatedly stressed that the element of 'fear' required by the [Hobbs] Act can be satisfied by putting the victim in fear of economic loss." *United States v. Capo*, 817 F.2d 947, 951 (2d Cir. 1987) (internal quotation marks omitted).

Similarly, 18 U.S.C. § 875(d) prohibits extortion through the use of interstate communications. That statute provides that "[w]hoever, with intent to extort from any person . . . any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another" shall be guilty of a crime.

6

As the Second Circuit has explained with respect to both provisions, "a threat to cause economic loss [or reputational harm] is not inherently wrongful; it becomes wrongful only when it is used to obtain property to which the threatener is not entitled." *United States v. Jackson*, 180 F.3d 55, 70 (2d Cir. 1999). Accordingly, a threatener may be found guilty of extortion based on a threat of economic or reputational harm where the threatener "seeks money or property to which the threatener does not have, and cannot reasonably believe she has, a claim of right, or where the threat has no nexus to a plausible claim of right." *Id.* at 71.

### B.    Discussion

There is no dispute that the Indictment "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117. Indeed, the Indictment indisputably contains the elements of the extortion and conspiracy charges and describes in detail the time, place, and circumstances of the offenses. (*See* Indictment ¶¶ 25-34.) Nothing more is required. *Alfonso*, 143 F.3d at 776.

The defendant does not disagree. Instead, he asks the Court to consider his own proffered factual allegations, none of which is in the Indictment, and conclude that, "as a matter of law," his conduct was not "wrongful." (Def. R. 12 Mem. 3-17.) But a motion to dismiss an indictment is decided on the face of the charging instrument, and *its* allegations must be accepted as true—not a defendant's. *See, e.g.*, *United States v. Murgio*, 209 F. Supp. 3d 698, 706 (S.D.N.Y. 2016) ("In evaluating a motion to dismiss, the Court 'accept[s] as true all of the allegations of the indictment.'" (quoting *Goldberg*, 756 F.2d at 950)). In short, that the defendant may seek to offer alleged alternative facts at trial or argue to the jury that his conduct was not wrongful is immaterial, as he is not entitled to dismissal of a properly returned indictment because he disagrees with its

7

allegations or believes the Government will not be able to meet its burden. *See, e.g.*, *United States v. Bout*, No. 08 Cr. 365 (SAS), 2011 WL 2693720, at *5 n.73 (S.D.N.Y. July 11, 2011) ("To the extent [that the defendant's] challenges are to the sufficiency of the Government's evidence to *satisfy*—as opposed to the sufficiency of the Indictment to *allege*—the federal elements of the crimes charged, those arguments are not appropriately decided on a motion to dismiss." (internal quotation marks omitted; emphases in original)), *aff'd*, 731 F.3d 233 (2d Cir 2013).

Nor is there any relevance to the defendant's many arguments about information that he contends should be in the Indictment. Rule 7, not the defendant, sets forth the requirements for what must be contained in an Indictment, namely, "the elements of the offense charged." *Hamling*, 418 U.S. at 117. And the defendant makes no argument (nor could he) that the Government has failed to satisfy Rule 7.

Moreover, the allegations the defendant faults the Indictment for lacking are entirely irrelevant and, in large part, wrong (although the Court need not consider their accuracy to deny the defendant's motion). For example, the defendant writes that he finds it "significant" that the Indictment does not allege that he "was threatening to publicly expose ***false*** information about Nike." (Def. R. 12 Mem. 3 (emphasis in original).) But where, as here, the defendant is charged with extortion, the truth or falsity of the information the defendant threatened to make public is immaterial as a matter of law, because it is an "established principle that, when a threat is made to injure the reputation of another, the truth of the damaging allegations underlying the threat is not a defense to a charge of extortion."[2] *Jackson*, 180 F.3d at 66.

---

[2] In so noting, the Government in no way concedes the underlying factual assertion—*i.e.*, that the information the defendant threatened to make public was "true."

