


September 19, 2019

**VIA HAND DELIVERY**

Hon. Paul G. Gardephe
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: *United States v. Michael Avenatti*
No. 19 Cr. 373 (PGG)

Dear Judge Gardephe:

We represent non-party NIKE, Inc. ("Nike"), the target of the extortion scheme perpetrated by Defendant Michael Avenatti in the above-referenced matter. Nike writes with respect to Defendant's September 6, 2019 Motion for Issuance of Subpoena Duces Tecum, Pursuant to Rule 17(c), to Custodian of Records of NIKE, Inc. (Dkt. 52) (the "Motion"), which attaches a proposed subpoena duces tecum to Nike (Dkt. 51-1) (the "Subpoena") requesting the production of certain documents in advance of trial.[1]

In March 2019, Nike refused to give in to Mr. Avenatti's threats and pay *him* millions. Since that time, Mr. Avenatti has made a considerable effort to carry out his threat to harm Nike, its shareholders, and its employees. Mr. Avenatti now seeks to issue the Subpoena to obtain documents to put Nike and its employees on trial. His theory—articulated in filings in this Court and routinely broadcast on Twitter and any other media outlet that will listen—is that Nike "bribed" hundreds of amateur basketball players with "illegal payments," and that this alleged criminal misconduct is relevant to establish the scope of civil claims that his former client purportedly had against Nike. Mr. Avenatti is wrong. Nike did not make illegal payments. Nike did not commit any crime. Nike has been fully cooperating with the Government's investigation into amateur basketball (the "Investigation") for nearly two years. It is Mr. Avenatti—not Nike—on trial. His request to issue the Subpoena should be rejected on multiple, independent grounds.

[1] A motion to quash the Subpoena is not ripe since the Subpoena has not been served on Nike. We nevertheless submit this letter in the interest of judicial efficiency, recognizing that "Rule 17(c) expressly commits the decision whether to require pre-trial production of documents to the sound discretion of the court." *United States v. Weissman*, No. 01 Cr. 529 (BSJ), 2002 WL 1467845, at *1 (S.D.N.Y. July 8, 2002) ("Limiting the Court's discretion over Rule 17(c) pretrial subpoenas to resolution of motions to quash, however, would be inadequate to assuring that such subpoenas are not abused or used for impermissible discovery.").





*First*, even if there were *any* Nike documents responsive to Mr. Avenatti's requests, such documents would be irrelevant to his defense. To be clear, he is seeking Nike documents that neither he nor his former client possessed at the time Mr. Avenatti extorted Nike. As explained in the Government's September 5, 2019 letter (Dkt. 49 at 4), "[t]he alleged evidence that the defendant seeks to obtain and/or present—evidence *not* in his possession (or that of Client-1) and *not* known to him or his client at the time of his conduct—has no possible relevance to his contemporaneous knowledge or intent." Accordingly, he fails to meet the requirement that requested materials be "evidentiary and relevant." *United States v. Nixon*, 418 U.S. 683, 700 (1974) (to satisfy Rule 17, "the moving party must show . . . that the documents are evidentiary and relevant").

Attempting to get around this clear deficiency, Mr. Avenatti asserts that he is entitled to internal Nike documents "to prove the validity of Coach Franklin's claims and the scope of the investigation that was necessary." (Motion at 8.) This is nothing more than a distraction. Consistent with his strategy to date, Mr. Avenatti would focus his trial anywhere but on his own conduct. That conduct involved threatening to hold a press conference unless Nike paid millions of dollars to *him*, not his client. As explained by the Government, "whether Client-1 had a potentially meritorious contractual claim against Nike has no relevance to the defendant's extortionate threats aimed at extracting payments for *himself*." (Dkt. 49 at 4, citing *United States v. Jackson*, 180 F.3d 55, 71 (2d Cir. 1999).)

*Second*, Nike has been cooperating with the Government's Investigation for nearly two years, and to the extent any documents responsive to the Subpoena may exist, they are "otherwise procurable" from the Government. *Nixon*, 418 U.S. at 699 (documents requested pursuant to Rule 17(c) must not be "otherwise procurable" from another source). Defendant acknowledges this legal requirement, stating that the documents may not be "otherwise procurable" from the Government because Defendant "does not know" whether the Government already has them. (Motion at 9.) Nike hereby confirms that it does.

