LAW OFFICES

# SCOTT A. SREBNICK, P.A.

SCOTT A. SREBNICK*
* ALSO ADMITTED IN NEW YORK

201 S. Biscayne Boulevard
Suite 1210
Miami, Florida 33131

Tel: 305-285-9019
Fax: 305-377-9937
E-mail: scott@srebnicklaw.com
*www.srebnicklaw.com*

September 20, 2019

**Via ECF**
Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

>   Re:   *United States v. Avenatti*, No. 19 Cr. 373 (PGG)
>           **Response to Nike's Letter of September 19, 2019**

Dear Judge Gardephe:

We represent defendant Michael Avenatti in this case. We write to respond to the letter submitted on behalf of Nike by Boies Schiller Flexner (Dkt. #58), dated September 19, 2019, regarding Mr. Avenatti's request for issuance of a Subpoena Duces Tecum to Custodian of Records of Nike, Inc., pursuant to Fed.R.Crim.P. 17(c). The proposed Subpoena seeks production of four separate categories of documents. (Dkt. #52:5). Importantly, Nike does not dispute that it is in possession of documents responsive to the Subpoena. Instead, it opposes the Subpoena on three grounds.

*First*, Nike argues that the documents are not relevant to Mr. Avenatti's defense because they were not in his possession or that of Client-1 at the time Mr. Avenatti allegedly extorted Nike. (Dkt. #59:2). Nike's view of relevance, however, is wide of the mark. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining this action." Fed.R.Evid. 401. "To be relevant, evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable doubt." *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010). Rule 401 prescribes a "very low standard" for relevance. *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012). [U]nless an exception applies, all 'relevant evidence is admissible.'" *Id.* (quoting Fed.R.Evid. 402).

In *United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015), the Second Circuit reversed the defendant's convictions for securities fraud for fraudulent representations the defendant allegedly made about price and inventory while negotiating certain transactions at his company, Jefferies. Although the Court reversed based on a different evidentiary error, the Court, to "assist the District Court on remand," addressed the exclusion of evidence that the defendant's supervisors had approved identical conduct committed by *other employees* at

Jefferies. *Id.* at 188. The defendant sought to admit the evidence to support the inference that his supervisors had approved of his conduct, thus bolstering his honest belief that his conduct was not improper. The district court excluded the evidence on the same basis urged by Nike here: that "if it is something Mr. [Litvak] didn't know, then it can't go to a state of mind. If he's not on the documents then there's no evidence he knew. Unless there's a witness who will say he told it to Mr. Litvak or Mr. Litvak said I knew about all of these, were sitting in a room, et cetera, et cetera." *Id.* at 189 n.35. The Second Circuit *rejected this reasoning*, observing that because the jury may have found his belief more plausible in light of his supervisors' approval of his colleagues' substantially similar behavior, "the District Court exceeded its allowable discretion in concluding this testimony was not relevant under the low threshold set forth by Federal Rule of Evidence 401…" *Id.* at 190.

While *Litvak* involved a good faith defense in a fraud case, the same principle of relevance applies here. Namely, a defendant need not actually know of the existence of evidence for that evidence to be *relevant* in a criminal case. Here, evidence of Nike executives discussing payments for the benefit of the three California Supreme players (Request #1) would corroborate why Mr. Avenatti approached Nike in the first place: to settle claims on behalf of his client, Coach Gary Franklin. Evidence that Nike directed payments to high school players on other EYBL teams and participated in the creation of false invoices (Requests ##2&3) proves that this was Nike's *modus operandi* and not some accident or mistake, thus corroborating the willful involvement of Nike executives in directing Coach Franklin to do the same. *Cf. United States v. Aboumoussallem*, 726 F.2d 906, 911 (2d Cir. 1984) (discussing lower standard for admitting similar acts evidence for defensive purposes under Rule 404(b)).

