

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 23, 2019

**BY ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

>  Re:  *United States v. Michael Avenatti*,
>       19 Cr. 373 (PGG)

Dear Judge Gardephe:

The Government respectfully writes in opposition to the defendant's motion for issuance of a subpoena pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure to be served on NIKE, Inc. ("Nike"), in support of which the defendant filed a memorandum on September 6, 2019 (Dkt. No. 52 ("Def. Mem.")).  The proposed subpoena—which, at its core, is a fishing expedition for material without relevance to the forthcoming trial—seeks information well beyond the scope of Rule 17.  The defendant's motion should be denied.

> **I.    Background**

As the Court is aware, the defendant is charged with threatening to use his public platform to broadcast financially damaging information about the athletic apparel company Nike if Nike did not agree to make substantial payments—to which the defendant had no lawful entitlement—to the defendant himself.  In his various pretrial statements and filings, the defendant has made clear his intent to focus his trial on an exploration of whether anyone at Nike engaged in any unlawful or unethical activities, regardless of when those activities occurred or whether the defendant knew of, much less cared about, such activities at the time he sought to be paid through his extortionate threats.  In service of this apparent strategy, the defendant now seeks information about his victim through a subpoena for wide categories of materials that have little or no connection to the facts of this case, have no relevance to what the jury will have to decide at trial, and would, at least in large part, be inadmissible hearsay in any event.

The defendant previously requested similarly broad categories information from the prosecution team in this case concerning his victim, Nike.  Specifically, he requested the team in this case to obtain and produce all materials provided by Nike to another team of prosecutors and law enforcement agents in connection with a separate investigation, on the ground that such materials are discoverable under Rule 16 of Federal Rules of Criminal Procedure or otherwise. They are not.

Notwithstanding that fact, in an effort to avoid needless litigation, the Government produced to the defendant, on or about June 4, July 26, and August 6, 2019, an extensive amount of material obtained from Nike and responsive to the requests in his subsequent motion. Specifically, the Government produced a total of approximately 3,360 pages of documents provided by Nike and with some arguable connection to the claims that the defendant purports to have raised on behalf of Client-1, including: (1) all documents that were produced by Nike in connection with the Government's investigation into the defendant's interactions with Nike; and (2) all documents that were produced by Nike that contained Client-1's name, the name of Client-1's amateur basketball program (California Supreme or Cal Supreme), or both. The Government has also offered to work with the defendant's counsel to identify additional documents, short of simply turning over thousands of pages of potentially sensitive material of no apparent relevance to this case. In particular, prior to the defendant filing his motion, the Government expressly offered defense counsel the opportunity to propose additional reasonable search terms for the Government to use to further search the documents produced by Nike in the separate investigation, and then for the Government to review those documents for potential production to the defense. Defense counsel declined the Government's invitation and instead filed his motion, seeking issuance of a subpoena requiring Nike to produce all of the following documents, regardless of whether they were previously provided to the United States Attorney's Office or the defendant:

1. All text messages and e-mails to or from Nike employees Carlton DeBose and/or Jamal James discussing or referencing payments for the benefit of California Supreme players DeAndre Ayton, Brandon McCoy, and/or Bol Bol, in 2016-17;

2. All text messages and emails to or from Nike employees Carlton DeBose, Jamal James, John Stovall, Nico Harrison, and/or Rachel Baker discussing or referencing the payment to amateur basketball players and/or their families or agents, between January 1, 2016, and March 25, 2019;

3. All false invoices that Nike employees Carlton DeBose and/or Jamal James directed or participated in (whether directly or indirectly) to hide payments (whether cash or otherwise) to amateur basketball players and/or their families or agents (including handlers), between January 1, 2016, and March 25, 2019; and

4. The federal grand jury subpoena(s) served upon Nike by the USAO-SDNY and all certificates of authentication/production indicating when Nike, Inc., produced the documents in ##1-3, if at all, to the government.

(Def. Mem. 1.)

