UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,       :

vs.                         :      19 Cr. 373 (PGG)

MICHAEL AVENATTI,         :

          Defendant.       :
_____


## DEFENDANT AVENATTI'S REPLY MEMORANDUM IN SUPPORT OF PRETRIAL MOTIONS TO DISMISS

Scott A. Srebnick
SCOTT A. SREBNICK, P.A.
201 South Biscayne Boulevard
Suite 1210
Miami, FL 33131
Telephone: (305) 285-9019
Facsimile:  (305) 377-9937
E-Mail:  Scott@srebnicklaw.com


Jose M. Quinon
JOSE M. QUINON, P.A.
2333 Brickell Avenue, Suite A-1
Miami, FL 33129
Telephone:  (305) 858-5700
Facsimile:  (305) 358-7848
E-Mail:  jquinon@quinonlaw.com

*Attorneys for Defendant Michael Avenatti*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................ 1

LEGAL DISCUSSION ........................................................................................... 3

      I.      Motion to Dismiss for Failure to State an Offense ....................................... 3

      II.     Motion to Dismiss for Vindictive/Selective Prosecution ............................ 9

CONCLUSION ..................................................................................................... 17

CERTIFICATE OF SERVICE ............................................................................ 17

## TABLE OF AUTHORITIES

**CASES:**                                                                                                          **Page**

*American Family Mut. Ins. Co. v. Zavala*,
    392 F.Supp.2d 1108 (D. Ariz. 2003)..............................................................................6

*Bouveng v. NYG Capital LLC*,
    175 F.Supp.3d 280 (S.D.N.Y. 2016)..............................................................................8

*Clinton v. Jones*,
    520 U.S. 681 (1997)......................................................................................................14

*Goldhirsh Group, Inc. v. Alpert*,
    107 F.3d 105 (2d Cir. 1997)..........................................................................................14

*Gomez v. City of New York*,
    805 F.3d 419 (2d Cir. 2015)............................................................................................6

*In the Matter of a Warrant for All Content and Other Information*
    *Associated with the iCloud Account*, 19 MAG 7563 (Aug. 13, 2019)........................16

*La Suisse, Societe D'Assurances Sur La Vie v. Kraus*,
    No. 06 Civ. 4404 (CM) (GWG), 2014 WL 3610890 (S.D.N.Y. July 21, 2014) ..........8

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982) .....................................................................................................13

*Trump v. Vance, et. al*,
    No. 19 Cv 8694 (VM) (S.D.N.Y. 2019)..........................................................12, 13, 14

*United States v. Albertson*,
    971 F. Supp. 837 (D.Del. 1997) ..................................................................................3, 9

*United States v. Aleynikov*,
    676 F.3d 71 (2d Cir. 2012)..............................................................................................4

*United States v. Berrios*,
    501 F.2d 1207 (2d Cir. 1974)........................................................................................13

*United States v. Coss*,
    677 F.3d 278 (6th Cir. 2012)...................................................................................4, 5, 9

*United States v. Enmons*,
    410 U.S. 396 (1973) .......................................................................................................3

**CASES**:                                                                                                              **Page**

*United States v. Godwin-Painter*,
    No. CR4:15-100, 2015 WL 5838501 (S.D. Ga. Oct. 6, 2015).......................................2

*United States v. Int'l Brotherhood of Teamsters, et al.*,
    986 F.2d 15 (2d Cir. 1993).........................................................................................6

*United States v. Jackson*,
    180 F.3d 55 (2d Cir. 1999)...................................................................................4, 5, 7

*United States v. Johnson*,
    171 F.3d 139 (2d Cir. 1999).....................................................................................13

*United States v. Koh*,
    199 F.3d 632 (2d Cir. 1999).....................................................................................14

*United States v. Pendergraft*,
    297 F.3d 1198 (11th Cir. 2002)..................................................................................3

*United States v. Pirro*,
    212 F.3d 86 (2d Cir. 2000).........................................................................................4

*United States v. Silver*,
    103 F. Supp. 3d 370 (S.D.N.Y. 2015).....................................................................11

**STATUTES**:

18 U.S.C. §875(d)........................................................................................................3, 5

**UNITED STATES CONSTITUTION**:

AMEND V.................................................................................................................2, 16

**MISCELLANEOUS**:

Bernstein, Carl, Woodward, Bob, *All the President's Men*,
    (1974), Simon and Schuster......................................................................................1

Local Rules 23.1(d) (7).............................................................................................2, 14

Defendant Michael Avenatti, through counsel, respectfully files this reply to the government's memorandum of law (Dkt. #57) in opposition to Mr. Avenatti's pretrial motions to dismiss (Dkts. ##29, 35).

