UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,         :

vs.                               :        S1 19 Cr. 373 (PGG)

MICHAEL AVENATTI,                 :

    Defendant.                    :
_____


**DEFENDANT AVENATTI'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO DISMISS COUNT THREE FOR
FAILURE TO STATE AN OFFENSE, AND BECAUSE
18 U.S.C. §1346 IS VAGUE AS APPLIED**

Scott A. Srebnick
SCOTT A. SREBNICK, P.A.
201 South Biscayne Boulevard
Suite 1210
Miami, FL 33131
Telephone: (305) 285-9019
Facsimile:  (305) 377-9937
E-Mail:  Scott@srebnicklaw.com


Jose M. Quinon
JOSE M. QUINON, P.A.
2333 Brickell Avenue, Suite A-1
Miami, FL 33129
Telephone:  (305) 858-5700
Facsimile:  (305) 358-7848
E-Mail:  jquinon@quinonlaw.com

*Attorneys for Defendant Michael Avenatti*

i

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

    I.    PRELIMINARY STATEMENT ........................................................................... 1

    II.    LEGAL DISCUSSION ......................................................................................... 2

        **A.**  Legal Standard on a Motion to Dismiss ............................................................ 2

        **B.**  The Honest Services Wire Fraud Charge ......................................................... 2

        **C.**  *Skilling v. United* States, 561 U.S. 358 (2010) is Fatal To the Honest Services Wire Fraud Charge .................................................................. 5

        **D.**  The Honest Services Wire Fraud Charge Fails to Allege a Violation of a Legally Cognizable Duty ............................................................. 9

        **E.**  The Honest Services Wire Fraud Statute is Vague-as-Applied ....................... 11

CONCLUSION ............................................................................................................. 12

CERTIFICATE OF SERVICE ..................................................................................... 12

# **TABLE OF AUTHORITIES**

**CASES:**                                                                                                                     **Page**

*American Family Mut. Ins. Co. v. Zavala*,
    392 F.Supp.2d 1108 (D. Ariz. 2003)..........................................................................10

*Gomez v. City of New York*,
    805 F.3d 419 (2d Cir. 2015)........................................................................................9

*Kolender v. Lawson*,
    461 U.S. 352 (1983). ................................................................................................11

*McNally v. United States*,
    483 U.S. 350 (1987)............................................................................................ passim

*Skilling v. United States*,
    561 U.S. 358 (2010) ........................................................................................... passim

*Sorich v. United States*,
    555 U.S. 1204 (2009).................................................................................................6

*United States v. Aleynikov*,
    676 F.3d 71 (2d Cir. 2012).........................................................................................2

*United States v. Bahel*,
    662 F.3d 610 (2d Cir. 2011).......................................................................................7

*United States v. Int'l Brotherhood of Teamsters, et al.*,
    986 F.2d 15 (2d Cir. 1993).........................................................................................9

*United States v. Brunshtein*,
    344 F.3d 91 (2d Cir. 2003).......................................................................................11

*United States v. Clarke*,
    No. 05-Cr-17 (DAB), 2006 WL 3615111
    (S.D.N.Y. Dec. 7, 2006)..............................................................................................2

*United States v. Coppola*,
    671 F.3d 220 (2d Cir. 2012) ......................................................................................7

*United States v. DeMizio*,
    741 F.3d 373 (2d Cir. 2014) ...................................................................................... 7

**CASES:**                                                            **Page**

*United States v. Hoskins*,
    73 F.Supp.3d 154 (D.Conn. 2014) ................................................................................11

*United States v. Huberfeld*,
    No. 16 Cr 467 (AKH) (Dkt. #287:14) ..............................................................................8

*United States v. Milani*,
    739 F.Supp. 216 (S.D.N.Y. 1990) ..................................................................................11

*United States v. Nouri*,
    711 F.3d 129 (2d Cir. 2013) .............................................................................................7

*United States v. Pirro*,
    212 F.3d 86 (2d Cir. 2000) ...............................................................................................2

*United States v. Porter*,
    591 F.2d 1048 (5th Cir. 1979) ..........................................................................................7

*United States v. Rahman*,
    189 F.3d 88 (2d Cir. 1999) .............................................................................................11

*United States v. Rybicki*,
    354 F.3d 124 (2d Cir. 2003) .............................................................................................7

