UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,           :

vs.                                 :     S1 No. 19 Cr. 373 (PGG)

MICHAEL AVENATTI,                   :

      Defendant.                 :
_____

**DEFENDANT MICHAEL AVENANTTI'S MEMORANDUM OF
LAW IN SUPPORT OF HIS MOTION FOR A WRITTEN JUROR
QUESTIONNAIRE IN ADVANCE OF *VOIR DIRE***

Scott A. Srebnick
SCOTT A. SREBNICK, P.A.
201 South Biscayne Boulevard
Suite 1210
Miami, FL 33131
Telephone: (305) 285-9019
Facsimile: (305) 377-9937
E-Mail: Scott@srebnicklaw.com

Jose M. Quinon
JOSE M. QUINON, P.A.
2333 Brickell Avenue, Suite A-1
Miami, FL 33129
Telephone: (305) 858-5700
Facsimile: (305) 358-7848
E-Mail: jquinon@quinonlaw.com

*Attorneys for Defendant Michael Avenatti*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

I. PRELIMINARY STATEMENT ................................................................................ 1

II. FACTUAL BACKGROUND ..................................................................................... 1

    A. Publicity in General ........................................................................................ 2

    B. Negative Publicity from this Case .................................................................. 3

    C. Negative Publicity from other Cases .............................................................. 8

    D. Mr. Avenatti's Political Views ....................................................................... 9

    E. Views About Lawyers ................................................................................... 10

III. LEGAL DISCUSSION ............................................................................................. 10

IV. CONCLUSION ......................................................................................................... 14

CERTIFICATE OF SERVICE ............................................................................................... 15

## **TABLE OF AUTHORITIES**

**CASES:**                                                                                                              **Page**

*Bowers v. Walsh*,
    277 F. Supp. 2d 208 (W.D.N.Y. 2003) .......................................................................... 13

*Jovanovic v. City of New York*,
    No. 04-cv-8437, 2010 WL 8500283 (S.D.N.Y. Sept. 29, 2010) ................................. 11

*Sheppard v. Maxwell*,
    384 U.S. 333 (1966) ...................................................................................................... 13

*Skilling v. United States*,
    561 U.S. 358 (2010) .................................................................................................. 10-11

*Steinberg v. Comm'r of Corr. Servs.*,
    No. 92-cv-7907, 1998 WL 259948 (S.D.N.Y. May 18, 1998) .................................... 11

*United States v. .36 of an Acre of Land*,
    No. 05-CV-343 (RV), 2006 WL 3390325 ........................................................................ 1

*United States v. Awadallah*,
    457 F. Supp. 2d 246 (S.D.N.Y. 2006) ........................................................................... 12

*United States Bloeth*,
    313 F.2d 364 (2d Cir. 1963) .......................................................................................... 13

*United States v. Brown*,
    303 F.3d 582 (5th Cir. 2002) .......................................................................................... 11

*United States v. Bruno*,
    700 F. Supp. 2d 175 (N.D.N.Y. 2010) ............................................................. 11, 12, 13

*United States v. Martoma*,
    No. 12 Cr. 973 (PGG) ..................................................................................................... 1

*United States v. Muyet*,
    945 F. Supp. 586 (S.D.N.Y. 1996) ................................................................................ 11

*United States v. Poulsen*,
    655 F.3d 492 (6th Cir. 2011) ......................................................................................... 11

*United States v. Quinones*,
    511 F.3d 289 (2d Cir. 2007) .......................................................................................... 10

**CASES:**                                                                                                                         **Page**

*United States v. Rahman*,
   189 F.3d 88 (2d Cir. 1999) .............................................................................. 10, 11, 12

*United States v. Sattar*,
   395 F. Supp. 2d 66 (S.D.N.Y. 2005) ................................................................................ 11

*United States v. Simon*,
   664 F. Supp. 780 (S.D.N.Y. 1987) ................................................................................... 13

