UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| vs. | :    S1 19 Cr. 373 (PGG) |
| MICHAEL AVENATTI, | : |
|     Defendant. | : |

_____

**DEFENDANT AVENATTI'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS COUNT THREE FOR
FAILURE TO STATE AN OFFENSE, AND BECAUSE
18 U.S.C. §1346 IS VAGUE AS APPLIED**

Scott A. Srebnick
SCOTT A. SREBNICK, P.A.
201 South Biscayne Boulevard
Suite 1210
Miami, FL 33131
Telephone: (305) 285-9019
Facsimile:  (305) 377-9937
E-Mail:  Scott@srebnicklaw.com


Jose M. Quinon
JOSE M. QUINON, P.A.
2333 Brickell Avenue, Suite A-1
Miami, FL 33129
Telephone:  (305) 858-5700
Facsimile:  (305) 358-7848
E-Mail:  jquinon@quinonlaw.com

*Attorneys for Defendant Michael Avenatti*

Defendant Michael Avenatti, through counsel, respectfully replies to the Memorandum of Law filed by the government (Dkt. No. 79) in opposition to Mr. Avenatti's motion to dismiss Count Three of the Superseding Indictment for failure to state an offense (Dkt. No. 75).

## DISCUSSION

Mr. Avenatti has moved to dismiss the "honest services" wire fraud charge in Count Three because it fails to allege a bribery or kickback scheme, as required by *Skilling v. United States*, 561 U.S. 358, 409-11 (2010) (emphasis added). In response, the government argues that the motion should be denied because Count Three tracks the language of the statute and, despite the absence of the term "bribe" or "kickback," the Superseding Indictment alleges a scheme to engage in a quid pro quo exchange. (Dkt. No. 79:10).

The government's effort to save Count Three from dismissal collides with three unassailable principles. First, the application of the honest services wire fraud statute under §1346 is limited to "the ***paradigmatic*** cases of bribes and kickbacks." *Skilling,* 561 U.S. at 411 (emphasis added). Second, this Court has the authority to dismiss an Indictment, notwithstanding the recitation of the elements of the offense, where the specific factual allegations do not demonstrate that the alleged conduct is criminal. *See, e.g., United States v. Pirro*, 212 F.3d 86, 92-95 (2d Cir. 2000) (holding that when "one element of the offense is implicit in the statute, rather than explicit, and the indictment tracks the language of the statute and fails to allege the implicit element explicitly, the indictment fails to allege an offense.") (citation omitted). Third, an indictment must be read in light of common sense and reason. *See, e.g., United States v. Goodwin*, 141 F.3d 394, 401 (2d Cir. 1997). Thus, notwithstanding the government's claim that Count Three tracks the language of the statute (Dkt. No. 79:7-8),

a commonsense reading of the Superseding Indictment plainly reveals the absence of a paradigmatic case of bribes or kickbacks.

Nearly nine months ago, the government described this case as "nothing more than a straightforward case of extortion," (Dkt. No. 30-1), whereby Mr. Avenatti allegedly threatened to destroy Nike's reputation and cause it substantial economic harm if Nike did not make payments that it otherwise would not have made. Now, apparently, those grave threats to victimize Nike were actually solicitations of bribes from Nike to engage in a mutually beneficial "*quid pro quo*." Common sense dictates otherwise. In the classic private sector kickback or bribery case, a third party pays money to an employee in exchange for the employee steering his employer's business, in a greater amount, to the third party. *See, e.g., United States v. DeMizio*, 741 F.3d 373, 381 (2d Cir. 2014). In other words, bribery and kickbacks both involve an exchange of things of value to benefit both sides of the transaction.

Pressed to identify the paradigmatic "quid pro quo" alleged in the Superseding Indictment, the government strains credulity in specifying two. First, it argues that the Superseding Indictment alleges that Mr. Avenatti demanded "side payments" for himself – between $15 million and $25 million – in order to also allow Nike to also pay a much smaller amount ($1.5 million) to Coach Franklin. (Dkt. No. 79:5, 10, 11 n.5). Apparently, the "quid" in the Superseding Indictment was the proposed $15-25 million payment from Nike to Mr. Avenatti and the "quo" was Mr. Avenatti granting Nike the right to *also* pay $1.5 million to Coach Franklin to resolve his potential claims. At best, this is a *quid et quo*, not a *quid pro quo*. It defies common sense to view this as a paradigmatic bribe or kickback.

