UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                :

   UNITED STATES OF AMERICA       :

                                :

           - *v.* -            :         S1 19 Cr. 373 (PGG)

                                :

   MICHAEL AVENATTI,             :

                                :

           Defendant.      :

                                :

------------------------------------------------------x

## THE GOVERNMENT'S MOTIONS *IN LIMINE*

 

                                      GEOFFREY S. BERMAN
                                        United States Attorney
                                        Southern District of New York

Matthew D. Podolsky
Daniel C. Richenthal
Robert B. Sobelman
Assistant United States Attorneys

   - Of Counsel -

# **TABLE OF CONTENTS**

ARGUMENT ........................................................................................................ 2

I.    EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANT'S ALLEGATION
      THAT THE CHARGES AGAINST HIM ARE POLITICALLY MOTIVATED, THAT HE
      WAS UNFAIRLY SINGLED OUT, AND/OR THAT HE WAS CHARGED IN "HASTE"
      SHOULD BE PRECLUDED ................................................................................ 2

II    EVIDENCE OR ARGUMENT CONCERNING WHETHER THE DEFENDANT'S
      CONDUCT CAN OR SHOULD BE DEALT WITH SOLELY AS AN
      ADMINISTRATIVE OR CIVIL MATTER SHOULD BR PRECLUDED ....................... 5

III.   EVIDENCE OR ARGUMENT CONCERNING WHETHER THE CHARGES IN THIS
       CASE ARE UNCONSTITUTIONALLY VAGUE SHOULD BE PRECLUDED ............ 6

IV.    EVIDENCE OR ARGUMENT CONCERNING THE POTENTIAL PUNISHMENT  OR
       CONSEQUENCES, INCLUDING DISBARMENT, THAT THE DEFENDANT FACES
       IF CONVICTED SHOULD BE PRECLUDED ................................................... 7

V.     EVIDENCE OR ARGUMENT CONCERNING THE GOVERNMENT'S CHARGING
       DECISIONS WITH RESPECT TO OTHERS AND/OR THE DIFFERENCES BETWEEN
       THE ORIGINAL INDICTMENT AND THE SUPERSEDING INDICTMENT SHOULD
       BE PRECLUDED ........................................................................................ 8

VI.    EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANT'S PRIOR
       COMMISSION OF GOOD ACTS AND/OR FAILURE TO COMMIT OTHER BAD
       ACTS SHOULD BE PRECLUDED .................................................................. 9

VII.   EVIDENCE OR ARGUMENT CONCERNING WHETHER OTHER THREATENED OR
       ACTUAL CIVIL LAWSUITS HAVE ACHIEVED POSITIVE THINGS FOR CLIENTS
       OR SOCIETY SHOULD BE PRECLUDED ...................................................... 10

VIII.  EVIDENCE OR ARGUMENT CONCERNING WHETHER NIKE ENGAGED IN
       MISCONDUCT, OF WHICH THE DEFENDANT WAS UNAWARE AT THE TIME OF
       THE DEFENDANT'S CHARGED ACTIONS, SHOULD BE PRECLUDED ............... 11

       A.   The Defendant Should Be Precluded From Offering Evidence Of Nike's Alleged
            Misconduct Unless He Had Contemporaneous Knowledge of Such Alleged
            Misconduct At The Time Of The Charged Conduct ................................... 12

       B.   The Defendant Should Be Precluded From Attempting To Impeach Nike Witnesses
            With The Same Information Or Evidence .................................................. 14

       C.   The Defendant Should Be Precluded From Having Other Nike Witnesses Invoke
            The Fifth Amendment In The Jury's Presence ........................................... 18

D.   The Defendant Should Be Precluded From Arguing That Any Alleged Misconduct Of Nike Outweighs His Own ................................................................................. 19

IX.   EVIDENCE OR ARGUMENT CONCERNING WHETHER CLIENT-1'S POTENTIAL LEGAL CLAIMS HAD VALUE, AND/OR THE COST OF AN INTERNAL INVESTIGATION, WITHOUT A CONNECTION TO THE DEFENDANT'S CONTEMPORANEOUS KNOWLEDGE, SHOULD BE PRECLUDED........................ 20

X.   OUT-OF-COURT STATEMENTS MADE BY ATTORNEY-1 TO THE GOVERNMENT AFTER THE DEFENDANT WAS ARRESTED ARE INADMISSIBLE........................ 20

XI.   THE DEFENDANT SHOULD BE PRECLUDED FROM OFFERING EXPERT TESTIMONY WITHOUT PROVIDING SUFFICIENT NOTICE, AND HIS PROFFERED EXPERT SHOULD BE PRECLUDED FROM OPINING ON WHAT A LAWYER'S ETHICAL DUTIES SHOULD BE, THE ALLEGEDLY NEGATIVE CONSEQUENCES OF THE GOVERNMENT'S THEORY OF GUILT, AND/OR WHAT STATEMENTS MADE TO THE DEFENDANT MEANT ...................................................................... 26

CONCLUSION.......................................................................................................................... 29

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                                      :
    UNITED STATES OF AMERICA                          :
                                                      :
             - v. -                                   :          S1 19 Cr. 373 (PGG)
                                                      :
    MICHAEL AVENATTI,                                 :
                                                      :
                    Defendant.                        :
                                                      :
------------------------------------------------------x

## THE GOVERNMENT'S MOTIONS *IN LIMINE*

The Government respectfully seeks to preclude certain evidence or argument that is irrelevant to the issues at trial, and/or for which any conceivable probative value is substantially outweighed by the risk of juror confusion, distraction from the evidence, unnecessary lengthening of the trial, and/or unfair prejudice to the Government.

Specifically, the Government moves to preclude evidence or argument concerning:

- the defendant's allegation that the charges against him are politically motivated, that he was unfairly singled out, and/or that he was charged in "haste";

- whether the defendant's conduct can or should be dealt with solely as an administrative or civil matter;

- whether the charges against the defendant are unconstitutionally vague;

- the potential punishment or consequences, including disbarment, that the defendant faces if convicted;

- the Government's charging decisions with respect to others and/or the differences between the original indictment and the Superseding Indictment;

- the defendant's prior commission of good acts and/or failure to commit other bad acts;

- whether other threatened or actual civil lawsuits have achieved positive things for clients or society;

- whether NIKE, Inc. ("Nike") engaged in alleged misconduct of which the defendant was unaware at the time of his charged actions;

- the cost of a potential internal investigation and/or whether Client-1's potential legal claims had value, unless the defendant had contemporaneous knowledge of that cost or value; and

- out-of-court statements made by Attorney-1 to the Government after the defendant was arrested.

In addition, the Government moves to preclude the defendant from offering expert testimony without providing sufficient notice, and to preclude the defendant's proffered expert from opining on what a lawyer's ethical duties should be (as opposed to what they actually are), the allegedly negative consequences of the Government's theory of guilt, and/or the meaning of particular statements made to the defendant during the course of the charged conduct.

## **ARGUMENT**

## I.   **EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANT'S ALLEGATION THAT THE CHARGES AGAINST HIM ARE POLITICALLY MOTIVATED, THAT HE WAS UNFAIRLY SINGLED OUT, AND/OR THAT HE WAS CHARGED IN "HASTE" SHOULD BE PRECLUDED**

As the Court is aware, the defendant has claimed that he was targeted by an array of law enforcement professionals, from different agencies, including multiple career prosecutors, who allegedly used a sham "'investigation'" to bring baseless and "hast[y]" charges in an unconstitutional attempt to silence a self-described "high-profile political antagonist."   (Dkt. No. 29, at 1, 37 (first set of quotation marks also in original).)

Whatever the merits of these hyperbolic assertions—and they are meritless—they are solely for this Court in weighing the defendant's motion to dismiss.  They are not for the jury in weighing the defendant's guilt.  All evidence or argument concerning the reasons for or timing of the defendant's arrest and prosecution is irrelevant to the proper issues at trial and would serve no purpose other than to distract the jury from the evidence of the defendant's guilt or to encourage

jury nullification.  Such evidence and argument should therefore be precluded.  *See United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997) (a "selective prosecution defense is an issue for the court rather than the jury"); *United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting [the defendant], as opposed to other individuals who may also have committed the crimes charged or similar crimes."); *see also* Fed. R. Crim. P. 12(b)(3)(A)(iv); *United States v. Sun Myung Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983).

The basis for this settled rule is fundamental.  A claim of improper prosecutorial motive, whatever its ground or grounds, "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."  *United States v. Armstrong*, 517 U.S. 456, 463 (1996).  Such a claim is self-evidently "unrelated to factual innocence of the crime charged," which is the sole issue to be decided by the jury, and, as a result, the Court alone must resolve it.  *Regan*, 103 F.3d at 1082.

Nor should the defendant be permitted to advance arguments or to introduce evidence on substantially the same ground—even if he does not expressly say that he has been selectively or vindictively prosecuted—because the reasons for or alleged novelty of the prosecution of the defendant have no bearing whatsoever on the jury's proper function.  The defendant should not, for example, be permitted to offer evidence or argument that others have purportedly engaged in similar conduct without being prosecuted, or that this prosecution is, in his view, "a test case" or "novel" (Dkt. No. 75, at 1).  Any argument or evidence in this vein is irrelevant.  *Cf., e.g.*, *Stewart*, 2004 WL 113506, at *2 ("Any characterization of the securities fraud charge in Count Nine as 'novel' is irrelevant to the jury's consideration of the indictment in this case.  The defense may not

argue or present evidence to the jury that tends to show that this count is an unusual or unprecedented application of the securities laws.").  It is also plainly improper, because it would invite, at best, confusion or, more likely, nullification which is entirely inappropriate.  *See United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997) (Jury nullification is "by no means a right or something that a judge should encourage or permit if it is within his authority to prevent."); *id.* at 614 ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent."); *see also Sparf & Hanson v. United States*, 156 U.S. 51, 102 (1895) ("Public and private safety alike would be in peril if the principle be established that juries in criminal cases may, of right, disregard the law as expounded to them by the court, and become a law unto themselves."); *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) (per curiam) ("A jury has no more '*right*' to find a 'guilty' defendant 'not guilty' than it has to find a 'not guilty' defendant 'guilty,' and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law.  Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power." (emphasis in original)).

In short, any argument or attempt to elicit evidence that is intended to place the Government's charging decision at issue or intended to suggest to the jury that the defendant, irrespective of his guilt, should be acquitted because he allegedly has been "singled out for prosecution" (Dkt. No. 29, at 34) would be (in addition to factually and legally wrong) irrelevant to the issues properly before the jury, would create a time-consuming and contentious distraction, and would encourage the jury to make or decline to make a decision on an improper basis.

Finally, for substantially the same reasons, the defendant should not permitted to insert, expressly or implicitly, irrelevant political considerations into the trial, by seeking, through the

4

*voir dire* process or otherwise, to give the impression to potential or actual jurors that their political views are relevant to the issues at trial or to provide potential or actual jurors with irrelevant information about the defendant's alleged politically-related activities.  (*See, e.g.*, Dkt. No. 76-1 (defendant's proposed juror questionnaire), at 7 (requesting Court to tell potential jurors that the defendant "sued President Trump on behalf of Stormy Daniels"); *id.* (requesting Court to inform potential jurors that the defendant has also filed other unidentified "lawsuits," plural, "against President Trump"); *id.* at 12 (requesting Court to ask potential jurors, without limitation, "Who are the three publicly known people you admire most?" and, "Who are the three publicly known people you admire least?"); *see also* Dkt. No. 87 (defendant's proposed *voir dire*), at 5 (requesting Court to inform potential jurors that the defendant "sued President Trump on behalf of Stormy Daniels"); *id.* (requesting Court to inform potential jurors that the defendant has also filed other unidentified "lawsuits," plural, "against President Trump").)[1]

## II.     EVIDENCE OR ARGUMENT CONCERNING WHETHER THE DEFENDANT'S CONDUCT CAN OR SHOULD BE DEALT WITH SOLELY AS AN ADMINISTRATIVE OR CIVIL MATTER SHOULD BR PRECLUDED

The defendant has also claimed that this prosecution generally, and the honest services fraud count in particular, "is a supercilious and dangerous attempt by federal prosecutors in New York to regulate the practice of civil law, impose their own views of when and what constitutes adequate client communication during settlement negotiations, and convert alleged violations of state ethics rules into a federal criminal offense."  (Dkt. No. 75, at 9; *see also id.* at 10 (the Government's theory of guilt is purportedly "disturbing").)

---

[1]     Even if the Court were to grant the defendant's request for a jury questionnaire (Dkt. No. 78), which the Government does not believe is warranted, *see, e.g.*, *United States v. Treacy*, 639 F.3d 32, 47 (2d Cir. 2011); *United States v. Salameh*, 152 F.3d 88, 120-21 (2d Cir. 1998), these and other proposed statements and questions are improper and should not be included in a questionnaire or *voir dire*.  The Government also objects to potential jurors in this case having to provide their names on a questionnaire, as the defendant requests.

Again, whatever the merits of these hyperbolic assertions—and they are meritless—they are not for the jury.  The sole question before the jury is the guilt of the defendant, not the motivations of individual "federal prosecutors," whether those prosecutors have their "own views," the merits or lack thereof of those views, or the allegedly negative ramifications of the enforcement in this case of the laws enacted by Congress.  *Cf., e.g.*, *United States v. Rosado*, 728 F.2d 89, 93 (2d Cir. 1984) (criticizing admission of evidence about the propriety of a prosecution "for turning the trial away from a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt into a wide-ranging inquiry into matters far beyond the scope of legitimate issues in a criminal trial").  Accordingly, any such arguments or purported evidence in support of them should be precluded.

## III.   EVIDENCE OR ARGUMENT CONCERNING WHETHER THE CHARGES IN THIS CASE ARE UNCONSTITUTIONALLY VAGUE SHOULD BE PRECLUDED

The defendant has further claimed that all charges against him are vague as applied.  (Dkt. No. 35, at 16-17; Dkt. No. 75, at 11.)  As with his other claims in support of his motion to dismiss, whatever the merits of this claim—and it, too, is devoid of merit—it is not for the jury.  As the defendant has appeared to acknowledge (*see* Dkt. No. 35, at 16-17), and as the Government has explained (*see* Dkt. No. 57, at 14), a vagueness challenge rests on the Due Process Clause, and accordingly is for the Court.  *See, e.g.*, *United States v. Morrison*, 686 F.3d 94, 103 (2d Cir. 2012).  To be sure, the Government has no objection to the defendant presenting admissible evidence, if any exists and to the extent directed at an element of a charged offense, that he did not contemporaneously believe himself to be engaging in wrongful conduct.  But arguments about how this case fits into "prevailing extortion jurisprudence" or may be squared with the defendant's "freedom of speech under the First Amendment" (Dkt. No. 35, at 17) have no place before the lay jury.

6

Nor would it be proper for the defendant to suggest to the jury that he must have been aware of such jurisprudence or the statutes that he is charged with violating. *See United States v. George*, 386 F.3d 383, 393 (2d Cir. 2004) ("[T]he Second Circuit has held that the term 'willfully' in criminal statutes typically does not require the government to prove the defendant's specific intent to violate the particular criminal statute in question."); *see also United States v. Blagojevich*, 794 F.3d 729, 739 (7th Cir. 2015) ("The wire-fraud statute requires a specific intent to defraud but not willfulness or any other proxy for knowledge of the law."); Sand *et al.*, *Modern Federal Jury Instructions*, Instr. 44-5; *cf. Stewart*, 2004 WL 113506, at *2 ("Scienter is an element of the crime charged, but whether the defendant knew that she was violating the law is irrelevant.").

## IV.    EVIDENCE OR ARGUMENT CONCERNING THE POTENTIAL PUNISHMENT OR CONSEQUENCES, INCLUDING DISBARMENT, THAT THE DEFENDANT FACES IF CONVICTED SHOULD BE PRECLUDED

The defendant should also be precluded from offering evidence or argument concerning the potential punishment or consequences, including disbarment, that he faces if convicted. Where the jury has no role at sentencing—such as in this case—it "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). This is so for good reason: argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.* There is no proper basis for the defendant to put these issues before the jury in any form, and the defendant should not be permitted to offer evidence or argument inviting the jury to consider them.

## V.    EVIDENCE OR ARGUMENT CONCERNING THE GOVERNMENT'S CHARGING DECISIONS WITH RESPECT TO OTHERS AND/OR THE DIFFERENCES BETWEEN THE ORIGINAL INDICTMENT AND THE SUPERSEDING INDICTMENT SHOULD BE PRECLUDED

Juries are routinely and properly instructed that they should not consider persons not on trial. *See, e.g.*, *United States v. Muse*, No. 06 Cr. 600 (DLC), 2007 WL 1989313, at *22 (S.D.N.Y. July 3, 2007), *aff'd*, 369 F. App'x 242 (2d Cir. 2010). That instruction should be given here (*see* Gov't Request No. 23), and the defendant should be precluded from offering evidence or argument concerning why, in his view, the individual identified as "Attorney-1" in the Superseding Indictment was not charged or even the fact that Attorney-1 was not charged. Nor should the defendant be permitted to offer evidence of or argument concerning the differences between the original indictment and the Superseding Indictment or even that there was an original indictment. These subjects have nothing to do with the defendant's guilt, and introducing them would only serve to confuse or distract the jury with improper issues and considerations. *See, e.g.*, *Stewart*, 2004 WL 113506, at *1 ("Defendants may not invite the jury to speculate as to why [a particular] charge was not included in the indictment."). Introducing these subjects might also require a trial within a trial on the Government's charging policies and practices—matters far beyond the scope of an individual criminal trial. *See, e.g.*, *United States v. Knox*, 687 F. App'x 51, 54-55 (2d Cir. 2017) (instructing jury that the "government is not on trial" is "appropriate" (internal quotation marks omitted)); *United States v. Saldarriaga*, 204 F.3d 50, 52 (2d Cir. 2000) ("The Court properly charged the jury to base its decision on the evidence or lack of evidence that had been presented at trial, and to focus solely on whether, in light of that evidence or lack of evidence, the jury was convinced beyond a reasonable doubt that the defendant was guilty of the crimes with which he was charged.").

## VI.   EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANT'S PRIOR COMMISSION OF GOOD ACTS AND/OR FAILURE TO COMMIT OTHER BAD ACTS SHOULD BE PRECLUDED

To the extent that the defendant may seek to present evidence or argument concerning his prior commission of alleged "good acts" or to offer evidence of his non-criminal activities to seek to disprove his guilt, he should be precluded from doing so.  Specific-act propensity evidence is no more admissible to refute a criminal charge than it is to establish one.

