UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                         :

UNITED STATES OF AMERICA     :

                         :

       - *v.* -            :          S1 19 Cr. 373 (PGG)

                         :

MICHAEL AVENATTI,       :

                         :

         Defendant.    :

                         :

------------------------------------------------------x

# MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO THE DEFENDANT'S MOTION *IN LIMINE* <u>TO PRECLUDE EXPERT TESTIMONY</u>

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

Matthew D. Podolsky
Daniel C. Richenthal
Robert B. Sobelman
Assistant United States Attorneys

- Of Counsel -

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 1

APPLICABLE LAW ............................................................................................................... 3

ARGUMENT .......................................................................................................................... 4

I.      The Testimony of Professor Engstrom and/or Mr. Tuft Is Relevant and Admissible.......... 4

II.     The Defendant Is Not Entitled to Additional Details ......................................................... 14

III.    The Defendant Is Not Entitled to a *Daubert* Hearing ....................................................... 18

CONCLUSION....................................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Ambrosini v. Labarraque*, 101 F.3d 129 (D.C. Cir. 1996) .......................................................... 20

*Amnesty Int'l USA v. Clapper*, 638 F.3d 118 (2d Cir. 2011) ...................................................... 8

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002) ................ 3, 4, 6, 18, 20

*Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132 (2d Cir. 2016).............. 8

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).................................................. 3, 20

*GST Telecomm., Inc. v. Irwin*, 192 F.R.D. 109 (S.D.N.Y. 2000) .............................................. 10

*Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461 (S.D.N.Y. 2005) ....................... 10

*Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992) ........................................................................... 8

*Joffe v. King & Spalding LLP*, No. 17 Civ. 3392, 2019 WL 4673554 (S.D.N.Y. Sept. 24, 2019)  9

*Lippe v. Bairnco Corp.*, No. 96 Civ. 7600 (DC), 2002 WL 15630 (S.D.N.Y. Jan. 7, 2002).......... 4

*Marx & Co. v. The Diners' Club, Inc.*, 550 F.2d 505 (2d Cir. 1977) ........................................... 9

*McBeth v. Porges*, No. 15 Civ. 2742 (JMF), 2018 WL 5997918 (S.D.N.Y. Nov. 15, 2018)....... 21

*McCullock v. H.B. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995) ...................................................... 20

*Safrani v. Werner Co.*, No. 95 Civ. 1267 (LBS), 1997 WL 729110 (S.D.N.Y. Nov. 24, 1997).. 21

*SLSC, LLC v. Kleban*, 277 F. Supp. 3d 258 (D. Conn. 2017) .................................................... 10

*Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457 (S.D.N.Y. 2007) ........................................ 5

*United States v. 14.38 Acres of Land, More or Less Situated in Leflore City, State of Miss.*, 80
    F.3d 1074 (5th Cir. 1996) ................................................................................................... 20

*United States v. Agrawal*, 726 F.3d 235 (2d Cir. 2013).............................................................. 13

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991).................................................. *passim*

*United States v. Bronston*, 658 F.2d 920 (2d Cir. 1981).............................................................. 9

*United States v. Brooks*, No. 06 Cr. 550 (JS), 2010 WL 291769 (E.D.N.Y. Jan. 11, 2010) .. 10, 11

*United States v. Cerna*, No. 08 Cr. 730 (WHA), 2010 WL 2347406 (N.D. Cal. June 8, 2010)... 15

*United States v. Diakhoumpa*, 171 F. Supp. 3d 148 (S.D.N.Y. 2016)................................... 18, 19

*United States v. DiDomenico,* 985 F.2d 1159 (2d Cir. 1993) ....................................... 11

*United States v. Hausmann*, 345 F.3d 952 (7th Cir. 2003)........................................ 7

*United States v. Kellington*, 217 F.3d 1084 (9th Cir. 2000) ...................................... 7

*United States v. Kidd*, 385 F. Supp. 3d 259 (S.D.N.Y. 2019) ................................. 15, 16

*United States v. Lipscomb*, 539 F.3d 32 (1st Cir. 2008) ..................................... 16

*United States v. Lopez*, No. 18 Cr. 6 (DLC), 2019 WL 1570818 (S.D.N.Y. Apr. 11, 2019) ... 8, 17

*United States v. Lupton*, No. 07 Cr. 219, 2008 WL 2224399 (E.D. Wis. May 28, 2008) ............ 12

*United States v. Mandell*, 752 F.3d 544 (2d Cir. 2014) .................................................... 6

*United States v. Mavashev*, No. 08 Cr. 902 (DLI), 2010 WL 234773 (E.D.N.Y. Jan. 14, 2010). 17

*United States v. Monaghan*, 648 F. Supp. 2d 658 (E.D. Pa. 2009) ............................... 11

*United States v. Rajaratnam*, No. S2 09 Cr. 1184 (RJH), 2011 WL 723530 (S.D.N.Y. Feb. 25, 2011) ........................................................................................................ 17

*United States v. Raniere*, 384 F. Supp. 3d 282 (E.D.N.Y. 2019) ................................. 17

*United States v. Raniere*, No. 18 Cr. 204 (NGG) (VMS), 2019 WL 2212639 (E.D.N.Y. May 22, 2019) ........................................................................................................ 16

*United States v. Rosario*, No. 09 Cr. 415 (VEC), 2014 WL 6076364 (S.D.N.Y. Nov. 14, 2014)…………………………………………………………………………………………..16

*United States v. Santiago*, 199 F. Supp. 2d 101 (S.D.N.Y. 2002) ................................. 19

*United States v. Scop*, 846 F.2d 135 (2d Cir. 1994)........................................................ 8

*United States v. Skelos*, 707 F. App'x 733 (2d Cir. 2017)................................... 5, 12, 14

*United States v. Sprouse*, No. 03 Cr. 211, 2009 WL 798827 (W.D.N.C. Mar. 23, 2009)............ 12

*United States v. Valle*, No. 12 Cr. 847 (PGG), 2013 WL 440687 (S.D.N.Y. Feb. 2, 2013)......... 17

*United States v. Wexler*, 552 F.3d 194 (2d Cir. 2008) …………………………………………8

*United States v. Williams*, 506 F.3d 151 (2d Cir. 2007) ................................................................ 18

**STATUTES**

18 U.S.C. § 3500 .......................................................................................................................... 16

**RULES**

Fed. R. Crim. P. 16(a)(1)(G) ................................................................................................... 16, 18

Fed. R. Evid. 403 ..................................................................................................................... 13, 14

Fed. R. Evid. 702 ........................................................................................................................... 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                :

UNITED STATES OF AMERICA       :

                                :

        - *v.* -               :                S1 19 Cr. 373 (PGG)

                                :

MICHAEL AVENATTI,          :

                                :

           Defendant.       :

                                :

------------------------------------------------------x

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the defendant's motion *in limine* to preclude the Government's proffered expert testimony or, in the alternative, for a *Daubert* hearing ("Def. Mot.") (Dkt. No. 82).

## BACKGROUND

On November 22, 2019, the Government provided notice, pursuant to Federal Rule of Criminal Procedure Rule 16(a)(1)(G), that it may call Professor Nora Freeman Engstrom and/or Mark L. Tuft, Esq. as experts in the Government's case-in-chief at trial.  (Decl. of Scott Srebnick, Esq., Ex. 1 ("Ex. 1")) (Dkt. No. 83-1).  In an approximately three-page letter, supported by twenty-three pages of material, and supplemented by a two-page letter dated November 27, 2019, offering additional information in response to questions from the defense (*see* Decl. of Scott Srebnick, Esq.,

Ex. 3 ("Ex. 3")) (Dkt. No. 83-3), the Government advised the defendant that Professor Engstrom and/or Mr. Tuft are expected to provide testimony in two areas.[1]  (*See* Ex. 1.)

First, Professor Engstrom and Mr. Tuft are expected to testify that lawyers admitted to the bar of the state of California are subject to certain legal duties, ethical requirements, and rules of professional conduct, and that such duties, requirements and rules are publicized and made known to members of the bar of California, who must certify every three years, if they wish to remain active members of that bar, to having taken continuing legal education, including with respect to ethics.  (*Id.* at 1, 3.)  Professor Engstrom and Mr. Tuft are also expected to describe and explain the content, meaning, and application of particular rules published and adopted by the State Bar of California, as well as the duties of confidentiality, loyalty, honesty, fair dealing, and reasonable communication incumbent upon attorneys.  (*Id.* at 2-3.)

Second, Professor Engstrom and Mr. Tuft are expected to testify that, assuming the truth of certain facts, as alleged in the Superseding Indictment, the defendant's conduct violated certain of these rules and duties, including by failing to disclose meaningful developments to his client (the individual referred to in the Superseding Indictment as Client-1), failing to consult with his client regarding the means by which the defendant would seek or was seeking to accomplish objectives, using confidential information provided to him by his client as a bargaining chip to seek to obtain money for himself, publicizing certain of that confidential information without his

---

[1]     Professor Engstrom is Professor of Law and Deane F. Johnson Faculty Scholar at Stanford Law School, where she teaches classes in and has published about, among other things, legal ethics. (Ex. 1, at 1.)  Mr. Tuft is an attorney who practices in the area of professional liability, and counsels lawyers and law firms on professional responsibility.  He is a Certified Specialist in Legal Malpractice Law, former President of the Association of Professional Responsibility Lawyers, and the co-author of California Practice Guide on Professional Responsibility (The Rutter Group).  (*Id.*)

client's knowledge or consent, and seeking to obtain side payments for himself without authorization from or the knowledge of his client.  (*Id.* at 2-3.)

## APPLICABLE LAW

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)　the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)　the testimony is based on sufficient facts or data;
>
> (c)　the testimony is the product of reliable principles and methods; and
>
> (d)　the expert has reliably applied the principles and methods to the facts of the case.

A district court is responsible for "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  "Although Rule 702 sets forth specific criteria for the district court's consideration" in performing this task, "the *Daubert* inquiry is fluid and will necessarily vary from case to case." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002).  The inquiry's purpose is "to ensure that the courtroom door remains closed to junk science while admitting reliable expert testimony that will assist the trier of fact." *Id.* at 267.

Accordingly, "the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Id.* at 266 (citing *Daubert*, 509 U.S. at 595).  In short, the law "on when evidence should be excluded accords with the liberal admissibility standards of

the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." *Id.* at 267.

## ARGUMENT

**I.    The Testimony of Professor Engstrom and/or Mr. Tuft Is Relevant and Admissible**

At this trial, where the defendant is charged with defrauding his client ("Client-1") of the defendant's honest services, and with making wrongful, extortionate threats, including by using his client's information, the scope and nature of the duties owed by the defendant as an attorney to his client are indisputably at issue. (*See, e.g.*, Def. Requests to Charge, No. 25 (Dkt. No. 97).) Indeed, the defendant has made plain that he intends to argue that he was acting in his client's best interest and within the scope of his duties as an attorney. (*See, e.g.*, Def. Mot. to Dismiss Indictment at 1, 11-16 (Dkt. No. 35); Def. Mot. to Dismiss Count Three at 9-10 (Dkt. No. 75).) And because the scope of those duties is substantially informed by the custom and practice of the legal trade and in particular the practices embodied in state standards and rules of professional responsibility, the standards and rules themselves, and that they are public and known to attorneys, are highly relevant to the jury's consideration of whether the defendant, by engaging in the charged conduct, sought to or did violate one or more duties owed to Client-1. Indeed, the defendant does not appear seriously to argue otherwise. (*See* Def. Mot. 1.)

Accordingly, at trial, the Government proposes to call two expert witnesses—both eminently qualified experts in their field—to help the jury understand those standards and rules of professional responsibility, which are highly unlikely to be familiar to or readily digestible by a lay jury absent expert testimony. For these reasons, the proposed testimony is both relevant and admissible. *See Lippe v. Bairnco Corp.*, No. 96 Civ. 7600 (DC), 2002 WL 15630, at *2 (S.D.N.Y. Jan. 7, 2002) ("An expert may properly testify as to the customs and standards of an industry, and opine as to how a party's conduct measured up against such standards." (internal quotation marks

4

and brackets omitted)); *see also Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 459 (S.D.N.Y. 2007) ("In assessing the relevance of proffered expert testimony, the Court looks to whether the testimony has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

Indeed, evidence regarding the types of duties owed by a defendant charged with honest services fraud and the applicable ethical or other rules of conduct are routinely admitted in honest services fraud cases. *See, e.g.*, *United States v. Skelos*, 707 F. App'x 733, 740 (2d Cir. 2017) (upholding admission of testimony by ethics authority regarding New York State ethics rules but vacating the judgment on other grounds). Here, expert testimony regarding the applicable rules and standards is particularly appropriate and relevant because it will help the jury understand a complex and specialized profession—the legal profession—the rules and standards of which are not intuitive or well known to lay persons. *See United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).

Furthermore, as noted above, it is apparent that the defendant intends to argue that his charged conduct was no more than an attorney vigorously representing a client, and that he was therefore not acting wrongfully or with intent to defraud. (*See, e.g.*, Def. Mot. to Dismiss Indictment at 1, 11-16 (Dkt. No. 35); Def. Mot to Dismiss Count Three at 9-10 (Dkt. No. 75); Def. Requests to Charge, No. 25 (Dkt. No. 97).) Without expert testimony, the jury will have precious little—or no—ability to place such arguments in context or to evaluate intelligently any evidence that may offered by the defendant in support of his position. The defendant cannot reasonably argue to the jury that he was acting within the scope of his duties as an attorney, while blocking evidence of what that actually means, any more than the Government could do the reverse. And

to the extent that the defendant disagrees with what the Government's experts are expected to say, the remedy is cross-examination, and/or for him to call his own expert (of which he has now provided notice, which is attached to this memorandum as Exhibit A), not preclusion.  *See, e.g.*, *Amorgianos*, 303 F.3d at 267 ("our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony").  The defendant offers several contentions in seeking a ruling to the contrary.  None is meritorious.

*First*, the defendant broadly asserts that "the Second Circuit has ***uniformly rejected*** testimony from experts about legal concepts, ethics, rules of professional responsibility, and fiduciary duties, and precluded experts from providing an opinion that a party did (or did not) violate particular laws, rules or duties."  (Def. Mot. 4 (bolding and italics in original).)  The defendant is wrong.

To choose just one example, in *Bilzerian*, the defendant was charged with securities fraud and the making of false statements arising from his failure to disclose the nature of certain purchases on a Schedule 13D form filed with the Securities and Exchange Commission.  926 F.2d at 1289-90.  The Second Circuit upheld the district court's admission of testimony offered by the government from a law professor who explained the "general background on federal securities regulation and the filing requirements of Schedule 13D."  *Id.* at 1294.  Indeed, both the district court and the Second Circuit rejected the argument—which the defendant makes here—that the expert's testimony "constituted an impermissible legal instruction," particularly in light of a limiting instruction explaining that "Professor Coffee is here to furnish you with background concerning the meaning of terms, the procedures which are followed and his opinion as to the reason for these procedures," and that "[h]e is not here to give his opinion as to what the law requires."  *Id.* at 1295; *see also United States v. Mandell*, 752 F.3d 544, 551 (2d Cir. 2014)

(government expert testimony admissible because "the witnesses at issue did not testify that the defendants violated a statute, but merely explained why, in their opinion, certain commissions had been referred to as 'bonuses'").[2]

Other courts of appeals have similarly explained that "[i]t is well settled that in the prosecution of a lawyer for conduct stemming from his or her representation of a client, expert testimony on the lawyer's ethical obligations is relevant to establish the lawyer's intent and state of mind." *United States v. Kellington*, 217 F.3d 1084, 1098 (9th Cir. 2000) (citing *United States v. Cavin*, 39 F.3d 1299, 1309 (5th Cir. 1994) and *United States v. Kelly*, 888 F.2d 732, 743 (11th Cir. 1989)).[3]  In short, expert testimony explaining the standards and practices in the legal industry

---

[2]      The defendant cites *Bilzerian* as "upholding exclusion of defense expert because proposed testimony 'related directly to the issue of whether Bilzerian's actual 13D disclosures complied with legal requirements.'" (Def. Mot. 5.)  The defendant is correct that the district court limited (but did not preclude) the defense expert's proposed testimony, but the defendant omits from his motion that the *Bilzerian* court affirmed the *admission* of the Government's expert testimony explaining the background of securities regulation and the nature of Schedule 13D's requirements, including answers to hypothetical questions.  926 F.2d at 1294-95.  The *Bilzerian* court then, separately, affirmed the limiting of the defense proposed expert's testimony because the defense expert sought to opine on whether the defendant's conduct constituted a false statement, which was the very charge to be decided by the jury.  *Id.* at 1295.  The Second Circuit explained, "[a]lthough testimony concerning the ordinary practices in the securities industry may be received to enable the jury to evaluate a defendant's conduct against the standards of accepted practice . . ., testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and may not be made so simply because it is presented in terms of industry practice." *Id.* (citation omitted).  By contrast, in this case, the defendant's violation of his duties and professional responsibilities is not the ultimate question for the jury.

