UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

                                        :

UNITED STATES OF AMERICA          :

                                          :

            - *v.* -               :            S1 19 Cr. 373 (PGG)

                                          :

MICHAEL AVENATTI,               :

                                          :

                  Defendant.      :

                                          :

------------------------------------------------------- x

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO THE DEFENDANT'S MOTIONS *IN LIMINE*

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

Matthew D. Podolsky
Daniel C. Richenthal
Robert B. Sobelman
Assistant United States Attorneys

- Of Counsel -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ....................................................................................................................... 1

I.    The Defendant's Motion to Preclude Evidence Regarding His Financial Condition Should Be Denied ...................................................................................................................... 1

    A.   Relevant Background ............................................................................................. 2

    B.   Applicable Law .................................................................................................... 2

        1.   Rules 402 and Rule 403 ................................................................................. 2

        2.   Motive Evidence .......................................................................................... 3

        3.   Evidence of Indebtedness .............................................................................. 3

    C.   Discussion ........................................................................................................... 4

        1.   Evidence of the Defendant's Motive Is Relevant ............................................. 4

        2.   The Defendant Is Not Entitled to Preclusion Under Rule 403 of Evidence of His Motive .................................................................................................... 7

II.   The Defendant's Motion to Preclude "All Evidence of Settlement Negotiations and Communications" Should Be Denied .............................................................................. 8

    A.   Applicable Law .................................................................................................... 9

        1.   Privileges Generally ..................................................................................... 9

        2.   Rule 408 .................................................................................................... 10

    B.   Discussion ......................................................................................................... 11

        1.   Rule 501 Does Not Authorize a New So-Called "Confidential Settlement Communications" Privilege ......................................................................... 11

        2.   Even If the Court Had Authority, It Should Not Recognize a "Confidential Settlement Communications" Privilege ........................................................ 15

        3.   Even If a Settlement Privilege Existed, It Would Not Bar the Evidence Here ..... 17

CONCLUSION ................................................................................................................... 18

## **TABLE OF AUTHORITIES**

**CASES**

*aPriori Techs., Inc. v. Broquard*, No. 16 Civ. 9561 (JAK), 2017 WL 2999027 (C.D. Cal. June 1, 2017) .................................................................................................................................. 12

*Arnold v. Wilder*, 657 F.3d 353 (6th Cir. 2011) .............................................................. 11, 12, 14

*Collier v. Town of Harvard*, No. 95 Civ. 11652 (DPW), 1997 WL 33781338 (D. Mass. Mar. 28, 1997) ................................................................................................................................ 12

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003 .......... 14

*Hernandez v. Office of the Comm'r of Baseball*, 331 F.R.D. 474 (S.D.N.Y. 2019)..................... 9

*In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106 (7th Cir. 1979) .................. 14

*In re Grand Jury Subpoenas*, 318 F.3d 379 (2d Cir. 2003) ........................................................ 9

*In re Grand Jury Subpoenas*, 995 F. Supp. 333 (E.D.N.Y. 1998).......................................... 9, 17

*In re MSTG, Inc.*, 675 F.3d 1337 (Fed. Cir. 2012) ...................................................................... 14

*Jaffee v. Redmond*, 518 U.S. 1 (1996) ........................................................................................ 15

*Old Chief v. United States*, 519 U.S. 172 (1997).......................................................................... 5

*Parker v. Randolph*, 442 U.S. 62 (1979) ...................................................................................... 8

*PBM Prods., LLC v. Mead Johnson Nutrition Co.*, 678 F. Supp. 2d 390 (E.D. Va. 2009).......... 13

*Primetime 24 Joint Venture v. Echostar Commc'ns Corp.*, No. 98 Civ. 6738 (RMB) (MHD), 2000 WL 97680 (S.D.N.Y. Jan. 28, 2000). ...................................................................... 14

*Prout v. Vladeck*, 326 F.R.D. 407 (S.D.N.Y. 2018) ........................................................ 12, 15, 17

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002 (2017)........................................ 16

*Raybestos Prods. Co. v. Younger*, 54 F.3d 1234 (7th Cir. 1995)................................................ 17

*Trammel v. United States*, 445 U.S. 40 (1980) ................................................................ 9, 15, 17

*Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284 (6th Cir. 1997) ................................ 14

*United States v. Awan*, 607 F.3d 206 (2d Cir. 2010) .................................................................... 3

*United States v. Benton,* 637 F.2d 1052 (5th Cir. 1981)............................................................... 3

*United States v. Bergstein*, --- F. App'x ----, 2019 WL 4410240 (2d Cir. Sept. 16, 2019) ............ 4

*United States v. Bold*, 100 F.3d 944, 1996 WL 75833 (2d Cir. 1996)............................................ 4

*United States v. Bryan*, 339 U.S. 323 (1950) ............................................................................... 9

*United States v. Coppola*, 671 F.3d 220 (2d Cir. 2012)............................................................... 17

