*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 27, 2019

**BY ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:   *United States v. Michael Avenatti*,
           S1 19 Cr. 373 (PGG)

Dear Judge Gardephe:

      The Government respectfully submits this letter, pursuant to the Court's request during the conference in this matter on December 17, 2019 and the Court's order of December 20, 2019 (Dkt. No. 105), to provide a supplemental summary of the expert opinions that the Government expects to offer during its case-in-chief at trial. The Government also respectfully requests that the Court order the defendant to file a similar supplemental summary on or before January 3, 2020.

### I. Supplemental Disclosure By the Government

#### A. Background

      The Government provided notice of expert testimony on November 22, 2019, the date agreed upon by the parties, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G). (Dkt. No. 83-1.)

      The Government subsequently conferred with the defendant and supplemented its notice, in response to inquiries by the defendant, on November 27, 2019. (Dkt. No. 83-3.)

      The Government further described the contours of the expected testimony of its experts in its submission of December 13, 2019 (Dkt. No. 98) and during the conference on December 17, 2019 (Dec. 17, 2019 Tr. 13-14).

Honorable Paul G. Gardephe
United States District Judge
December 27, 2019
Page 2

### B. The Government's Experts

The Government expects to offer testimony in its case-in-chief at trial from Nora Freeman Engstrom, Esq., or Mark L. Tuft, Esq.[1]

Professor Engstrom is a Professor of Law and the Deane F. Johnson Faculty Scholar at Stanford Law School, where she teaches classes in, among other things, legal ethics. She is the author or co-author of numerous publications, including *Legal Ethics* (Foundation Press, 7th ed. 2016). (Dkt. No. 83-1, at 4-14.)

Mr. Tuft is a partner at Cooper, White & Cooper LLP, who principally focuses on, among other things, professional liability, and counsels lawyers and law firms on professional responsibility. He is a Certified Specialist in Legal Malpractice Law and former President of the Association of Professional Responsibility Lawyers. He is the co-author of *California Practice Guide on Professional Responsibility* (The Rutter Group), which is available on Westlaw, and has given numerous presentations on professional responsibility. (Dkt. No. 83-1, at 15-26.)

### C. Scope of Expected Expert Testimony in the Government's Case-In-Chief

Consistent with the Government's understanding of the Court's tentative view of the appropriate scope of expert testimony in this case, as articulated at the December 17 conference, the Government does not intend to elicit from its expert his or her opinion as to whether, assuming the truth of the allegations in the Superseding Indictment, the defendant violated his fiduciary duty or the applicable professional rules (unless the defendant opens the door in his opening statement or through cross-examination or otherwise to such testimony).

Rather, as described in the Government's prior notices and below, the Government expects its expert to describe the nature of the duties owed by a lawyer to his or her client or prospective client, certain rules elucidating and detailing the application of those duties, and that the duties and rules are public and generally known within the legal community (and indeed, an individual must pass the Multistate Professional Responsibility Examination ("MPRE") to be admitted to the bar of California and elsewhere).[2] *See, e.g.*, *United States v. Kellington*, 217 F.3d 1084, 1098 (9th Cir. 2000) ("It is well settled that in the prosecution of a lawyer for conduct stemming from his or her

---

[1] While the Government has retained both of these individuals, the Government intends to call only one in its case-in-chief. The Government respectfully reserves the right to call the other in a rebuttal case, if any, should the need arise, particularly to the extent that the defendant previously advised the Government, without elaboration, that he "expressly reserves the right to supplement [both] the areas of testimony and opinions" of his proffered expert (Dkt. No. 96-1, at 3), but has not done so or otherwise informed the Government of the additional areas in which he may offer testimony or his proffered expert's opinions in those areas.

