**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 30, 2019

**BY ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

> Re:   *United States v. Michael Avenatti*,
>         **19 Cr. 373 (PGG)**

Dear Judge Gardephe:

The Government respectfully submits this letter in response to the defendant's requests to charge (Dkt. No. 97 (the "Defendant's Requests" or "Def. Requests")).  Because the trial evidence or argument may affect certain aspects of the charge, because the Government understands that the Court will hold a charge conference, and because the Government has proposed its own jury charges (Dkt. No. 95 (the "Government's Requests" or "Gov't Requests")), the Government does not offer a line-by-line response or objection to the Defendant's Requests, but instead seeks to draw the Court's attention to the principal substantive requests of the defendant that the Government believes are either contrary to or materially misstate applicable law.  The analysis below focuses on portions of the charges that are manifestly incorrect or inappropriate, but does not generally compare the merits or language of the defendant's requested instructions with the Government's, which the Government respectfully submits are consistently clearer, more helpful to the jury, fairer to both parties, and adhere to and are supported by case law and precedent in this circuit and district.

## I.  Instructions Regarding Count One (Transmission of Interstate Communications with Intent to Extort)

### Defendant's Request Nos. 22-23

The defendant seeks, without any apparent authority, to engraft a willfulness element onto the settled requirements for a violation of 18 U.S.C. § 875(d).  Nowhere in the language of Section 875(d) does a willfulness requirement appear; to the contrary, the statute "expressly include[s] a mental state requirement of an 'intent to extort.'"  *Elonis v. United States*, 135 S. Ct. 2001, 2008 (2015).  Although, as set forth in Requests 4 and 8 of the Government's Requests, an intent to extort requires the Government to prove wrongfulness, *see United States v. Jackson*, 180 F.3d 55, 71-72 (2d Cir. 1999), it does not additionally require the Government to prove willfulness, *see United States v. Jackson*, 986 F. Supp. 829, 835 n.8 (S.D.N.Y. 1997).

Honorable Paul G. Gardephe
United States District Judge
December 30, 2019
Page 2

Neither of the authorities relied on by the defendant is to the contrary.  The Second Circuit's decision in *United States v. Jackson*, cited by the defendant (Def. Requests at 30 n.22), merely, as noted above, requires that the Government prove wrongfulness and explains the meaning of that term in the context of intent to extort.  *Jackson*, 180 F.3d at 71-72.  And as the defendant concedes (Def. Requests at 30 n.22 & 31 n.24), the other authority offered by the defendant, the Pattern Jury Instructions for the District of South Carolina, in addition to having no precedential effect here, do *not* contain a willfulness requirement.  Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases*, District of South Carolina 184 (2019 ed.) (the "D.S.C. Pattern Instructions").  That new purported element was simply added *ipse dixit* by the defendant.  In short, the Court should not instruct the jury that that the defendant must have "willfully" transmitted an interstate communication.  *See United States v. Jacques Dessange, Inc.*, 103 F. Supp. 2d 701, 707 (S.D.N.Y. 2000) ("[T]here is no general requirement that the Government prove that a defendant acted willfully, that is, with an intent to violate a known legal duty, or in bad faith, or with an evil intent.").[1]

In any event, even if the Court were to add a new element of willfulness, the defendant's definition of willfulness is incorrect.  "To act 'willfully' means to act voluntarily and with a wrongful purpose"; willfulness does not require intent to disobey or disregard the law.  *United States v. Middendorf*, No. 18 Cr. 36 (JPO), 2019 WL 4254025, at \*7 (S.D.N.Y. Sept. 9, 2019).  Defining "willfully" (if the Court chooses to include this term, which it should not) as acting wrongfully would be correct here, where the statute and case law provide a specific definition of the necessary *mens rea* as acting wrongfully, as set forth in *Jackson*, 180 F.3d at 71-72.  *Cf. United States v. Porcelli*, 865 F.2d 1352, 1358 (2d Cir. 1989) ("The specific intent required under the mail fraud statute is the intent to defraud, and not the intent to violate a statute.").

### Defendant's Request No. 25(A)

The defendant's requested instruction regarding "wrongfully" consists principally of argument, and significantly misstates the law in a manner that appears calculated to mislead or confuse the jury.  It should be rejected in its entirety in favor of the Government's proposed instruction (Gov't Request No. 8).  As an initial matter, the defendant seeks to inappropriately press his arguments through the charge, by requesting that the Court instruct the jury that "'wrongfully' . . . is a central issue in this case."  (Def. Requests at 33.)  Of course, the Government must prove each element of the charge beyond a reasonable doubt, and the defendant may argue to the jury which of these elements he deems, for whatever reason, to be "a central issue," but the Court should not use such language, which appears to suggest that it agrees with the defendant as to where the evidence is allegedly lacking or should be viewed with particular skepticism.  It is no

---

[1]  To be sure, the jury instructions in *United States v. Balkany*, relevant portions of which are attached to this letter as Exhibit A, included a willfulness requirement.  (Ex. A, at 138-40.)  In that case, however, the indictment included a willfulness allegation.  (Indictment ¶ 11, *United States v. Balkany*, No. 10 Cr. 441 (DLC) (Dkt. No. 7).)  The Superseding Indictment does not, and, in any event, a willfulness requirement is not consistent with the elements of 18 U.S.C. § 875(d).

Honorable Paul G. Gardephe
United States District Judge
December 30, 2019
Page 3

more appropriate for a court to use language favoring a defense theory than it would be to use language favoring a Government theory.

Next, the defendant asks the Court to provide the defendant's asserted view on the general importance to society of "hard bargaining," in an apparent improper effort to encourage the jury to excuse the defendant's conduct (*see* Gov't Motions *in Limine* 10-11 (Dkt. No. 96))—something that the defendant indicated he would not attempt at trial (*see* Dec. 17, 2019 Tr. 40-41), and about which the Court not should instruct the jury. This trial is about the defendant's specific, charged conduct, not about the alleged benefit or detriment to society of "hard bargaining," or any other philosophical or policy matter.

The defendant also proposes that the Court instruct the jury that "it is not wrongful to threaten public disclosure of truthful information about another person or corporation, if the person making the threat believes he has a plausible claim and the threat is *related to* the claim." (Def. Requests at 33 (emphasis added).) The defendant's proposal is contrary to law. As an initial matter, the Second Circuit has held that the veracity of the information the defendant threatens to disclose is not relevant. *See United States v. Jackson*, 196 F.3d 383, 387 (2d Cir. 1999) (truth of the harmful facts threatened to be disclosed is not relevant); *Jackson*, 180 F.3d at 66, 71 (same). Nor is it correct, as the defendant would have it, that the jury must acquit if the threat "is related to the claim." (Def. Requests at 33.) Rather, the law requires a direct "nexus" between the threat and the threatener's plausible claim of right. Indeed, in *Jackson*, the defendant's threat was, at the very least, arguably "related" to a plausible claim—there, the defendant claimed that she had a legitimate claim to financial support from the victim, and indeed, it was the fact that the defendant was in fact the victim's daughter that gave rise to the threats of harm. *Jackson*, 180 F.3d at 71. The Second Circuit concluded, ultimately, that no rational juror could have found that the defendant had a plausible claim to the $40 million demanded or that the defendant's demand for $40 million had a plausible nexus to any such claim for support. *See United States v. Jackson*, 196 F.3d 383, 387 (2d Cir. 1999). Thus, it is not at all accurate to instruct the jury that, if a threat is "related" to a plausible claim, the threat is not wrongful. *See La Suisse, Societe D'Assurances Sur La Vie v. Kraus*, No. 06 Civ. 4404 (CM) (GWG), 2014 WL 3610890, at *8-10 (S.D.N.Y. July 21, 2014) (report and recommendation) (wrongful for defendant to threaten to initiate legitimate lawsuits on behalf of others unless victim makes payments to defendant).[2]

