LAW OFFICES
# SCOTT A. SREBNICK, P.A.

SCOTT A. SREBNICK*
* ALSO ADMITTED IN NEW YORK

201 S. Biscayne Boulevard
Suite 1210
Miami, Florida 33131

Tel: 305-285-9019
Fax: 305-377-9937
E-mail: scott@srebnicklaw.com
www.srebnicklaw.com

January 2, 2020

**Via ECF**
Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

    Re:   *United States v. Avenatti*, No. S1 19 Cr. 373 (PGG)
            **Response to Government's Supplemental Expert Summary,
            Pursuant to Court Order of December 20, 2019 (Dkt. No. 105)**

Dear Judge Gardephe:

        Pursuant to the Court's Order of December 20, 2019 (Dkt. No. 105), we make this submission in response to the government's supplemental summary of the expert opinions that the government expects to offer in its case-in-chief at trial. (Dkt. No. 110). Specifically, Mr. Avenatti continues to object to any legal expert testimony in this case and renews his motion to exclude the government's legal expert testimony in its entirety. (Dkt. No. 82).

    **1. Legal Expert Testimony Should be Excluded**

        At the outset, the government's supplemental summary fails to adequately address several issues discussed at the hearing of December 17, 2019. First, although the Court indicated that it would likely allow only one expert, the government has failed to identify which of its two experts it expects to call to testify at trial. Thus, less than three weeks before trial, undersigned counsel are faced with the prospect of researching the background, writings, and prior testimony of two different experts on the same wide array of subjects. Further, the government should not be permitted to avoid the Court's ruling by now designating one of the experts as a "rebuttal" expert to Mr. Avenatti's rebuttal expert.

        Second, the government's supplemental summary makes clear that the government is indeed seeking to convert this case into an attorney grievance proceeding, notwithstanding the Court's express disinclination to allow ethics rules to take over the trial. (Tr. 12/17/19, at pp. 10-11). The government proposes to have its legal expert provide the equivalent of a CLE seminar on the law of lawyering about a broad array of topics. The government's supplemental summary provides that the legal expert will be asked to identify multiple ways in which a lawyer generally: a) violates the duty of confidentiality (Dkt. No. 110:5); b) disregards the scope of representation and allocation of authority (Dkt. No. 110:7); c) violates the duty of diligence (Dkt. No. 110:7); d) fails to adequately communicate with clients; (Dkt. No. 110:8-

1

9); e) violates the duty of loyalty (Dkt. No. 110:11); f) violates the business transactions rule (Dkt. No. 110:12); g) misuses a client's confidential information; h) fails in his/her duty as an advisor (Dkt. No. 110:13); i) violates the rule against threatening criminal charges (Dkt. No. 110:13); and j) commits misconduct related to negotiations with an adverse party in a civil matter (Dkt. No. 110:14). The obvious implication to the jury will be that Mr. Avenatti violated each of those duties or rules.

Third, although the government disclaims any intent to ask "hypothetical questions in a manner that tracks the specific allegations in this case or otherwise [] assume[s] the truth of the allegations of misconduct in this case," the government says it "intends to ask its expert to provide illustrative examples or to answer hypothetical questions intended to assist the jury in understanding the meaning and scope of pertinent duties or rules." (Dkt. No. 110:3). Yet, the supplemental summary provides no details about any hypotheticals, even though the Court made it clear that such information was to be provided in the supplemental disclosure. Instead, the government provides "examples" of five broad questions which it may ask its legal expert; presumably, the expert will then provide a tutorial on what an attorney must do in a variety of yet-to-be-disclosed hypothetical scenarios. (Dkt. No. 110:3).[1] The debate about hypotheticals captures a fundamental problem with allowing **any** legal expert testimony in this case. If the hypothetical is tethered to the facts of the case or seeks to mirror some of the facts of this case, it is inadmissible under the extensive body of case law set forth in Mr. Avenatti's original memorandum of law that deals with the unique category of legal experts and the issue of infringing on the role of the jury, about which the Court has already expressed significant concern. (Dkt. No. 82:11-15). If the hypothetical is divorced from the facts of the case, it would be irrelevant, confusing to the jury, and a waste of time.

