**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

v.

MICHAEL AVENATTI,

                    Defendant.

No. 19 Cr. 373 (PGG)

---

### MEMORANDUM OF LAW IN SUPPORT OF
### NON-PARTY NIKE, INC.'S MOTION TO QUASH

Peter M. Skinner
Andrew Z. Michaelson
David L. Simons
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2300
(f) +1 212 446 2380

*Attorneys for NIKE, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

LEGAL STANDARD ............................................................................................... 2

ARGUMENT .......................................................................................................... 3

I.    Defendant Should Be Precluded From Calling the Nike Employees Because They Do Not Know What Defendant Knew at the Time of the Scheme............................. 3

II.    The Nike Employees Should Not Be Called to Extrinsically Impeach Testimony of Nike Counsel. .................................................................................. 4

III.    The Nike Employees Offer No Relevant, Admissible Testimony About "Wrongfulness." ........................................................................................ 6

IV.    The Nike Employees' Testimony Would Also Be Inadmissible Under Rule 403(b)............................................................................................................ 7

CONCLUSION .................................................................................................... 10

NIKE, Inc. ("Nike") respectfully submits this memorandum of law in support of its motion to quash Defendant Michael Avenatti's subpoenas for five Nike employees—John Slusher, Lynn Merritt, Nico Harrison, Carlton DeBose, and Jamal James (the "Nike Employees")—to testify at his criminal trial beginning on January 21, 2019.

## PRELIMINARY STATEMENT

Mr. Avenatti is charged with extorting Nike and defrauding his client. With respect to Nike, as the Court is well aware, Mr. Avenatti threatened to take billions off of the company's market cap by publicizing allegations of misconduct relating to amateur basketball unless Nike paid him roughly $20 million. He cannot dispute that he made these threats; they are documented on video and audio recordings. Instead, he intends to put the Government's and Nike's conduct on trial. He intends to misdirect the jury—pointing their attention anywhere but on his own conduct—in the hope that at least one of them will be confused by evidence that is legally irrelevant and factually inaccurate.

To this end, he seeks to drag the five Nike Employees across the country to testify at his trial. The Nike Employees have no testimony to offer about Mr. Avenatti's extortion or honest services fraud. They never spoke with Mr. Avenatti. They were not present for Mr. Avenatti's threats. They do not know what Mr. Avenatti's client told Mr. Avenatti about Nike, or what that client instructed Mr. Avenatti to do. All that the Nike Employees might possibly offer is testimony about Nike's actual conduct with respect to amateur basketball.

Mr. Avenatti would like to elicit the Nike Employees' testimony to try to establish that Nike engaged in criminal conduct, and that Nike hid this criminal conduct from the Government while claiming to be cooperating. This narrative—which paints Nike as the villain and Mr. Avenatti as the hero—is false and illogical. It is false because Nike committed no crimes and fully

1

cooperated.[1]   It is illogical because, if Nike had committed crimes and hidden them from the Government, it would not have rushed, as it did, to report Mr. Avenatti's allegations to the Government within hours of first hearing them.   Moreover, Mr. Avenatti's false narrative is irrelevant to whether Mr. Avenatti committed extortion: "[T]he truth of the damaging allegations underlying [a] threat is not a defense to a charge of extortion under § 875(d)."   *United States v. Jackson*, 180 F.3d 55, 66 (2d Cir. 1999), *on reh'g*, 196 F.3d 383 (2d Cir. 1999).

In short, the Nike Employees have no relevant, admissible testimony to offer, and even if they did, such testimony should be precluded under Rule 403.   Nor should the Nike Employees be called to impeach, extrinsically, the testimony of Nike counsel on bias and motive.[2]   Nike therefore respectfully requests that the Court grant this motion to quash.

