UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,       :

vs.                             :      S1 19 Cr. 373 (PGG)

MICHAEL AVENATTI,               :

      Defendant.              :
_____

### DEFENDANT AVENATTI'S REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF FINANCIAL CONDITION

Scott A. Srebnick
SCOTT A. SREBNICK, P.A.
201 South Biscayne Boulevard
Suite 1210
Miami, FL 33131
Telephone: (305) 285-9019
Facsimile:  (305) 377-9937
E-Mail:  Scott@srebnicklaw.com

Jose M. Quinon
JOSE M. QUINON, P.A.
2333 Brickell Avenue, Suite A-1
Miami, FL 33129
Telephone:  (305) 858-5700
Facsimile:  (305) 358-7848
E-Mail:  jquinon@quinonlaw.com

E. Danya Perry
PERRY GUHA LLP
35 East 62nd Street
New York, New York 10065
Telephone: (212) 399-8340
Facsimile: (212) 399-8331
E-mail: dperry@perryguha.com

*Attorneys for Defendant Michael Avenatti*

## I.     PRELIMINARY STATEMENT

In its December 24, 2019, response (Dkt. No. 108) to Mr. Avenatti's motion *in limine* to exclude evidence of his financial condition (Dkt. No. 88), the government announced its intention to introduce documents regarding "significant debt" allegedly owed by Mr. Avenatti at the time of the charged conduct and "brief testimony from two witnesses: (1) a lay witness who assisted the defendant with managing his finances, and (2) a law enforcement witness who may present one or more summary charts, including regarding financial records." (Dkt. No. 108:7).  The grounds urged by the government for the admissibility of such evidence is that it purportedly tends to establish Mr. Avenatti's "motive" and would not be unduly prejudicial to the defense.  The government is wrong as to both prongs.  First, such evidence rarely is admissible to show motive and certainly is not under the circumstances present here.  Second, the proffered evidence fails a Rule 403 balancing test because it would be so prejudicial to Mr. Avenatti as to deprive him of a fair trial; would necessitate a time-consuming mini-trial regarding Mr. Avenatti's finances to avoid leaving the jury with the distorted view of Mr. Avenatti's finances offered by the government (*i.e.,* only debts); and would confuse the issues and mislead the jury.  As a threshold matter, however, the government failed to provide notice under Rule 404(b).  For the reasons set forth below, Mr. Avenatti respectfully urges the Court to exclude the proffered evidence.

## II.     ARGUMENT

### A. The Government Failed to Provide Notice under Rule 404(b)

In a letter dated September 24, 2019 – the agreed-to deadline for providing notice under Rule 404(b) -- the government announced that "we do ***not*** presently intend to offer evidence

under Federal Rule of Evidence 404(b) in our case-in-chief at trial." Rather, the government stated that it intended to "offer evidence – *not covered by Rule 404(b)* – in our case-in-chief regarding [Mr. Avenatti's] motive, including evidence regarding his financial needs and desires at the time of the charged offenses." *See* Letter of Sept. 24, 2019 (attached as Exhibit 1) (emphasis added). The government did not indicate that, by "financial needs and desires," it meant that it would offer evidence that he has allegedly failed to pay judgments and "child and spousal in arrears" via a one-sided presentation of his financial picture. This is classic 404(b) evidence. *United States v. DeMuro*, 677 F.3d 550, 562 (3d Cir. 2012) (analyzing failure to pay child support under Rule 404(b)); *United States v. Landham*, 251 F.3d 1072, 1078 (6th Cir. 2001) (government filed notice of intent to offer failure to pay child support under Rule 404(b)); *United States v. Swink*, Criminal No. 11-167, 2012 WL 2132450, *5 (W.D.Pa. 2012) (noting that "the government has submitted a notice indicating that, pursuant to F.R.E. 404(b), it intends to offer evidence relating to defendant's failure to comply with child support obligations…"). The government's notice that it did *not* intend to present any Rule 404(b) evidence requires exclusion of this prejudicial evidence at this late stage.