The remainder of the list of allegations that the defendant claims he finds lacking—in addition to being unnecessary for the Indictment include—suffer from a common flaw: They all proceed from the flawed premise that the question in this case is whether Client-1 had a plausible claim of right to some property of Nike.[3]  (Def. R. 12 Mem. 3, 11-12.)  But Client-1 was not charged with extortion; the defendant was.  What the defendant seeks to read out of the Indictment is one of its core factual allegations—namely, that he demanded large payments for himself, payments to which *he* had no plausible claim of right, using threats of financial and reputational harm.  (Indictment ¶¶ 12(c), 17(b), 18(a).)  Indeed, as the Indictment alleges, the defendant sought "money or property to which [he] d[id] not have, and [could not] reasonably believe [ ]he ha[d], a claim of right," *Jackson*, 180 F.3d at 71.  Nothing more is required.

Nor is the defendant's assertion that a prosecution for extortionate threats made in the context of settlement negotiations is unprecedented (Def. R. 12 Mem. 1) either correct or relevant.  For example, in *United States v. Godwin-Painter*, the defendant filed a malpractice suit against his former attorney and threatened, during settlement negotiations, to release damaging information unless the victim settled the suit.  No. CR415-100, 2015 WL 5838501, at *1 (S.D. Ga. Oct. 6, 2015).  The defendant moved to dismiss the indictment, arguing that his "actions occurred in the context of civil litigation and could not be considered 'wrongful.'"  *Id.*  That court rejected the argument, concluding that the indictment was sufficient and the court could not engage in a pretrial sufficiency-of-the-evidence analysis.  *Id.* at *1-2.  That court went on to explain that even if it could evaluate the evidence, it would not dismiss the indictment, as the law did not permit an

---

[3] In support of this fundamentally erroneous argument, the defendant repeatedly asserts facts not contained in or flatly inconsistent with the Indictment.  For example, the defendant suggests that Client-1 requested or at least wanted the defendant to lead an internal investigation—a fact found nowhere in the Indictment.  (Def. R. 12 Mem. 11-12.)

individual to make extortionate threats "but then avoid prosecution by cloaking that wrongful threat in civil litigation." *Id.* at *2.[4]

Similar circumstances were presented in a civil extortion suit in *La Suisse, Societe D'Assurances Sur La Vie v. Kraus*, No. 06 Civ. 4404 (CM) (GWG), 2014 WL 3610890 (S.D.N.Y. July 21, 2014) (report and recommendation). There, the court considered whether the defendants committed extortion by initiating a lawsuit on behalf of insurance policyholders as a threat to force the victim to pay the defendants in exchange for withdrawing the suit. *Id.* at *4. In other words, the defendants used threats of legitimate litigation to extract payments for themselves. Because the defendants "could not have any claim of right to the proceeds of the . . . suit," the demand "to negotiate a payment directly to [themselves] in exchange for the withdrawal of all policyholder lawsuits" was extortionate. *Id.* at *10.

The defendant cites this Court's decision in *Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280, 320 (S.D.N.Y. 2016), for the proposition that, as he puts it, "using fear of economic injury by threatening litigation can never be punished as extortion." (Def. R. 12 Mem. 9; *see also id.* 12.) As an initial matter, as set forth above, the allegations here concern threat of economic and reputational harm through disclosure by press conference of potential embarrassing and harmful facts, not fear of economic injury through litigation.

In any event, the defendant mischaracterizes *Bouveng*. *Bouveng* considered a defendant's claim that he could not have defamed the plaintiff through negative publicity by accusing her of committing crimes because her threats of "embarrassing litigation" against him for sexual

---

[4] Charges were later dismissed against the defendant in *Godwin-Painter* upon motion of the government, after the defendant disclosed that he had a valid advice-of-counsel defense. *See* Order, *United States v. Godwin-Painter*, No. CR415-100 (S.D. Ga. Nov. 18, 2015) (Dkt. No. 75).