During the course of its cooperation with the Government, Nike conducted a diligent search and production of documents relevant to the Investigation. To the extent Nike had any documents responsive to Subpoena Requests 1, 2, and 3, they fell within the scope of Nike's prior search and have been produced to the Government.[2] Mr. Avenatti must therefore obtain them from the Government.[3] *See United States v. Bergstein*, No. 16 Cr. 746 (PKC), 2017 WL

[2] With respect to time period, Nike's search was focused on the time period from January 1, 2016 to September 30, 2017—the latter date coinciding with the public arrest of an employee of one of Nike's competitors and others on September 26, 2017 and the public announcement of the Government's Investigation. The Subpoena seeks documents that post-date the arrests, but Defendant has made no showing that relevant documents exist after that date. *See United States v. Weissman*, No. 01 Cr. 529 (BSJ), 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002) ("the *Nixon* standards prohibit the use of a Rule 17(c) subpoena as a fishing expedition").

[3] It is self-evident that the Government has a copy of any subpoena issued to Nike, as sought by Request 4.





6887596, at *5 (S.D.N.Y. Dec. 28, 2017) ("When 'many' of the subpoenaed materials are obtainable through the discovery process, a subpoena contravenes Nixon's requirement that subpoenaed materials must not be otherwise procurable in advance of trial by the exercise of due diligence."); *United States v. Boyle*, No. 08 Cr. 523 (CM), 2009 WL 484436, at *3 (S.D.N.Y. Feb. 24, 2009) (quashing a 17(c) subpoena where it was "likely that many of the documents that defendant seeks in his subpoena are obtainable from another source—the United States Attorney's Office—with little or no diligence required").

*Third*, and finally, Defendant is plainly moving to subpoena documents from Nike for the improper purpose of obtaining impeachment material. Mr. Avenatti concedes this, writing that he needs the materials to show "the motive of Nike representatives to testify in favor of, and curry favor with, the government," and that Nike "did not timely comply with the federal grand jury subpoena and therefore now has an even more powerful motive to please the prosecutors." (Motion at 9, 10.) In fact, Nike fully and timely cooperated with the Government's Investigation.

Nike made its first document production to the Government on October 4, 2017, and it made numerous additional document productions prior to Mr. Avenatti's arrest on March 25, 2019. The Government has already produced certain of these Nike documents to Defendant, and Defendant has gone out of his way to make a small selection of them public. He has taken them out of context, publicly impugned the integrity of individual Nike employees, and attacked the reputation of the company that reported his crimes. He purports to have brought these documents to the attention of the Court (and the public) to support an unfounded theory that Nike did not timely comply with the Investigation. He speculates, without any basis at all, that Nike may have produced these documents to the Government only *after* he surfaced with his extortionate demands. This, of course, makes no sense, because if Nike were hiding conduct from the Government, it would not have reported Mr. Avenatti's allegations to federal prosecutors within hours of first hearing them. Mr. Avenatti's proposed line of impeachment is baseless. Nike had not been hiding any documents. Indeed, each and every Nike document that Defendant received from the Government in discovery and has made public in these proceedings thus far was produced by Nike to the Government *more than one year* before he was indicted for extorting Nike. Regardless, "Rule 17(c) subpoenas may not issue prior to trial to obtain materials usable only to impeach." *United States v. Pena*, No. 15 Cr. 551 (AJN), 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016); *see also Nixon*, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial.").

In sum, Defendant's Motion should be denied because the requested documents are not "evidentiary and relevant," are "otherwise procurable" from the Government, and are improperly sought for purposes of impeachment. Should the Court wish to hear further from Nike prior to deciding the Motion, Nike is prepared to appear before the Court and/or move to intervene and to quash the Subpoena. In such a motion, Nike likely would raise additional grounds for denial of the Motion, including the Subpoena's failure to satisfy the admissibility and specificity requirements of Rule 17(c). *See United States v. Rajaratnam,* 753 F. Supp. 2d 317, 320 (S.D.N.Y. 2011) ("under the test adopted by the Supreme Court in *Nixon*, the proponent of a





[Rule 17(c)] subpoena returnable before trial must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity") (internal quotation omitted).

Nike respectfully requests that the Court file this letter on the docket.

Respectfully submitted,

/DLS

Peter M. Skinner

cc: Scott A. Srebnick, Esq. (via email)
Jose M. Quinon, Esq. (via email)
AUSA Daniel C. Richenthal (via email)
AUSA Matthew D. Podolsky (via email)
AUSA Robert B. Sobelman (via email)