Nike echoes the government's argument that "whether Client-1 had a potentially meritorious contractual claim against Nike has no relevance to the defendant's extortionate threats aimed at extracting payments for *himself.*" (Dkt. #58:2, quoting Dkt. 49:4).[1] The discovery, however, is replete with evidence proving that, when Mr. Avenatti met with lawyers for Nike on March 19-21, he was there *on behalf of a client*, Coach Franklin, in an agency capacity, to pursue two components of a single settlement demand -- money damages and equitable relief – both of which were communicated by Coach Franklin and his advisor/consultant to Mr. Avenatti. There are numerous emails and texts in which Coach Franklin evidences his desire for "justice" – that is, to root out what he genuinely believed to be widespread corruption at Nike – which Mr. Avenatti proposed to Nike would be accomplished through a full-fledged internal investigation. (Dkt #29:16-22). Documents in Nike's possession which show the existence of corruption validate Coach Franklin's claims and corresponding demand (communicated through Mr. Avenatti) for equitable relief and are therefore relevant to Mr. Avenatti's defense.

Beyond that, it makes no difference that Mr. Avenatti sought to be paid substantial fees to conduct an investigation of Nike that Coach Franklin desired, or that Mr. Avenatti was purportedly motivated by financial gain for himself. In virtually every case, a plaintiff's

---

[1] At no time did Mr. Avenatti or Coach Franklin ever state, or even suggest, that Coach Franklin's claims were limited to a simple breach of contract case involving a $72,000 contract.

lawyer stands to gain *for himself* by demanding that the defendant pay damages *and attorney's fees*. The relevance of the subpoenaed documents does not turn on how much Mr. Avenatti stood to personally gain from his representation of Coach Franklin, whether through a contingency fee, hourly fees for the internal investigation, or otherwise. Mr. Avenatti is entitled to prove his defense that he did not act wrongfully or willfully in demanding that he be paid to conduct an internal investigation. Indeed, had Coach Franklin represented himself in the settlement conference and made the same demands of Nike that Mr. Avenatti made for him: 1) pay him $1.5 million in damages; and 2) hire a law firm of his choosing to conduct a genuine and expensive internal investigation, or else he would go public with the same allegations he intended to make in a contemplated lawsuit, there would be no credible claim of extortion.

*Second*, Nike argues that it "has been cooperating with the Government's Investigation for nearly two years" and "conducted a diligent search and production of documents relevant to the Investigation." (Dkt. #58:2). Nike then "confirms" in its unsworn letter (with no supporting documentation) that the government has *all* of the documents responsive to the Subpoena, so Mr. Avenatti can obtain them from the government. (Dkt. #58:2) ("To the extent Nike had any documents responsive to Subpoena Requests 1, 2, and 3, they fell within the scope of Nike's prior search and have been produced to the Government."). Nike's conclusory statements simply do not suffice.

*Third*, Nike argues that Mr. Avenatti is not entitled to the documents because his proposed line of impeachment of Nike lawyers is baseless. (Dkt. #58:3). Although Nike argues that it "did not make *illegal* payments" and that Mr. Avenatti has taken certain documents "out of context," (Dkt. #58:1) (emphasis added), notably Nike does not deny that it funneled payments to amateur players, and Nike does not itself provide any "context" for the payments it obviously made, as evidenced by the documents previously attached as exhibits in this case. (*E.g.,* Dkt. #30). Importantly, when USA Geoffrey Berman held a press conference on March 25, 2019, to announce Mr. Avenatti's arrest, he was pointedly asked the following question by an attendee (presumably a reporter):

| | |
|---|---|
| Question: | Is there anything you can say about the allegations of misconduct against Nike employees, about whether you believe those are founded in any way? |
| USA Berman: | Our investigation is continuing. |

*See* https://m.youtube.com/watch?v=XRFv5JD_tB8 (16:50 – 17:02). While both Nike and the government recite the familiar refrain that the defense is seeking to "put Nike and its employees on trial," (Dkt. #58:1), or "put his victim on trial" (Dkt. #49:4), as of March 2019 (eighteen months after the federal grand jury subpoena was served) there was apparently a continuing investigation by the USAO-SDNY of the allegations of misconduct being raised by Coach Franklin. Evidence regarding the scope of the misconduct is highly relevant to

whether the Nike lawyer(s) who will testify at trial have a motive to please the government. Unlike sex offense cases, which have special rules designed to protect victims, *see, e.g.,* Fed.R.Evid. 412, an allegation of extortion of a Fortune 100 company, through economic fear, where claim of right is a defense and where the company itself has been served with a federal grand jury subpoena, does not present any reasons for limiting relevant impeachment evidence.

Respectfully Submitted,

Scott A. Srebnick
Jose M. Quinon

cc:     Counsel of Record (via ECF)
        Counsel for Nike (via email)