On September 19, 2019, Nike filed a letter opposing the defendant's motion and affirming that all documents potentially responsive to the defendant's requested subpoena, to the extent they

exist, had previously been produced by Nike to the United States Attorney's Office during the course of its multiple-year investigation. (Dkt. No. 58 ("Nike's Letter" or "Nike Ltr.").) On September 20, 2019, defense counsel requested that the Government produce a grand jury subpoena he asserts was previously issued to Nike, if any, and disclose the dates on which certain documents had been produced by Nike to the United States Attorney's Office and the search terms used by the Government to identify the approximately 3,360 pages of Nike documents already produced to the defendant. The Government promptly disclosed its search terms (as described above) and reiterated its offer to discuss additional search terms or otherwise to confer. In addition, the Government agreed to provide the defense with the dates when Nike produced the documents subsequently provided to defense counsel, which it will do shortly, although the Government does not believe such dates to be relevant.

## II. Applicable Law

Rule 17(c) "was not intended to provide a means of discovery for criminal cases." *United States v. Nixon*, 418 U.S. 683, 698 (1974); *see also Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) (same). Instead, because the rule's "purpose is trial-focused," a Rule 17(c) subpoena "may be used only to obtain materials admissible as evidence at trial." *United States v. Louis*, No. 04 Cr. 203 (LTS), 2005 WL 180885, at *3 (S.D.N.Y. Jan. 27, 2005). Moreover, "[d]efendants may not seek material under Rule 17 that they are prohibited from obtaining under Rule 16." *United States v. Boyle*, No. 08 Cr. 523 (CM), 2009 WL 484436, at *2 (S.D.N.Y. Feb. 24, 2009); *see also, e.g.*, *United States v. Ceballo*, No. 03 Cr. 283 (SWK), 2003 WL 21961123, at *1 (S.D.N.Y. Aug. 18, 2003) ("'Courts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16.'" (quoting *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995))).

Accordingly, a defendant seeking documents by Rule 17(c) subpoena bears the burden of satisfying the "strict standard" set forth by the Supreme Court in *Nixon*, namely of "specifically identifying the materials sought and showing that they are relevant and admissible." *United States v. Brown*, No. 95 Cr. 168 (AGS), 1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995); *see also Louis*, 2005 WL 180885, at *5 (party seeking documents pursuant to a Rule 17(c) subpoena must be able to "reasonably specify the information contained or believed to be contained in the documents sought" and establish both relevancy and admissibly (internal quotation marks omitted)). The defendant must also demonstrate that the material sought through the Rule 17(c) subpoena is "not otherwise procurable in advance of trial by the exercise of due diligence." *Boyle*, 2009 WL 484436, at *2 (citing *Nixon*, 418 U.S. at 699-700).

Rule 17(c) may not be used to conduct a "general 'fishing expedition.'" *Nixon*, 418 U.S. at 700. Indeed, precisely because the rule poses such a risk of abuse and misuse, courts are stringent in holding those seeking to obtain documents to Rule 17(c) to their burden of demonstrating that the documents sought are (1) relevant, (2) admissible, and (3) specifically identified, and it is "insufficient" for a party to show only that the subpoenaed documents "are *potentially* relevant or *may* be admissible." *United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y 2005) (emphases added). Requests accurately characterized as fishing expeditions "deserve[] to be quashed" on that basis alone. *United States v. Yian*, No. 94 Cr. 719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995).

Consistent with those principles, a Rule 17 subpoena may not be used to seek the prior statements of an anticipated trial witness. Indeed, Rule 17 expressly prohibits a party from serving a subpoena for this purpose. *See* Fed. R. Crim. P. 17(h) ("No party may subpoena a statement of a witness or of a prospective witness under this rule.").

Nor may a Rule 17(c) subpoena be used to obtain material that could be used only, if at all, to impeach a potential witness. *See, e.g.*, *United States v. Nektalov*, No. 03 Cr. 828 (PKL), 2004 WL 1574721, at *2 (S.D.N.Y July 14, 2004) ("documents sought solely for impeachment purposes are not the proper subject of a Rule 17(c) subpoena") (citing *Nixon*, 418 U.S. at 700; *Cherry*, 876 F. Supp. at 553); *United States v. Jasper*, No. 00 Cr. 825 (PKL), 2003 WL 1107526, at *2 (S.D.N.Y. Mar. 13, 2003) (quashing defendant's subpoena for personnel files regarding a government witness where the documents were sought only for impeachment and would not have been admissible at trial); *United States v. Iozia*, 13 F.R.D. 335, 340 (S.D.N.Y. 1952) (Rule 17(c) cannot be used "to require in advance of trial, and in preparation for trial, a disclosure to the defendant of information which may tend to impeach persons the Government may or may not call as witnesses"); *see also United States v. Bergstein*, No. 16 Cr. 746 (PKC), 2018 WL 9539856, *2 (S.D.N.Y. Jan. 22, 2018) ("The government's discovery obligations are defined by *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), 18 U.S.C. § 3500, and Rule 16, Fed. R. Crim. P.—not by now-quashed or proposed Rule 17(c) subpoenas.").