## PRELIMINARY STATEMENT

The government's response to Mr. Avenatti's motion to dismiss for vindictive and selective prosecution amounts to a "non-denial denial."[1]  Although the government denies personal animus and discriminatory purpose or effect, it does not specifically deny, rebut, or explain any of the evidence set forth in the motion.  This evidence demonstrated, among other things, that: a) President Trump has expressed genuine personal animus toward Mr. Avenatti; b) President Trump overtly uses and encourages the Department of Justice to target his enemies and act as his own personal law firm; c) USA Berman was an ardent supporter of President Trump's campaign, a volunteer on his transition team, and a law partner of President Trump's personal lawyer Rudy Giuliani; d) USA Berman expressed opinions about Mr. Avenatti and the evidence that were presumptively prejudicial under, and in violation of, the Local Rules; e) the investigation and arrest of Mr. Avenatti were completed in four business days, yet the USAO-SDNY continues to claim many months later that the investigation is ongoing; and f) the USAO-SDNY has declined to prosecute the only other alleged co-conspirator identified in the Indictment.  These facts entitle Mr. Avenatti to discovery and an evidentiary hearing.

In its response, the USAO-SDNY did not deny, explain, or rebut the facts set forth above.  It did not submit a declaration from anyone denying personal animus against Mr. Avenatti.  Nor did it submit a declaration from USA Berman denying any contact with

---

[1] Carl Bernstein and Bob Woodward (1974), *All the President's Men*, Simon and Schuster.

President Trump or his personal lawyer Rudy Giuliani about the investigations of Mr. Avenatti. It did not bother to deny that President Trump has sought to influence and meddle in investigations of his political adversaries, including Mr. Avenatti. It did not provide an explanation for why USA Berman recused from the Michael Cohen investigation but not from Mr. Avenatti's. It did not explain why USA Berman flouted Local Rule 23.1(d)(7) in his press release and press conference.

Ultimately, the Court need not decide the motivations behind this prosecution because the Indictment should be dismissed for failure to allege an offense and because the extortion statutes are hopelessly vague-as-applied. In that regard, the government does not cite a single case involving a prosecution of a lawyer for alleged threats made during confidential settlement negotiations to publicize the truth about a corporation's conduct if the corporation did not settle plausible claims of a client that were based on that very conduct. The only purportedly comparable case cited by the government (Dkt. #57:14-15) – *United States v. Godwin-Painter*, No. CR4:15-100, 2015 WL 5838501 (S.D. Ga. Oct. 6, 2015) – involved the prosecution of a client charged with extorting his lawyer to settle a legal malpractice lawsuit for $8 million by threatening to reveal unspecified "damaging information" about the lawyer. And, in that case, the government dismissed the prosecution because the defendant had received ***the advice of counsel*** that his conduct was lawful, *i.e.,* not extortionate, *see* Dkt. #74 in Case No. 4:15-cr-00100-WTM (S.D.Ga. Nov. 17, 2015), underscoring the vagueness of applying the extortion statute in this context. [2] To be clear, the government seeks to imprison

---

[2] In the defendant's motion to dismiss filed in *Godwin-Painter*, the defendant argued lack of fair warning under the Fifth Amendment, noting that "no previous cases have ever applied these statutes in this context" and that he was "unable to find any federal criminal cases with even remotely similar facts." *See* Dkt. #44:15 in Case No. 4:15-cr-00100-WTM (S.D.Ga. July 6, 2015).

2

Mr. Avenatti for allegedly doing what lawyers do every day: posturing, puffing, and threatening public exposure of truthful information if plausible legal claims of a client are not settled.  The Indictment against Mr. Avenatti should be dismissed.