*United States v. Sattar*,
    272 F.Supp.2d 348 (S.D.N.Y. 2003) ..............................................................................11

*United States v. Strauss*,
    999 F.2d 692 (2d Cir. 1993) ...........................................................................................11

*United States v. Welch*,
    327 F.3d 1081 (10th Cir. 2003) ........................................................................................6

*Vermande v. Hyundai Motor America, Inc.*,
    352 F.Supp.2d 195 (D.Conn. 2004) ...............................................................................10

**STATUTES**:

18 U.S.C. §1343 ..............................................................................................................1, 5

18 U.S.C. §1346 ........................................................................................................ passim

**UNITED STATES CONSTITUTION:** **Page**

AMEND V ...............................................................................................................1, 11

**MISCELLANEOUS**:

*Black's Law Dictionary* 948 (9th ed.2009) ............................................................ 7

Fed. R. Crim. P. Rule 12(b)(3)(B)(V) .....................................................................1

Defendant Michael Avenatti, through counsel, and pursuant to Rule 12(b)(3)(B)(V) of the Federal Rules of Criminal Procedure and the Due Process Clause of the Fifth Amendment, respectfully submits this Memorandum of Law in support of his Motion to Dismiss Count Three of the Superseding Indictment for Failure to State an Offense and Because 18 U.S.C. §1346 is Vague-as-Applied.

### I.   PRELIMINARY STATEMENT

Not satisfied with distorting only the extortion statutes beyond recognition in order to prosecute Mr. Avenatti, the government now seeks to do the same with the "honest services" wire fraud statute. Namely, the government alleges in Count Three of the Superseding Indictment that Mr. Avenatti violated 18 U.S.C. §§1343 and 1346 by engaging in a "scheme to obtain payments for himself from Nike based on confidential information provided to AVENATTI by Client-1 for the purposes of furthering AVENATTI'S representation of Client-1 without Client-1's knowledge or approval, and used and caused the use of interstate communications to effect the scheme." Sup. Ind., at p. 17. However, the government's thinly-veiled attempt to present the jury with a more sympathetic "victim" than Nike fails because the government's newly crafted theory has been squarely rejected by the Supreme Court in *Skilling v. United States*, 561 U.S. 358 (2010), which limits "honest services" prosecutions to cases involving bribes and kickbacks, neither of which is present here. The government's continued effort to use Mr. Avenatti as a test case for novel applications of the federal criminal law should be rejected.

## II.     LEGAL DISCUSSION

### A.     Legal Standard on a Motion to Dismiss

"[A] federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012); *United States v. Pirro*, 212 F.3d 86, 92-95 (2d Cir. 2000). When deciding a motion to dismiss an indictment for failure to state an offense, a district court is required to accept all factual allegations in the indictment as true. *United States v. Clarke*, No. 05-Cr-17 (DAB), 2006 WL 3615111, *1 (S.D.N.Y. Dec. 7, 2006).

### B.     The Honest Services Wire Fraud Charge

Critically, the Superseding Indictment ***does not*** allege that Mr. Avenatti engaged in any bribe or kickback scheme. Nor does it allege that Mr. Avenatti ever asked for, proposed, or accepted any bribe or kickback. In fact, the words "bribe" and "kickback" appear nowhere in the Superseding Indictment.

Instead, the Superseding Indictment alleges that Mr. Avenatti was a licensed attorney in California who "was required to comply with all ethical and statutory obligations imposed on licensed attorneys, including ethical and legal obligations that impose duties of confidentiality, loyalty, honesty, and fair dealing with respect to all clients." Sup. Ind., at 2. It further alleges that Mr. Avenatti first met Client-1 (Coach Gary Franklin) on March 5, 2019, at which time Client-1 informed Mr. Avenatti that Client-1 "wanted Nike to reinstate its $72,000 annual contractual relationship," which "Nike recently declined to renew." Sup. Ind., at 4. The Superseding Indictment also alleges that Mr. Avenatti told Client-1 that Avenatti believed "he would be able to obtain a $1 million settlement for Client-1 from Nike" but did not tell Client-1 that Avenatti "also would and did seek or demand payments from Nike for

himself in exchange for resolving any potential claims made by Client-1 and not causing financial and reputational harm to Nike, or that Avenatti would and did seek to make any agreement with Nike contingent upon Nike making payments to Avenatti himself." Sup. Ind., at 4-5. According to the Superseding Indictment, Mr. Avenatti never informed Client-1 that Avenatti "intended to threaten to publicize the confidential information that Client-1 had provided to Avenatti, nor did Avenatti obtain Client-1's permission to publicize any such information." Sup. Ind., at 5.