*United States v. Stewart*,
   317 F. Supp. 2d 432 (S.D.N.Y. 2004) .............................................................................. 11

*United States v. Stewart*,
   433 F.3d 273 (2d Cir. 2006) ............................................................................................. 10

*United States v. Valle*,
   No. 12 Cr. 847 (Jan. 28, 2013) ............................................................................ 1, 11, 12, 14

*United States v. Wecht*,
   537 F.3d 222 (3d Cir. 2008) ............................................................................................. 11

*United States v. Wilson*,
   925 F. Supp. 2d 410 (E.D.N.Y. 2013) ............................................................................... 12

**ARTICLES**:

"As '60 Minutes' Prepares Stormy Daniels Interview, Lawyers Wrangle."
   *The New York Times*, March 2018 ................................................................................... 2

"Avenatti vs. Nike: The Showdown That Ensnared a Celebrity Lawyer."
   *The Wall Street Journal*, March 2019. ............................................................................. 7

"Judge affirms order evicting Michael Avenatti's law practice from
   California office." *New York Daily News*, November 2018. ........................................... 8

"Michael Avenatti Faces More Questions About Law Firm's
   Bankruptcy." *The Wall Street Journal*, March 2019 ...................................................... 8

"Michael Avenatti Is Accused in Nike Extortion Attempt."
   *The New York Times*, March 2019 ................................................................................... 6

"Michael Avenatti is charged with stealing nearly $300,000 from
   Stormy Daniels." *The New York Times*, May 2019. ....................................................... 8

**ARTICLES**:  **Page**

"Michael Avenatti 'nervous,' 'scared' about prospect of prison time, labels Nike extortion allegations 'absurd.'" *Fox News*, March 2019. ........................ 8-9

"Michael Avenatti ripped off paraplegic client, evaded taxes: feds" *New York Post*, April 2019 ...................................................................... 8

"Michael Avenatti should be barred from Cohen case due to 'smearing' Trump lawyer on TV, attorneys." *New York Daily News,* May 2018 ........................... 2

"Stormy Daniels Sues, Saying Trump Never Signed 'Hush Agreement.'" *The New York Times,* March 2018. ........................................................ 2

"The California State Bar has Taken the First Step to Disbar Michael Avenatti." *CNN*, June 2019. ............................................................... 8

"Trump Calls Stormy Daniels 'Horseface' in Gloating Twitter Post." *The New York Times*, October 2018. ................................................................. 2

**MISCELLANEOUS:**

AMEND XIV, U. S. Constitution ........................................................................ 13

Fed.R.Evid. 201(b) .............................................................................................. 1

## I.     PRELIMINARY STATEMENT

Defendant Michael Avenatti seeks a written juror questionnaire prior to *voir dire*. In cases that have generated far less publicity, involving defendants with much lower profiles, this Court has utilized a juror questionnaire to identify biases and other issues that might necessitate the disqualification of jurors. *See United States v. Martoma*, No. 12 Cr. 973 (PGG); *United States v. Valle*, 12 Cr. 847 (PGG). A juror questionnaire is particularly appropriate in this case given, among other reasons: 1) the extraordinary amount of publicity about Mr. Avenatti in general and this criminal case in particular; 2) the fact that Mr. Avenatti has two other federal criminal cases pending against him, which have also generated substantial publicity; 3) negative feelings that some have toward Mr. Avenatti as a result of his representation of Stormy Daniels in her litigation with President Trump; 4) Mr. Avenatti's political views; and 5) public sentiment about lawyers, and especially plaintiff's lawyers. A written questionnaire would allow jurors to respond to pertinent questions with candor and without potentially tainting other members of the jury venire with their answers.