Second, the government suggests, almost as an afterthought, that the bribe or kickback was Mr. Avenatti's purported demand for "payments to himself in exchange for not publicizing

2

client information." (Dkt. No. 79:10) (citing S1 Indictment, ¶1) (alleging that Mr. Avenatti demanded a total payment of $22.5 million "to buy Avenatti's silence."). The government fails to explain how Mr. Avenatti's purported demand for payment in exchange for **complying** with his ethical obligations to Coach Franklin is a paradigmatic bribe. This theory, too, lacks any common sense.

Beyond that, both theories of *quid pro quo* advanced by the government are incompatible with the Supreme Court's decision in *McDonnell v. United States*, ___ U.S. ___, 136 S. Ct. 2355 (2016), as applied by this Court in *United States v. Silver*, 864 F.3d 102, 118-19 (2d Cir. 2017), and *United States v. Boyland*, 862 F.3d 279, 289-90 (2d Cir. 2017). Specifically, in **public sector** honest services cases, §1346 criminalizes only bribes that are paid in exchange for an "official act," as that term is defined in the federal bribery statute, 18 U.S.C. §201(a)(3). *Silver*, *supra*; *Boyland*, *supra*. In determining whether a public official committed honest services fraud, the government must first identify "a 'question, matter, cause, suit, proceeding or controversy' that 'may at any time be pending' or 'may by law be brought' before a public official" that would involve "a formal exercise of governmental power, such as a lawsuit, hearing, or administrative determination." *McDonnell*, 136 S. Ct. at 2368 (quoting §201(a)(3)); *Boyland*, 862 F.3d at 289-90. Second, the government must prove that "the public official made a decision or took an action 'on' that question, matter, cause, suit, proceeding, or controversy, or agreed to do so." *McDonnell*, 136 S. Ct. at 2368. Importantly, the Court rejected the notion that any act by a politician, such as hosting an event, setting up a meeting, or calling another public official, without more, is an official act. *Id.* at 2372.

Relying on *United States v. Nouri,* 711 F.3d 129, 139 (2d Cir. 2014) (quoting *United States v. Bruno*, 661 F.3d 733, 743-44 (2d Cir. 2011)), the government suggests that a more expansive view applies to ***private sector*** honest services cases.  In the government's view, Mr. Avenatti's taking ***any*** action in his capacity as an attorney for Coach Franklin would satisfy the "quo" requirement.  (Dkt. No. 79:10).  But neither *Nouri* nor *Bruno* (which was a public sector case) suggested that ***any*** action would suffice in the private sector context.  And, both cases were decided before the Supreme Court decided *McDonnell*, and before this Court confirmed in *Silver* and *Boyland* that bribery for purposes of public sector "honest services" fraud is limited to payments in exchange for official acts.  The government cites no reason why bribery in private sector honest services fraud cases should have a far more expansive definition than bribery in public sector honest services fraud cases.  At a minimum, the government must allege that a bribe was being solicited in exchange for an actual official decision made by the attorney, not just statements, demands, or chatter during settlement negotiations.  To be sure, there is no allegation that Mr. Avenatti rejected any formal settlement offer by Nike to settle Coach Franklin's claim; rather, the allegation is that, during the negotiations, Mr. Avenatti insisted on being retained to conduct an internal investigation or that, in the absence of an internal investigation, Nike pay $22.5 million to settle Coach Franklin's claims in one confidential settlement.  (S1 Indictment, ¶14).[1]

---

[1] The Superseding Indictment alleges that when Nike's counsel asked whether Mr. Avenatti's demands could be resolved just by paying Coach Franklin and not retaining Mr. Avenatti, Mr. Avenatti backed off the internal investigation and proposed a lump sum settlement of $22.5 million to resolve Coach Franklin's claims.  (S1 Indictment, ¶14).  This allegation eviscerates the government's argument that Mr. Avenatti refused to settle Coach Franklin's claim unless Mr. Avenatti was retained to do an internal investigation and highlights the danger of criminalizing statements made during settlement negotiations, which invariably involve puffing and posturing.

4

In sum, Count Three of the Superseding Indictment, read with common sense and reason, does not describe a paradigmatic bribery or kickback scheme necessary to allege honest services wire fraud. That charge should be dismissed.

        Respectfully submitted,

By: /s/Scott A. Srebnick
Scott A. Srebnick, P.A.
201 South Biscayne Boulevard
Suite 1210
Miami, FL 33131
Telephone: (305) 285-9019
Facsimile: (305) 377-9937
E-Mail: Scott@srebnicklaw.com

By: /s/Jose M. Quinon
Jose M. Quinon, P.A.
2333 Brickell Avenue, Suite A-1
Miami, FL 33129
Telephone: (305) 858-5700
Facsimile: (305) 358-7848
E-Mail: jquinon@quinonlaw.com

*Attorneys for Defendant Michael Avenatti*

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2019, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

/s/Scott A. Srebnick
Scott A. Srebnick