It is settled law that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions."  *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990).  Similarly, while a defendant may offer general testimony from a character witness about his reputation for a "pertinent trait of character," or the witness's opinion of the defendant as regards that trait, *see* Fed. R. Evid. 404(a)(2)(A) & 405(a), a defendant can neither testify nor offer other proof to establish specific acts in conformity with that trait that are not an element of the offense.  *See, e.g.*, *United States v. Benedetto*, 571 F.2d 1246, 1249-50 (2d Cir. 1978) (evidence of defendant's specific acts improperly admitted because "character evidence has long been admissible only in the form of reputation and not in the form of a recitation of good or bad acts"); *United States v. Rivera*, No. 13 Cr. 149, 2015 WL 1725991 (KAM), at *2 (E.D.N.Y. Apr. 15, 2015) (precluding evidence of charitable giving); *United States v. Fazio*, No. 11 Cr. 873 (KBF), 2012 WL 1203943, at *5 (S.D.N.Y. Apr. 11, 2012), ("a defendant may not affirmatively try to prove his innocence by reference to specific instances of good conduct; character is to be proven by reputation or opinion evidence."), *aff'd*, 770 F.3d 160 (2d Cir. 2014).  The defendant should accordingly be precluded from offering evidence or argument, including in his opening statement, concerning any charity, philanthropy, *pro bono* representations, civic or political activism, or any other specific instance or instances of his prior alleged good or public-oriented acts, or the lack of commission of other bad acts, or his lack of criminal history.

9

Nor should the defendant be permitted to suggest that his alleged prior achievements make it less likely that he committed the charged crimes.  (*See* Dkt. No. 76-1, at 7 (requesting Court to tell potential jurors that the defendant "has been involved in a number of high-profile matters"); Dkt. No. 87, at 8 (requesting Court to tell potential jurors that the defendant "is a civil trial lawyer who sues individuals and corporations").)  To be sure, the defendant may seek to offer admissible evidence, if any exists, that he experienced recent financial success or had substantial means and thus had less of a financial motive to commit the crimes with which he is charged, just as the Government may offer evidence of the opposite.  *See, e.g.*, *United States v. Reed*, 639 F.2d 896, 907 (2d Cir. 1981) ("a defendant's belief that he is in financial difficulty is admissible to show motive, and not unduly prejudicial"); *cf. United States v. Bergstein*, --- F. App'x ----, 2019 WL 4410240, at *2 (2d Cir. Sept. 16, 2019) ("The evidence of [the defendant's] casino debts plainly reflects his motive to misuse [a victim's] money in efforts to repay [others] after misusing their investments to satisfy those debts.").  But such evidence is very different from that offered to show an alleged propensity not to commit crimes, which is no more admissible than the reverse.

## VII.   EVIDENCE OR ARGUMENT CONCERNING WHETHER OTHER THREATENED OR ACTUAL CIVIL LAWSUITS HAVE ACHIEVED POSITIVE THINGS FOR CLIENTS OR SOCIETY SHOULD BE PRECLUDED

Nor should the defendant be permitted to attempt to turn his criminal trial into a referendum on civil litigation or attorneys who engage in the same by inviting the jury to consider whether other, wholly unrelated lawsuits, either threatened or filed, have previously achieved or may achieve positive things for clients or society, or by suggesting to the jury that, as a policy matter, lawyers engaged in settlement negotiations should generally be free to make threats to achieve those things.  (*See* Dkt. No. 94, at 33-35; *see also* Dkt. No. 75, at 9-10.)  In particular, the defendant should not be permitted to offer evidence in support of an argument that because other threatened or filed lawsuits may have achieved positive results for clients or society at large, he should be

acquitted, lest the conduct of lawyers be restricted to the detriment of clients or society.  Such an argument would be no more appropriate than the Government seeking to establish the defendant's guilt through reference to any alleged negative influence of civil lawyers or litigation on society or any alleged negative effects of such lawsuits in other instances.  The defendant and his conduct alone is on trial.  *See, e.g.*, *United States v. Oldbear*, 568 F.3d 814, 821 (10th Cir. 2009) (affirming preclusion of evidence in embezzlement case as to how persons other than the defendant used funds because "only [the defendant's] actions and state of mind were material to her guilt"); *United States v. Berg*, 710 F. Supp. 438, 445 (E.D.N.Y. 1989) (testimony concerning the "custom of other arms dealers in complying with arms export laws" precluded on the ground that such evidence was irrelevant to the state of mind of the defendants), *aff'd in part, rev'd in part on other grounds sub nom. United States v. Schwartz*, 924 F.2d 410 (2d Cir. 1991).

## VIII.   EVIDENCE OR ARGUMENT CONCERNING WHETHER NIKE ENGAGED IN MISCONDUCT, OF WHICH THE DEFENDANT WAS UNAWARE AT THE TIME OF THE DEFENDANT'S CHARGED ACTIONS, SHOULD BE PRECLUDED

At a prior conference, defense counsel stated that the defendant wanted "to prove a civil case" against Nike during his individual criminal trial.  (Aug. 22, 2019 Conference Tr., at 8.)  In subsequent submissions, the defendant made plain that he meant it, and that he does not intend to limit the evidence he will seek to offer of Nike's alleged misconduct to that contemporaneously known to him at the time when he engaged in the charged crimes—or even to the parties involved in and timeframe of Client-1's potential claims.  (*See, e.g.*, Dkt. No. 52, at 8 (arguing the defendant should be permitted to offer "evidence of broader misconduct directed by Nike across amateur basketball" regardless of whether and when it was known to Client-1 or the defendant or bears any connection to Client-1's potential claims).)  The Court should preclude the defendant from seeking to distract and confuse the jury by effectively putting one of his victims on trial for alleged conduct of no relevance to this case.

11

## A. The Defendant Should Be Precluded From Offering Evidence Of Nike's Alleged Misconduct Unless He Had Contemporaneous Knowledge Of Such Alleged Misconduct At the Time Of The Charged Conduct

As the Government previously explained (Dkt. No. 61, at 5-6), the defendant's position that "evidence of broader misconduct directed by Nike across amateur basketball" is admissible, regardless of whether the defendant contemporaneously knew of such evidence, does not meet the test of relevance. Evidence—if it exists—of alleged misconduct by Nike that the defendant did not know about at the time of his extortion and fraud scheme cannot possibly bear on his contemporaneous knowledge and intent while engaging in that scheme. Nor does such evidence become relevant merely because a subset of it might demonstrate, in the defendant's words, "the validity" of Client-1's potential claims (Dkt. No. 52, at 8). The actual truth or lack thereof of the harmful allegations that the defendant threatened to make is irrelevant as a matter of law. *See United States v. Jackson*, 196 F.3d 383, 387 (2d Cir. 1999); *United States v. Jackson*, 180 F.3d 55, 66, 71 (2d Cir. 1999); *see also United States v. Korogodsky*, 4 F. Supp. 2d 262, 265-66 (S.D.N.Y. 1998) ("It is no defense that the victims of the fraud may have been engaged in some misconduct" and therefore "possible misconduct of the victim [is] not relevant . . . .").

But even assuming *arguendo* that some such evidence might be relevant, it should be precluded under Federal Rule of Evidence 403. "[U]nder Rule 403, the district court may exclude even relevant evidence if it finds that the 'probative value [of the evidence] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *United States v. Crowley*, 318 F.3d 401, 417 (2d Cir. 2003) (quoting *United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2002)). These dangers are manifest here.

As described above and in prior submissions, the defendant has made clear that he intends, absent a ruling to the contrary, to offer both evidence and argument devoid of even a temporal connection to the events in this case, much less a connection to Client-1, much less a connection to the defendant's own contemporaneous knowledge or intent before or during the time when he acted. Even if one were to conceive of some speculative relevance to Nike's alleged "broader misconduct" (Dkt. No. 52, at 8), it is far more than substantially outweighed by the risk of confusion, distraction, material lengthening of the trial, and unfair prejudice to the Government.

Were the defendant to succeed in turning his individual criminal trial into a broader "civil case" against Nike, the Government would have no choice but to respond by offering rebuttal testimony and evidence necessary to put the defense evidence and argument in proper context— all to contest an issue that is wholly irrelevant to any element or material fact. Such a mini-trial would be both significantly distracting and confusing to a lay jury. It would also unfairly prejudice the Government. Evidence is "unfair[ly] prejudic[ial]" when it invites the jury to decide an issue material to the outcome of a case for reasons that have nothing to do with the proper issues to be decided. *United States v. Harvey*, 991 F.2d 981, 996 (2d Cir. 1993); *see also United States v. Borello*, 766 F.2d 46, 59 (2d Cir. 1985); *United States v. Jamil*, 707 F.2d 638, 644 (2d Cir. 1983). That is precisely what the defendant appears to seek here—to put Nike on trial, rather than the defendant, and to invite the jury to return a verdict based on its view of the "guilt" of Nike rather than that of the defendant. At a minimum, what the defendant seeks would engender significant juror confusion and require a far longer and more convoluted trial. Rule 403 exists precisely to prevent this from happening.

**B.  The Defendant Should Be Precluded From Attempting To Impeach Nike Witnesses With The Same Information Or Evidence**

That the defendant has previously suggested that he may seek to use some of the same alleged information or evidence, if it exists, to seek to impeach Nike employees or agents (*see* Dkt. No. 52, at 9) does not change the foregoing analysis.

As is relevant here, the Government expects to call one or more of the following Nike-affiliated witnesses in its case-in-chief at trial, each of whom is a lawyer and who is expected to testify, in substance and in pertinent part, as described below.

- Outside Counsel-1, a former partner at a law firm representing Nike (the "Outside Firm"), based in New York, New York, who recently moved from that firm to another law firm.  Outside Counsel-1 interacted with the defendant during the course of the charged scheme, including during both an unrecorded meeting that took place on or about March 19, 2019, during a consensually-recorded meeting that took place on or about March 21, 2019, and during several consensually-recorded phone calls.  (*See* Superseding Indictment ¶¶ 6, 11, 13, 14.)

- Outside Counsel-2, a current junior associate at the Outside Firm, based in New York, New York.  Outside Counsel-2 was also at the March 19 meeting with the defendant (and took contemporaneous notes of that meeting) and the March 21 meeting with the defendant, and was on consensually-recorded phone calls.  (*See* Superseding Indictment ¶¶ 6, 11, 13, 14.)

- An Assistant General Counsel at Nike, based in Beaverton, Oregon.  The Assistant General Counsel exchanged text messages with Attorney-1, and also spoke with Attorney-1 by phone, and reported his conversations to his supervisor, In-House Counsel.

- In-House Counsel, Nike's Vice-President of Global Litigation and Employment Counsel and the Assistant General Counsel's supervisor, based in Beaverton, Oregon.  In or about early March 2019, In-House Counsel learned from the Assistant General Counsel that Attorney-1 had contacted the Assistant General Counsel and reported that the defendant had information that Nike may have engaged in misconduct related to an investigation conducted by the U.S. Attorney's Office for

14

the Southern District of New York ("USAO-SDNY") and the Federal Bureau of Investigation into potential fraud or corruption in the world of college basketball (the "NCAA Investigation"). In-House Counsel contacted the Outside Firm, and thereafter attended the March 19 meeting. (*See* Superseding Indictment ¶¶ 6, 11.)

As described in the Superseding Indictment and above, these witnesses will testify in large measure to their communications with the defendant, the majority of which were recorded, and thus are not reasonably subject to dispute. The Government also expects to elicit from these witnesses their understanding of the general nature of the NCAA Investigation as it pertains to Nike, including the fact that Nike received a subpoena in that investigation and produced documents in response to that subpoena. The Government also intends to elicit that Nike initially reported the defendant's conduct to the USAO-SDNY team handling the NCAA Investigation and affirmatively cooperated in the resulting investigation.[2]

The Government has no objection to the defendant cross-examining any of these individuals regarding whether they had a view, at any relevant time, as to whether it was in Nike's interest to cooperate with federal law enforcement generally and the USAO-SDNY in particular.

What the Government does object to is an effort by the defendant to put before the jury, through cross-examination or otherwise, (1) evidence that Nike in fact engaged in specific instances of alleged misconduct devoid of any connection to an expected Government witness or the facts of this case, or (2) the specifics of Nike's involvement in the NCAA Investigation, including the scope of the subpoena served on Nike, the mechanics and substance of Nike's response to that subpoena and any follow-up requests, the content of its communications with the

---

[2]     If the Government calls the In-House Counsel, the Government may also elicit that he interacted on at least one occasion with the USAO-SDNY in connection with the NCAA Investigation.

prosecution team involved in the NCAA Investigation, and how the theory of guilt applied in trials of unrelated individuals might or might not apply to the alleged misconduct by those affiliated with Nike.[3]

With respect to the former, while the defendant previously, and conclusorily, stated that his theory of impeachment is that he must establish that there was "widespread misconduct by Nike" to seek to establish, in turn, that witnesses affiliated with Nike wish "to avoid prosecutions similar to those brought against individuals affiliated with Adidas" (Dkt. No. 52, at 9), that theory—to the extent it makes sense—does not require the jury to learn the specifics of any particular payment or action, particularly a payment or action that is not otherwise relevant to this case.  That is particularly true given that the jury will already learn that Nike was itself asked to produce materials in connection with the NCAA Investigation and the defendant will be able to explore whether that fact gave Nike a basis to seek to cooperate or curry favor with the USAO-SDNY.

In any event, even assuming the specifics of any particular alleged misconduct at Nike, unconnected to the facts of and witnesses in this case, might have some conceivable impeachment value, it should be precluded under Rule 403.  At bottom, the defendant appears to seek, through cross-examination, to probe one or more witnesses' knowledge and view of an entirely separate, complicated set of facts and legal theories, all in service (at least purportedly) of suggesting to the jury such witnesses might have a motive to color their description of meetings and phone calls that took place over a short period—and nearly all of which were recorded and will be heard and seen directly by the jury—to curry favor with the Government, notwithstanding that the employer/client of these same witnesses chose to contact the Government to disclose the defendant's conduct.

---

[3]     Nor should he be permitted to suggest to the jury that the fact that Nike received a subpoena or cooperated in an investigation is itself evidence of misconduct.  It, of course, is not.

Particularly given the speculative and assumption-laden nature of this theory of impeachment, even with a limiting instruction, it would be exceedingly difficult for a lay juror to assess the minimal value of any such evidence, purportedly offered solely for impeachment, properly. *Cf. United States v. Gupta*, 747 F. 3d 111, 132 (2d Cir. 2013) (Rule 403 requires the preclusion of statements for which it would be difficult for the jury to distinguish between that portion that could possibly go to state of mind or intent of the declarant, and the truth of the assertions themselves). This is true not only with respect to alleged evidence of misconduct of other people at other times, but also with respect to the specific contours of the NCAA Investigation, including the scope of the subpoena served on Nike, the mechanics and substance of Nike's response to that subpoena and any follow-up requests, the content of its communications with the prosecution team involved in the NCAA Investigation, and how the theory of guilt applied in trials of unrelated individuals might or might not apply to the alleged misconduct by those affiliated with Nike.  These subjects are far beyond the scope of this trial or the ken of the average lay juror.[4]

Moreover, were the defendant to pursue these subjects on cross-examination, to mitigate the risk that the jury not misapprehend or give undue weight to the answers, the Government would have to question the same witnesses, and also likely to offer additional evidence, concerning, among other things, how a corporation responds to a subpoena, including through formal and informal conversations with a prosecuting office.  And with respect to specific instances of alleged misconduct by Nike employees or affiliates, the Government would also, at a minimum, have to offer evidence and explain the legal theory of the NCAA Investigation—which is *not* merely that high school and college athletes are not supposed to be paid under NCAA rules, as the defendant appears to acknowledge (*see* Dkt. No. 52, at 8), and would be necessary to contextualize the notion

---

[4]     They also might require one or more witnesses to decline to answer certain questions on the ground of attorney work-product and/or attorney-client privilege.

that specific instances might plausibly give Nike reason to be concerned about its exposure in connection with that investigation.  Again, Rule 403 exists precisely to prevent the introduction of unfairly prejudicial, confusing, and/or misleading evidence, such as a line of cross-examination or argument with no comprehensible purpose to a lay jury but to seek to convince it to acquit the defendant based on separate alleged misconduct of a complaining victim.

### C.  The Defendant Should Be Precluded From Having Other Nike Witnesses Invoke The Fifth Amendment In The Jury's Presence

The defendant should similarly be precluded from having presently unidentified witnesses affiliated with Nike invoke the Fifth Amendment in front of the jury, as he stated he might seek to do at a prior conference (Aug. 22, 2019 Conference Tr., at 7-8).  These witnesses have no relevant testimony to offer, and particularly in the circumstances of this case, a lay juror cannot be expected to weigh properly what such an invocation means—and importantly, does not mean.  *See, e.g.*, *United States v. Gallego*, 913 F. Supp. 209, 215 (S.D.N.Y. 1996) (denying request for invocation in front of jury; explaining "the privilege is widely misunderstood by lay persons and that its invocation often creates an adverse impression in many minds"), *aff'd*, 191 F.3d 156 (2d Cir. 1999); *see generally Johnson v. United States*, 318 U.S. 189, 196-97 (1943) ("If the privilege claimed by the witness be allowed, the matter is at an end.  The claim of privilege and its allowance is properly no part of the evidence submitted to the jury, and no inferences whatever can be legitimately drawn by them from the legal assertion by the witness of his constitutional right."); *United States v. Maloney*, 262 F.2d 535, 537, 538 (2d Cir. 1959) (L. Hand, J.) (describing "the natural, indeed an almost inevitable, inference" that a lay juror will draw from an invocation and expressing concern that a limiting instruction places "upon the jury a task beyond their powers: *i.e.*[,] a bit of mental gymnastics" (internal quotation marks omitted)).

### D. The Defendant Should Be Precluded From Arguing That Any Alleged Misconduct Of Nike Outweighs His Own

Finally, the defendant should be precluded from offering evidence or argument suggesting that even if he engaged in criminal conduct, his crimes should effectively be excused because the internal investigation he allegedly sought would have uncovered greater alleged misconduct and thereby benefited Client-1 or the public, or the defendant might properly have sought such an investigation even had he not solicited side payments, and thus the solicitation should be overlooked. *See, e.g.*, *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 378 (1991) (an official "is guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid."); *United States v. Orenuga*, 430 F.3d 1158, 1165 (D.C. Cir. 2005) (proper to charge jury that "[i]t is not a defense to the crime of bribery that had there been no bribe, the public official might have lawfully and properly performed the same act" (internal quotation marks omitted)); *United States v. Jannotti*, 673 F.2d 578, 601 (3d Cir. 1982) (en banc) ("As this court has previously held, it is neither material nor a defense to bribery that had there been no bribe, the (public official) might, on the available data, lawfully and properly have made the very recommendation that (the briber) wanted him to make." (internal quotation marks omitted)); *United States v. Skelos*, No. 15 Cr. 317 (KMW), 2016 WL 1532253, at *6 (S.D.N.Y. Aug. 14, 2016) ("[T]he defense argues that his actions were innocent because they promoted his long-held, core positions, and because they were consistent with 'the best interest of his constituency and the citizens of New York State.' The defense fails . . . ."), *vacated on other grounds*, 707 F. App'x 733 (2d Cir. 2017); *United States v. Mosberg*, 866 F. Supp. 2d 275, 294 (D.N.J. 2011) ("The inquiry is whether the official intended to allow himself to be influenced— not that he was actually influenced in the performance of his duty.").