[3]      In *United States v. Hausmann*, an attorney was convicted of honest services fraud for accepting kickbacks in exchange for actions taken with respect to his clients, which, the Seventh Circuit noted in affirming the conviction, violated the applicable rules of professional responsibility.  345 F.3d 952, 956-57 (7th Cir. 2003).  Based on a conversation with the former prosecutor in that case and a review of entries on the docket (*see United States v. Hausmann*, No. 02 Cr. 10 (E.D. Wis.), Dkt. Nos. 36, 41, 45, 68), the Government understands that the district court in that case held that expert testimony by a law professor regarding the applicable rules of professional responsibility was relevant and admissible, over the objection of the defendant that such testimony consisted of legal conclusions.  The Government is endeavoring to identify, locate, and obtain any relevant records, including decisions, from that case.

is both relevant and admissible to assist the jury in understanding the defendant's knowledge and intent—particularly in light of the defendant's apparent plan to argue that such standards and practices support his conduct—and wholly consistent with case law.[4]

In claiming to the contrary, the defendant cites a litany of cases in which legal ethics expert testimony was either precluded or determined not to be conclusive of a relevant issue.  (*See* Def. Mot. 4-5.)  But in the cases cited by the defendant, many of which are neither criminal nor involved facts or questions like those of this case, the expert sought to provide an opinion on the ultimate issue to be decided by the fact-finder.

For example, in *Bernstein v. Bernstein Litowitz Berger & Grossman LLP* (Def. Mot. 4), the Second Circuit explained that it would not consider arguments by a legal expert as to whether a complaint should be maintained under seal, which was the legal issue under consideration by the court itself.  814 F.3d 132, 144 (2d Cir. 2016).  Similarly, in *Amnesty Int'l USA v. Clapper* (Def. Mot. 5), the Second Circuit and district court accepted expert opinion on the ethical duties of attorneys, but the Second Circuit explained that the question of whether "it is reasonable" for attorneys to take certain actions under the relevant circumstances was for the court, rather than an expert, to determine.  638 F.3d 118, 128 & n.12 (2d Cir. 2011); *see also United States v. Scop*, 846 F.2d 135, 139-40 (2d Cir. 1994) (expert may not testify as to legal conclusions on ultimate issue); *Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2d Cir. 1992) (expert may not express legal conclusion or effectively tell jury what result to reach); *United States v. Bronston*, 658 F.2d 920, 930 (2d Cir.

---

[4]     Similarly, courts routinely admit expert testimony regarding the standards of care and professional conduct in unlawful dispensation cases against doctors because "the standard of care applicable to doctors engaged in the practice of pain management may be relevant to a jury's evaluation of whether a doctor's conduct 'deviated so far from the usual course of professional practice that his actions become criminal.'"  *United States v. Lopez*, No. 18 Cr. 6 (DLC), 2019 WL 1570818, at *2 (S.D.N.Y. Apr. 11, 2019) (quoting *United States v. Wexler*, 552 F.3d 194, 204 (2d Cir. 2008)).

1981) (expert precluded from testifying as to whether defendant breached fiduciary duty where expert was a member of defendant's firm, had post-hoc conversation with defendant who made self-serving exculpatory statements to which the expert testified, and "would in substance have conveyed nothing more to the jury than his general belief as to how the case should be decided" (internal quotation marks omitted)); *Marx & Co. v. The Diners' Club, Inc.*, 550 F.2d 505, 509-11 (2d Cir. 1977) (in action regarding, among other things, a breach of contract claim, district court should not have permitted expert testimony on meaning of contract at issue and the legal significance as to the ultimate issue of facts adduced at trial).

To be sure, as the defendant notes (Def. Mot. 6), in *Joffe v. King & Spalding LLP*, another civil case, the court decided to instruct the jury itself regarding the New York Rules of Professional Responsibility to permit the jury to determine whether particular individuals violated those rules, which would trigger an obligation by the plaintiff to report a violation, which was relevant to the plaintiff's claims regarding the basis for his dismissal from a law firm.  No. 17 Civ. 3392 (VEC), 2019 WL 4673554, at *14-17 (S.D.N.Y. Sept. 24, 2019).  But regardless of whether this decision constituted a permissible exercise of the district court's discretion, it in no way stands for the proposition that Professor Engstrom and/or Mr. Tuft's testimony would not be helpful to a jury in this case, where the jury will be asked to evaluate the defendant's knowledge and intent in taking certain actions and engaging in certain conduct during the course of his representation of a client— unlike in *Joffe*, where the question concerned the plaintiff's evaluation of conduct of others.  Indeed, *Joffe* specifically found that the rules themselves *were* useful to the jury in that case and further contemplated that expert testimony that assists that jury in understanding the practice and customs of attorneys would be admissible in other cases.  *Id.* at *17.  This is precisely such a case.

The remaining in-circuit cases relied upon by the defendant stand merely for the proposition that an expert should not be permitted to opine on the ultimate question for a fact-finder, not that expert testimony regarding relevant duties, rules, and standards is—as the defendant broadly asserts—always inadmissible. *See SLSC, LLC v. Kleban*, 277 F. Supp. 3d 258, 288 (D. Conn. 2017); *United States v. Brooks*, No. 06 Cr. 550 (JS), 2010 WL 291769, at *4 (E.D.N.Y. Jan. 11, 2010); *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 470-72 (S.D.N.Y. 2005); *GST Telecomm., Inc. v. Irwin*, 192 F.R.D. 109, 111 (S.D.N.Y. 2000).

*Brooks*, in particular, is instructive.  In that honest services fraud prosecution, the district court permitted expert testimony of a law professor regarding corporate governance concepts, including the nature of fiduciary duties owed by the defendant; it simply precluded testimony opining that the defendant in fact violated his fiduciary duties, which was an ultimate question for the jury to determine. *Brooks*, 2010 WL 291769, at *4.[5]

*Second*, the defendant objects to testimony regarding whether, assuming the truth of the allegations against him, his conduct violated certain rules and standards of professional responsibility, on the basis that such testimony provides an opinion on an ultimate question. (*See* Def. Mot. 4).  The defendant's objection is based on a false premise.  The Government does not intend to ask its expert(s) to opine on whether the defendant sought *quid pro quo* payments or is guilty.  Rather, the Government intends to ask its expert(s) to explain whether, assuming the truth

---

[5]       As noted above, unlike in *Brooks*, Professor Engstrom and/or Mr. Tuft would not be asked to opine as to the ultimate question of whether the defendant solicited *quid pro quo* payments in violation of the law (nor on the ultimate question of the wrongfulness of his extortionate threats), but rather would offer an opinion as to the whether particular alleged conduct, if true, violated rules and standards of professional conduct, which is not an element of the crimes charged.  In any event, as discussed below, even if the Court were to preclude testimony stating that the defendant violated the applicable rules of conduct, Professor Engstrom and Mr. Tuft could still appropriately testify as to the nature and practices of the applicable rules and duties, as in *Brooks*, leaving for the jury the question of whether those rules and duties were violated.

of certain allegations, the defendant's conduct was in violation of certain rules and standards of attorneys licensed in California. While that is undoubtedly relevant to a core question before the jury—indeed, highly relevant—that does not make it improper. *See United States v. DiDomenico,* 985 F.2d 1159, 1165 (2d Cir. 1993) ("Rule 704(b) does not prohibit all expert testimony that gives rise to an inference concerning a defendant's mental state. The . . . rule . . . means that the expert cannot expressly 'state the inference,' but must leave the inference, however obvious, for the jury to draw." (citation omitted)).

In any event, were the Court to conclude the Government's experts should not be permitted testify as to whether, assuming the truth of certain allegations, the defendant's conduct violated certain rules and standards of professional responsibility, it would still plainly be appropriate for experts to testify regarding the rules and standards in the industry, including through the use of responses to hypothetical questions, which is precisely what was permitted in *Bilzerian*. 926 F.2d at 1294-95; *see also, e.g.*, *Brooks*, 2010 WL 291769, at *4. In short, even if the defendant were correct that the Government seeks to have its expert(s) opine on an "ultimate question"—and he is not correct—the defendant would not be entitled to preclusion of the entirety of the proffered experts' testimony.

*Third*, while not saying so directly, the defendant appears to suggest that expert testimony on duties or standards is improper in honest services fraud cases, even if it might be proper in other types of cases. (*See* Def. Mot. 7-8.) That suggestion is unsupported, and conflicts with the case law and basic principles described above. Nor are the cases offered by the defendant to the contrary. In *United States v. Monaghan* (Def. Mot. 7-8), the district court precluded expert testimony regarding state criminal statutes that the defendant's conduct might have violated, explaining, among other things, that the court was competent to provide legal instructions on such

statutes (like any other statute).  648 F. Supp. 2d 658, 660-62 (E.D. Pa. 2009).  *Monaghan* did not concern rules and standards of professional responsibility and the duties and responsibilities that lawyers must learn, certify continuing education regarding, and abide by.  And to the extent that the defendant suggests (Def. Mot. 7) that *Monaghan* stands for the proposition that evidence—as opposed to legal instruction by a court—regarding state ethics rules is inadmissible as a matter of law, such a proposition is inconsistent with the law of this circuit.  *See Skelos*, 707 F. App'x at 740.

In *United States v. Sprouse* (Def. Mot. 7-8), the district court permitted expert testimony regarding applicable ethical or professional duties; it simply did not permit testimony that the defendant did in fact violated those duties.  No. 03 Cr. 211, 2009 WL 798827, at *1 (W.D.N.C. Mar. 23, 2009).  Similarly, in *United States v. Lupton* (Def. Mot. 8), the court precluded expert testimony, not because testimony regarding ethical rules or rules of professional conduct was, in its view, inadmissible as a matter of law, but because, among other things, the expert intended to testify that the defendant's conduct was reasonable and lawful.  No. 07 Cr. 219, 2008 WL 2224399, at *2 (E.D. Wis. May 28, 2008).

*Fourth*, the defendant appears to suggest that even if expert testimony might be admissible, the Court should moot the need for it by simply instructing the jury directly on the rules and standards applicable to a member of the bar of the state of California.  (Def. Mot. 8.)  But the defendant notably includes no such rules and standards in his requests to charge other than admonitions about what such rules and standards purportedly *do not* require.  (Def. Requests to Charge, No. 37-40 (Dkt. No. 97).)  Nor does he suggest in his motion that he agrees with the Government as to which rules and standards are relevant, much less the contours of those rules and standards.  In any event, his suggestion, if accepted, would give him a windfall.  Instructions

are not a substitute for assisting the jury in understanding the rules and standards of a complex profession. *See Bilzerian*, 926 F.2d at 1294. And as discussed above, a failure to comply with the rules and standards applicable to a member of the bar of the state of California is not itself an element of any crime charged in the Superseding Indictment, as the requests to charge of both parties state. (Gov't Requests to Charge, No. 15 (Dkt. No. 95); Def. Requests to Charge, No. 32 (Dkt. No. 97).) Moreover, it would put the Court in the position of resolving potentially divergent views between the parties about the meaning or scope of California ethics rules in drafting a charge, which is, of course, not the intended role of jury instructions.

*Finally*, the defendant contends that Professor Engstrom and Mr. Tuft's testimony should be precluded under Federal Rule of Evidence 403 because "the proposed expert testimony in this case would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury." (Def. Mot. 9.) However, the defendant offers no cogent explanation for why a juror will not be able to understand, place in appropriate context, and give proper weight to the testimony of Professor Engstrom and/or Mr. Tuft (or any other expert), particularly if the Court instructs the jury on this subject, as proposed in the Government's Requests to Charge, No. 40. *See United States v. Agrawal*, 726 F.3d 235, 258 (2d Cir. 2013) (the law presumes "that juries follow the instructions they are given"). Nor does the defendant explain why a limiting instruction could not cure any potential concerns he raises, to the extent such concerns are legitimate. *See Bilzerian*, 926 F.2d at 1295.[6]

---

[6]     To the extent that the defendant appears to suggest, through citations but without analysis, that Rule 403 bars Professor Engstrom and Mr. Tuft's testimony because the testimony "interpret[s] the governing law" (Def. Mot. 8-9), the defendant is incorrect. As discussed above, the duties and standards that attorneys licensed in California follow is not the governing law of this case; federal criminal law is.

13

The defendant also does not explain how the proposition he advances would not apply to all expert testimony bearing on a defendant's knowledge and/or intent in all criminal cases—and to the extent that the proposition would, it is not the law.  Indeed, as noted above, testimony on ethical rules and duties is routinely offered and admitted in honest services fraud cases.  *See, e.g.*, *Skelos*, 707 F. App'x at 740.

The defendant's similarly wide-sweeping assertion that expert witnesses here would "serve as mere mouthpieces for the prosecution" (Def. Mot. 9) should be dismissed out of hand. Professor Engstrom and/or Mr. Tuft are established professionals who are plainly—indeed, overwhelmingly—qualified, and would testify, under oath, regarding the nature of the duties, rules, and standards applicable to lawyers in California.  Moreover, to the extent that, in the defendant's view, their retention by the Government creates an incentive for them to shade their testimony, the defendant will be entitled to vigorously cross-examine them within the bounds of the Federal Rules of Evidence.  He will also be entitled to seek to offer contrary testimony, to the extent it exists and is otherwise admissible (and as noted above, he has now given notice of what appears to be certain such testimony).  He is not entitled to block evidence merely because, he apparently believes, it tends to suggest that he is guilty.

In short, the defendant has offered no cogent basis to conclude that any risk cognizable under Rule 403 would substantially outweigh relevant testimony that will assist the jury in evaluating the defendant's conduct, particularly where the defendant has made it clear that he will seek to convince the jury that his conduct was proper and typical of attorneys.

## II.     The Defendant Is Not Entitled to Additional Details

The Court also should not preclude the Government's proffered expert testimony based on alleged deficiencies in the Government's disclosures made pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G).

As described above, on November 22, 2019, the date previously agreed-upon by the parties, the Government provided a three-page letter setting forth the subjects about which Professor Engstrom and Mr. Tuft are expected to testify, as well as a summary of their opinions, the bases and reasons for their opinions, and their extensive qualifications.  Specifically, the Government disclosed that Professor Engstrom and/or Mr. Tuft, if called to testify, would testify about "legal duties, ethical rules, and professional responsibility requirements of lawyers admitted to the bar of the state of California, and how, assuming the description of the defendant's conduct set forth in the Superseding Indictment is true, the defendant violated those duties, rules, and requirements." (Ex. 1, at 1-2.)  The Government then summarized these experts' opinions and the bases for those opinions, including, among other things, identification of specific duties the defendant the defendant owed to Client-1, a list of the particular rules and statutes implicated by the defendant's conduct, and a summary of Professor Engstrom's and Mr. Tuft's views on how those rules, statutes, and duties apply to the facts alleged in the Superseding Indictment.  (Ex. 1, at 2-3.)  On November 27, 2019, in response to defense inquiries, the Government provided a supplemental letter.  (Ex. 3.)

Rule 16(a)(1)(G) requires "a written summary" of expected expert testimony, including "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." "[T]he notice must provide sufficient detail such that the basis for any testimony or opinion can be identified," *United States v. Kidd*, 385 F. Supp. 3d 259, 262 (S.D.N.Y. 2019), but "Rule 16(a)(1)(G) does not require recitation of the chapter and verse of the experts' opinions, bases and reasons," *United States v. Cerna*, No. 08 Cr. 730 (WHA), 2010 WL 2347406, at *2 (N.D. Cal. June 8, 2010).  The Government here has more than complied with this requirement. In short, "the substance of the proposed testimony [is] not a surprise to the [d]efendant." *United*

*States v. Rosario*, No. 09 Cr. 415 (VEC), 2014 WL 6076364, at *4 (S.D.N.Y. Nov. 14, 2014).  Nor does the defendant appear meaningfully to disagree.

The defendant is not entitled to a preview of the Government's case by seeking additional details, more than a month prior to trial, regarding particular statements that may be made by these (or other) witnesses.  *See, e.g.*, *United States v. Lipscomb*, 539 F.3d 32, 38 (1st Cir. 2008); *Kidd*, 385 F. Supp. 3d at 262; *United States v. Raniere*, No. 18 Cr. 204 (NGG) (VMS), 2019 WL 2212639, at *4-5 (E.D.N.Y. May 22, 2019).[7]  The defendant cannot credibly assert that he will suffer unfair prejudice due to the Government's allegedly inadequate disclosure.  Indeed, tellingly, the defendant's own expert notice is substantially similar in all relevant respects (although as described in one of the Government's motions *in limine* (Dkt No. 96, at 26-29), it appears to list certain opinions that are either inadmissible or have no apparent basis).  (*See* Ex. A.)

In his motion, the defendant cites no decision in which a court has precluded a government expert in light a purportedly deficient expert notice, or even expressed concern about a notice that was as specific and detailed as the Government's disclosures here.  Nevertheless, the defendant argues, without citation to any applicable authority, that the Government should be required to provide "additional bases" for the experts' proffered opinions to those already disclosed, as well as additional "clarity and specificity" with respect to certain of the opinions.  (Def. Mot. 11-12.)  But as described above, the Government's notice complied with the applicable rule: it summarized the experts' testimony by describing their "opinions, the bases and reasons for those opinions, and [their] qualifications."  Fed. R. Crim. P. 16(a)(1)(G).  No more is required.

---

[7]     The Government will provide material pursuant to 18 U.S.C. § 3500 for both potential expert witnesses, regardless of whether it only calls one, on the schedule agreed to by the parties.

In his motion, the defendant does not engage with the plain language of the rule.  Instead, he lists numerous questions to which he would like answers now.  (*See* Def. Mot. 11-13.)  For example, the defendant would like to know whether one of the experts' opinions "suggest[s] that a lawyer needs specific authorization from a client for every tactical decision and every negotiating posture."  (*Id.* 12.)  That might be an appropriate line of inquiry for cross-examination, depending on the expert's testimony on direct examination.  But the Government need not address or make disclosures concerning the logical implications or potential consequences of an expert's opinion in advance of trial.  Rule 16(a)(1)(G) requires nothing of the sort, and the defendant cites no authority suggesting otherwise.