*United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980) ............................................................. 3

*United States v. Gelzer*, 50 F.3d 1133 (2d Cir. 1995)................................................................... 3

*United States v. Hernandez,* 588 F.2d 346 (2d Cir. 1978)....................................................... 3, 4, 6

*United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210 (2d Cir. 1997) ......................................... 9

*United States v. Li*, 133 F.3d 908, 1997 WL 796149 (2d Cir. 1997)............................................ 4

*United States v. Manzano*, --- F.3d ----, 2019 WL 6884503 (2d Cir. Dec. 18, 2019) ................. 16

*United States v. Meszaros*, No. 06 Cr. 290 (JFB), 2008 WL 5113425 (E.D.N.Y. Nov. 25, 2008) ....................................................................................................................................4

*United States v. Nixon*, 418 U.S. 683 (1974) ................................................................................ 9

*United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002)................................................... 13

*United States v. Quattrone*, 441 F.3d 153 (2d Cir. 2006)........................................................... 2

*United States v. Ravich*, 421 F.2d 1196 (2d Cir. 1970) .............................................................. 2

*United States v. Reed*, 639 F.2d 896 (2d Cir. 1981) ................................................................. 1, 3

*United States v. Roldan-Zapata*, 916 F.2d 795 (2d Cir. 1990) ................................................... 8

*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998)................................................................ 3

*United States v. Shyne*, No. S4 05 Cr. 1067 (KMK), 2007 WL 1075035 (S.D.N.Y. Apr. 5, 2007) ................................................................................................................................ 3, 5

*United States v. Siddiqui*, 699 F.3d 690 (2d Cir. 2012) ........................................................... 3, 6

*United States v. Stahl*, 616 F.2d 30 (2d Cir. 1980) ..................................................................... 7

*United States v. Stein*, No. 05 Cr. 888 (LAK), 2007 WL 3009650 (S.D.N.Y. Oct. 15, 2007)..... 10

*United States v. Tussa*, 816 F.2d 58 (2d Cir. 1987)................................................................... 8

*United States v. Wahl*, 563 F. App'x 45 (2d Cir. 2014).......................................................... 10, 15

*United States v. Wilson*, 493 F. Supp. 2d 348 (E.D.N.Y. 2006) ...................................................... 9

*United States v. Zhou*, 428 F.3d 361 (2d Cir. 2005) ..................................................................... 17

*United States v. Zinnel*, 725 F. App'x 453 (9th Cir. 2018).................................................... 11, 12

*Urico v. Parnell Oil Co.*, 708 F.2d 852 (1st Cir. 1983) ............................................................... 12

## PUBLIC LAWS

Pub. L. 93-595, 88 Stat. 1926 (Jan. 2, 1975) ............................................................................... 11

## RULES

Fed. R. Evid. 401 ............................................................................................................................ 2

Fed. R. Evid. 402 ............................................................................................................................ 2

Fed. R. Evid. 403 ............................................................................................................................ 3

Fed. R. Evid. 408 .................................................................................................................... 10, 12

Fed. R. Evid. 501 ...................................................................................................................... 9, 11

## TREATISES

23 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure: Evidence*
    § 5314 (2d ed. Aug. 2019). ................................................................................................. 11, 12

## OTHER AUTHORITIES

Sand *et al.*, *Modern Federal Jury Instructions*, Instr. 6-18 ........................................................ 3, 4

Wayne D. Brazil, *Protecting the Confidentiality of Settlement Negotiations*, 39 Hastings L.J. 955
(1988) ……………………………………………………………………………………………12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
                                        :

UNITED STATES OF AMERICA       :

                         - *v.* -          :                S1 19 Cr. 373 (PGG)

MICHAEL AVENATTI,         :

                Defendant.   :

-----------------------------------------------------x

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the defendant's motions *in limine* to exclude (1) evidence of "his financial condition and spending" ("Def. Fin. Condition Mot.") (Dkt. No. 89), and (2) "all evidence of settlement negotiations and communications" ("Def. Settlement Mot.") (Dkt. No. 92).

## ARGUMENT

### I.    The Defendant's Motion to Preclude Evidence Regarding His Financial Condition Should Be Denied

The defendant moves to preclude the Government from offering any evidence regarding his motive to commit the charged offenses, including evidence regarding his financial needs at the time of his conduct.  He argues that all such evidence is irrelevant because his motive purportedly "is not at issue," and, in any event, all such evidence should be precluded under Federal Rule of Evidence 403.  (Def. Fin. Condition Mot. 2, 6.)  The defendant is wrong.  His motive or lack thereof is probative of his guilt and, consistent with the long-established law of this circuit, the probative value of evidence on this point far outweighs any theoretical risk of unfair prejudice. *See, e.g.*, *United States v. Reed*, 639 F.2d 896, 907 (2d Cir. 1981) ("[A] defendant's belief that he is in financial difficulty is admissible to show motive, and not unduly prejudicial.").