[2] "The purpose of the MPRE is to measure candidates' knowledge and understanding of established standards related to the professional conduct of lawyers." http://www.ncbex.org/exams/mpre/. (*See also* Dkt. No. 83-1, at 3.)

representation of a client, expert testimony on the lawyer's ethical obligations is relevant to establish the lawyer's intent and state of mind."); *United States v. Brooks*, No. 06 Cr. 550 (JS), 2010 WL 291769, at *4 (E.D.N.Y. Jan. 11, 2010) (appropriate for an expert to describe "corporate governance and accounting concepts, such as the nature of fiduciary duties, [and] a publicly-held corporation's disclosure requirements"); *cf. United States v. Lopez*, No. S1 18 Cr. 6 (DLC), 2019 WL 1570818, at *2 (S.D.N.Y. Apr. 11, 2019) (appropriate for an expert to describe medical standard of care because it "may be relevant to a jury's evaluation of whether a doctor's conduct 'deviated so far from the usual course of professional practice that his actions become criminal.'" (quoting *United States v. Wexler*, 522 F.3d 194, 204 (2d Cir. 2008))).

Similarly, as discussed at the conference, while the Government intends to ask its expert to provide illustrative examples or to answer hypothetical questions intended to assist the jury in understanding the meaning or scope of pertinent duties or rules,—which are, as the Court has already noted, beyond the ken of the average lay juror—it does not intend to ask its expert hypothetical questions in a manner that tracks the specific allegations in this case or otherwise to assume the truth of the allegations of misconduct in this case (assuming that the defendant does not open the door to such hypothetical questions by asking the Government's expert or his own to opine, whether in hypothetical form or otherwise, on the specific allegations of this case, including what was said in certain meetings). For example, the Government may ask its expert (i) what kind of tactical decisions a lawyer is obligated to discuss with his or her client, (ii) when a lawyer is obligated to convey an offer or suggestion of a potential settlement to a client, (iii) what types of events or developments are significant and should be relayed to a client, (iv) when and to what extent the means of achieving a client's objectives should be discussed with a client, and (v) whether an offer that addresses some but not all of a client's objectives must be conveyed to a client. *See, e.g., Barefoot v. Estelle*, 463 U.S. 880, 903 (1983) ("Expert testimony, whether in the form of an opinion based on hypothetical questions or otherwise, is commonly admitted as evidence where it might help the factfinder do its assigned job."); *United States v. Muzaffar*, 714 F. App'x 52, 55 (2d Cir. 2017) (rejecting challenge to expert testimony where only limited hypotheticals "closely matched the facts of the case" and the district court provided a limiting instruction regarding such hypotheticals); *United States v. Offill*, 666 F.3d 168, 176 (4th Cir. 2011) ("It is well established that experts may offer opinions based on hypothetical questions proposed by the attorneys questioning them."); *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("The mere use of hypotheticals does not usurp the jury's function of applying the law to the facts of the case." (citing *United States v. Scop*, 846 F.2d 135, 143 (2d Cir. 1988))).

### D. Supplemental Summary of Pertinent Duties Owed to a Client

The Government expects that Professor Engstrom or Mr. Tuft would testify that it has long been understood that an attorney owes a client the highest level of fiduciary duty, as articulated in case law (including, as is most relevant, by the California Supreme Court), California Business and Professions Code Sections 6000 *et seq.*, the State Bar of California Committee on Professional Responsibility and Conduct's opinions, and other sources of authority, including the American Bar Association ("ABA") Model Rules of Professional Conduct and the Restatement (Third) of the Law Governing Lawyers. This duty encompasses multiple components, including the duty of

loyalty, duty of confidentiality, and duty of communication. A lawyer also has an overarching duty of honesty and fair dealing with respect to his or her client, which cuts across the other duties, including, in particular, the duty of loyalty and the duty of communication.