---

[2]   Depending on the evidence adduced and arguments made at trial, it may be appropriate to provide an instruction regarding the nexus requirement set forth in *Jackson*, as follows:

> Even if the defendant had some claim of right against his victim, there must be a connection or "nexus" between that claim and the property the defendant sought to obtain. When the only leverage to force payment from the victim of comes from the threat, where actual disclosure would be counterproductive, and where compliance with the threatener's demands provides no assurance against additional demands based on renewed threats of disclosure, then there is no such nexus. For example, if club threatens, if dues

Honorable Paul G. Gardephe
United States District Judge
December 30, 2019
Page 4

The defendant next requests that the Court describe a litany of hypothetical situations, untethered to the facts of this case, purporting to describe scenarios in which an individual did or did not act wrongfully, going so far as to propose instructing the jury that "[t]here are many other examples that are legal and not wrongful." (Def. Requests at 33-34.) This proposed language is confusing, unhelpful, and inconsistent with precedent, and it appears to be a thinly-disguised effort again to advance argument through the jury instructions—indeed, the proposed instruction appears calculated to suggest to jurors that they should be wary of finding that the defendant acted wrongfully, even if the Government has proven that element under the law.

Tellingly, it is only in the third paragraph of the requested instruction that the defendant provides any semblance of an instruction on the meaning of "wrongfully"—and he does so incorrectly. (*Id.* at 34.) The defendant claims that "a threat to harm the reputation of or cause economic harm to a person or corporation is wrongful if the person making the threat believes that he (or in the case of a lawyer, if the lawyer believes that his client) has no plausible claim against the person or corporation being threatened." (*Id.*) The defendant provides no support for his assertion that if a lawyer believes his client has a claim, then the lawyer's threats—even if the demands are for payments *to himself*—are not wrongful, and the defendant is plainly incorrect. *See Jackson*, 180 F.3d at 71; *La Suisse, Societe D'Assurances Sur La Vie*, 2014 WL 3610890, at *8-10. Moreover, it is not accurate to instruct that a threat is wrongful only if the defendant has no plausible claim, because, as noted above, even where the defendant has *some* plausible claim against the victim, his threats are still wrongful where the defendant has no claim of right to the money or thing of value demanded. *Jackson*, 196 F.3d at 387; *Jackson*, 180 F.3d at 70-71.

The defendant also requests that the Court provide commentary on the role of an attorney and, indeed, specifically instruct the jury regarding the benefits the defendant allegedly provided to his client. (Def. Requests at 34-35.) This language is inaccurate, misleading, and not a legal instruction, and should not be included in the charge.

Finally, the defendant requests that the Court instruct the jury that the Government must prove that the defendant "believed that he was not pursuing Coach Franklin's plausible claim and overall objectives by demanding an internal investigation to be led by him and Mr. Geragos." (Def. Requests at 35.) This request, too, is argumentative and, more importantly, wrong as a matter of law. Harm to the defendant's client is not an element of extortion, and, in any event, "a valid

---

are not paid, to publicly post a list of members who have not paid their dues, the threat has a nexus to a claim of right, because the posting of the list publicly will lead to payment of the dues. If, on the other hand, the disclosure of the information would not result in the victim making payments to the threatener, the threats are wrongful. In evaluating whether there is a connection between the threat and the demand, you may consider the amount of the demand, and in particular whether that amount is reasonably connected to the supposed claim of right.

*Jackson*, 196 F.3d at 387-88; *Jackson*, 180 F.3d at 69-71.

Honorable Paul G. Gardephe
United States District Judge
December 30, 2019
Page 5

purpose that partially motivates a transaction does not insulate participants in an unlawful transaction from criminal liability," *United States v. Coyne*, 4 F.3d 100, 113 (2d Cir. 1993) (internal quotation marks omitted); *see also United States v. Technodyne LLC*, 753 F.3d 368, 385 (2d Cir. 2014) ("It is well established that a defendant accused of such a crime may properly be convicted if his intent to commit the crime was any of his objectives."). In other words, even if it were true that the defendant believed his criminal conduct might not harm his client, or might even benefit his client, that would still not be a valid defense to otherwise wrongful threats, and the jury should thus not be erroneously instructed to the contrary. The Government has no burden of proof with respect to the defendant's belief (or lack thereof) about whether he was also potentially advancing in part his client's goals when he committed his crimes.

**Defendant's Request No. 25(B)**

The defendant next requests that the Court invent and instruct on a so-called "litigation exception," whereby the jury would be instructed, as a matter of law, that the defendant did not act "wrongfully" if he "believed that Coach Franklin would have filed a lawsuit alleging the same conduct if the case did not settle." (Def. Requests at 35.) This request is both factually misleading and legally wrong. With respect to the former, the defendant appears to be asking the Court to effectively adopt his theory of the defense and instruct the jury that no crime could occur if the defendant viewed his conduct as a "settle[ment]," without defining what "case" is being referred to or what is meant by "settle." This language is particularly confusing because it risks conflating whatever legal claim or "case" the defendant's client might have had—and any settlement of those claims—with the defendant's own wrongful demands for payment to himself, to which he had no claim of right, *Jackson*, 180 F.3d at 71.

The instruction also is legally wrong because there is no "litigation exception" of the sort proposed by the defendant, which apparently would immunize the defendant from prosecution for making extortionate demands if he had the belief that he could file some form of lawsuit on his client's behalf if his extortionate scheme failed. Nor would any reasonable conception of public policy or legislative intent support such an exception. The sole case relied upon by the defendant— *United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002) (Def. Requests at 35 n.32)—does not suggest, let alone hold, to the contrary. Rather, as noted in the Government's Opposition to the defendant's motions *in limine* (Gov't Opp'n to Def.'s Motions *In Limine* 13 (Dkt. No. 108)), *Pendergraft* addressed, among other things, whether a threat to a government entity to name it as a defendant in a lawsuit becomes wrongful where the threatened lawsuit includes evidence known to the putative defendant to be fabricated. 297 F.3d at 1205-08. *Pendergraft*'s holding—"a narrow one"—was simply that such a threat to sue does not become "wrongful" merely because the allegation would have been supported by a false affidavit, particularly because other criminal statutes already criminalize the use of false statements in litigation. *Id.*

Indeed, the defendant's proposed instruction is flatly at odds with Section 875(d) itself, which criminalizes wrongful threats at the time they are made. If a defendant issues a wrongful threat to disclose harmful information with intent to extort something of value, in an interstate communication, he or she has violated the statute. 18 U.S.C. § 875(d).

Honorable Paul G. Gardephe
United States District Judge
December 30, 2019
Page 6

Moreover, in this case, the manipulation or extinguishing of his client's potential claims was part of the defendant's extortion scheme. In addition to the threatening to hold a press conference, the defendant threatened that he would make his client's claims go away only if Nike paid the defendant. That threat itself is wrongful and extortionate. *Jackson*, 180 F.3d at 71; *La Suisse, Societe D'Assurances Sur La Vie*, 2014 WL 3610890, at *8-10. Indeed, part of the defendant's explicit threat was to make certain allegations public at a time that would be particularly harmful to Nike, promising to defer the decision of whether to disclose those facts to Nike only if Nike met the defendant's extortionate demands. (S1 Indictment ¶¶ 1, 11, 13 (Dkt. No. 72).) That the defendant believed (if he did) that his client might be able at some time later to file a lawsuit, if he wished, that disclosed some or all of the same harmful facts is no defense to his attempt to exploit fear of public disclosure in a particular way, especially such fear at a time of particular vulnerability. *See, e.g.*, *United States v. Coppola*, 671 F.3d 220, 241 (2d Cir. 2012) (defendant may commit extortion by creating or instilling fear or by exploiting existing fear to induce party to part with property). In short, it is not a valid defense if the defendant believed that, if the money was not paid, the harmful information might or would otherwise have become public at some point or some other way—indeed, that is the very essence of extortion.