Mr. Avenatti's primary objection is that legal expert testimony that interprets laws, rules, and case law usurps the role of the court and is inadmissible against a criminal defendant. The government acknowledges that the California Rules have the force of law, that the duties about which the expert intends to testify have been "developed through cases, bar opinions, commentaries, and other authorities," and that its expert plans to "explain the meaning of pertinent California Rules." (Dkt. No. 110:5). The government further admits that it may have the legal expert testify about terms such as "fraud" and "fraudulent" that will be the subject of instructions that the Court itself will have to give. (Dkt. No. 110:6). Thus, the government's proposed legal expert testimony is hoisted by its own petard. "Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) (citing *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977); *see also CDX Liquidating Trust ex rel CDX Liquidating*

---

[1] The government's citation to *United States v. Muzaffar*, 714 F. App'x 52, 55 (2d Cir. 2017) (Dkt. No. 110:3), is curious inasmuch as the Second Circuit rejected the defendants' challenge to their structuring conviction based on a money laundering expert's use of a hypothetical that closely matched the facts because "the District Court halted the line of questioning and issued a limiting instruction, informing the jury that [the expert's] testimony should not be taken 'as indicating anything about the alleged intent of these particular defendants.'"

*Trustee v. Venrock Associates*, 411 B.R. 571, 585 (N.D. Ill. 2009) ("[I]n a trial there is only one legal expert – the judge .... Allowing experts to testify about their interpretations of the law would usurp the judge's role as law-giver, and '[i]t is not for witnesses to instruct the jury as to applicable principles of law, but the judge.'") (internal citations omitted). Expert testimony interpreting laws and rules and providing the jury examples of when such laws and rules are violated – whether or not the examples closely match the facts of the case -- is patently improper.

To be sure, the Second Circuit has "consistently held" that "expert testimony that usurps *either* the role of the trial judge in instructing the jury as to the applicable law *or* the role of the jury in applying that law to the facts before it, by definition does not aid the jury in making a decision." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (citation and internal quotations omitted) (emphasis added). As a result, the Second Circuit has uniformly rejected testimony from legal experts about legal concepts, ethics, rules of professional responsibility, and fiduciary duties. *See Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 144 (2d Cir. 2016) ("As a threshold matter, we note that defendants rely in large part on the conclusions of their legal-ethics expert made in a declaration filed in the district court. We do not consider arguments based on this declaration because of our longstanding rule that expert testimony on issues of domestic law is not to be considered."); *Amnesty Int'l USA v. Clapper*, 638 F.3d 118, 128 n.12 (2d Cir. 2011) (holding that the court was "not compelled to accept" a legal-ethics expert's declaration regarding whether an ethical duty had been triggered, because the question was for the court), *rev'd on other grds.*, ___ U.S. ___, 133 S. Ct. 1138 (2013)); *GST Telecomm., Inc. v. Irwin*, 192 F.R.D. 109, 111 (S.D.N.Y. 2000) (stating that "testimony of legal experts on ethics in the profession is hardly an occasion for which credible experts supply legal opinions") (citation and quotation marks omitted); *Joffe v. King & Spalding LLP*, No. 17-CV-3392 (VEC), 2019 WL 4673554 (S.D.N.Y. Sept. 24, 2019).

As one district court has noted, "[t]he rule prohibiting experts from providing their legal opinions or conclusions is 'so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle.'" *In re Initial Public Offering Securities Litigation*, 174 F.Supp.2d 61, 64 (S.D.N.Y. 2001) (citing Thomas Baker, "The Impropriety of Expert Witness Testimony on the Law," 40 *U. Kan. L.Rev.* 325, 352 (1992)). "In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law." *Id.* at 64; *see, e.g., United States v. Monaghan*. 648 F.Supp.2d 658, 662 (E.D.Pa. 2009) ("There is no reason why an expert, instead of the Court, would be needed to explain the laws in this case to the jury.").