## LEGAL STANDARD

Subpoenas seeking testimony for use in a criminal trial are governed by Federal Rule of Criminal Procedure 17.   *See* Fed. R. Crim. P. 17(a); *see also Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).   The proponent of a Rule 17 subpoena must demonstrate "(1) relevancy; (2) admissibility; [and] (3) specificity," as well as "that the application is made in good faith and is not intended as a general fishing expedition."   *United States v. Nixon*, 418 U.S. 683, 700 (1974); *see also United States v. Khan*, No. 06-CR-255 (DLI), 2009 WL 152582, at *2 (E.D.N.Y. Jan. 20,

---

[1] In September 2017, the Government indicted individuals associated with Adidas—not Nike—for committing fraud on NCAA institutions.   These individuals were charged for making payments to amateur basketball players (or their families) for commitments to attend specific Adidas-sponsored NCAA institutions, thereby defrauding those institutions out of scholarships. Following the Adidas arrests, Nike conducted its own internal investigation, cooperated with the Government's investigation, and produced documents and information to the Government.   More than two years have passed since the Adidas arrests, and nobody from Nike has been indicted.

[2] Mr. Avenatti also served trial subpoenas on two individuals employed by Nike as in-house counsel, Robert Leinwand and Casey Kaplan, who had direct interaction with Mr. Avenatti and/or Mark Geragos.   Nike is not moving to quash the subpoenas to Mr. Leinwand or Mr. Kaplan at this time, but reserves the right to do so.

2009) (applying the *Nixon* test to several subpoenas for trial testimony).  If the proponent fails to

meet each of these requirements, the court may quash the subpoena.  *See Khan*, 2009 WL 152582,

at *2-4.

## ARGUMENT

I.     **Defendant Should Be Precluded From Calling the Nike Employees Because They Do
       Not Know What Defendant Knew at the Time of the Scheme.**

The Government has moved to preclude Mr. Avenatti from introducing evidence of Nike's

conduct that Mr. Avenatti did not know about when he extorted Nike.  (Govt.'s Mots. Limine [96]

at 11-19.)  If the Government's motion in limine is granted, then so, too, should this motion to

quash, because the Nike Employees have no testimony to offer about what Mr. Avenatti knew at

the time of his scheme.

All five Nike Employees work at Nike's headquarters in Beaverton, Oregon, in Nike's

Sports Marketing department.  Mr. Slusher is the Executive Vice President of Nike Global Sports

Marketing, overseeing all of Nike's global sports marketing efforts, across all sports.  Mr. Merritt

is the Global Vice President of Sports Marketing & Basketball, with oversight over Nike's

basketball-related sports marketing.  Mr. Harrison oversees Nike's sports marketing for basketball

in North America and the Jordan Brand.  Mr. DeBose is the Director of Elite Youth Basketball,

and Mr. James reports to Mr. DeBose.

To varying degrees, the Nike Employees have knowledge of Nike's sports marketing

relating to amateur basketball, but none of them can offer testimony relevant to Mr. Avenatti's

extortion and fraud scheme.  None have ever communicated with Mr. Avenatti.  This is confirmed

by Mr. Avenatti, who represented to the Court only that he received information about Nike from

two individuals: Gary Franklin and Jeffrey Auerbach.  (*See* Def.'s Resp. Govt.'s Mots. Limine

[109] at 23-24.)  The Nike Employees do not know what Mr. Franklin or Mr. Auerbach told Mr.

3

Avenatti about Nike, nor do they know what Mr. Franklin instructed Mr. Avenatti to do.[3]
Accordingly, if Mr. Avenatti is precluded from admitting evidence of Nike conduct of which he
was unaware at the time of his scheme, this motion to quash should also be granted.

## II.    The Nike Employees Should Not Be Called to Extrinsically Impeach Testimony of Nike Counsel.

In response to the Government's Motions in Limine, Mr. Avenatti first argues that he
should be permitted to introduce evidence of Nike's broader conduct to establish that Nike
witnesses have bias and motive, and that the Confrontation Clause affords him this right.  (*See*
Def.'s Resp. Govt.'s Mots. Limine at 18-22.)  Any impeachment of Nike witnesses should be
accomplished through cross examination of those witnesses, not through extrinsic evidence from
the Nike Employees.