### B. Evidence of Indebtedness Does Not Go to Mr. Avenatti's "Motive"

Beyond the government's disclaimer of any intent to offer Rule 404(b) evidence, Mr. Avenatti's "motive" in seeking compensation from Nike simply is not at issue in this case. He *readily admits* that he and Mr. Geragos were requesting that their firms be paid millions of dollars to lead an internal investigation of Nike (an investigation that all parties, including

Nike, agreed must be conducted) as a component of the initial settlement demand.[1]  To be sure and to be perfectly clear: Mr. Avenatti – a well-known plaintiff's lawyer in private practice – was fully expecting payment in connection with a settlement of Coach Franklin's claim.  But *why* he hoped to get paid – whether to pay off debts, travel the world, or save up for a rainy day – logically makes no difference at all. There is no question that Messrs. Avenatti and Geragos requested a significant fee, but the government fails to articulate *why* evidence showing that Mr. Avenatti was carrying certain debt makes it more likely that he intended to extort Nike and defraud Coach Franklin.[2]  Citing a string of unsupportive cases without analysis, the government simply declares that it just *does*. But its simple say-so is patently insufficient, especially in a matter of such grave importance.

The government suggests that Mr. Avenatti is arguing that motive is relevant only when it is an element of the charged offense.  (Dkt. No. 108:10).  This is a straw man.  Moreover, the government suggests, incorrectly, that Mr. Avenatti "does not appear to disagree" that motive is highly relevant to the jury's determination of his intent.  (Dkt. No. 108:9).  The government mischaracterizes Mr. Avenatti's position and is simply wrong.

---

[1] Nike's outside attorney, Scott Wilson, stated early on in the negotiations that Nike had an interest in conducting an internal investigation. The evidence shows that Mr. Avenatti subsequently told Nike's lawyers at Boies Schiller that Mr. Avenatti and Mr. Geragos would agree to conduct the investigation for *the exact same amount* that Boies Schiller would charge Nike if Boies were to do the investigation. Mr. Wilson agreed that the cost of an investigation would run into the millions of dollars.

[2] Indeed, it is clear from the recorded conversations that Mr. Geragos was a full partner with Mr. Avenatti in these discussions and also expected to be paid. Yet, as Mr. Geragos informed the government in a series of proffers, he is a very wealthy man. The financial status of the participants, therefore, has no logical relevance.

Mr. Avenatti is not suggesting that evidence of financial indebtedness is *never* relevant, or *never* more probative than prejudicial, in a financial crimes case. Indeed, as Mr. Avenatti argued in his initial motion, the question of "why" may be relevant in circumstances where the defendant denies that the conduct occurred, that he/she was the perpetrator of the conduct, or that he/she knew about the alleged criminal conduct. *See* Dkt. No. 89:7-8. The government does not address those distinctions; instead, it seemingly argues that financial indebtedness is *always* relevant in a case charging a financial crime. But, as noted above, this does not make sense as a matter of logic, and as set forth below, this is incorrect as a matter of law: the cases cited by the government do not stand for that proposition.

It is telling that the government does not explain *why* motive is relevant in this case; instead, it simply states in cursory, declaratory fashion that it *is* relevant and cites to several cases that supposedly stand for that proposition. *See* Dkt. No. 108:4-5. It is telling, too, that the government is unable to direct the Court to case law that is on point. The handful of cases it cites deals, primarily in the Rule 404(b) context,[3] with evidence that had particular relevance to a disputed fact at issue and that was inextricably intertwined with the facts and relationships in the case at issue. For instance, in *United States v. Hernandez*, 588 F.2d 346, 348 (2d Cir. 1978), the court held that evidence of the defendant's financial indebtedness was relevant to prove that he knew about the cocaine in his suitcase and, importantly, that it was not prejudicial *where the defendant's own statements regarding his indebtedness already were in the record*.

---

[3] It is noteworthy that the case law cited by the government relates primarily to analyses conducted under Rule 404(b): this is so because evidence of indebtedness is typically viewed as prejudicial enough as to constitute a prior bad act.