harassment constituted extortion. *Bouveng*, 175 F. Supp. 3d at 302, 303. This Court rejected that defense (after a jury found for the plaintiff on her sexual harassment claims), concluding that "'references to embarrassing litigation' in the [plaintiff's] letter and email were part of a larger endeavor to obtain recompense for a perceived wrong, not simply threats to ruin [the defendant's] reputation." *Id.* at 324 (internal quotation marks and citation omitted). Notably, in reaching that conclusion, this Court relied on the fact that the plaintiff "d[id] not threaten that Plaintiff or her counsel will 'go to the press with [her] claims,'" but merely threatened to file a lawsuit. *Id.* (quoting *Dawkings v. Williams*, 511 F. Supp. 2d 248, 260 (N.D.N.Y. 2007)). This Court also distinguished the circumstances presented in *Bouveng* from *La Suisse*, observing that in *La Suisse*, the defendants "instituted lawsuits against [the victim] on behalf of insurance policyholders, but used those lawsuits to attempt to collect money for themselves—money to which they clearly had no right." *Id.* (citing *La Suisse*, 2014 WL 3610890, at *9-10). *Bouveng*, which concerned a post-trial motion, provides no support for the defendant's motion to dismiss, and is also consistent with the Government's theory here.

Indeed, the circumstances here are fully in accord with prior cases where defendants unlawfully extorted victims through threats of economic or reputational harm (although again, the Court need not engage with the defendant's arguments to reject his motion). For example, in *Jackson*, the defendant threatened to harm the victim through public disclosure that the defendant was the out-of-wedlock child of the victim. *Jackson*, 180 F.3d at 59. Contrary to the defendant's repeated assertions (*see, e.g.*, Def. R. 12 Mem. 11, 14), the defendant in *Jackson* did have a plausible legal claim—the defendant claimed that she had a legitimate claim to financial support from the victim. *Jackson*, 180 F.3d at 71. The court concluded, ultimately, that no rational juror could have found that the defendant's demand for $40 million had a plausible *nexus* to any such

claim for support.  *See United States v. Jackson*, 196 F.3d 383, 387 (2d Cir. 1999).  The facts are much the same here, where the defendant demanded payments for *himself* of at least $15 million based on his client's potential claim arising from a $72,000 contract, a claim that the defendant himself repeatedly asserted was worth only $1.5 million to his client.

    *Jackson*'s analysis of wrongful threats of financial and reputational harm is instructive. The Second Circuit explained:

> There are significant differences between, on the one hand, threatened disclosures of such matters as consumer complaints and nonpayment of dues, as to which the threatener has a plausible claim of right, and, on the other hand, threatened disclosures of such matters as sexual indiscretions that have no nexus with any plausible claim of right.  In the former category of threats, the disclosures themselves—not only the threats—have the potential for causing payment of the money demanded; in the latter category, it is only the threat that has that potential, and actual disclosure would frustrate the prospect of payment.  Thus, if the club posts a list of members with unpaid dues and its list is accurate, the dues generally will be paid; if the consumer lodges her complaint and is right, she is likely to receive her refund; and both matters are thereby concluded.  In contrast, if a threatener having no claim of right discloses the victim's secret, regardless of whether her information is correct she normally gets nothing from the target of her threats. And if the victim makes the demanded payment, thereby avoiding disclosure, there is nothing to prevent the threatener from repeatedly demanding money even after prior demands have been fully met.

*Jackson*, 180 F.3d at 70-71.  Similarly, the Sixth Circuit has reasoned:

> Consider, first, the most classic extortion scenario where individual X demands money from individual Y in exchange for individual X's silence or agreement to destroy evidence of individual Y's marital infidelity.  In this instance, the threat to reputation is wrongful because individual X has no claim of right against individual Y to the money demanded.  This is clear because as soon as the marital infidelity is exposed individual X loses her ability to demand the money from individual Y.  Individual X's only leverage or claim to the money demanded from individual Y is the threat of exposing the marital infidelity and, thus, individual X's threat has no nexus to a true claim of right.