### III. Discussion

The defendant's motion fails for multiple, independent reasons.

*First*, the documents requested are indisputably "otherwise procurable in advance of trial" from the Government. *Boyle*, 2009 WL 484436, at *2. The defendant's motion is thus nothing more than an improper attempt to circumvent the limits of Rule 16. *See id.*; *Ceballo*, 2003 WL 21961123, at *1. Indeed, the procedural history here is notable for the fact that the defendant did not even bother completing the conferral process with the Government about discovery, much less challenge the Government's productions by filing a discovery motion, but instead moved directly under Rule 17(c) to seek to force Nike—his victim—to produce voluminous materials. The defendant states that he "does not know whether the government actually possesses all of the documents being sought." (Def. Mem. 9.) But Nike has now proffered that the United States Attorney's Office possesses all potentially responsive documents. (Nike Ltr. 2.) The defendant's motion should be denied on this basis alone. *See Boyle*, 2009 WL 484436, at *2.

*Second*, and in any event, the first three of the defendant's broad requests plainly do not satisfy the *Nixon* standard because they do not specifically identify documents that will be relevant and admissible at trial, calling instead for "all documents and communications" regarding a variety of subjects over multiple-year periods. (Def. Mem. 1.) As courts have repeatedly observed, that sort of language "smacks of a fishing expedition." *United States v. Nachamie*, 91 F. Supp. 2d 552, 564 (S.D.N.Y. 2000); *United States v. Barnes*, No. 04 Cr. 186 (SCR), 2008 WL 9359654, at *4 (S.D.N.Y. Apr. 2, 2008) (quashing motion that "blindly seeks 'all' documents and records that fall into several categories for an approximate 23-month period rather than identifiable pieces of evidence" because "[s]uch a blanket request implicates all of the problems associated with a classic 'fishing expedition'"); *RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. at 163, 164 (rejecting as

"overbroad and totally unreasonable" various requests calling for production of "[a]ll documents" noting it was likely to result in a "massive search for countless documents"); *Louis*, 2005 WL 180885, at *5 (rejecting as too broad a Rule 17(c) subpoena requesting "any and all" documents relating to several categories of subject matter).

Indeed, the defendant apparently seeks to use a Rule 17 subpoena not to obtain specific, admissible evidence but instead to engage in a mission to uncover evidence that he speculates might show payments (that he asserts, without explanation, might be unlawful) to unidentified "other" players—that is, payments that neither he nor his former client had any knowledge of at the relevant time, or the present, but that the defendant now speculates could have happened and, if so, might, somehow, be relevant. (Def. Mem. 7-8.) The defendant does not even attempt to meaningfully articulate how his expansive requests for such documents could possibly be proper under Rule 17.

*Third*, the defendant cannot meet his burden of demonstrating that the documents requested will result in the production of relevant, admissible evidence at trial. With respect to relevance, the defendant persists in his meritless argument that he is entitled to introduce evidence of any and all purported misconduct by the victim to prove the validity of the facts he threatened to disclose as part of his extortion scheme, notwithstanding that (a) the legitimacy of the claims made by the individual the defendant describes as a former client have no relevance to *the defendant*'s extortion demands; (b) evidence—if it exists—of alleged misconduct by Nike's employees that the defendant did not know existed at the time of his extortion scheme cannot possibly bear on his wrongful intent; and (c) the truth of the harmful facts that the defendant threatened to disclose is not relevant in an extortion case as a matter of law, *see United States v. Jackson*, 196 F.3d 383, 387 (2d Cir. 1999); *United States v. Jackson*, 180 F.3d 55, 66, 71 (2d Cir. 1999).