## LEGAL DISCUSSION

I.    **Motion to Dismiss for Failure to State an Offense**

The government does not dispute that all four extortion-related charges in the Indictment require "wrongful" conduct.  Nor does the government dispute that not all threats to harm the reputation of another or cause fear of economic loss are inherently "wrongful."  In fact, such fear of economic loss is "an animating force of our economic system." *United States v. Pendergraft*, 297 F.3d 1198, 1206 (11th Cir. 2002) (citation omitted).  Finally, the government does not dispute that neither the Hobbs Act nor 18 U.S.C. §875(d) defines "wrongful;" thus, "courts have been left to determine on a case-by-case basis whether the Hobbs Act extends to the conduct at issue." *United States v. Albertson*, 971 F. Supp. 837, 842-43 (D.Del. 1997).  For that reason, over the years, courts have had to engage in "judicial line drawing," *id.* at 848-49, and have created safe harbors from the extortion statute to ensure that it was not being used to punish conduct that does not meet an amorphous standard of wrongfulness. *See, e.g., United States v. Enmons*, 410 U.S. 396, 401, 410 (1973) (holding that the "use of force to achieve legitimate **labor ends**" was not punishable under the Hobbs Act to avoid the scenario where it might be applied to "[t]he worker who threw a punch on a picket line, or the striker who deflated the tires on his employer's truck…") (emphasis added); *Pendergraft*, *supra* (rejecting the use of the Hobbs Act to punish threats to file bad faith or even frivolous litigation because of, among other things, the concern about chilling the right of access to the courts); *Albertson*, *supra* (granting a judgment of acquittal on Hobbs Act

charges to a defendant who demanded $20,000 from a developer to drop her threatened public opposition to a land development; distinguishing hard bargaining from extortion).

Notwithstanding that "the precise contours of what does and does not constitute extortion remain undefined," *see United States v. Coss*, 677 F.3d 278, 285 (6th Cir. 2012), the government makes the familiar arguments in response to a motion to dismiss in a criminal case: that the Indictment recites the elements of the offense charged, and that the defendant is asking the Court to consider facts outside the Indictment.  (Dkt. #57:12-14).  Mr. Avenatti, however, has not asked the Court to consider facts outside the Indictment.  Rather, Mr. Avenatti has asked the Court to consider what is ***lacking*** in the Indictment to demonstrate that: a) the conduct, as alleged, does not fit within the "contours" of what constitutes extortion; and b) the law did not provide fair notice to Mr. Avenatti that he could go to prison for allegedly threatening to reveal truthful information related to a client's claim against Nike.  Certainly, this Court has the authority to dismiss an Indictment, notwithstanding the recitation of the elements of the offense, where the factual allegations do not make out an offense.  *See, e.g., United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012); *United States v. Pirro*, 212 F.3d 86, 92-95 (2d Cir. 2000).

The government contends that "the circumstances of this case are fully in accord with prior cases where defendants unlawfully extorted victims through threats of economic or reputational harm…"  (Dkt. #57:16).  To that end, the government cites *United States v. Jackson*, 180 F.3d 55, 71 (2d Cir. 1999), and argues that, "[c]ontrary to the defendant's repeated assertions … the defendant in *Jackson* did have a plausible legal claim."  (Dkt. #57:16).  The government misreads *Jackson*.  It is precisely because Jackson did ***not*** have a plausible legal claim that the Second Circuit, on rehearing, found the instructional error – the

failure to instruct on wrongfulness – to be harmless. *Jackson*, 196 F.3d 383, 388 (2d Cir. 1999). Indeed, the Second Circuit rejected every one of Jackson's proffered claims and held that there was insufficient evidence of a plausible claim.[3] *Id.*

Although the Indictment does not allege that Client-1 lacked a plausible claim against Nike, the government argues that omission is irrelevant because "Client-1 was not charged with extortion; the defendant was" and that Mr. Avenatti "demanded large payments for himself, payments to which *he* had no plausible claim of right…" (Dkt. #57:14). Indeed, the government claims that all of Mr. Avenatti's arguments "proceed from the flawed premise that the question in this case is whether Client-1 had a plausible claim of right to some property of Nike." (Dkt. #57:14).

That premise, however, is not flawed at all because Mr. Avenatti stands in the shoes of his client as a matter of law. The Indictment alleges that Mr. Avenatti met with Nike lawyers to settle his client's claim, (Dkt. #8:¶¶8-12), and nowhere does it allege that his client did not