  The Superseding Indictment further alleges that over a three-day period from March 19-21, 2019, Mr. Avenatti made two demands of Nike's attorneys to settle Client-1's case: 1) Nike must pay $1.5 million to Client-1; and 2) Nike must hire Avenatti and another attorney (Mark Geragos) to conduct an internal investigation of Nike for a substantial sum. Sup. Ind., at 6-12. It also alleges that, at a meeting on March 21, 2019, one of the Nike outside attorneys told Mr. Avenatti that he (the Nike outside attorney) "did not think paying Avenatti's client $1.5 million would be a 'stumbling block.'" Sup. Ind., at 10. The Superseding Indictment alleges that "[a]t no point following the March 21 Meeting did Avenatti inform Client-1 that Nike had offered to resolve Client's claims without paying Avenatti." Sup. Ind., at 12.[1] According to the Superseding Indictment, Mr. Avenatti did not inform Client-1 "that Avenatti continued to threaten to publicize confidential information provided to Avenatti by Client-1,

---

[1] Although we must accept the factual allegations in an Indictment as true for purposes of this motion to dismiss, the characterization of the Nike attorney's "stumbling block" comment as an "offer[] to resolve" Gary Franklin's claim is fanciful at best. *There was never any verbal offer communicated to Mr. Avenatti by Nike or its outside counsel to pay Coach Franklin $1.5 million, much less a written offer of settlement approved by anyone with authority at Nike.*

or that Avenatti had continued to use that information to demand a multimillion dollar payment for himself." Sup. Ind., at 12. Mr. Avenatti was arrested on March 25, 2019. Sup. Ind., at 14.

Significantly, the Superseding Indictment does **not** allege a single false statement or affirmative misrepresentation made by Mr. Avenatti to his client, Coach Gary Franklin -- **not one**. The Superseding Indictment fails to allege that Coach Franklin did not want an internal investigation of Nike.[2] Moreover, the Superseding Indictment does not allege that Coach Franklin restricted Mr. Avenatti from disclosing the unspecified "confidential information" to Nike, that Mr. Avenatti disobeyed Coach Franklin's express wishes, or that Coach Franklin limited Mr. Avenatti in any way from handling the settlement negotiations as Mr. Avenatti, an experienced lawyer, saw fit.[3]

Rather, the wire fraud charge is predicated *entirely* on purported *omissions* and *nondisclosures* by Mr. Avenatti over a brief period of time during ongoing and fluid settlement negotiations, and alleged threats by Mr. Avenatti during those negotiations to reveal "confidential information" to obtain payments for himself from Nike. There is no allegation that the settlement negotiations had proceeded to the point that Mr. Avenatti had accepted legal fees, or was even ready to accept legal fees, without informing Coach Franklin or obtaining

---

[2] The government is well aware of the overwhelming evidence that Coach Franklin's objective was to root out corruption at Nike, which is entirely consistent with Mr. Avenatti's demand to conduct an internal investigation.

[3] The Superseding Indictment does not identify the "confidential information" that Mr. Avenatti supposedly sought to use for his own benefit. Presumably, the Superseding Indictment refers to the same information – false invoices, travel records, and bank statements corroborating Nike's payment to amateur players – that formed the basis for Coach Franklin's claim against Nike *and would have necessarily been disclosed to obtain any monetary relief for Coach Franklin*. Moreover, the Superseding Indictment fails to explain how disclosing evidence of Nike's own wrongdoing *to Nike,* the tortfeasor, in order to settle a claim could somehow constitute an improper disclosure of "confidential information."