## II.     FACTUAL BACKGROUND

The pretrial publicity surrounding this case in particular, and Mr. Avenatti in general, has been so extensive that the Court may take judicial notice of that fact. *See* Fed.R.Evid. 201(b) (a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *United States v. .36 of an Acre of Land*, No. 05-CV-343 (RV), 2006 WL 3390325, at *4 ("However, the court may take judicial notice of the fact that there has been a tremendous amount of publicity over the last ten years …"). Nonetheless, it is summarized below, with

supporting citations and links to published media reports, exhibits attached to the accompanying Declaration of Scott A. Srebnick, and exhibits previously filed in the case.

### A. Publicity in General

On March 6, 2018, news outlets began reporting that Mr. Avenatti was representing Stormy Daniels in her lawsuit against President Trump.[1] After the lawsuit was filed, Ms. Daniels and Mr. Avenatti publicly discussed her affair with President Trump, generating numerous headlines about Ms. Daniels and Mr. Avenatti.[2] Over the next year, Mr. Avenatti and President Trump sparred in the public arena.[3] During 2018, Mr. Avenatti conducted hundreds of television interviews worldwide, including multiple appearances on ABC, CBS, NBC, CNN, Fox News, Bloomberg, and the BBC, and was quoted in the print media on hundreds of occasions as well. Between March 6, 2018, and September 25, 2019, the approximate number of articles that mention Mr. Avenatti in the New York media alone was as follows:

| | |
|---|---|
| *New York Times*: | 195 |
| *New York Post*: | 249 |
| *New York Daily News*: | 228 |
| *Wall Street Journal*: | 109 |

---

[1] March 6, 2018, *New York Times*, "Stormy Daniels Sues, Saying Trump Never Signed 'Hush Agreement.'" https://www.nytimes.com/2018/03/06/us/stormy-daniels-trump-lawsuit.html?searchResultPosition=114

[2] March 11, 2018, *New York* Times, "As '60 Minutes' Prepares Stormy Daniels Interview, Lawyers Wrangle." https://www.nytimes.com/2018/03/11/business/60-minutes-stormy-daniels.html?searchResultPosition=36

[3] *See, e.g.,* May 18, 2018, *New York Daily News,* "Michael Avenatti should be barred from Cohen case due to 'smearing' Trump lawyer on TV, attorneys," https://www.nydailynews.com/news/politics/michael-avenatti-barred-cohen-case-lawyers-article-1.3997551; October 16, 2018, *New York Times*, "Trump Calls Stormy Daniels 'Horseface' in Gloating Twitter Post." https://www.nytimes.com/2018/10/16/us/politics/trump-stormy-daniels-horseface-women.html?searchResultPosition=72

2

*See* Declaration of Scott A. Srebnick, Esq. (filed contemporaneously herewith). The national media also covered the Stormy Daniels story with similar intensity. The total number of search results that mention Mr. Avenatti on the websites maintained by *CNN* and *Fox News* during that time frame were 410 and 825 respectively. Declaration of Scott A. Srebnick, Esq. Plainly, Mr. Avenatti has been the subject of intense media coverage over the past eighteen months.

### B. Negative Publicity from this Case

On March 25, 2019, U.S. Attorney Geoffrey Berman ("USA Berman") issued a press release to announce the arrest of Mr. Avenatti for allegedly engaging in a scheme to extort Nike. (Dkt. #30-1). USA Berman stated that Mr. Avenatti had "used illegal and extortionate threats for the purpose of obtaining millions of dollars in payments from" Nike. (Dkt. #30-1). USA Berman further commented that "[w]hen lawyers use their law licenses as weapons, as a guise to extort payments for themselves, they are no longer acting as attorneys. They are acting *as criminals*, and they will [be] held responsible for their conduct." (Dkt. #30-1) (emphasis added). FBI Assistant Director in Charge, William F. Sweeney Jr., added that "[a]s alleged, Michael Avenatti approached Nike last week with a list of financial demands in exchange for covering up allegations of misconduct on behalf of the company." (Dkt. #30-1). FBI Asst. Dir. Sweeney further opined that "[t]his is nothing more than a straightforward case of extortion. In the event anyone needs to be reminded, this type of behavior is illegal and it will not be tolerated – especially when committed by a lawyer who is supposed to use his license to practice law, not to willfully violate it." (Dkt. #30-1). In addition to the press release, USA Berman held a press conference on the same date before a packed house of reporters.[4] The press conference was carried by some networks live, as "Breaking News."