IX.   **EVIDENCE OR ARGUMENT CONCERNING WHETHER CLIENT-1'S POTENTIAL LEGAL CLAIMS HAD VALUE, AND/OR THE COST OF AN INTERNAL INVESTIGATION, WITHOUT A CONNECTION TO THE DEFENDANT'S CONTEMPORANEOUS KNOWLEDGE, SHOULD BE PRECLUDED**

For the same reasons set forth above, the defendant should be precluded from offering evidence or argument about the monetary value of Client-1's potential claims, unless the defendant can show contemporaneous knowledge of the same.  The defendant should similarly be precluded from offering evidence or argument about the cost of the internal investigation he allegedly sought, unless the defendant can show contemporaneous knowledge of the same.  *See* https://twitter.com/michaelavenatti/status/1164878874846646273?lang=en (defendant asking Twitter followers, in August 2019, months after his arrest, for "specific examples" of "[i]nternal investigations aimed at cleaning up widespread corruption/crime," which, the defendant states, "often cost well in excess of $25 million, $50 million or even $100 million").  The question before the jury is what the defendant knew and intended at the time he acted, not what he may have learned after he was arrested or can prove now, including with the benefit of discovery or post-conduct inquiry of others, about the so-called "validity" of Client-1's potential claims (Dkt. No. 52, at 8).

X.   **OUT-OF-COURT STATEMENTS MADE BY ATTORNEY-1 TO THE GOVERNMENT AFTER THE DEFENDANT WAS ARRESTED ARE INADMISSIBLE**

Pursuant to Federal Rule of Evidence 807(b), the defendant has advised the Government that he may seek to offer statements made to the Government by the individual identified in the Superseding Indictment as Attorney-1, after the defendant was arrested, in which Attorney-1 stated, in sum and substance, that Attorney-1 did not intend to threaten or extort Nike and did not

agree with the defendant to do so.  The defendant should be precluded from offering these statements for multiple reasons.[5]

As an initial matter, the statements are irrelevant.  Prior to the filing of the Superseding Indictment, defense counsel suggested to the Government that certain of Attorney-1's statements are, in the defendant's view, probative as to whether Attorney-1 and the defendant had a so-called "meeting of the minds."  No charge in the Superseding Indictment, however, requires a meeting of the minds with Attorney-1 (or anyone else).  Subsequent to the filing of the Superseding Indictment, the defendant advised the Government that Attorney-1's statements, in his view, (1) are relevant to show that the defendant did not aid and abet Attorney-1, in light of the citation of 18 U.S.C. § 2 in the parenthetical following Counts One and Two of the Superseding Indictment, and (2) exculpate the defendant as to the existence of a scheme.  Neither proposition is correct.

As to the former—the citation of Section 2—as the Government informed the defendant, and as indicated in the Government's Requests to Charge (*see* Gov't Request No. 19), this citation does not reflect that the Government intends to ask the jury to consider convicting the defendant, in the alternative, on an aiding and abetting basis, but rather on a willful causation theory.  That alternative theory of culpability does not require that the person or persons through whom the defendant acted have had a guilty mind, whether in whole or in part (nor does the Government intend to argue to the contrary at trial).  *See, e.g.*, *United States v. Concepcion*, 983 F.2d 369, 383-84 (2d Cir. 1992) ("an individual (with the necessary intent) may be held liable if he is a cause in fact of the criminal violation, even though the result which the law condemns is achieved through the actions of innocent intermediaries"; "[T]he person who actually performed the act need not have had any criminal purpose or intent; if the defendant willfully caused an act that, had he

---

[5]     The Government has provided to the defendant the complete notes and memoranda of the interview(s) in which these and other statements were made.

performed it directly, would be an offense against the United States, he may be prosecuted under § 2(b) even though the agent who committed the act is innocent or acquitted." (internal quotation marks omitted)); *United States v. Margiotta*, 688 F.2d 108, 131 (2d Cir. 1982) (defendant may be found guilty even if he acts through "innocent intermediaries" to "cause[] the commission of an indispensable element of the offense"); *United States v. Ordner*, 554 F.2d 24, 29 (2d Cir. 1977) (under the "willfully causes an act to be done" provision "the guilt or innocence of the intermediary is irrelevant"); *see also United States v. Jordan*, 927 F.2d 53, 55 (2d Cir. 1991) (jury properly instructed that defendant could be found guilty where the defendant caused government agent to ferry narcotics into the United States).

As to the latter—that Attorney-1's denial of guilt purportedly exculpates the defendant— Attorney-1's denial of his or her own guilt does not exculpate the defendant any more than a confession by Attorney-1 of his or her own guilt would inculpate the defendant.  On the contrary, admitting statements on this basis would conflict with both the settled principle that the jury should not consider persons not on trial, *see, e.g.*, *Muse*, 2007 WL 1989313, at *22, and the equally settled principle that the jury should consider the defendant's guilt separately from the guilt or lack thereof of anyone else, even in a joint trial, *see, e.g.*, *United States v. Monaco*, 199 F.3d 1324, 1999 WL 980946, at *3 (2d Cir. 1999); *United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir. 1984).

In any event, the statements are inadmissible hearsay.  As the defendant appears to concede by invoking Rule 807, the statements do not fall within any hearsay exception, and yet the defendant seeks to offer them to seek to prove the truth of what they assert.  They thus are admissible only if, as to each statement:

> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

22

> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a).[6]  "A statement will be admitted under this rule if (i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party."  *United States v. Morgan*, 385 F.3d 196, 208 (2d Cir. 2004) (internal quotation marks omitted).  "The residual exception in Rule 807 is used 'very rarely, and only in exceptional circumstances.'"  *United States v. Little*, No. 12 Cr. 647 (PKC), 2018 WL 461238, at *1 (S.D.N.Y. Jan. 3, 2018) (quoting *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991)).  These are not such circumstances.

Even if the first requirement of the rule, on which the defendant bears the burden, *see, e.g.*, *Batoh v. McNeil-PPC, Inc.*, 167 F. Supp. 3d 296, 311 (D. Conn. 2016), were assumed to be met, the defendant's proposal plainly fails with respect to the second requirement—that the statement

---

[6]     The foregoing language went into effect on December 1, 2019.  The rule previously read in pertinent part: "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice."

be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."[7]

As noted above, no charge in the Superseding Indictment requires a meeting of the minds with Attorney-1 or that Attorney-1 otherwise have had a culpable state of mind with respect to Nike.   To the extent that the defendant has suggested that Attorney-1's statements as to Attorney-1's *own* intent are probative as to the defendant's intent, the defendant is wrong.   There is neither a factual nor a legal basis to impute the intent of Attorney-1 to the defendant, and in any event, any attempt to do so would run afoul of Rule 403.   But even assuming the defendant could establish some probative value to Attorney-1's description of Attorney-1's own intent, those statements are certainly not more probative on the point for which they would ostensibly be offered—*i.e.*, the defendant's intent during the relevant time period—than "any other evidence" that the defendant has or can obtain through reasonable efforts, *see* Fed. R. Evid. 807(a)(2), including, for example, the recordings of meetings and conversations; the testimony of available witnesses, including Client-1 and other participants in those meetings and conversations; or testimony from the defendant himself, should he choose to offer it.   In short, the statements are not

---

[7]     The Government assumes for present purposes that the defendant could meet his burden with respect to the first requirement, and the Court need not reach this question.   To satisfy this requirement, "the proffered hearsay evidence must have circumstantial guarantees of trustworthiness equivalent to those that justify hearsay testimony under the other hearsay exceptions," *Wright v. Undercover Officer #84*, No. 15 Civ. 4498 (VSB), 2018 WL 4042101, at *6 (S.D.N.Y. Aug. 22, 2018); *see also Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 236 (2d Cir. 1999) ("The traditional exceptions to the hearsay rule . . . provide the benchmark against which the trustworthiness of evidence must be compared in a residual hearsay analysis.").   Attorney-1's statements—which were made in the context of an innocence proffer—do not appear to satisfy that requirement.   Indeed, the Second Circuit has declined to embrace the notion that statements made under similar circumstances typically provide the type of guarantee required.   *See United States v. Ulbricht*, 858 F.3d 71, 123 (2d Cir. 2017) ("We are loath to assume that a statement made by a criminal in debriefings to the government pursuant to a cooperation agreement is categorically 'particularly trustworthy,' as Rule 807 requires.").

24

"more probable" on a relevant point than "any other evidence;" they are not probative on a relevant point at all.[8]

Finally, even if the statements otherwise might be admissible under Rule 807(a), they should be precluded under Rule 403.   Admission of these statements of Attorney-1 would inevitably confuse the jury, particularly because it would conflict with the instruction that it not consider persons not on trial.   *See, e.g.*, *Muse*, 2007 WL 1989313, at *22.   Admission of these statements might also require the Government to offer evidence concerning, among other things, its charging policies and practices, how innocence proffers work, and how and why it might choose to seek a superseding indictment—complex matters far beyond the proper scope of the trial and not easily understood by a lay jury.

Moreover, the defendant seeks only to offer those statements that arguably might exculpate him in part (were there a conspiracy or aiding and abetting charge, and there is neither).   But Attorney-1 made other statements in the same interview(s) that are entirely consistent with and supportive of the Government's charges, including that the defendant indicated that he would provide certain information to Client-1, which the defendant did not.   The defendant's proposal thus would present a one-sided and misleading view of Attorney-1's statements concerning the defendant.   The defendant should not be permitted to mislead the jury.

---

[8]     Nor are they of material assistance, much less "more probable . . . than any other evidence," to explain Attorney-1's contemporaneous actions and statements.   To the extent that the defendant wishes to argue that testimony, recordings, and electronic communications, to the extent admissible, regarding Attorney-1's contemporaneous actions and statements somehow demonstrate that the defendant is not guilty, he is free to do so, provided that he does not suggest, contrary to law, that Attorney-1 must be guilty for the defendant to be guilty.

XI. **THE DEFENDANT SHOULD BE PRECLUDED FROM OFFERING EXPERT TESTIMONY WITHOUT PROVIDING SUFFICIENT NOTICE, AND HIS PROFFERED EXPERT SHOULD BE PRECLUDED FROM OPINING ON WHAT A LAWYER'S ETHICAL DUTIES SHOULD BE, THE ALLEGEDLY NEGATIVE CONSEQUENCES OF THE GOVERNMENT'S THEORY OF GUILT, AND/OR WHAT STATEMENTS MADE TO THE DEFENDANT MEANT**

On December 6, 2019, the defendant provided notice, enclosed as Exhibit A, of a potential rebuttal expert ("Def. Notice"). At the end of the notice, the defendant stated, without elaboration, that he "expressly reserves the right to supplement [both] the areas of testimony and opinions." (Def. Notice 3.) Absent the defendant timely providing supplemental notice, he should be precluded from eliciting such supplemental testimony. The expert disclosure provisions of the Federal Rules of Evidence exist to allow opposing counsel the opportunity to challenge the admissibility of testimony, adequately prepare for cross-examination, and decide whether to prepare rebuttal witnesses. *See, e.g.*, *United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2011 WL 723530, at *3 (S.D.N.Y. Feb. 25, 2011) ("[T]he purpose of reciprocal expert disclosures is 'to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.'" (quoting Fed. R. Crim. P. 16 Advisory Committee's Note)). The Government cannot prepare properly, or at all, to cross-examine an expert who may give testimony on unknown "areas," on which the expert has unknown opinions, grounded in unknown bases.

In any event, assuming that the defendant's proffered expert is qualified (which the Government has not yet fully determined) the Government has no present objection to the core substance of her proffered testimony. However, the defendant should be precluded from eliciting two types of testimony described in his notice.

*First*, the defendant should be precluded from asking his proffered expert to opine not simply on what the defendant's relevant ethical duties were at the pertinent time, but also on what, in the expert's view, they should have been or should be. Nor should the expert be allowed to opine as to her perception of any negative consequences that might flow from the defendant's conviction. Statements such as, "[t]o [accept the Government's theory] would risk creating false expectations in the mind of the client," and the "lawyer's failure to get a fee agreement in signed by the client would work to the detriment of the lawyer" (Def. Notice. 2) appear to serve no purpose but to distract the jury from its role as a fact finder by inviting the jury to consider questions not properly before it. Moreover, such arguments are highly likely to invite nullification, just like multiple of the arguments that the Government seeks to preclude above.

Similarly, the defendant's notice states that the defendant's proffered expert may testify that certain types of statements or conduct are "often encountered" or "typically encountered" in "employment litigation" (Def. Notice 2, 3). The defendant's notice does not provide a sufficient basis for his proffered expert's testimony in this respect, and none is apparent on the face of the pertinent rules or publications. To the extent that the Court is otherwise inclined to permit such testimony, it should order the defendant to supplement his notice or should order a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. In any event, it is not clear what is meant by "employment litigation," and this case does not appear to involve employment litigation (at least within the meaning understood by a lay jury). And even if it did involve such litigation, testimony about what is "often" or "typically" done appears to have no purpose but to invite the jury to consider the degree to which others have engaged the same conduct as the defendant, a question that is not for the jury's consideration. *Cf., e.g.*, *Oldbear*, 568 F.3d at 821. For the reasons described above, that is improper and should be precluded.

*Second*, the defendant should be precluded from asking his proffered expert to opine on what other people meant when they made statements to the defendant.  The defendant states in his notice that his proffered expert will testify that a certain statement made to the defendant "can reasonably be construed as frolic and banter" and thus the content of that statement need not have been conveyed to Client-1.  (Def. Notice 2.)  But the defendant's proffered expert has no basis to offer such opinions; she was not present when this statement was made and has no particular expertise in understanding or opining on its tone or meaning.[9]  She certainly should not be permitted to suggest how the defendant appeared to understand it, which would have the effect of impermissibly allowing an expert to testify to the defendant's mindset at the time at issue. *See United States v. DiDomenico*, 985 F.2d 1159, 1165 (2d Cir. 1993) (excluding expert testimony that attempted to tell the jury—either explicitly or implicitly through "semantic camouflage"— that the defendant's actions demonstrated that she lacked *mens rea*); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 183 (S.D.N.Y. 2008) (expert testimony about intent "cannot be saved by couching [the expert's] opinion as 'industry custom and practice'"); *see generally In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony.").

Nor, more generally, is the meaning of such a statement (or any similar statement), or the defendant's understanding of it, an appropriate subject for expert testimony.  The Federal Rules of Evidence preclude a party from "admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror."  *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir.

---

[9]     Indeed, the defendant's notice provides no basis for his proffered expert's testimony in this respect.  Accordingly, if the Court is otherwise inclined to permit such testimony, it should order the defendant to supplement his notice or should order a hearing.

1994); *see also United States v. Collins*, 581 F. App'x 59, 60 (2d Cir. 2014) (affirming preclusion of testimony by lawyers on the materiality of an agreement and "the work of transactional lawyers" generally, where "fact witnesses" covered the same ground); *United States v. Nouri*, 711 F.3d 129, 145 (2d Cir. 2013) (district court was "well within its discretion" to preclude testimony on customary commissions by brokerage firms where cumulative of other evidence at trial). The jury here will have the opportunity both to listen to this statement—which was recorded—and to hear from one or more witnesses that were in the room when it was made. The jury will also have the opportunity, if either party wishes, to hear directly from the person who made the statement, Outside Counsel-1. The defendant is also free to testify about how he understood the statement. After listening to the recording and hearing from these fact witnesses, the jury will have more than a sufficient basis to decide for itself how the statement was said, what it meant, and how the defendant appeared to understand it. The defendant should not be permitted to suggest that the jury's judgment on such a question should be displaced by that of his chosen expert, or to avoid testifying by having his chosen expert imply what the defendant was thinking.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Government's motions *in limine* should be granted.

Dated:  New York, New York
         December 10, 2019

                                Respectfully submitted,

                                GEOFFREY S. BERMAN
                                United States Attorney

                        By:     <u>s/ Daniel C. Richenthal</u>
                                Matthew D. Podolsky
                                Daniel C. Richenthal
                                Robert B. Sobelman
                                Assistant United States Attorneys
                                (212) 637-1947/2109/2616

LAW OFFICES

# SCOTT A. SREBNICK, P.A.

SCOTT A. SREBNICK*
* ALSO ADMITTED IN NEW YORK

201 S. Biscayne Boulevard
Suite 1210
Miami, Florida 33131

Tel: 305-285-9019
Fax: 305-377-9937
E-mail: scott@srebnicklaw.com
www.srebnicklaw.com

December 6, 2019

<u>Via E-mail</u>
Matthew Podolsky, Esq.
Daniel Richenthal, Esq.
Robert Sobelman, Esq.
United States Attorney's Office
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007

> Re:   *United States v. Avenatti*, No. S1 19 Cr. 373 (PGG)
>        **Defendant's Rebuttal Expert Witness Notice**

Counsel:

Pursuant to Fed.R.Crim.P. 16(b)(1)(C), this letter provides notice of expert testimony that Mr. Avenatti may offer in his case-in-chief in rebuttal of the government's expert witnesses, Professor Nora Freeman Engstrom, Esq., and Mark L. Tuft, Esq. By providing this notice, we do not waive our position, as advanced in our motion *in limine* and supporting memorandum, that the government's proposed expert testimony is inadmissible and should be excluded.

Mr. Avenatti may call attorney Diane Karpman, Esq. as a rebuttal expert witness. Her curriculum vitae is attached. Her testimony would be based on her training, experience, review of certain evidence in the case, knowledge of the applicable California Rules of Professional Conduct, including but not limited to Rules 1.2, 1.4, 1.4.1, 1.5, 1.6, 1.7, 1.8.2, and 8.4, and Business and Professions Code 6000, *et seq.* We expect that Ms. Karpman would testify about the following matters.

1. Rule 1.2 addresses the allocation of authority between lawyer and client. As a general matter, clients have control over decisions involving substantive or essential rights involving the merits of a case. So, for example, the client must approve and sign a final settlement agreement regarding a potential claim. However, the tactical considerations involved in making a settlement demand, negotiating the settlement, and getting to a final agreement do not fall within a layperson's common experience. Thus, a lawyer is granted latitude in choosing between alternative tactical strategies in making a settlement demand because a lawyer may take such action on behalf of the client that is impliedly authorized to carry out the representation. When a client who feels victimized by a major corporation is interested in obtaining monetary damages and rooting out corruption at the corporation, and places no express restrictions upon the

lawyer, the lawyer has wide latitude to make tactical decisions and settlement demands to achieve those goals. This could include negotiating to be retained by the corporation to conduct an internal investigation of the corporation. If a conflict exists, the lawyer would need to obtain informed consent and appropriate waivers prior to being formally retained by the corporation. This is often encountered in employment litigation, where plaintiffs' lawyers may be retained by the defendant corporate entity after the conclusion of the litigation.