In any event, even assuming *arguendo* that this Court were to find some aspect of the Government's disclosures deficient (which they are not), preclusion—which is the only remedy the defendant seeks (Def. Mot. 13)—is an "extreme remedy" that would be wholly inappropriate here.  *See United States v. Raniere*, 384 F. Supp. 3d 282, 327 (E.D.N.Y. 2019) (explaining preclusion of expert testimony typically occurs where untimely disclosures occur "on the first day of trial or later"); *United States v. Mavashev*, No. 08 Cr. 902 (DLI), 2010 WL 234773, at *2 (E.D.N.Y. Jan. 14, 2010) (explaining "the failure to disclose must generally be complete before a court will preclude an expert witness from testifying" and allowing the Government to supplement its initial Rule 16(a)(1)(G) disclosure).

Indeed, even where, unlike here, notice is clearly inadequate, courts routinely order parties simply to supplement their expert disclosure in the relevant respect, *see, e.g.*, *United States v. Valle*, No. 12 Cr. 847 (PGG), 2013 WL 440687, at *6 (S.D.N.Y. Feb. 2, 2013); *United States v. Rajaratnam*, No. S2 09 Cr. 1184 (RJH), 2011 WL 723530, at *7 (S.D.N.Y. Feb. 25, 2011), and in some instances, permit supplemental disclosures even after the start of trial, *see, e.g.*, *United States*

*v. Lopez*, No. 18 Cr. 6 (DLC), 2019 WL 1570818, at *5-6 (S.D.N.Y. Apr. 11, 2019) (court ordered supplemental expert disclosure two days before expert's testimony).

In this case, the Government provided its initial notice two months before trial and, after conferring with defense counsel, provided additional information just a few days later.  Even if the Court were to conclude that the Government should provide some type of additional detail about the experts' anticipated testimony, such information would still be provided more than sufficiently in advance of trial to "minimize surprise . . . and to provide the [defendant] with a fair opportunity to test the merit of the expert's testimony through focused cross examination."  Fed. R. Crim. P. 16(a)(1)(G), Advisory Committee Notes.

## III.    The Defendant Is Not Entitled to a *Daubert* Hearing

In the alternative, the defendant also requests a hearing to assess Professor Engstrom's and Mr. Tuft's testimony.  (Def. Mot. 13-14.)  This request is no more than a thinly-veiled attempt to cross-examine witnesses in advance of trial, and should be rejected.

While district courts must exercise the gatekeeping function regarding expert testimony, a hearing is generally not required, because the purpose of such a hearing, or similar inquiry, is limited to assessing reliability—not to determining the admissibility of subject matter.  *See, e.g.*, *Amorgianos*, 303 F.3d at 267 (the purpose is "to ensure that the courtroom door remains closed to junk science").

Were the rule otherwise, a hearing would be required in every case in which a defendant challenges admissibility; that is not the law, nor would it be practicable.  Indeed, even where reliability is challenged, a hearing does not necessarily follow.  *See United States v. Williams*, 506 F.3d 151, 161-62 (2d Cir. 2007) (district courts possess "latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability"); *United States v. Diakhoumpa*, 171 F. Supp. 3d 148, 152-53 (S.D.N.Y.

2016) (denying *Daubert* hearing where challenge to expert was nothing more than attempt to re-argue previously denied motion to preclude); *United States v. Santiago*, 199 F. Supp. 2d 101, 112 (S.D.N.Y. 2002) (denying *Daubert* hearing where reliability could be established through testimony and/or voir dire).

The defendant cannot credibly assert that the expected testimony of Professor Engstrom and/or Mr. Tuft is "junk science" (and if it is, the testimony of his proffered expert, at least to the extent it is on the same subjects, must also be junk science, but the defendant does not offer to permit the Government to cross-examine her in advance of trial). Instead, the defendant principally objects to the propriety of these experts, or any other expert, rendering an opinion as to whether certain conduct—what the defendant terms "the hodgepodge of limited information alleged in the Superseding Indictment" (Def. Mot. 14), notwithstanding the Superseding Indictment's length, breadth, and detail—constitutes a violation of the rules and duties imposed on attorneys licensed in California. In short, the defendant's challenge is to admissibility of a certain subject of testimony. That challenge is meritless, for the reasons described above, but in any event, evaluating its merits does not require a hearing. *See Diakhoumpa*, 171 F. Supp. 3d at 152-53.

Nor is a hearing required because the defendant may challenge the persuasive value of an answer to a hypothetical question, namely, whether alleged facts constitute a violation of a particular rule or ethical requirement, on the ground that the expert has not reviewed the underlying "evidence" that supports, or, in the defendant's view, fails to support, the hypothetical (Def. Mot. 14). It is well-settled that experts may be asked such hypothetical questions. *See, e.g.*, *Bilzerian*, 962 F.2d at 1294-95. The defendant is entitled, if he wishes, to seek to establish on cross-examination that an expert cannot say, one way or another, whether a hypothetical or an allegation against the defendant is true—although there is no risk that the jury will somehow think otherwise.

The defendant is not entitled to seek to cross-examine an expert, before trial, to see how he or should would respond to such a cross-examination.

Nor, finally, is a hearing required because the defendant (and his proffered expert) disagree that certain conduct constitutes a violation of applicable duties or the defendant, unsurprisingly, intends to argue that his conduct is not as alleged.  (*See, e.g.*, Def. Mot. 12 (arguing that certain alleged facts show the defendant was merely engaged in an "effort to settle" a "claim").)  Any disagreement about the facts or the inferences therefrom is for trial.  *See, e.g., Daubert*, 509 U.S. at 596 ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"); *Amorgianos*, 303 F.3d at 267 ("our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony"); *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) ("Disputes as to the strength of [an expert's] credentials, faults in his use of differential etiology as a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony."); *Ambrosini v. Labarraque*, 101 F.3d 129, 141 (D.C. Cir. 1996) (it is error to "conflate[] the questions of the admissibility of expert testimony and the weight appropriately to be accorded such testimony"); *United States v. 14.38 Acres of Land, More or Less Situated in Leflore City, State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) ("[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration").

In short, whatever the merits of arguments that the defendant may make to the jury or lines of cross-examination he may explore, the Government's proffered expert testimony "does not involve so-called 'junk science' and thus *Daubert*'s strictures are not implicated."  *Safrani v.*

*Werner Co.*, No. 95 Civ. 1267 (LBS), 1997 WL 729110, *1 (S.D.N.Y. Nov. 24, 1997); *see also, e.g.*, *McBeth v. Porges*, No. 15 Civ. 2742 (JMF), 2018 WL 5997918, *6 (S.D.N.Y. Nov. 15, 2018) (denying request for hearing where it "boils down to a challenge to the [expert's] qualifications and the basis for his testimony").

## **CONCLUSION**

For the foregoing reasons, the defendant's motion *in limine* to preclude expert testimony should be denied.

Dated: New York, New York
December 13, 2019

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:    s/ Matthew D. Podolsky
Matthew D. Podolsky
Daniel C. Richenthal
Robert B. Sobelman
Assistant United States Attorneys
(212) 637-1947/2109/2616

LAW OFFICES

# SCOTT A. SREBNICK, P.A.

SCOTT A. SREBNICK*
* ALSO ADMITTED IN NEW YORK

201 S. Biscayne Boulevard
Suite 1210
Miami, Florida 33131

December 6, 2019

Tel: 305-285-9019
Fax: 305-377-9937
E-mail: scott@srebnicklaw.com
*www.srebnicklaw.com*

<u>**Via E-mail**</u>
Matthew Podolsky, Esq.
Daniel Richenthal, Esq.
Robert Sobelman, Esq.
United States Attorney's Office
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007

> Re:   *United States v. Avenatti*, No. S1 19 Cr. 373 (PGG)
>        **Defendant's Rebuttal Expert Witness Notice**

Counsel:

Pursuant to Fed.R.Crim.P. 16(b)(1)(C), this letter provides notice of expert testimony that Mr. Avenatti may offer in his case-in-chief in rebuttal of the government's expert witnesses, Professor Nora Freeman Engstrom, Esq., and Mark L. Tuft, Esq. By providing this notice, we do not waive our position, as advanced in our motion *in limine* and supporting memorandum, that the government's proposed expert testimony is inadmissible and should be excluded.

Mr. Avenatti may call attorney Diane Karpman, Esq. as a rebuttal expert witness. Her curriculum vitae is attached. Her testimony would be based on her training, experience, review of certain evidence in the case, knowledge of the applicable California Rules of Professional Conduct, including but not limited to Rules 1.2, 1.4, 1.4.1, 1.5, 1.6, 1.7, 1.8.2, and 8.4, and Business and Professions Code 6000, *et seq.* We expect that Ms. Karpman would testify about the following matters.

1. Rule 1.2 addresses the allocation of authority between lawyer and client. As a general matter, clients have control over decisions involving substantive or essential rights involving the merits of a case. So, for example, the client must approve and sign a final settlement agreement regarding a potential claim. However, the tactical considerations involved in making a settlement demand, negotiating the settlement, and getting to a final agreement do not fall within a layperson's common experience. Thus, a lawyer is granted latitude in choosing between alternative tactical strategies in making a settlement demand because a lawyer may take such action on behalf of the client that is impliedly authorized to carry out the representation. When a client who feels victimized by a major corporation is interested in obtaining monetary damages and rooting out corruption at the corporation, and places no express restrictions upon the

lawyer, the lawyer has wide latitude to make tactical decisions and settlement demands to achieve those goals. This could include negotiating to be retained by the corporation to conduct an internal investigation of the corporation. If a conflict exists, the lawyer would need to obtain informed consent and appropriate waivers prior to being formally retained by the corporation. This is often encountered in employment litigation, where plaintiffs' lawyers may be retained by the defendant corporate entity after the conclusion of the litigation.

2. Rules 1.4 and 1.4.1 govern settlement offers (in addition to certain provisions of the Business and Professions Code 6000, *et seq*). A settlement offer is typically in writing and contains specific terms and conditions. A comment orally made by an attorney for a defendant that "I don't think the settlement of [the Plaintiff's] civil claims for 1.5 million dollars is going to be the stumbling block here" certainly does not qualify as a "written offer of settlement" that must be promptly communicated to the client under Rule 1.4.1. Moreover, such an oral comment can be reasonably construed as frolic and banter, or preliminary negotiations, and not subject to disclosure to the client. There is no duty to report all preliminary negotiations to a client. To do so could risk creating false expectations in the mind of the client.

3. Rule 1.4 requires a lawyer to "reasonably consult with the client about the means by which to accomplish the client's objectives in the representation," to "keep the client reasonably informed about significant developments relating to the representation," and to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." What is "reasonable" is heavily dependent upon the context and the nature of the relationship between the lawyer and the client. Some clients prefer that a lawyer handle all matters, without much communication, until a substantial decision needs to be made by the client. Other clients express a desire for frequent communication and greater input into strategy. There is no requirement that a lawyer communicate on a daily basis with the client, and no requirement that a lawyer provide the client with a verbatim account of statements made or actions taken during settlement negotiations. In general, it is reasonable for a lawyer to assume that he/she may make all of the strategy and tactical decisions in negotiating a settlement, so long as they are in furtherance of the client's overall objectives.

4. Under Cal. Bus. and Prof. Code §6147 and §6148, a fee agreement must be in writing for the agreement to be enforceable. However, the absence of a written fee agreement would not subject a lawyer to discipline by the California Bar. Rather, in the absence of a fee agreement, the lawyer would still be entitled to collect a reasonable fee. *See* §6147; 6148. The lawyer's failure to get a fee agreement in writing signed by the client would work to the detriment of the lawyer, not the client.

5. Rule 1.6 addresses Confidential Information of a client. A lawyer is required to maintain the confidentiality of a client's information, which includes any information

obtained by the lawyer during the professional relationship, or relating to the representation, the disclosure of which might be embarrassing or detrimental to the client. Where information provided by the client to the lawyer is the documentary evidence that actually proves the client's claim against a wrongdoer, and the client is pursuing a potential lawsuit, the client implicitly authorizes the lawyer to show that evidence to opposing counsel in a confidential settlement conference.

6. Rule 1.7 governs conflicts of interest. A lawyer may, as part of a settlement on behalf of a current client, be retained to conduct an internal investigation of the current client's adversary and to be paid by the adversary to conduct the investigation, so long as the arrangement is approved by the current client and any conflicts are waived in writing prior to the lawyer entering into a formal arrangement with the current client's adversary. This is typically encountered in employment litigation.

Mr. Avenatti expressly reserves the right to supplement the areas of testimony and opinions of Ms. Karpman depending on the testimony the government's fact and expert witnesses offer at trial and the Court's rulings regarding their admissibility. Specifically, Ms. Karpman may consider the evidence offered at trial and offer an opinion regarding whether Mr. Avenatti's conduct violated any fiduciary duties based on that evidence.

Respectfully,

SCOTT A. SREBNICK
JOSE M. QUINON

# DIANE L. KARPMAN
## KARPMAN & ASSOCIATES
**1650 SOUTH CREST DRIVE**
**LOS ANGELES, CA 90035**
**(310) 887-3900**
**karpethics@aol.com**

## PRACTICE DESCRIPTION:

Practice limited to representation of attorneys: ethics consultation, malpractice prevention, conflicts advice, State Bar defense, applications and reinstatement. Expert witness and consultant in legal malpractice and breach of fiduciary duty cases. Certified California State Bar Legal Malpractice Specialist. Certified California State Bar M.C.L.E. provider.

## PROFESSIONAL EXPERIENCE:

1994-2019    KARPMAN & ASSOCIATES* - Principal engaged in the representation of attorneys in matters relating to ethics consultation, State Bar discipline, admission and reinstatement, professional responsibility and malpractice.

1990-1994    COHEN & KARPMAN - Partner of two attorney firm engaged in legal malpractice defense, State Bar discipline and reinstatement, civil litigation and professional responsibility.

1982-1989    STATE BAR COURT - Referee (Hearing Officer). Adjudicated more than fifty cases involving lawyer discipline and issues regarding moral character. (Compensated State Bar Court Principal Referee 1989-1990.)

1980-1984    UNIVERSITY OF WEST LOS ANGELES COLLEGE OF LAW - Professor, Assistant Dean, Chair of the Academic Council (1982-1984) and Chair of the Contracts Department (1981-1982). Taught courses in contracts and the Uniform Commercial Code.

1975-1980    WESTERN STATE UNIVERSITY COLLEGE OF LAW - Instructor, Lecturer and Associate Professor. Taught courses in contracts and torts.

*A.V. - Preeminent Rated. Martindale-Hubbell

**LICENSE:**

| | |
|---|---|
| California State Bar: | Admitted June 1975. |
| United States Central District: | Admitted June 1975. |
| United States Supreme Court: | Admitted 1995. |
| United States Court of Appeals, Ninth Circuit: | Admitted September 2005. |
| United States District Court, Southern District: | Admitted April 2007. |
| United States District Court, Northern District: | Admitted May 2007. |
| United States District Court, Eastern District: | Admitted April 2007. |

**EDUCATION:**

Western State University College of Law,  Juris Doctorate 1974.

University of California, Los Angeles (UCLA), Bachelor of Arts (History), History Department Honors 1970.

**RELATED PROFESSIONAL EXPERIENCE:**

2013-2014     Top Rated Lawyer.

2013-2019     Best Lawyers.

2011-2014     Super Lawyers.

2007     Louis Fox Lifetime Achievement Award - Beverly Hills Bar Association.

2004     Alumni of the Year - Western State University College of Law.

2001     Harvard University, Cambridge, Massachusetts, Focus Group on Ethics Advisors in U.S. Law Firms.

2001-2003     Appointed "Ethics Consultant" in a Class Action by Los Angeles Superior Court.

1998-2006     Adjunct Professor Ethics, UCLA Attorney Assistant Training Program.

1991-1999     Beverly Hills Municipal Court Judge Pro Tempore.

1994     California consultant advising New Jersey Bar Association on the reorganization of their disciplinary system (Palm Springs).

1991-1993     Los Angeles Municipal Court Judge Pro Tempore: Qualified in Civil, Traffic, and Unlawful Detainer Law.

| 1990-1991 | Panel Member of California Appellate Project.  Engaged in writing criminal appellate briefs and oral arguments before the California Courts of Appeal: |

|     | People v. Patino | B050452 |
|     | People v. Evans | B046837 |
|     | People v. Douglas | BA002929 |
|     | People v. Cortes | A044037 |

| 1989-1990 | Compensated Principal Referee, California State Bar Court.  Author of numerous decisions. |

| 1982-1989 | California State Bar Court Referee (Hearing Officer).  Adjudicated matters involving lawyer discipline and issues regarding the moral character of applicants. |

**SUMMARY OF LEGAL PUBLICATIONS:**

Author of publications and articles on legal ethics and professional responsibility, including: coauthor **California Lawyer's Guide to Professional Responsibility.** Shepards/McGraw Hill (1994-1996). Contributing author to **California Pleadings and Practice,** Matthew Bender.  **Cornell Ethics Project** with Professor Roger C. Cramton and Brobeck, Phleger & Harrison. **American Law Institute** - Members Consultant Group, **Restatement of the Law of Lawyering.** Detailed publications list at pages 5-7.  Editorial Board, **ABA/BNA Lawyers' Manual on Professional Conduct**.