### A.  Relevant Background

The Government expects that the evidence at trial will show that, at the time of his charged conduct, the defendant was in significant debt.  Specifically, the Government presently estimates that the defendant's debts at that time were, conservatively, in excess of $15 million.  These debts were owed to various sources, including the individual identified in the Superseding Indictment as Attorney-1, multiple of the defendant's former clients, one or more of his former law partners, and both of his former spouses.  The debts resulted from, among other things, unpaid civil judgments, defaulted personal loans, and child and spousal support in arrears.  The Government intends for the evidence of these debts to be presented principally through documentary evidence, along with brief testimony from two witnesses: (1) a lay witness who assisted the defendant with managing his finances, and (2) a law enforcement witness who may present one or more summary charts, including regarding financial records.

### B.  Applicable Law

#### 1.  Rules 402 and Rule 403

Under Federal Rule of Evidence 402, "[r]elevant evidence is admissible," and "[i]rrelevant evidence is not admissible."  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401(a)-(b).  This is generally not a difficult test to meet.  *See, e.g.*, *United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006) ("so long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry" (citing *United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir. 1970) (Friendly, J.))).

Otherwise admissible evidence is subject to preclusion under Federal Rule of Evidence 403 if its probative value is "substantially outweighed" by the danger of, among other things, unfair

prejudice.  Fed. R. Evid. 403.  The "prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'"  *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)).

### 2.  Motive Evidence

"Motive has been variously defined as 'the reason that nudges the will and prods the mind to indulge the criminal intent,' *United States v. Benton,* 637 F.2d 1052, 1056 (5th Cir. 1981) (internal quotation marks omitted); 'the rationale for an actor's particular conduct,' *United States v. Awan*, 607 F.3d 206, 137 (2d Cir. 2010); and 'an emotion or state of mind that prompts a person to act in a particular way,' Charles Alan Wright and Kenneth W. Graham, Jr., *Federal Practice and Procedure: Federal Rules of Evidence* § 5240."  *United States v. Siddiqui*, 699 F.3d 690, 702 (2d Cir. 2012).  "Although it does not bear directly on the charged elements of a crime, evidence offered to prove motive is commonly admitted."  *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998); *see also* Sand *et al.*, *Modern Federal Jury Instructions*, Instr. 6-18.  "And unlike issues of knowledge and intent, the defendant's motive—an explanation of *why* the defendant would engage in the charged conduct—becomes highly relevant when the defendant argues that he did not commit the crime."  *Siddiqui*, 699 F.3d at 702 (emphasis in original).

### 3.  Evidence of Indebtedness

"The Second Circuit has long recognized that evidence of indebtedness is admissible in a criminal case to establish motive."  *United States v. Shyne*, No. S4 05 Cr. 1067 (KMK), 2007 WL 1075035, at *34 (S.D.N.Y. Apr. 5, 2007) (citing *United States v. Hernandez,* 588 F.2d 346, 348-49 (2d Cir. 1978) (collecting cases)); *see also, e.g.*, *Reed*, 639 F.2d at 907.

### C. Discussion

At this trial, where the defendant is charged with three offenses that each involves prospective financial gain—indeed, significant financial gain—and where the defendant's intent in undertaking the charged conduct is expected to be the central disputed issue, the defendant's motive or lack thereof is highly relevant to the jury's determination. The defendant does not appear to disagree. Instead, he asserts that (a) motive is not "an element," and (b) in any event, all evidence of financial condition should be precluded under Rule 403. (Def. Fin. Condition Mot. 1, 3, 6.) The first of these assertions is a red herring. The second is wrong.

### 1. Evidence of the Defendant's Motive Is Relevant

As noted above, the defendant first argues that his motive is not "at issue" because none of the three charged offenses "requires the government to prove motive as an element of the offense." (Def. Fin. Condition Mot. 3.) The defendant is of course correct that his motive is not in and of itself an "element" of any of the charged offenses—but that that does not make evidence of motive inadmissible. *See* Sand *et al.*, *Modern Federal Jury Instructions*, Instr. 6-18.

Indeed, "[the Second Circuit] has long recognized the admissibility of [financial condition evidence] to establish motive in money-related offenses." *Hernandez*, 588 F.2d at 349 (collecting cases); *see also, e.g.*, *United States v. Bergstein*, --- F. App'x ----, 2019 WL 4410240, at *2 (2d Cir. Sept. 16, 2019) (affirming admission of "evidence of [defendant's] casino debts" because it "plainly reflects [defendant's] motive"); *United States v. Li*, 133 F.3d 908, 1997 WL 796149, at *1 (2d Cir. 1997) ("evidence of [defendant's] debt . . . was properly admissible as evidence of motive"); *United States v. Bold*, 100 F.3d 944, 1996 WL 75833, at *1 (2d Cir. 1996) (affirming admission of evidence of "indebtedness" to show "motive in robbing a bank"); *United States v. Meszaros*, No. 06 Cr. 290 (JFB), 2008 WL 5113425, at *10 (E.D.N.Y. Nov. 25, 2008) ("For example, the problems and expenses that allegedly developed from the defendant's participation