The duty of loyalty is the most fundamental of these duties. An attorney owes complete and undivided fidelity to his or her client. In short, an attorney must put his or her client's interest above the attorney's self-interest. This means, at bottom, that a lawyer must represent the client's interests without being influenced by the lawyer's actual or perceived personal or financial interests. A lawyer may violate this duty by, among other things, (a) prioritizing his or her own financial interest above that of the client, including by using the client's confidential information to advance the lawyer's own financial or other interest, (b) seeking to take on other work or another client that creates a conflict of interest or otherwise hinders or prevents the lawyer from focusing fully on advancing the client's interest, or (c) failing to be honest and forthright with the client about the lawyer's views of the client's potential claim(s), the lawyer's actions, or the lawyer's interests. This duty is explained in and has been developed through cases, bar opinions, commentaries, and other authorities, including Tuft *et al.*, *California Practice Guide on Professional Responsibility* ("*California Practice Guide*"), Chapter 3, Section E(2); *id.* Chapter 4; *Stockton v. Ford*, 11 How. 232, 247 (1850); *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co., Inc.*, 6 Cal. 5th 59, 104 (2018); *Stanley v. State Bar*, 50 Cal. 3d 555, 567 (1990); *Mayo v. State Bar*, 23 Cal. 3d 72, 75 (1978); *Rader v. Thrasher*, 57 Cal. 2d 244, 250 (1962); *Cox v. Delmas*, 99 Cal. 104, 123 (1893); *Betts v. Allstate Ins. Co.*, 154 Cal. App. 3d 688, 715-16 (1984); and *In Matter of Brimberry*, 3 Cal. State Bar Ct. Rptr. 390, 1995 WL 638575, at *14 (1995).

The duty of confidentiality requires an attorney to maintain the confidence of any confidential information provided to the lawyer by or on behalf of the client. This duty includes, but is not limited to, communications protected by the attorney-client privilege. The duty includes anything that the client wants kept in confidence or might be embarrassing or otherwise detrimental to client, and does not terminate at the end of an attorney-client relationship. So important is this duty that California has enacted it into law. *See* Cal. Bus. & Prof. § 6068(e)(1). As described in the Government's prior notices (Dkt. Nos. 83-1 at 2, 83-3, at 2), this duty also applies with respect to individuals conferring with a lawyer regarding potential legal claims and retaining the lawyer. *See* Cal. R. Prof'l Conduct 1.18. A lawyer may violate this duty by using or disclosing to another party or publicly a client's confidential information without first obtaining the informed consent of the client. This duty is explained in and has been developed through cases, bar opinions, commentaries, and other authorities, including *California Practice Guide*, Chapter 3, Section E(3); *id.* Chapter 7; *Goldstein v. Lees*, 46 Cal. App. 3d 614, 621 n.5 (1975); and ABA Model Rule 1.6.

The duty of communication requires an attorney both to respond promptly to inquiries of the client and to keep the client reasonably informed. This means that a lawyer must keep his or her client informed both about settlement offers and about any other significant developments, and must confer with the client regarding both the client's objectives and the means of achieving those objectives. This duty flows from the principle that the client—not the lawyer—is the ultimate authority for how and whether to dispose of or settle a matter. Any information that might inform

Honorable Paul G. Gardephe
United States District Judge
December 27, 2019
Page 5

a client's decision in this respect should be communicated, to allow the client to make an informed decision. For this reason, even a nonbinding offer of settlement, or one that addresses only certain of a client's goals, should be communicated. Similarly, a lawyer should not assume that a client necessarily wants to press all of his or her potential rights, without regard to the potential impact on others. A lawyer accordingly should communicate and work with his or her client to discern both the client's objectives and the means through which the client wishes, or does not wish, to achieve these objectives. This duty has also been enacted into law. *See* Cal. Bus. & Prof. § 6068(m). The duty of communication may also implicate the duty of competence. A lawyer may violate the duty of communication by, among other things, failing to advise a client of an offer of settlement, how the lawyer intends to seek or has sought to achieve the client's objectives, or how an opposing party reacted in a pertinent communication or meeting. The duty of communication is explained in and has been developed through cases, bar opinions, commentaries, and other authorities, including *California Practice Guide*, Chapter 3, Section E(4); *Calvert v. State Bar*, 54 Cal. 3d 765, 782 (1991); *Matter of Yagman*, 3 Cal. State Bar Ct. Rptr. 788, 795 (1997); *Nehad v. Mukasey*, 535 F.3d 962, 970-71 (9th Cir. 2008); *In re Clawson*, 434 B.R. 556, 570-71 (N.D. Cal. 2010); and the Restatement (Third) of the Law Governing Lawyers § 20 and Comment c.