The defendant is, of course, free to argue to a properly instructed jury that he was not acting wrongfully because he believed himself to be demanding something to which he did have a claim of right. But the law does not permit him to create new "exceptions" to the plain language of statutes to suggest to the jury that unlawful conduct should be excused.

## II.     Instructions Regarding Count Two (Hobbs Act Extortion)

### Defendant's Requests Nos. 26-27

As with the elements of Section 875(d), the defendant seeks to insert a "willfulness" requirement into the settled elements of Hobbs Act extortion where one does not exist. (Def. Requests at 36-37.) Indeed, much as with Section 875(d), *see supra* at 1, the Hobbs Act expressly defines the *mens rea* element as requiring "wrongful use of actual or threatened force, violence, or fear." 18 U.S.C. § 1951(b)(2). The instructions in this case should not supply an additional requirement of willfulness that does not appear in the statute. *Jacques Dessange, Inc.*, 103 F. Supp. 2d at 707.

It is true that certain cases have, at times, stated that Hobbs Act extortion requires that "a defendant . . . knowingly and willfully create or instill fear, or use or exploit existing fear 'with the specific purpose of inducing another to part with his or her property.'" *United States v. Abelis*, 146 F.3d 73, 83 (2d Cir. 1998) (describing district court's jury instructions). As the Second Circuit made clear in *Abelis*, however, such language was permissible because it sufficiently captured the requirement of wrongfulness under Hobbs Act. *Id.* at 84. The Second Circuit explained that "it would have been better if the charge had read that: 'The essence of the crime of attempted extortion is a defendant's knowing and willful attempt to use fear *wrongfully*.' Similarly, it would have been better to say, 'there must be proof that the defendant, aware of the victims' fear did or said something in an attempt *wrongfully* to exploit that fear.'" *Id.* (emphasis in original). Indeed, in *United States v. Fazio*, 770 F.3d 160, 166-69 (2d Cir. 2014), which concerned threats of economic

Honorable Paul G. Gardephe
United States District Judge
December 30, 2019
Page 7

harm, the Second Circuit approved of jury instructions (relevant portions of which are attached to this letter as Exhibit B) in which the district court instructed the jury that the government must prove that the defendant wrongfully used or threatened force, violence, or fear (and defined "wrongfully" in a manner consistent with the jury instructions proposed by the Government here), with no mention of willfulness.[3]

Nevertheless, if the Court is inclined to include a reference to willfulness, the Court should define willfulness in a manner consistent with the wrongfulness requirement contained in the Hobbs Act, as set forth above, *supra* at 2, which the Second Circuit has previously upheld, *see Abelis*, 146 F.3d at 84.

The defendant also requests that the Court include as an element of Hobbs Act extortion that the defendant "did something that was a substantial step toward committing the crime and that strongly corroborated [his] intent to commit the crime." (Def. Requests at 36.) The Second Circuit has previously affirmed a district court's decision not to include the same "strongly corroborative" language, *United States v. Crowley*, 318 F.3d 401, 415-16 (2d Cir. 2003), and this Court should likewise reject the defendant's proposed formulation of the law regarding attempt. As the Second Circuit explained, "Judge Friendly also recognized that the 'strongly corroborative' language is not the easiest language for juries to grasp: while finding it difficult to improve upon that formulation 'as a conceptual matter,' he pointed out that 'this is not language easy of application by a jury or even by an appellate court.'" *Id.* at 415 (quoting *United States v. Ivic*, 700 F.2d 51, 66 (2d Cir. 1981) (Friendly, J.), *abrogated on other grounds by Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 254-55, 261 (1994)). For these reasons, the Court should instead use the language regarding attempt proposed by the Government (*see* Gov't Requests at 16).

**<u>Defendant's Request No. 28(A)</u>**

The defendant's proposed instruction regarding "wrongfully" and "use of fear" under the Hobbs Act (Def. Requests at 38) is also wrong. First, the proposed instruction contains a cross reference to the instruction of "wrongfully" offered by the defendant under Section 875(d), which, as described above, *supra* at 2-5, is incorrect and misleading, and should not be given.

---

[3]   Notably, the Second Circuit in *Fazio* also explored the difference between extortion payments and bribes, which the court generally described as made out of a fear of harm and to secure advantage, respectively. *Fazio*, 770 F.3d at 168. It is not clear that the court's discussion would be fully applicable to honest services fraud, which criminalizes schemes to defraud victims, including employers, clients, and others to whom a fiduciary duty is owed, of their entitlement to honest services through *quid pro quo* payments, as opposed to statutes specifically addressed to bribery of public officials (such as 18 U.S.C. §§ 201, 666). But, in any event, the court explained that the same payments may be made or sought "*both* to secure an economic advantage and out of fear that a failure to make the payments would result in economic harm beyond any loss attributed to preferential treatment." *Fazio*, 770 F.3d at 168 (emphasis in original). In other words, contrary to the position taken by the defendant at the recent conference (*see* Dec. 17, 2019 Tr. 27-29), there is nothing inconsistent about a request for payment constituting both extortion and bribery.

Honorable Paul G. Gardephe
United States District Judge
December 30, 2019
Page 8

Second, the defendant proposes two paragraphs of explication of the term "use of fear," all resting on the incorrect premise that "the absence or presence of fear of economic loss must be considered from the perspective of Nike" and that "[t]he proof must establish that Nike reasonably believed: first, that Mr. Avenatti had the power to cause Nike economic harm through a press conference, and second, that Mr. Avenatti would wrongfully exploit that power to Nike's detriment."  (Def. Requests at 38.)  There is no such subjective requirement of fear by the victim in a case of attempted extortion.  Instead, the focus is properly on the intent of the defendant. *United States v. Salerno*, 868 F.2d 524, 531 (2d Cir. 1989) (where defendants are charged "with both extortion and attempted extortion, 18 U.S.C. § 1951(a) (1982), and it is . . . not necessary to prove the victims' actual fear"; it is sufficient to prove the defendant's attempt to instill fear of economic harm); *United States v. Goodoak*, 836 F.2d 708, 712 (1st Cir. 1988) (proof of actual fear not required, but evidence of subjective fear relevant to demonstrating defendant's intent); *cf. United States v. Natale*, 526 F.2d 1160, 1168 & n.11 (2d Cir. 1975) (no element of actual fear for conviction of collection of debts using extortionate means in violation of 18 U.S.C. § 894).  The Court should reject the defendant's invitation to instruct the jury that the Government must prove that Nike experienced a sense of fear.[4]

Third, the defendant asks the Court to misleadingly characterize or limit the relevance of the Government's presentation of evidence and argument by instructing the jury that the Government must prove that the defendant sought to extort Nike through "fear of a press conference."  (Def. Requests at 38; *see also id.* at 39 (referring specifically to fear by threat of press conference).)  While disclosure of potentially harmful information through a press conference was undoubtedly a central part of the defendant's threat (*e.g.*, S1 Indictment ¶¶ 1, 11, 13-14), the Superseding Indictment speaks more broadly of threats of economic and reputational harm (*id.* ¶ 22), and there is neither a need nor basis for the Court to instruct the jurors in a manner that might confuse them into thinking that they may not fully consider any other threats made by the defendant, such as implicit or explicit threats to report purportedly improper conduct to authorities, and the broader context of how he undertook his crimes.