The government intends to ask the jury to "consider any evidence that the defendant violated the rules that apply to attorneys or intentionally did not disclose, or concealed, material information about a financial or personal conflict of interest, money received, or any behavior indicating consciousness of guilt as evidence of the defendant's state of mind." (Dkt. No. 111:13-14; Dkt. No. 95:31). Yet, under the government's proposal, those rules and the interpretation of them will be coming from an expert witness without so much as a charge conference to determine whether: a) the fact evidence admitted at trial supports the admission

3

of expert testimony about a particular rule; b) the expert testimony about the rules is in accord with the law; and c) the expert testimony consists of a balanced discussion about the law similar to that which would be required of the court's jury instructions. *See generally United States v. Dove*, 916 F.2d 41, 45 (2d Cir. 1990) (reversing conviction for instructional error and discussing the need to give balanced instructions on the law). While the Court indicated at the December 17, 2019, hearing that "it's very difficult to have a discussion about what the jury instructions are going to be before the judge has heard the evidence," (Tr. 12/17/19, at 49), the government proposes to use its expert's interpretation of the law *as the evidence itself*.

A few examples illustrate the danger of allowing expert testimony about, and interpreting, rules, statutes, and case law. The government proposes to have its expert testify that "[a]n offer or expression of willingness to settle a client's potential civil claim for a particular sum of money, made by an individual with apparent authorization to settle the claim, generally constitutes such a [significant] development" that must be communicated to the client under the Commentary to Cal. R. Prof. Conduct 1.4.1. (Dkt. No. 110:9). This proposed expert testimony is plainly directed at Nike attorney Scott Wilson's statement at the recorded meeting on Thursday, March 21, 2019, regarding whether the $1.5 million payment to Coach Franklin would be the "sticking point" or the "stumbling block" (whatever that means). (Dkt. No. 72:10). But whether a plaintiff's lawyer must immediately disclose an ambiguous "sticking point" or "stumbling block" comment made by an outside lawyer of a Fortune 100 company, where any settlement offer or agreement must go through an extensive process that includes approvals by the General Counsel's office and possibly even the Board of Directors requires a greater understanding of the nuances of what constitutes an "offer" and when "apparent authorization" exists. Under the government's proposed jury instruction, the risk is intolerable that the jury would find that Mr. Avenatti had "consciousness of guilt" on the basis of the legal expert's incomplete interpretation of the Commentary to a particular ethics rule.

As another example, the government proposes to have its expert testify that, absent informed consent, a lawyer may not reveal or disclose confidential information "except where necessary to prevent a criminal act likely to result in death or substantial bodily harm." (Dkt. No. 110:10). It is not clear to which "confidential information" of Coach Gary Franklin or to which revelation or disclosure by Mr. Avenatti the government is even referring in this case. Is the "confidential information" the *evidence* (*i.e.*, text messages, redacted bank statements, fake invoices) that would be the *sine qua non* of Coach Franklin's contemplated lawsuit against Nike in the event the matter did not settle? Is the alleged improper disclosure Mr. Avenatti allowing one Nike lawyer to review that evidence at a confidential settlement meeting that all parties agreed *would be covered by Rule 408*? Moreover, what constitutes "informed consent" is itself an issue that has its own set of legal principles. For example, the Rules recognize the principle of "implied consent" to disclosure of confidential information. *See* California Bar Formal Opinion No. 1984-84, at n.5. Thus, even assuming that Coach Gary Franklin did not expressly consent to the disclosure of that evidence (which we dispute), does the government propose to have its legal expert opine on the circumstances in which "implied consent" is given by the client? Who will define "implied consent" to the jury?