The Government intends to call as witnesses certain Nike lawyers (internal and/or external)
who can offer direct testimony relating to Mr. Avenatti's extortion scheme.  The Government
intends to call them to "testify in large measure to their communications with the defendant, the
majority of which were recorded, and thus are not reasonably subject to dispute."  (*See* Govt.'s
Mots. Limine at 15.)  Mr. Avenatti would like to impeach the Nike counsel on bias and motive,
but no amount of impeachment of Nike counsel will change what Mr. Avenatti was captured saying
on tape.  Impeachment of Nike counsel is therefore of limited utility to Mr. Avenatti's defense,
and the Court has "wide latitude" to impose "reasonable limits" on cross-examination that is of
limited value.  *See generally Jones v. Berry*, 880 F.2d 670, 673 (2d Cir. 1989) ("The court retains
wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about,

---

[3] Even if one of the Nike Employees had communicated with Mr. Franklin or Mr. Auerbach
about what they told Mr. Avenatti, such testimony would be inadmissible hearsay.  For example,
Mr. Slusher could not be called to testify that Mr. Auerbach told Mr. Slusher that Mr. Auerbach
had provided certain information to Mr. Avenatti.  *See* Fed. R. Evid. 802.

among other things, . . . interrogation that is repetitive or only marginally relevant" (internal quotation omitted).)  Here, Mr. Avenatti is seeking to impeach the credibility of Nike counsel *extrinsically*, by calling the Nike Employees to testify.  But given the limited value of impeachment of Nike counsel, it is plausible that Mr. Avenatti has an ulterior motive to call the Nike Employees—namely, to confuse the jury with false narratives relating to Nike's broader conduct—which the Court should not permit.

Mr. Avenatti has no constitutional right to call the Nike Employees for impeachment.  The Supreme Court "has never held that the Confrontation Clause entitles a criminal defendant to introduce extrinsic evidence for impeachment purposes."  *Nevada v. Jackson*, 569 U.S. 505, 512 (2013).  And as this Court has observed, "*Jackson* is consistent with the language of numerous lower court decisions that address the scope of the Confrontation Clause and note that it provides the accused with the opportunity to attack credibility through cross-examination and that it does not provide an unlimited right to offer extrinsic evidence to impeach."  *Smith v. Lee*, No. 12 Civ. 6215 (PGG), 2015 WL 5011422, at *8 n.2 (S.D.N.Y. Aug. 24, 2015).

Finally, it is difficult to imagine how Mr. Avenatti could introduce evidence from the Nike Employees that is relevant to any "bias or motive" of Nike's counsel that is not privileged.  That is because the content of any communications between the Nike Employees and Nike counsel is, of course, privileged.  At most, the Nike Employees could offer testimony about Nike's conduct *without testifying as to whether the Nike counsel knew about such conduct or not.*  Without that link to counsel, the Nike Employees' testimony would have no bearing on counsel's alleged bias and motive.

In sum, to the extent Mr. Avenatti's impeachment regarding Nike counsel's bias and motive has any merit, it can be accomplished through cross examination of the Nike counsel who

take the stand.  Nike counsel's assessment of legal risk (and communications about that risk) would be privileged, but it may not invade privilege for the Government or Mr. Avenatti to elicit testimony that individuals affiliated with Adidas were indicted in September 2017, that Nike received a subpoena in connection with the Government's investigation, that Nike produced documents in response to that subpoena, and that it is in Nike's interest to cooperate with federal law enforcement.  That limited testimony—and not a fishing expedition into the minutiae of amateur basketball—can be elicited from Nike's lawyers.  It should not be obtained from the Nike Employees, sports marketing employees who were not responsible for Nike's response to the Government's subpoena.

### III.   The Nike Employees Offer No Relevant, Admissible Testimony About "Wrongfulness."

In response to the Government's Motions in Limine, Mr. Avenatti also contends that "[e]vidence of Nike's specific misconduct beyond that directed at Coach Franklin is directly relevant to counter the government's claim that Mr. Avenatti acted wrongfully in demanding an internal investigation and to be paid for it."   (Def.'s Resp. Govt.'s Mots. Limine at 22.) Mr. Avenatti claims that his client, Mr. Franklin, had a "plausible claim" against Nike, and that evidence of Nike's broader conduct would "corroborate" that Mr. Franklin had a claim against Nike.  (Def.'s Resp. Govt.'s Mots. Limine at 23-24.)