And in *United States v. Bergstein*, __ F. App'x __, 2019 WL 4410240, at *2 (2d Cir. Sept. 16, 2019) (Summary Order), the defendant's casino debts were held admissible under Rule 404(b) to prove that the defendant misused funds in certain trust accounts that were the basis of the charges in that case. Because the defendant had paid casino debts from those investor trust accounts, evidence of those debts was therefore inextricably intertwined with the charged offenses.

Other cases cited by the government are even less supportive of its position. *United States v. Bold*, 100 F.3d 944, 1996 WL 75833, at *1 (2d Cir. 1996) (Unpublished Disposition), has nothing to do with the issue before this Court. *Bold* dealt with the admission of 404(b) evidence in the form of a drug debt owed by a co-conspirator to the defendant, which the court held went to the relationship between the co-conspirator and the defendant, as well as (in a swift one-sentence aside, with little discussion) to the *co-conspirator's* motive to rob a bank to re-pay his debt to the defendant – not the *defendant's* motive. Likewise, in another unpublished disposition, the Second Circuit in *United States v. Li*, 133 F.3d 908, 1997 WL 796149, at *1 (2d Cir. 1997) upheld the lower court's decision under Rule 404(b) to allow evidence of the defendant's debt to his co-conspirator for the co-conspirator's supply of heroin to the defendant. Although there is no factual predicate in *Li* from which to draw any conclusion about why the financial evidence was relevant to motive (the entirety of the discussion in *Li* is again contained in a single sentence), it seems clear enough that the evidence in that case also likely went, at a minimum, to the relationship between the co-conspirators. Another district court case cited by the government, *United States v. Meszaros*, No. 06 Cr. 290 (JFB), 2008 WL 5113425, at *10 (E.D.N.Y. Nov. 25, 2008), did not directly address the admissibility of evidence at all; rather, in denying a motion under Rules 8 and 14 to sever

counts involving two, intertwined common fraud schemes, the court noted that evidence of expenses from the first fraud scheme would help provide an additional financial motive for the defendant's "alleged decision to concoct and participate in the second scheme." It is likewise unclear why the government cited its final case, *United States v. Shyne*, No. S4 05 CR 1067 (KMK), 2007 WL 1075035, at *34 (S.D.N.Y. Apr. 5, 2007). In that case, the court stated that it was "simply not in a position to make a relevancy determination," as the defendant's "argument consists of a single sentence, which states a conclusion"; thus, the court denied the motion without prejudice until the issue could be further developed.

Given its inability to explain why motive evidence is relevant here, the government instead erects another straw man, arguing that evidence of Mr. Avenatti's debt is necessary to rebut arguments that it believes Mr. Avenatti will make to the jury regarding "his purportedly benign or even altruistic motive." (Dkt. No. 108:11).  This is incorrect. Mr. Avenatti does not contend that he had an altruistic motive for the settlement demand or that he intended to collect the legal fees for charitable purposes, and neither of the defendant's filings quoted by the government suggest as much.

In short, whether or not Mr. Avenatti had any debt bears no relevance to the charges in this case, and any such evidence should be excluded on that basis alone.

        C.      **The Proffered Evidence Fails the Rule 403 Balancing Test**

As set forth above, the question of Mr. Avenatti's indebtedness *vel non* simply is not relevant in this case.  But even assuming marginal relevance – not present here – the proffered evidence fails the Rule 403 balancing test. This is so because it is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury, and would necessitate a mini-trial as to Mr. Avenatti's complex financial picture.

### 1.     Evidence of Mr. Avenatti's Indebtedness is Unfairly Prejudicial

To begin, the Government's proffered evidence would be deeply prejudicial. There is a significant danger that the jury would not be able to put into context and fairly consider the government's deliberately one-sided presentation of Mr. Avenatti's financial condition, focusing solely on his alleged debt in excess of *$15 million* (a number Mr. Avenatti vehemently disputes), *while ignoring all other factors on the other side of his balance sheet,* such as Mr. Avenatti's assets, expected income (i.e. receivables), and earning potential.