*United States v. Coss*, 677 F.3d 278, 286 (6th Cir. 2012). So too here—if the defendant had disclosed the alleged misconduct at Nike, Nike may well have settled any claims brought by Client-1. But as the defendant made clear to Nike, a payment to Client-1 to settle any claims Client-1 might have was not the defendant's primary demand. (Indictment ¶ 18(b).) Instead, the defendant was demanding a far more substantial payment to himself, and his disclosure of damaging information about the company would not have made Nike more likely to give money to the defendant.

In short, the Indictment more than sufficiently alleges "the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense," *Hamling*, 418 U.S. at 117. The defendant's attempt to litigate before trial evidence that may or may not be offered (let alone admitted) with respect to issues the jury will ultimately decide, including his intent, is improper and must be rejected.

## II.     The Extortion Statutes Are Not "Vague"

### A.     Applicable Law

"The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Halloran*, 821 F.3d 321, 337 (2d Cir. 2016) (internal quotation marks omitted). "Although a law has to provide minimal guidelines in the form of explicit standards regarding what conduct is unlawful, it need not achieve meticulous specificity, which would come at the cost of flexibility and reasonable breadth." *United States v. Rosen*, 716 F.3d 691, 699 (2d Cir. 2013) (internal quotation marks omitted). Even in the absence of sufficient standards, however, "a statute will

13

survive an as-applied vagueness challenge if the conduct at issue falls within the core of the statute's prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the statute." *United States v. Farhane*, 634 F.3d 127, 139-40 (2d Cir. 2011) (internal quotation marks omitted).

Because vagueness challenges are "as applied," courts "must await conclusion of the trial" to determine whether a statute is unconstitutionally vague in a particular case. *United States v. Milani*, 739 F. Supp. 216, 218 (S.D.N.Y. 1990). As the Supreme Court has explained, "[o]bjections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988); *see also United States v. Rybicki*, 354 F.3d 124, 129 (2d Cir. 2003) ("Panel opinions of this Court have repeatedly held that when, as in the case before us, the interpretation of a statute does not implicate First Amendment rights, it is assessed for vagueness only 'as applied,' i.e., in light of the specific facts of the case at hand and not with regard to the statute's facial validity." (internal quotation marks and citation omitted)).

## B.      Discussion

As an initial matter, as the defendant concedes (Def. R. 12 Mem. 16), his void-for-vagueness challenge must wait until the facts have been established at trial, *Maynard*, 486 U.S. at 361; *Milani*, 739 F. Supp. at 218. On this basis alone, the defendant's claim must be rejected.

Nonetheless, even if the Court were to consider the defendant's arguments now, there is no plausible argument for constitutionally impermissible vagueness in this case. As noted above, the Hobbs Act prohibits "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear" or attempting to do so. 18 U.S.C.

§ 1951(b)(2).   Similarly, 18 U.S.C. § 875(d) prohibits extortion through the use of interstate communications and provides that "[w]hoever, with intent to extort from any person . . . any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another . . . shall be" guilty of a crime.

Nothing about these provisions is unclear.   To the contrary, these statutes are sufficiently definite "that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."   *Halloran*, 821 F.3d at 337; *see also Coss*, 677 F.3d at 289-90 (rejecting vagueness challenge to extortion by threat of reputational harm charges); *United States v. Jackson*, 986 F. Supp. 829, 835-37 (S.D.N.Y. 1997) (rejecting substantially similar vagueness challenge to extortion prosecution).   In short, an ordinary person (not to mention an attorney) can perfectly well understand that when an individual threatens to disclose harmful information obtained from a client unless the victim makes payments to the threatener (and, indeed, at the expense of the client) that individual commits extortion.