The defendant makes no effort to contend with the relevant and controlling case law on these points. Instead, in response to Nike's Letter, the defendant relies on *United States v. Litvak*, which he contends stands broadly for the proposition that "a defendant need not actually know of the existence of evidence for that evidence to be *relevant* in a criminal case." (Dkt. No. 59, at 2 (relying on *United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015)) (emphasis by defendant).) This assertion carries no significance. Of course, evidence may be relevant even if a defendant did not know of it at the time he acted—but to be relevant and admissible here it must nevertheless bear on his knowledge or *mens rea* at the time he acted. What the defendant seeks does not.

In *Litvak*, the defendant sought to introduce two types of contemporaneous evidence concerning his supervisors: (1) evidence that they knew of or approved the defendant's own misrepresentations, and (2) evidence that they, among others, knew of or approved other employees' similar misconduct. *Litvak*, 808 F.3d at 188. The district court admitted the first type, but precluded the second, reasoning that it was irrelevant whether supervisors had approved similar conduct by other employees. *Id.* at 189. On appeal, the Second Circuit vacated the defendant's conviction on a different, unrelated ground. *Id.* at 184-85. Then, "solely to assist the District Court on remand," the Second Circuit stated that, on the unique facts of that case, the jury "may have found more plausible" the defendant's defense, that he "held an honest belief that his conduct was not improper or unlawful," "in light of his supervisors' approval of his colleagues' substantially

Honorable Paul G. Gardephe
United States District Judge
September 23, 2019
Page 6

similar behavior." *Id.* at 190. The Second Circuit did not reach the question of whether the evidence should have been precluded under Rule 403. *Id.* at 189.

*Litvak* thus in no way supports the defendant's apparent view that there is no requirement that evidence be connected to and thus probative of his contemporaneous knowledge, motive, and/or intent, which would also be at odds with the Federal Rules of Evidence and settled law. Rather, *Litvak* is entirely consistent with the Government's position here, namely that, to be relevant, evidence must shed light on the defendant's contemporaneous knowledge or state of mind. Here, the defendant does not even purport to seek evidence that could logically help the jury evaluate the defendant's knowledge or intent at the time of the charged conduct. On the contrary, he claims a right to subpoena wide-ranging material devoid of any temporal connection to the events in this case, much less a connection to the defendant's knowledge or intent before or during the time when he acted. *Cf., e.g.*, *United States v. Oldbear*, 568 F.3d 814, 821 (10th Cir. 2009) (affirming preclusion of evidence in embezzlement case as to how persons other than the defendant used funds because "only [the defendant's] actions and state of mind were material to her guilt"); *United States v. Berg*, 710 F. Supp. 438, 445 (E.D.N.Y. 1989) (testimony concerning the "custom of other arms dealers in complying with arms export laws" precluded on the ground that such evidence was irrelevant to the state of mind of the defendants), *aff'd in part, rev'd in part on other grounds sub nom. United States v. Schwartz*, 924 F.2d 410 (2d Cir. 1991).

Finally, even assuming the defendant could establish the relevance of the materials he seeks (which he cannot), he still could not meet his burden of establishing admissibility. Indeed, two of the three broad categories of documents sought by the defendant seek text messages and/or emails of various Nike employees, substantially all of which would be inadmissible if offered by the defendant for the truth of any matter asserted—yet that is precisely the purpose for which the defendant appears to seek them. The defendant makes no argument as to how these broad categories of materials would be admissible at this trial, a cornerstone of the *Nixon* standard, which provides yet another basis for denying the motion.

At bottom, the requested subpoena is, at best, nothing more than an attempt to fish for potential impeachment material, something beyond the permissible use of a Rule 17(c) subpoena. *See, e.g.*, *Nektalov*, 2004 WL 1574721, at *2; *Jasper*, 2003 WL 1107526, at *2. Moreover, the Government has already committed to producing such material, if any, in advance of trial on a schedule agreed to by the parties. (*See* Dkt. No. 60, at 2.) The defendant's proposed subpoena is thus not just an attempted end-run around Rule 16, but an attempted end-run around the very schedule to which he has agreed.

Honorable Paul G. Gardephe
United States District Judge
September 23, 2019
Page 7

### IV. Conclusion

For the foregoing reasons, the defendant's motion should be denied.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:   s/ Matthew D. Podolsky
      Matthew D. Podolsky
      Daniel C. Richenthal
      Robert B. Sobelman
      Assistant United States Attorneys
      (212) 637-1947/2109/2616

cc:   Counsel of Record (by ECF)

      Counsel to NIKE, Inc. (by email)