---

[3] Because Jackson had no plausible claim, the Second Circuit also found the "nexus" to be lacking. On that issue, the panel opinion made it clear that the appropriate inquiry is whether there was a nexus between the content of the threatened public exposure and the claim. 180 F.3d at 70-71. This requirement serves to render "wrongful," for example, a threat to publicly expose a defendant's sexual indiscretions as a means to settle a patent lawsuit because the threat is unrelated – *i.e.,* has no nexus -- to the claim. *Id.* at 70. On rehearing, the panel reaffirmed this view, 196 F.3d at 387 (noting its conclusion that §875(d) prohibits threats to reputation for purposes of obtaining money "if there is no nexus between *the threat* and the defendant's claim") (emphasis added). But, later in the rehearing opinion, the panel conflated the issue by observing that Jackson had failed to proffer sufficient evidence of a nexus between the claim and *the demand* (as opposed to *the threat*). 196 F.3d at 388. Given the marital infidelity example used by the *Jackson* panel, it is only logical that the nexus requirement speaks to the relationship between the claim and the content of the threatened public disclosure, not the claim and *the demand*. *See also Coss*, 677 F.3d at 286 (evaluating the nexus between *the claim* and *the threat*). Otherwise, every time a prospective plaintiff demanded more than a claim was worth, the plaintiff would be an extortionist, contrary to the well-established principle that puffing and posturing during settlement negotiations is acceptable behavior.

authorize him to demand an internal investigation of Nike, from which Mr. Avenatti would receive attorney's fees, as part of the settlement of the client's claim.   The government's attempt to dissociate Coach Franklin's claim for money damages from his demand for an internal investigation turns agency law on its head.   The United States has a "system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent." *Gomez v. City of New York*, 805 F.3d 419, 424 (2d Cir. 2015) (citation omitted).   Because the law in fact "presume[s] that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so…," *id.*, it necessarily presumes that the attorney has the authority to ***negotiate*** a settlement.   While that presumption is rebuttable, *id.*, the burden to rebut it is not insubstantial.   *United States v. Int'l Brotherhood of Teamsters, et al.*, 986 F.2d 15, 20 (2d Cir. 1993).   There must be affirmative evidence to demonstrate that the lawyer was acting outside his/her authority in negotiating the settlement.

Here, the Indictment contains no allegation to rebut the presumption that Mr. Avenatti spoke for Coach Franklin when making the settlement demand.   Even though the Indictment alleges that Mr. Avenatti did not tell Coach Franklin he would seek to be paid to conduct an internal investigation, it does not allege that Mr. Avenatti lacked authority to conduct the negotiations as he saw fit.

> It would be highly impractical, and clearly detrimental to our legal system, to hold that a lawyer's actions are authorized and binding only if the client consents to every single action taken by the lawyer.   Lawyers are entrusted with considerable discretion in representing their clients in the complex world of legal rights and obligations.   Clients rely on the training, expertise, and judgment of their lawyers.   To be sure, clients must consent to a lawyer's representation and the lawyer must pursue the objectives of the clients, but this does not mean that lawyers act with authority only when the client micro-manages the lawyer's activities, approving every communication, every decision, every nuance.

*American Family Mut. Ins. Co. v. Zavala*, 392 F.Supp.2d 1108, 1116 (D. Ariz. 2003).

The government, citing *Jackson*, 180 F.3d at 71, claims the case is straightforward, arguing that a ***threatener*** acts "wrongfully" under the extortion statute if the ***threatener*** has no claim of right to the proceeds.  (Dkt. #57:12).  But *Jackson* did not involve a lawyer making an alleged threat on behalf of a client in an agent/principal relationship.   Under the government's construct, every lawyer who communicates a threat on behalf of a client during a settlement conference is ***always*** guilty of extortion because the lawyer ***never*** has a claim of right against the potential defendant.  That is not the law.  The general manager (or a lawyer) at the private club who "threaten[s] to post a list of club members who have not yet paid their dues," *Jackson*, 180 F.3d at 67, has not acted wrongfully even though the manager (or the lawyer) may not personally have a claim of right to the proceeds.  The lawyer for the purchaser of a defective product who "threaten[s] to complain to a consumer protection agency," *id.*, does not act wrongfully even though the lawyer personally does not have a claim of right under the warranty.  Nor does that lawyer act wrongfully if he threatens to go to the local TV station to expose the defects in the product.  *Id.*  And neither lawyer acts "wrongfully" if the threat of reputational or economic harm is in connection with a plausible claim ***of the principal***, i.e., the client.  *Thus, it is legally irrelevant that Mr. Avenatti, as his client's agent, had no plausible claim.*  The issue is whether Coach Franklin had a plausible claim and whether Mr. Avenatti was within his right, on behalf of Coach Franklin, to make a settlement demand for equitable relief, in the form of internal investigation, and to be paid for it.

The government's argument proves too much.  Under the government's theory, every attorney who demands any attorney's fees from a defendant to add on to a client's claim for money damages – or even an attorney who expects a 40% contingency fee as part of the

settlement -- acts "wrongfully" because the attorney stands to gain for himself yet personally has no independent claim of right against the prospective defendant.