4

his consent. Indeed, any final written settlement agreement – of which there was none -- would have required Coach Franklin's signature. And any formalized retention of Mr. Avenatti by Nike to conduct the internal investigation as a condition of the settlement would likewise have required Coach Franklin's knowledge and consent. To be clear, there is no allegation that Mr. Avenatti *intended to conceal* any relevant information from Coach Franklin when the negotiations progressed to the point when there would be something in writing to present to Coach Franklin for his review and signature. Instead, because of its zeal to arrest their high-profile target Mr. Avenatti at such an early stage in the negotiations – *i.e.,* before the negotiations had progressed to the point of a settlement or impasse – the government can do no more than *speculate* about what Mr. Avenatti would have told or concealed from Coach Franklin at the appropriate time. For that reason, the government is pursuing an ill-conceived theory that Mr. Avenatti committed "honest services" fraud for purportedly failing to adequately communicate with Coach Franklin and obtain his consent to Mr. Avenatti's negotiating strategy during the nascent stage of the negotiations. This theory fails under black letter law.

  **C.** *Skilling v. United States,* **561 U.S. 358 (2010) is**
    <u>**Fatal To the Honest Services Wire Fraud Charge**</u>

The wire fraud statute, 18 U.S.C. §1343, criminalizes the use of the wires in furtherance of "any scheme or artifice to defraud." Section 1346 provides that the term "scheme or artifice to defraud" also "includes a scheme or artifice to deprive another of the intangible right of honest services." This latter provision was enacted by Congress in the late 1980s after the Supreme Court, in *McNally v. United States*, 483 U.S. 350 (1987) held that the mail fraud statute was "limited in scope to the protection of property rights." *Id.* at 360. Thus, in *McNally*,

5

the Supreme Court invalidated dozens of "honest services" prosecutions that pre-dated the enactment of section 1346, mostly involving public officials charged with fraud for acts that deprived the citizenry of good and honest government. The *McNally* decision was motivated by the Court's concern that a broader reading of the pre-1346 statute would "leave [the statute's] outer boundaries ambiguous and involve[e] the Federal Government in setting standards of disclosure and good government for local and state officials." *Id.*

The expansive language of section 1346, however, did not resolve the ambiguity, as the federal courts of appeal "spent two decades attempting to cabin the breadth of §1346 through a variety of limiting principles." *Sorich v. United States*, 555 U.S. 1204 (2009) (Scalia, J., dissenting from the denial of certiorari). Although courts recognized that §1346 was "not violated by every breach of contract, breach of duty, conflict of interest, or misstatement made in the course of dealing," *United States v. Welch*, 327 F.3d 1081, 1107 (10th Cir. 2003), the court decisions since the enactment of §1346 failed to reach a consensus on limiting principles and "reproduce[ed] some of the same disputes that predated *McNally*." *Skilling*, 561 U.S. at 419-20 & n.2 (Scalia, J., concurring in part and concurring in judgment).

The absence of limiting principles ultimately led to the Supreme Court's decision in *Skilling*. There, the Court considered the constitutionality of the honest-services fraud statute against a vagueness challenge. Defendant Skilling had been convicted of, among other things, conspiracy to commit honest-services fraud based on his undertaking to "defraud Enron's shareholders by misrepresenting the company's fiscal health, thereby artificially inflating its stock price" and by personally profiting from the scheme through salary, bonuses, and the sale of Enron stock. 561 U.S. at 369. The Supreme Court rejected the government's argument that §1346 proscribed "undisclosed self-dealing by a public official or private employee—*i.e.,* the

6

taking of official action by the employee that furthers his own undisclosed financial interests while purporting to act in the interests of those to whom he owes a fiduciary duty." *Id.* at 409 (internal quotation marks omitted); *see United States v. Nouri*, 711 F.3d 129, 138 (2d Cir. 2013). The Court held that, to save the statute from being unconstitutionally vague, §1346 criminalizes only schemes that involve bribes and kickbacks, and nothing more. *Id.* at 409-10 ("To preserve the statute without transgressing constitutional limitations, we now hold that §1346 criminalizes *only* the bribe-and-kickback core of the pre-*McNally* case law."). Indeed, as the Second Circuit has observed post *Skilling*, "the intangible right of honest services can constitutionally be the basis of a wire fraud prosecution when that intangible right is **deprived through a bribe or kickback**." *United States v. Coppola*, 671 F.3d 220, 235 (2d Cir. 2012) (emphasis added); *see also United States v. Bahel*, 662 F.3d 610, 632 (2d Cir. 2011) (noting that under both *Skilling* and *United States v. Rybicki*, 354 F.3d 124, 138-44 (2d Cir. 2003) (en banc), "fraud actionable under Section 1346 is limited to the nature of the offenses prosecuted in the pre-*McNally* cases (i.e., bribery and kickback schemes)…").