---

[4] https://www.youtube.com/watch?v=XRFv5JD_tB8

3



USA Berman reiterated his comments quoted in the press release, but also added his view and opinions on Mr. Avenatti's guilt in more detail, stating that this was nothing more than an "old-fashioned shakedown" and that Mr. Avenatti "was not seeking money for a client," but "was seeking money for himself."  Referring to Nike, USA Berman said "when they resisted paying Mr. Avenatti …. he told the company they could skip the internal investigation if they simply paid him $22.5 million dollars."  He also claimed again that Mr. Avenatti was "not acting as an attorney."

During the press conference, the camera focused on a blow-up visual board prepared by the USAO-SDNY that contained surreptitiously recorded "snippets" of Mr. Avenatti selected from a telephone call and meeting with Nike attorneys.  The entirety of the recordings was not provided to the press nor were any notes from the first meeting Mr. Avenatti had with Nike (the

4

longest communication relating to the settlement). The same poster board was simultaneously tweeted out by the USAO-SDNY to its more than 53,000 followers (as of September 2019).



USA Berman's remarks were also widely disseminated by at least three major news networks via video-feed on their You Tube accounts, garnering more than 250,000 views and 4,836 public comments from a mere sample of only three You Tube media institution's profiles.



Time Magazine's live-stream of the press conference with the sub-heading "Press Conference to Announce Charges Against Attorney Michael Avenatti – TIME," with a public

5

following of 685,000 subscribers, has garnered more than 15,200 views, 190 likes, and 204 overwhelmingly negative comments posted in response.[5]  CNN's video stream of the press conference on its You Tube account provided the sub-heading "Feds Charge Michael Avenatti for Trying to Extort Nike," with a public following of 7.4 million public subscribers, has generated more than 166,439 views, 1,100 likes, and 3,531 comments.[6]  Fox News Channel's video stream with the sub-heading "Avenatti Accused of Trying to Extort Nike For Up to $25M, Feds Say" on its You Tube account with a public following of 3.4 million subscribers, has received more than 68,411 views, 2,200 likes, and 1,101 comments.[7]

On the date of Mr. Avenatti's arrest, the *New York Times* published an article titled, "Michael Avenatti is Accused in Nike Extortion Attempt."[8]  The media coverage has continued since Mr. Avenatti's arrest.  A Google search of the terms "Avenatti Nike" produces approximately 749,000 results (as of September 29, 2019).  The media has reported on every hearing held in the case, and virtually every filing by either the defense or the government has been disseminated by one or more news outlets or bloggers on Twitter.  The media also reported on the Superseding Indictment that was returned on or about November 13, 2019, which removed two conspiracy counts but added a charge of "honest services" wire fraud.

---

[5] https://www.youtube.com/watch?v=XRFv5JD_tB8

[6] https://www.youtube.com/watch?v=dMGcCkfLvCA

[7] https://www.youtube.com/watch?v=fj9RL3embkA

[8] March 25, 2019, *New York Times*, "Michael Avenatti Is Accused in Nike Extortion Attempt." https://www.nytimes.com/2019/03/25/sports/michael-avenatti-extortion-nike.html

The press reports have generated thousands of responsive, mostly negative, comments by members of the public. For example, there were 531 reader comments posted to the March 25, 2019, *New York Times* article referenced above, mostly negative. A few examples:

> This is the same guy that assaulted his girl friend, but the charge was reduced. And, this is the same person who is alleged to have illegally taken millions from his law firm. And, the client the Cavanaugh accuser, Ms Swetnick claimed he made up things she never said. And, even Stormy was not happy with his statements that were not hers. This Nike stunt would be typical of his personality type. But, there is yet another crime he is charged with too! This is not Trump or Barr seeking revenge. This Mr. A simply being who he is, and it is catching up with him. – Brian

> Avenatti stole a million bucks from one of his clients. He should have been disbarred and incarcerated long ago, sparing us this twaddle. – ClearedtoLand

> Mr. Avenatti appears to be less of a lawyer seeking to assist those aggrieved by wrong doing, and more of a common low life criminal shaking folks upside down in "gotcha scams." Trump having the best day of his time in office. – David

> I for one and tired of this joker's antics. – Luke

> What a poster child for arrogance and hubris. – George

\* \* \*

A March 31, 2019 article published by the *Wall Street Journal* titled "Avenatti vs. Nike: The Showdown That Ensnared a Celebrity Lawyer" generated 229 reader responses as of September 29, 2019.[9] A sampling of the negative comments include:

> Hopefully he will go to prison for a long time. It is bad enough just being a thief and an extortionist, but this guy ruins people's reputations along the way. – Joe N.

> Avenatti is a transparently self-serving, mendacious and attention-seeking socio-path, and a disgrace to the legal profession, just like his fellow disgraced hustler, Steven Donziger. I look forward to his eventual disbarment. – Dick C.

---

[9] March 31, 2019, *Wall Street Journal*, "Avenatti vs. Nike: The Showdown That Ensnared a Celebrity Lawyer." https://www.wsj.com/articles/avenatti-vs-nike-the-showdown-that-ensnared-a-celebrity-lawyer-11554058527

> Avenatti has nobody to blame but himself for his mess. Greed and his craving of the limelight eventually brought him down. He will be disbarred and will do federal time. He will be back in the coffee business but this time as a barista. Enjoy broke barista. You deserve your punishment. – Stephen G.

\* \* \*

### C. Negative Publicity from other Cases

Mr. Avenatti is charged in two other pending federal criminal cases, one in this district and one in the Central District of California. The other case in this district involves Stormy Daniels. These other cases have also been widely reported in the press, which have described the charges as including embezzlement, theft, bank and wire fraud, failure to file tax returns, and others.[10] Moreover, the media has reported about Mr. Avenatti's California Bar related investigations and civil lawsuits.[11]

The public reaction has been overwhelmingly negative. For example, in response to a March 27, 2019, *Fox News* article titled, "*Michael Avenatti 'nervous,' 'scared' about prospect*

---

[10] April 11, 2019, *New York Post*, "Michael Avenatti ripped off paraplegic client, evaded taxes: feds" https://nypost.com/2019/04/11/michael-avenatti-ripped-off-paraplegic-client-evaded-taxes-feds/; May 22, 2019, *New York Times*, Michael Avenatti is charged with stealing nearly $300,000 from Stormy Daniels." https://www.nytimes.com/2019/05/22/us/politics/michael-avenatti-stormy-daniels.html.

[11] March 14, 2019, *Wall Street Journal*, "Michael Avenatti Faces More Questions About Law Firm's Bankruptcy." https://www.wsj.com/articles/michael-avenatti-faces-more-questions-about-law-firms-bankruptcy-11552580598; November 16, 2018, *New York Daily News*, "Judge affirms order evicting Michael Avenatti's law practice from California office." https://www.nydailynews.com/news/national/ny-news-avenatti-evicted-california-office-20181116-story.html; June 4, 2019, *CNN*, "The California State Bar has Taken the First Step to Disbar Michael Avenatti, https://www.cnn.com/2019/06/04/politics/avenatti-california-bar/index.html.