2. Rules 1.4 and 1.4.1 govern settlement offers (in addition to certain provisions of the Business and Professions Code 6000, *et seq*). A settlement offer is typically in writing and contains specific terms and conditions. A comment orally made by an attorney for a defendant that "I don't think the settlement of [the Plaintiff's] civil claims for 1.5 million dollars is going to be the stumbling block here" certainly does not qualify as a "written offer of settlement" that must be promptly communicated to the client under Rule 1.4.1. Moreover, such an oral comment can be reasonably construed as frolic and banter, or preliminary negotiations, and not subject to disclosure to the client. There is no duty to report all preliminary negotiations to a client. To do so could risk creating false expectations in the mind of the client.

3. Rule 1.4 requires a lawyer to "reasonably consult with the client about the means by which to accomplish the client's objectives in the representation," to "keep the client reasonably informed about significant developments relating to the representation," and to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." What is "reasonable" is heavily dependent upon the context and the nature of the relationship between the lawyer and the client. Some clients prefer that a lawyer handle all matters, without much communication, until a substantial decision needs to be made by the client. Other clients express a desire for frequent communication and greater input into strategy. There is no requirement that a lawyer communicate on a daily basis with the client, and no requirement that a lawyer provide the client with a verbatim account of statements made or actions taken during settlement negotiations. In general, it is reasonable for a lawyer to assume that he/she may make all of the strategy and tactical decisions in negotiating a settlement, so long as they are in furtherance of the client's overall objectives.

4. Under Cal. Bus. and Prof. Code §6147 and §6148, a fee agreement must be in writing for the agreement to be enforceable. However, the absence of a written fee agreement would not subject a lawyer to discipline by the California Bar. Rather, in the absence of a fee agreement, the lawyer would still be entitled to collect a reasonable fee. *See* §6147; 6148. The lawyer's failure to get a fee agreement in writing signed by the client would work to the detriment of the lawyer, not the client.

5. Rule 1.6 addresses Confidential Information of a client. A lawyer is required to maintain the confidentiality of a client's information, which includes any information

obtained by the lawyer during the professional relationship, or relating to the representation, the disclosure of which might be embarrassing or detrimental to the client. Where information provided by the client to the lawyer is the documentary evidence that actually proves the client's claim against a wrongdoer, and the client is pursuing a potential lawsuit, the client implicitly authorizes the lawyer to show that evidence to opposing counsel in a confidential settlement conference.

6. Rule 1.7 governs conflicts of interest. A lawyer may, as part of a settlement on behalf of a current client, be retained to conduct an internal investigation of the current client's adversary and to be paid by the adversary to conduct the investigation, so long as the arrangement is approved by the current client and any conflicts are waived in writing prior to the lawyer entering into a formal arrangement with the current client's adversary. This is typically encountered in employment litigation.

Mr. Avenatti expressly reserves the right to supplement the areas of testimony and opinions of Ms. Karpman depending on the testimony the government's fact and expert witnesses offer at trial and the Court's rulings regarding their admissibility. Specifically, Ms. Karpman may consider the evidence offered at trial and offer an opinion regarding whether Mr. Avenatti's conduct violated any fiduciary duties based on that evidence.

Respectfully,

SCOTT A. SREBNICK
JOSE M. QUINON

SCOTT A. SREBNICK, P.A.

**DIANE L. KARPMAN**
**KARPMAN & ASSOCIATES**
**1650 SOUTH CREST DRIVE**
**LOS ANGELES, CA 90035**
**(310) 887-3900**
**karpethics@aol.com**

## PRACTICE DESCRIPTION:

Practice limited to representation of attorneys: ethics consultation, malpractice prevention, conflicts advice, State Bar defense, applications and reinstatement. Expert witness and consultant in legal malpractice and breach of fiduciary duty cases. Certified California State Bar Legal Malpractice Specialist. Certified California State Bar M.C.L.E. provider.

## PROFESSIONAL EXPERIENCE:

1994-2019   KARPMAN & ASSOCIATES* - Principal engaged in the representation of attorneys in matters relating to ethics consultation, State Bar discipline, admission and reinstatement, professional responsibility and malpractice.

1990-1994   COHEN & KARPMAN - Partner of two attorney firm engaged in legal malpractice defense, State Bar discipline and reinstatement, civil litigation and professional responsibility.

1982-1989   STATE BAR COURT - Referee (Hearing Officer). Adjudicated more than fifty cases involving lawyer discipline and issues regarding moral character. (Compensated State Bar Court Principal Referee 1989-1990.)

1980-1984   UNIVERSITY OF WEST LOS ANGELES COLLEGE OF LAW - Professor, Assistant Dean, Chair of the Academic Council (1982-1984) and Chair of the Contracts Department (1981-1982). Taught courses in contracts and the Uniform Commercial Code.

1975-1980   WESTERN STATE UNIVERSITY COLLEGE OF LAW - Instructor, Lecturer and Associate Professor. Taught courses in contracts and torts.

*A.V. - Preeminent Rated. Martindale-Hubbell

1

**LICENSE:**

| | |
|---|---|
| California State Bar: | Admitted June 1975. |
| United States Central District: | Admitted June 1975. |
| United States Supreme Court: | Admitted 1995. |
| United States Court of Appeals, Ninth Circuit: | Admitted September 2005. |
| United States District Court, Southern District: | Admitted April 2007. |
| United States District Court, Northern District: | Admitted May 2007. |
| United States District Court, Eastern District: | Admitted April 2007. |

**EDUCATION:**

Western State University College of Law,  Juris Doctorate 1974.

University of California, Los Angeles (UCLA), Bachelor of Arts (History), History Department Honors 1970.

**RELATED PROFESSIONAL EXPERIENCE:**

2013-2014    Top Rated Lawyer.

2013-2019    Best Lawyers.

2011-2014    Super Lawyers.

2007    Louis Fox Lifetime Achievement Award - Beverly Hills Bar Association.

2004    Alumni of the Year - Western State University College of Law.

2001    Harvard University, Cambridge, Massachusetts, Focus Group on Ethics Advisors in U.S. Law Firms.

2001-2003    Appointed "Ethics Consultant" in a Class Action by Los Angeles Superior Court.

1998-2006    Adjunct Professor Ethics, UCLA Attorney Assistant Training Program.

1991-1999    Beverly Hills Municipal Court Judge Pro Tempore.

1994    California consultant advising New Jersey Bar Association on the reorganization of their disciplinary system (Palm Springs).

1991-1993    Los Angeles Municipal Court Judge Pro Tempore: Qualified in Civil, Traffic, and Unlawful Detainer Law.

2

| 1990-1991 | Panel Member of California Appellate Project.  Engaged in writing criminal appellate briefs and oral arguments before the California Courts of Appeal: |

|                   |            |
|-------------------|------------|
| People v. Patino  | B050452    |
| People v. Evans   | B046837    |
| People v. Douglas | BA002929   |
| People v. Cortes  | A044037    |

| 1989-1990 | Compensated Principal Referee, California State Bar Court.  Author of numerous decisions. |

| 1982-1989 | California State Bar Court Referee (Hearing Officer).  Adjudicated matters involving lawyer discipline and issues regarding the moral character of applicants. |

## SUMMARY OF LEGAL PUBLICATIONS:

Author of publications and articles on legal ethics and professional responsibility, including: coauthor **California Lawyer's Guide to Professional Responsibility.** Shepards/McGraw Hill (1994-1996). Contributing author to **California Pleadings and Practice,** Matthew Bender.  **Cornell Ethics Project** with Professor Roger C. Cramton and Brobeck, Phleger & Harrison. **American Law Institute** - Members Consultant Group, **Restatement of the Law of Lawyering.**  Detailed publications list at pages 5-7.  Editorial Board, **ABA/BNA Lawyers' Manual on Professional Conduct**.

## SUMMARY OF BAR COMMITTEES:

Service on committees of the California State Bar, Los Angeles County Bar Association, Beverly Hills Bar Association and American Bar Association.  A complete historical list of committee membership and positions is available on request.  A partial list of committee positions:

Beverly Hills Bar Liaison to the California State Bar Rules Revision Commission. (2018).

ALI Member Consultative Group, Principles of the Law of Aggregate Litigation (1997-2019), Principles of Government Ethics (2014).

California Attorney Civility Task Force (2006-2007).

Judicial Council of California, Bench-Bar Coalition.  (2014-2017).

American Bar Association, Standing Committee on Professionalism. (2006-2007).

3

American Bar Association Center CLE Committee. (2008-2012).

Member ABA/BNA Lawyers' Manual on Professional Conduct Editorial Board. (2009-2012).

Appointed as State Bar Delegate to ABA House of Delegates (2004-2012).

President, Association of Professional Responsibility Lawyers (2000). Chair-Corporate Responsibility Committee, SEC Sarbanes-Oxley Committee (2004).

ABA/BNA Lawyers' Manual on Professional Conduct, Chair Editorial Board (2006).

Member, National Organization of Bar Counsel (2001-2017).

Co-Chair, American Bar Association Technology Sub-Committee Publications Board (1999-2000).

American Bar Association Impaired Attorney Commission (APRL Liaison 1998-2000).

American Bar Association, Professional Lawyer Board of Editors (1997-2000).

Co-Chair, American Bar Association Client Security Fund Forum (1996).

Member, American Bar Association Standing Committee on Lawyer Responsibility for Client Protection (1994-1996).

Member, The Fellows of the American Bar Foundation (2006-2019).

Trustee, Los Angeles County Bar Association (1999-2012).

Chair, Los Angeles County Bar Association Professional Responsibility and Ethics Committee (2001).

Member, Los Angeles County Bar Association Amicus Briefs Committee (2002-2019).

Liaison, State Bar Board of Governors Committee on Discipline and Regulation for Los Angeles County Bar Association, Beverly Hills Bar Association, San Fernando Valley Bar Association (1991-2001).

Commissioner, Commission on Judicial Nominees Evaluation Committee (JNE) (1998-2000).

4

Member, Los Angeles County Bar Association - Ethics 2000 Committee (1998-2002).

Member, Foundation of the State Bar of California, Leadership Circle (2006-2007).

Board of Trustees, San Fernando Valley Bar, Chair Ethics Committee (1996-2000).

President, Beverly Hills Bar Association (2013 - 2014).

First Vice President, Beverly Hills Bar Association (2011- 2012).

Chair, Beverly Hills Bar Ethics Committee (2000-2012). Member, Conference of Delegates (1993-2012).

Secretary and Treasurer, Beverly Hills Bar Association (2009-2010).

Board of Governors, Beverly Hills Bar Association (1994-1997, 2008-2012).

Board of Governors, Consumer Attorneys Los Angeles (1995-1996).

## SIGNIFICANT APPELLATE DECISIONS:

*In the Matter of Respondent Q.* (Review Dept. 1994) 3 Cal. State Bar Ct. Rptr.18. The hearing department of the California State Bar Court restricted the State Bar Investigators from contacting non-complaining clients (based upon privileged information). The Review Department ruled that such a restriction was beyond the Court's jurisdiction and contact could not be prohibited. (Rule of Procedure 2410, prohibiting such contact was implemented the following year.)

*In the Matter of Edmund C. Ike* (Review Dept. 1996) 3 Cal. State Bar Ct. Rptr. 483. The Review Department upheld the Hearing Judge's recommendation to revoke a lawyer's license to practice law based on his failure to update his State Bar application to reveal that he was awaiting trial on eleven felony counts. The attorney raised several procedural and due process issues.

*In re Attorney Discipline System* (1998) California, 19 Cal. 4th 582. The California Supreme Court sought comment on its authority to impose a fee for discipline. Drafted and submitted American Professional Responsibility Lawyer's response, supporting the Court's inherent authority to discipline attorneys.

*Manfredi & Levine v. Superior Court of Ventura* (1998) 66 Cal. App. 4th 1128; 78 Cal. Rptr. 2d 494. Appellate opinion addressed issues as to the appropriate procedures to follow when an attorney discovers an absolute conflict of interest involving a client while in the midst of an arbitration, how the attorney should handle withdrawal, and the role the court should assume.

*In the Matter of Clifford R. Weber* (Review Dept. 1998) 1998 Cal. Op. Lexis 17. Issue was the State Bar Court's role in motions for summary disbarment based on a felony conviction (due to a change in the relevant statute in 1996) although numerous members of the community, including the Federal Judge who adjudicated the criminal case declared that disbarment was not justified in this case.

*In re Blum* (Review Dept. 2002) Cal. Bar Ct. Review Dept., No. 96-O-03531. The Review Department recommended that a lawyer found to be emotionally incapable of confronting her physically and psychologically abusive husband/ law partner about irregularities in the firm's trust accounts should receive a 30-day suspension instead of a more severe sanction.


## LEGAL PUBLICATIONS, MEDIA AND BROADCAST:

ABC Television News "Lawyer Photoshopped Herself Into Pictures With Celebrities," by Carlos Granda. September 19, 2014.

KGO 810 Radio "San Francisco Afternoon News." DA's letters to debt collectors raise ethical questions. "Ethics Byte" Cal Bar Journal November 2012.

ABA Journal Podcast Series, "Sealing the Deal: How to Negotiate Fee Agreements," with Howard B. Miller, former President of the State Bar of California (2011).

National Public Radio, "All Things Considered With Michelle Norris." ABA Opinion 11-459, advising lawyers to assume that their client's employers have handbooks or policies informing workers that emails on company owned devices will not be privileged (2011).

KFI, (Talk Radio) "John & Ken Show." Ken Starr's submission of false affidavits in a death penalty case involving Michael Morales (2006).

KABC, (Talk Radio) "Ken & Company." Ethics of regaining former jurors as consultants regarding Greg Haidl (2004).

6

In The Beginning: <u>The Georgetown Journal of Legal Ethics</u>, A Review of <u>Legal Malpractice</u> by Ronald E. Mallen and Jeffrey M. Smith, (2004).

Member Consultant Group, <u>Restatement of the Law of Lawyering</u>, American Legal Institute (1998-2001).

Publications Board Member, <u>Compendium of Professional Responsibility Rules and Standards</u>, <u>Legal Assistant's Guide to Professional Responsibility</u>, American Bar Association (1999-2001).

<u>Corporate Counsel Lawcast Outline</u>, Federal Circuit explores ethical conundrums counsel face in M & A discussions (2001).

Fox News Network, "On the Record" with Greta Van Susteren. Ethical issues regarding Robert Blake (2002).

KPFJ (National Public Radio) regarding the ABA's role in recommending judges (2001).

Contributing editor, <u>California Pleadings and Practice</u>, Attorney sections, Matthew Bender (1997).

Associate editor California, <u>American Legal Ethics Library</u>, Cornell Ethics Project with Professor Roger Cramton. Assisted Brobeck, Phleger & Harrison in the California narrative. <*http://law.cornell.edu/ethics*>

Coauthor, <u>California Lawyer's Guide to Professional Responsibility</u>, annotated Rules of Professional Conduct and the State Bar Act, Shepards/McGraw Hill (1994-1996).

Contributing author, <u>Attorney Ethics</u>, Competency and Trust Account Management, Matthew Bender (1993-1995).

**Ethics Byte**, monthly column for the State Bar of California, <u>California Bar Journal</u>. <*http://www.calbar.org/2cbj*>

| | | |
|---|---|---|
| *Former Chief Justice's Book Packs Surprising Plot Twists.* | April | 2014 |
| *How Long Should Liability Last?* | March | 2014 |
| *Exercise Caution When a Third Party Foots the Bill.* | January | 2014 |
| *Make Sure Billing Practices are Bulletproof.* | December | 2013 |
| *The Limits of Civility.* | November | 2013 |

| | | |
|---|---|---|
| *Foreign Fee Scammers Target U.S. Lawyers.* | October | 2013 |
| *Rules On What's Privileged a Moving Target.* | September | 2013 |
| *Web Offers Pearls of Wisdom, But Also Legal Tangles.* | August | 2013 |
| *Client Relationships Have Limited Shelf Life.* | July | 2013 |
| *Is there Concrete Value in MCLE Requirements?* | May | 2013 |
| *Lawyers Increasingly Exposed to Unfair Competition* *Law Liability.* | April | 2013 |
| *Confessions to Client Threatens Malpractice* *Insurance Coverage.* | February | 2013 |
| *Building Safeguards Into Fee Agreements.* | January | 2013 |
| *DA's Letters to Debt Collectors Raise Ethical Questions.* | November | 2012 |
| *What to do When you Find a Smoking Gun, But* *It's Privileged.* | October | 2012 |
| *ABA Model Rules Reflect Technology, Globalization.* | September | 2012 |
| *Lawyer Admission Cases Highlight the Personal, Political.* | August | 2012 |
| *Focus Returns to Tighter Discipline with Supreme* *Court's Return of 24 Cases.* | July | 2012 |
| *Online Access to Ethics Opinions Would Guard* *Against 'dog law.'* | June | 2012 |
| *Loose Lips Sink Ships for Attorneys in* *Trayvon Martin Case.* | May | 2012 |
| *Disqualification: Square Pegs and Round Holes.* | April | 2012 |
| *There's a TV News Crew in the Lobby Asking* *For a Partner.* | March | 2012 |
| *Redefining Inadvertent.* | February | 2012 |
| *The Ostrich is a Noble Animal.* | January | 2012 |
| *What's a Life Story Worth?* | December | 2011 |
| *'Flash Sales' for Legal Services?* | November | 2011 |
| *Early Client Education Can Prevent Big Problems Later.* | October | 2011 |
| *No Complaints About Lawyer Rules - You Could* *Be a Judge.* | September | 2011 |
| *Balancing a Fix with Client Rights.* | August | 2011 |
| *Internal Emails and Attorney-Client Privilege.* | July | 2011 |
| *Has the Supreme Court Sealed the Lips of California* *Lawyers?* | June | 2011 |
| *R u Sure u Want 2 Tweet?* | May | 2011 |
| *Consumer Alert or Lawyer Alert?* | April | 2011 |
| *True Retainers Have Pros and Cons.* | March | 2011 |
| *High Court Holds Lawyers are Not Accountable for* *Misconduct During Mediation.* | February | 2011 |
| *Who Should Run the State Bar?* | January | 2011 |
| *Eliminating Wild Expectations With Disclosure.* | December | 2010 |
| *Keeping a Simple Fee Dispute from Escalating into a* *Big Headache.* | October | 2010 |