**SUMMARY OF BAR COMMITTEES:**

Service on committees of the California State Bar, Los Angeles County Bar Association, Beverly Hills Bar Association and American Bar Association.  A complete historical list of committee membership and positions is available on request.  A partial list of committee positions:

Beverly Hills Bar Liaison to the California State Bar Rules Revision Commission. (2018).

ALI Member Consultative Group, Principles of the Law of Aggregate Litigation (1997-2019), Principles of Government Ethics (2014).

California Attorney Civility Task Force (2006-2007).

Judicial Council of California, Bench-Bar Coalition.  (2014-2017).

American Bar Association, Standing Committee on Professionalism. (2006-2007).

3

American Bar Association Center CLE Committee. (2008-2012).

Member ABA/BNA Lawyers' Manual on Professional Conduct Editorial Board. (2009-2012).

Appointed as State Bar Delegate to ABA House of Delegates (2004-2012).

President, Association of Professional Responsibility Lawyers (2000). Chair-Corporate Responsibility Committee, SEC Sarbanes-Oxley Committee (2004).

ABA/BNA Lawyers' Manual on Professional Conduct, Chair Editorial Board (2006).

Member, National Organization of Bar Counsel (2001-2017).

Co-Chair, American Bar Association Technology Sub-Committee Publications Board (1999-2000).

American Bar Association Impaired Attorney Commission (APRL Liaison 1998-2000).

American Bar Association, <u>Professional Lawyer</u> Board of Editors (1997-2000).

Co-Chair, American Bar Association Client Security Fund Forum (1996).

Member, American Bar Association Standing Committee on Lawyer Responsibility for Client Protection (1994-1996).

Member, The Fellows of the American Bar Foundation (2006-2019).

Trustee, Los Angeles County Bar Association (1999-2012).

Chair, Los Angeles County Bar Association Professional Responsibility and Ethics Committee (2001).

Member, Los Angeles County Bar Association Amicus Briefs Committee (2002-2019).

Liaison, State Bar Board of Governors Committee on Discipline and Regulation for Los Angeles County Bar Association, Beverly Hills Bar Association, San Fernando Valley Bar Association (1991-2001).

Commissioner, Commission on Judicial Nominees Evaluation Committee (JNE) (1998-2000).

Member, Los Angeles County Bar Association - Ethics 2000 Committee (1998-2002).

Member, Foundation of the State Bar of California, Leadership Circle (2006-2007).

Board of Trustees, San Fernando Valley Bar, Chair Ethics Committee (1996-2000).

President, Beverly Hills Bar Association  (2013 - 2014).

First Vice President, Beverly Hills Bar Association (2011- 2012).

Chair, Beverly Hills Bar Ethics Committee (2000-2012). Member, Conference of Delegates (1993-2012).

Secretary and Treasurer, Beverly Hills Bar Association (2009-2010).

Board of Governors, Beverly Hills Bar Association (1994-1997, 2008-2012).

Board of Governors, Consumer Attorneys Los Angeles (1995-1996).

## SIGNIFICANT APPELLATE DECISIONS:

*In the Matter of Respondent Q.* (Review Dept. 1994) 3 Cal. State Bar Ct. Rptr.18. The hearing department of the California State Bar Court restricted the State Bar Investigators from contacting non-complaining clients (based upon privileged information). The Review Department ruled that such a restriction was beyond the Court's jurisdiction and contact could not be prohibited. (Rule of Procedure 2410, prohibiting such contact was implemented the following year.)

*In the Matter of Edmund C. Ike* (Review Dept. 1996) 3 Cal. State Bar Ct. Rptr. 483. The Review Department upheld the Hearing Judge's recommendation to revoke a lawyer's license to practice law based on his failure to update his State Bar application to reveal that he was awaiting trial on eleven felony counts. The attorney raised several procedural and due process issues.

*In re Attorney Discipline System* (1998) California, 19 Cal. 4th 582. The California Supreme Court sought comment on its authority to impose a fee for discipline. Drafted and submitted American Professional Responsibility Lawyer's response, supporting the Court's inherent authority to discipline attorneys.

*Manfredi & Levine v. Superior Court of Ventura* (1998) 66 Cal. App. 4th 1128; 78 Cal. Rptr. 2d 494.  Appellate opinion addressed issues as to the appropriate procedures to follow when an attorney discovers an absolute conflict of interest involving a client while in the midst of an arbitration, how the attorney should handle withdrawal, and the role the court should assume.

*In the Matter of Clifford R. Weber* (Review Dept. 1998) 1998 Cal. Op. Lexis 17. Issue was the State Bar Court's role in motions for summary disbarment based on a felony conviction (due to a change in the relevant statute in 1996) although numerous members of the community, including the Federal Judge who adjudicated the criminal case declared that disbarment was not justified in this case.

*In re Blum* (Review Dept. 2002) Cal. Bar Ct. Review Dept., No. 96-O-03531. The Review Department recommended that a lawyer found to be emotionally incapable of confronting her physically and psychologically abusive husband/law partner about irregularities in the firm's trust accounts should receive a 30-day suspension instead of a more severe sanction.


**LEGAL PUBLICATIONS, MEDIA AND BROADCAST:**

ABC Television News "Lawyer Photoshopped Herself Into Pictures With Celebrities," by Carlos Granda.  September 19, 2014.

KGO 810 Radio "San Francisco Afternoon News."  DA's letters to debt collectors raise ethical questions.  "Ethics Byte" Cal Bar Journal November 2012.

ABA Journal Podcast Series, "Sealing the Deal: How to Negotiate Fee Agreements," with Howard B. Miller, former President of the State Bar of California (2011).

National Public Radio, "All Things Considered With Michelle Norris." ABA Opinion 11-459, advising lawyers to assume that their client's employers have handbooks or policies informing workers that emails on company owned devices will not be privileged (2011).

KFI, (Talk Radio) "John & Ken Show."  Ken Starr's submission of false affidavits in a death penalty case involving Michael Morales (2006).

KABC, (Talk Radio) "Ken & Company." Ethics of regaining former jurors as consultants regarding Greg Haidl (2004).

In The Beginning: The Georgetown Journal of Legal Ethics, A Review of Legal Malpractice by Ronald E. Mallen and Jeffrey M. Smith, (2004).

Member Consultant Group, Restatement of the Law of Lawyering, American Legal Institute (1998-2001).

Publications Board Member, Compendium of Professional Responsibility Rules and Standards, Legal Assistant's Guide to Professional Responsibility, American Bar Association (1999-2001).

Corporate Counsel Lawcast Outline, Federal Circuit explores ethical conundrums counsel face in M & A discussions (2001).

Fox News Network, "On the Record" with Greta Van Susteren. Ethical issues regarding Robert Blake (2002).

KPFJ (National Public Radio) regarding the ABA's role in recommending judges (2001).

Contributing editor, California Pleadings and Practice, Attorney sections, Matthew Bender (1997).

Associate editor California, American Legal Ethics Library, Cornell Ethics Project with Professor Roger Cramton. Assisted Brobeck, Phleger & Harrison in the California narrative. <http://law.cornell.edu/ethics>

Coauthor, California Lawyer's Guide to Professional Responsibility, annotated Rules of Professional Conduct and the State Bar Act, Shepards/McGraw Hill (1994-1996).

Contributing author, Attorney Ethics, Competency and Trust Account Management, Matthew Bender (1993-1995).

**Ethics Byte**, monthly column for the State Bar of California, California Bar Journal. <http://www.calbar.org/2cbj>

| | | |
|---|---|---|
| *Former Chief Justice's Book Packs Surprising Plot Twists.* | April | 2014 |
| *How Long Should Liability Last?* | March | 2014 |
| *Exercise Caution When a Third Party Foots the Bill.* | January | 2014 |
| *Make Sure Billing Practices are Bulletproof.* | December | 2013 |
| *The Limits of Civility.* | November | 2013 |

7

| | | |
|---|---|---|
| *Foreign Fee Scammers Target U.S. Lawyers.* | October | 2013 |
| *Rules On What's Privileged a Moving Target.* | September | 2013 |
| *Web Offers Pearls of Wisdom, But Also Legal Tangles.* | August | 2013 |
| *Client Relationships Have Limited Shelf Life.* | July | 2013 |
| *Is there Concrete Value in MCLE Requirements?* | May | 2013 |
| *Lawyers Increasingly Exposed to Unfair Competition Law Liability.* | April | 2013 |
| *Confessions to Client Threatens Malpractice Insurance Coverage.* | February | 2013 |
| *Building Safeguards Into Fee Agreements.* | January | 2013 |
| *DA's Letters to Debt Collectors Raise Ethical Questions.* | November | 2012 |
| *What to do When you Find a Smoking Gun, But It's Privileged.* | October | 2012 |
| *ABA Model Rules Reflect Technology, Globalization.* | September | 2012 |
| *Lawyer Admission Cases Highlight the Personal, Political.* | August | 2012 |
| *Focus Returns to Tighter Discipline with Supreme Court's Return of 24 Cases.* | July | 2012 |
| *Online Access to Ethics Opinions Would Guard Against 'dog law.'* | June | 2012 |
| *Loose Lips Sink Ships for Attorneys in Trayvon Martin Case.* | May | 2012 |
| *Disqualification: Square Pegs and Round Holes.* | April | 2012 |
| *There's a TV News Crew in the Lobby Asking For a Partner.* | March | 2012 |
| *Redefining Inadvertent.* | February | 2012 |
| *The Ostrich is a Noble Animal.* | January | 2012 |
| *What's a Life Story Worth?* | December | 2011 |
| *'Flash Sales' for Legal Services?* | November | 2011 |
| *Early Client Education Can Prevent Big Problems Later.* | October | 2011 |
| *No Complaints About Lawyer Rules - You Could Be a Judge.* | September | 2011 |
| *Balancing a Fix with Client Rights.* | August | 2011 |
| *Internal Emails and Attorney-Client Privilege.* | July | 2011 |
| *Has the Supreme Court Sealed the Lips of California Lawyers?* | June | 2011 |
| *R u Sure u Want 2 Tweet?* | May | 2011 |
| *Consumer Alert or Lawyer Alert?* | April | 2011 |
| *True Retainers Have Pros and Cons.* | March | 2011 |
| *High Court Holds Lawyers are Not Accountable for Misconduct During Mediation.* | February | 2011 |
| *Who Should Run the State Bar?* | January | 2011 |
| *Eliminating Wild Expectations With Disclosure.* | December | 2010 |
| *Keeping a Simple Fee Dispute from Escalating into a Big Headache.* | October | 2010 |

| | | |
|---|---|---|
| *New Professional Rules Generate Plenty of Disagreement.* | September | 2010 |
| *Should 'privilege karma' Be Available Only to Active Lawyers?* | August | 2010 |
| *A New Decision is Giving Lawyers Acid Reflux.* | July | 2010 |
| *Balancing Professional Duties Can Be Like Walking a Tightrope.* | June | 2010 |
| *How to Safely Withdraw from a Case.* | May | 2010 |
| *A Challenge to Lawyers' Duties to Former Clients.* | April | 2010 |
| *Technology Offers an E-ticket to a New World of Legal Practice.* | March | 2010 |
| *Time for Tuning Up Those Fee Agreements.* | February | 2010 |
| *Supreme Court Gift for Lawyers and Their Clients.* | January | 2010 |
| *Most States Still Reject Law Firm Discipline.* | December | 2009 |
| *'Miranda' for Corporate Execs Under Scrutiny.* | November | 2009 |
| *Complaints to Bar May Involve Ulterior Motives.* | October | 2009 |
| *Outdated Rules for 21ˢᵗ Century Advertising.* | September | 2009 |
| *What Should You Do With Those Old Client Files?* | August | 2009 |
| *High Court Opens a New Era of Judicial Recusal.* | July | 2009 |
| *Torture Memos, LA Election Raise Ethics Questions.* | June | 2009 |
| *Handle Client Funds Properly — Or Else.* | May | 2009 |
| *Outside-the-law Activities Can be Risky.* | April | 2009 |
| *Marketing on the Internet, Following Rules.* | March | 2009 |
| *Avoid Problems When Billing Your Clients.* | February | 2009 |
| *Some Rules Can Cause an Uncivil Ruckus.* | January | 2009 |
| *Beware the Meltdown's Temptations.* | December | 2008 |
| *Court Gives Criminal Defense Lawyers a Break.* | November | 2008 |
| *How to Build a Raise Into Your Fee Agreement.* | October | 2008 |
| *Of Bank Failures and Conflicts at New Law Firms.* | September | 2008 |
| *Online Charges Catch the Good and the Bad.* | August | 2008 |
| *Of Walls and Waivers in Conflict Disputes.* | July | 2008 |
| *Supreme Court Lets Prosecutors Off the Hook.* | June | 2008 |
| *Body Shows and Professional Conduct Rules.* | May | 2008 |
| *Advertising Rules for the 21ˢᵗ Century.* | April | 2008 |
| *Make Your Voice Heard On Insurance.* | March | 2008 |
| *Qualcomm: A New Era In E-Discovery.* | February | 2008 |
| *New Meaning of "Inadvertent Receipt" Given.* | January | 2008 |
| *A Break for Lawyers Who Change Firms.* | December | 2007 |
| *Contingency Fees: Freedom From Worry.* | November | 2007 |
| *Put Safety Nets in Place for Solo Lawyers.* | October | 2007 |
| *Confidentiality Trumps a Claim of Negligence.* | September | 2007 |
| *Multiple Clients May Present Multiple Conflicts.* | August | 2007 |
| *Metadata Can Cause Lawyers Megaproblems.* | July | 2007 |
| *An Exception to the Attorney-Client Privilege.* | June | 2007 |
| *Distinguishing Between the Standards.* | May | 2007 |

| | | |
|---|---|---|
| *Troubling Twist on Sarbanes-Oxley Act.* | April | 2007 |
| *Weird Fiduciary Breach Claim Goes Client's Way.* | February | 2007 |
| *A Collision of Legal Needs and Professionalism.* | January | 2007 |
| *Advertising Rules in the YouTube Era.* | December | 2006 |
| *Show Biz and Conflicts Cases Go Hand in Hand* | November | 2006 |
| *Insurance Rule Will Be a Scarlett Letter For Some.* | October | 2006 |
| *Threats to Gain an Advantage are a Bad Idea.* | September | 2006 |
| *Screening May Not Prevent Disqualification.* | August | 2006 |
| *Free Speech Exists for Lawyers, Too.* | July | 2006 |
| *Once Again, Another Trial By Media.* | June | 2006 |
| *Privacy Law, Just Like Ethics, Lags Technology.* | May | 2006 |
| *Nonprofits Are in a Class of Their Own.* | April | 2006 |
| *What's the Bottom Line on Hourly Billing?* | March | 2006 |
| *'Truthiness' and Preserving Your Reputation.* | February | 2006 |
| *The Newest Risk Management Tool - OSINT.* | December | 2005 |
| *Metadata Can Bite You Where it Hurts, Law-Wise.* | November | 2005 |
| *No Fooling With the Rules in Class Actions.* | October | 2005 |
| *Clarifying Fee Agreements and Client Consents.* | September | 2005 |
| *Let's Put an End to the Epidemic of Conflicts.* | August | 2005 |
| *A Bad Idea for Both Lawyers and Presidents.* | July | 2005 |
| *Protecting Client Secrets in an Electronic World.* | June | 2005 |
| *Supervising Role Brings Specific Legal Obligations.* | April | 2005 |
| *Careful How You Get Free From a Case or a Client.* | March | 2005 |
| *An Ethics Riddle in the Notorious "Torture Memo."* | February | 2005 |
| *Resisting The Pull of Family and Friends.* | January | 2005 |
| *What Were Martha Stewart's Lawyers Thinking?* | December | 2004 |
| *Court Issues a Warning About Warning Clients.* | November | 2004 |
| *Client Trust Accounts Going Digital, Too.* | October | 2004 |
| *Disclosure is Key to Compliance With Rule 3-300.* | September | 2004 |
| *Playbook Theory Isn't Just For Football Coaches.* | August | 2004 |
| *Big Brother, Little Brother - All Are Watching.* | July | 2004 |
| *Take a Close Look at Binding Arbitration.* | June | 2004 |
| *Sometimes You Just Don't Want to Know.* | May | 2004 |
| *Supreme Court Clarifies Fee Split Questions.* | April | 2004 |
| *There are Some Exceptions to Privilege Rule.* | March | 2004 |
| *A Twilight Zone of Inharmonic Convergence.* | February | 2004 |
| *General Counsels Face Some Tricky Ethical Problems.* | January | 2004 |
| *Judgment Often Depends on the Circumstance.* | November | 2003 |
| *Lawyer-As-Priest: Always Be Honest.* | October | 2003 |
| *Looser Lips Chip Away at Core Value.* | September | 2003 |
| *Causation Requirement Reaffirmed.* | August | 2003 |
| *Two Decisions Bring Relief and Concern.* | July | 2003 |
| *Unreported Decisions Offer Novel Concepts.* | June | 2003 |
| *Line Between Advocates and Advisors Blur.* | May | 2003 |