4

in the first fraud scheme, including the alleged hiring of civil and criminal attorneys, would help explain and provide an additional financial motive for the defendant's alleged decision to concoct and participate in the second scheme."); *Shyne*, 2007 WL 1075035, at *34 ("Details of a defendant's financial history are often relevant to the motive of a defendant to commit a crime, especially if that crime involves pecuniary gain."). The proposition for which the defendant appears to advocate—that motive evidence is only admissible where it is an "element" of the charged offense—is irreconcilable with settled law, as well as the plain language of Federal Rule of Evidence 401.

The defendant appears to argue, in the alternative, that even if motive evidence is admissible generally, it should not be admissible in this particular case because the defendant says that he "does not intend to defend the case on the basis of mistaken identity," "an alibi defense," or "that the conduct at issue was an accident or that he lacked knowledge of the conduct." (Def. Fin. Condition Mot. 4.) This argument is flawed for multiple reasons. As an initial matter, "the prosecution is entitled to prove its case by evidence of its own choice," and a defendant "may not . . . admit his way out of the full evidentiary force of the case as the government chooses to present it." *Old Chief v. United States*, 519 U.S. 172, 186 (1997). The defendant's assertion that, in his view, the Government does not "need" evidence of his motive (Def. Fin. Condition Mot. 4) has no more bearing on whether the Government—which has the burden of proof—may introduce evidence of motive than the Government asserting the reverse would bear on whether the defendant may introduce evidence, if any, of the opposite.

Nor is it sufficient for the defendant merely to "admit that he was seeking to be compensated" (Def. Fin. Condition Mot. 5). Even assuming he were to make such an admission at trial, the evidence that the defendant challenges is not being offered merely to show that the

defendant "was seeking to be compensated" (*id.*), but instead to demonstrate that he had extraordinary indebtedness, and thus the need and motive to quickly generate substantial sums of money, at the time when he engaged in the charged conduct.  Evidence probative of that issue is plainly relevant.  Indeed, "[t]he relevancy of an interest in paying off an indebtedness by engaging in a fast and highly lucrative money-making venture is obvious." *Hernandez*, 588 F.2d at 348.

Moreover, evidence of the defendant's indebtedness is necessary to rebut arguments that the defendant has made apparent he will make to the jury regarding this very issue—i.e., his purported motive in engaging in the charged conduct.  The defendant has consistently suggested that he intends to offer evidence and make arguments at trial concerning his purportedly benign or even altruistic motive.  (*See, e.g.*, Def. Mot. to Dismiss 6 (describing the defendant's purported intent "to truthfully expose misconduct directly related to his client's claims for legal and equitable relief") (Dkt. No. 35); Def. Settlement Mot. 4 ("the purpose of the meeting was to settle a lawsuit, on behalf of a client").)  The defendant thus apparently intends to ask the jury to find that he lacked the requisite intent based on his own self-serving description of his motive, while seeking to block the Government's contrary evidence of his motive.  The defendant is no more entitled to a one-sided presentation of evidence and argument than the Government is.

In sum, the defendant's indebtedness is both part of the story of the charged offenses, and necessary to avoid leaving unanswered questions that the defendant apparently wishes to plant in jurors' minds.  It is an entirely proper for the jury to weigh evidence bearing directly on the defendant's financial motivation and intent, as the Second Circuit and courts in this district have consistently held.  As discussed above, "an explanation of *why* the defendant would engage in the charged conduct[ ]becomes highly relevant when the defendant argues that he did not commit the crime." *Siddiqui*, 699 F.3d at 702 (emphasis in original).  That is plainly the case here.

6

### 2.  The Defendant Is Not Entitled to Preclusion Under Rule 403 of Evidence of His Motive

The defendant alternatively argues that, even if evidence of his financial condition is relevant, it should be precluded under Rule 403 because "evidence of luxury items" and the defendant's "spending habits" would "invite[] a jury to engage in class-based bias regarding the defendant's wealth or lack thereof."  (Def. Fin. Condition Mot. 6.)  This argument is specious.

In support of his argument, the defendant relies entirely on *United States v. Stahl*, 616 F.2d 30 (2d Cir. 1980).  (Def. Fin. Condition Mot. 6.)  *Stahl* is not helpful to the defendant.  In *Stahl*, the defendant contended that "the prosecutor engaged in a continuous course of conduct designed to equate wealth with wrongdoing and to appeal to the potential bias of not-so-wealthy jurors against a very wealthy real estate entrepreneur."  616 F.2d at 31.  The Second Circuit concluded that the prosecutor, through misleading argument, "did in fact intend to arouse prejudice against the defendant because of his wealth and engaged in calculated and persistent efforts to arouse such prejudice throughout the trial," making "a persistent appeal to class prejudice."  *Id.* at 32-33.