### E. Supplemental Summary of Pertinent California Rules of Professional Conduct

In addition to the above, Government expects that Professor Engstrom and/or Mr. Tuft would testify that the California Rules of Professional Conduct (the "California Rules"), the current version of which became effective on November 1, 2018, and which are published publicly by the State Bar of California, are designed to concretize or solidify, that is, make specific and clear, certain aspects and applications of the foregoing and other duties.[3] They have the force of law, and are intended to be a black-and-white exposition of how the duties apply, with the goal of protecting the public and promoting respect for and confidence in the legal profession. *See, e.g.*, *Sheppard, Mullin, Richter & Hampton, LLP*, 6 Cal. 5th at 74. The California Rules include commentary on the purpose and meaning of the rules, some of which also contain citations to certain relevant case law or other authority. As described above, the Government expects that its expert would explain the meaning of pertinent California Rules and their relationship to the foregoing duties, and provide a description or example of how certain such duties/rules are designed to and operate in practice.

---

[3] *See* Current Rules of Professional Conduct, *The State Bar of California*, http://www.calbar.ca.gov/Attorneys/Conduct-Discipline/Rules/Rules-of-Professional-Conduct/Current-Rules.

These rules include:[4]

Rule 1.0. Purpose and Function of the Rules of Professional Conduct

This rule provides that the California Rules:

> are intended to regulate professional conduct of lawyers through discipline. They have been adopted by the Board of Trustees of the State Bar of California and approved by the Supreme Court of California pursuant to Business and Professions Code sections 6076 and 6077 to protect the public, the courts, and the legal profession; protect the integrity of the legal system; and promote the administration of justice and confidence in the legal profession. These rules together with any standards adopted by the Board of Trustees pursuant to these rules shall be binding upon all lawyers.

Cal. R. Prof'l Conduct 1.0(a). The rule further provides that "[t]he prohibition of certain conduct in these rules is not exclusive. Lawyers are also bound by applicable law including the State Bar Act (Bus. & Prof. Code, § 6000 et seq.) and opinions of California courts." Cal. R. Prof'l Conduct 1.0(b)(2). The commentary to the rule states that "a lawyer's violation of a rule may be evidence of breach of a lawyer's fiduciary or other substantive legal duty in a non-disciplinary context." Cal. R. Prof'l Conduct 1.0 cmt. 1.

Rule 1.0.1. Terminology

This rule defines various terms used in the California Rules, including that "'[f]raud' or 'fraudulent' means conduct that is fraudulent under the law of the applicable jurisdiction and has a purpose to deceive"; "'[i]nformed consent' means a person's agreement to a proposed course of conduct after the lawyer has communicated and explained (i) the relevant circumstances and (ii) the material risks, including any actual and reasonably foreseeable adverse consequences of the proposed course of conduct"; and "'[r]easonable' or 'reasonably' when used in relation to conduct by a lawyer means the conduct of a reasonably prudent and competent lawyer." Cal. R. Prof'l Conduct 1.0.1(d), (e), (h).

Rule 1.2. Scope of Representation and Allocation of Authority

This rule concerns the scope of a representation and the allocation of authority and decision-making between a lawyer and his or her client. As described above with respect to the

---

[4] The Government does not expect its expert to opine in detail on all of the following rules, but rather to focus on the foregoing duties, and to describe how the rules generally, and in particular, Rules 1.2, 1.4, 1.6, 1.7, and 1.8.2 (all of which are also listed in the defendant's expert notice (Dkt. No. 96-1, at 1-3)), are specific elucidations of these duties. The Government may also introduce the rules themselves into evidence.