**Defendant's Requests No. 28(B)-(D)**

As with respect to Section 875(d), the defendant again asks the Court to create several "litigation exceptions" to Section 1951 not found in the statute or case law.  (Def. Requests at 39.)  This request should be rejected for the same reasons articulated above.  *See supra* at 5-6.

With respect to the Hobbs Act extortion charge, the defendant suggests two additional forms of the "litigation exception," which should be rejected for reasons additional to those described above.  First, the defendant asks that the Court instruct the jury that "Nike's fear of economic harm from a threatened press conference was not reasonable if Coach Franklin would have filed a lawsuit raising the same allegations if the case did not settle."  (Def. Requests at 39.)

---

[4]   To be sure, the evidence is expected to show that Nike did, in fact, experience fear as a result of the defendant's conduct, a fact that the jury may consider, as described in the Government's Requests to Charge (Gov't Requests at 15).  But that this fact is relevant does not make it an element.

Honorable Paul G. Gardephe
United States District Judge
December 30, 2019
Page 9

As an initial matter, as noted above, the question to be decided by the jury is whether the defendant intended to create fear of economic harm, not Nike's subjective perception of the threat. *Salerno*, 868 F.2d at 531. Moreover, the defendant's proposed instruction would invade the province of the jury by instructing the jurors, as a matter of law, what constitutes reasonable fear in this case. The factual conclusion that the defendant would seek to impose on the jury is particularly illogical. He claims that Nike's fear of a press conference cannot be reasonable if, separately, the defendant's client would have filed a lawsuit. Even setting aside the fact that Nike's fear of a lawsuit itself might have been reasonable, the defendant's threat was not to file a lawsuit; it was to hold a press conference and to do so at a particular moment in time to cause damage to Nike. There is simply no logical connection between Nike's reasonable fear of a press conference and the defendant's apparent claim that in a hypothetical universe his client might have filed some sort of lawsuit. Finally, the proposed instruction is particularly misleading because it seems intended to invite the jury to excuse an otherwise extortionate threat if it related in some way to some putative lawsuit. As noted *supra* at 3, however, the law does not support that view.

Second, the defendant asks the Court to instruct the jury (1) that there exists some general duty by a public company to disclose "the whole truth" of certain matters (with no apparent guidance as to the regulations and laws governing disclosures by public companies), and (2) that if Nike would have had to disclose the allegations made by the defendant's client at some point and in some manner, then Nike could not reasonably have been afraid of economic harm from the defendant. (Def. Requests at 39.) Once again, there is no basis in law for a jury instruction on these subjects, particularly given that, as explained above, the law focuses on the intent of the defendant, and there is no requirement of subjective fear in the victim. *Salerno*, 868 F.2d at 531. Further, it is no less a crime to exploit a fear already in the mind of a victim, including a fear of loss of an advantage improperly attained. *Fazio*, 770 F.3d at 166-68. Indeed, the cases relied upon by the defendant for this proposed instruction deal with disclosures under the securities laws and have no relevance to Hobbs Act extortion or anything else in this case. (Def. Requests at 39 n.38 (relying on *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014); *Caiola v. Citibank, N.A., N.Y.*, 295 F.3d 312, 331 (2d Cir. 2002)).)

In any event, a threat to cause harm to a victim by disclosing information in a particular, harmful way is no less a threat to cause harm just because the victim might later have disclosed the same information in a different manner not calculated to cause economic or reputational harm, *see Jackson*, 180 F.3d at 71, particularly given that the very nature of the defendant's extortionate scheme was to extract payments from the victim in exchange for giving it control over how, when, and whether to disclose potentially harmful information (*see* S1 Indictment ¶¶ 11, 14).

### III.    Instructions Regarding Count Three (Honest Services Wire Fraud)

#### Defendant's Request Nos. 32, 34

Through his proposed instructions on honest services wire fraud, the defendant seeks to improperly insert a defense narrative that is both factually and legally misleading, apparently to permit him to argue to the jury that he did not commit a crime or should be excused from liability for doing so because he might (though did not) sometime later—after committing honest services

Honorable Paul G. Gardephe
United States District Judge
December 30, 2019
Page 10

wire fraud—have disclosed the fact of payment from Nike to his client.  The defendant asks the Court to instruct the jury that the Government must prove that the defendant's victim "would never know about" the payment from Nike (Def. Requests at 45); that there is no material misrepresentation unless the defendant "never intended to disclose the payment to Coach Franklin before actually receiving the payment from Nike" (*id.* at 47); and that "the government must prove beyond a reasonable doubt that Mr. Avenatti intended to actually receive a payment without first disclosing it to Coach Franklin" (*id.* at 48).  The defendant's proposal is wrong in all respects.  The Government is not required to prove or disprove what might or could have occurred in a counterfactual scenario, and while the defendant is free to argue anything to the jury about his intent that the trial record supports, he is not entitled to erroneous and misleading jury instructions, including instructions that would permit him to argue that his actions can be retroactively legitimized merely by disclosing the fact of payment by Nike to his client-victim (which is incorrect as a matter of law).

As the defendant notes, to prove honest services wire fraud, the Government must prove, among other things, that the defendant misrepresented or concealed a material fact from his client. (Def. Requests at 42.)  The defendant posits, without basis, that the only material fact in an honest services fraud scheme is the fact of a payment from the bribe payer to the bribe recipient.  The defendant is wrong: the potential material facts in this honest services fraud scheme might include any number of material misrepresentations or omissions, not the least of which is the fact that payment was made or solicited *in exchange for* action by the bribe recipient.  *See United States v. Bruno*, 661 F.3d 733, 736-39, 745 (2d Cir. 2011) (evidence sufficient to sustain honest services wire fraud conviction where payments were disclosed in manner that concealed nature of *quid pro quo* arrangement); *United States v. Napout*, 332 F. Supp. 3d 533, 549 (E.D.N.Y. 2018) ("In the post-*Skilling* era, to prove a crime of honest services fraud, the government must prove that a defendant . . . knowingly made a material misrepresentation or omission to the person or entity to whom the duty was owed in furtherance of his receipt of the bribe or kickback.").

For example, in *United States v. Percoco*, the public official defendant did later disclose publicly that he had received money from certain entities in a public filings, but did not disclose, of course, that the payments were made *in exchange for* official action.  (*See* Trial Tr. 5051-54, Feb. 22, 2018, *United States v. Percoco*, No. 16 Cr. 776 (VEC) (Dkt. No. 583).)  The defendant was not entitled to an instruction that his later disclosure precluded liability; to the contrary, his partial disclosure was proof of his guilt.  So too, in *United States v. Silver*, the defendant disclosed the amount of outside payments in public filings, but not *why* he was so paid.  (*See, e.g.*, Sentencing Tr. 3, July 27, 2018, *United States v. Silver*, No. 15 Cr. 93 (VEC) (Dkt No. 460).)  Thus, as discussed further below, even if there were support—and the defendant has provided none—for the notion that a defendant can retroactively cure his involvement in a *quid pro quo* transaction concerning his client's claims by disclosing the *quid pro quo* prior to receiving payment, it is certainly wrong to claim that disclosure of the *fact of payment* from a briber payer, without more, renders innocent the solicitation of a bribe.  *E.g.*, *Bruno*, 661 F.3d at 736-39, 745.