4

Reversing course from its prior notice, the government now claims that it would not ask the expert to assume the truth of the allegations against Mr. Avenatti in this case "assuming that the defendant does not open the door to such hypothetical questions by asking the Government's expert or his own to opine, whether in hypothetical form or otherwise, on the specific allegations of this case, including what was said in certain meetings." (Dkt. No. 110:3). Mr. Avenatti has no intention of asking the expert to opine about specific evidence. But the government's argument underscores why allowing any expert testimony on rules and laws is fraught with grave risk and does not "assist the trier of fact" under Rule 702. To cross-examine a legal expert whose testimony is based on rules, statutes, case law, and ethics opinions, one must ask the expert about rules, statutes, case law, and ethics opinions. Yet, it would hardly assist the trier of fact in deciding an extortion and honest services wire fraud case to have counsel and an expert sparring about statutory construction and legislative intent behind rules of professional conduct. Moreover, what if the competing legal experts disagree about particular legal principles, such as the circumstances in which information is actually confidential, or when "implied consent" may be given, or whether a conflict of interest is waivable? How would the jury be expected to resolve those conflicts on questions of law? Would the jury be deciding whose *legal analysis* they believe based on credibility?

Our position is clear: the California Rules of Professional Conduct, and testimony about them, are not relevant in this case and should be excluded. Under *Skilling v. United States*, 561 U.S. 358, 411 (2010), the only fiduciary duty that is relevant in an "honest services wire fraud" case is the duty to not engage in bribery or kickbacks. Moreover, to the extent expert testimony about a broad array of ethics rules is probative at all, it should be excluded under Rule 403 because of "the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations.'" *Nimely*, 414 F.3d at 397. To the extent this Court determines that any California Bar rules are even relevant in this case, the Court should hold a charge conference to determine what rules are relevant and how to instruct the jury on those rules in a balanced fashion, incorporating the case law that interprets them, just as the Court intends to do with respect to the offense instructions in the case.

Accordingly, the Court should exclude the government's proposed legal expert testimony in its entirety. If the Court is inclined to permit legal expert testimony, Mr. Avenatti renews his request for a *Daubert/Kumho* hearing outside the presence of the jury for the Court to evaluate the relevance and reliability of the testimony, and whether it would assist the trier of fact, before allowing the government to embark down a perilous path.

### 2. Supplemental Defense Disclosure

In its supplemental summary, the government requests that Mr. Avenatti be ordered to provide a supplemental disclosure with additional detail regarding the defense expert's opinions. At the December 17, 2019 hearing, however, the Court did not take issue with the adequacy of the defense expert summary under Fed.R.Crim.P. 16(b)(1)(C), instead directing *the government* to provide a "more detailed description of what you expect the testimony

5

would be in greater detail than the summary you previously provided, such that Mr. Srebnick has a better understanding of exactly what will be elicited and so that he can present any continuing concerns that he has to me and I can rule on the issue." (Tr. 12/17/19, at pp. 19-22). That is what we have done.

We would note, however, that although the government legal experts apparently have not reviewed any of the case materials, the trial prosecutors have interviewed Coach Gary Franklin and his advisor Jeffrey Auerbach (presumably on multiple occasions) and already know what the substance of their testimony will be on direct examination about the attorney-client meetings and the communications with Mr. Avenatti. Coach Franklin was the client and Mr. Auerbach participated in meetings and phone calls with Mr. Avenatti. Thus, the trial prosecutors are in the unique position to prepare their legal expert in a manner that the prosecutors believe will align with what their fact witnesses will say about their communications with Mr. Avenatti. Mr. Avenatti, however, does not know what Coach Franklin and Mr. Auerbach have told the government (*i.e.* what was authorized, prohibited, and the like). Because the admissibility of expert testimony is now at issue, and because the legal expert testimony is all about the attorney-client relationship, undersigned counsel have asked the government to disclose the reports of interviews of Coach Franklin and Mr. Auerbach in advance of the agreed-to date of January 14, 2020, for disclosure of material pursuant to 18 U.S.C. §3500. The government has not yet indicated whether it intends to provide earlier disclosure.

Respectfully,

*[signature]*

Scott A. Srebnick
Jose M. Quinon
E. Danya Perry