For context, any "claim" that Mr. Franklin could theoretically have against Nike arises from a contract between Nike and California Supreme, Mr. Franklin's amateur basketball program. It is undisputed that a contract between Nike and California Supreme required Nike to provide apparel, shoes, and $72,000 in compensation to California Supreme for the 2017-2018 season; that Nike satisfied its obligations under the contract (including payment of the compensation); that the contract expired of its own terms; that neither California Supreme nor Mr. Franklin had any right

to renew the contract for the 2018-2019 season; and that there was no contract between Nike and California Supreme for the 2018-2019 season.  The notion that Mr. Avenatti has a "claim" arising from the 2017-2018 contract that entitles Mr. Avenatti to demand more than $1 million for Mr. Franklin and over $20 million *for himself* is fanciful.

For purposes of this motion to quash, however, the more important point is that Nike's actual conduct is irrelevant.  It is an "established principle" in the Second Circuit that "when a threat is made to injure the reputation of another, the truth of the damaging allegations underlying the threat is not a defense to a charge of extortion under § 875(d)."  *United States v. Jackson*, 180 F.3d 55, 66 (2d Cir. 1999), *on reh'g*, 196 F.3d 383 (2d Cir. 1999).  To determine Mr. Avenatti's guilt, the jury cannot consider whether Nike engaged in misconduct with respect to Mr. Franklin, let alone with respect to others.  Mr. Avenatti has therefore failed to meet his burden to establish that the Nike Employees have any relevant testimony to offer.

## IV.   The Nike Employees' Testimony Would Also Be Inadmissible Under Rule 403(b).

Even if the Court were to conclude that Nike's broader conduct bears some relevance to Mr. Avenatti's defense, the Nike Employees' testimony would nevertheless be inadmissible under Rule 403, which permits the Court to exclude relevant evidence whose probative value is substantially outweighed by a danger of "*unfair prejudice*, *confusing the issues*, *misleading the jury*, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed R. Evid. 403 (emphasis added).  Here, such dangers are more than plausible concerns; they are Mr. Avenatti's goal.

In arguing that testimony about Nike's broader conduct is relevant, Mr. Avenatti cites to a case in which the Second Circuit expressly warned of the risk that such tactics may run afoul of Rule 403.  (Def.'s Resp. Govt.'s Mots. Limine at 20.)  In *United States v. James*, a District Court excluded an FBI report showing that the state's cooperating witnesses had made inculpatory

7

statements to the FBI in another criminal case, ruling that the report constituted extrinsic evidence to attack the witness's character for truthfulness under Rule 608(b).   609 F.2d 36, 46 (2d Cir. 1979).   On appeal, the Second Circuit disagreed with the evidentiary ruling as to Rule 608, but qualified, "[t]he judge might have chosen to exclude the reports pursuant to Fed. R. Evid. 403 . . . Admission of the reports might have bogged down the court in a 'mini-trial' of the North Carolina case."  *Id.* at 46 n.11.[4]

A 'mini-trial' is just what will occur if the Court permits Mr. Avenatti to call the Nike Employees to testify.   Mr. Avenatti's defense strategy is to obfuscate:  he will do everything he can to argue to the jury that Nike engaged in broad misconduct, that Nike concealed this conduct from the Government, and that Nike ran to the Government only *after* Mr. Avenatti arrived on the scene.   To the extent possible, Mr. Avenatti would like to present to the jury a narrative that paints Nike as a villain and Mr. Avenatti as a hero.   But this narrative is false:  Nike committed no crime, and it cooperated fully.   Nevertheless, if Mr. Avenatti is permitted to pursue his false narrative through testimony from the Nike Employees, the Government will have no choice but to respond.

For example, in response to the Government's Motions in Limine, Mr. Avenatti focuses on a statement that Mr. DeBose made in an email to Mr. Harrison "that he (DeBose) was 'willing to bet that 38 of 40 teams in the [Elite Youth Basketball League] had to pay a moderate to considerable ransom to families just to play in the EYBL.'"  (Def.'s Resp. Govt.'s Mots. Limine at 4.)  Mr. Avenatti suggests that this excerpt establishes that Nike engaged in criminal conduct that bears on the credibility of Nike lawyers as witnesses, as well as the breadth of Mr. Franklin's

---

[4] Despite the evidentiary ruling, the Circuit did not send the case back to the District Court, finding that the jury possessed "sufficient information to make a discriminating appraisal of the witness' possible motives for testifying falsely in favor of the government."  *James*, 609 F.2d at 47.