Indeed, not just the fact of Mr. Avenatti's alleged debt, but the particular types of debt claimed by the government, are highly prejudicial. The government argues that under *Old Chief v. United States*, 519 U.S. 172, 186 (1997), it need not accept Mr. Avenatti's admission of what is obvious from the evidence: that Mr. Avenatti and Mr. Geragos requested substantial legal fees for them to lead an internal investigation of Nike as part of the initial settlement demand. (Dkt. No. 108:5). But the government's citation to *Old Chief* is curious given the Supreme Court's decision in that case to exclude the prior conviction evidence under Rule 403. *See also United States v. Awadalla,* 436 F.3d 125, 131-33 (2d Cir. 2006). Under Rule 403, probative value is "informed by the availability of alternative means to present similar evidence" and "may be calculated by comparing evidentiary alternatives," although the availability of alternative testimony does not alone provide a basis for excluding evidence. *Id.* at 132 (quoting in part *Old Chief*, 519 U.S. at 184). The term "'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged," or in other words " 'an undue tendency to suggest decision on an improper basis.'" *Old Chief¸* 519 U.S. at 180 (quoting Fed. R. Evid. 403 advisory committee's notes).

The government's evidence would be unfairly prejudicial.  Mr. Avenatti's alleged debts, the government claims, are owed to such people as Mark Geragos, "multiple of the defendant's former clients, both of his former spouses" and resulted from such debts as "child and spousal support in arrears."

The prejudicial effect of each of these purported debts cannot be overstated.  To begin, it would be not only unduly prejudicial but also fundamentally unfair for the government to introduce evidence relating to indebtedness by Mr. Avenatti to Mr. Geragos while at the same time seeking to exclude key facts regarding the relationship of trust between the two and Mr. Avenatti's reliance on Mr. Geragos' involvement in the settlement discussions with Nike.[4]  In its response to the government's supplemental motion *in limine* to exclude argument or evidence regarding Mr. Avenatti's reliance upon Mr. Geragos' involvement in the charged conduct (Dkt. No. 107), Mr. Avenatti made clear that this evidence is a centerpiece of his defense and he is entitled to adduce it at trial. Should the Court agree with the weight of the caselaw to permit such argument and evidence, it may well be that the government will be entitled to inquire and offer evidence regarding the financial history between the two in order to tell the full story of this relationship. Otherwise, it would be wholly inappropriate and prejudicial to allow the government to put in only a small piece of that relationship – the piece that it believes is unfavorable to Mr. Avenatti. Moreover, the financial arrangements between Messrs. Avenatti and Geragos are nuanced, especially when one considers their co-counsel relationship on at least one other matter and their referrals of matters to one another.

---

[4] This issue is the subject of the Government's Supplemental Motion *in Limine* (Dkt. No. 104), to which Mr. Avenatti has responded (Dkt. No. 107).

With respect to debt purportedly owed to "multiple of the defendant's former clients," such evidence would prejudice Mr. Avenatti in this case in particular where the government claims Mr. Avenatti has breached his fiduciary duties to his client, Coach Franklin. Any evidence that the government offers with respect to monies purportedly owed to prior clients would invite the jury to infer that Mr. Avenatti has breached his fiduciary duties before to other clients and therefore he has breached them again in this case. This prejudice would not only deprive him of a fair trial, but it would necessitate a trial-within-a-trial with respect to each of the former clients in question; their claim of money owed; and who (i.e., Mr. Avenatti or his former law firm) owes any monies allegedly due.  Accordingly, such evidence is classically prejudicial and inadmissible under Rule 403.

As noted, the government also has stated its intention to offer "child and spousal support in arrears."  Even if Mr. Avenatti was in arrears, which he denies, this type of evidence is regularly held inadmissible under a Rule 403 analysis in the civil context; *a fortiori* it should be excluded as against a criminal defendant. *See, e.g., Nibbs v. Goulart*, 822 F. Supp. 2d 339, 346 (S.D.N.Y. 2011) ("Because Nibbs's child support obligation $1m, not yet due, does not indicate bias but rather risks significant prejudice, Nibbs's request that evidence of his child support obligations be precluded is GRANTED"); *Watkins v. Genesee*, No. 13-13678, 2016 WL 727855, at *5 (E.D. Mich. Feb. 24, 2016) (litigant's failure to pay child support and income taxes is inadmissible pursuant to Rule 403); *Graddy v. City of Tampa*, No. 8:12-CV-1882-T-24, 2014 WL 1092285, at *3 (M.D. Fla. Mar. 19, 2014) ("The Court finds that the danger of unfair prejudice outweighs any relevancy of Plaintiff's outstanding child support obligations.  The Court agrees with Plaintiff that none of the evidence should be permitted, because it is not relevant to any of the issues in this case."); *Hyppolite v. Collins,* No. 311CV588WIG, 2015 WL 269219, at