The defendant claims that the wrongfulness element is vague as applied to him because of "the backdrop of prevailing extortion jurisprudence, his freedom of speech under the First Amendment, the zone confidentiality expected in settlement negotiations, and the accepted practices of 'puffery' and 'posturing' in making settlement demands." (Def. R. 12 Mem. 17.)  The defendant makes no effort to explain how these buzzwords or quasi-legal phrases render the statute unconstitutionally vague or make it unclear that one may not threaten financial or reputational harm to force a victim to make payments to which the threatener is not entitled.   Indeed, this claim is nothing more than a repackaging of factual arguments regarding the element of wrongfulness—

15

arguments that the defendant may or may not be permitted to make to the jury, but that do not warrant dismissal of the Indictment.

### III.   The Defendant's Selective or Vindictive Prosecution Claims Are Meritless

Alternatively, the defendant asserts that dismissal is warranted because he has been impermissibly targeted for selective or vindictive prosecution, or, as he would have it, he is an innocent victim of an unconstitutional effort to silence a "political antagonist" of the current president.  (Def. 5th Amend. Mem. 7.)  In the defendant's telling, neither the complaint nor the Indictment was brought because there was evidence that the defendant sought to enrich himself by extorting a public company, purportedly on behalf of a client (or potential client); it is of no moment that the company sought out law enforcement (and not the other way around); and it is irrelevant that, thereafter, the defendant was caught—on video—warning that he had "the balls" of the company "in his hand" and threatening to cause substantial harm if the company did not accede to his demand for a multi-million dollar payment (Indictment ¶ 18(b)).  None of this, according to the defendant, explains why he was charged with crimes.  Rather, he asserts, he was targeted by an array of law enforcement professionals, from different agencies, including career prosecutors, who used a sham "'investigation'" to bring baseless charges in an attempt to silence a self-described "high-profile political antagonist."   (Def. 5th Amend. Mem. 1 (first set of quotation marks also in original).)

These arguments are factually and legally baseless.  As set forth in a detailed criminal complaint and a similarly detailed indictment, and as further supported in discovery, including the recordings of defendant, the defendant has been charged with crimes because there is overwhelming evidence that he committed them.  There is no vast government scheme, involving

multiple people, at multiple agencies, to prosecute the defendant—an allegedly innocent man—as a result of a purported "feud" with the executive branch (Def. 5th Amend. Mem. 27).

The defendant is entitled to dispute the charges against him and to ask a jury to hold the Government to its burden of proving the charges against him beyond a reasonable doubt.  He is not entitled to compel the Government to disprove his fantastic notion as to why he was charged, particularly without showing that there is clear evidence—not hyperbolic allegations or baseless insinuations—that the prosecution against him is both discriminatory in effect and discriminatory in purpose.  The defendant does not come close to such a showing.

### A.     Applicable Law

A defendant challenging the Government's decision to prosecute him bears a heavy burden. *United States v. Armstrong*, 517 U.S. 456, 463-64 (1996).  Federal prosecutors retain "broad discretion to enforce the Nation's criminal laws."  *Id.* at 464 (internal quotation marks omitted). "As a result, '[t]he presumption of regularity supports' their prosecutorial decisions and, 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" *Id.* (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)); s*ee also, e.g.*, *Wayte v. United States*, 470 U.S. 598, 607 (1985).

### 1.     Selective Prosecution

To establish a claim of selective prosecution, a defendant must present "clear evidence" that the decision to prosecute not only (1) "had a discriminatory effect" but was also (2) "motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465; *United States v. Alameh*, 341 F.3d 167, 173 (2d Cir. 2003); *United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992); *United States v. Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983).

17

With respect to the first of the two required prongs (discriminatory effect), a defendant must establish that "'others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against the defendant'" and that the defendant has been "'singled out.'"  *Fares*, 978 F.2d at 59 (quoting *Moon*, 718 F.2d at 1229) (alteration incorporated); *see also Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2004) (same).