The government's citation to a civil extortion case, *La Suisse, Societe D'Assurances Sur La Vie v. Kraus*, No. 06 Civ. 4404 (CM) (GWG), 2014 WL 3610890 (S.D.N.Y. July 21, 2014), is unavailing. That case defies comparison. First, the Report and Recommendation in *La Suisse* was rendered in a damages proceeding that was <u>uncontested</u> after a default judgment had been entered against the defendant brokerage company and the individual broker (collectively "brokers"). *Id.* at *3 (noting that neither of the brokers had made any submission to the court). Second, the facts are dissimilar. There, the brokers owed a fiduciary duty to Swiss Life and ***not*** to the policyholders. *See* Dkt. #22:2-6, in No. 06 Civ. 4404 (CM) (GWG). Nonetheless, they initiated lawsuits against Swiss Life, purportedly on behalf of policyholders, in order to obtain money only from themselves and not at all for the benefit of the plaintiffs and the nominal policyholders; in fact, the brokers were not in an agency relationship with the policyholders at all, but merely used the lawsuits as a means to extort money from the insurance company, including by threatening to lie in the litigation if they were not paid. *La Suisse*, 2014 WL 3610890, at **4, 10. Here, as alleged, Mr. Avenatti was the lawyer for Coach Franklin, and nowhere does the Indictment allege that he was acting outside his agency authority in making the settlement demand.

The government argues that Mr. Avenatti mischaracterizes the Court's decision in *Bouveng v. NYG Capital LLC*, 175 F.Supp.3d 280 (S.D.N.Y. 2016). In *Bouveng*, this Court held that a reasonable jury could find the Defendants liable for defamation for falsely accusing the Plaintiff of criminal extortion, where the alleged extortionate conduct involved a threat of "embarrassing litigation" of a sexual harassment claim. *Id.* at 324. Mr. Avenatti never

suggested that *Bouveng* is on all fours with this case, only that this Court relied on the accepted proposition that a plaintiff's mere threats of litigation – even ones that are meritless and will be embarrassing to the defendant – do not violate the Hobbs Act. *Id.* at 320-24. Mr. Avenatti noted the irony that, while courts have accepted that it is not extortion to threaten, in bad faith, frivolous litigation that is meant to embarrass the defendant, the government has charged Mr. Avenatti with threatening to make public ***truthful*** information that would necessarily become public in the contemplated lawsuit if the case did not settle. (Dkt. #35:15).

With regard to Mr. Avenatti's challenge to the term "wrongful" as being vague-as-applied to his conduct, Mr. Avenatti acknowledges, as he did in his motion, the body of law that such challenges are typically considered after the facts have been established at trial. (Dkt. #35:21). But given the judicial recognition that the line separating "wrongful" from legal conduct is a blurry one, *Albertson, supra*; *Coss, supra*, the resolution need not wait for trial for the reasons previously argued.

## II.  Motion to Dismiss for Vindictive/Selective Prosecution

In his motion to dismiss (Dkt. #29), Mr. Avenatti proffered a set of facts, with supporting evidence, which demonstrate that he is entitled to discovery to prove that the prosecution of him is based on unconstitutionally vindictive and selective reasons. Recent developments since the filing of Mr. Avenatti's motion and the government's response further cement his entitlement to discovery.

In his initial motion, Mr. Avenatti proffered the following facts to demonstrate both "discriminatory purpose" (selective prosecution) and "genuine animus" (vindictive prosecution).

1)    President Trump called Mr. Avenatti a "total low-life" and "third rate lawyer" as a result of, among other things, Mr. Avenatti's representation of Stormy Daniels in multiple lawsuits against President Trump. The allegation that Daniels was paid "hush money" during the campaign ultimately led to charges being filed against President Trump's personal lawyer Michael Cohen, who then cooperated and accused the President of being complicit in the criminal campaign finance violations. (Dkt. #29:33-37). President Trump's family likewise has personal animus toward Mr. Avenatti. (Dkt. #29:48 & n.20).

2)    President Trump routinely threatens retaliatory action, including arrest and prosecution, of those people against whom he has a personal animus, and has sought to influence and meddle in the Department of Justice's prosecutorial decisions. (Dkt. #29:37 & n.17).