"A kickback scheme typically involves an employee's steering business of his employer to a third party in exchange for a share of the third party's profits on that business." *United States v. DeMizio*, 741 F.3d 373, 381 (2d Cir. 2014); *see, e.g., Black's Law Dictionary* 948 (9th ed. 2009) (defining "kickback" as the "return of a portion of a monetary sum received, esp. as a result of coercion or a secret agreement"); *accord United States v. Porter*, 591 F.2d 1048, 1054 (5th Cir. 1979) (a kickback "in ordinary parlance" is the "secret return to an earlier possessor of part of a sum received."). Moreover, as the USAO-SDNY recently argued in a Sentencing Memorandum filed in an "honest services"

prosecution, both bribery and kickbacks "take two to tango" and "these corrupt bargains do not happen in the absence of corrupt partners." *See United States v. Huberfeld*, No. 16 Cr 467 (AKH) (Dkt. #287:14).[4]

Against this backdrop, it is clear that Count Three cannot stand. Neither the word "bribe" nor the word "kickback" – terms of ordinary parlance that regularly appear in criminal indictments – can be found anywhere. Nor can the alleged scheme described in the Superseding Indictment be fairly characterized as a "bribe" or "kickback" scheme. There is no allegation of a quid pro quo with a corrupt partner. There is no allegation of a "secret return to an earlier possessor of part of a sum received." Nor is there any allegation that Mr. Avenatti solicited or offered a bribe or kickback, much less that his duty of loyalty to Coach Franklin was corrupted by the receipt of a bribe or kickback. To be sure, even assuming *arguendo* that Mr. Avenatti sought to exploit Coach Franklin's confidential information for personal profit, without Coach Franklin's permission, through intentional concealment, and to Coach Franklin's detriment – assumptions we vehemently dispute – this conduct is not "at the bribe-and-kickback core of pre-*McNally* case law." *Skilling*, 561 U.S. at 409. Rather, the allegations fall into the "amorphous category" of self-dealing and conflict-of-interest cases that were expressly excluded from §1346 under *Skilling*. *Id.* at 410. Accordingly, the government's effort fails.

---

[4] This point highlights the irrationality of the government's theory: it presupposes that Mr. Avenatti had a corrupt partner in Nike's executives and attorneys at Boies Schiller and that Mr. Avenatti believed that the Nike representatives would join in a scheme to conceal the financial arrangement from Coach Franklin.

### D.     The Honest Services Wire Fraud Charge Fails to <br>Allege a Violation of a Legally Cognizable Duty

There is no allegation that Mr. Avenatti accepted a single penny from Nike without disclosing it to his client. Rather, the essence of Count Three is that Mr. Avenatti **demanded** money from Nike for himself without first disclosing his intentions to his client and without keeping his client informed of the settlement negotiations. At its core, the "honest services" wire fraud charge is a supercilious and dangerous attempt by federal prosecutors in New York to regulate the practice of civil law, impose their own views of when and what constitutes adequate client communication during settlement negotiations, and convert alleged violations of state ethics rules into a federal criminal offense.

The United States has a "system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent." *Gomez v. City of New York*, 805 F.3d 419, 424 (2d Cir. 2015) (citation omitted). Because the law in fact "presume[s] that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so…," *id.*, it necessarily presumes that the attorney has the authority to **negotiate a settlement**. While that presumption is rebuttable, *id.*, the burden to rebut is not insubstantial. *United States v. Int'l Brotherhood of Teamsters, et al.*, 986 F.2d 15, 20 (2d Cir. 1993). Indeed, there must be affirmative evidence to demonstrate that the lawyer was acting outside his/her authority in negotiating the settlement.

Settlement negotiations typically are dynamic and fluid – their course can be altered on a moment's notice based on leverage, tactics, perceptions, body language, new information, and countless other factors. Moreover, settlement demands are, by accepted practice, often unrealistic and imbued with "puffery or posturing rather than a fair or realistic appraisal of a

party's damages." *Vermande v. Hyundai Motor America, Inc.*, 352 F.Supp.2d 195, 203 (D. Conn. 2004). That the government believes that a lawyer may be charged with "honest services" fraud on his own client for demands and threats the lawyer makes during settlement negotiations with his client's adversary – before the ultimate date on which his client's written signature on a settlement agreement and accompanying paperwork is actually required -- is disturbing.