8

*of prison time, labels Nike extortion allegations 'absurd,'*"[12] the following comments (out of 435 comments) are illustrative:

> Poor widdle Michael, he got caught and now he might have to face prison time, alone. He sure wasn't so scared while he was swindling people, was he? Getting caught sucks huh Mike? – rogersd50

> Lawyers have to be the scummiest profession, right behind politician. Consider what they do. They take money to argue for a position in a court of law regardless of the truth. Perhaps that's why so many lawyers become politicians. – wildbill65

> He was broke. He owed ex-business partners, ex-wives, clients, banks and the IRS tens of millions dollars. This was his only way out and he failed miserably. – vanillaking

> I'm waiting for somebody on the left to go to jail….anybody! – jim2705

\*   \*   \*

Evidence regarding these other cases is irrelevant to the charges in this case, and inadmissible, yet highly prejudicial. Jurors who have already formed a view of Mr. Avenatti based on their exposure to the inadmissible allegations in other cases will find it difficult to set aside those views.

### D. Mr. Avenatti's Political Views

Mr. Avenatti has been outspoken on a number of political issues, including but not limited to gun control and the conduct of President Trump paying "hush money" during the 2016 Presidential campaign that resulted in the conviction of his personal attorney Michael

---

[12] March 27, 2019, *Fox* News, "Michael Avenatti 'nervous,' 'scared' about prospect of prison time, labels Nike extortion allegations 'absurd.'" https://www.foxnews.com/us/michael-avenatti-nervous-scared-about-prospect-of-prison-time-labels-nike-extortion-allegations-absurd

9

Cohen. (*E.g.,* Dkt. #29:33-36). Mr. Avenatti has received multiple threats of death and physical injury, illustrating the passions that his views have enflamed among members of the public.

### E. Views About Lawyers

In 2013, the Pew Research Center conducted a poll of 4,000 Americans, asking them about their views of ten different professions. Lawyers ranked the lowest, with only 18% of those surveyed saying that lawyers contribute "a lot" to society and 34% saying that lawyers contribute not very much or nothing at all.[13] This is particularly relevant in view of the Superseding Indictment, which charges Mr. Avenatti in Count Three with depriving his client, Coach Gary Franklin, of Franklin's "intangible right to the honest services of Avenatti."

### III. LEGAL DISCUSSION

Trial courts have substantial discretion in determining the measures necessary to protect a defendant's right to a fair and impartial trial. *United States v. Quinones*, 511 F.3d 289, 299 (2d Cir. 2007). Trial courts "routinely employ questionnaires to facilitate *voir dire* in a number of circumstances," including "where there has been extensive pre-trial publicity," to ensure that the defendant's rights are adequately protected. *Id.* (citing *United States v. Stewart*, 433 F.3d 273, 303 (2d Cir. 2006)); *accord United States v. Rahman*, 189 F.3d 88, 121-22 (2d Cir. 1999) (holding that a juror questionnaire "skillfully balanced the difficult task of questioning . . . a large jury pool with the defendants' right to inquire into . . . sensitive issues that might arise in the case").[14] The same is true of courts outside this district. *See Skilling v. United States*, 561

---

[13]http://www.abajournal.com/news/article/how_much_do_lawyers_contribute_to_society_less_than_nine_other_professions_

[14] *See also, e.g.*, *Jovanovic v. City of New York*, No. 04-cv-8437, 2010 WL 8500283, at *12-13 (S.D.N.Y. Sept. 29, 2010) (use of a "juror questionnaire [that] asked questions relating to media coverage of [the] case" remedied potential prejudice caused by inflammatory statements made by the Assistant District Attorney to the press), *aff'd* 486 Fed. Appx. 149 (2d Cir. 2012); *United States*

U.S. 358, 370-71 (2010) (district court used a 77-question, 14-page questionnaire to provide "safeguards adequate to ensure an impartial jury").[15]