| | | |
|---|---|---|
| *New Professional Rules Generate Plenty of Disagreement.* | September | 2010 |
| *Should 'privilege karma' Be Available Only to Active* | | |
| *Lawyers?* | August | 2010 |
| *A New Decision is Giving Lawyers Acid Reflux.* | July | 2010 |
| *Balancing Professional Duties Can Be Like* | | |
| *Walking a Tightrope.* | June | 2010 |
| *How to Safely Withdraw from a Case.* | May | 2010 |
| *A Challenge to Lawyers' Duties to Former Clients.* | April | 2010 |
| *Technology Offers an E-ticket to a New World of* | | |
| *Legal Practice.* | March | 2010 |
| *Time for Tuning Up Those Fee Agreements.* | February | 2010 |
| *Supreme Court Gift for Lawyers and Their Clients.* | January | 2010 |
| *Most States Still Reject Law Firm Discipline.* | December | 2009 |
| *'Miranda' for Corporate Execs Under Scrutiny.* | November | 2009 |
| *Complaints to Bar May Involve Ulterior Motives.* | October | 2009 |
| *Outdated Rules for 21st Century Advertising.* | September | 2009 |
| *What Should You Do With Those Old Client Files?* | August | 2009 |
| *High Court Opens a New Era of Judicial Recusal.* | July | 2009 |
| *Torture Memos, LA Election Raise Ethics Questions.* | June | 2009 |
| *Handle Client Funds Properly — Or Else.* | May | 2009 |
| *Outside-the-law Activities Can be Risky.* | April | 2009 |
| *Marketing on the Internet, Following Rules.* | March | 2009 |
| *Avoid Problems When Billing Your Clients.* | February | 2009 |
| *Some Rules Can Cause an Uncivil Ruckus.* | January | 2009 |
| *Beware the Meltdown's Temptations.* | December | 2008 |
| *Court Gives Criminal Defense Lawyers a Break.* | November | 2008 |
| *How to Build a Raise Into Your Fee Agreement.* | October | 2008 |
| *Of Bank Failures and Conflicts at New Law Firms.* | September | 2008 |
| *Online Charges Catch the Good and the Bad.* | August | 2008 |
| *Of Walls and Waivers in Conflict Disputes.* | July | 2008 |
| *Supreme Court Lets Prosecutors Off the Hook.* | June | 2008 |
| *Body Shows and Professional Conduct Rules.* | May | 2008 |
| *Advertising Rules for the 21st Century.* | April | 2008 |
| *Make Your Voice Heard On Insurance.* | March | 2008 |
| *Qualcomm: A New Era In E-Discovery.* | February | 2008 |
| *New Meaning of "Inadvertent Receipt" Given.* | January | 2008 |
| *A Break for Lawyers Who Change Firms.* | December | 2007 |
| *Contingency Fees: Freedom From Worry.* | November | 2007 |
| *Put Safety Nets in Place for Solo Lawyers.* | October | 2007 |
| *Confidentiality Trumps a Claim of Negligence.* | September | 2007 |
| *Multiple Clients May Present Multiple Conflicts.* | August | 2007 |
| *Metadata Can Cause Lawyers Megaproblems.* | July | 2007 |
| *An Exception to the Attorney-Client Privilege.* | June | 2007 |
| *Distinguishing Between the Standards.* | May | 2007 |

| | | |
|---|---|---|
| *Troubling Twist on Sarbanes-Oxley Act.* | April | 2007 |
| *Weird Fiduciary Breach Claim Goes Client's Way.* | February | 2007 |
| *A Collision of Legal Needs and Professionalism.* | January | 2007 |
| *Advertising Rules in the YouTube Era.* | December | 2006 |
| *Show Biz and Conflicts Cases Go Hand in Hand* | November | 2006 |
| *Insurance Rule Will Be a Scarlett Letter For Some.* | October | 2006 |
| *Threats to Gain an Advantage are a Bad Idea.* | September | 2006 |
| *Screening May Not Prevent Disqualification.* | August | 2006 |
| *Free Speech Exists for Lawyers, Too.* | July | 2006 |
| *Once Again, Another Trial By Media.* | June | 2006 |
| *Privacy Law, Just Like Ethics, Lags Technology.* | May | 2006 |
| *Nonprofits Are in a Class of Their Own.* | April | 2006 |
| *What's the Bottom Line on Hourly Billing?* | March | 2006 |
| *'Truthiness' and Preserving Your Reputation.* | February | 2006 |
| *The Newest Risk Management Tool - OSINT.* | December | 2005 |
| *Metadata Can Bite You Where it Hurts, Law-Wise.* | November | 2005 |
| *No Fooling With the Rules in Class Actions.* | October | 2005 |
| *Clarifying Fee Agreements and Client Consents.* | September | 2005 |
| *Let's Put an End to the Epidemic of Conflicts.* | August | 2005 |
| *A Bad Idea for Both Lawyers and Presidents.* | July | 2005 |
| *Protecting Client Secrets in an Electronic World.* | June | 2005 |
| *Supervising Role Brings Specific Legal Obligations.* | April | 2005 |
| *Careful How You Get Free From a Case or a Client.* | March | 2005 |
| *An Ethics Riddle in the Notorious "Torture Memo."* | February | 2005 |
| *Resisting The Pull of Family and Friends.* | January | 2005 |
| *What Were Martha Stewart's Lawyers Thinking?* | December | 2004 |
| *Court Issues a Warning About Warning Clients.* | November | 2004 |
| *Client Trust Accounts Going Digital, Too.* | October | 2004 |
| *Disclosure is Key to Compliance With Rule 3-300.* | September | 2004 |
| *Playbook Theory Isn't Just For Football Coaches.* | August | 2004 |
| *Big Brother, Little Brother - All Are Watching.* | July | 2004 |
| *Take a Close Look at Binding Arbitration.* | June | 2004 |
| *Sometimes You Just Don't Want to Know.* | May | 2004 |
| *Supreme Court Clarifies Fee Split Questions.* | April | 2004 |
| *There are Some Exceptions to Privilege Rule.* | March | 2004 |
| *A Twilight Zone of Inharmonic Convergence.* | February | 2004 |
| *General Counsels Face Some Tricky Ethical Problems.* | January | 2004 |
| *Judgment Often Depends on the Circumstance.* | November | 2003 |
| *Lawyer-As-Priest: Always Be Honest.* | October | 2003 |
| *Looser Lips Chip Away at Core Value.* | September | 2003 |
| *Causation Requirement Reaffirmed.* | August | 2003 |
| *Two Decisions Bring Relief and Concern.* | July | 2003 |
| *Unreported Decisions Offer Novel Concepts.* | June | 2003 |
| *Line Between Advocates and Advisors Blur.* | May | 2003 |

| | | |
|---|---|---|
| *Risk Managers in Boardrooms and War Rooms.* | April | 2003 |
| *Orange Alert: Careful What You Call 'Fees.'* | March | 2003 |
| *'One Size Fits All' Does Not Apply to Your Clients.* | February | 2003 |
| *Claims Against Lawyers Are A Popular Activity.* | January | 2003 |
| *Supreme Court Ruling on Fees: 'Bah Humbug.'* | December | 2002 |
| *An Evolving Rule On Non-Discrimination.* | November | 2002 |
| *Reality Law Or Not Just Another String Theory.* | October | 2002 |
| *New Law Turns Lawyers Into Informants.* | September | 2002 |
| *'Lost' Punitive Damages Make Business Risky.* | August | 2002 |
| *Government Lawyers Bear a Heavy Burden.* | July | 2002 |
| *Enron Fallout Will Mean Changing Some Ethics Rules* | June | 2002 |
| *On Psychics, Lollygagging and Best Judgment* | May | 2002 |
| *A New Ethical Peril For Lawyers: Serial Conflicts.* | April | 2002 |
| *Twilight Zone Cases Can Make Practice Tricky.* | March | 2002 |
| *Doing The Right Thing Can Trump No-Contact Rule.* | February | 2002 |
| *Ethics Lawyers Work in the ER of the Profession.* | January | 2002 |
| *Lawyers Are Members of the Public, Too.* | December | 2001 |
| *New Decision May Subject Lawyers to Suits.* | November | 2001 |
| *Lawyers Move On In Usual Way Despite Disaster.* | October | 2001 |
| *Report Shows With Law Firms, Size Does Matter.* | September | 2001 |
| *Let's Go Surfin' Now, Everybody's Learnin' How.* | August | 2001 |
| *Level Field or a Judicial Practical Joke?* | July | 2001 |
| *Protect Your Firm - Build Ethical Walls.* | June | 2001 |
| *Law Firm Hit For Failing To Register As LLP.* | May | 2001 |
| *2 New Rulings Send Litigators Back To Basics.* | April | 2001 |
| *Time For Lawyers To Reconsider Our Ethical Rules.* | March | 2001 |
| *For Our Clients, It Is Now Time To Legitimize MJP.* | February | 2001 |
| *Mixed Rulings on Advertising Fiduciary Duty.* | January | 2001 |
| *Predicting the Future (In Your Dreams).* | December | 2000 |
| *When It Comes to Shielding: Holy Screen 2.* | November | 2000 |
| *When It Comes to Shielding: Holy Screen 1.* | October | 2000 |
| *Beware Doing That Favor for a Colleague.* | September | 2000 |
| *May Be Safer in the World of Consulting.* | August | 2000 |
| *Warding Off a Homogenized Profession.* | July | 2000 |
| *Taking An Ethical Piece of the Action.* | June | 2000 |
| *Inspiration From Erin Brockovich.* | May | 2000 |
| *More on the Written Agreement.* | April | 2000 |
| *Protection: A Written Agreement.* | March | 2000 |
| *'Rampant' Conflicts in a New Economy.* | February | 2000 |
| *Warding Off the Foul Tort In a New Year.* | January | 2000 |
| *Protecting Yourself From a Complaint.* | December | 1999 |
| *Maintaining Confidentiality With a Slip-Up.* | November | 1999 |
| *Before You Sue For Fees, Think Again.* | October | 1999 |
| *Time to Read Between 'Of Counsel' Lines.* | September | 1999 |

| | | |
|---|---|---|
| *Ruling Really Doesn't Alter Malpractice.* | August | 1999 |
| *The World of 'Bare Naked Referrals.'* | July | 1999 |
| *Fiduciary Duties Basis For All Rules.* | April | 1999 |
| *The Receipt of Confidential Information as a Fiduciary.* | March | 1999 |
| *Make Sure You Identify Your Client.* | February | 1999 |
| *Era of Inadvertent Disclosures.* | January | 1999 |
| *Legal Beliefs Prove to Be Pure Myths.* | December | 1998 |
| *Sanctions Must Be Revealed.* | November | 1998 |
| *Clients Still Have Right To Secrecy.* | October | 1998 |
| *He Said, She Said.* | September | 1998 |
| *Malpractice Protection Imperative.* | August | 1998 |
| *Don't Make Your Clients Messengers.* | July | 1998 |
| *Outlining Obligations to the Client.* | May | 1998 |
| *At All Costs, Remember To Be Civil.* | April | 1998 |
| *Beware the Temptation To Dump A Client.* | March | 1998 |
| *Competency Rule Violation is 1-2 Punch.* | February | 1998 |
| *Remember the 3rd-Party Payor Rule.* | January | 1998 |
| *The Files Belong to the Client.* | December | 1997 |
| *Threatening to Gain an Advantage.* | November | 1997 |

**Professional Responsibility & Ethics,** column for the Los Angeles County Bar Association, County Bar Update. <*http://www.lacba.org/showpage.cfm?pageid=2198*>

| | | |
|---|---|---|
| *Rule Aficionados and ADR* | December | 2002 |
| *Stark Naked Referral Fees.* | October | 2002 |
| *Sunrise, Sunset...or Termination Letters: Avoiding Former Client Conflicts.* | September | 2002 |
| *Risky Behavior Aggravates Insurance Crisis* | August | 2002 |
| *Change and the Standard of Care.* | May | 2002 |
| *Favors, Friends and Family.* | April | 2002 |
| *Confidentiality, Collaboration, and Lawyer Angst.* | February | 2002 |
| *Different Strokes.* | October | 2001 |
| *Knowing the Code: Wilful Conduct & Moral Turpitude.* | September | 2001 |
| *Illuminating the Murky Area of Lawyer-To-Lawyer Consultations.* | August | 2001 |
| *The Bench: Contact With Officials.* | May | 2001 |
| *Not a Hired Gun: Ethical Duties to Justice & the Courts. By Ira Spiro & Diane Karpman.* | March | 2001 |
| *Dissolution of a Law Firm.* | February | 2001 |
| *Legal Ethics Law, Rules & Commentary: Where to Look. By Ira Spiro & Diane Karpman.* | January | 2001 |
| *Ethics Are Coming! Ethics Are Coming!* | December | 2000 |

**Scruples,** monthly column for the San Fernando Valley Bar Association, <u>BarNotes</u>.
<http://www.sfvba.org/bar-notes>

| | | |
|---|---|---|
| *The Ethics 2000 Project.* | January | 2000 |
| *'Bare Naked' Referral Fees.* | October | 1999 |
| *Adverse Interests.* | July/August | 1999 |
| *A Letter From The State Bar.* | June | 1999 |
| *High Crimes and Misdemeanors.* | March | 1999 |
| *Withdrawal and Reasonably Foreseeable Prejudice.* | February | 1999 |
| *Malpractice and The State Bar.* | January | 1999 |
| *Withdrawal.* | December | 1998 |
| *Sanctions.* | November | 1998 |
| *Client Trust Accounts.* | October | 1998 |
| *Mythology and Walls.* | September | 1998 |
| *Proper Relationships Between Bench and Bar.* | July/August | 1998 |
| *Frivolous Litigation.* | June | 1998 |
| *Advertising.* | May | 1998 |
| *Other People's Money.* | April | 1998 |
| *Delay: Tactics Or Misconduct?* | March | 1998 |
| *Communication With a Client.* | February | 1998 |
| *N.S.F. Trust Account Checks.* | January | 1998 |
| *Pleading Just the Beginning of Nightmare.* | December | 1997 |
| *Trust Account Essentials.* | November | 1997 |

*Emotional Distress Damages and Legal Malpractice,* <u>Los Angeles Daily Journal,</u>
September, 2018.

*ABA Should Adopt Discrimination Rule* - <u>Los Angeles Daily Journal,</u> August,
2016.

*It's That Time of Year: MCLE is Due,* <u>Los Angeles Daily Journal,</u> February, 2014.

*How a Case Moves From Investigation to Discipline at the State Bar* - Third in a
Three-Part Series, <u>Los Angeles Daily Journal,</u> November 28, 2011. By Diane L.
Karpman and Stephen J. Strauss.

*How a Case Moves From Investigation to Discipline at the State Bar* - Second in
a Three-Part Series, <u>Los Angeles Daily Journal,</u> November 21, 2011. By Diane L.
Karpman and Stephen J. Strauss.

*How a Case Moves From Investigation to Discipline at the State Bar* - First in a
Three-Part Series, <u>Los Angeles Daily Journal,</u> November 14, 2011. By Diane L.
Karpman and Stephen J. Strauss.

*A Scarlet Letter - Your Weakest Moments Can and Will be Used Against You,*
<u>Los Angeles Daily Journal,</u> August, 2011. By Diane L. Karpman and Stephen J.
Strauss.

*A Scarlet Letter: Interim Suspension Following a Criminal Conviction,*
<u>Los Angeles Daily Journal,</u> July, 2011. By Diane L. Karpman and Stephen J.
Strauss.

*I Got a State Bar Letter,* <u>Los Angeles Daily Journal,</u> June 27, 2011.
By Diane L. Karpman and Stephen J. Strauss.

*I Got a State Bar Letter,* <u>Los Angeles Daily Journal,</u> June13, 2011.
By Diane L. Karpman and Stephen J. Strauss.

*How to Safely Withdraw From a Case,* <u>Los Angeles Daily Journal,</u>
January, 2011. By Diane L. Karpman and Stephen J. Strauss.

*When Lawyers Collect More Than Clients Receive,* <u>Los Angeles Daily Journal,</u>
October, 2010. By Diane L. Karpman and Stephen J. Strauss.

*Attorney Speaks Out Against Former Client's Project,* <u>Los Angeles Daily Journal,</u>
June, 2010.

*Threatening Legal Action in Fee Disputes Can Blow Up In Your Face,* <u>ABA
Journal,</u> December 2009.

*Board Digest,* Beverly Hills <u>Bar Brief,</u> November 2009.

*Defending Counsel,* <u>ABA Journal - Law News Now,</u> May 2008.

*Top 10 Ethics Traps, The Way Out: Translate for the Internet,* <u>ABA Journal,</u>
November 2007.

*Advertising on the Internet,* <u>ABA Professional Lawyer,</u> September 2007.

*Advice and Consents,* <u>Los Angeles Lawyer,</u> A Publication of the Los Angeles
County Bar Association, June 2007, Volume 30, Number 4.

*On a Precipice of Potential Malpractice,* <u>California Litigation,</u> The Journal of the
Litigation Section, State Bar of California, 2006, Volume 19, Number 3.

*Dead Sea Scrolls,* <u>GPSOLO,</u> A Publication of the American Bar Association, June
2004, Volume 21, Number 4.

*When It's NOT Better To Give Than To Receive,* **GPSOLO**, A Publication of the American Bar Association, December 2003, Volume 20, Number 8.

*Not Using New Technology: Keep Up Or Face Peril,* **GPSOLO**, A Publication of the American Bar Association, June 2003, Volume 20, Number 4.

*Enron Fallout Will Mean Changing Some Ethics Rules,* Greater Los Angeles Chapter Association of Legal Administrators, Leadership Exchange, April 2003 Volume 1, Issue 1.

*Summary Disbarment Violates Rights*, Los Angeles Daily Journal, November 2000.

*Attorney's Fees: Landmines, Hazards and Opportunities,* American Lawyer Media Online, Legal Seminars.com, June 1999.

*The Ethics 2000 Project,* Karpman On Ethics, The Beverly Hills Bar Brief, June 1999.

*The Wild Wild West,* Karpman On Ethics, The Beverly Hills Bar Brief, June 1998.

*Professionalism,* Karpman On Ethics, The Beverly Hills Bar Brief, July 1998.

*Prospective Conflicts of Interest,* The California Lawyer, December 1998.

*Bullet Proof Fee Agreements,* California Consumer Attorney's Forum, 1996.

*$10.77 Can Hurt You,* Lawyer's World  (San Fernando Valley Bar) January 1996.

*Letting Lawyers Have Their Say,* The Professional Lawyer (American Bar Association's Center for Professional Responsibility), November 1995.

*Pathological Gambling and Professional Licensure,* The Professional Lawyer (American Bar Association Center for Professional Responsibility), June 1995.

*Letting Lawyers Have Their Say,* Los Angeles Daily Journal, May 1995.

Quarterly column for the Small/Solo Practitioner's Section, California Bar Journal (California State Bar) 1994.

*Trust Account Essentials,* Advocate  (Los Angeles Trial Lawyers), October 1994.

*Looking Out For John Q. Public,* Los Angeles Daily Journal, August 1994.

*Sunshine Could Darken the Profession,* Los Angeles Daily Journal, February 1994.

*The Care and Feeding of Your License* - Professional Responsibility Considerations,  Advocate (Los Angeles Trial Lawyers), February 1994.

*Professionalism v. Free Speech,* State Bar Bulletin, February 1993.

*What To Do When The State Bar Calls,* California Legal Secretary, 1992.

*Attorney Discipline,* Los Angeles Lawyer, February 1992.


## BAR ASSOCIATION COMMITTEE EXPERIENCE:

2019        Los Angeles County Bar Association, Professional Responsibility and
            Ethics Committee.

            Los Angeles County Bar Association, Professional Responsibility and Ethics
            Amicus Briefs.


2018        Beverly Hills Bar Liaison to the California State Bar Rules Revision Commission.

            Beverly Hills Bar Association Trustee Representative to the Los Angeles County
            Bar Association Board of Trustees.