| | | |
|---|---|---|
| *Risk Managers in Boardrooms and War Rooms.* | April | 2003 |
| *Orange Alert: Careful What You Call 'Fees.'* | March | 2003 |
| *'One Size Fits All' Does Not Apply to Your Clients.* | February | 2003 |
| *Claims Against Lawyers Are A Popular Activity.* | January | 2003 |
| *Supreme Court Ruling on Fees: 'Bah Humbug.'* | December | 2002 |
| *An Evolving Rule On Non-Discrimination.* | November | 2002 |
| *Reality Law Or Not Just Another String Theory.* | October | 2002 |
| *New Law Turns Lawyers Into Informants.* | September | 2002 |
| *'Lost' Punitive Damages Make Business Risky.* | August | 2002 |
| *Government Lawyers Bear a Heavy Burden.* | July | 2002 |
| *Enron Fallout Will Mean Changing Some Ethics Rules* | June | 2002 |
| *On Psychics, Lollygagging and Best Judgment* | May | 2002 |
| *A New Ethical Peril For Lawyers: Serial Conflicts.* | April | 2002 |
| *Twilight Zone Cases Can Make Practice Tricky.* | March | 2002 |
| *Doing The Right Thing Can Trump No-Contact Rule.* | February | 2002 |
| *Ethics Lawyers Work in the ER of the Profession.* | January | 2002 |
| *Lawyers Are Members of the Public, Too.* | December | 2001 |
| *New Decision May Subject Lawyers to Suits.* | November | 2001 |
| *Lawyers Move On In Usual Way Despite Disaster.* | October | 2001 |
| *Report Shows With Law Firms, Size Does Matter.* | September | 2001 |
| *Let's Go Surfin' Now, Everybody's Learnin' How.* | August | 2001 |
| *Level Field or a Judicial Practical Joke?* | July | 2001 |
| *Protect Your Firm - Build Ethical Walls.* | June | 2001 |
| *Law Firm Hit For Failing To Register As LLP.* | May | 2001 |
| *2 New Rulings Send Litigators Back To Basics.* | April | 2001 |
| *Time For Lawyers To Reconsider Our Ethical Rules.* | March | 2001 |
| *For Our Clients, It Is Now Time To Legitimize MJP.* | February | 2001 |
| *Mixed Rulings on Advertising Fiduciary Duty.* | January | 2001 |
| *Predicting the Future (In Your Dreams).* | December | 2000 |
| *When It Comes to Shielding: Holy Screen 2.* | November | 2000 |
| *When It Comes to Shielding: Holy Screen 1.* | October | 2000 |
| *Beware Doing That Favor for a Colleague.* | September | 2000 |
| *May Be Safer in the World of Consulting.* | August | 2000 |
| *Warding Off a Homogenized Profession.* | July | 2000 |
| *Taking An Ethical Piece of the Action.* | June | 2000 |
| *Inspiration From Erin Brockovich.* | May | 2000 |
| *More on the Written Agreement.* | April | 2000 |
| *Protection: A Written Agreement.* | March | 2000 |
| *'Rampant' Conflicts in a New Economy.* | February | 2000 |
| *Warding Off the Foul Tort In a New Year.* | January | 2000 |
| *Protecting Yourself From a Complaint.* | December | 1999 |
| *Maintaining Confidentiality With a Slip-Up.* | November | 1999 |
| *Before You Sue For Fees, Think Again.* | October | 1999 |
| *Time to Read Between 'Of Counsel' Lines.* | September | 1999 |

11

| | | |
|---|---|---|
| *Ruling Really Doesn't Alter Malpractice.* | August | 1999 |
| *The World of 'Bare Naked Referrals.'* | July | 1999 |
| *Fiduciary Duties Basis For All Rules.* | April | 1999 |
| *The Receipt of Confidential Information as a Fiduciary.* | March | 1999 |
| *Make Sure You Identify Your Client.* | February | 1999 |
| *Era of Inadvertent Disclosures.* | January | 1999 |
| *Legal Beliefs Prove to Be Pure Myths.* | December | 1998 |
| *Sanctions Must Be Revealed.* | November | 1998 |
| *Clients Still Have Right To Secrecy.* | October | 1998 |
| *He Said, She Said.* | September | 1998 |
| *Malpractice Protection Imperative.* | August | 1998 |
| *Don't Make Your Clients Messengers.* | July | 1998 |
| *Outlining Obligations to the Client.* | May | 1998 |
| *At All Costs, Remember To Be Civil.* | April | 1998 |
| *Beware the Temptation To Dump A Client.* | March | 1998 |
| *Competency Rule Violation is 1-2 Punch.* | February | 1998 |
| *Remember the 3rd-Party Payor Rule.* | January | 1998 |
| *The Files Belong to the Client.* | December | 1997 |
| *Threatening to Gain an Advantage.* | November | 1997 |

**Professional Responsibility & Ethics,** column for the Los Angeles County Bar Association, County Bar Update. <*http://www.lacba.org/showpage.cfm?pageid=2198*>

| | | |
|---|---|---|
| *Rule Aficionados and ADR* | December | 2002 |
| *Stark Naked Referral Fees.* | October | 2002 |
| *Sunrise, Sunset...or Termination Letters: Avoiding Former Client Conflicts.* | September | 2002 |
| *Risky Behavior Aggravates Insurance Crisis* | August | 2002 |
| *Change and the Standard of Care.* | May | 2002 |
| *Favors, Friends and Family.* | April | 2002 |
| *Confidentiality, Collaboration, and Lawyer Angst.* | February | 2002 |
| *Different Strokes.* | October | 2001 |
| *Knowing the Code: Wilful Conduct & Moral Turpitude.* | September | 2001 |
| *Illuminating the Murky Area of Lawyer-To-Lawyer Consultations.* | August | 2001 |
| *The Bench: Contact With Officials.* | May | 2001 |
| *Not a Hired Gun: Ethical Duties to Justice & the Courts. By Ira Spiro & Diane Karpman.* | March | 2001 |
| *Dissolution of a Law Firm.* | February | 2001 |
| *Legal Ethics Law, Rules & Commentary: Where to Look. By Ira Spiro & Diane Karpman.* | January | 2001 |
| *Ethics Are Coming! Ethics Are Coming!* | December | 2000 |

**Scruples,** monthly column for the San Fernando Valley Bar Association, <u>BarNotes</u>.
<http://www.sfvba.org/bar-notes>

| | | |
|---|---|---|
| *The Ethics 2000 Project.* | January | 2000 |
| *'Bare Naked' Referral Fees.* | October | 1999 |
| *Adverse Interests.* | July/August | 1999 |
| *A Letter From The State Bar.* | June | 1999 |
| *High Crimes and Misdemeanors.* | March | 1999 |
| *Withdrawal and Reasonably Foreseeable Prejudice.* | February | 1999 |
| *Malpractice and The State Bar.* | January | 1999 |
| *Withdrawal.* | December | 1998 |
| *Sanctions.* | November | 1998 |
| *Client Trust Accounts.* | October | 1998 |
| *Mythology and Walls.* | September | 1998 |
| *Proper Relationships Between Bench and Bar.* | July/August | 1998 |
| *Frivolous Litigation.* | June | 1998 |
| *Advertising.* | May | 1998 |
| *Other People's Money.* | April | 1998 |
| *Delay: Tactics Or Misconduct?* | March | 1998 |
| *Communication With a Client.* | February | 1998 |
| *N.S.F. Trust Account Checks.* | January | 1998 |
| *Pleading Just the Beginning of Nightmare.* | December | 1997 |
| *Trust Account Essentials.* | November | 1997 |

*Emotional Distress Damages and Legal Malpractice,* <u>Los Angeles Daily Journal,</u>
September, 2018.

*ABA Should Adopt Discrimination Rule* - <u>Los Angeles Daily Journal,</u> August,
2016.

*It's That Time of Year: MCLE is Due,* <u>Los Angeles Daily Journal,</u> February, 2014.

*How a Case Moves From Investigation to Discipline at the State Bar* - Third in a
Three-Part Series, <u>Los Angeles Daily Journal,</u> November 28, 2011. By Diane L.
Karpman and Stephen J. Strauss.

*How a Case Moves From Investigation to Discipline at the State Bar* - Second in
a Three-Part Series, <u>Los Angeles Daily Journal,</u> November 21, 2011. By Diane L.
Karpman and Stephen J. Strauss.

*How a Case Moves From Investigation to Discipline at the State Bar* - First in a
Three-Part Series, <u>Los Angeles Daily Journal,</u> November 14, 2011. By Diane L.
Karpman and Stephen J. Strauss.

*A Scarlet Letter - Your Weakest Moments Can and Will be Used Against You,*
Los Angeles Daily Journal, August, 2011.  By Diane L. Karpman and Stephen J.
Strauss.

*A Scarlet Letter: Interim Suspension Following a Criminal Conviction,*
Los Angeles Daily Journal, July, 2011.  By Diane L. Karpman and Stephen J.
Strauss.

*I Got a State Bar Letter,* Los Angeles Daily Journal, June 27, 2011.
By Diane L. Karpman and Stephen J. Strauss.

*I Got a State Bar Letter,* Los Angeles Daily Journal, June13, 2011.
By Diane L. Karpman and Stephen J. Strauss.

*How to Safely Withdraw From a Case,* Los Angeles Daily Journal,
January, 2011.  By Diane L. Karpman and Stephen J. Strauss.

*When Lawyers Collect More Than Clients Receive,* Los Angeles Daily Journal,
October, 2010.  By Diane L. Karpman and Stephen J. Strauss.

*Attorney Speaks Out Against Former Client's Project,* Los Angeles Daily Journal,
June, 2010.

*Threatening Legal Action in Fee Disputes Can Blow Up In Your Face,* ABA
Journal, December 2009.

*Board Digest,* Beverly Hills Bar Brief, November 2009.

*Defending Counsel,* ABA Journal - Law News Now, May 2008.

*Top 10 Ethics Traps, The Way Out: Translate for the Internet,* ABA Journal,
November 2007.

*Advertising on the Internet,* ABA Professional Lawyer, September 2007.

*Advice and Consents,* Los Angeles Lawyer, A Publication of the Los Angeles
County Bar Association, June 2007, Volume 30, Number 4.

*On a Precipice of Potential Malpractice,* California Litigation, The Journal of the
Litigation Section, State Bar of California, 2006, Volume 19, Number 3.

*Dead Sea Scrolls,* GPSOLO, A Publication of the American Bar Association, June
2004, Volume 21, Number 4.

14

*When It's NOT Better To Give Than To Receive,* **GPSOLO**, A Publication of the American Bar Association, December 2003, Volume 20, Number 8.

*Not Using New Technology: Keep Up Or Face Peril,* **GPSOLO**, A Publication of the American Bar Association, June 2003, Volume 20, Number 4.

*Enron Fallout Will Mean Changing Some Ethics Rules,* Greater Los Angeles Chapter Association of Legal Administrators, Leadership Exchange, April 2003 Volume 1, Issue 1.

*Summary Disbarment Violates Rights,* Los Angeles Daily Journal, November 2000.

*Attorney's Fees: Landmines, Hazards and Opportunities,* American Lawyer Media Online, Legal Seminars.com, June 1999.

*The Ethics 2000 Project,* Karpman On Ethics, The Beverly Hills Bar Brief, June 1999.

*The Wild Wild West,* Karpman On Ethics, The Beverly Hills Bar Brief, June 1998.

*Professionalism,* Karpman On Ethics, The Beverly Hills Bar Brief, July 1998.

*Prospective Conflicts of Interest,* The California Lawyer, December 1998.

*Bullet Proof Fee Agreements,* California Consumer Attorney's Forum, 1996.

*$10.77 Can Hurt You,* Lawyer's World (San Fernando Valley Bar) January 1996.

*Letting Lawyers Have Their Say,* The Professional Lawyer (American Bar Association's Center for Professional Responsibility), November 1995.

*Pathological Gambling and Professional Licensure,* The Professional Lawyer (American Bar Association Center for Professional Responsibility), June 1995.

*Letting Lawyers Have Their Say,* Los Angeles Daily Journal, May 1995.

Quarterly column for the Small/Solo Practitioner's Section, California Bar Journal (California State Bar) 1994.

*Trust Account Essentials,* Advocate (Los Angeles Trial Lawyers), October 1994.

15

*Looking Out For John Q. Public,* Los Angeles Daily Journal, August 1994.

*Sunshine Could Darken the Profession,* Los Angeles Daily Journal, February 1994.

*The Care and Feeding of Your License* - Professional Responsibility Considerations,  Advocate (Los Angeles Trial Lawyers), February 1994.

*Professionalism v. Free Speech,* State Bar Bulletin, February 1993.

*What To Do When The State Bar Calls,* California Legal Secretary, 1992.

*Attorney Discipline,* Los Angeles Lawyer, February 1992.

## BAR ASSOCIATION COMMITTEE EXPERIENCE:

2019      Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Amicus Briefs.

2018      Beverly Hills Bar Liaison to the California State Bar Rules Revision Commission.

Beverly Hills Bar Association Trustee Representative to the Los Angeles County Bar Association Board of Trustees.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Amicus Briefs.

2017      Beverly Hills Bar Liaison to the California State Bar Rules Revision Commission.

Beverly Hills Bar Association Trustee Representative to the Los Angeles County Bar Association Board of Trustees.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Amicus Briefs.

2016     Beverly Hills Bar Liaison to the California State Bar Rules Revision Commission.

Beverly Hills Bar Association Trustee Representative to the Los Angeles County Bar Association Board of Trustees.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Amicus Briefs.

2015     Beverly Hills Bar Liaison to the California State Bar Rules Revision Commission.

Beverly Hills Bar Association Trustee Representative to the Los Angeles County Bar Association Board of Trustees.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Amicus Briefs.

2014     President, Beverly Hills Bar Association.

Beverly Hills Bar Association Trustee Representative to the Los Angeles County Bar Association Board of Trustees.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Amicus Briefs.

Member Breakfast Club.

2013     Beverly Hills Bar Association Trustee Representative to the Los Angeles County Bar Association Board of Trustees.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

17

Los Angeles County Bar Association, Professional Responsibility and Ethics Amicus Briefs.

Member Breakfast Club.

2012      Member, Beverly Hills Bar Association Board of Governors.

Beverly Hills Bar Association Trustee Representative to the Los Angeles County Bar Association Board of Trustees.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Amicus Briefs.

ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

Associate Member, National Organization of Bar Counsel.

California Attorney Civility Task Force.

Member Breakfast Club

2011      Member, Beverly Hills Bar Association Board of Governors.

Beverly Hills Bar Association Trustee Representative to the Los Angeles County Bar Association Board of Trustees.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Amicus Briefs.

ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

Associate Member, National Organization of Bar Counsel.

California Attorney Civility Task Force.

Member Breakfast Club

2010    Beverly Hills Bar Liaison to the State Bar Commission for the Revision of the
        Rules.

        Member, Beverly Hills Bar Association Board of Governors.

        Secretary-Treasurer, Beverly Hills Bar Association Executive Committee.

        Beverly Hills Bar Association Trustee Representative to the Los Angeles County
        Bar Association Board of Trustees.

        Los Angeles County Bar Association, Professional Responsibility and
        Ethics Committee.

        Los Angeles County Bar Association, Professional Responsibility and Ethics
        Amicus Briefs.

        ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

        Associate Member, National Organization of Bar Counsel.

        California Attorney Civility Task Force.

        Member Breakfast Club

2009    Beverly Hills Bar Liaison to the State Bar Commission for the Revision of the
        Rules.

        Member, Beverly Hills Bar Association Board of Governors.

        Los Angeles County Bar Association, Professional Responsibility and
        Ethics Committee.

        ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

        Associate Member, National Organization of Bar Counsel.

        California Attorney Civility Task Force.

        Member Breakfast Club

2008    California Attorney Civility Task Force.

        Beverly Hills Bar Liaison to the State Bar Commission for the Revision of the
        Rules.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Associate Member, National Organization of Bar Counsel.

Member Breakfast Club.

2007        California Attorney Civility Task Force.

Beverly Hills Bar Liaison to the State Bar Commission for the Revision of the Rules.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

Associate Member, National Organization of Bar Counsel.

Member Breakfast Club.

2006        California Attorney Civility Task Force.

Beverly Hills Bar Liaison to the State Bar Commission for the Revision of the Rules.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

ABA/BNA Lawyers' Manual on Professional Conduct, Chair Editorial Board.

Associate Member, National Organization of Bar Counsel.

Member Breakfast Club.

2005        Beverly Hills Bar Liaison to the State Bar Commission for the Revision of the Rules.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

Associate Member, National Organization of Bar Counsel.

Member Breakfast Club.

2004         Western State University College of Law Alumni of the Year.

Chair, Beverly Hills Bar Ethics Committee.

Beverly Hills Bar Liaison to the State Bar Commission for the Revision of the Rules.

Chair, Association of Professional Responsibility Lawyers, Corporate Responsibility Committee, SEC Sarbanes-Oxley Committee.

Los Angeles County Bar Association, Amicus Briefs Committee.

Los Angeles County Bar Association, Attorneys Errors and Omissions Prevention Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

Associate Member, National Organization of Bar Counsel.

Member Breakfast Club.

2003         Chair, Beverly Hills Bar Ethics Committee.

Beverly Hills Bar Liaison to the State Bar Commission for the Revision of the Rules.

Chair, Corporate Responsibility Committee, SEC Sarbanes-Oxley Committee.

Los Angeles County Bar Association, Amicus Briefs Committee.

Los Angeles County Bar Association, Attorneys Errors and Omissions Prevention Committee.

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee.

ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

Member, National Organization of Bar Counsel.

Member Breakfast Club.