Here, however, as detailed above, the Government does not intend to offer evidence of the defendant's wealth or class, but rather to offer evidence of the defendant's debts at a particular time for a wholly appropriate and unrelated purpose—namely, to establish his desperation for money at that time and thus motive to engage in the charged conduct.  Unlike in *Stahl*, the Government does not intend to make arguments to the jury somehow equating wealth with wrongdoing or otherwise encouraging "class-based bias" (Def. Fin. Condition Mot. 6).  Indeed, the Government does not intend to argue that the defendant was wealthy (and the evidence shows that he was not).  Nor does the Government intend to offer evidence of the defendant's "spending habits" (*id.*) devoid of a connection to his relevant, contemporaneous debts.  Instead, the Government intends to show that the defendant owed particular debts at a particular time to

establish that he had a need for particular and substantial sums money and therefore a compelling motive to commit the charged offenses when he did and in the way that he did.

Moreover, the vast majority of the defendant's debts, by dollar amount, are in the form of civil judgments or unpaid personal loans; nothing about them on their face suggests that the defendant engaged in other criminal conduct or would otherwise inflame the jury. *See, e.g.*, *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (evidence not unfairly prejudicial because it "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged"). Nor would the Government object to an appropriate limiting instruction concerning this evidence, were the defendant to request one. *See United States v. Tussa*, 816 F.2d 58, 68 (2d Cir. 1987) (limiting instruction sufficient to preclude prejudice to defendant); *see generally Parker v. Randolph*, 442 U.S. 62, 75 n.7 (1979) ("The 'rule'– indeed, the premise upon which the system of jury trials functions under the American judicial system – is that juries can be trusted to follow the trial court's instructions."). And even if there were some theoretical risk of unfair prejudice from the evidence of which the defendant seeks preclusion, it is far outweighed by the evidence's probative value, for the reasons explained at length above.

## II.    The Defendant's Motion to Preclude "All Evidence of Settlement Negotiations and Communications" Should Be Denied

The defendant asks this Court to cut from whole cloth—and contrary to rule, precedent, and common sense—a new privilege that would effectively immunize this defendant, and anyone else with the foresight to utter the words "confidential" or "Rule 408" before committing a crime. This request should be denied.

### A. Applicable Law

### 1. Privileges Generally

Federal Rule of Evidence 501 provides that federal common law "governs a claim of privilege unless" the Constitution, federal statute, or rules prescribed by the Supreme Court "provide[ ] otherwise." Fed. R. Evid. 501.  The Supreme Court has explained that "'we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.'"  *United States v. Bryan*, 339 U.S. 323, 331 (1950) (quoting Wigmore, Evidence (3d ed.) § 2192).  Thus, privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth," *United States v. Nixon*, 418 U.S. 683, 710 (1974), and "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth," *Trammel v. United States*, 445 U.S. 40, 50 (1980); *see also In re Grand Jury Subpoenas*, 318 F.3d 379, 384 (2d Cir. 2003).  "It is the party seeking an exception from this principle that bears the burden of establishing the existence of a privilege and its applicability to a particular case," and "[t]he burden is a heavy one."  *In re Grand Jury Subpoenas*, 995 F. Supp. 333, 334 (E.D.N.Y. 1998) (citing *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997)); *see also Hernandez v. Office of the Comm'r of Baseball*, 331 F.R.D. 474, 476-77 (S.D.N.Y. 2019); *United States v. Wilson*, 493 F. Supp. 2d 348, 361 (E.D.N.Y. 2006).

2.  **Rule 408**

Federal Rule of Evidence 408 governs admissibility of evidence concerning settlement

offers and negotiations.  It reads in full:

> (a) Prohibited Uses.  Evidence of the following is not admissible—
> on behalf of any party—either to prove or disprove the validity
> or amount of a disputed claim or to impeach by a prior
> inconsistent statement or a contradiction:
>
>> (1) furnishing, promising, or offering—or accepting,
>> promising to accept, or offering to accept—a valuable
>> consideration in compromising or attempting to
>> compromise the claim; and
>>
>> (2) conduct or a statement made during compromise
>> negotiations about the claim—except when offered in a
>> criminal case and when the negotiations related to a
>> claim by a public office in the exercise of its regulatory,
>> investigative, or enforcement authority.
>
> (b) Exceptions.  The court may admit this evidence for another
> purpose, such as proving a witness's bias or prejudice, negating
> a contention of undue delay, or proving an effort to obstruct a
> criminal investigation or prosecution.

Fed. R. Evid. 408.  In short, while conduct and statements made during settlement (or in the words

of the rule, "compromise") negotiations are not admissible "either to prove or disprove the validity

or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction,"

they may be admitted "for another purpose."  Fed. R. Evid. 408(a), (b).