Honorable Paul G. Gardephe
United States District Judge
December 27, 2019
Page 7

duty of communication, a lawyer must consult with his or her client regarding both the objectives of a representation and the means by which these objectives will be pursued, and the lawyer must abide by the client's decisions concerning the objectives of representation.  For example, one client may be more interested in a financial outcome, while another may be more interested in another party agreeing to undertake or to refrain from undertaking certain conduct, and a third may be more interested in an apology for past conduct.  Similarly, a client may be interested in pre-suit settlement rather than a lawsuit.  It is the duty of the attorney to understand, through communication with his client, and then execute the client's objectives in contemplating or bringing legal action, without regard to the lawyer's personal or financial interests.  In short, the lawyer's job is to assist the client to achieve the client's objectives, not what the lawyer thinks the client's objectives should or could be.  For the same reasons, a lawyer may not communicate with a client regarding his or her objectives, and then adopt a strategy to seek to achieve fewer or different objectives.

Similarly, a lawyer may not disregard a client's instructions regarding strategy or tactics in an effort to achieve the client's objectives.  A lawyer also may not adopt a strategy inconsistent with the stated preferences of the client without further consultation and approval.  For example, a client may advise a lawyer that he or she does not wish to sow discord in the client's workplace, family, or professional environment, or does not want a matter to become public.  The lawyer accordingly should not adopt a strategy that would be likely to cause such discord or the matter to become public.

This rule provides: "Subject to rule 1.2.1 [which concerns counseling a client to violate the law], a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by rule 1.4, shall reasonably consult with the client as to the means by which they are to be pursued." Cal. R. Prof'l Conduct 1.2(a).  The commentary to the rule explains, among other things, that the rule "confers upon the client the ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer's professional obligations." Cal. R. Prof'l Conduct 1.2 cmt. 1.

Rule 1.3. Diligence

This rule provides: "A lawyer shall not intentionally, repeatedly, recklessly or with gross negligence fail to act with reasonable diligence in representing a client." Cal. R. Prof'l Conduct 1.3(a).  In this context, "'reasonable diligence' shall mean that a lawyer acts with commitment and dedication to the interests of the client and does not neglect or disregard, or unduly delay a legal matter entrusted to the lawyer." Cal. R. Prof'l Conduct 1.3(b).

A lawyer may violate this rule by missing deadlines or otherwise not acting with sufficient commitment or dedication to achieving his or her client's objectives.

Honorable Paul G. Gardephe
United States District Judge
December 27, 2019
Page 8

<u>Rule 1.4. Communication with Clients</u>

This rule, which is referred to in Rule 1.2, concerns a lawyer's communication with his or her client, and requires, among other things, that the lawyer reasonably consult with the client about the means through which the client's objectives will be pursued, keep the client reasonably informed about significant developments, and explain developments in the matter so that the client may make informed decisions, including with respect to offers of settlement.  As noted above, one client, for example, may be more interested in a financial outcome, while another may be more interested in another party agreeing to undertake or to refrain from undertaking certain conduct.  A lawyer must communicate with his or her client about the client's objectives, and the means to accomplish them, abide by the client's decisions regarding the objectives, and keep the client informed about how a matter is proceeding.  In short, the client decides the objectives of a representation, and the lawyer must communicate in a manner to understand and seek to further those objectives.

This rule provides in pertinent part:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which disclosure or the client's informed consent is required by these rules or the State Bar Act;

(2) reasonably consult with the client about the means by which to accomplish the client's objectives in the representation;

(3) keep the client reasonably informed about significant developments relating to the representation, including promptly complying with reasonable requests for information and copies of significant documents when necessary to keep the client so informed; and

(4) advise the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Cal. R. Prof'l Conduct 1.4. The commentary to the rule explains that, among other things, "Whether a particular development is significant will generally depend on the surrounding facts and circumstances." Cal. R. Prof'l Conduct 1.4 cmt. 1.

### Rule 1.4.1. Communication of Settlement Offers

This rule concerns the communication of potential dispositions in criminal cases and written offers of settlement in civil cases. While it does not require that an oral offer of settlement in a civil case be conveyed to a client, such an oral offer may constitute a significant development such that it must be communicated to the client under Rule 1.4. An offer or expression of willingness to settle a client's potential civil claim for a particular sum of money, made by an individual with apparent authorization to settle the claim, generally constitutes such a development. Such an offer need not be binding or formal to constitute such a development.