Indeed, the facts of this case are illustrative.  The defendant is alleged to have told Nike, in substance, that he would neither settle his client's claims nor agree to a larger payment to his client

Honorable Paul G. Gardephe
United States District Judge
December 30, 2019
Page 11

unless Nike agreed to pay the defendant himself.  (*See* S1 Indictment ¶¶ 11(c)-(e), 13(a)-(b), 14(a)-(b).)  This solicitation would not become innocent merely by a hypothetical later disclosure, if Nike had agreed, that Nike decided to pay the defendant in addition to settling the client's claims.

Nor is it clear what is meant by disclosure of "the payment . . . before actually receiving the payment from Nike."  (Def. Requests at 47.)  The mere disclosure of payments from Nike prior to receipt into the defendant's bank account hardly undermines the defendant's prior solicitation of *quid pro quo* payments, nor does it undo that the defendant would already have defrauded his client of honest services, given that, by the time of payment, the defendant would already have taken action in his role as his client's attorney in exchange for payment from Nike.  In other words, the defendant cannot *post hoc* remedy his prior fraud by later revealing merely the fact of payment before it is made.

Of course, as noted, the defendant may, if the evidence supports it, argue that he intended to tell his client that he was being paid by Nike, and that this alleged fact should cause the jury to have reasonable doubt in his guilt.  He is not, however, entitled to an instruction that the mere intent to make such a disclosure precludes liability as a matter of law for engaging in a scheme to defraud his client—a rule for which the defendant has offered no support and that is contrary to law and common sense.[5]

## Defendant's Request No. 33

As with the instructions pursuant to Sections 875(d) and 1951, the defendant seeks to insert additional *mens rea* requirements, asking the Court to require that the Government prove that the defendant acted "willfully" in addition to with "specific intent to defraud."  (Def. Requests at 46.)  Because willfulness is not a requirement of honest services wire fraud, the Court should not provide this instruction to the jury.  *See, e.g.*, *United States v. Rybicki*, 354 F.3d 124, 150 (2d Cir. 2003) ("[M]ail and wire fraud do require proof of *mens rea*: a defendant must act or fail to act with 'the specific intent to harm or defraud the victims of the scheme.'" (quoting *United States v. Walker*, 191 F.3d 325, 334 (2d Cir. 1999)); *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999) (government's proof must demonstrate "a conscious knowing intent to defraud . . .[and] that the defendant contemplated or intended some harm to the property rights of the victim" (internal quotation marks and citation omitted)); *Porcelli*, 865 F.2d at 1358 ("The specific intent required

---

[5]    Defendant's Request No. 32 contains additional misleading language that should not be used, including insisting that the bribes be "classic," the bribe recipient make a "formal" decision, and that the decision be "to the detriment" of the victim (Def. Requests at 44), none of which is required to prove an honest services fraud scheme, particularly in the private context.  Similarly, instructing that "[i]t is not an honest service fraud violation for the government to prove merely that Mr. Avenatti spoke about taking actions that furthered his own financial interests" (*id.* at 45) would be both wrong and confusing to the jury.  To the extent that the defendant solicited, through the use of an interstate wire, payments for himself in exchange for taking or not taking action with respect to his clients, "merely . . . speaking about taking actions that furthered his own financial interests" would indeed constitute honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346.

Honorable Paul G. Gardephe
United States District Judge
December 30, 2019
Page 12

under the mail fraud statute is the intent to defraud, and not the intent to violate a statute." (citation omitted)).

Moreover, while the Government must prove an intent to defraud, it does not need to prove that the defendant understood or appreciated that his or her conduct was unlawful, which is one formulation (and apparently the one that the defendant prefers) of the concept of "willfulness." *See Porcelli*, 865 F.2d at 1358 (with respect to mail fraud charge, rejecting argument that New York State's failure to criminalize the underpayment of sales tax meant the defendant did not have the requisite *mens rea* for mail fraud). Accordingly, courts squarely addressing this issue have consistently held that ignorance of the law is not a defense to wire or mail fraud. *See United States v. Blagojevich*, 794 F.3d 729, 739 (7th Cir. 2015) (the wire fraud statute "requires a specific intent to defraud but *not* willfulness or any other proxy for knowledge of the law"; "mistake of law is not a defense" (emphasis added)); *United States v. Stockheimer*, 157 F.3d 1082, 1088 (7th Cir. 1998) ("[A] defendant's belief in the legality of his conduct is not a defense to mail or bank fraud."); *United States v. Paradies*, 98 F.3d 1266, 1285 (11th Cir. 1996) ("In mail fraud cases, the government need only prove that the defendant had the intent to deceive, and ignorance of the law is no defense."); *United States v. Wicker*, 80 F.3d 263, 267 (8th Cir. 1996) (rejecting challenge to sufficiency of the evidence for mail fraud and noting that "[t]he critical inquiry is not whether [the defendant] intended to break the law, but, rather, whether [he] intended to defraud the [victims]"); *United States v. Hilliard*, 31 F.3d 1509, 1518 (10th Cir. 1994) (rejecting challenge to jury instructions that did not require the jury to find that the defendant acted "with a bad purpose to disobey the law").

In short, courts "ordinarily resist reading words or elements into a statute that do not appear on its face," *Bates v. United States*, 522 U.S. 23, 29 (1997), and the defendant's request to charge the jury as to willfulness should be rejected.[6]

## IV.    Additional Instructions

### Defendant's Request No. 36

The defendant requests that the Court instruct the jury that "[a] violation of California Bar rules does not imply that Mr. Avenatti defrauded Coach Franklin or attempted to extort Nike." (Def. Requests at 50.) This "instruction"—which is an apparent attempt to usurp the jury's role by instructing it as to the weight to give a particular piece of evidence—is plainly incorrect. A violation of particular California Rules of Professional Conduct (to which the defendant appears to be referring) may indeed be probative of the fact—and thus "imply"—that the defendant was engaging in wrongful conduct and, specifically, defrauding his client and attempting to extort Nike. Indeed, the very purpose of introducing evidence regarding these rules is because they are relevant, inasmuch as they tend to make fact of consequence more or less probable, as previously

---

[6]    Were the Court to instruct the jury regarding "willfulness," the Court should use the correct instructions regarding the meaning of that term provided in *United States v. Middendorf*, 2019 WL 4254025, at *7.

Honorable Paul G. Gardephe
United States District Judge
December 30, 2019
Page 13

discussed with the Court.  (*See* Gov't Opp'n to Def. Mot. *in Limine* to Preclude Expert Testimony 4-14 (Dkt No. 98).)

Nor does the case relied upon by the defendant (Def. Requests at 50 n.48 (citing *United States v. Fumo*, 655 F.3d 288, 303 (3d Cir. 2011))) support his proposed instruction.  To the contrary, the court in *Fumo* held that it was proper for the district court to admit expert testimony regarding customs and practices that "include[s] applicable legal regulations, such as registration requirements for securities registration under the Securities Acts" or "ethics rules and laws related to public officials and government contractors."  655 F.3d at 303.  Indeed, the court in *Fumo* made clear that evidence regarding ethics rules may be relevant to whether the defendant had "an intent to defraud."  *Id.*

The Government has proposed a fair and neutral instruction regarding the appropriate limits of the use of the California Rules of Professional Conduct, which does not seek to instruct the jury that it may not make inferences from the evidence admitted at trial.[7]  (Gov't Requests at 25.)  The defendant's proposal should be rejected.