"claim." But Mr. Avenatti omits that in the very same email, *in the very same paragraph*, Mr. DeBose specified that Nike was paying *only for*:

> a player's family hotel room, travel and meals while the competition [Adidas] is offering the same family: Travel, meals, hotel room, unlimited product *and anywhere from $10k to $100K*.

(Nike Emails at 7, Ex. P to Decl. of Scott A. Srebnick [30] (emphasis added).) Mr. Avenatti omits that Mr. DeBose also wrote that Adidas had "decided to no longer fight us on our turf but go where we rightfully refuse to go for all of the right reasons." (*Id.*) And he omits that payments for an amateur player's "family hotel room, travel and meals" are not criminal and do not automatically render an amateur player NCAA-ineligible.[5]

If Mr. Avenatti were permitted to call Mr. DeBose or Mr. Harrison to testify about his mistaken view of this email, the Government would inevitably need to respond with its own evidence to correct the facts about Nike's conduct and whether that conduct was even improper. Further, to undermine Mr. Avenatti's false claim that Nike did not cooperate with the Government, the Government would need to establish that Nike produced this email to the Government and that it did so *before* Mr. Avenatti extorted Nike. (Indeed, Nike produced this email to the Government

---

[5] Mr. Avenatti's frequent suggestion that *any* payment to an amateur would constitute a crime is incorrect for at least two reasons. First, in the criminal schemes charged by the Government, individuals affiliated with Adidas made payments to secure commitments to attend Adidas-sponsored NCAA schools, *which rendered them schemes to defraud NCAA institutions out of scholarships*. Thus, a payment to an amateur player is not a crime unless it is part of a scheme to send an ineligible player to an NCAA school. Second, not all payments to amateur players render them ineligible. NCAA regulations provide that "[a]n individual who participates in a sport as a member of a team may receive actual and necessary expenses for competition and practice . . . from an outside sponsor. . . ." NCAA Division I Manual § 12.1.2.1.4.3 (2019) (rule effective Nov. 7, 2013), https://web3.ncaa.org/lsdbi/reports/getReport/90008. "Actual and necessary expenses" include meals, lodging, apparel, equipment, supplies, transportation, medical treatment, facility usage, entry fees, and "[o]ther reasonable expenses." *Id.* § 12.02.2 (rule effective Aug. 1, 2013). Family members may also receive benefits under certain circumstances. *See id.* § 12.1.2.1.4.1.1 (rule adopted Oct. 28, 1999, and revised Apr. 25, 2018); *id.* § 12.1.2.1.4.4.1 (rule effective Aug. 1, 2004); *id.* § 12.1.2.4.8 (rule effective Aug. 1, 2013).

long before Mr. Avenatti's scheme.)  As this one email amply demonstrates, any testimony from the Nike Employees will inevitably result in a mini-trial on Nike's lack of criminal exposure and the fulsomeness of Nike's cooperation.

The risk that evidence regarding Nike's broader conduct would confuse the issues and mislead the jury substantially outweighs the probative value of any testimony the Nike Employees can offer.  For this reason, their testimony should be barred under Rule 403, and the subpoenas for their testimony should be quashed.

## CONCLUSION

For the foregoing reasons, Nike respectfully requests the Court quash the subpoenas.[6]


Dated: December 31, 2019        Respectfully submitted,


       S/ Peter M. Skinner
       Peter M. Skinner
       Andrew Z. Michaelson
       David L. Simons
       BOIES SCHILLER FLEXNER LLP
       55 Hudson Yards
       New York, NY 10001
       (t) +1 212 446 2300
       (f) +1 212 446 2380

       *Attorneys for NIKE, Inc.*

---

[6] Nike respectfully notes that timely resolution of this motion in Nike's favor would obviate the need to disrupt the work schedules of the Nike Employees with travel and preparation for trial.

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 31, 2019, I caused a true and correct copy of the

foregoing Memorandum of Law in Support of Non-Party Nike, Inc.'s Motion to Quash to be

served by electronic means on all counsel of record in the above-captioned action.

S/ Peter M. Skinner
Peter M. Skinner