\*3 (D. Conn. Jan. 21, 2015) ("Any evidence pertaining to Plaintiff's child support liens or arrears is not relevant to his civil rights case, and would significantly prejudice the jury"); *United States v. Santiago-Mendez,* 599 F. Supp. 2d 95, 121 (D.P.R. 2009) ("Further, the argument as to the fact that the witness did not pay alimony to his wife or children before the jury could have an inflammatory evidence effect on the jury."); *Montgomery v. NLR Co.,* No. 2:05–cv–251, 2007 WL 3171961, at \*2 (D.Vt. Oct. 26, 2007) (excluding evidence of plaintiff's failure to make child support payments on grounds that such evidence was "clearly irrelevant," and introducing it would be "highly prejudicial").

The ruling in *E.E.O.C. v. New Breed Logistics*, No. 10-2696-STA-TMP, 2013 WL 10129245, at \*1 (W.D. Tenn. Apr. 26, 2013) is instructive here. In that case, the defendant argued that "it wishes to introduce Partee's child support obligation in order to impeach Partee's testimony, by showing Partee has a financial motivation for his complaints against New Breed." *Id.* The Court rejected that argument, finding "such evidence minimally probative: any person alleging damages in a civil action has a financial motivation, whether or not they have outstanding child support obligations. Conversely, the Court finds such evidence would be highly and unfairly prejudicial to EEOC's claims; such evidence could influence a juror to decide this case on an improper basis simply because Partee's child support arrearages offended them." *Id.*

In any event, as with the above categories of proffered evidence, there is also a significant factual dispute with respect to this category and whether such support was in arrears and if so, by how much. The prejudice, confusion, and undue waste of time associated with such a circus would be significant.

### 2. Evidence of Mr. Avenatti's Indebtedness Would Necessitate a Mini-Trial

The risk of undue prejudice is especially acute where, as here, the evidence the

government seeks to admit is one-sided and contested. The proffered evidence is skewed and therefore confusing: the government's proffer elides the distinction between having significant debt and having more debt than assets. Many people, even wealthy people, have large amounts of debt. But that does not mean that they have insufficient assets, cash flow, or projected income in relation to that debt.

Were the government permitted to present evidence showing debts that are disputed, the burden effectively would shift to Mr. Avenatti to respond with evidence and testimony showing that he did *not* owe the debts or the amounts claimed (and certainly did not believe that he did).[5] Further, in order to rebut the government's claim that Mr. Avenatti was "desperate" in March 2019, he would be forced to retain an expert witness to conduct and present an analysis of the *other* side of his financial balance sheet and his substantial earning capacity.[6] This side-show relating to Mr. Avenatti's financial condition would be time-consuming, confuse the issues, and mislead the jury.

### 3. At a Minimum, and in the Alternative, the Court Should Hold a Hearing Under Rule 104

For the foregoing reasons, the government's proffered evidence regarding Mr. Avenatti's purported indebtedness should be excluded. Alternatively, and at a minimum, given

---

[5] In the cases cited by the government, it is not clear that there existed any factual disputes relating to the debts, and in at least two of those cases, the evidence appeared to be presented largely in testimonial form through co-conspirators. *See Bold*, 1996 WL75833; *Li*, 1997 WL 796149.