With respect to the second of the two required prongs (discriminatory purpose), a defendant must establish that the Government's "selection of the defendant for prosecution has been invidious or in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Fares*, 978 F.2d at 59 (internal quotation marks omitted; alteration incorporated).  This means more than that the Government acted with an "awareness of consequences." *Wayte*, 470 U.S. at 610 (internal quotation marks omitted).  Rather, it must have "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects." *Id.* (internal quotation marks omitted).  Where a defendant "has not shown that the Government prosecuted him *because of*" his protected status or conduct, his claim fails. *Id.* (emphasis in original).

Consistent with the presumption of regularity, the Supreme Court has explained that "the showing necessary to obtain discovery" in support of a selective prosecution claim "should itself be a significant barrier." *Armstrong*, 517 U.S. at 464.  A defendant must meet a "rigorous standard for discovery in aid of such a claim," *id.* at 468, because the "decision to prosecute is particularly ill-suited to judicial review," and "[e]xamining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy," *Wayte*, 470 U.S. at 607.  To obtain discovery, a defendant

accordingly first "must show some evidence of both discriminatory effect and discriminatory intent." *United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam); *see also Fares*, 978 F.2d at 59 (same). "Mere assertions and generalized proffers on information and belief are insufficient" to meet this burden. *Id.*

## 2.   Vindictive Prosecution

Similarly, a defendant is entitled to dismissal of a charge on the ground of alleged vindictiveness only if he demonstrates "'actual' vindictiveness, or if there is a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action." *United States v. Johnson*, 171 F.3d 139, 140 (2d Cir. 1999) (per curiam).

To establish actual vindictiveness, a defendant must prove that the prosecutor's charging decision was a "direct and unjustifiable penalty," *United States v. Goodwin*, 457 U.S. 368, 384 n.19 (1982) (internal quotation marks omitted), that resulted "solely from the defendant's exercise of a protected legal right," *id.* at 380 n.11. "Put another way, the defendant must show that '(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) the defendant would not have been prosecuted except for the animus.'" *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) (quoting *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999)) (alteration incorporated). "A finding of actual vindictiveness requires 'direct' evidence, such as evidence of a statement by the prosecutor, which is available 'only in a rare case.'" *Johnson*, 171 F.3d at 140 (quoting *Goodwin*, 457 U.S. at 380-81 & nn.12-13, 384 & n.19).

To establish a presumption of prosecutorial vindictiveness, a defendant "must show that 'the circumstances of a case pose a realistic likelihood of such vindictiveness.'" *Sanders*, 211 F.3d at 717 (quoting *United States v. King*, 126 F.3d 394, 397 (2d Cir. 1997) (internal quotation marks

omitted)).  "[A]ny such presumption may be overcome by objective evidence justifying the prosecutor's action."  *Id*.  The Second Circuit "has consistently adhered to the principle that the presumption of prosecutorial vindictiveness does not exist in a pretrial setting."  *United States v. Stewart*, 590 F.3d 93, 122 (2d Cir. 2009); *see also, e.g.*, *United States v. Hinton*, 703 F.2d 672, 678 (2d Cir. 1983) ("[A] presumption of prosecutorial vindictiveness does not exist in a pre-trial setting.").[5]

As with a claim for selective prosecution, the standard for obtaining discovery in support of such a claim is "'rigorous.'"  *Sanders*, 211 F.3d at 717 (quoting *Armstrong*, 517 U.S. at 468). "To warrant discovery, the defendant must show some evidence of genuine animus, not the mere possibility that animus might exist under the circumstances."  *Id*. at 718 (internal quotation marks omitted).  This is for good reason: "It would be too easy for defendants to obtain discovery on vindictive prosecution claims if all that was required was to identify a potential motive for prosecutorial animus."  *Id.*

### B.    Discussion

The defendant does not come close to establishing that he is entitled to discovery in support of his claims, much less dismissal.[6]

---

[5] The defendant quotes the Second Circuit's statement in *Sanders* that the presumption "generally" does not exist in a pretrial setting.  (Def. 5th Amend. Mem. 33 (citing *Sanders*, 211 F.3d at 71).)  However, *Sanders* cites *Koh*, 199 F.3d at 639-40, for this proposition, which in turn cites *Hinton*, 703 F.2d at 678, which has no such caveat.  And as noted above, the Second Circuit has since made clear that the presumption does not exist in the pretrial setting.  In any event, this Court need not decide whether there might be a circumstance before trial in which the presumption might exist, because this plainly is not such a circumstance, and even if it were, there is abundant "objective evidence," *Sanders*, 211 F.3d at 717, including the defendant's own words, that support his prosecution.