3)    USA Berman has close ties to President Trump, as evidenced by the following facts: a) USA Berman contributed $5,400 to the Trump presidential campaign; b) USA Berman worked in the General Counsel's Office of the Trump Transition Team; c) USA Berman was personally interviewed by President Trump for his current position, an unusual circumstance; d) USA Berman was a law partner with Rudy Giuliani, the President's personal lawyer; and e) USA Berman was recused from the Michael Cohen investigation, wherein President Trump was identified as a participant in the criminal conduct related to his campaign. (Dkt. #29:37-38).

4)    The USAO-SDNY had a contentious relationship with Mr. Avenatti, arising from the USAO-SDNY's speculation that Mr. Avenatti informed the press that Stormy Daniels was scheduled to be interviewed by the USAO-SDNY in the Michael Cohen investigation. (Dkt. #29:34; Dkt. #30-19).

5)    The investigation of Mr. Avenatti was completed in less than four business days, and the USAO-SDNY arrested him before it even bothered to learn that Coach Franklin's litigation objectives included both money damages and equitable relief in the form of rooting out corruption at Nike, and that Mr. Avenatti's proposal of an internal investigation was designed to accomplish that objective. (Dkt. #29:7-32). Yet, despite its rush to arrest Mr. Avenatti, the government continues to claim that the extortion investigation is ongoing or continues.

6)    USA Berman and FBI Asst. Director Sweeney issued a press release and held a press conference on the date of Mr. Avenatti's arrest, wherein they violated Local Criminal Rule 23.1(d)(7) by clearly expressing their

opinions "as to the accused's guilt or innocence" and as to "the merits of the case or the evidence in the case," and likewise made a number of inaccurate statements regarding the evidence. This violation "presumptively involve[s] a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice within the meaning of this rule." *Id.*; *see also United States v. Silver*, 103 F.Supp.3d 370, 378 (S.D.N.Y. 2015). (Dkt. #29:7-9 & n.3).

**7)**     The Complaint, Indictment, and various search warrant applications all allege that CC-1 (attorney Mark Geragos), is a co-conspirator, and the government recently confirmed that there are no other alleged co-conspirators. Despite that attorney Geragos denied his guilt to the USAO-SDNY (both personally and through his lawyer) in multiple proffer sessions, one of which was attended by USA Berman, the USAO-SDNY, apparently disbelieving his denials, continues to maintain that Mr. Geragos is a co-conspirator. (Dkt. #29:10-11 & n.4). Yet only Mr. Avenatti has been charged in this case.

Since the date of the filing of the motion to dismiss less than two months ago, even more evidence has come to light that further confirms President Trump's treatment of the DOJ and the USAO-SDNY as his own personal law firm, and further proves his willingness to use his personal lawyer Rudy Giuliani, the Department of Justice, and USA Berman to further his political agenda, settle personal scores, and meddle in ongoing state, federal and foreign investigations.

**8)**     On August 12, 2019, an unidentified whistleblower employed by the CIA complained – and the White House later released a rough transcript confirming – that on a telephone call on July 25, 2019, President Trump asked Volodymyr Zelensky, the newly elected President of Ukraine, to investigate former Vice President Joe Biden and his son Hunter, under the implicit threat that the United States would withhold financial aid to Ukraine. The whistleblower complaint and rough transcripts show that Trump had enlisted his personal lawyer Rudy Giuliani to pressure President Zelensky to pursue the investigation of President Trump's leading political opponent, and had also suggested that Mr. Zelensky

work with Attorney General William Barr to assist Trump in that endeavor.  *See* Memorandum of Telephone Conversation.[4]

**9)**     On September 17, 2019, Corey Lewandowski, the President's former campaign manager and close personal advisor, admitted in testimony to the House Judiciary Committee that President Trump told him to order then-Attorney General Jeff Sessions to curtail the Mueller investigation and stop probing his 2016 campaign.[5]

**10)**    On September 19, 2019, President Trump filed a civil lawsuit against Cyrus Vance, the New York County District Attorney, and Mazars USA LLP, a New York accounting firm, to block Mazars from complying with a state grand jury subpoena seeking financial records from President Trump as part of a state criminal investigation.  *See* Dkt. #1 in *Trump v. Vance, et. al*, No. 19 Cv 8694 (VM) (S.D.N.Y. 2019).  On September 30, 2019, following a "Statement of the United States" he filed on September 24, 2019, USA Berman confirmed that the SDNY would seek to intervene in the civil lawsuit to support President Trump's efforts to resist the state grand jury subpoena.  On October 2, 2019, USA Berman, together with the DOJ, filed a "Statement of Interest of the United States" supporting President Trump's argument that his challenge to the subpoena should be resolved in federal court and supporting "interim relief as necessary to allow for appropriate briefing of the weighty constitutional issues involved."  Dkt. #32 in *Trump v. Vance, supra.*