Imagine a situation in which a criminal defense lawyer is negotiating a plea on behalf of a client and, as part of the negotiations with the government, the lawyer also seeks the release and exemption from forfeiture of the client's restrained assets so that some or all of those assets are available to the client to pay the lawyer's outstanding invoices. Under the government's construct, if the lawyer has not first informed the client of the lawyer's intent to demand the release of assets for the lawyer's own benefit, the lawyer is guilty of honest services fraud. Moreover, any time a civil plaintiff's lawyer seeks to negotiate an attorney's fee during settlement negotiations with defense counsel, without having first disclosed to the client the amount of the fee being requested and obtaining the client's express consent, the lawyer commits honest services fraud. This cannot be the law.

> It would be highly impractical, and clearly detrimental to our legal system, to hold that a lawyer's actions are authorized and binding only if the client consents to every single action taken by the lawyer. Lawyers are entrusted with considerable discretion in representing their clients in the complex world of legal rights and obligations. Clients rely on the training, expertise, and judgment of their lawyers. To be sure, clients must consent to a lawyer's representation and the lawyer must pursue the objectives of the clients, but this does not mean that lawyers act with authority only when the client micro-manages the lawyer's activities, approving every communication, every decision, every nuance.

*American Family Mut. Ins. Co. v. Zavala*, 392 F.Supp.2d 1108, 1116 (D. Ariz. 2003).

### E. The Honest Services Wire Fraud Statute is Vague-as-Applied

Allowing this prosecution of Mr. Avenatti in view of the limiting principles announced in *Skilling* would violate his Fifth Amendment right to due process. A criminal statute "must 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *United States v. Rahman*, 189 F.3d 88, 116 (2d Cir. 1999) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). The "statute must give notice of the forbidden conduct and set boundaries to prosecutorial discretion." *United States v. Brunshtein*, 344 F.3d 91, 98 (2d Cir. 2003). When analyzing a vagueness challenge, "[a] court must first determine whether the statute gives the person or ordinary intelligence a reasonable opportunity to know what is prohibited and then consider whether the law provides explicit standards for those who apply it." *United States v. Strauss*, 999 F.2d 692, 697 (2d Cir. 1993). A "void for vagueness " challenge "does not necessarily mean that the statute could not be applied in some cases but rather that, as applied to the conduct at issue in the criminal case, a reasonable person would not have notice that the conduct was unlawful and there are no explicit standards to determine that the specific conduct was unlawful." *United States v. Sattar*, 272 F.Supp.2d 348, 357 (S.D.N.Y. 2003).

The resolution of a defendant's void for vagueness challenge ordinarily requires "a more expansive factual record to be developed at trial." *See United States v. Hoskins*, 73 F.Supp.3d 154, 166 (D.Conn. 2014); *United States v. Milani*, 739 F.Supp. 216, 218 (S.D.N.Y. 1990). Here, however, the Court need not wait until trial because *Skilling* provides all of the clear guidance this Court needs. As explained above, *Skilling* requires a bribe or kickback and here there is no allegation of a bribe or kickback. Count Three fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Mr. Avenatti respectfully requests that the Court dismiss Count Three of the Superseding Indictment.

>Respectfully submitted,
>
>By: /s/Scott A. Srebnick
>Scott A. Srebnick, P.A.
>201 South Biscayne Boulevard
>Suite 1210
>Miami, FL 33131
>Telephone: (305) 285-9019
>Facsimile: (305) 377-9937
>E-Mail: Scott@srebnicklaw.com
>
>By: /s/Jose M. Quinon
>Jose M. Quinon, P.A.
>2333 Brickell Avenue, Suite A-1
>Miami, FL 33129
>Telephone: (305) 858-5700
>Facsimile: (305) 358-7848
>E-Mail: jquinon@quinonlaw.com
>
>*Attorneys for Defendant Michael Avenatti*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2019, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

/s/Scott A. Srebnick
Scott A. Srebnick