Juror questionnaires address many concerns associated with pre-trial publicity and inherent, pre-existing biases. Extensive pre-trial publicity, as exists here, increases the difficulty of finding an objective jury pool and creates the risk that jurors will not be candid because they are embarrassed or unwilling to acknowledge potential biases in open court or afraid that their answers will be reported to the press. *See, e.g.*, *United States v. Bruno*, 700 F. Supp. 2d 175, 178-79 (N.D.N.Y. 2010); *United States v. Stewart*, 317 F. Supp. 2d 432, 435 (S.D.N.Y. 2004). There is also the practical consideration that selecting an impartial jury in a highly publicized case will require a more extensive examination of a larger pool of potential jurors. *See, e.g.*, *Rahman*, 189 F.3d at 121-22; *Bruno*, 700 F. Supp. 2d at 178-79. For all of these reasons, a juror questionnaire is a helpful "pre-screening measure" that will "expedite selection." *Bruno*, 700 F. Supp. 2d at 178.

In *United States v. Valle*, No. 12 Cr. 847 (S.D.N.Y. Jan. 28, 2013), ECF No. 111, this Court articulated some of the reasons for its use of the juror questionnaire, which apply equally here.

---

*v. Sattar*, 395 F. Supp. 2d 66, 70 (S.D.N.Y. 2005) (using a 45-page juror questionnaire "[d]ue to the extensive publicity surrounding this case"); *Steinberg v. Comm'r of Corr. Servs.*, No. 92-cv-7907, 1998 WL 259948, at *5-6 & n.2 (S.D.N.Y. May 18, 1998) (finding that "a questionnaire . . . used during *voir dire* to screen out those with possible prejudice" was adequate to protect petitioner from publicity); *United States v. Muyet*, 945 F. Supp. 586, 595 (S.D.N.Y. 1996) (endorsing the use of a "comprehensive jury questionnaire" in a case involving extensive pre-trial publicity).

[15] *See also, e.g., United States v. Poulsen*, 655 F.3d 492, 507-08 (6th Cir. 2011) (detailed juror questionnaire used with "questions addressing the existence and extent of prospective jurors' media exposure and any opinions prospective jurors may have formed about the case"); *United States v. Wecht*, 537 F.3d 222, 225-27 (3d Cir. 2008) (juror questionnaire used in a case involving extensive media coverage); *United States v. Brown*, 303 F.3d 582, 602-03 (5th Cir. 2002) (42-page juror questionnaire used in a case involving "enormous local and national publicity").

- "The purpose . . . of the questionnaire is to focus the jury's attention on the unusual aspects of this case, and to find out whether the veneer [sic] includes people who have, for example, such strong views about some of the matters that they may be exposed to that they can't be fair or, for example, people that may have read things in the media, seen things on TV or heard things on the radio that would make it difficult for them to be fair and impartial."[16]

- "Another purpose of the questionnaire is to encourage juror candor."[17]

- "Another purpose is to avoid polluting the veneer [sic] by statements made by certain members of the veneer [sic] about what they've read, seen or heard, and the impact of all of that on them when many members of the veneer [sic] may not have had the same experience."[18]

In a high-profile case such as this, a questionnaire will conserve the Court's and the jurors' time and resources by allowing the parties to analyze potential jurors' answers in advance. *See Rahman*, 189 F.3d at 121-22 (using a juror questionnaire in a high-profile case to screen a large jury pool); *Bruno*, 700 F. Supp. 2d at 178-79 (same); *United States v. Awadallah*, 457 F. Supp. 2d 246, 254 (S.D.N.Y. 2006) (same); *see also United States v. Wilson*, 925 F. Supp. 2d 410, 411-13 (E.D.N.Y. 2013) (using a juror questionnaire "to root out any and all bias," including any "exposure to the news coverage on this case").  Challenges for cause will be resolved more quickly, peremptory challenges will be faster, and side-bar questioning will require less time. *See Valle*, *supra,* ECF No. 111 ("It may be that if members of the [venire] express such views in responding to the questionnaire, both sides will agree that that person should be excused."); *Bruno*, 700 F. Supp. 2d at 178-79 (using a juror questionnaire as a means to "expedite selection").