            Los Angeles County Bar Association, Professional Responsibility and
            Ethics Committee.

            Los Angeles County Bar Association, Professional Responsibility and Ethics
            Amicus Briefs.

2017        Beverly Hills Bar Liaison to the California State Bar Rules Revision Commission.

            Beverly Hills Bar Association Trustee Representative to the Los Angeles County
            Bar Association Board of Trustees.

            Los Angeles County Bar Association, Professional Responsibility and
            Ethics Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Amicus Briefs.

2016    Beverly Hills Bar Liaison to the California State Bar Rules Revision Commission.

Beverly Hills Bar Association Trustee Representative to the Los Angeles County Bar Association Board of Trustees.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Amicus Briefs.

2015    Beverly Hills Bar Liaison to the California State Bar Rules Revision Commission.

Beverly Hills Bar Association Trustee Representative to the Los Angeles County Bar Association Board of Trustees.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Amicus Briefs.

2014    President, Beverly Hills Bar Association.

Beverly Hills Bar Association Trustee Representative to the Los Angeles County Bar Association Board of Trustees.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Amicus Briefs.

Member Breakfast Club.

2013    Beverly Hills Bar Association Trustee Representative to the Los Angeles County Bar Association Board of Trustees.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Amicus Briefs.

Member Breakfast Club.

2012        Member, Beverly Hills Bar Association Board of Governors.

Beverly Hills Bar Association Trustee Representative to the Los Angeles County Bar Association Board of Trustees.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Amicus Briefs.

ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

Associate Member, National Organization of Bar Counsel.

California Attorney Civility Task Force.

Member Breakfast Club

2011        Member, Beverly Hills Bar Association Board of Governors.

Beverly Hills Bar Association Trustee Representative to the Los Angeles County Bar Association Board of Trustees.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Amicus Briefs.

ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

Associate Member, National Organization of Bar Counsel.

California Attorney Civility Task Force.

Member Breakfast Club

18

| 2010 | Beverly Hills Bar Liaison to the State Bar Commission for the Revision of the Rules. |
|---|---|
| | Member, Beverly Hills Bar Association Board of Governors. |
| | Secretary-Treasurer, Beverly Hills Bar Association Executive Committee. |
| | Beverly Hills Bar Association Trustee Representative to the Los Angeles County Bar Association Board of Trustees. |
| | Los Angeles County Bar Association, Professional Responsibility and Ethics Committee. |
| | Los Angeles County Bar Association, Professional Responsibility and Ethics Amicus Briefs. |
| | ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board. |
| | Associate Member, National Organization of Bar Counsel. |
| | California Attorney Civility Task Force. |
| | Member Breakfast Club |
| 2009 | Beverly Hills Bar Liaison to the State Bar Commission for the Revision of the Rules. |
| | Member, Beverly Hills Bar Association Board of Governors. |
| | Los Angeles County Bar Association, Professional Responsibility and Ethics Committee. |
| | ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board. |
| | Associate Member, National Organization of Bar Counsel. |
| | California Attorney Civility Task Force. |
| | Member Breakfast Club |
| 2008 | California Attorney Civility Task Force. |
| | Beverly Hills Bar Liaison to the State Bar Commission for the Revision of the Rules. |

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Associate Member, National Organization of Bar Counsel.

Member Breakfast Club.

2007        California Attorney Civility Task Force.

Beverly Hills Bar Liaison to the State Bar Commission for the Revision of the Rules.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Associate Member, National Organization of Bar Counsel.

Member Breakfast Club.

2006        California Attorney Civility Task Force.

Beverly Hills Bar Liaison to the State Bar Commission for the Revision of the Rules.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

ABA/BNA Lawyers' Manual on Professional Conduct, Chair Editorial Board.

Associate Member, National Organization of Bar Counsel.

Member Breakfast Club.

2005        Beverly Hills Bar Liaison to the State Bar Commission for the Revision of the Rules.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

Associate Member, National Organization of Bar Counsel.

20

Member Breakfast Club.

2004      Western State University College of Law Alumni of the Year.

Chair, Beverly Hills Bar Ethics Committee.

Beverly Hills Bar Liaison to the State Bar Commission for the Revision of the Rules.

Chair, Association of Professional Responsibility Lawyers, Corporate Responsibility Committee, SEC Sarbanes-Oxley Committee.

Los Angeles County Bar Association, Amicus Briefs Committee.

Los Angeles County Bar Association, Attorneys Errors and Omissions Prevention Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

Associate Member, National Organization of Bar Counsel.

Member Breakfast Club.

2003      Chair, Beverly Hills Bar Ethics Committee.

Beverly Hills Bar Liaison to the State Bar Commission for the Revision of the Rules.

Chair, Corporate Responsibility Committee, SEC Sarbanes-Oxley Committee.

Los Angeles County Bar Association, Amicus Briefs Committee.

Los Angeles County Bar Association, Attorneys Errors and Omissions Prevention Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

21

Member, National Organization of Bar Counsel.

Member Breakfast Club.

2002      ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

Chair, Beverly Hills Bar Association Ethics Committee, Revision Commission Liaison.

Member, National Organization of Bar Counsel.

Member, Breakfast Club.

2001      Chair, Los Angeles County Bar Committee on Professional Responsibility and Ethics Committee.

ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

Member, National Organization of Bar Counsel.

Past President, Association of Professional Responsibility Lawyers.
Trustee, Los Angeles County Bar Association.

Member, California Coordinating Committee, Ethics 2000.

Liaison, State Bar Board of Governor's Committee on Regulation and Discipline for Los Angeles County Bar, Beverly Hills Bar and San Fernando Valley Bar.

Chair, Ethics 2000 Committee, Beverly Hills Bar Association.

Member, Breakfast Club.

2000      ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

Past President, Association of Professional Responsibility Lawyers.

Member, American Bar Association's Center for Professional Responsibility Publications Board, Professional Lawyer.

Trustee, Los Angeles County Bar Association.

Member, California Coordinating Committee, Ethics 2000.
Member Consultative Group, Restatement of the Law,   The Law Governing Lawyers.

Members Consultant Group, American Bar Association, Ethics 2000 Commission.

Ethics Faxline, pro bono service offered to all members of the California State Bar. Grants received from the California State Bar Foundation and the American Bar Association's Center for Professional Responsibility.

Liaison, State Bar Board of Governor's Committee on Regulation and Discipline for Los Angeles County Bar, Beverly Hills Bar and San Fernando Valley Bar.

Former Commissioner, Commission on Judicial Nominees Evaluation (JNE). The State Bar Commission evaluating appointees and elevations to the bench.

Vice chair, Los Angeles County Bar Committee on Professional Responsibility and Ethics Committee.

Chair, Ethics 2000 Committee, Beverly Hills Bar Association.

Member, Lawyers Club of Los Angeles.

Member, Breakfast Club.

1999          President, Association of Professional Responsibility Lawyers; Program Chair Los Angeles Midyear Meeting, February.

Member, American Bar Association's Center for Professional Responsibility Publications Board, Professional Lawyer.

Member, State Bar Board of Governor's Special Committee to reconsider the Rules of Procedure of the California State Bar.

Commissioner, Commission on Judicial Nominees Evaluation (JNE). The State Bar Commission evaluating appointees and elevations to the bench.

Trustee, Los Angeles County Bar Association.

Member, California Coordinating Committee, Ethics 2000.

Member Consultative Group, Restatement of the Law, The Law Governing Lawyers.

Members Consultant Group, American Bar Association, Ethics 2000. Ethics Faxline, pro bono service offered to all members of the California State Bar. Grants received from the California State Bar Foundation and the American

23

Bar Association's Center for Professional Responsibility.

Liaison, State Bar Board of Governor's Committee on Regulation and Discipline for Los Angeles County Bar, Beverly Hills Bar and San Fernando Valley Bar.

Vice chair, Los Angeles County Bar Committee on Professional Responsibility and Ethics Committee.

Member, Los Angeles County Bar Association Committee on Evaluations of Professional Standards and the State Bar.

Chair, Ethics Committee, Counsel for Legal Referral Service,  Board of Trustees, San Fernando Valley Bar Association.

Chair, Ethics 2000 Committee, Beverly Hills Bar Association.

Member, Culver Marina Bar Association.

Member, Lawyers Club of Los Angeles.

Member, Breakfast Club.

1998          Commissioner, Commission on Judicial Nominees Evaluation (JNE).  The State Bar Commission evaluating appointees and elevations to the bench.

APRL Liaison, American Bar Association's Center for Professional Responsibility Publications Board, Impaired Attorney Commission.

Member Consultative Group, Restatement of the Law,  The Law Governing Lawyers.

Members Consultant Group, American Bar Association, Ethics 2000.

Chair, Ethics Committee, Counsel for Legal Referral Service, Board of Trustees, San Fernando Valley Bar Association.

Chair, Beverly Hills Bar Association Ethics Committee.

Member, Beverly Hills Bar Association Conference of Delegates. Cosponsor with Los Angeles County Bar Association of Rule 4-100 Modification.
Chair, Ethics 2000 and Members Consultant Group Representative.

Secretary, Association of Professional Responsibility Lawyers.

24

Secretary, Los Angeles County Bar Committee on Professional Standards.

Member,  Los Angeles County Bar Association Committee on Evaluation of Professional Standards and the State Bar.

Member, Culver Marina Bar Association.

Member, Lawyers Club of Los Angeles.

Reporter,  Future of the Profession (FOP), committee of local bar associations evaluating the establishment of another type of unified bar, or a voluntary state wide lawyer's association.

Liaison, State Bar Board of Governor's Committee on Regulation and Discipline for Los Angeles County Bar Association, Beverly Hills Bar Association and San Fernando Valley Bar Association.

Ethics Faxline, pro bono service offered to all members of the California State Bar. Grants received from the California State Bar Foundation and the American Bar Association's Center for Professional Responsibility.

Board of Editors, American Bar Association Professional Lawyer.

Member, Consumer Attorneys of Los Angeles Education Committee.

Member, Breakfast Club.

Recipient of the Lichtig Award, Beverly Hills Bar Association, for outstanding contributions to the Resolutions Committee.

1997    Co-vice chair, American Bar Association Center for Professional Responsibility Publications Board.

Treasurer, Association of Professional Responsibility Lawyers.

Board of Editors, American Bar Association Professional Lawyer.

Member,  Los Angeles County Bar Association Committee on Evaluation of Professional Standards and the State Bar.

Member, Los Angeles County Bar Association Committee on Evaluation of Professional Standards and the State Bar.
Member, Beverly Hills Bar Association Board of Governors.

Chair, Beverly Hills Bar Association Ethics Committee, Conference of Delegates.

Chair, San Fernando Valley Bar Ethics Committee, State Bar Relations.

Member, Board of Trustees, San Fernando Valley Bar Association.

Member, Consumer Attorneys of Los Angeles Education Committee.

Member, Breakfast Club.

1996       Chair, California State Bar Minimum Continuing Legal Education Committee.

Co-chair, American Bar Association Client Security Fund Forum, Chicago.

Co-chair, Consumer Attorneys Association of Los Angeles Committee on Professional Standards.

Member, Association of Professional Responsibility Lawyers Board of Directors.

Member, American Bar Association Standing Committee on Lawyer Responsibility for Client Protection.

Member, Beverly Hills Bar Association Board of Governors.

Member, Beverly Hills Bar Association Resolutions and Legislation Committees. Draftsperson of "20 Meet and Confer Resolution," adopted by the State Bar of California Office of Trial Counsel.

Liaison, State Bar Board of Governor's Committee on Regulation and Discipline for Los Angeles County Bar Association, Beverly Hills Bar Association and San Fernando Valley Bar Association.

Member, Los Angeles County Bar Association Committee on Evaluation of Professional Standards and the State Bar.

Member, Los Angeles County Bar Association Committee on Professional Standards and State Bar.

Member, Consumer Attorneys of Los Angeles Education Committee.

Member, American Bar Association's Center for Professional Responsibility Publications Board.

Member, Los Angeles County Bar Association Committee on Evaluation of

Professional Standards and the State Bar.

Chair, Beverly Hills Bar Association Ethics Committee.

Member, Beverly Hills Bar Resolutions Committee and Legislation Committee.

Member, San Fernando Valley Bar Association.

Member, Breakfast Club.

1995    Chair, Audit Subcommittee of the California State Bar Minimum Continuing Legal Education Committee.

Vice-chair, Association of Professional Responsibility Lawyers' Committee on the Unauthorized Practice of Law.

Chair, Beverly Hills Bar Association Ethics Committee.

Member, Beverly Hills Bar Resolutions Committee and Legislation Committee Draftsperson, Right to Receive Exculpatory Evidence, Business and Professions Code section 6085 (b), Statute of Limitations on Discipline (informally adopted as the Period of Limitations by then-State Bar President James Towery).

Liaison, State Bar Board of Governor's Committee on Regulation and Discipline for Los Angeles county Bar Association, Beverly Hills Bar Association and San Fernando Valley Bar Association.

Co-chair, Consumer Attorneys Association of Los Angeles Committee on Professional Standards.

Member, Board of Directors, Association of Professional Responsibility Lawyers.

Member, California State Bar Minimum Continuing Legal Education Committee.

Member, American Bar Association Standing Committee on Lawyers Responsibility for Client Protection.

Member, Board of Governors, Consumer Attorneys Association of Los Angeles, Education Committee and Liaison to the State Bar Board of Governors' Discipline, Admissions and Competency Committees.

Member, American Bar Association Center for Professional Responsibility Publications Board.

| | |
|---|---|
| 1994 | Member, American Bar Association Center for Professional Responsibility Publications Board. |
| | Member, American Bar Association Standing Committee on Lawyer Responsibility for Client Protection. |
| | Member, Association of Professional Responsibility Attorneys, Board of Trustees. |
| | Consultant, New Jersey Bar Association on reorganization of the New Jersey attorney disciplinary system. |
| | Member, California State Bar Minimum Continuing Legal Education Committee. |
| | Member, Los Angeles County Bar Association Professional Standards Committee. |
| | Member, Los Angeles County Bar Association State Bar Relations Committee. |
| | Member, Consumer Attorneys Association of Los Angeles, Board of Governors. |
| | Member, Beverly Hills Bar Association, Board of Governors. |
| 1993 | Member, California State Bar Minimum Continuing Legal Education Committee. |
| | Member, American Bar Association Standing Committee on Lawyer Responsibility for Client Protection. |
| | Member, Los Angeles County Bar Association State Bar Relations Committee. |
| | Member, Los Angeles County Bar Association Professional Responsibility and Ethics. |
| | Member, Beverly Hills Bar Resolutions Committee and Legislation Committee Draftsperson, modify Business and Professions Code sections 6147 and 6148. |
| | Recipient, Beverly Hills Bar Association Executive Director's Award. |
| 1992 | Member, Association of Professional Responsibility Attorneys Board of Trustees. |
| | Member, Los Angeles County Bar Association Ethics Committee. |
| | Member, Beverly Hills Bar Association Resolutions Committee. |
| 1991 | Member, Beverly Hills Bar Executive Committee on Law Practice Management. |

28

1986-1989     Member, California State Bar Consortium on Lawyer Performance.
              Member, California State Bar Committee for the Administration of the Rules
              Governing Practical Training of Law Students.

1982-1984     Member, Special State Bar Committee on the Practical Training of Law Students.
              Assisted in writing the rule governing this area, adopted by the California Supreme
              Court in 1983.

1981          Consultant to Special California State Bar Committee on the Practical Training of
              Law Students. (Adopted by the California Supreme Court in 1983).


## MCLE RELATING TO PROFESSIONAL RESPONSIBILITY AND COMPETENCY:

2019          UCLA Entertainment Law Symposium, "Representation is Not a Handshake
              Deal." March

              Los Angeles County Bar Association, Labor & Employment Law Symposium,
              "How to Avoid Ethical Pitfalls in Your Employment Practice." March.

              2019 Annual International MCLE Fair, London, England. "Really Interesting
              Lawyer Stuff." January.

2018          U.S. District Court, ADR Program. "(New) Revised Rules of Professional
              Conduct." Diane Karpman and Dominique Snyder. November.

              Defense Research Institute, San Diego. "Ethics Issues For Workers'
              Compensation." October.

              San Fernando Valley Bar Association. "Revised Rules of Professional Conduct."
              Diane Karpman, Rebecca Meyer Rosenberg and Dominique Snyder. October.

              Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff,
              The Year in Review." January.

2017          Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff,
              The Year in Review." November.

              Association of Professional Responsibility Lawyers, Annual Meeting, New York,
              New York. "Declining, Terminating, and Withdrawal from Representation Under
              MR 1.16, CA 3-700. August.

              ABA Webinar "Avoiding Traps and Pitfalls: The Ethical Dilemmas of the Solo
              Practitioner." June.

2017 Annual International MCLE Fair, London, England. "Really Interesting Lawyer Stuff." January.

Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff, The Year in Review." January.

2016    Beverly Hills Bar Association. " Really Interesting Lawyer Stuff, The Year in Review." November.

Beverly Hills Bar Association. "Really Interesting Lawyer Stuff, The Year in Review." September.

Association of Professional Responsibility Lawyers, Annual Meeting, San Francisco, California. "Admissions Cases of Interest." August.

State Bar of California Litigation Webinar. "Indecent Contact: Ethical Challenges with Contacts with Putative Class Members." January.

Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff, The Year in Review." January.

2015    American Bar Association, Center for Professional Responsibility. "ABA Webinar: Ethical Issues Involved in Disaster Planning for Lawyers." February.

Association of Professional Responsibility Lawyers, Mid-Year Meeting, Houston, Texas. "Expert Witnesses." February.

Beverly Hills Bar Association. "Ethical and Malpractice Issues For The Entertainment Attorney." January.

Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff." January.

State Bar of California Webinar: "Indecent Contact: Ethical Challenges with Contacts with Putative Class Members." January.

2014    Los Angeles County Bar Association Professional Responsibility & Ethics Committee. "Ethics - All You Need to Know - 2014." December.

Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff." November.

Beverly Hills Bar Association, Solo & Small Firm Section. "Marketing Your Law Firm - Ethically. November.

State Bar of California 87th Annual Meeting. "Really Interesting Lawyer Stuff." San Diego, CA. September.

Association of Professional Responsibility Lawyers, Annual Meeting, Boston. "Tricky Ethics Issues for Insurance Defense Lawyers." August.

Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff." January.

2014 Annual International MCLE Fair, London, England. "Really Interesting Lawyer Stuff." January.

2013   Beverly Hills Bar Association. "The Daily Moral Dilemma, Proper and Improper Billing Practices." November.

Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff." November.

State Bar of California 86th Annual Meeting, "Really Interesting Lawyer Stuff." San Jose, CA October.

Grancell, Stander, Reubens, Thomas & Kinsey. "Recent Developments and Cases - Workers' Compensation. October.

Beverly Hills Bar Association Extravaganza. "Significant Developments in Lawyer Law." January.