2002       ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

Chair, Beverly Hills Bar Association Ethics Committee, Revision Commission Liaison.

Member, National Organization of Bar Counsel.

Member, Breakfast Club.

2001       Chair, Los Angeles County Bar Committee on Professional Responsibility and Ethics Committee.

ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

Member, National Organization of Bar Counsel.

Past President, Association of Professional Responsibility Lawyers.
Trustee, Los Angeles County Bar Association.

Member, California Coordinating Committee,  Ethics 2000.

Liaison, State Bar Board of Governor's Committee on Regulation and Discipline for Los Angeles County Bar, Beverly Hills Bar and San Fernando Valley Bar.

Chair, Ethics 2000 Committee, Beverly Hills Bar Association.

Member, Breakfast Club.

2000       ABA/BNA Lawyers' Manual on Professional Conduct, Editorial Board.

Past President, Association of Professional Responsibility Lawyers.

Member, American Bar Association's Center for Professional Responsibility Publications Board, Professional Lawyer.

Trustee, Los Angeles County Bar Association.

Member, California Coordinating Committee,  Ethics 2000.
Member Consultative Group, Restatement of the Law,   The Law Governing Lawyers.

22

Members Consultant Group, American Bar Association, Ethics 2000 Commission.

Ethics Faxline, pro bono service offered to all members of the California State Bar. Grants received from the California State Bar Foundation and the American Bar Association's Center for Professional Responsibility.

Liaison, State Bar Board of Governor's Committee on Regulation and Discipline for Los Angeles County Bar, Beverly Hills Bar and San Fernando Valley Bar.

Former Commissioner, Commission on Judicial Nominees Evaluation (JNE). The State Bar Commission evaluating appointees and elevations to the bench.

Vice chair, Los Angeles County Bar Committee on Professional Responsibility and Ethics Committee.

Chair, Ethics 2000 Committee, Beverly Hills Bar Association.

Member, Lawyers Club of Los Angeles.

Member, Breakfast Club.

1999          President, Association of Professional Responsibility Lawyers; Program Chair Los Angeles Midyear Meeting, February.

Member, American Bar Association's Center for Professional Responsibility Publications Board, Professional Lawyer.

Member, State Bar Board of Governor's Special Committee to reconsider the Rules of Procedure of the California State Bar.

Commissioner, Commission on Judicial Nominees Evaluation (JNE). The State Bar Commission evaluating appointees and elevations to the bench.

Trustee, Los Angeles County Bar Association.

Member, California Coordinating Committee, Ethics 2000.

Member Consultative Group, Restatement of the Law, The Law Governing Lawyers.

Members Consultant Group, American Bar Association, Ethics 2000. Ethics Faxline, pro bono service offered to all members of the California State Bar. Grants received from the California State Bar Foundation and the American

23

Bar Association's Center for Professional Responsibility.

Liaison, State Bar Board of Governor's Committee on Regulation and Discipline for Los Angeles County Bar, Beverly Hills Bar and San Fernando Valley Bar.

Vice chair, Los Angeles County Bar Committee on Professional Responsibility and Ethics Committee.

Member, Los Angeles County Bar Association Committee on Evaluations of Professional Standards and the State Bar.

Chair, Ethics Committee, Counsel for Legal Referral Service,  Board of Trustees, San Fernando Valley Bar Association.

Chair, Ethics 2000 Committee, Beverly Hills Bar Association.

Member, Culver Marina Bar Association.

Member, Lawyers Club of Los Angeles.

Member, Breakfast Club.

1998        Commissioner, Commission on Judicial Nominees Evaluation (JNE).  The State Bar Commission evaluating appointees and elevations to the bench.

APRL Liaison, American Bar Association's Center for Professional Responsibility Publications Board, Impaired Attorney Commission.

Member Consultative Group, Restatement of the Law,  The Law Governing Lawyers.

Members Consultant Group, American Bar Association, Ethics 2000.

Chair, Ethics Committee, Counsel for Legal Referral Service, Board of Trustees, San Fernando Valley Bar Association.

Chair, Beverly Hills Bar Association Ethics Committee.

Member, Beverly Hills Bar Association Conference of Delegates. Cosponsor with Los Angeles County Bar Association of Rule 4-100 Modification.
Chair, Ethics 2000 and Members Consultant Group Representative.

Secretary, Association of Professional Responsibility Lawyers.

Secretary, Los Angeles County Bar Committee on Professional Standards.

Member, Los Angeles County Bar Association Committee on Evaluation of Professional Standards and the State Bar.

Member, Culver Marina Bar Association.

Member, Lawyers Club of Los Angeles.

Reporter, Future of the Profession (FOP), committee of local bar associations evaluating the establishment of another type of unified bar, or a voluntary state wide lawyer's association.

Liaison, State Bar Board of Governor's Committee on Regulation and Discipline for Los Angeles County Bar Association, Beverly Hills Bar Association and San Fernando Valley Bar Association.

Ethics Faxline, pro bono service offered to all members of the California State Bar. Grants received from the California State Bar Foundation and the American Bar Association's Center for Professional Responsibility.

Board of Editors, American Bar Association Professional Lawyer.

Member, Consumer Attorneys of Los Angeles Education Committee.

Member, Breakfast Club.

Recipient of the Lichtig Award, Beverly Hills Bar Association, for outstanding contributions to the Resolutions Committee.

1997    Co-vice chair, American Bar Association Center for Professional Responsibility Publications Board.

Treasurer, Association of Professional Responsibility Lawyers.

Board of Editors, American Bar Association Professional Lawyer.

Member, Los Angeles County Bar Association Committee on Evaluation of Professional Standards and the State Bar.

Member, Los Angeles County Bar Association Committee on Evaluation of Professional Standards and the State Bar.
Member, Beverly Hills Bar Association Board of Governors.

Chair, Beverly Hills Bar Association Ethics Committee, Conference of Delegates.

Chair, San Fernando Valley Bar Ethics Committee, State Bar Relations.

Member, Board of Trustees, San Fernando Valley Bar Association.

Member, Consumer Attorneys of Los Angeles Education Committee.

Member, Breakfast Club.

1996      Chair, California State Bar Minimum Continuing Legal Education Committee.

Co-chair, American Bar Association Client Security Fund Forum, Chicago.

Co-chair, Consumer Attorneys Association of Los Angeles Committee on Professional Standards.

Member, Association of Professional Responsibility Lawyers Board of Directors.

Member, American Bar Association Standing Committee on Lawyer Responsibility for Client Protection.

Member, Beverly Hills Bar Association Board of Governors.

Member, Beverly Hills Bar Association Resolutions and Legislation Committees. Draftsperson of "20 Meet and Confer Resolution," adopted by the State Bar of California Office of Trial Counsel.

Liaison, State Bar Board of Governor's Committee on Regulation and Discipline for Los Angeles County Bar Association, Beverly Hills Bar Association and San Fernando Valley Bar Association.

Member, Los Angeles County Bar Association Committee on Evaluation of Professional Standards and the State Bar.

Member, Los Angeles County Bar Association Committee on Professional Standards and State Bar.

Member, Consumer Attorneys of Los Angeles Education Committee.

Member, American Bar Association's Center for Professional Responsibility Publications Board.

Member, Los Angeles County Bar Association Committee on Evaluation of

Professional Standards and the State Bar.

Chair, Beverly Hills Bar Association Ethics Committee.

Member, Beverly Hills Bar Resolutions Committee and Legislation Committee.

Member, San Fernando Valley Bar Association.

Member, Breakfast Club.

1995    Chair, Audit Subcommittee of the California State Bar Minimum Continuing Legal Education Committee.

Vice-chair, Association of Professional Responsibility Lawyers' Committee on the Unauthorized Practice of Law.

Chair, Beverly Hills Bar Association Ethics Committee.

Member, Beverly Hills Bar Resolutions Committee and Legislation Committee Draftsperson, Right to Receive Exculpatory Evidence, Business and Professions Code section 6085 (b), Statute of Limitations on Discipline (informally adopted as the Period of Limitations by then-State Bar President James Towery).

Liaison, State Bar Board of Governor's Committee on Regulation and Discipline for Los Angeles county Bar Association, Beverly Hills Bar Association and San Fernando Valley Bar Association.

Co-chair, Consumer Attorneys Association of Los Angeles Committee on Professional Standards.

Member, Board of Directors, Association of Professional Responsibility Lawyers.

Member, California State Bar Minimum Continuing Legal Education Committee.

Member, American Bar Association Standing Committee on Lawyers Responsibility for Client Protection.

Member, Board of Governors, Consumer Attorneys Association of Los Angeles, Education Committee and Liaison to the State Bar Board of Governors' Discipline, Admissions and Competency Committees.

Member, American Bar Association Center for Professional Responsibility Publications Board.

| 1994 | Member, American Bar Association Center for Professional Responsibility Publications Board. |
|------|--------|
| | Member, American Bar Association Standing Committee on Lawyer Responsibility for Client Protection. |
| | Member, Association of Professional Responsibility Attorneys, Board of Trustees. |
| | Consultant, New Jersey Bar Association on reorganization of the New Jersey attorney disciplinary system. |
| | Member, California State Bar Minimum Continuing Legal Education Committee. |
| | Member, Los Angeles County Bar Association Professional Standards Committee. |
| | Member, Los Angeles County Bar Association State Bar Relations Committee. |
| | Member, Consumer Attorneys Association of Los Angeles, Board of Governors. |
| | Member, Beverly Hills Bar Association, Board of Governors. |
| 1993 | Member, California State Bar Minimum Continuing Legal Education Committee. |
| | Member, American Bar Association Standing Committee on Lawyer Responsibility for Client Protection. |
| | Member, Los Angeles County Bar Association State Bar Relations Committee. |
| | Member, Los Angeles County Bar Association Professional Responsibility and Ethics. |
| | Member, Beverly Hills Bar Resolutions Committee and Legislation Committee Draftsperson, modify Business and Professions Code sections 6147 and 6148. |
| | Recipient, Beverly Hills Bar Association Executive Director's Award. |
| 1992 | Member, Association of Professional Responsibility Attorneys Board of Trustees. |
| | Member, Los Angeles County Bar Association Ethics Committee. |
| | Member, Beverly Hills Bar Association Resolutions Committee. |
| 1991 | Member, Beverly Hills Bar Executive Committee on Law Practice Management. |

1986-1989    Member, California State Bar Consortium on Lawyer Performance.
Member, California State Bar Committee for the Administration of the Rules
Governing Practical Training of Law Students.

1982-1984    Member, Special State Bar Committee on the Practical Training of Law Students.
Assisted in writing the rule governing this area, adopted by the California Supreme
Court in 1983.

1981    Consultant to Special California State Bar Committee on the Practical Training of
Law Students. (Adopted by the California Supreme Court in 1983).

## MCLE  RELATING TO PROFESSIONAL RESPONSIBILITY AND COMPETENCY:

2019    UCLA Entertainment Law Symposium, "Representation is Not a Handshake
Deal." March

Los Angeles County Bar Association, Labor & Employment Law Symposium,
"How to Avoid Ethical Pitfalls in Your Employment Practice." March.

2019 Annual International MCLE Fair, London, England. "Really Interesting
Lawyer Stuff." January.

2018    U.S. District Court, ADR Program. "(New) Revised Rules of Professional
Conduct." Diane Karpman and Dominique Snyder. November.

Defense Research Institute, San Diego. "Ethics Issues For Workers'
Compensation." October.

San Fernando Valley Bar Association. "Revised Rules of Professional Conduct."
Diane Karpman, Rebecca Meyer Rosenberg and Dominique Snyder. October.

Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff,
The Year in Review." January.

2017    Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff,
The Year in Review." November.

Association of Professional Responsibility Lawyers, Annual Meeting, New York,
New York. "Declining, Terminating, and Withdrawal from Representation Under
MR 1.16, CA 3-700. August.

ABA Webinar "Avoiding Traps and Pitfalls: The Ethical Dilemmas of the Solo
Practitioner." June.

2017 Annual International MCLE Fair, London, England. "Really Interesting Lawyer Stuff." January.

Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff, The Year in Review." January.

2016    Beverly Hills Bar Association. " Really Interesting Lawyer Stuff, The Year in Review." November.

Beverly Hills Bar Association. "Really Interesting Lawyer Stuff, The Year in Review." September.

Association of Professional Responsibility Lawyers, Annual Meeting, San Francisco, California. "Admissions Cases of Interest." August.

State Bar of California Litigation Webinar. "Indecent Contact: Ethical Challenges with Contacts with Putative Class Members." January.

Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff, The Year in Review." January.

2015    American Bar Association, Center for Professional Responsibility. "ABA Webinar: Ethical Issues Involved in Disaster Planning for Lawyers." February.

Association of Professional Responsibility Lawyers, Mid-Year Meeting, Houston, Texas. "Expert Witnesses." February.

Beverly Hills Bar Association. "Ethical and Malpractice Issues For The Entertainment Attorney." January.

Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff." January.

State Bar of California Webinar: "Indecent Contact: Ethical Challenges with Contacts with Putative Class Members." January.

2014    Los Angeles County Bar Association Professional Responsibility & Ethics Committee. "Ethics - All You Need to Know - 2014." December.

Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff." November.

Beverly Hills Bar Association, Solo & Small Firm Section. "Marketing Your Law Firm - Ethically. November.

State Bar of California 87th Annual Meeting. "Really Interesting Lawyer Stuff." San Diego, CA. September.

Association of Professional Responsibility Lawyers, Annual Meeting, Boston. "Tricky Ethics Issues for Insurance Defense Lawyers." August.

Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff." January.

2014 Annual International MCLE Fair, London, England. "Really Interesting Lawyer Stuff." January.

2013    Beverly Hills Bar Association. "The Daily Moral Dilemma, Proper and Improper Billing Practices." November.

Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff." November.

State Bar of California 86th Annual Meeting, "Really Interesting Lawyer Stuff." San Jose, CA October.

Grancell, Stander, Reubens, Thomas & Kinsey. "Recent Developments and Cases - Workers' Compensation. October.

Beverly Hills Bar Association Extravaganza. "Significant Developments in Lawyer Law." January.

2012    Los Angeles County Bar Association. "Ethics - All You Need to Know." December.

Beverly Hills Bar Association Extravaganza. "Significant Developments in Lawyer Law." November.

Beverly Hills Bar Association. "Really Interesting Lawyer Stuff - Fair Deal for all Clients: How to Rekindle Pride in the Legal Profession." October.

State Bar of California 85th Annual Meeting, "Really Interesting Lawyer Stuff." October.

State Bar of California 85th Annual Meeting, Association of Discipline Defense Counsel Panel. "Hot Topics in the World of Ethics." October.

American Academy of Matrimonial Lawyers. "Avoiding Malpractice Claims." August.

31

Association of Professional Responsibility Lawyers, Mid-Year Meeting, New Orleans, Louisiana. A Discussion of Tom Morgan's "The Vanishing American Lawyer." February.

Los Angeles County Bar Association. "How Good Lawyers End Up in Trouble With the State Bar." January.

Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff." January.

2011    Beverly Hills Bar Association - Business Law Section. "Hot Ethical Topics of Interest for Business Lawyers." December.

Beverly Hills Bar Association - Foundation Series. "Principles of Client Trust Accounts, Developing Trends and Hot Topics Current Matters of Interest to Lawyers." November.

State Bar of California 84th Annual Meeting, Long Beach, California. "Really Interesting Lawyer Stuff, Recent Developments & Cases." September.

Association of Professional Responsibility Lawyers, Mid-Year Meeting, Atlanta, Georgia. "Ethics Issues in Legal Writing." February.

Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff." January.

Los Angeles County Bar Association. "Ethics - All You Need to Know." January.

2010    Beverly Hills Bar Association Extravaganza. "Really Interesting Lawyer Stuff." November.

Beverly Hills Bar Association. "Really Interesting Lawyer Stuff, Recent Developments and Cases." October.

Beverly Hills Bar Association. "Really Interesting Lawyer Stuff, Recent Developments & Cases." September.

State Bar of California 81st Annual Meeting, Monterey, California. "Really Interesting Lawyer Stuff, Recent Developments & Cases." September.

American Intellectual Property Law Association Spring Meeting, New York. "Understanding Conflict Waivers - Their Rules, Scope and Effect." May.

Association of Professional Responsibility Lawyers, 20th Anniversary Program, New Orleans, Louisiana. "The Opinion Letter: Objective Ethics Advice Or CYA Insurance." April.

Los Angeles County Bar Association: Nuts & Bolts, "Professional Responsibility/Ethics." January.

Beverly Hills Bar Association, "Really Interesting Lawyer Stuff - Trends and Hot Topics. Current Matters of Interest to Lawyers, Ethics Opinions." January.

Los Angeles County Bar Association Professional Responsibility and Ethics Committee, "Really Interesting Lawyer Stuff About Fees." January.

2009     Beverly Hills Bar Family Law Inn of Court, "Ethics and Substance Abuse." December.

Beverly Hills Bar Association, "Really Interesting Lawyer Stuff - Trends and Hot Topics. Current Matters of Interest to Lawyers, Ethics Opinions." December

Beverly Hills Bar Association Extravaganza, "Really Interesting Lawyer Stuff." November.

Beverly Hills Bar Association, "Really Interesting Lawyer Stuff - Trends and Hot Topics. Current Matters of Interest to Lawyers, Ethics Opinions." October.

Beverly Hills Bar Association, "Really Interesting Lawyer Stuff - The Ethics of Terrorism." September.