Unsurprisingly, given the limited nature of Rule 408's bar on admission of settlement

evidence, such evidence is routinely admitted in criminal trials.  *See, e.g.*, *United States v. Wahl*,

563 F. App'x 45, 50-51 (2d Cir. 2014) (affirming admission of settlement evidence to demonstrate

knowledge); *United States v. Stein*, No. 05 Cr. 888 (LAK), 2007 WL 3009650, at *2 (S.D.N.Y.

Oct. 15, 2007) (settlement agreements admissible because not being used to prove validity of

underlying claim).  Rule 408 also does not bar admission of evidence of a crime or wrong

committed during a settlement negotiation or discussion itself.  *United States v. Zinnel*, 725 F. App'x 453, 459 (9th Cir. 2018); *Arnold v. Wilder*, 657 F.3d 353, 366 (6th Cir. 2011); *see also* 23 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure: Evidence* § 5314 (2d ed. Aug. 2019).

### B.  Discussion

The defendant argues that this Court can and should "recognize"—i.e., create—a new "federal common law privilege, under Rule 501, for agreed-upon confidential settlement communications between lawyers, where the communications do not involve any threats of force or violence." (Def. Settlement Mot. 6.)  Neither Rule 501 nor any other source of authority permits the creation of such a privilege.  And even if the Court had such authority, it should decline the defendant's invitation to prevent a jury from considering his conduct.

### 1.  Rule 501 Does Not Authorize a New So-Called "Confidential Settlement Communications" Privilege

By its express terms, Rule 501 does not authorize courts to create common law privileges where "federal statute, or rules prescribed by the Supreme Court" "provides otherwise."  Fed. R. Evid. 501.  This limitation alone dooms the defendant's request.  As described above, Rule 408— which like all such rules, was prescribed by or under the authority of the Supreme Court, and in any event was also enacted by Congress, *see* Pub. L. 93-595, 88 Stat. 1926 (Jan. 2, 1975)— "provides otherwise."  Specifically, Rule 408 expressly permits the use of evidence drawn from

settlement negotiations for any purpose *other* than proving the validity of the claim underlying the negotiations or to impeach a witness. Fed. R. Evid. 408(b).[1]

One such purpose is to prove that a crime was committed during the settlement negotiation itself. *See Zinnel*, 725 F. App'x at 459; *Arnold*, 657 F.3d at 366; *see also* 23 Wright & Graham, *Federal Practice & Procedure: Evidence* § 5314. Indeed, courts have specifically held that evidence of statements and conduct during settlement negotiations is admissible to prove extortionate threats during those negotiations. *See Prout v. Vladeck*, 326 F.R.D. 407, 411 (S.D.N.Y. 2018) (alleged extortionate threats "do not constitute protected compromise offers or negotiations within the meaning of Rule 408"); *aPriori Techs., Inc. v. Broquard*, No. 16 Civ. 9561 (JAK), 2017 WL 2999027, at *2 (C.D. Cal. June 1, 2017) ("[E]ven if the statements at issue were construed as settlement communications about Plaintiff's claims, Rule 408 would not preclude their admission in a later claim for extortion."); *Collier v. Town of Harvard*, No. 95 Civ. 11652 (DPW), 1997 WL 33781338, at *3 n.10 (D. Mass. Mar. 28, 1997) (Rule 408 does not require exclusion if offered for a purpose other to prove the underlying claim, including "to show an extortionate scheme" (citing, *inter alia*, *Urico v. Parnell Oil Co.*, 708 F.2d 852, 854 (1st Cir. 1983))); *see also* Wayne D. Brazil, *Protecting the Confidentiality of Settlement Negotiations*, 39 Hastings L.J. 955, 980 (1988) ("[T]here is no reason to read rule 408 as barring evidence that a party attempted to extort another during settlement negotiations.").

---

[1]   The defendant makes no argument—and could not reasonably contend—that the evidence of the so-called "settlement negotiations" in this case is being offered by the Government to prove the validity of the underlying claims of Client-1. Even if one accepted the defendant's view that the extortionate meetings were "settlement negotiations," the merits of any underlying claims are irrelevant. (*See* Gov't Mot. *In Limine* 11 (Dkt. No. 96); Gov't Opp'n to Rule 17(c) Subpoena 5-6 (Dkt. No. 62).) And in any event, this is not the purpose for which the Government offers this evidence. Indeed, it is the defendant who appears to seek to place before the jury evidence seeking to prove the validity of the underlying claims. (*See, e.g.*, Def. Response to Mot. to Quash Nike Subpoena 2 (Dkt. No. 59).)

In an effort to escape the plain language of Rule 408 and the case law above, the defendant provides a lengthy survey of English common law and related authority standing for the proposition that a lawyer cannot be sued for defamation based on statements made in the course of litigation.  (Def. Settlement Mot. 10-14.)  That proposition was not adopted in Rule 408, *see, e.g.*, *PBM Prods., LLC v. Mead Johnson Nutrition Co.*, 678 F. Supp. 2d 390, 403 (E.D. Va. 2009) (explaining, with respect to a defamation claim, that "Rule 408 is not an obstacle here because the deposition testimony is not being offered to prove liability"), and is, in any event, irrelevant to this criminal case.