This rule provides in pertinent part:

> (a) A lawyer shall promptly communicate to the lawyer's client:
>
> (1) all terms and conditions of a proposed plea bargain or other dispositive offer made to the client in a criminal matter; and
>
> (2) all amounts, terms, and conditions of any written offer of settlement made to the client in all other matters.

Cal. R. Prof'l Conduct 1.4.1. The commentary to the rule explains that "[a]n oral offer of settlement made to the client in a civil matter must also be communicated if it is a 'significant development' under rule 1.4." Cal. R. Prof'l Conduct 1.4.1 cmt.

### Rule 1.5. Fees for Legal Services

This rule concerns a lawyer's fees. It prohibits a lawyer from, among other things, charging or collecting a non-refundable fee before doing work unless such a fee is a retainer to ensure the lawyer's availability to the client, to which the client agrees in writing. A lawyer may not, for example, charge a fee that is "earned on receipt."

This rule provides, among other things, that "[a] lawyer may make an agreement for, charge, or collect a fee that is denominated as 'earned on receipt' or 'non-refundable,'" or in similar terms, only if the fee is a true retainer and the client agrees in writing after disclosure that the client will not be entitled to a refund of all or part of the fee charged. Cal. R. Prof. Conduct 1.5(d). "A true retainer is a fee that a client pays to a lawyer to ensure the lawyer's availability to the client during a specified period or on a specified matter, but not to any extent as compensation for legal services performed or to be performed." Cal. R. Prof'l Conduct 1.5(d).

Honorable Paul G. Gardephe
United States District Judge
December 27, 2019
Page 10

### Rule 1.6. Confidential Information of a Client

This rule concerns a lawyer's duty to maintain the confidentiality of a client's confidential information. It provides, in short, that absent informed consent, a lawyer may not reveal or disclose such information except where necessary to prevent a criminal act likely to result in death or substantial bodily harm.

This rule provides in pertinent part that "[a] lawyer shall not reveal information protected from disclosure by Business and Professions Code section 6068, subdivision (e)(1) unless the client gives informed consent, or the disclosure is permitted by paragraph (b) of this rule [which concerns a disclosure necessary to prevent a criminal act likely to result in death of or substantial bodily harm to someone]." Cal. R. Prof'l Conduct 1.6(a).

### Rule 1.7. Conflict of Interest: Current Clients

This rule concerns conflicts of interest with current clients, and provides, among other things, that a lawyer should not represent a client without sufficient written disclosure where the lawyer has a business, financial, or professional relationship with another person in the same matter.

This rule provides:

> (a) A lawyer shall not, without informed written consent from each client and compliance with paragraph (d), represent a client if the representation is directly adverse to another client in the same or a separate matter.
>
> (b) A lawyer shall not, without informed written consent from each affected client and compliance with paragraph (d), represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person, or by the lawyer's own interests.
>
> (c) Even when a significant risk requiring a lawyer to comply with paragraph (b) is not present, a lawyer shall not represent a client without written disclosure of the relationship to the client and compliance with paragraph (d) where:
>
>> (1) the lawyer has, or knows that another lawyer in the lawyer's firm has, a legal, business, financial, professional, or personal relationship with or responsibility to a party or witness in the same matter; or

. . .

> (d) Representation is permitted under this rule only if the lawyer complies with paragraphs (a), (b), and (c), and:
>
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>>
>> (2) the representation is not prohibited by law; and
>>
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.
>
> (e) For purposes of this rule, "matter" includes any judicial or other proceeding, application, request for a ruling or other determination, contract, transaction, claim, controversy, investigation, charge, accusation, arrest, or other deliberation, decision, or action that is focused on the interests of specific persons, or a discrete and identifiable class of persons.

Cal. R. Prof'l Conduct 1.7. The commentary to the rule explains, among other things: "Loyalty and independent judgment are essential elements in the lawyer's relationship to a client."; and "Even where there is no direct adversity, a conflict of interest requiring informed written consent under paragraph (b) exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities, interests, or relationships, whether legal, business, financial, professional, or personal." Cal. R. Prof'l Conduct 1.7 cmts. 1, 4.