### Defendant's Requests Nos. 37-40

The defendant requests several instructions purportedly regarding rules applicable to attorneys licensed in California that are little more than opinions offered to inappropriately suggest to the jury that the defendant's conduct was permissible.  Particularly given that the Court indicated at the December 17, 2019 conference that it likely will permit expert testimony regarding the duties and rules applicable to California attorneys, none of the instructions suggested by the defendant on these topics should be given.  Instead, to the extent the defendant wishes to make arguments about the rules applicable to California lawyers, he should adduce an evidentiary basis for them through witness testimony or otherwise.  If the Court nonetheless deems it appropriate to provide any instructions regarding the specifics of the duties and rules applicable to attorneys licensed in

---

[7]   The instruction regarding the California Rules of Professional Conduct proposed by the Government (Gov't Requests at 25) is consistent with prior jury instructions in analogous cases regarding evidence of the rules of ethics or professional or other similar conduct.  Should the Court prefer a longer instruction on this topic, however, the Government would propose adding language adapted from the jury instructions in *United States v. Gatto*, No. 17 Cr. 686 (LAK), as follows:

> This is not a case about whether the defendant violated the California Rules of Professional Responsibility, and a violation of a state rule of professional responsibility is not itself a crime.  However, I have admitted evidence regarding those rules because you may consider them, and whether the defendant violated one or more of them, in evaluating whether the defendant intended to and did defraud his client of his honest services and whether the defendant acted wrongfully in his demands of Nike.

Honorable Paul G. Gardephe
United States District Judge
December 30, 2019
Page 14

California, the Government respectfully requests an opportunity to provide proposed instructions to the Court.

### Defendant's Request No. 41

The defendant requests that the Court instruct the jury that "[a] lawyer has a First Amendment right to hold a press conference and to make statements to the press in connection with a client's potential claim or lawsuit."  (Def. Requests at 52.)  Even assuming the accuracy of this instruction, which overstates the protections provided by the First Amendment, *see, e.g.*, *Illinois ex rel. Mardigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003) ("[T]he First Amendment does not shield fraud."); *Jackson*, 180 F.3d at 64 (noting district court's decision that First Amendment protections do not extend to extortionate threats), it has no relevance to this case, where the defendant is being prosecuted for, among other things, making extortionate threats and seeking money for *not* for holding a press conference.  This instruction should not be given.

### Defendant's Request No. 42

The defendant requests an instruction regarding the meaning of Federal Rule of Evidence 408.  Given that Rule 408 has no bearing on the matters of this case—and is, in any event, an evidentiary rule for the Court to apply, not the jury—an instruction on this subject is not appropriate and would be confusing.  To the extent the Rule is discussed in one or more recordings to be offered at trial, the defendant can seek to elicit from the trial witnesses testimony as to their understanding of what the invocation of Rule 408 meant in that context, and, if a clarifying instruction appears necessary, it can be given at that time.

### Defendant's Request No. 43

The defendant's proposed instructions regarding reliance on counsel should not be provided to the jury for the reasons set forth in the Government's motion *in limine* regarding his proffered advice-of-counsel defense (Dkt. No. 104).

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:     s/ Matthew D. Podolsky
        Matthew D. Podolsky
        Daniel C. Richenthal
        Robert B. Sobelman
        Assistant United States Attorneys
        (212) 637-1947/2109/2616

Attachments

cc:     Counsel of Record  (by ECF)

# 11-0756-cr

# United States Court of Appeals

*for the*

# Second Circuit

⬩

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

MILTON BALKANY a/k/a Yehoshua Balkany,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## APPENDIX
## Volume 2 of 2 (Pages A-110 to A-327)

STILLMAN, FRIEDMAN & SHECHTMAN, P.C.
*Attorneys for Defendant-Appellant*
425 Park Avenue
New York, New York 10022
(212) 223-0200

KATHERINE POLK FAILLA, ESQ.
UNITED STATES ATTORNEY'S OFFICE,
  SOUTHERN DISTRICT OF NEW YORK
*Attorney for Appellee*
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2200

Case 11-756, Document 19, 06/01/2011, 303802, Page31 of 223

1208

0baQbal1                    Charge

1   an abiding and firm belief of the defendant's guilt; in other
2   words, if you have such a doubt as to reasonably cause a
3   prudent person to hesitate in acting in matters of importance
4   in his or her own affairs, then you have a reasonable doubt,
5   and in that circumstance it is your duty to acquit.
6          On the other hand, if, after a fair and impartial
7   consideration of all the evidence, you can candidly and
8   honestly say that you do have an abiding belief of the
9   defendant's guilt, such a belief as a prudent person would be
10  willing to act upon in important matters in the personal
11  affairs of his or her own life, then you have no reasonable
12  doubt, and under such circumstances it is your duty to convict.
13         One final word on this subject:  Reasonable doubt is
14  not whim or speculation.  It is not an excuse to avoid the
15  performance of an unpleasant duty, nor is it sympathy for the
16  defendant.  Beyond a reasonable doubt does not mean a positive
17  certainty or beyond all possible doubt.  After all, it is
18  virtually impossible for a person to be absolutely and
19  completely convinced of any contested fact that by its nature
20  is not subject to mathematical proof and certainty.  As a
21  result, the law in a criminal case is that it is sufficient if
22  the guilt of a defendant is established beyond a reasonable
23  doubt, not beyond all possible doubt.
24         The indictment contains four separate charges or
25  counts.  Each of these counts constitutes a separate offense

0baQbal1                    Charge
1    which must be considered separately by you.
2            The first three counts charge that the defendant
3    engaged in the crimes of extortion, wire fraud and blackmail
4    from on or about December 16, 2009 to on or about February 18,
5    2010, in an effort to wrongfully obtain money from a hedge
6    fund.
7            Count One charges that the defendant willfully,
8    knowingly and with intent to extort money made telephone calls
9    containing threats to representatives of a hedge fund.
10           Count Two charges that the defendant, having devised
11   and intending to devise, a scheme and artifice to defraud to
12   obtain money by means of false and fraudulent representations,
13   made telephone calls from Israel to New York for the purpose of
14   executing such scheme.
15           Count Three charges that the defendant knowingly and
16   willfully made a threat to inform law enforcement authorities
17   of alleged illegal conduct, or as a consideration for not
18   informing them, and demanded or received money.
19           Count Four charges that on or about January 21, 2010,
20   the defendant willfully and knowingly made false statements to
21   a criminal investigator with the United States Attorney's
22   office.
23           Count One charges the defendant with the crime of
24   extortion.  Section 875(d) of Title 18 of United States Code
25   provides that:

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1210

0baQbal1                    Charge

1      Whoever, with intent to extort from any person, firm,
2  association, or corporation, any money ... transmits in
3  interstate or foreign commerce any communication containing any
4  threat to injure the ... reputation of ... another ... or any
5  threat to accuse ... any person after crime shall be [guilty of
6  a crime].
7      In order to find the defendant guilty of the crime of
8  extortion charged in Count One, you must find that the
9  government has proven beyond a reasonable doubt each of the
10  following elements of the crime:
11      That the defendant transmitted the communication
12  charged in Count One in interstate or foreign commerce;
13      That the communication contained a threat to injure
14  the reputation of another or a threat to accuse another of a
15  crime;
16      That in doing so, the defendant acted knowingly and
17  willfully; and,
18      That in doing so, the defendant acted with intent to
19  extort money from another.
20      Count One charges that the defendant made telephone
21  calls to representatives of a hedge fund in which he threatened
22  to advise an incarcerated individual, purported to be under the
23  defendant's control, to disclose to law enforcement authorities
24  alleged illegal conduct that occurred at the hedge fund
25  involving the manager of the hedge fund, unless he received
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