[6] Given the government's disavowal of any intent to offer Rule 404(b) evidence and the uncertainty regarding the evidence that Mr. Avenatti would be forced to rebut and present through an expert at this late date, if the government is permitted to present its proffered evidence, then Mr. Avenatti would reluctantly seek a continuance of the January 21 trial date because he is not currently prepared for a mini-trial related to his financial condition.

the patent danger inherent in presenting this evidence, Mr. Avenatti requests a pretrial hearing under Rule 104. At such a hearing, the government should be required to elucidate the manner in which it will seek to present the evidence. Thus far it has stated only that it will offer it not through a financial expert well-versed in financial condition analysis, but rather through lay witnesses and a law enforcement witness to present "summary charts" – all of which raise substantial additional issues under Rules 403, 602, 701-02, and 1006. For instance, what foundational knowledge do the witnesses have regarding the status of the debts and whether they are in dispute? What specific knowledge do the witnesses have, personal or otherwise, relating to each element of Mr. Avenatti's full financial condition, such as his assets, projected income, and opportunities for business; and how have they factored any of that into their "analysis"? To the extent any of the debts upon which the government intends to rely are disputed debts, do the witnesses intend to provide their opinions regarding whether the debt is in fact owed? To the extent any of the debts upon which the government intends to rely are debts owed by Mr. Avenatti's law firm rather than by Mr. Avenatti, do the witnesses intend to provide their opinions regarding whether the debt is in fact owed by Mr. Avenatti? Are any of the debts required or able to be set-off by any claims Mr. Avenatti has? If so, by how much? Have the witnesses reviewed Mr. Avenatti's assets and earning capacity as of March 2019, or have they merely focused on his alleged debts to paint a misleading picture of Mr. Avenatti's financial condition in order to support a motive theory? Countless other questions remain and the government's response does not answer any of them, nor does it provide any additional detail about these witnesses or the use of "summary charts."

### III. CONCLUSION

The government – in its most recent motions -- has been seeking to place before the jury extraneous and prejudicial evidence as is proffered here, while at the same time seeking to exclude evidence critical to Mr. Avenatti's defense. For the foregoing reasons, evidence related to Mr. Avenatti's alleged indebtedness should be excluded at trial. In the alternative, Mr. Avenatti requests a Rule 104 hearing.

Dated:    January 3, 2020

Respectfully submitted,

By:   /s/Scott A. Srebnick
      Scott A. Srebnick, P.A.
      201 South Biscayne Boulevard
      Suite 1210
      Miami, FL 33131
      Telephone: (305) 285-9019
      Facsimile: (305) 377-9937
      E-Mail: Scott@srebnicklaw.com

By:   /s/Jose M. Quinon
      Jose M. Quinon, P.A.
      2333 Brickell Avenue, Suite A-1
      Miami, FL 33129
      Telephone: (305) 858-5700
      Facsimile: (305) 358-7848
      E-Mail: jquinon@quinonlaw.com

By:   /s/ E. Danya Perry
      E. Danya Perry
      PERRY GUHA LLP
      35 East 62nd Street
      New York, New York 10065
      Telephone: (212) 399-8340
      Facsimile: (212) 399-8331
      E-mail: dperry@perryguha.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2020, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

/s/Scott A. Srebnick
Scott A. Srebnick

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 24, 2019

**BY EMAIL**

Scott A. Srebnick, Esq.
Scott@srebnicklaw.com

Jose M. Quiñon, Esq.
jquinon@quinonlaw.com

    Re:    *United States v. Michael Avenatti*,
            19 Cr. 373 (PGG)

Dear Counsel:

    Please be advised that, based on our investigation to date, we do not presently intend to offer evidence under Federal Rule of Evidence 404(b) in our case-in-chief at trial.

    As previously discussed, we do presently intend to offer evidence—not covered by Rule 404(b)—in our case-in-chief regarding your client's motive, including evidence regarding his financial needs and desires at the time of the charged offenses. However, as also previously discussed, we do not presently intend to offer evidence in our case-in-chief that one reason why your client needed and/or wanted money was because he had committed the offenses with which he is charged in other cases, nor do we otherwise presently intend to offer evidence of his commission of such offenses in our case-in-chief.

    If you would like to confer further regarding the foregoing, please let us know.

                  Very truly yours,

                  GEOFFREY S. BERMAN
                  United States Attorney

By: _____
        Robert B. Sobelman
        Matthew Podolsky
        Daniel C. Richenthal
        Assistant United States Attorneys
        (212) 637-2616/1947/2109