[6] Because the defendant's claim is meritless, the Court need not consider the contours of his discovery request (Def. 5th Amend. Mem. 42-43), but multiple of his requests seek materials that, if they exist, appear to be attorney work product, covered by the deliberative process privilege,

### 1.    The Defendant's Selective Prosecution Claim Fails

With respect to his claim of alleged selective prosecution, the defendant does not meet either prong of the requisite standard.

### i.    The Defendant Fails to Show that Similarly Situated Individuals Were Not Prosecuted

As discussed above, with respect to the first required prong, the defendant must show evidence that "others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against [him]." *Fares*, 978 F.2d at 59 (internal quotation marks omitted).  "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008); *see also, e.g.*, *United States v. Smith*, 231 F.3d 800, 811 (11th Cir. 2000) (defendant "must establish that the government could prove beyond a reasonable doubt that someone else had engaged in the same type of conduct, committing the same crime in that or substantially the same manner"); *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996) ("[D]efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them.").

Here, the defendant points to only one purportedly similarly situated individual, the person identified in the complaint and the Indictment as "CC-1."  (Def. 5th Amend. Mem. 35.)  The defendant argues that because CC-1 is alleged to have "participated in every relevant meeting and

---

and/or are outside of the scope of what would be reasonably necessary to try to advance his asserted claims rather than to gain a strategic advantage at trial.  Many are also extraordinarily broad in scope, with one request, for example, purporting to cover a twenty-five year period, with others purporting to demand, without temporal limitation, documents from the entire Department of Justice.

21

telephone conversation in this case," yet has not been charged with a crime, the defendant must have been singled out for constitutionally impermissible purposes. (*Id.* 35-36.) This argument turns on the assumption that CC-1 and the defendant are materially indistinguishable to the extent that "no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions" exist, *Olvis*, 97 F.3d at 744, a premise easily rebutted by the face of the charging instruments themselves. According to the Indictment, the defendant, not CC-1, made substantially all of the threats to Nike identified in the charging instruments, including the most direct threats, such as that he "held the balls of [Nike]" in his hand and was prepared to "take five to six billion dollars market cap off" of Nike if he were not paid. (Indictment ¶ 18(b); *see also, e.g., id.* ¶ 17(c) ("I'm not fucking around").) Moreover, the defendant, not CC-1, made substantially all of the demands for payment, including demands as to the amount and timing of such payments. (Indictment ¶¶ 12(a)-(d), 17(b)-(e), 18(a)-(b).) And the defendant, not CC-1, offered to accept a $22.5 million lump sum payment in exchange for his silence and to cause him to call off the press conference that he, not CC-1, threatened to otherwise hold. (*Id.* ¶¶ 17(e), 18(d)-(e).) Those facts alone defeat the defendant's claim.[7]

### ii.     The Defendant Fails to Show Discriminatory Purpose

Because the defendant fails to make an evidentiary showing in support of the first required prong, his motion for dismissal or discovery must be denied. *See, e.g., Bass*, 536 U.S. at 863. But

---

[7] In so noting, the Government does not intend to comment on its deliberative process or the exercise of its prosecutorial discretion. It notes these facts simply in response to the defendant's baseless assertion that the lack of a charge against CC-1 is in and of itself sufficient to meet the *defendant's burden* of establishing "clear evidence" of a similarly situated defendant who was not charged.

even if this Court were to assume *arguendo* that the defendant had made such a showing, his motion still fails, because the defendant also fails to meet the second required prong.