**11)**    On September 30, 2019, President Trump, in a tweet, openly suggested that a political adversary, Congressman Adam Schiff, should be arrested for treason for no legitimate reason.[6]

---

[4] https://www.whitehouse.gov/wp-content/uploads/2019/09/Unclassified09.2019.pdf.
President Trump's reference to AG Barr is not surprising.  On May 1, 2019 – just five weeks after Mr. Avenatti's arrest -- Senator Kamala Harris questioned AG Barr at a Senate Judiciary Committee hearing, as follows: "Has the President or anyone at the White House ever asked or suggested you open an investigation into anyone?"  AG Barr stammered and equivocated, "grapple[d] with the word 'suggest,' and then, when Sen. Harris clarified by using the words "hinted" and "inferred," AG Barr ultimately answered "I … don't know." https://www.nytimes.com/video/us/politics/100000006736092/kamala-harris-barr.html

[5] https://www.cnn.com/2019/09/17/politics/corey-lewandowski-testifies-house-judiciary-committee/index.html.

[6] https://www.cnn.com/2019/09/30/politics/donald-trump-adam-schiff/index.html

This combination of facts easily satisfies the standard of "some evidence tending to show the existence of the essential elements of the defense." *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974). The government's response reads as though a claim for vindictive or selective prosecution requires proof of a smoking gun before a defendant is entitled to discovery. That is not the law and *United States v. Johnson*, 171 F.3d 139, 141 (2d Cir. 1999), does not so hold. In *Johnson*, after the defendant was acquitted of RICO charges, the government charged the defendant with federal weapons violations that had been known to the government prior to the RICO prosecution. The district court dismissed the indictment, concluding that the chronology of events raised an "unrebutted presumption of vindictiveness." *Id.* The Second Circuit reversed, holding that "a new federal prosecution following an acquittal on separate federal charges does not, without more, give rise to a presumption of vindictiveness." *Id.* The Court noted that a finding of actual vindictiveness requires "direct evidence," such as a statement by the prosecutor. *Id.* at 140.

Here, there clearly exists direct evidence of personal animus. President Trump called Mr. Avenatti a "total low-life" and a "third rate lawyer," and the President's son, Donald Trump, Jr., has openly gloated about the prospect of Mr. Avenatti going to prison. As the USAO-SDNY argued just yesterday in its Statement of Interest in *Trump v. Vance, supra*, "the 'executive Power' is vested in the President alone." (Dkt. #32:11) (citing *Nixon v. Fitzgerald*, 457 U.S. 731, 749-50 (1982)). "And it is he alone who is charged constitutionally to 'take Care that the Laws be faithfully executed.'" *Id.* "Our system of government presumes that the President will have ultimate authority over the actions of officials within the Executive Branch." *Trump v. Vance, supra* (Dkt. #32:12). Article II "makes a single President

responsible for the actions of the Executive Branch." *Clinton v. Jones*, 520 U.S. 681, 712-13 (1997) (Breyer, J., concurring in judgment).

Thus, Mr. Avenatti has offered "direct evidence" of personal animus at the very top of the Executive Branch. Although nothing more is required, Mr. Avenatti has also shown that USA Berman exhibited personal animus by violating Local Rule 23.1(d)(7) in his press statements by describing Mr. Avenatti as a "criminal" and expressing opinions about the evidence, including that Mr. Avenatti was not acting as a lawyer and that the internal investigation was a "guise." Beyond that, there is sufficient evidence to warrant discovery regarding whether USA Berman "was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,'" and that Mr. Avenatti "would not have been prosecuted except for the animus." *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999) (citation omitted). That USA Berman, an ardent Trump supporter, "was prevailed upon" to bring charges against Mr. Avenatti – whether openly or suggestively -- is hardly a stretch given President Trump's politicization and treatment of the DOJ as his own personal law firm, a phenomenon that can no longer be denied in the wake of the USAO-SDNY's decision to protect President Trump in *Trump v. Vance* from local prosecutors pursuing a legitimate investigation.