---

[16] *Valle, supra*, ECF No. 111 at 3:15-22.

[17] *Valle, supra*, ECF No. 111 at 4:1-2.

[18] *Valle, supra*, ECF No. 111 at 4:2-6.

12

The need for a juror questionnaire is especially great in this case because the USAO-SDNY publicly promoted the arrest of Mr. Avenatti through an orchestrated media strategy – a press release, press conference, and dissemination of hand selected "evidence" on its Twitter feed.  As the Second Circuit has held, a defendant's rights are especially at risk when "[t]he publicity, partly sponsored by the prosecution, create[s] opinions of guilt long before trial, far removed from any safeguards against inadmissible matter." *United States Bloeth*, 313 F.2d 364, 372-73 (2d Cir. 1963) (holding that a jury was not impartial under the Fourteenth Amendment where (among other things) pre-trial publicity "included inadmissible material emanating from the prosecution denigrating" one of the defense theories "and so predisposing the prospective jurors to reject it").  Moreover, as "the [Supreme] Court's jurisprudence in this area makes clear, the most damning type of publicity is that which shows or states that the defendant has committed the crime charged." *Bowers v. Walsh*, 277 F. Supp. 2d 208, 220-21 (W.D.N.Y. 2003) (citing *Sheppard v. Maxwell*, 384 U.S. 333 (1966)).  The media reported the statements of USA Berman and FBI Asst. Director Sweeney promoting their view of the case that Mr. Avenatti is guilty, that he acted as a criminal, that the internal investigation was a ruse, that he used his law license as a weapon, and that he was prepared to cover up misconduct by Nike.  This heightens the risk that potential jurors will enter the courtroom predisposed to find Mr. Avenatti guilty.

Further, "in widely publicized or sensational cases, where the statements of trial participants are likely to appear in a widely disseminated manner there is a substantial likelihood that prospective jurors are unwittingly exposed to statements constituting prejudicial inadmissible evidence that would jeopardize the defendants' right to a fair trial. To the extent that the Court has authority, it is the duty of the Court to prevent that kind of jury prejudice." *United States v. Simon*, 664 F. Supp. 780, 792-93 & n.15 (S.D.N.Y. 1987).  The media coverage

about Mr. Avenatti routinely includes inadmissible and unfairly prejudicial information, including allegations regarding his other civil and criminal cases.

Finally, a written juror questionnaire is particularly needed because potential jurors will undoubtedly know about Mr. Avenatti's political views and because jurors may have pre-existing biases regarding topics at the heart of the case, including aggressive plaintiff's lawyers, payments to amateur basketball players, and Nike. The purpose of a juror questionnaire is "to find out whether the [venire] includes people who have, for example, such strong views about some of the matters that they be may be exposed to that they can't be fair . . . ."[19]

### IV. CONCLUSION

For the foregoing reasons, Mr. Avenatti requests that the Court use a written juror questionnaire in this case and has submitted a Proposed Juror Questionnaire (attached to his motion) for the Court's consideration.

Respectfully submitted,

By:  /s/Scott A. Srebnick
Scott A. Srebnick, P.A.
201 South Biscayne Boulevard
Suite 1210
Miami, FL 33131
Telephone: (305) 285-9019
Facsimile:  (305) 377-9937
E-Mail:  Scott@srebnicklaw.com

By:  /s/Jose M. Quinon
Jose M. Quinon, P.A.
2333 Brickell Avenue, Suite A-1
Miami, FL 33129
Telephone:  (305) 858-5700
Facsimile:  (305) 358-7848
E-Mail:  jquinon@quinonlaw.com

---

[19] *Valle, supra*, ECF No. 111 at 3:15-22.

14

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2019, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

<pre>                         /s/Scott A. Srebnick
                         Scott A. Srebnick</pre>