2012   Los Angeles County Bar Association. "Ethics - All You Need to Know." December.

Beverly Hills Bar Association Extravaganza. "Significant Developments in Lawyer Law." November.

Beverly Hills Bar Association. "Really Interesting Lawyer Stuff - Fair Deal for all Clients: How to Rekindle Pride in the Legal Profession." October.

State Bar of California 85th Annual Meeting, "Really Interesting Lawyer Stuff." October.

State Bar of California 85th Annual Meeting, Association of Discipline Defense Counsel Panel. "Hot Topics in the World of Ethics." October.

American Academy of Matrimonial Lawyers. "Avoiding Malpractice Claims." August.

31

Association of Professional Responsibility Lawyers, Mid-Year Meeting, New Orleans, Louisiana. A Discussion of Tom Morgan's "The Vanishing American Lawyer." February.

Los Angeles County Bar Association. "How Good Lawyers End Up in Trouble With the State Bar." January.

Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff." January.

2011   Beverly Hills Bar Association - Business Law Section. "Hot Ethical Topics of Interest for Business Lawyers." December.

Beverly Hills Bar Association - Foundation Series. "Principles of Client Trust Accounts, Developing Trends and Hot Topics Current Matters of Interest to Lawyers." November.

State Bar of California 84th Annual Meeting, Long Beach, California. "Really Interesting Lawyer Stuff, Recent Developments & Cases." September.

Association of Professional Responsibility Lawyers, Mid-Year Meeting, Atlanta, Georgia. "Ethics Issues in Legal Writing." February.

Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff." January.

Los Angeles County Bar Association. "Ethics - All You Need to Know." January.

2010   Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff." November.

Beverly Hills Bar Association. "Really Interesting Lawyer Stuff, Recent Developments and Cases." October.

Beverly Hills Bar Association. "Really Interesting Lawyer Stuff, Recent Developments & Cases." September.

State Bar of California 81st Annual Meeting, Monterey, California. "Really Interesting Lawyer Stuff, Recent Developments & Cases." September.

American Intellectual Property Law Association Spring Meeting, New York. "Understanding Conflict Waivers - Their Rules, Scope and Effect." May.

Association of Professional Responsibility Lawyers, 20th Anniversary Program, New Orleans, Louisiana. "The Opinion Letter: Objective Ethics Advice Or CYA Insurance." April.

Los Angeles County Bar Association: Nuts & Bolts, "Professional Responsibility/Ethics." January.

Beverly Hills Bar Association, "Really Interesting Lawyer Stuff - Trends and Hot Topics. Current Matters of Interest to Lawyers, Ethics Opinions." January.

Los Angeles County Bar Association Professional Responsibility and Ethics Committee, "Really Interesting Lawyer Stuff About Fees." January.

2009    Beverly Hills Bar Family Law Inn of Court, "Ethics and Substance Abuse." December.

Beverly Hills Bar Association, "Really Interesting Lawyer Stuff - Trends and Hot Topics. Current Matters of Interest to Lawyers, Ethics Opinions." December

Beverly Hills Bar Association Extravaganza, "Really Interesting Lawyer Stuff." November.

Beverly Hills Bar Association, "Really Interesting Lawyer Stuff - Trends and Hot Topics. Current Matters of Interest to Lawyers, Ethics Opinions." October.

Beverly Hills Bar Association, "Really Interesting Lawyer Stuff - The Ethics of Terrorism." September.

Conference of California Bar Associations Ethics Panel, "Justice and National Security." September.

Conference of Delegates of California Bar Association, "The Media and Ethics." May.

State Bar of California Webinair, "Loan Modifications and Short Sales: Do's and Don't for Attorneys and Real Estate Brokers." March.

American Bar Association Webinair, "Ethical Effective Fee Agreements: Establishing a Clear Relationship and Avoiding Common Pitfalls." March.

Beverly Hills Association Extravaganza, "Really Interesting Lawyer Stuff - The Ethics of Fee Agreements & Billing." January.

2008    American Bar Association Law Practice Management Section Webinair, "Ethical

Issues in Documenting the Lawyer-Client Relationship." December.

ABA Connection Teleconference, "Top Tips for Avoiding Malpractice Claims." December.

Los Angeles County Bar Association, "Really Interesting Lawyer Stuff About Fees - Ethics 2008 Keeping Current in a World of Change." December.
Beverly Hills Bar Association Extravaganza, "Really Interesting Lawyer Stuff - The Ethics of Fee Agreements & Billing." November.

Walter F. George School of Law & Mercer Law Review, Macon Georgia, "Ethics and Professionalism in the Digital Age." November.

Beverly Hills Bar Association, "Really Interesting Lawyer Stuff - Recent Developments and Cases." October.

Beverly Hills Bar Association, "Really Interesting Lawyer Stuff - Recent Developments and Cases." September.

State Bar of California 81st Annual Meeting, Monterey: "Really Interesting Lawyer Stuff - Recent Developments and Cases." September.

24th ABA National Forum on Client Protection, Boston: "Disclosure of Professional Liability Insurance." May.

Association of Professional Responsibility Lawyers, Fifth International Meeting, Amsterdam, Netherlands: "Detention and Rendition: Governmental Limitations on the Lawyer-Client Relationship." May.

State Bar of California 12th Annual Ethics Symposium, San Francisco: "Ethical Issues in Class Actions and Derivative Litigation." May.

Champions of Justice Radio Show, KRLA Los Angeles, "Legal Ethics." April.

Legal Publishing Group of Strafford Publications: Teleconference, "Ethical Risks of Online Communications by Law Firms." March.

American Bar Association: Teleconference, "Advertising for the Next Generation." March.

Legal Malpractice & Risk Management Conference, Chicago: "Stump the Panel." February.

American Bar Association: Government & Public Section Lawyers Division,

"Ethical Considerations in Public Sector Law."  February.

Los Angeles County Bar Association: Nuts & Bolts, "Essential Tools for Lawyers."  January.

Beverly Hills Bar Association: "Really Interesting Lawyer Stuff" - The Best and Worst of 2007.  January.

2007          Beverly Hills Bar Association: "Really Interesting Lawyer Stuff."  December.

Loyola Law School, Special IP Focus Series: "Conflicting Views of In-House and Outside Counsel as to What Constitutes a 'Conflict of Interest' and Under What Circumstances Can and Should They be Waived."  November.

ABA Connection Teleconference: "The Top Ethics Traps for Lawyers."  November.

Los Angeles Paralegal Association: "Not Just Your Attorney's Responsibility."  November.

Skadden, Arps, Slate, Meagher & Flom, LLP: "Aggregate Litigation Issues."  October.

State Bar of California 80th Annual Meeting, Anaheim: "Really Interesting Lawyer Stuff."  September.

Association of Professional Responsibility Lawyers Annual Meeting, Chicago: "Something for Everyone."  August.

Association of Professional Responsibility Lawyers Annual Meeting, Chicago: "Small and Solo Discipline."  August.

Beverly Hills Bar Association: "Aggregate Litigation Issues."  July.

Beverly Hills Bar Association: "Recent Cases Have Pushed Conflicts Over the Edge."  June.

33rd National Conference on Professional Responsibility: "The Ethics of Aggregate Settlements" Panel.  May.

Beverly Hills Bar Association: "Technology Issues, Is Email Ever Dead?"  May.

Beverly Hills Bar Association: "Using Support Staff and Staying Out of Trouble",  April.

35

U.S.C. Law School: "Really Interesting Lawyer Stuff, Basic Ideas." April.

Legal Malpractice & Risk Management Conference, Chicago: "Stump the Panel." March.

Consumer Attorneys of California, Legal Ethics with Special Ethical Issues for the Trial Lawyer. January.

Beverly Hills Bar Association MCLE Extravaganza: "Ethical and Legal Obligations." January.

2006      Beverly Hills Bar Association MCLE Extravaganza: "Ethical and Legal Obligations." November.

State Bar of California 79th Annual Meeting, Monterey, California: "Recent Developments and Cases." October.

County Counsels' Association of California 2006 Annual Meeting, Marina del Rey, California: "Whistle-Blowing Attorneys: The Debate Continues." September.

Association of Professional Responsibility Lawyers Annual Meeting, Santa Monica, California: "Another Program Ripped From the Headlines - Ethics Issues Inspired by the Pellicano Investigation." July.

Los Angeles County Bar Family Law Section: "Techno Ethical Issues in Family Law." May.

Legal Malpractice & Risk Management Conference, Chicago: "Stump the Experts Panel." February.

Beverly Hills Bar Association: "Legal Ethics With a Focus on Real Property." January.

Los Angeles County Bar Criminal Justice Section: "Ethics in the Legal Profession." January

Western State University Alumni Association: "Ethics in the Legal Profession." January.

Beverly Hills Bar Association: "Ethics in the Legal Profession." January.

Orange County Inn of the Court: "Ethics in the Legal Profession." January.

2005   Los Angeles County Bar Association, Professional Responsibility & Ethics Committee: "Ethics 2005 - Keeping Current in a World of Change."  December.

Continuing Education of the Bar, West Hollywood: "The Legal Ethics of Privacy Law."  November

Beverly Hills Bar Association: "Withdrawal Without Legal Malpractice of State Bar Repercussions."  October.

Harris Martin Benzene Litigation Conference: "Settling a Benzene Case: The Ethical Minefield."  September.

Cotkin, Collins & Ginsburg, Roundtable Discussion: "Handling Complex Legal Malpractice Cases."  September.

State Bar of California 78th Annual Meeting, San Diego: "Really Interesting Lawyer Stuff, Recent Developments and Cases."  September.

Beverly Hills Bar Association: "Review of Recent Interesting Ethics Cases." September.

Beverly Hills Bar Association: "Consent Drafting and Use of a Prospective Consent in Your Fee Agreements."  August.

American Bar Association, Insurance Coverage Litigation Committee: "The Tripartite Relationship: Reality or Just a Nightmare?"  Tucson, Arizona.  March.

Association of Professional Responsibility Lawyers Mid-Year Meeting, Salt Lake City, Utah: "Predicting the Future and Other Mysteries: Dealing with Advance Conflict Waivers."  February.

Los Angeles County Bar Association, Intellectual Property & Entertainment Law Section: "Attorney Ethics and Other Oxymorons of Professional Responsibility-Focusing on Intellectual Property Entertainment, and Technology."  January.

Beverly Hills Bar Association: "Ethics in the Legal Profession."  January.

Los Angeles County Bar Association, 2005 Nuts & Bolts Basic Litigation Skills: Essential Tools for Lawyers: "Access to the Courts for People with Disabilities" And "Practical Aspects of Professional Responsibility - Issues of Disqualification, Discipline and Defense to Malpractice Claims."  January.

Continuing Education of the Bar, San Diego: "Navigating the Disciplinary Process."  January.

2004   Beverly Hills Bar Association: "Really Interesting Lawyer Stuff." December.

Los Angeles County Bar Association Ethics 2004: "Ethics as Affecting Pocket Book Issues." November.

Beverly Hills Bar Association MCLE Extravaganza: "Really Interesting Lawyer Stuff." November.

Find Law Business Development Conference, Las Vegas: "The Boundaries for Lawyer Advertising and Solicitation." October.

State Bar of California Annual Meeting, Monterey: "Really Interesting Lawyer Stuff," and "Access for All: The Implications of Disabilities on the Practice of Law." October.

Beverly Hills Bar Association: "Really Interesting Lawyer Stuff." Judicial Recusal - Justice Scalia and Vice President Cheney duck hunting. The difference between appearance of impropriety and attorney conflicts. Inadvertent received electronic communications, memo gate at the Senate. April.

Glendale Bar Association Seminar: "Really Interesting Lawyer Stuff." April.

Beverly Hills Bar Association: "Really Interesting lawyer Stuff." Criminal Legal Malpractice. Could Martha Stewart sue? Enhanced duties of honesty to Governmental authorities. Enhanced duties of honesty in State Bar investigations. March.

Orange County Bar Association's 12th Annual MCLE Last Dash: "Really Interesting Lawyer Stuff All Ethics - All The Time." January.

Los Angeles County Bar Immigration Section: "Immigration Ethics Issues, Survey of Significant Cases 2000 - 2004." January.

Continuing Education of the Bar, Los Angeles: "Avoiding Malpractice in the Representation Process: Getting In and Getting Out." January.

Continuing Education of the Bar, Garden Grove: "Avoiding Malpractice in the Representation Process: Getting In and Getting Out." January.

Beverly Hills Bar Association: "Third Party Cases." January.

2003   Los Angeles County Bar Association, 2003 Nuts & Bolts: "A Toolbox for Malicious Prosecution: The Essence and Ethics of the Claim." December.

Beverly Hills bar Association: "Really Interesting Lawyer Stuff." December.

Beverly Hills Bar Association Extravaganza: "Really Interesting Lawyer Stuff." November.

Beverly Hills Bar Association: "Getting In and Getting out." November.

Orange County Bar Association: "Ethics of Insurance Defenses." August.

Beverly Hills Bar Association: "Recent Cases." June.

Anderson, McPharlin & Conners, LLP: "Really Interesting Lawyer Stuff." June.

Beverly Hills Bar Association: "2003 Fee Agreement Tune Up." May.

ABA Center For continuing Legal Education: "Ethical Responsibilities When Representing Clients in the Healthcare Industry. May.

West Coast Casualty Construction Defect Seminar: "Ethical Issues and the Burning Limits Policy." May.

Beverly Hills Bar Association: "2003 Fee Agreement Tune Up." May.

ABA Center For Continuing Legal Education: "Ethical Responsibilities When Representing Clients in the Healthcare Industry." May.

West Coast Casualty Construction Defect Seminar: "Ethical Issues and the Burning Limits Policy." May.

UCLA Extension Entertainment Studies: "ADR Malpractice and Ethics Alert - Did You Inform Your Client of the ADR Alternative?" May.

Beverly Hills Bar Association: "Perils and Pitfalls of Entity Representation." April.

California Society For Healthcare Attorneys: "Ethics in the Healthcare Legal Profession." April.

Beverly Hills Bar Association: "Malicious Prosecution v. Lawyers." March

Beverly Hills Bar Association: "Annual Current Business Law Developments." January.

Los Angeles County Bar Law Practice Network: "Catch of the Day - Catch 22."

Orange County Bar Association: "Really Interesting Lawyer Stuff, All Ethics All the Time."  January.

Beverly Hills Bar Association Entertainment Law Section: "Year in Review, Update of the Law."  January.

Beverly Hills Bar Association Extravaganza: "Ethics 2003 - Truly Amazing Lawyer Stuff."  January.

U.S. Army, Judge Advocate Generals' Corps, 78th Legal Support Organization, Long Beach: "Really Interesting Lawyer Stuff."  January.

Lawyers Club of Los Angeles: "Really Interesting Lawyer Stuff."  January.

2002    Los Angeles County Bar Association, 2002 Nuts & Bolts: "Malicious Prosecution in California."  December.

Beverly Hills Bar Association: "Class/Multi-Party Group Representation." November.

Beverly Hills Bar Association MCLE Extravaganza: "Ethics 2003 - Truly Interesting, Truly Amazing Lawyer Stuff."  November.

Beverly Hills Bar Association, Alternative Dispute Resolution Section: "Is It Malpractice If An Attorney Fails To Advise A Client About ADR?"  October.

Beverly Hills Bar Association: "Set Me Free."  October.

State Bar of California, Annual Meeting, "Really Interesting Lawyer Stuff." and "Ethical Obligations for Client Trust Accounting."  October.

Dependency Court Legal Services, "Conflicts."  September.

Consumer Attorneys of Los Angeles, Annual Meeting, Las Vegas: "Ethics of Client Control."  August.

Beverly Hills Bar Association: "Law Office Management/Ethics."  July.

Beverly Hills Bar Association: "Conflicts of Interest - How to Draft and Obtain Consents."  June.

American Bar Association 28th National Conference on Professional

Responsibility, Vancouver, British Columbia: "Duties to Non-Clients."  June.

Los Angeles County Bar Association: "The Insurance Crisis for Lawyer." June.

Beverly Hills Bar Association: "Emerging Enron Type Issues Involving Third Party Claims."  May.

Beverly Hills Bar Association: "Fee Agreement Tune Up."  April.

Consumer Attorneys of California, 41st Annual Convention, San Francisco: "Legal Ethics, Bias and Substance Abuse."  April.

City Attorneys Association of Los Angeles County: "Attorney Conflicts, Ethical Walls, Moving Between the Public and Private Sectors."  March.

Beverly Hills Bar Association: "Rule 2-100 - The Anti-Contact Rule, How Far Can You Go?"  March.

Beverly Hills Bar Association - Business Law Section: "Really Interesting Lawyer Stuff."  February.

Beverly Hills Bar Association: "Fee Agreement Tune Up."  February.

Black Women Lawyers Association of Los Angeles: "Really Interesting Lawyer Stuff."  January.

Beverly Hills Bar Association: "Class Actions."  January.

Lawyers Club of Los Angeles: "Really Interesting Lawyer Stuff."  January.

U.S. Army, Judge Advocate Generals' Corps, 78th Legal Support Organization, Annual Meeting, Long Beach: "Really Interesting Lawyer Stuff."  January.

2001    Practising Law Institute, San Francisco: "Recent Developments in Professional Responsibility and Professional Liability." December.

Beverly Hills Bar Association: "Really Interesting Lawyer Stuff."  December.

Glendale Bar Association: "Really Interesting Lawyer Stuff."  December.

CLE International: "Taking Stock & Getting Out."  November.

Malibu Bar Association: "Ethics & Technology, Multijurisdictional Practice Issues, Conflict Consents."  October.

Beverly Hills Bar Association: "Technology Free Fall."  October.

Continuing Education of the Bar, Los Angeles: "The 21st Century Law Office: Running a Successful Law Practice in the New Economy." September.

Continuing Education of the Bar, San Diego: "The 21st Century Law Office: Running a Successful Law Practice in the New Economy." September.

Continuing Education of the Bar, Garden Grove: "The 21st Century Law Office: Running a Successful Law Practice in the New Economy." September.

Los Angeles County Bar Association, Intellectual Property & Entertainment Law Section: "Lawyers as Entertainment Negotiators: Is it the Practice of Law?" September.

University of Southern California Law School & Beverly Hills Bar Association, Forty-Seventh Annual Entertainment Law Institute: "Enforcing Lawyer Percentage Agreements." September.

Consumer Attorneys of Los Angeles, Annual Meeting, Las Vegas: "Stories About Notorious Lawyers." September.

Association of Professional Responsibility Lawyers Annual Meeting, Chicago, Illinois: "Conflicts in Class Actions." August.

American Bar Association, National Organization of Bar Counsel, Chicago, Illinois: "Bias in Discipline." August.

Women Lawyers Association of Los Angeles: "Ethics & Ethnicity Tactical & Ethical Considerations in Cross-Cultural Client Representation." July.

Black Women Lawyers Association of Los Angeles: "Ethics & Technology."July.

American Bar Association 27th National Conference on Professional Responsibility, Miami Beach, Florida: "Proportionality of Disciplinary Sanctions to the Seriousness of the Violation." June.