Conference of California Bar Associations Ethics Panel, "Justice and National Security." September.

Conference of Delegates of California Bar Association, "The Media and Ethics." May.

State Bar of California Webinair, "Loan Modifications and Short Sales: Do's and Don't for Attorneys and Real Estate Brokers." March.

American Bar Association Webinair, "Ethical Effective Fee Agreements: Establishing a Clear Relationship and Avoiding Common Pitfalls." March.

Beverly Hills Association Extravaganza, "Really Interesting Lawyer Stuff - The Ethics of Fee Agreements & Billing." January.

2008     American Bar Association Law Practice Management Section Webinair, "Ethical

33

Issues in Documenting the Lawyer-Client Relationship."  December.

ABA Connection Teleconference, "Top Tips for Avoiding Malpractice Claims."
December.

Los Angeles County Bar Association, "Really Interesting Lawyer Stuff About Fees
- Ethics 2008 Keeping Current in a World of Change."  December.
Beverly Hills Bar Association Extravaganza, "Really Interesting Lawyer Stuff -
The Ethics of Fee Agreements & Billing."  November.

Walter F. George School of Law & Mercer Law Review, Macon Georgia,  "Ethics
and Professionalism in the Digital Age."   November.

Beverly Hills Bar Association, "Really Interesting Lawyer Stuff - Recent
Developments and Cases."  October.

Beverly Hills Bar Association, "Really Interesting Lawyer Stuff - Recent
Developments and Cases."  September.

State Bar of California 81st Annual Meeting, Monterey: "Really Interesting Lawyer
Stuff - Recent Developments and Cases."  September.

24th ABA National Forum on Client Protection, Boston: "Disclosure of
Professional Liability Insurance."  May.

Association of Professional Responsibility Lawyers, Fifth International Meeting,
Amsterdam, Netherlands: "Detention and Rendition: Governmental Limitations
on the Lawyer-Client Relationship."  May.

State Bar of California 12th Annual Ethics Symposium, San Francisco: "Ethical
Issues in Class Actions and Derivative Litigation."  May.

Champions of Justice Radio Show, KRLA Los Angeles, "Legal Ethics."  April.

Legal Publishing Group of Strafford Publications: Teleconference, "Ethical Risks
of Online Communications by Law Firms."  March.

American Bar Association: Teleconference, "Advertising for the Next Generation."
March.

Legal Malpractice & Risk Management Conference, Chicago: "Stump the
Panel."  February.

American Bar Association: Government & Public Section Lawyers Division,

"Ethical Considerations in Public Sector Law."  February.

Los Angeles County Bar Association: Nuts & Bolts, "Essential Tools for Lawyers."  January.

Beverly Hills Bar Association: "Really Interesting Lawyer Stuff" - The Best and Worst of 2007.  January.

2007          Beverly Hills Bar Association: "Really Interesting Lawyer Stuff."  December.

Loyola Law School, Special IP Focus Series: "Conflicting Views of In-House and Outside Counsel as to What Constitutes a 'Conflict of Interest' and Under What Circumstances Can and Should They be Waived."  November.

ABA Connection Teleconference: "The Top Ethics Traps for Lawyers."  November.

Los Angeles Paralegal Association: "Not Just Your Attorney's Responsibility."  November.

Skadden, Arps, Slate, Meagher & Flom, LLP: "Aggregate Litigation Issues."  October.

State Bar of California 80th Annual Meeting, Anaheim: "Really Interesting Lawyer Stuff."  September.

Association of Professional Responsibility Lawyers Annual Meeting, Chicago: "Something for Everyone."  August.

Association of Professional Responsibility Lawyers Annual Meeting, Chicago: "Small and Solo Discipline."  August.

Beverly Hills Bar Association: "Aggregate Litigation Issues."  July.

Beverly Hills Bar Association: "Recent Cases Have Pushed Conflicts Over the Edge."  June.

33rd National Conference on Professional Responsibility: "The Ethics of Aggregate Settlements" Panel.  May.

Beverly Hills Bar Association: "Technology Issues, Is Email Ever Dead?"  May.

Beverly Hills Bar Association: "Using Support Staff and Staying Out of Trouble",  April.

U.S.C. Law School: "Really Interesting Lawyer Stuff, Basic Ideas." April.

Legal Malpractice & Risk Management Conference, Chicago: "Stump the Panel." March.

Consumer Attorneys of California, Legal Ethics with Special Ethical Issues for the Trial Lawyer. January.

Beverly Hills Bar Association MCLE Extravaganza: "Ethical and Legal Obligations." January.

2006      Beverly Hills Bar Association MCLE Extravaganza: "Ethical and Legal Obligations." November.

State Bar of California 79th Annual Meeting, Monterey, California: "Recent Developments and Cases." October.

County Counsels' Association of California 2006 Annual Meeting, Marina del Rey, California: "Whistle-Blowing Attorneys: The Debate Continues." September.

Association of Professional Responsibility Lawyers Annual Meeting, Santa Monica, California: "Another Program Ripped From the Headlines - Ethics Issues Inspired by the Pellicano Investigation." July.

Los Angeles County Bar Family Law Section: "Techno Ethical Issues in Family Law." May.

Legal Malpractice & Risk Management Conference, Chicago: "Stump the Experts Panel." February.

Beverly Hills Bar Association: "Legal Ethics With a Focus on Real Property." January.

Los Angeles County Bar Criminal Justice Section: "Ethics in the Legal Profession." January

Western State University Alumni Association: "Ethics in the Legal Profession." January.

Beverly Hills Bar Association: "Ethics in the Legal Profession." January.

Orange County Inn of the Court: "Ethics in the Legal Profession." January.

36

2005 Los Angeles County Bar Association, Professional Responsibility & Ethics Committee: "Ethics 2005 - Keeping Current in a World of Change." December.

Continuing Education of the Bar, West Hollywood: "The Legal Ethics of Privacy Law." November

Beverly Hills Bar Association: "Withdrawal Without Legal Malpractice of State Bar Repercussions." October.

Harris Martin Benzene Litigation Conference: "Settling a Benzene Case: The Ethical Minefield." September.

Cotkin, Collins & Ginsburg, Roundtable Discussion: "Handling Complex Legal Malpractice Cases." September.

State Bar of California 78th Annual Meeting, San Diego: "Really Interesting Lawyer Stuff, Recent Developments and Cases." September.

Beverly Hills Bar Association: "Review of Recent Interesting Ethics Cases." September.

Beverly Hills Bar Association: "Consent Drafting and Use of a Prospective Consent in Your Fee Agreements." August.

American Bar Association, Insurance Coverage Litigation Committee: "The Tripartite Relationship: Reality or Just a Nightmare?" Tucson, Arizona. March.

Association of Professional Responsibility Lawyers Mid-Year Meeting, Salt Lake City, Utah: "Predicting the Future and Other Mysteries: Dealing with Advance Conflict Waivers." February.

Los Angeles County Bar Association, Intellectual Property & Entertainment Law Section: "Attorney Ethics and Other Oxymorons of Professional Responsibility-Focusing on Intellectual Property Entertainment, and Technology." January.

Beverly Hills Bar Association: "Ethics in the Legal Profession." January.

Los Angeles County Bar Association, 2005 Nuts & Bolts Basic Litigation Skills: Essential Tools for Lawyers: "Access to the Courts for People with Disabilities" And "Practical Aspects of Professional Responsibility - Issues of Disqualification, Discipline and Defense to Malpractice Claims." January.

Continuing Education of the Bar, San Diego: "Navigating the Disciplinary Process." January.

2004    Beverly Hills Bar Association: "Really Interesting Lawyer Stuff." December.

Los Angeles County Bar Association Ethics 2004: "Ethics as Affecting Pocket Book Issues." November.

Beverly Hills Bar Association MCLE Extravaganza: "Really Interesting Lawyer Stuff." November.

Find Law Business Development Conference, Las Vegas: "The Boundaries for Lawyer Advertising and Solicitation." October.

State Bar of California Annual Meeting, Monterey: "Really Interesting Lawyer Stuff," and "Access for All: The Implications of Disabilities on the Practice of Law." October.

Beverly Hills Bar Association: "Really Interesting Lawyer Stuff." Judicial Recusal - Justice Scalia and Vice President Cheney duck hunting. The difference between appearance of impropriety and attorney conflicts. Inadvertent received electronic communications, memo gate at the Senate. April.

Glendale Bar Association Seminar: "Really Interesting Lawyer Stuff." April.

Beverly Hills Bar Association: "Really Interesting lawyer Stuff." Criminal Legal Malpractice. Could Martha Stewart sue? Enhanced duties of honesty to Governmental authorities. Enhanced duties of honesty in State Bar investigations. March.

Orange County Bar Association's 12th Annual MCLE Last Dash: "Really Interesting Lawyer Stuff All Ethics - All The Time." January.

Los Angeles County Bar Immigration Section: "Immigration Ethics Issues, Survey of Significant Cases 2000 - 2004." January.

Continuing Education of the Bar, Los Angeles: "Avoiding Malpractice in the Representation Process: Getting In and Getting Out." January.

Continuing Education of the Bar, Garden Grove: "Avoiding Malpractice in the Representation Process: Getting In and Getting Out." January.

Beverly Hills Bar Association: "Third Party Cases." January.

2003    Los Angeles County Bar Association, 2003 Nuts & Bolts: "A Toolbox for Malicious Prosecution: The Essence and Ethics of the Claim." December.

Beverly Hills bar Association: "Really Interesting Lawyer Stuff."  December.

Beverly Hills Bar Association Extravaganza: "Really Interesting Lawyer Stuff."  November.

Beverly Hills Bar Association: "Getting In and Getting out."  November.

Orange County Bar Association: "Ethics of Insurance Defenses."  August.

Beverly Hills Bar Association: "Recent Cases."  June.

Anderson, McPharlin & Conners, LLP: "Really Interesting Lawyer Stuff."  June.

Beverly Hills Bar Association: "2003 Fee Agreement Tune Up."  May.

ABA Center For continuing Legal Education: "Ethical Responsibilities When Representing Clients in the Healthcare Industry.  May.

West Coast Casualty Construction Defect Seminar: "Ethical Issues and the Burning Limits Policy."  May.

Beverly Hills Bar Association: "2003 Fee Agreement Tune Up."  May.

ABA Center For Continuing Legal Education: "Ethical Responsibilities When Representing Clients in the Healthcare Industry."  May.

West Coast Casualty Construction Defect Seminar: "Ethical Issues and the Burning Limits Policy."  May.

UCLA Extension Entertainment Studies: "ADR Malpractice and Ethics Alert - Did You Inform Your Client of the ADR Alternative?"  May.

Beverly Hills Bar Association: "Perils and Pitfalls of Entity Representation." April.

California Society For Healthcare Attorneys: "Ethics in the Healthcare Legal Profession."  April.

Beverly Hills Bar Association: "Malicious Prosecution v. Lawyers."  March

Beverly Hills Bar Association: "Annual Current Business Law Developments." January.

Los Angeles County Bar Law Practice Network: "Catch of the Day - Catch 22."

Orange County Bar Association: "Really Interesting Lawyer Stuff, All Ethics All the Time."  January.

Beverly Hills Bar Association Entertainment Law Section: "Year in Review, Update of the Law."  January.

Beverly Hills Bar Association Extravaganza: "Ethics 2003 - Truly Amazing Lawyer Stuff."  January.

U.S. Army, Judge Advocate Generals' Corps, 78th Legal Support Organization, Long Beach: "Really Interesting Lawyer Stuff."  January.

Lawyers Club of Los Angeles: "Really Interesting Lawyer Stuff."  January.

2002 Los Angeles County Bar Association, 2002 Nuts & Bolts: "Malicious Prosecution in California."  December.

Beverly Hills Bar Association: "Class/Multi-Party Group Representation." November.

Beverly Hills Bar Association MCLE Extravaganza: "Ethics 2003 - Truly Interesting, Truly Amazing Lawyer Stuff."  November.

Beverly Hills Bar Association, Alternative Dispute Resolution Section: "Is It Malpractice If An Attorney Fails To Advise A Client About ADR?"  October.

Beverly Hills Bar Association: "Set Me Free."  October.

State Bar of California, Annual Meeting, "Really Interesting Lawyer Stuff." and "Ethical Obligations for Client Trust Accounting."  October.

Dependency Court Legal Services, "Conflicts."  September.

Consumer Attorneys of Los Angeles, Annual Meeting, Las Vegas: "Ethics of Client Control."  August.

Beverly Hills Bar Association: "Law Office Management/Ethics."  July.

Beverly Hills Bar Association: "Conflicts of Interest - How to Draft and Obtain Consents."  June.

American Bar Association 28th National Conference on Professional

40

Responsibility, Vancouver, British Columbia: "Duties to Non-Clients." June.

Los Angeles County Bar Association: "The Insurance Crisis for Lawyer." June.

Beverly Hills Bar Association: "Emerging Enron Type Issues Involving Third Party Claims." May.

Beverly Hills Bar Association: "Fee Agreement Tune Up." April.

Consumer Attorneys of California, 41st Annual Convention, San Francisco: "Legal Ethics, Bias and Substance Abuse." April.

City Attorneys Association of Los Angeles County: "Attorney Conflicts, Ethical Walls, Moving Between the Public and Private Sectors." March.

Beverly Hills Bar Association: "Rule 2-100 - The Anti-Contact Rule, How Far Can You Go?" March.

Beverly Hills Bar Association - Business Law Section: "Really Interesting Lawyer Stuff." February.

Beverly Hills Bar Association: "Fee Agreement Tune Up." February.

Black Women Lawyers Association of Los Angeles: "Really Interesting Lawyer Stuff." January.

Beverly Hills Bar Association: "Class Actions." January.

Lawyers Club of Los Angeles: "Really Interesting Lawyer Stuff." January.

U.S. Army, Judge Advocate Generals' Corps, 78th Legal Support Organization, Annual Meeting, Long Beach: "Really Interesting Lawyer Stuff." January.

2001        Practising Law Institute, San Francisco: "Recent Developments in Professional Responsibility and Professional Liability." December.

Beverly Hills Bar Association: "Really Interesting Lawyer Stuff." December.

Glendale Bar Association: "Really Interesting Lawyer Stuff." December.

CLE International: "Taking Stock & Getting Out." November.

Malibu Bar Association: "Ethics & Technology, Multijurisdictional Practice Issues, Conflict Consents." October.

Beverly Hills Bar Association: "Technology Free Fall." October.

Continuing Education of the Bar, Los Angeles: "The 21st Century Law Office: Running a Successful Law Practice in the New Economy." September.

Continuing Education of the Bar, San Diego: "The 21st Century Law Office: Running a Successful Law Practice in the New Economy." September.

Continuing Education of the Bar, Garden Grove: "The 21st Century Law Office: Running a Successful Law Practice in the New Economy." September.

Los Angeles County Bar Association, Intellectual Property & Entertainment Law Section: "Lawyers as Entertainment Negotiators: Is it the Practice of Law?" September.

University of Southern California Law School & Beverly Hills Bar Association, Forty-Seventh Annual Entertainment Law Institute: "Enforcing Lawyer Percentage Agreements." September.

Consumer Attorneys of Los Angeles, Annual Meeting, Las Vegas: "Stories About Notorious Lawyers." September.

Association of Professional Responsibility Lawyers Annual Meeting, Chicago, Illinois: "Conflicts in Class Actions." August.

American Bar Association, National Organization of Bar Counsel, Chicago, Illinois: "Bias in Discipline." August.

Women Lawyers Association of Los Angeles: "Ethics & Ethnicity Tactical & Ethical Considerations in Cross-Cultural Client Representation." July.

Black Women Lawyers Association of Los Angeles: "Ethics & Technology."July.

American Bar Association 27th National Conference on Professional Responsibility, Miami Beach, Florida: "Proportionality of Disciplinary Sanctions to the Seriousness of the Violation." June.

Beverly Hills Bar Association & UCLA School of Law, California Seize the Future Conference: "Forces Internal to the Profession." May.

Los Angeles County Bar & National Association of Counsel for Children: "Do the Right Thing: Ethical Considerations in the Representation of Children." April.

Glendale Bar Association: "Ethics and Technology."  April.

Eastern Bar Association: "Ethics."  April.

The State Bar of California: Brown Bag With State Bar Court.  March.
Beverly Hills Bar Association: "Really Interesting Lawyer Stuff, Ethically Getting Paid." March.

Beverly Hills Bar Association: "Ethics and Technology."  February.

American Bar Association Center for Professional Responsibility Midyear Meeting, San Diego, California: "Bundling and Unbundling of Legal Services." February.

Orange County Bar Association, Insurance Law Section: "The Ethics of Insurance Defense."  January.

HIV & AIDS Legal Services Alliance: "Legal Services, Ethical Issues."  January.

San Diego Bar Association: "Multijurisdictional Practice Issues, A Synopsis of Problems."  January.

Beverly Hills Bar Association: "Recent Cases."  January.

Rushfeldt, Shelley & Drake: "Ethics Update 2001."  January.

Beverly Hills Bar Association: "Ethics - A Review of Significant Cases & Practical Aids to Assist You Into the Future."  January.

San Fernando Valley Bar Association: "Ethics Update 2001."  January.

CLE International: "Hot Topics in California."  January.

Practicing Law Institute, Los Angeles: "Avoiding Common Ethical Pitfalls." January.

Akin, Gump, Strauss, Hauer & Feld: "Ethics Update 2001."  January.