The defendant also relies on *United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002), for the assertion that "considerations of public policy that have cemented the 'litigation privilege' in American jurisprudence have also led courts to create an exception to *criminal liability* for allegations of extortion in relation to pre-suit threats to litigate"—a point that is again of no significance here.  (Def. Settlement Mot. 15 (emphasis in original).)  *Pendergraft* addressed, among other things, whether a threat to a government entity to name it as a defendant in a lawsuit becomes wrongful where the threatened lawsuit includes evidence known to the putative defendant to be fabricated.  297 F.3d 1205-08.  *Pendergraft*'s holding—"a narrow one"—was simply that such a threat to sue does not become "wrongful" merely because the allegation would have been supported by a false affidavit, particularly as other criminal statutes already criminalize the use of false statements in litigation.  *Id.*  Moreover, the court in *Pendergraft* also concluded that it was proper to admit a videotape of settlement negotiations to prove the criminal conduct.  *Id.* at 1211 n.8.  That is precisely the opposite of what the defendant seeks here.

The defendant similarly suggests that the Sixth Circuit has recognized a common law privilege of the type he proposes.  (Def. Settlement Mot. 17 (citing *Goodyear Tire & Rubber Co.*

*v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003)).)  The Sixth Circuit (which, in any event, is not binding authority on this Court) has done no such thing.  In *Goodyear Tire & Rubber Co.*, the Sixth Circuit invoked a settlement privilege to block third-party discovery by a plaintiff of evidence of settlement negotiations between parties that concerned which of those parties might be liable for the plaintiff's injury.  332 F.3d at 979-83.  That case did not address, much less create, a new purported privilege covering the use of all communications that begin with an invocation of confidentiality.  Indeed, the Sixth Circuit, both before and after *Goodyear Tire & Rubber Co.*, has made clear that evidence derived from settlement negotiations may be admissible, particularly where the wrongful conduct occurred in the course of the negotiations.  *See, e.g.*, *Arnold*, 657 F.3d at 366; *Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284, 1293-94 (6th Cir. 1997).[2]

Finally, the defendant states without elaboration that Rule 408 "does not address the admissibility against a lawyer of non-violent statements made by that lawyer during an agreed-upon settlement conference with opposing counsel."  (Def. Settlement Mot. 17.)  It is true, of course, that Rule 408 does not specifically reference the facts of this case, or distinguish "non-violent statements" from other statements.  But that is of no more consequence than the fact that the definition of relevance in Rule 401 does not specifically address the facts of every case to which it applies.  And Rule 501, by its plain terms, simply does not authorize the construction of a privilege at odds with another Rule of Evidence (even if one were to ignore all of the decisions

---

[2]     Moreover, although it matters not for present purposes, *Goodyear Tire & Rubber Co.* has been widely criticized and its reasoning and/or holding rejected by other courts (and not merely, as the defendant suggests, because it applied federal common law in a diversity case (Def. Settlement Mot. 17)).  *See, e.g.*, *In re MSTG, Inc.*, 675 F.3d 1337, 1342-48 (Fed. Cir. 2012); *see also In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 n.20 (7th Cir. 1979); *Primetime 24 Joint Venture v. Echostar Commc'ns Corp.*, No. 98 Civ. 6738 (RMB) (MHD), 2000 WL 97680, at *4 n.5 (S.D.N.Y. Jan. 28, 2000).

admitting the same type of evidence that the defendant now seeks to preclude, *see, e.g.*, *Wahl*, 563 F. App'x at 50-51; *Prout*, 326 F.R.D. at 411).

>    **2.   Even If the Court Had Authority, It Should Not Recognize a "Confidential Settlement Communications" Privilege**

Even if the law did permit the creation of the new privilege that the defendant seeks, the Court should decline to do so because the defendant's proposed new privilege—an attempt effectively to immunize himself from liability for his criminal conduct—would be in direct and serious conflict with the public interest. *See Jaffee v. Redmond*, 518 U.S. 1, 9-11 (1996) (proponent of a privilege must demonstrate that it serves public ends); *Trammel*, 445 U.S. at 50 (weighing proffered privilege against "need for probative evidence in the administration of criminal justice").

The defendant claims that, "[a]bsent such a privilege, lawyers will be incentivized to surreptitiously audio-record each other and participating neutrals during settlement conferences in contravention of the spirit of such meetings, with the hope that one side will be able to leverage statements made during those meetings against the opposing party counsel."  (Def. Settlement Mot. 1.)  The defendant provides no basis to explain why such surreptitious recording is of general concern or why it should suddenly be of concern now, where the law has always been that evidence of statements during settlement negotiations is admissible for any number of purposes, including proving extortion. *E.g.*, *Prout*, 326 F.R.D. at 411.  And weighed against the concern expressed by the defendant, even if it were valid, is the indisputable fact that the defendant's proposed privilege would effectively immunize from prosecution anyone with the foresight to make an assertion of confidentiality before engaging in extortionate, fraudulent, or other criminal conduct.   An individual should no more be permitted insulate himself from criminal liability by invoking Rule 408 than by declaring, prior to victimizing another person, that the statements he or she is about to make are, in his or her view, not relevant under Rule 401 or are barred by Rule 403.