A lawyer may violate this rule by seeking to take on another client or to enter into business relationship with another person or entity related to the client's matter without the informed consent of the client.

<u>Rule 1.8.1. Business Transactions with a Client and Pecuniary Interests Adverse to a Client</u>

This rule concerns business transactions with or the acquisition of pecuniary interests adverse to a client, and provides that that a lawyer may not acquire such an interest without sufficient disclosure and consent.

This rule provides:

> A lawyer shall not . . . knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied:
>
> (a) the transaction or acquisition and its terms are fair and reasonable to the client and the terms and the lawyer's role in the transaction or acquisition are fully disclosed and transmitted in writing to the client in a manner that should reasonably have been understood by the client;
>
> (b) the client either is represented in the transaction or acquisition by an independent lawyer of the client's choice or the client is advised in writing to seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and
>
> (c) the client thereafter provides informed written consent to the terms of the transaction or acquisition, and to the lawyer's role in it.

Cal. R. Prof'l Conduct 1.8.1.

A lawyer may violate this rule by entering into a business relationship with a party adverse to a client unless, among other things, (a) the lawyer's role in the transaction is fully disclosed, in writing, to the client; (b) the client has consulted or is given the opportunity to consult with independent counsel; and (c) the client provides written informed consent.

Rule 1.8.2. Use of Current Client's Information

This rule concerns a lawyer's use of a client's confidential information and prohibits the use of such information to the disadvantage of the client without informed consent.

This rule provides: "A lawyer shall not use a client's information protected by Business and Professions Code section 6068, subdivision (e)(1) to the disadvantage of the client unless the client gives informed consent, except as permitted by these rules or the State Bar Act." Cal. R. Prof'l Conduct 1.8.2. The commentary to the rule explains: "A lawyer violates the duty of loyalty by using information protected by Business and Professions Code section 6068, subdivision (e)(1) to the disadvantage of a current client." Cal. R. Prof'l Conduct 1.8.2 cmt.

A lawyer may violate this rule (and Rule 1.6) by using a client's confidential information in a manner that negatively impacts the client. For example, disclosing confidential information

that could be embarrassing or expose the client to reputational damage without the informed consent of the client would violate this rule.

### Rule 1.18. Duties To Prospective Client

This rule concerns duties to prospective clients, and provides, among other things, that the duty of confidentiality extends to such clients.

This rules provides, among other things: "Even when no lawyer-client relationship ensues, a lawyer who has communicated with a prospective client shall not use or reveal information protected by Business and Professions Code section 6068, subdivision (e) and rule 1.6 that the lawyer learned as a result of the consultation, except as rule 1.9 would permit with respect to information of a former client." Cal. R. Prof'l Conduct 1.18(b).

### Rule 2.1. Advisor

This rule provides: "In representing a client, a lawyer shall exercise independent professional judgment and render candid advice." Cal. R. Prof'l Conduct 2.1.

Independent professional judgment means judgment grounded in the lawyer's expertise and experience as to the best way to pursue the client's objectives, which the lawyer, as noted above, is required to seek to understand and achieve, without regard to any personal or financial interest of the lawyer. Candid advice means honest and complete advice.

A lawyer may violate this rule if the lawyer advises a client or acts on the client's behalf in a manner that places the lawyer's personal or financial interests above those of the client. A lawyer may also violate this rule by failing to provide honest and complete advice to a client, including, but not limited to, when a matter may implicate a lawyer's own personal, financial, or professional interests.

### Rule 3.10. Threatening Criminal, Administrative, or Disciplinary Charges

This rule provides, in pertinent part: "A lawyer shall not threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute." Cal. R. Prof'l Conduct 3.10(a). The commentary to the rule explains, among other things, that "a lawyer could not state or imply that a criminal or administrative action will be pursued unless the opposing party agrees to settle the civil dispute." Cal. R. Prof'l Conduct 3.10 cmt. 1.

A lawyer may violate this rule by threatening, in the course of a civil dispute, to disclose or publicize allegations or evidence of alleged criminal wrongdoing by an adverse party in a manner that implies that a criminal action would result if the lawyer's demands are not met.