ObaQba11                    Charge
1   $4 million from the hedge fund.  It is not disputed that the
2   hedge fund at issue is SAC Capital.
3          To establish that the defendant transmitted a
4   communication in foreign or interstate commerce, the government
5   must prove that the communication passed between two or more
6   states, or between the United States and a foreign country.
7   The government is not required to prove that the defendant knew
8   that the communication would be transferred across state or
9   international borders.
10         A communication is a threat punishable under the law
11  if it is made under such circumstances that an ordinary,
12  reasonable recipient familiar with the context of the
13  communication would interpret it as a "true threat," as
14  distinguished from idle or careless talk, exaggeration, or
15  something said in a joking manner.  Thus, to be a crime, the
16  threat on its face and in the circumstances in which it is made
17  must be so unequivocal, unconditional, immediate and specific
18  as to the person threatened as to convey to an ordinary,
19  reasonable recipient a gravity of purpose and an imminent
20  prospect of execution.  On the other hand, the government need
21  not prove that the defendant intended to carry out the threat
22  or that he had the present ability to carry out the threat.
23         To establish that the defendant knowingly communicated
24  a threat, the government must prove that the defendant made a
25  communication containing a threat intentionally, voluntarily

0baQbal1                    Charge

1   and deliberately and not because of a mistake or accident, mere
2   negligence, or other innocent reason.  To establish that the
3   defendant acted willfully, the government must prove that the
4   defendant's conduct was knowing and purposeful, and that the
5   defendant acted with the general knowledge that his conduct was
6   unlawful and with the intention to commit an act which the law
7   forbids.  It is not necessary that the defendant knew that he
8   was violating any particular law, but you must be convinced
9   beyond a reasonable doubt that he was aware that what he was
10  doing was, in general, unlawful.
11          To act with intent to extort, means to act with the
12  intent to obtain money from someone else, with the person's
13  consent, but caused or induced by the wrongful use of fear of
14  harm to another's property or reputation or fear of being
15  accused of a crime.  A defendant's threat of harm is wrongful
16  when it is used to seek money that the defendant does not have
17  a right to receive, and that the defendant cannot reasonably
18  believe he has a right to receive.  In other words, the term
19  "wrongful" means that the defendant has no lawful right to the
20  money he attempted to obtain, and also that the defendant knew
21  that he had no lawful right to the money he attempted to
22  obtain.
23          It is not a defense that the threats are based on true
24  facts.  In other words, it is irrelevant whether SAC Capital or
25  anyone at SAC Capital actually engaged in insider trading.

```
                                                              2476
      C58efaz1
 1    UNITED STATES DISTRICT COURT
 1    SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
 2    UNITED STATES OF AMERICA,
 3
 3              v.                         11 CR 873 (KBF)
 4
 4    ANTHONY FAZIO SR., ANTHONY
 5    FAZIO JR., JOHN FAZIO JR.,
 5
 6              Defendants.
 6    ------------------------------x
 7                                         New York, N.Y.
 7                                         May 8, 2012
 8                                         9:01 a.m.
 8
 9
 9    Before:
10                   HON. KATHERINE B. FORREST,
10
11                                         District Judge
11                                                and a jury
12                        APPEARANCES
12
13    PREET BHARARA
13         United States Attorney for the
14         Southern District of New York
14    STEVE KWOK
15    PETER M. SKINNER
15    BRIAN BLAIS
16         Assistant United States Attorneys
16
17    WINOGRAD & WINOGRAD P.C.
17         Attorneys for Defendant Anthony Fazio Sr.
18    BY:  JOEL WINOGRAD
18         COREY WINOGRAD
19
19    LEVITT & KAIZER
20         Attorneys for Defendant Anthony Fazio Jr.
20    BY:  RICHARD LEVITT
21
21    GERALD J. McMAHON
22    MATTHEW J. MARI
22         Attorneys for Defendant John Fazio Jr.
23
23    ALSO PRESENT:  DAVID FERNICOLA, FBI
24                             COLLEEN GEIER, Paralegal
24                             EMILY GOLUB, Esq.
25
                   SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

C580faz6                        Charge

1    way of conducting the defendant's ongoing legitimate business;
2    or three, the acts are a regular way of conducting or
3    participating in an ongoing legitimate RICO enterprise.
4              For the purposes of this count, the indictment alleges
5    the following six categories of acts and offenses that were
6    committed, charged, have been committed, or intended to be
7    committed as part of this RICO conspiracy:
8              One, extortion in violation of federal law and New
9    York State law.
10             Two, unlawful receipt of labor payments in violation
11   of federal law.
12             Three, embezzlement from pension and welfare benefit
13   funds in violation of federal law.
14             Four, unlawful payments concerning benefit plans in
15   violation of federal law, and labor bribery in violation of New
16   York State law.
17             And five, money laundering in violation of federal
18   law.
19             And six, witness tampering in violation of federal
20   law.
21             I will instruct you on the elements of each of these
22   predicate offenses under the various statutes that are charged
23   in the indictment in a moment.
24             I will now instruct you on the elements of the
25   racketeering acts charged in the indictment, also called the

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

C580faz6                    Charge

1   predicate acts for the RICO conspiracy.  As I have explained to
2   you, you may not convict the defendant of a RICO conspiracy
3   unless you have found that at least one member of the
4   conspiracy committed at least two of the racketeering acts
5   charged in the indictment.  Some of the charged racketeering
6   acts allege more than one criminal act.
7           If you find beyond a reasonable doubt that any member
8   of the conspiracy committed any one of the crimes charged,
9   within a single racketeering act in furtherance of the
10  conspiracy, you have found that the government has proven that
11  racketeering act for purposes of count one.  In other words,
12  you need only find that a member of the conspiracy committed
13  one of the crimes charged within a single racketeering act in
14  order to find that the government has proven one racketeering
15  act.  You must be unanimous, however, with respect to which
16  particular crime a member of the conspiracy committed.
17          So let me talk about the predicate acts.  The first
18  one is extortion under federal law.  The first way in which the
19  activity of the enterprise is alleged to have been carried out
20  is extortion, i.e. to extort payments from business owners who
21  whose employees were members of Local 348.
22          What does it mean to extort?  Extortion is the
23  obtaining of another's property or money, with his consent,
24  when this consent is induced or brought upon through the use or
25  threatened use of force, violence, or fear.  Now, I'll talk

2663

C580faz6                        Charge

 1   about each of the elements under the federal law of extortion.
 2               In order to meet the burden of proving that a
 3   defendant committed extortion, the government must establish
 4   beyond a reasonable doubt each of the following elements:
 5               That a defendant wrongfully obtained the property of
 6   another; that a defendant obtained this property with the
 7   victim's consent, but that this consent was compelled by the
 8   wrongful use or threat of force, violence, or fear; and third,
 9   that as a result of the defendant's actions, interstate
10   commerce or an item moving in interstate commerce was delayed,
11   obstructed, or affected in any way or degree.
12               And I am going to work through each of these elements
13   for you.
14               The first element that the government must prove
15   beyond a reasonable doubt is that the defendant wrongfully
16   obtained or took the personal property of another or from the
17   presence of another.
18               The term property includes money.  And other tangible
19   and intangible things of value.
20               The second element is attaining property through
21   wrongful use of force, violence, or fear.  The second element
22   the government must prove beyond a reasonable doubt is that the
23   defendant wrongfully took this property by actual or threatened
24   force, violence or fear of injury or economic harm, whether
25   immediately or in the future.

2664

C580faz6                    Charge