While the defendant devotes many pages in his brief to his self-described role as "the most visible antagonist and adversary of the leader of the Executive Branch" (Def. 5th Amend. Mem. 36), the defendant identifies no actual "evidence," *Bass*, 536 U.S. at 863, as opposed to "mere assertions," *Fares*, 978 F.2d at 59, that he was prosecuted "*because of*" of such activity, *Wayte*, 470 U.S. at 610 (emphasis in original).

Indeed, apart from speculation and conclusory assertions, including that the Government showed "malice and personal animus" towards him by issuing a press release and holding a press conference describing the allegations in the complaint and referring to his conduct as "criminal" (Def. 5th Amend. Mem. 35), the defendant does not even attempt to point to any actual evidence linking his prior activities to the charges in this case, as he must.  Nor could he, because the facts surrounding the charges against him are completely irreconcilable with his assertion that he was singled out for prosecution because of his political activities.  Indeed, foremost among them, the Indictment makes clear that this investigation began when the victim (Nike) approached law enforcement, not the other way around.  (Indictment ¶ 14; Compl. ¶ 10(e).)  Moreover, since the defendant was charged, the Government has not sought a gag order or in any other way attempted to prevent the defendant from continuing the very activities that he asserts this prosecution was intended to chill.

It is also difficult to square the defendant's theory of selective prosecution—and particularly his insinuations about the purported intent of the United States Attorney's Office in this district in bringing this prosecution—with the fact that he was simultaneously charged in another district with entirely separate federal crimes arising from different investigation into an

unrelated criminal conduct.[8]  (*See* Indictment, *United States v. Avenatti*, 19 Cr. 61 (JVS) (C.D. Cal. Apr. 10, 2019), Dkt. No. 16.)  Notwithstanding this fact, the defendant asks the Court to believe that the Government "hast[ily]" (Def. 5th Amend. Mem. 37) brought *these* particular charges to selectively prosecute him.  This argument simply cannot be reconciled with the facts (or common sense).

Finally, to the extent that defendant seeks to challenge the speed and sufficiency of the Government's investigation and its evidence of his guilt (*id.* 37-41), the actual facts are not helpful to the defendant.  Indeed, entirely missing from the defendant's description of the short duration of the Government's pre-complaint investigation is any mention of his own role and his own actions in creating the need for law enforcement to act swiftly.  It was the defendant, not the Government, who threatened to release damaging information if the victim did not quickly accede to the extortionate demands, and it was thus the defendant, not the Government, who effectively set the date of the defendant's arrest as the deadline for the victim to agree to those demands.  Nor does the defendant provide support for the proposition he appears to advance, that this Court should permit him to bootstrap his claims of innocence—which, as discussed above, conflict with undisputed facts, and settled law—into a claim of selective prosecution.

### 2.      The Defendant's Vindictive Prosecution Claim Fails

Because the defendant does not even attempt to offer "direct evidence," *Johnson*, 171 F.3d at 142, his vindictiveness claim fails as a matter of law.  In any event, the defendant's conclusory and unsupported arguments, which are materially indistinguishable to those discussed above, do

---

[8] The defendant is also facing separate fraud charges in this district stemming from another, unrelated investigation that, like this case, began following a victim complaint. (*See* Indictment, *United States v. Avenatti*, 19 Cr. 374 (DAB) (S.D.N.Y. May 22, 2019), Dkt. No. 1.)

not come close to making out a claim.  In short, the defendant offers nothing whatsoever to support his theory that an investigation launched in response to a victim complaint and charges brought following recorded extortionate threats were "vindictive."

## **CONCLUSION**

For the foregoing reasons, the defendant's pretrial motions should be denied.

Dated:  New York, New York
        September 19, 2019

                                          Respectfully submitted,

                                          GEOFFREY S. BERMAN
                                          United States Attorney

                              By:    s/ Matthew D.  Podolsky
                                          Matthew D. Podolsky
                                          Daniel C. Richenthal
                                          Robert B. Sobelman
                                          Assistant United States Attorneys