The government is incorrect that Mr. Avenatti's claim is based on "speculation and conclusory assertions." (Dkt. #57:28). Mr. Avenatti's claim is based on the above evidence and simple inductive reasoning from that evidence. "Inductive reasoning claims the premises constitute some evidence for the conclusions and in law we speak in terms of the probability and likelihood that the premises buttress the conclusions." *Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 108 (2d Cir. 1997) (citation omitted). While "the line between permissible

inference and impermissible speculation is not always easy to discern," an inference "derive[s] a conclusion from proven facts because such considerations as experience, or history, or science have demonstrated that there is a likely correlation between those facts and the conclusion. If that correlation is sufficiently compelling, the inference is 'reasonable.'"  *Id.* at 108.  Here, experience and history teaches that President Trump is not shy about urging members of the Executive Branch to target his adversaries.  The "some evidence" standard for obtaining discovery on claims of vindictive and selective prosecution recognizes that if a defendant had ***conclusive*** proof of discriminatory effect and discriminatory intent, the defendant would not need discovery to prove his claim.

Moreover, Mr. Avenatti has demonstrated "discriminatory effect."  The government argues that Mr. Avenatti "points to only one purportedly similarly situated individual, the person identified in the complaint and the Indictment as 'CC-1.'"  (Dkt. #57:26).  That argument cuts against the government and proves the point because that there are no alleged co-conspirators other than CC-1, *i.e.,* Mr. Geragos.  The government attempts to draw the distinction that Mr. Avenatti "made substantially all of the threats to Nike" and "substantially all of the demands for payment."  (Dkt. #57:27).  But the government does not dispute that Mr. Geragos had more communications with Nike and its lawyers than Mr. Avenatti, set up the meetings and phone call, knew about the intended press conference and the settlement demand, participated in the two meetings and one telephone conversation that involved Mr. Avenatti, suggested that he would be jointly leading the internal investigation with Mr. Avenatti, and offered thoughts to Nike about how the investigation would be staffed.  (Dkt. #57:31-32).  As the government knows, conspiracy law draws no such distinctions.  Moreover, Mr. Geragos is a criminal defense lawyer with experience in extortion cases.  So, even if a line can be

judicially drawn between wrongful and acceptable conduct in this context, surely a seasoned litigator with criminal law expertise would be in a better position to know where judges would draw that line.

Although the government notes that it "does not intend to comment on its deliberative process or the exercise of its prosecutorial discretion," (Dkt. #57:27, n.7), undersigned counsel is unaware of any precedent in which the government acknowledged the existence of only two alleged co-conspirators, both of whom participated in every relevant communication as claimed by the government and stood to benefit financially from the alleged conspiracy, yet the government, in the exercise of discretion, opted to charge only one with conspiracy. Ironically, although the government apparently believed it had enough evidence to charge Mr. Avenatti in less than four business days, and claims the evidence is simple and straightforward, the government continues to assert that the investigation of the alleged extortion offenses is ongoing. *See, e.g.,* Agent Affidavit, *In the Matter of a Warrant for All Content and Other Information Associated with the iCloud Account*, 19 MAG 7563 (Aug. 13, 2019), at pp. 19-20. The only logical explanation for the government's decision to maintain the fiction that the investigation is ongoing is to keep Mr. Geragos off the witness stand at Mr. Avenatti's trial. As the government is aware, Mr. Geragos's testimony would be exculpatory; he has proffered that there was no conspiracy and that he lacked an intent to extort Nike. *Id.* at 10 n.1. Yet, despite having voluntarily participated in multiple debriefings with the government without immunity, Mr. Geragos plans to invoke his Fifth Amendment privilege if called as a witness by Mr. Avenatti, as the government is aware.[7]  The government's tactical decision to render

---

[7] At the Court's request, undersigned counsel will provide the Court with copies of the interview reports of Mr. Geragos's proffer sessions with the government.

Mr. Geragos unavailable as a defense witness is further proof of discriminatory purpose and effect.

## **CONCLUSION**

For the foregoing reasons, Mr. Avenatti respectfully requests that the Court dismiss the Indictment against him.

Respectfully submitted,

By:    /s/Scott A. Srebnick
            Scott A. Srebnick, P.A.
            201 South Biscayne Boulevard
            Suite 1210
            Miami, FL 33131
            Telephone: (305) 285-9019
            Facsimile:  (305) 377-9937
            E-Mail:  Scott@srebnicklaw.com

By:    /s/Jose M. Quinon
            Jose M. Quinon, P.A.
            2333 Brickell Avenue, Suite A-1
            Miami, FL 33129
            Telephone:  (305) 858-5700
            Facsimile:  (305) 358-7848
            E-Mail:  jquinon@quinonlaw.com

*Attorneys for Defendant Michael Avenatti*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2019, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

/s/Scott A. Srebnick
Scott A. Srebnick