Beverly Hills Bar Association & UCLA School of Law, California Seize the Future Conference: "Forces Internal to the Profession." May.

Los Angeles County Bar & National Association of Counsel for Children: "Do the Right Thing: Ethical Considerations in the Representation of Children." April.

Glendale Bar Association: "Ethics and Technology."  April.

Eastern Bar Association: "Ethics."  April.

The State Bar of California: Brown Bag With State Bar Court.  March.
Beverly Hills Bar Association: "Really Interesting Lawyer Stuff, Ethically Getting Paid." March.

Beverly Hills Bar Association: "Ethics and Technology."  February.

American Bar Association Center for Professional Responsibility Midyear Meeting, San Diego, California: "Bundling and Unbundling of Legal Services." February.

Orange County Bar Association, Insurance Law Section: "The Ethics of Insurance Defense."  January.

HIV & AIDS Legal Services Alliance: "Legal Services, Ethical Issues."  January.

San Diego Bar Association: "Multijurisdictional Practice Issues, A Synopsis of Problems."  January.

Beverly Hills Bar Association: "Recent Cases."  January.

Rushfeldt, Shelley & Drake: "Ethics Update 2001."  January.

Beverly Hills Bar Association: "Ethics - A Review of Significant Cases & Practical Aids to Assist You Into the Future."  January.

San Fernando Valley Bar Association: "Ethics Update 2001."  January.

CLE International: "Hot Topics in California."  January.

Practicing Law Institute, Los Angeles: "Avoiding Common Ethical Pitfalls." January.

Akin, Gump, Strauss, Hauer & Feld: "Ethics Update 2001."  January.

Beverly Hills Bar Association: "Ethics 2000 - Great Year for the Law of Lawyering."  January.

2000    Practising Law Institute, San Francisco: "Avoiding Common Ethical Pitfalls." December.

Beverly Hills Bar Association: "Conflict Consent Drafting Workshop." November.

Los Angeles County Bar Association: "Emerging Issues of Third Party Liability." November.

Consumer Attorneys of California: "Ethics: A Class Act." November.

American Lawyer Media/The Recorder: "Lawyering in the Online Age." November.

Riverside Bar Association: "Legal Ethics in the New Millennium." October.

Beverly Hills Bar Association: "Insurance Defense Issues." October.

Robins, Kaplan, Miller & Ciresi: "Really Interesting Lawyer Stuff." October.

State Bar of California, Annual Meeting: "Really Interesting Lawyer Stuff (6[th] Edition!!)." September.

Law.com, On Line Seminar: "Ethics and the Internet." September.

California Women Lawyers Conference: "Getting Your Clients to Pay." July.

Wilshire Bar Association: "Breach of Fiduciary Duty and Conflicts." July.

American Bar Association Center for Professional Responsibility National Conference, New Orleans, Louisiana : "Big Brother Is Watching You - The Imposition of Discipline for Purely Private Conduct." June.

The State Bar of California Committee on Professional Responsibility and Conduct, Fourth Annual Statewide Ethics Symposium, Fullerton, California: "Conflicts of Interest - Screening." June.

Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone: Complex conflicts of interest in Insurance Defense representation to and including the tripartite relationship; duties owed to the insured and assured; issues involving bad faith pursuant to *Merritt v. Reserve Insurance* (1973) 34 Cal. App. 3d 858. June.

Contra Costa County Bar Association: "Ethics and Technology." February.

Eastern Bar Association: "Lawyer Law - 2000." February.

San Fernando Valley Bar Association/Lawyers' Mutual Insurance: "Lawyer

Law - 2000." January.

Continuing Education of the Bar, Anaheim: "Getting In and Getting Out."January.

Orange County Bar Association: "Really Interesting Lawyer Stuff." January.

Lawyers Club of San Diego: "What To Do When the State Bar Calls."
January.

Continuing Education of the Bar, Los Angeles: "Getting In and Getting Out."
January.

Beverly Hills Bar Association/Lawyers' Mutual Insurance: "Ethics 1999 -
Great Year for Law of Lawyering." January.

Continuing Education of the Bar, San Diego: "Getting In and Getting Out."
January.

Beverly Hills Bar Association: "Withdrawal." January.

1999      Beverly Hills Bar Association: "The Exploding Area of Malicious Prosecution."
December.

Rushfeldt, Shelley & Drake: "Attorney-Client Privilege/Work Product
Privilege." November.

Beverly Hills Bar Association: "Attorney-Client Privilege/Work Product
Privilege."  November.

Beverly Hills Bar Association: "Significant Recent Cases, Conflicts and
Disgorgement of Fees."  October.

Consumer Attorneys of Los Angeles, Annual Meeting, Las Vegas: "Revisiting the
Fee Agreement."  October.

State Bar of California, Annual Meeting: "Really Interesting Lawyer Stuff."
October.

Early, Maslach, Price & Baukol: "Really Interesting State Bar Stuff." July.

Beverly Hills Bar Association: "Talking to the Media - as Commentators, or for
the Client." June.

Heenan Blaikie: "Legal Ethics." May.

Beverly Hills Bar Association: "Civility v. Ramboesque Tactics." May.

Beverly Hills Bar Association: "Conflicts of Interest - Consents - Recent Cases." April.

Beverly Hills Bar Association: "Fee Agreement Tune Up." March.

American Bar Association Center for Professional Responsibility, National Organization of Bar Counsel, Association of Professional Responsibility Lawyers, Joint Program: "Issues Involving Multi-Disciplinary Practice" with Professor Charles Wolfram. February.

Association of Professional Responsibility Lawyers: "Ethics for Ethicists" with Professor Samuel Dash. February.

Orange County Bar Association: "Recent Cases, Amazing Stories." January.

U.S. Army, Judge Advocate Generals' Corps, 78th Legal Support Organization, Annual Meeting, Long Beach: "Hot Topics in Ethics, Amazing Stories." January.

Culver Marina Bar Association: "Hot Topics in Ethics." January.

Eastern Bar Association: "Recent Cases, Amazing Stories." January.

Lawyers Club of Los Angeles: "Legal Ethics." January.

Beverly Hills Bar Association: "Representing Corporations, Partnerships, Groups - Rule 3-600." January.

1998 San Fernando Valley Bar Association, M.C.L.E. Roundup: "Really Interesting Lawyer Stuff." December.

Rushfeldt, Shelley & Drake: "State Bar Inquirer, Amazing Stories." December.

Beverly Hills Bar Association. "The Demise of the State Bar and its Impact Upon the Growth of De Minimis Malpractice Claims. How to Protect Yourself." December.

San Bernardino County Bar Association: "State Bar Inquirer, Hot Topics in Professional Responsibility." November.

Beverly Hills Bar Association. "All New Amazing Lawyer Stories from the Annals of Attorney Discipline Cases." November.

University of West Los Angeles Law School: "Getting and Keeping Your License."   October.

San Fernando Valley Bar Association: "Current Topics in Professional Responsibility."   October.
San Fernando Valley Bar Association: "Malpractice Prevention."   October.

Beverly Hills Bar Association. "Conflicts - Representing Entities, Small Corporations, Focusing on Recent Cases."   October.

State Bar of California, Annual Meeting: "Really Interesting Lawyer Stuff." September.

Consumer Attorneys of Los Angeles, Annual Meeting, Las Vegas:  "The Nexus," "Discipline," and "Malpractice and the State Bar."   September.

Lewis, D'Amato, Brisbois & Bisgaard: "Advance Conflicts of Interest." September.

Beverly Hills Bar Association: "The Ethics of Firm, Corporate, LLP Dissolutions: Winding Down, the Clients and the Fiduciary Obligations, Recent Cases." September.

Association of Professional Responsibility Lawyers, Toronto, Canada: "Ethics Computer Research."   July.

Culver Marina Bar Association: "Advertising and Technology."   June.

Beverly Hills Bar Association: "The Ethics of Settlement."   June.

Beverly Hills Bar Association. "In Business With the Client - Are You In For A Surprise!"  May.

Lawyers Club of Los Angeles: "Really Interesting Lawyer Stuff."   April.

Beverly Hills Bar Association.  "Multiple Client Waivers - Advanced Conflicts of Interest."  April.

Western San Bernardino Bar Association: "State Bar Inquirer,  Hot Topics in Professional Responsibility,  Trust Accounts."   April.

Los Angeles Criminal Courts Bar Association: "You Wanna Bet?"   April.

47

Beverly Hills Bar Association.   "Attorney-Client Relationship." March.

Ventura County Bar Association: "Hot Topics in Professional Responsibility," Status of the State Bar," and "State Bar Inquirer."   January.

San Fernando Valley Bar: "Really Interesting Lawyer Stuff."   January.
Lawyers Club of Los Angeles: "Really Interesting Lawyer Stuff."   January.

Beverly Hills Bar Association, M.C.L.E. Extravaganza: "Really Interesting Lawyer Stuff."   January.

Orange County Bar Association: "State Bar Discipline" and "The Status of the Bar."   January.

Beverly Hills Bar Association. "Last Chance MCLE Extravaganza." January.

1997    Beverly Hills Bar Association: "The Year in Review."   December.

Riverside Bar Association: "Civility."   November.

Koletsky, Mancini & Feldman: "Conflicts of Interest and Recent Topics at the State Bar."   November.

Beverly Hills Bar Association: "Recent Civil Conflict Cases."   November.

Consumer Attorneys of California, San Francisco, Moderator, Ethics Panel: "How to Protect Yourself at the State Bar."   November.

San Fernando Valley Bar Association, Litigation Section: "Topics of Concern in Settlement."   November.

Consumer Attorneys of Los Angeles, Las Vegas. "Ethics."  October.

Culver Marina Bar Association: "Withdrawal, Termination and Disengagement." October.

Beverly Hills Bar Association: "Review of Recent Bar Cases."   October.

Lexis Counsel Connect: "Law Practice Management."   September.

San Fernando Valley Bar Association: "Ethics Topics for Small and Sole Practitioners."   September.

Moderator, Consumer Attorneys of California, Ethics Panel: "Ethics Issues for Trial Lawyers."   August.

Long Beach Bar Association: "What to Do if the State Bar Calls."   June.

Beverly Hills Bar Association: "Withdrawal and Termination of Attorney-Client Relationship."   June.

Certified Legal Secretaries of California Annual Meeting:  "Ethical Issues for Legal Secretaries."   May.

Beverly Hills Bar Association: "Ethics Workshop."   May.

Beverly Hills Bar Association Legal Secretaries: "Ethical Issues for Legal Secretaries." April.

Consumer Attorneys of California, Tahoe, Moderator, Ethics Panel: "Ethics and the Trial Lawyer."   April.

Beverly Hills Bar Association: "Ethics Workshop."   April.

Long Beach Bar Association: "Client Trust Accounts."   March.

Beverly Hills Bar Association: "Ethics The Year in Review." March.

Lexis Counsel Connect: "Law Practice Management."   January.

Continuing Education of the Bar, Los Angeles: "Truth or Consequences." January.

Beverly Hills Bar MCLE Extravaganza: "How to Become Bullet Proof."  January.

Beverly Hills Bar: "Hot Topics at the State Bar."  January.

Association of Professional Responsibility Lawyers, San Antonio, Texas: "Technology and the Ethics Lawyer, Using Electronic Research."  January.

Wilshire Bar Association, Professional Responsibility: "Yearly Roundup." January.

Association of Professional Responsibility Lawyers, San Antonio, Texas: "Internet Research for Ethics."   January.

1996        Ervin, Cohen & Jessup: "Conflicts of Interest."   December.

Rushfeldt, Shelley & Drake: "Hot Topics of the Year, Ethics."    December.

Continuing Education of the Bar, Costa Mesa: "Truth or Consequences." December.

Beverly Hills Bar Association: "Legal Malpractice."  December.

Beverly Hills Bar Association: "Conflicts of Interest."  November.

San Francisco AAA Insurance Defense Counsel: "Conflicts of Interest." November.

Beverly Hills Bar Association: Ethical Dilemmas and Conflicts."  November.

Loyola Law School Poverty Lawyers Program: "Topics of Concern for Pro Bono Attorneys."  November.

Beverly Hills Bar Association: "Legal Advertising and Marketing."  October.

California State Bar Convention: "You Wanna Bet? Obsessive, Compulsive Gambling."  October.

State Bar Convention: "Really Interesting Lawyer Stuff."  October.

Beverly Hills Bar Association: "Trust Accounts."  September.

Beverly Hills Bar Association: "Fee Agreements."  August.

Wilshire Bar Association: "Ethics and the State Bar."  July.

Association of Professional Responsibility Lawyers, Paris, France. Diversion Panel.  April.

University of West Los Angeles School of Law: "Professional Responsibility, Free Speech and Client Trust Accounts."  April.

Consumer Attorneys of California, Moderator, Lake Tahoe, Ethics Panel.  April.

Whittier School of Law, Small and Solo Practice Symposium, "What to Do if the State Bar Calls."  March.

American Bar Association, Baltimore, Maryland, Young Lawyer's Association: "You Are An Easy Target."  February.

Cardozo Society: "Ethics."   January.

Wilshire Bar Association: "Ethics."   January.

San Fernando Valley Bar Association: "Trust Account Essentials."   January.

Continuing Education of the Bar: "Truth or Consequences."   January.

Beverly Hills Bar Association Ethics Program: "MCLE Extravaganza."   January.

Lexis Counsel Connect (on-line presentation): "Conflicts of Interest."   January.

Continuing Education of the Bar, San Diego: "Truth or Consequences - Candor to the Tribunal and Ethics."   January.

1995   Rushfeldt, Shelley & Drake: "State Bar Inquirer."   December.

Continuing Education of the Bar: "Truth or Consequences."   December.

Dependency Court Attorneys: "Ethics, Conflicts, Etc."   December.

Ventura County Bar Association: "Status of the State Bar and Recent Cases on Ethics."   December.

Los Angeles County Bar Association, Entertainment Lawyers' Annual Symposium: Luncheon Speaker: "Conflicts of Interest."   November.

Indo-American Bar Association: "What to do if the State Bar Calls."   November.

University of Southern California, Family Law Institute. "Ethics."   November.

Arter & Hadden: "Conflicts of Interest."   November.

Los Angeles County Bar Association Small and Sole Practice Section: "Marketing."   November.

American Association of Transportation Lawyers, member on two panels at Annual Meeting: "Lawyer Free Speech" and "Conflicts of Interest."   October.

Orange County Bar Association: "Ethics Extravaganza."   October.

Solish, Jordan & Weiner: "Conflicts of Interest in the Context of In-house Counsel Representation of Franchisors."   October.

Consumer Attorneys Association of Los Angeles, M.C.L.E. Program.  October.

California State Bar Annual Meeting: "Civility and Free Speech."   September.

Intellectual Property Bar Association: "Advertising."   September.

Legal Aid Society of Los Angeles: "Conflicts of Interest."   September.

Consumer Attorneys Association of Los Angeles, Co-Chair Ethics Program.
July.

California State Bar, Monterey Education Symposium: "Trust Accounts."   June.

American Bar Association, Client Security Fund: "Raising Rockbottom."   June.

Association of Professional Responsibility Lawyers, Miami, Florida:
"Representation of Multiple Clients-Delicate Tripartite Relationships."   January.

Cardozo Society: "Ethics." January.

Greenberg, Glusker, Fields, Claman & Machtinger: "Ethics."   January.

1994    Los Angeles County Bar, Small Practice Section: "Other People's Money."
December.

Los Angeles County Bar Association: "Conflicts of Interest."   December.

U.S.C. Family Law Institute: "Ethics."   December.

Southern California Defense League: "Ethics."   November.

Arter & Hadden: "Ethics."   November.

Greenberg, Glusker, Fields, Claman & Machtinger: "Ethics."   November.

California Trial Lawyer's Association: "Client Trust Accounts."   November.

Los Angeles Trial Lawyers, Las Vegas M.C.L.E. Convention: "Ethics." October.

California State Bar Annual Meeting: "Law Practice Management,"  "Ethics" and
"Other People's Money."   September.

U.S.C. Family Law Institute: "Ethics."   September.

52

Association of Professional Responsibility Lawyers, New Orleans: "The Propriety of Disciplining Law Firms."   August.

Los Angeles Trial Lawyers Association, Co-Chair, Ethics Panels:  "What to do if the State Bar Calls" and "State Bar Confidential and the Worst Cases."   July.

Long Beach Bar Association: "Ethics."   July.

Beverly Hills Bar Association, Family Law Workshop.  "Ethics."  June.

San Fernando Valley Bar Association: "Other People's Money."   May.

Beverly Hills Bar Association Barristers: "What to do if the State Bar Calls" and "Other People's Money."   April.

Beverly Hills Bar Association: Presentation to the Alarcon Commission, studying the status of attorney discipline in California.  March.

California State Bar: "5 Live for $95" and "The Big Pay-Off."  February.

Beverly Hills Bar Association: "Other People's Money."   February.

Century City Bar Association: "What to do if the State Bar Calls" and "Common Ethical Problems in Practice."   January.

Rushfeldt, Shelley & Drake: "Ethics."   January.

Beverly Hills Bar Association: "Client Trust Accounts," "What To Do If The State Bar Calls," Hot Ethics Topics," and "New Ethics Legislation for 1994."  January.

1993   Beverly Hills Bar Association: "Ethics Extravaganza."  December.

California State Bar Symposium: "Other People's Money."   November.

National Lawyer's Guild: "Ethics."  November.

State Bar Convention, San Diego: "The Big Pay-Off - Tying Up Loose Ends." October.

American Bar Association, New York: "Sex with Clients" and "Interim Suspensions."  August.

Los Angeles Trial Lawyers Association: "Moral Turpitude."   July.

Los Angeles Trial Lawyers Association, Las Vegas M.C.L.E. Convention: "Common Problems Facing Personal Injury Litigators."   June.

California State Bar: "Other People's Money."   March.

Beverly Hills Bar Association: "Annual Update of the Law." January.

Solish, Jordan & Weiner: "Ethics."   January.

1992      Beverly Hills Bar Association: "Attorney Discipline and the New Rules of Professional Conduct."   November.

California State Bar: "The Five Top Hits on the Client Hit Parade."   November.

Ventura County Trial Lawyers Association: "Attorney Discipline and the Revised Client Trust Accounting Procedures."   October.

California State Bar Annual Convention: "The Big Pay Off."   October.

Lawyers Guild: "Sex, Money, and Ethics."   September.

Los Angeles West Inn of the Court: "Ethics."   September.

Los Angeles Trial Lawyers: "What To Do If The State Bar Calls."   July.

Redding Bar Association: "Sex, Money, and Ethics."   May.

King, Edelman & Weiser: "Conflicts of Interest and Their Ethical Ramifications" and "Current Status of Attorney Discipline."   April.

State Bar Court Bench and Bar Conference, San Francisco:  "Pre Trial Settlement Techniques" and "Mitigating Factors."   April.

Marina Bar Association: "Attorney Discipline - How to Avoid Problems and New Trust Accounting Requirements."   January.