Beverly Hills Bar Association: "Ethics 2000 - Great Year for the Law of Lawyering."  January.

2000        Practising Law Institute, San Francisco: "Avoiding Common Ethical Pitfalls." December.

Beverly Hills Bar Association: "Conflict Consent Drafting Workshop."
November.

Los Angeles County Bar Association: "Emerging Issues of Third Party Liability."
November.

Consumer Attorneys of California: "Ethics: A Class Act." November.

American Lawyer Media/The Recorder: "Lawyering in the Online Age."
November.

Riverside Bar Association: "Legal Ethics in the New Millennium." October.

Beverly Hills Bar Association: "Insurance Defense Issues." October.

Robins, Kaplan, Miller & Ciresi: "Really Interesting Lawyer Stuff." October.

State Bar of California, Annual Meeting: "Really Interesting Lawyer Stuff (6th
Edition!!)." September.

Law.com, On Line Seminar: "Ethics and the Internet." September.

California Women Lawyers Conference: "Getting Your Clients to Pay." July.

Wilshire Bar Association: "Breach of Fiduciary Duty and Conflicts." July.

American Bar Association Center for Professional Responsibility National
Conference, New Orleans, Louisiana : "Big Brother Is Watching You - The
Imposition of Discipline for Purely Private Conduct." June.

The State Bar of California Committee on Professional Responsibility and
Conduct, Fourth Annual Statewide Ethics Symposium, Fullerton, California:
"Conflicts of Interest - Screening." June.

Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone: Complex conflicts of
interest in Insurance Defense representation to and including the tripartite
relationship; duties owed to the insured and assured; issues involving bad faith
pursuant to *Merritt v. Reserve Insurance* (1973) 34 Cal. App. 3d 858. June.

Contra Costa County Bar Association: "Ethics and Technology." February.

Eastern Bar Association: "Lawyer Law - 2000." February.

San Fernando Valley Bar Association/Lawyers' Mutual Insurance: "Lawyer

44

Law - 2000." January.

Continuing Education of the Bar, Anaheim: "Getting In and Getting Out."January.

Orange County Bar Association: "Really Interesting Lawyer Stuff." January.

Lawyers Club of San Diego: "What To Do When the State Bar Calls."
January.

Continuing Education of the Bar, Los Angeles: "Getting In and Getting Out."
January.

Beverly Hills Bar Association/Lawyers' Mutual Insurance: "Ethics 1999 -
Great Year for Law of Lawyering." January.

Continuing Education of the Bar, San Diego: "Getting In and Getting Out."
January.

Beverly Hills Bar Association: "Withdrawal." January.

1999          Beverly Hills Bar Association: "The Exploding Area of Malicious Prosecution."
              December.

              Rushfeldt, Shelley & Drake: "Attorney-Client Privilege/Work Product
              Privilege." November.

              Beverly Hills Bar Association: "Attorney-Client Privilege/Work Product
              Privilege." November.

              Beverly Hills Bar Association: "Significant Recent Cases, Conflicts and
              Disgorgement of Fees." October.

              Consumer Attorneys of Los Angeles, Annual Meeting, Las Vegas: "Revisiting the
              Fee Agreement." October.

              State Bar of California, Annual Meeting: "Really Interesting Lawyer Stuff."
              October.

              Early, Maslach, Price & Baukol: "Really Interesting State Bar Stuff." July.

              Beverly Hills Bar Association: "Talking to the Media - as Commentators, or for
              the Client." June.

              Heenan Blaikie: "Legal Ethics." May.

45

Beverly Hills Bar Association: "Civility v. Ramboesque Tactics." May.

Beverly Hills Bar Association: "Conflicts of Interest - Consents - Recent Cases." April.

Beverly Hills Bar Association: "Fee Agreement Tune Up." March.

American Bar Association Center for Professional Responsibility, National Organization of Bar Counsel, Association of Professional Responsibility Lawyers, Joint Program: "Issues Involving Multi-Disciplinary Practice" with Professor Charles Wolfram. February.

Association of Professional Responsibility Lawyers: "Ethics for Ethicists" with Professor Samuel Dash. February.

Orange County Bar Association: "Recent Cases, Amazing Stories." January.

U.S. Army, Judge Advocate Generals' Corps, 78th Legal Support Organization, Annual Meeting, Long Beach: "Hot Topics in Ethics, Amazing Stories." January.

Culver Marina Bar Association: "Hot Topics in Ethics." January.

Eastern Bar Association: "Recent Cases, Amazing Stories." January.

Lawyers Club of Los Angeles: "Legal Ethics." January.

Beverly Hills Bar Association: "Representing Corporations, Partnerships, Groups - Rule 3-600." January.

1998   San Fernando Valley Bar Association, M.C.L.E. Roundup: "Really Interesting Lawyer Stuff." December.

Rushfeldt, Shelley & Drake: "State Bar Inquirer, Amazing Stories." December.

Beverly Hills Bar Association. "The Demise of the State Bar and its Impact Upon the Growth of De Minimis Malpractice Claims. How to Protect Yourself." December.

San Bernardino County Bar Association: "State Bar Inquirer, Hot Topics in Professional Responsibility." November.

Beverly Hills Bar Association. "All New Amazing Lawyer Stories from the Annals of Attorney Discipline Cases." November.

University of West Los Angeles Law School: "Getting and Keeping Your License."   October.

San Fernando Valley Bar Association: "Current Topics in Professional Responsibility."   October.
San Fernando Valley Bar Association: "Malpractice Prevention."   October.

Beverly Hills Bar Association. "Conflicts - Representing Entities, Small Corporations, Focusing on Recent Cases."   October.

State Bar of California, Annual Meeting: "Really Interesting Lawyer Stuff." September.

Consumer Attorneys of Los Angeles, Annual Meeting, Las Vegas:  "The Nexus," "Discipline," and "Malpractice and the State Bar."   September.

Lewis, D'Amato, Brisbois & Bisgaard: "Advance Conflicts of Interest." September.

Beverly Hills Bar Association: "The Ethics of Firm, Corporate, LLP Dissolutions: Winding Down, the Clients and the Fiduciary Obligations, Recent Cases." September.

Association of Professional Responsibility Lawyers, Toronto, Canada: "Ethics Computer Research."   July.

Culver Marina Bar Association: "Advertising and Technology."   June.

Beverly Hills Bar Association: "The Ethics of Settlement."   June.

Beverly Hills Bar Association. "In Business With the Client - Are You In For A Surprise!" May.

Lawyers Club of Los Angeles: "Really Interesting Lawyer Stuff."   April.

Beverly Hills Bar Association.  "Multiple Client Waivers - Advanced Conflicts of Interest."  April.

Western San Bernardino Bar Association: "State Bar Inquirer,  Hot Topics in Professional Responsibility,  Trust Accounts."   April.

Los Angeles Criminal Courts Bar Association: "You Wanna Bet?"   April.

47

Beverly Hills Bar Association.   "Attorney-Client Relationship." March.

Ventura County Bar Association: "Hot Topics in Professional Responsibility," Status of the State Bar," and "State Bar Inquirer."   January.

San Fernando Valley Bar: "Really Interesting Lawyer Stuff."   January.
Lawyers Club of Los Angeles: "Really Interesting Lawyer Stuff."   January.

Beverly Hills Bar Association, M.C.L.E. Extravaganza: "Really Interesting Lawyer Stuff."   January.

Orange County Bar Association: "State Bar Discipline" and "The Status of the Bar."   January.

Beverly Hills Bar Association. "Last Chance MCLE Extravaganza." January.

1997      Beverly Hills Bar Association: "The Year in Review."   December.

Riverside Bar Association: "Civility."   November.

Koletsky, Mancini & Feldman: "Conflicts of Interest and Recent Topics at the State Bar."   November.

Beverly Hills Bar Association: "Recent Civil Conflict Cases."   November.

Consumer Attorneys of California, San Francisco, Moderator, Ethics Panel: "How to Protect Yourself at the State Bar."   November.

San Fernando Valley Bar Association, Litigation Section: "Topics of Concern in Settlement."   November.

Consumer Attorneys of Los Angeles, Las Vegas. "Ethics."   October.

Culver Marina Bar Association: "Withdrawal, Termination and Disengagement." October.

Beverly Hills Bar Association: "Review of Recent Bar Cases."   October.

Lexis Counsel Connect: "Law Practice Management."   September.

San Fernando Valley Bar Association: "Ethics Topics for Small and Sole Practitioners."   September.

Moderator, Consumer Attorneys of California, Ethics Panel: "Ethics Issues for Trial Lawyers."   August.

Long Beach Bar Association: "What to Do if the State Bar Calls."   June.

Beverly Hills Bar Association: "Withdrawal and Termination of Attorney-Client Relationship."   June.

Certified Legal Secretaries of California Annual Meeting:  "Ethical Issues for Legal Secretaries."   May.

Beverly Hills Bar Association: "Ethics Workshop."   May.

Beverly Hills Bar Association Legal Secretaries: "Ethical Issues for Legal Secretaries."   April.

Consumer Attorneys of California, Tahoe, Moderator, Ethics Panel: "Ethics and the Trial Lawyer."   April.

Beverly Hills Bar Association: "Ethics Workshop."   April.

Long Beach Bar Association: "Client Trust Accounts."   March.

Beverly Hills Bar Association: "Ethics The Year in Review."   March.

Lexis Counsel Connect: "Law Practice Management."   January.

Continuing Education of the Bar, Los Angeles: "Truth or Consequences." January.

Beverly Hills Bar MCLE Extravaganza: "How to Become Bullet Proof."   January.

Beverly Hills Bar: "Hot Topics at the State Bar."   January.

Association of Professional Responsibility Lawyers, San Antonio,  Texas: "Technology and the Ethics Lawyer, Using Electronic Research."   January.

Wilshire Bar Association, Professional Responsibility: "Yearly Roundup." January.

Association of Professional Responsibility Lawyers, San Antonio, Texas: "Internet Research for Ethics."   January.

1996        Ervin, Cohen & Jessup: "Conflicts of Interest."   December.

Rushfeldt, Shelley & Drake: "Hot Topics of the Year, Ethics."   December.

Continuing Education of the Bar, Costa Mesa: "Truth or Consequences." December.

Beverly Hills Bar Association: "Legal Malpractice."  December.

Beverly Hills Bar Association: "Conflicts of Interest."  November.

San Francisco AAA Insurance Defense Counsel: "Conflicts of Interest." November.

Beverly Hills Bar Association: Ethical Dilemmas and Conflicts."  November.

Loyola Law School Poverty Lawyers Program: "Topics of Concern for Pro Bono Attorneys."  November.

Beverly Hills Bar Association: "Legal Advertising and Marketing."  October.

California State Bar Convention: "You Wanna Bet? Obsessive, Compulsive Gambling."  October.

State Bar Convention: "Really Interesting Lawyer Stuff."  October.

Beverly Hills Bar Association: "Trust Accounts."   September.

Beverly Hills Bar Association: "Fee Agreements."  August.

Wilshire Bar Association: "Ethics and the State Bar."  July.

Association of Professional Responsibility Lawyers, Paris, France. Diversion Panel.  April.

University of West Los Angeles School of Law: "Professional Responsibility, Free Speech and Client Trust Accounts."  April.

Consumer Attorneys of California, Moderator, Lake Tahoe, Ethics Panel.  April.

Whittier School of Law, Small and Solo Practice Symposium, "What to Do if the State Bar Calls."  March.

American Bar Association, Baltimore, Maryland, Young Lawyer's Association: "You Are An Easy Target."  February.

Cardozo Society: "Ethics."   January.

Wilshire Bar Association: "Ethics."   January.

San Fernando Valley Bar Association: "Trust Account Essentials."   January.

Continuing Education of the Bar: "Truth or Consequences."   January.

Beverly Hills Bar Association Ethics Program: "MCLE Extravaganza."   January.

Lexis Counsel Connect (on-line presentation): "Conflicts of Interest."   January.

Continuing Education of the Bar, San Diego: "Truth or Consequences - Candor to the Tribunal and Ethics."   January.

1995    Rushfeldt, Shelley & Drake: "State Bar Inquirer."   December.

Continuing Education of the Bar: "Truth or Consequences."   December.

Dependency Court Attorneys: "Ethics, Conflicts, Etc."   December.

Ventura County Bar Association: "Status of the State Bar and Recent Cases on Ethics."   December.

Los Angeles County Bar Association, Entertainment Lawyers' Annual Symposium:  Luncheon Speaker: "Conflicts of Interest."   November.

Indo-American Bar Association: "What to do if the State Bar Calls."   November.

University of Southern California, Family Law Institute. "Ethics."   November.

Arter & Hadden: "Conflicts of Interest."   November.

Los Angeles County Bar Association Small and Sole Practice Section: "Marketing."   November.

American Association of Transportation Lawyers, member on two panels at Annual Meeting: "Lawyer Free Speech" and "Conflicts of Interest."   October.

Orange County Bar Association: "Ethics Extravaganza."   October.

Solish, Jordan & Weiner: "Conflicts of Interest in the Context of In-house Counsel Representation of Franchisors."   October.

Consumer Attorneys Association of Los Angeles, M.C.L.E. Program.   October.

California State Bar Annual Meeting: "Civility and Free Speech."   September.

Intellectual Property Bar Association: "Advertising."   September.

Legal Aid Society of Los Angeles: "Conflicts of Interest."   September.

Consumer Attorneys Association of Los Angeles, Co-Chair Ethics Program.
July.

California State Bar, Monterey Education Symposium: "Trust Accounts."   June.

American Bar Association, Client Security Fund: "Raising Rockbottom."   June.

Association of Professional Responsibility Lawyers, Miami, Florida:
"Representation of Multiple Clients-Delicate Tripartite Relationships."   January.

Cardozo Society: "Ethics." January.

Greenberg, Glusker, Fields, Claman & Machtinger: "Ethics."   January.

1994        Los Angeles County Bar, Small Practice Section: "Other People's Money."
December.

Los Angeles County Bar Association: "Conflicts of Interest."   December.

U.S.C. Family Law Institute: "Ethics."   December.

Southern California Defense League: "Ethics."   November.

Arter & Hadden: "Ethics."   November.

Greenberg, Glusker, Fields, Claman & Machtinger: "Ethics."   November.

California Trial Lawyer's Association: "Client Trust Accounts."   November.

Los Angeles Trial Lawyers, Las Vegas M.C.L.E. Convention: "Ethics." October.

California State Bar Annual Meeting: "Law Practice Management,"  "Ethics" and
"Other People's Money."   September.

U.S.C. Family Law Institute: "Ethics."   September.

52

Association of Professional Responsibility Lawyers, New Orleans: "The Propriety of Disciplining Law Firms."   August.

Los Angeles Trial Lawyers Association, Co-Chair, Ethics Panels:  "What to do if the State Bar Calls" and "State Bar Confidential and the Worst Cases."   July.

Long Beach Bar Association: "Ethics."   July.

Beverly Hills Bar Association, Family Law Workshop.  "Ethics."   June.

San Fernando Valley Bar Association: "Other People's Money."   May.

Beverly Hills Bar Association Barristers: "What to do if the State Bar Calls" and "Other People's Money."   April.

Beverly Hills Bar Association: Presentation to the Alarcon Commission, studying the status of attorney discipline in California.  March.

California State Bar: "5 Live for $95" and "The Big Pay-Off."  February.

Beverly Hills Bar Association: "Other People's Money."   February.

Century City Bar Association: "What to do if the State Bar Calls" and "Common Ethical Problems in Practice."   January.

Rushfeldt, Shelley & Drake: "Ethics."   January.

Beverly Hills Bar Association: "Client Trust Accounts," "What To Do If The State Bar Calls," Hot Ethics Topics," and "New Ethics Legislation for 1994."   January.

1993     Beverly Hills Bar Association: "Ethics Extravaganza."   December.

California State Bar Symposium: "Other People's Money."   November.

National Lawyer's Guild: "Ethics."  November.

State Bar Convention, San Diego: "The Big Pay-Off - Tying Up Loose Ends." October.

American Bar Association, New York: "Sex with Clients" and "Interim Suspensions."   August.

Los Angeles Trial Lawyers Association: "Moral Turpitude."   July.

Los Angeles Trial Lawyers Association, Las Vegas M.C.L.E. Convention: "Common Problems Facing Personal Injury Litigators."   June.

California State Bar: "Other People's Money."   March.

Beverly Hills Bar Association: "Annual Update of the Law." January.

Solish, Jordan & Weiner: "Ethics." January.

1992        Beverly Hills Bar Association: "Attorney Discipline and the New Rules of Professional Conduct."   November.

California State Bar: "The Five Top Hits on the Client Hit Parade."   November.

Ventura County Trial Lawyers Association: "Attorney Discipline and the Revised Client Trust Accounting Procedures."   October.

California State Bar Annual Convention: "The Big Pay Off."   October.

Lawyers Guild: "Sex, Money, and Ethics."   September.

Los Angeles West Inn of the Court: "Ethics."   September.

Los Angeles Trial Lawyers: "What To Do If The State Bar Calls."   July.

Redding Bar Association: "Sex, Money, and Ethics."   May.

King, Edelman & Weiser: "Conflicts of Interest and Their Ethical Ramifications" and "Current Status of Attorney Discipline."   April.

State Bar Court Bench and Bar Conference, San Francisco:  "Pre Trial Settlement Techniques" and "Mitigating Factors."   April.

Marina Bar Association: "Attorney Discipline - How to Avoid Problems and New Trust Accounting Requirements."   January.