The defendant similarly asserts that "[l]awyers are trained and well-equipped to deal with such threats . . . including by warning the threatening counsel that he/she may be crossing the line by following through on such a threat." (Def. Settlement Mot. 16.) The defendant offers nothing to support his suggestion that lawyers are somehow better equipped to resist being victimized than other members of society, nor does his suggestion that when victims have law degrees they are to be blamed if they do not promptly announce aloud that a crime is being committed have any weight. Congress has not seen fit to exempt people who have attended law school from criminal liability, or to exempt from prosecution those crimes committed against lawyers or their clients, and the defendant should not be permitted to create his own exemptions from statute by appealing to an invention of federal common law. *See United States v. Manzano*, --- F.3d ----, 2019 WL 6884503, at *7 (2d Cir. Dec. 18, 2019) ("As the Supreme Court has held, 'the supervisory power does not extend so far' as to 'confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing.'" (quoting *United States v. Payner*, 447 U.S. 727, 737 (1980))); *cf. Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017) ("This is not a free-ranging search for the best copyright policy, but rather depends solely on statutory interpretation." (internal quotation marks omitted)).

Indeed, the facts of this case illustrate just how extreme and illogical is the position for which the defendant advocates. As he concedes (Def. Settlement Mot. 4), the evidence shows that defendant instructed his extortion victim's representatives that their discussions were purportedly to be covered by Rule 408 *before* explaining the nature of the issue(s) he wished to "settle," and, indeed, before even disclosing the name of his client. The notion that a lawyer or anyone else could consent, *ex ante*, to being extorted, defrauded, or victimized and that such alleged consent would render all evidence of the crime inadmissible in a future prosecution is both inconsistent

with the law and unsupported by any reasonable conception of public policy.  *See, e.g.*, *Prout*, 326 F.R.D. at 411.  It is particularly irreconcilable with the law governing extortion.  *See United States v. Zhou*, 428 F.3d 361, 377 (2d Cir. 2005) ("that the victim of extortion consents to the taking— albeit through threat or force—[is what] separates extortion from robbery"); *see also United States v. Coppola*, 671 F.3d 220, 240 (2d Cir. 2012) ("the consent element serves not to distinguish illegal from legal obtaining of property by the wrongful use of threats or fear, but rather to distinguish between two illegal means of so obtaining property: extortion (with consent) and robbery (without consent)").

### 3.   Even If a Settlement Privilege Existed, It Would Not Bar the Evidence Here

Finally, even assuming *arguendo* both that (a) the Court could create a new privilege as the defendant requests, and (b) it were appropriate and in the public interest to do so, the defendant would still bear the burden of demonstrating that the new privilege bars the evidence here, a burden he cannot carry.  *See Trammel*, 445 U.S. at 50; *In re Grand Jury Subpoenas*, 995 F. Supp. at 334.

As noted above, the defendant seeks a privilege covering "agreed-upon confidential settlement communications between lawyers, where the communications do not involve any threats of force or violence."  (Def. Settlement Mot. 1.)  Even if such a privilege existed, the defendant cannot demonstrate that his statements were made during a true settlement negotiation. As the Superseding Indictment alleges, and the evidence at trial will show, the meetings in this case were not legitimate "settlement conferences" (*id.*) on the defendant's side, but merely settings for him to make extortionate demands.  *See Raybestos Prods. Co. v. Younger*, 54 F.3d 1234, 1241 (7th Cir. 1995) ("To determine whether [the defendant] sent his letter as an attempt to compromise a claim, or rather to intimidate the plaintiff, this court must look at the totality of the circumstances, carefully reviewing the contents of the letter and the timing of its delivery.").  Nor, as discussed above, can the defendant reasonably suggest that a victim's alleged consent turns extortion into

17

something else.  But even if the defendant's version of the facts were correct—and it is not—it is

a contested version.  The defendant should not be permitted prevent the jury from considering his

guilt by asserting, at bottom, that he is not guilty.

## **CONCLUSION**

For the foregoing reasons, the defendant's motions *in limine* should be denied.

Dated:  New York, New York
       December 24, 2019

                                     Respectfully submitted,

                                     GEOFFREY S. BERMAN
                                     United States Attorney

By:    s/ Matthew D. Podolsky
                 Matthew D. Podolsky
                 Daniel C. Richenthal
                 Robert B. Sobelman
                 Assistant United States Attorneys
                 (212) 637-1947/2109/2616

18