Honorable Paul G. Gardephe
United States District Judge
December 27, 2019
Page 14

Rule 8.4. Misconduct

This rule provides in pertinent part:

It is professional misconduct for a lawyer to:

(a) violate these rules or the State Bar Act, knowingly assist, solicit, or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit, or reckless or intentional misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice; [or]

(e) state or imply an ability to influence improperly a government agency or official, or to achieve results by means that violate these rules, the State Bar Act, or other law . . . .

Cal. R. Prof'l Conduct 8.4.

A lawyer may violate this rule by engaging in deceptive tactics related to negotiations or discussions with an adverse party in a civil matter.  A lawyer also may violate this rule by misrepresenting to a client the status of a matter in which the lawyer is representing the client, or deliberately concealing material information from that client in the course of the representation.

Rule 8.5. Disciplinary Authority; Choice of Law

This rule provides:

(a) Disciplinary Authority.

A lawyer admitted to practice in California is subject to the disciplinary authority of California, regardless of where the lawyer's conduct occurs.  A lawyer not admitted in California is also subject to the disciplinary authority of California if the lawyer provides or offers to provide any legal services in California.  A lawyer may be subject to the disciplinary authority of both California and another jurisdiction for the same conduct.

Honorable Paul G. Gardephe
United States District Judge
December 27, 2019
Page 15

>    (c) Choice of Law.
>
>    In any exercise of the disciplinary authority of California, the rules of professional conduct to be applied shall be as follows:
>
>    (1) for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise; and
>
>    (2) for any other conduct, the rules of the jurisdiction in which the lawyer's conduct occurred, or, if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to the conduct. A lawyer shall not be subject to discipline if the lawyer's conduct conforms to the rules of a jurisdiction in which the lawyer reasonably believes the predominant effect of the lawyer's conduct will occur.

Cal. R. Prof'l Conduct 8.5.

      Assuming that Client-1 lived in California, the defendant met with Client-1 in California, the defendant communicated with Client-1 in California, and Client-1's potential claim(s) concerned conduct in and affecting Client-1 in California (or if most but not all of these things were true), the California Rules would apply to the allegations in the Superseding Indictment.[5] Generally, where a client lives in California and meets with a lawyer in California who is licensed to practice law in California, the California Rules applies to the representation, regardless of where else, if anywhere, the lawyer takes action on behalf or to the detriment of the client. This is particularly the case where the client's matter or potential claim also concerns conduct in or affecting California.

### II. Request for Supplemental Disclosure by the Defendant

      The Government respectfully requests that the defendant be ordered to provide supplemental disclosure in his submission due on or before January 3, 2020 (*see* Dkt. No. 105) with additional detail concerning his proffered expert's opinions, if any, concerning (a) the same duties and rules set forth above, to the extent that the defendant's proffered expert is expected to testify regarding those rules and duties, and in particular, to describe any areas of disagreement with the opinions set forth above, and (b) any other duties and rules, or other subjects, about which the defendant expects her to testify. *See, e.g., United States v. Ulbricht*, 858 F.3d 71, 114 (2d Cir. 2017) ("The purpose of the expert disclosure requirement is to minimize surprise that often results

---

[5] The Government does not understand the defendant to disagree, as his expert notice appears to be premised on the applicability of the California Rules to the charged conduct. (*See* Dkt. No. 96-1, at 1-3.)

Honorable Paul G. Gardephe
United States District Judge
December 27, 2019
Page 16

from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." (internal quotation marks omitted)).[6]

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney

By:   s/ Daniel C. Richenthal
       Matthew D. Podolsky
       Daniel C. Richenthal
       Robert B. Sobelman
       Assistant United States Attorneys
       (212) 637-1947/2109/2616

---

[6] This request is in addition to the Government's pending motion for preclusion of certain of the testimony for which the defendant previously provided notice, as offered without an apparent basis in his proffered expert's qualifications, insufficiently described, and/or in any event irrelevant or otherwise inadmissible. (See Gov't Mot. in Limine 26-29 (Dkt No. 96).)