```
 1              The term the terms force, violence, and fear, have
 2      their common everyday meanings.  Any one of these means is
 3      sufficient.  You do not need to find that the defendant you are
 4      considering employed all of them.  These acts do not have to be
 5      directed at the person whose property is taken.  They may be
 6      aimed at a their person, so long as they were employed for the
 7      purpose of wrongfully obtaining property.  The use of violence,
 8      force, and threat of force are inherently wrongful.  You may
 9      find that the use of force or violence constitutes a threat of
10      repeated violence.  The use of fear is wrongful if the object
11      of the fear is itself wrongful, such as physical harm, or if a
12      defendant's specific purpose in using fear was to obtain
13      property to which the defendant had no lawful right.
14              The wrongful use of fear includes creating or
15      instilling fear.  A wrongful use of fear may also occur when a
16      defendant is aware of the victim's existing fear and does or
17      says something to exploit that fear.  The fear can be a fear of
18      economic or physical injury.  Economic fear is only wrongful
19      when it is used to obtain property to which the defendant has
20      no lawful right.  The existence of fear must be determined by
21      the facts existing at the time of the defendant's actions.
22              Any fear created or exploited in the course of an
23      extortion must be a reasonable fear.  The fear of economic loss
24      must a reasonable one.  Reasonable fear means that a reasonable
25      person in the victim's position would experience similar fear.
```

2665

C580faz6                        Charge

1   In making this determination, you may consider all of the
2   circumstances known to the victim surrounding the actions of
3   the defendant you are considering, including the victim's
4   belief regarding the defendant's reputation.  For example, you
5   may find that a victim's belief that a defendant has a
6   reputation for violence makes that victim's fear of violence
7   reasonable, even in the absence of an explicit or implicit
8   threat of violence.  But keep in mind, that evidence of a bad
9   reputation is not enough to find the defendant you are
10  considering guilty of extortion.  You must find that the
11  defendant did or said something to someone, not just to the
12  alleged victim him or herself, to instill or exploit the
13  victim's fear with a specific purpose of inducing the victim to
14  part with property.
15          A wrongful use of fever may occur regardless of the
16  nature of the victim or the victim's relationship with the
17  defendant you are considering.  Evidence that the defendant and
18  the victim have socialized with each other or have had a
19  friendly relationship is not necessarily inconsistent with the
20  crime of extortion, but the character of the relationship may
21  be a fact for you to consider along with all of the other
22  circumstances.  You may find an extortion, even when the victim
23  is tough, or a criminal himself.
24          Let me talk about fear.  As I have just instructed
25  you, you must determine whether the defendant used or

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2666

C580faz6                    Charge
1    threatened to use force, violence, or fear, to unlawfully
2    obtain property.  Fear exists if a victim experiences anxiety,
3    concern, or worry over expected personal harm or business loss,
4    or over financial or job security.
5              A victim's fear must be reasonable.  The existence of
6    fear must be determined by the facts existing at the time of
7    the defendant's actions.
8              Your decision whether the defendant used or threatened
9    fear of injury involves a decision about the victim's state of
10   mind at the time of the defendant's actions.  It is obviously
11   impossible to ascertain or prove directly a person's subjective
12   feeling.  You cannot look into a person's mind to see what his
13   or her state of mind is or was, but a careful consideration of
14   the circumstances and evidence should enable you to decide
15   whether fear would reasonably have been the victim's state of
16   mind.
17             Looking at the situation and the actions of people
18   involved, may help you determine what their state of mind was.
19   You can consider this kind of evidence, which is called
20   circumstantial evidence, in deciding whether property was
21   obtained by the defendant through the use or threat of fear.
22             You have also heard the testimony of some witnesses
23   describing their state of mind, that is, how they felt in
24   giving up their property.  This testimony was allowed so as to
25   help you in deciding whether the property was obtained by fear.

2667

C580faz6                         Charge

1   You should consider this testimony for that purpose only.
2            You may also consider the relationship between the
3   defendant and the alleged victim in deciding whether the
4   elements of fear exists.  However, as I have said before, a
5   friendly relationship between the parties does not mean that
6   you can't find that fear exists.
7            The third element is affecting interstate commerce.
8   If you decide that the defendant obtained another's property
9   against his will by the use of threat or force, violence or
10  fear of injury or economic harm, you must then decide whether
11  this action would affect interstate commerce in any way.  This
12  means that you must decide whether there is an actual or
13  potential affect on commerce between any two or more states.
14           I have already instructed you on the law on what
15  affecting interstate commerce means and you should apply that
16  here.
17           The law of conspiracy.  Federal law not only
18  criminalizes substantive extortion as I just defined it for
19  you, but also a conspiracy to commit extortion.  I have
20  previously explained to you the concept of a conspiracy, and
21  you are to follow those instructions here.
22           In short, you need to ask, one, whether two or more
23  persons entered into an unlawful agreement here to commit
24  extortion; and two, whether the defendant knowingly and
25  willfully became a member of that conspiracy.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2668
C580faz6                    Charge
1                   Now I'm going to talk about the law of attempt.
2                   Federal law not only criminalizes the completed act of
3          extortion, it also makes it a crime for an individual to
4          attempt to commit extortion, even if the crime was not
5          completed.  That is, even if no property was taken from the
6          victim, and even if there was only an attempt to instill fear
7          in the victim, but the victim experienced no actual subjective
8          fear.  In order to prove the charge of attempting to commit the
9          crime of extortion, the government must prove the following
10         beyond a reasonable doubt.
11                  First, that the defendant intended to commit the crime
12         of extortion as I defined it for you just a moment ago.
13                  And second, that the defendant did some act that was a
14         substantial step in an effort to bring about or accomplish the
15         crime.  Mere intention to commit a specific crime does not
16         amount to an attempt.  In order to find the defendant guilty of
17         attempting to commit a crime, here the crime of extortion, you
18         must find beyond a reasonable doubt that the defendant intended
19         to commit the crime charged, and that he took some action which
20         was a substantial step towards the commission of that crime.
21                  In determining whether the defendant's actions
22         amounted to a substantial step towards commission of the crime,
23         it is necessary to distinguish between mere preparation on the
24         one hand, and the actual doing of a criminal deed on the other.
25         Mere preparation, which may consist of planning the offense, or
                        SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

2669

C580faz6                        Charge

1   some form of devising, obtaining, or arranging a means for its
2   commission, is not enough, although some preparation may be of
3   such a degree or quality that they amount to an attempt.  The
4   question whether the defendant's actions, if any, have crossed
5   the line from mere preparation into a substantial step toward
6   the commission of the crime is for you alone to decide.  The
7   acts of a person who intends to commit a crime will constitute
8   an attempt when the acts themselves clearly indicate an attempt
9   to commit the crime, and the acts are a substantial step in a
10  course of conduct planned to culminate in the commission of the
11  crime.
12          Let's talk about extortion under New York State law.
13  I just explained to you the federal law of extortion.  The
14  indictment also charges extortion under New York State law.
15          Before I explain to you the elements of extortion
16  under New York law, bear in mind that it is not necessary for
17  you to find violation of both federal and state law in order
18  for you to conclude that a defendant or his co-conspirator has
19  committed the predicate act of extortion.  Moreover, as I will
20  tell you in a moment, there are two applicable extortion
21  statutes under New York law.  You only need to find that an
22  allegedly extortionate act satisfies all of the elements of
23  only one statute, state or federal, for you to conclude that
24  the predicate extortion offense has been proven.  But you must
25  be unanimous as to which law, if any, was violated.