UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------- x
                                     :

UNITED STATES OF AMERICA       :

                                    :

         - *v.* -           :         S1 19 Cr. 373 (PGG)

                                    :

MICHAEL AVENATTI,           :

                                    :

            Defendant.       :

                                    :

----------------------------------------------------- x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE GOVERNMENT'S MOTIONS *IN LIMINE*

                                                 GEOFFREY S. BERMAN
                                                 United States Attorney
                                                 Southern District of New York

Matthew D. Podolsky
Daniel C. Richenthal
Robert B. Sobelman
Assistant United States Attorneys

  - Of Counsel -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................ 3

I.    The Government's Motion *In Limine* Concerning the Defendant's Alleged Advice-of-Counsel Defense Should Be Granted in its Entirety ............................................................ 3

    A.    The Defendant Should Be Ordered Promptly to Provide Written Notice and Discovery Concerning Any Alleged Advice-of-Counsel Defense ................................................. 3

    B.    The Defendant Should Be Precluded From Offering Argument—Including in His Opening Statement, If Any—Concerning an Alleged Advice-of-Counsel Defense Unless and Until He Establishes an Admissible Factual Basis for the Elements of the Defense ...................................................................................................................... 8

    C.    The Defendant Should Be Precluded From Otherwise Offering Argument—Including in His Opening Statement, If Any—Or Evidence Suggesting He Is Not Guilty Because Attorney-1 Purportedly "Approved" of the Lawfulness of the Defendant's Conduct 8

II.    Evidence or Argument Concerning the Defendant's Allegation that the Charges Against Him Are Politically Motivated, That He Was Unfairly Singled Out, and/or That He Was Charged in "Haste" Should Be Precluded ........................................................................ 13

III.    Evidence or Argument Concerning Whether the Defendant's Conduct Can or Should Be Dealt With Solely as an Administrative or Civil Matter Should Be Precluded ................. 16

IV.    Evidence or Argument Concerning Whether the Charges in This Case Are Unconstitutionally Vague Should Be Precluded ............................................................... 17

V.    Evidence or Argument Concerning the Government's Charging Decisions with Respect to Others Should Be Precluded ............................................................................................ 17

VI.    Evidence or Argument Concerning the Defendant's Prior Commission of Good Acts and/or Failure to Commit Other Bad Acts Should Be Precluded .................................................. 20

VII.    Evidence or Argument Concerning Whether Other Threatened or Actual Civil Lawsuits Have Achieved Positive Things for Clients or Society Should Be Precluded .................. 21

VIII.    Evidence or Argument Concerning Whether Nike Engaged in Misconduct, of Which the Defendant Was Unaware at the Time of the Defendant's Charged Actions, Should Be Precluded ........................................................................................................................ 22

IX.    Evidence or Argument Concerning Whether Client-1's Potential Legal Claims Had Value, and/or the Cost of an Internal Investigation, Without a Connection to the Defendant's Contemporaneous Knowledge, Should Be Precluded .................................................... 25

X.    Proffered Out-of-Court Statements Made by Attorney-1 to the Government After the Defendant Was Arrested Are Inadmissible ................................................................... 25

XI.   The Defendant Should Be Precluded from Offering Expert Testimony Regarding What Is "Reasonable" .................................................................................................................. 26

CONCLUSION.................................................................................................................. 26

# **TABLE OF AUTHORITIES**

## CASES

*Bourjaily v. United States*, 483 U.S. 171 (1987) ........................................................................ 3

*Howard v. SEC*, 376 F.3d 1136 (D.C. Cir. 2004) ..................................................................... 12

*SEC. v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013) ...................................................... 8, 10, 12

*Tagliaferri v. United States*, Nos. 17 Civ. 3026 (RA) (GWG), 13 Cr. 115 (RA), 2018 WL 3752371 (S.D.N.Y. Aug. 8. 2018) ................................................................................. 11

*United States v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978) .......................................................... 22

*United States v. Berg*, 710 F. Supp. 438 (E.D.N.Y. 1989) ...................................................... 7

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) .......................................................... 10

*United States v. Blagojevich*, 794 F.3d 729 (7th Cir. 2015) ...................................................... 10

*United States v. Borello*, 766 F.2d 46 (2d Cir. 1985) .................................................................. 23

*United States v. Brooks*, No. 08 Cr. 35 (PKL), 2008 WL 2332371 (S.D.N.Y. June 4, 2008) ........ 3

*United States v. Colasuonno*, 697 F.3d 164 (2d Cir. 2012) .................................................. 3, 13

*United States v. Crowder*, 325 F. Supp. 3d 131 (D.D.C. 2018) ................................................. 3, 10

*United States v. Ebbers*, 458 F.3d 110 (2d Cir. 2006) ................................................................ 20

*United States v. Fazio*, No. 11 Cr. 873 (KBF), 2012 WL 1203943 (S.D.N.Y. Apr. 11, 2012) .... 22

*United States v. Harvey*, 991 F.2d 981 (2d Cir. 1993) ................................................................ 23

*United States v. Hatfield*, No. 06 Cr. 550 (JS), 2010 WL 183522 (E.D.N.Y. Jan. 8, 2010) .......... 3

*United States v. Impastato*, 543 F. Supp. 2d 569 (E.D. La. Mar. 25, 2008) .................................. 4

*United States v. Jackson*, 180 F.3d 55, 66  (2d Cir. 1999) ........................................................ 22

*United States v. Jackson*, 196 F.3d 383 (2d Cir. 1999) ............................................................. 22

*United States v. Jamil*, 707 F.2d 638 (2d Cir. 1983) ................................................................. 24

*United States v. Kaplan*, 490 F.3d 110 (2d Cir. 2007) ............................................................... 6

*United States v. Knox*, 687 F. App'x 51 (2d Cir. 2017)...................................................... 15

*United States v. Korogodsky*, 4 F. Supp. 2d 262 (S.D.N.Y. 1998) ................................. 24

*United States v. Meyerson*, 18 F.3d 153 (2d Cir. 1994)....................................................... 20

*United States v. Muse*, No. 06 Cr. 600 (DLC), 2007 WL 1989313 (S.D.N.Y. July 3, 2007)....... 10

*United States v. Oldbear*, 568 F.3d 814 (10th Cir. 2009) ................................................ 7

*United States v. Paul*, 110 F.3d 869 (2d Cir. 1997).................................................... 3, 5

*United States v. Regan*, 103 F.3d 1072 (2d Cir. 1997). ................................................ 13

*United States v. Sabir*, No. S4 05 Cr. 673 (LAP), 2007 WL 1373184 (S.D.N.Y. May 10, 2007) . 3

*United States v. Saldarriaga*, 204 F.3d 50 (2d Cir. 2000) ............................................ 16

*United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441 (S.D.N.Y. Jan. 18, 2018)...... 3, 5

*United States v. Scarpa*, 897 F.2d 63 (2d Cir. 1990). .................................................. 21

*United States v. Schatzle*, 901 F.2d 252 (2d Cir. 1990) ............................................... 26

*United States v. Scully*, 877 F.3d 464 (2d Cir. 2017)..................................................... 11

*United States v. Scully*, No. 14 Cr. 208 (ADS), 2015 WL 5826493 (E.D.N.Y. Oct. 6, 2015) ....... 3

*United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506 (S.D.N.Y. Jan. 26, 2004) .. 14

*United States v. Villegas*, 899 F.2d 1324 (2d Cir. 1990) ............................................... 5

## OTHER AUTHORITIES

Order, *United States v. Percoco*, No. 16 Cr. 776 (VEC) (Nov. 2, 2017) (Dkt. No. 351).............. 3

Sand *et al.*, *Modern Federal Jury Instructions*, Instr. 4-4 ......................................... 16

## RULES

Fed. R. Evid. 103(d)............................................................................... 5, 8

Fed. R. Evid. 401 ................................................................................. 13

Fed. R. Evid. 402 ................................................................................. 13

Fed. R. Evid. 403 ....................................................................................................................... 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x
                                            :

UNITED STATES OF AMERICA           :
                                            :

          - v. -                :            S1 19 Cr. 373 (PGG)
                                            :

MICHAEL AVENATTI,              :
                                            :

              Defendant.       :
                                            :

------------------------------------------------------ x

## <u>PRELIMINARY STATEMENT</u>

The Government respectfully submits this reply memorandum of law (1) in further support of the Government's supplemental motion *in limine* regarding the defendant's proffered advice-of-counsel defense (Dkt. No. 104), and in response to the defendant's opposition to that motion ("Def. AC Opp'n") (Dkt. No. 107); and (2) in further support of the Government's initial motions *in limine* ("Gov't MIL") (Dkt. No. 96), and in response to the defendant's opposition to those motions ("Def. MIL Opp'n") (Dkt. No. 109).

Over the course of a short period in March 2019, the defendant, having obtained from a client ("Client-1") certain confidential information that was potentially embarrassing and harmful to a publicly-traded company, NIKE, Inc. ("Nike"), threatened to hold a press conference to publicize the information that he had been given by his client at a commercially sensitive time for Nike.  (S1 Indictment ¶¶ 1, 9, 11(a)-(b), 11(f), 13(c), 13(f), 14(a), 14(e)-(f), 15.)  The defendant, without informing his client, let alone with his client's consent, then told representatives of Nike that he would both decline to hold that press conference and would cause his client to settle potential contract claims that his client might have only if Nike quickly agreed either to pay him— the defendant—and a colleague ("Attorney-1") a minimum of $15 million ($12 million up front)

as purported "fees" for an "internal investigation" or to make a one-time payment to him—the defendant—of $22.5 million.   (S1 Indictment ¶¶ 1, 10, 11(c)-(e), 13(a)-(c), 14(a)-(d), 14(g).) When Nike representatives asked why Nike could not simply resolve any legal claims by paying Client-1 in settlement of Client-1's potential claims, the defendant responded that he did not think it made sense for Nike to pay Client-1 an "exorbitant sum of money . . . in light of his role in this." (S1 Indictment ¶ 14(b).)   These threats and statements were audio- and video-recorded.   (S1 Indictment ¶¶ 1, 13, 14.)

The defendant does not meaningfully engage with these allegations in his oppositions. Instead, he spends the bulk of the "overview" section of his principal opposition focusing on something else—alleged misconduct of Nike and actions of others of which he was not contemporaneously aware.  (Def. MIL Opp'n 1-11.)  The defendant asserts that such a lengthy recitation of alleged facts is necessary to provide a "complete picture."  (*Id.* at 1.)  It is not.  This is an individual criminal case, not a civil lawsuit against a company.  Nor is it proper to present to the jury the defendant's hyperbolic and baseless allegations of government misconduct in bringing this individual criminal case.  Many of the defendant's arguments may be dismissed on either or both of these grounds.  The remainder fail on the merits.

## <u>ARGUMENT</u>

I.   **The Government's Motion *In Limine* Concerning the Defendant's Alleged Advice-of-Counsel Defense Should Be Granted in its Entirety**

   ### A. The Defendant Should Be Ordered Promptly to Provide Written Notice and Discovery Concerning Any Alleged Advice-of-Counsel Defense

In his opposition to the Government's supplemental motion *in limine*, the defendant

either entirely ignores or concedes that:

- Multiple courts, both in this district and elsewhere, have ordered a defendant to provide written notice and discovery concerning an advice-of-counsel defense. *See, e.g.*, *United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441, at *8 (S.D.N.Y. Jan. 18, 2018); *United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018); *United States v. Hatfield*, No. 06 Cr. 550 (JS), 2010 WL 183522, at *13 (E.D.N.Y. Jan. 8, 2010); *see also* Order, *United States v. Percoco*, No. 16 Cr. 776 (VEC) (Nov. 2, 2017) (Dkt. No. 351).

- Multiple courts, both in this district and elsewhere, have ordered preliminary hearings to explore the validity and contours of a proffered defense, including an advice-of-counsel defense, before trial. *See, e.g.*, *United States v. Scully*, No. 14 Cr. 208 (ADS), 2015 WL 5826493, at *1 (E.D.N.Y. Oct. 6, 2015); *see generally United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997).

- The defendant bears the burden of demonstrating the admissibility of evidence that he intends to offer. *See, e.g.*, *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Brooks*, No. 08 Cr. 35 (PKL), 2008 WL 2332371, at *1 (S.D.N.Y. June 4, 2008); *United States v. Sabir*, No. S4 05 Cr. 673 (LAP), 2007 WL 1373184, at *6 (S.D.N.Y. May 10, 2007).

- Where a defendant fails to establish an admissible basis for each of the several strict requirements for an advice-of-counsel defense, he neither is entitled to a jury instruction on the defense nor may he argue or suggest that he has such a defense. *See, e.g.*, *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012); *United States v. Quinones*, 417 F. App'x 65, 67 (2d Cir. 2011); *United States v. Atias*, No. 14 Cr. 403 (DRH), 2017 WL 563978, at *3 (E.D.N.Y. Feb. 10, 2017).

- Attorney-1 was not retained or serving as counsel to the defendant in connection with this matter—and there is, in any event, no evidence that the defendant, before engaging in the charged conduct, sought the advice of Attorney-1 regarding the lawfulness of the charged conduct, received such advice, and followed it.

- It is, at the very least, unclear whether advice-of-counsel is a legal defense to an extortion charge. *See United States v. Impastato*, 543 F. Supp. 2d 569, 576-79 (E.D. La. Mar. 25, 2008).

Notwithstanding the foregoing, and that trial is scheduled to commence in approximately two weeks, the defendant asks this Court to deny the Government's request for notice (and discovery, if any), or a preliminary hearing, concerning the defendant's proffered advice-of-counsel defense on two separate grounds. Neither has merit.

*First*, the defendant asserts that notice is not required. (Def. AC Opp'n 6-7.[1]) That is a red herring. As the defendant acknowledges (*id.* at 6), the Court has authority to order notice, and courts in similar circumstances have done so. And although the defendant entirely ignores it, it is indisputable that this Court also has authority to order a preliminary hearing, and courts in similar circumstances have done so. The question is whether the Court should order notice and/or a hearing here—and for the reasons described at length in the Government's opening brief (Dkt. No. 104), and discussed below, the answer to that question is yes.

*Second*, the defendant asserts that notice is "unnecessary in light of the disclosures already made." (Def. AC Opp'n 8.) That is demonstrably false. Indeed, the defendant's position with respect to advice-of-counsel has markedly shifted more than once, and still appears to be shifting. As explained in the Government's opening brief, the defendant initially advised the Government that he did not intend to advance an advice-of-counsel defense, and in particular, did not intend to advance such a defense based on any interactions between Attorney-1 and the defendant. Then, in his Requests to Charge (Dkt. No. 97), the defendant asked for an advice-of-counsel instruction (albeit in flawed form), or in the alternative, a "Good Faith Engagement of Counsel" instruction

---

[1]    The defendant's opposition does not contain page numbers. The numbers cited herein are the numbers at the top of the page imprinted by the ECF system, i.e., page 6 is the sixth page of the defendant's filing (which is the fifth page after the cover).

(which appears to be an invention of the defendant).  Now, the defendant seems to have abandoned any pretense of being able to establish an advice-of-counsel defense.  He simply states, without elaboration, "should the Court determine that the evidence offered at trial is insufficient to merit an 'advice of counsel' instruction of the formalistic type discussed in *Scully*, the Court will not give that instruction."  (Def. AC Opp'n 9.)  That is a tautology.  The defendant should not be permitted to avoid notice and/or a preliminary hearing by advocating, without analysis, for a "wait and see" approach.

While the defendant is entitled to shift strategy, and may in certain circumstances be entitled to do so without advising the Government or the Court, he is not entitled to offer evidence or argument in support of a legally invalid defense or to obscure his intentions in a manner that prevents the Court from exercising its responsibility to "conduct [the] jury trial so that inadmissible evidence is not suggested to the jury by any means," Fed. R. Evid. 103(d).  On the contrary, courts have authority to order pretrial notice or preliminary hearings precisely to effectuate this important responsibility.  *See, e.g.*, *Scali*, 2018 WL 461441, at *8 (ordering notice); *see also Paul*, 110 F.3d at 871 ("[I]t is appropriate for a court to hold a pretrial evidentiary hearing to determine whether a defense fails as a matter of law."); *United States v. Villegas*, 899 F.2d 1324, 1343 (2d Cir. 1990) ("no proper interest of the defendant would be served by permitting his legally insufficient evidence to be aired at trial, and interests of judicial economy suggest that the jury should not be burdened with the matter").

Indeed, it appears from his opposition that, absent a clear ruling before trial from this Court, the defendant intends to do what he is not permitted to do: (1) offer evidence and argument, including in his opening statement, concerning Attorney-1, including Attorney-1's background, without any admissible evidentiary connection to the defendant's contemporaneous knowledge,

much less to a communication in which Attorney-1 provided his view to the defendant of the lawfulness of the defendant's conduct before the defendant engaged in that conduct (Def. AC Opp'n 2, 8); (2) argue that Attorney-1 must have been subjectively "comfortable" with the defendant's conduct, devoid of any admissible evidentiary link between such alleged comfort and the defendant's alleged contemporaneous belief that he was not acting wrongfully (*id.* at 8); and (3) ask the jury to acquit the defendant based on the proposition that because Attorney-1 either contemporaneously had, or has since expressed to the Government, a "belief" that the portion of the defendant's conduct with which Attorney-1 was involved "was lawful," the defendant's own "state of mind" must have been the same for both that conduct and the portion with which Attorney-1 was not involved (*id.* at 5, 8).

The defendant offers no support for the proposition that he may defend himself at trial merely by arguing to the jury that another person—Attorney-1, who is not on trial—allegedly subjectively did not believe that the scheme, at least in part, was wrongful. That is particularly true given that (a) Attorney-1 never met or spoke with Client-1, much less was provided with a full understanding of Client-1's goals and rendered advice to the defendant about the lawful way to achieve them, and (b) Attorney-1 had knowledge of the defendant's communications with Client-1 only to the extent that the defendant chose to describe them (which he did not).[2]  *See United States v. Kaplan*, 490 F.3d 110, 122 (2d Cir. 2007) (holding district court erred in admitting

---

[2]      Attorney-1 also did not go to the planned third meeting between the defendant and Nike representatives, which is inconsistent with the defendant's theory that Attorney-1 was fully "comfortable." Indeed, as is reflected in documents provided in discovery, Attorney-1 has advised the Government, in sum, that he did not intend to attend that meeting because he was not comfortable with the defendant's conduct. *See infra* Part V. The defendant also omits that, again as is reflected in documents provided in discovery, Attorney-1 has advised the Government that the defendant made statements concerning Client-1 that independent evidence has demonstrated were false. *See id.* (describing Attorney-1's expressed view of the defendant's conduct, which was not that it was proper).

evidence of one person's knowledge to show defendant's knowledge, expressing doubt that evidence was relevant, and explaining that, in any event, it should have been precluded under Federal Rule of Evidence 403 because it "required [the jury] to draw a series of inferences, unsupported by other evidence," yet was offered on "the ultimate issue in the case"); *see also, e.g.*, *United States v. Oldbear*, 568 F.3d 814, 821 (10th Cir. 2009) (affirming preclusion of evidence in embezzlement case as to how persons other than defendant used funds because "only [the defendant's] actions and state of mind were material to her guilt"); *United States v. Berg*, 710 F. Supp. 438, 445 (E.D.N.Y. 1989) (testimony concerning the "custom of other arms dealers in complying with arms export laws" precluded on the ground that such evidence was irrelevant to the state of mind of defendants), *aff'd in part, rev'd in part on other grounds sub nom. United States* v. *Schwartz*, 924 F.2d 410 (2d Cir. 1991).

Nor does the defendant seriously argue that his proposed advice-of-counsel or "Good Faith Engagement of Counsel" instructions are proper. Nonetheless, he suggests that he will use the foregoing and other alleged facts to argue that he has an advice-of-counsel defense. Indeed, tellingly, he does not even commit not to use terms that he appears to agree he cannot properly use without first establishing an admissible basis for the defense. (*See* Def. AC Opp'n 9.) In short, the defendant appears to intend fully to present evidence and/or argument that is highly "likely to mislead the jury," *Atias*, 2017 WL 563978, at *3, into thinking that the defendant has a defense that the law says he does not have. He appears to intend, in sum, to seek to give himself "the

essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense." *SEC v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013).[3]

At a minimum, so that the Court may exercise its responsibility to ensure that "inadmissible evidence is not suggested to the jury by any means," Fed. R. Evid. 103(d), the defendant should have to explain fully, either in writing or at preliminary hearing, what he intends, including what he intends to say on this subject in this opening statement, before such evidence, or argument grounded in such evidence, is offered in the jury's presence.

**B. The Defendant Should Be Precluded From Offering Argument—Including in His Opening Statement, If Any—Concerning an Alleged Advice-of-Counsel Defense Unless and Until He Establishes an Admissible Factual Basis for the Elements of the Defense**

As noted above, the defendant appears to have abandoned any pretense of being able to establish an advice-of-counsel defense. Accordingly, any argument in support of such a defense—including in the defendant's opening statement—should be precluded. *See, e.g.*, *Quinones*, 417 F. App'x at 67.

**C. The Defendant Should Be Precluded From Otherwise Offering Argument— Including in His Opening Statement, If Any—or Evidence Suggesting He Is Not Guilty Because Attorney-1 Purportedly "Approved" of the Lawfulness of the Defendant's Conduct**

The defendant contends that what he seeks is "uncontroversial." (Def. AC Opp'n 8.) If, as the defendant suggests at the end of his opposition, he merely seeks to argue that the Government has failed to discharge its burden based on "evidence that the governments intends to use in its case-in-chief" (*id.* at 10), such as the recordings of meetings in which the defendant, in

---

[3]     The defendant does not acknowledge this case or attempt to explain why the concern it expressed is not applicable here. It plainly is. Indeed, what the defendant appears to intend here is far more problematic that what the defendant in *Tourre* intended, although that too was precluded. *Cf. Tourre*, 950 F. Supp. 2d at 684 (The defendant "argues that the presence of lawyers is relevant to the overall context of the transaction . . . .").

the presence of Attorney-1, made threats, the Government agrees that that is uncontroversial.  But as explained in the Government's opening brief, and above, that is far from what it appears the defendant intends.  The defendant appears to intend to advance a non-defense "defense"—that is, having failed to meet the settled requirements for the advice-of-counsel defense, to argue that he must have acted in good faith because another lawyer, who was not aware of all pertinent facts, much less asked to opine on the lawfulness of conduct, and who would have profited from the scheme, purportedly "approved" of or did not timely object to certain of the defendant's conduct (Def. Requests to Charge, No. 43(C)).  That "defense" has no basis in fact or law, would be highly confusing to the jury, and should be precluded.

The defendant asserts that the evidence is expected to show that Attorney-1 was "presen[t]" and "participat[ed]" in what the defendant misleadingly terms "negotiations."  (Def. AC Opp'n 8.)  But this does not mean that the defendant may introduce otherwise irrelevant, misleading, or confusing evidence concerning, for example, Attorney-1's background or reputation (*id.* at 2, 8), or that Attorney-1 "represented [the defendant] in several legal matters, including one at the time of the events charged in the Indictment" (*id.* at 2).  A lay jury cannot reasonably be expected to view such evidence as anything other than a suggestion—which is false—that the defendant retained Attorney-1 to represent him or was otherwise relying on Attorney's legal advice in connection with this matter too or that the jury should defer to the insinuated (but not actual)

approval of an attorney rather than itself apply the law as instructed by this Court to the facts of this case. *See Tourre*, 950 F. Supp. 2d at 684.[4]

Nor does Attorney-1's presence at or limited participation in certain meetings render inapplicable the foundational principle that evidence that bears no rational connection to a defendant's contemporaneous knowledge or intent cannot be offered to prove or disprove that knowledge or intent. The defendant asserts, without apparent limitation, that "whether or not [the defendant] testifies, he is entitled to adduce evidence and offer argument that [Attorney-1]'s statements and conduct were plainly indicative of [Attorney-1's] belief that their joint conduct was lawful." (Def. AC Opp'n 8.) The Government is unaware of any authority for this broad proposition, and the defendant offers none. To the extent that the defendant intends to suggest to the jury, even without saying so directly, that it must effectively find that Attorney-1 was guilty to find the defendant guilty, that is not the law. *See, e.g., United States v. Muse*, No. 06 Cr. 600 (DLC), 2007 WL 1989313, at *22 (S.D.N.Y. July 3, 2007), *aff'd*, 369 F. App'x 242 (2d Cir. 2010).

---

[4]     The defendant notably omits what the matters in which Attorney-1 represented him were about. To the Government's knowledge, none involved anything like this case. Nor has the defendant agreed to waive privilege with respect to these matters, such that the Government could probe their relevance and the Court could make an informed ruling on their admissibility. *See, e.g., United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes"); *Crowder*, 325 F. Supp. 3d at 138 ("even otherwise-privileged communications that defendants do *not* intend to use at trial, but that are relevant to proving or undermining the advice-of-counsel defense, are subject to disclosure in their entirety" (emphasis in original)) The defendant also omits that, at the pertinent time, he had retained or had access to other counsel, including one from whom the Government understands he sought advice concerning ethical or professional responsibility matters on other occasions—yet the defendant does not suggest that he sought advice regarding the conduct in this case from this or any other counsel who, unlike Attorney-1, would not profit from the defendant's scheme. *Cf. United States v. Blagojevich*, 794 F.3d 729, 742 (7th Cir. 2015) ("Having asserted that he consulted with counsel [without making out an advice-of-counsel defense], Blagojevich opened the door to evidence that he had other lawyers too yet was keeping mum about what they told him.").

The cases that the defendant cites, without analysis, are not to the contrary. In the passage in *Atias* cited by the defendant (Def. AC Opp'n 10), the district court simply ruled that out-of-court statements offered for the listener's state of mind were not inadmissible hearsay. 2017 WL 563978, at *4-5. And then, in a passage omitted by the defendant, the court held that, given concerns about what these statements might mean or how they might be understood by the jury, "no mention of any such items shall be made in the presence of the jury unless the Court decides, following argument outside their presence, that the proffer passes muster under Rule 403." *Id.* at *5. That is the opposite of what the defendant here seeks. Similarly, the passage in *United States v. Scully*, 877 F.3d 464 (2d Cir. 2017), cited by the defendant (Def. AC Opp'n 10) merely explained that an out-of-court statement offered for the listener's state of mind is not hearsay. *Scully*, 877 F.3d at 474. That is not the basis for the Government's concern here. And the defendant omits that, in the same decision, the Second Circuit described the requirements for an advice-of-counsel defense in a manner that bears no resemblance to the defendant's proposed "Good Faith Engagement of Counsel" instruction. *See id.* at 478.

The defendant correctly notes (Def. AC Opp'n 10) that, in *Tagliaferri v. United States*, Nos. 17 Civ. 3026 (RA) (GWG), 13 Cr. 115 (RA), 2018 WL 3752371, at *3 (S.D.N.Y. Aug. 8. 2018), a Report and Recommendation concerning a post-trial Section 2555 claim, the court noted that the district court had permitted the defendant at trial to elicit that "attorneys were involved in the transactions." But the Report and Recommendation does not analyze whether this was proper, and subsequently provides the settled requirements for an advice-of-counsel defense, which, again, bears no resemblance to defendant's proposed "Good Faith Engagement of Counsel" instruction. *See id.* at *19. In any event, there is no question here that, as discussed above, the jury will know that Attorney-1 was "involved" in certain meetings.

Finally, the defendant cites *Howard v. SEC*, 376 F.3d 1136, 1147 (D.C. Cir. 2004), in which the court reviewed a Securities and Exchange Commission order sanctioning an individual for violating securities laws. (Def. AC Opp'n 10.) The defendant suggests that this case supports his view that a defendant need not establish an admissible basis for the requirements of the advice-of-counsel defense to advance such a defense, including by arguing to the jury that he relied on counsel. (*See id.*) That is wrong for multiple reasons. As an initial matter, it is not what *Howard* says. The civil defendant in *Howard* was contesting sanctions premised on a recklessness theory, in which an administrative law judge had disregarded all evidence of the involvement of lawyers on the ground that the defendant did not have a true advice-of-counsel defense. *Howard*, 376 F.3d at 1146-47. The court reversed, explaining that the manner in which lawyers were involved was "a relevant consideration" given the applicable legal standard. *Id.* at 1147.

Here, by contrast, the Government is not seeking to preclude the defendant from offering evidence that Attorney-1 was present or spoke at certain meetings, facts that are not in dispute. The Government is seeking to preclude the defendant from introducing irrelevant, confusing, and misleading facts about Attorney-1 and the defendant's prior relationship with Attorney-1, and to make arguments contrary to law before a lay jury, not an administrative law judge. The risk of juror confusion and unfair prejudice to the Government from what the defendant appears to intend is substantial. *See, e.g.*, *Tourre*, 950 F. Supp. 2d at 684 (explaining that a "lay jury" cannot reasonably be expected to understand and accept the "fine-grained distinction" between advice-of-counsel and the good faith defense offered by the defendant). In any event, to the extent that one could read *Howard* as standing for the proposition that, in a criminal jury trial, a defendant may introduce any and all evidence concerning an uncharged lawyer's background, reputation, and/or presence, and may offer any and all arguments concerning the same, irrespective of whether

the defendant has an admissible basis for all of the requirements of the advice-of-counsel defense, that is not the law in this circuit.  *See, e.g.*, *Colasuonno*, 697 F.3d at 181; *Quinones*, 417 F. App'x at 67.

## II. Evidence or Argument Concerning the Defendant's Allegation That the Charges Against Him Are Politically Motivated, That He Was Unfairly Singled Out, and/or That He Was Charged in "Haste" Should Be Precluded

The defendant contends, as he did at the December 17, 2019 conference, that "it is relevant whether Nike lawyers believed that cooperating against a high-profile person against whom the leader of the Executive Branch had expressed disdain—as opposed to any other lawyer—would inure to the benefit of their client Nike in the continuing NCAA criminal investigation."  (Def. MIL Opp'n 11.)  The defendant offers no support for the asserted admissibility of this purported belief on the part of Nike's lawyers.  Indeed, the defendant provides no explanation whatsoever for how a purported belief by a victim's lawyers that a prosecutor's office might be interested in investigating the crimes of a particular individual makes any fact in the case, let alone a fact of consequence for the jury, more or less likely, as is required for evidence to be relevant and thus admissible.  Fed. R. Evid. 401, 402.  If this issue bore any conceivable relevance whatsoever, it would be to a selective or vindictive prosecution claim, but that is not a claim for the jury.  *See, e.g.*, *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997).

Nor does the defendant even attempt cogently to explain how Nike's lawyers' alleged views of the interest of any particular member of the Government in prosecuting a particular case could shed light on the credibility of those lawyers as witnesses at trial, much less how a lay jury could be expected to understand and follow the purportedly limited purpose for which the defendant seeks to offer "testimony" showing the alleged "personal animus between President Trump and Mr. Avenatti" and that the United States Attorney allegedly "was closely aligned with President Trump."  (Def. MIL Opp'n 11.)  Such testimony, and any related argument, would be

13

both irrelevant and improper, in any form.  All that could possibly be achieved through such a line of cross-examination, direct testimony, or innuendo would be to suggest baselessly to the jury some nefarious or political motivation on behalf of someone in the Government—something of no pertinence whatsoever to the guilt or innocence of the defendant and with no proper place at trial. *See, e.g. United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting [the defendant], as opposed to other individuals who may also have committed the crimes charged or similar crimes."); *id.* at *2 ("Any characterization of the securities fraud charge in Count Nine as 'novel' is irrelevant to the jury's consideration of the indictment in this case.  The defense may not argue or present evidence to the jury that tends to show that this count is an unusual or unprecedented application of the securities laws.").

Moreover, even if one were to assume some theoretical relevance to what the defendant seeks, it should be precluded under Rule 403.  To demonstrate the falsity of the defendant's theory of alleged political persecution, the Government would have no choice but to offer evidence of, among other things, the multiple other criminal cases against him, including one in another district. The defendant would likely respond by attacking the propriety of those prosecutions too—and trial about a discrete set of events would quickly devolve into something far more complicated, lengthy, and confusing.  Rule 403 exists precisely prevent this from happening.  The defendant is not entitled to turn his criminal trial into a platform for a baseless conspiracy theory that, even if true (and it is not), is not for the jury.  Nor is the defendant entitled to seek to inject politics, in the guise of cross-examination, into a trial that has nothing to do with politics.

14

The defendant also contends that he should be able to argue that the Government charged him "without conducting a proper and thorough investigation" because, he asserts, "[i]t is the ***centerpiece*** of [his] defense to this charge that: a) he had broad authority from [Client-1] to handle the initial negotiations and make a settlement demand as he saw fit (including the authority to demand that [the defendant] lead an internal investigation of Nike), b) the two components of the settlement demand made by [the defendant] were in furtherance of [Client-1's] litigation objectives, and [c)] [Client-1] would have had to approve the internal investigation arrangement before it was finalized." (Def. MIL Opp'n 12 (emphasis in original).) This is nonsensical.

To the extent that there exists any admissible evidence supporting "a)," the defendant is welcome to seek to offer such evidence at trial, but the purported "haste" with which the defendant was charged (*id.*) has no relevance whatsoever as to what "authority" was previously conferred on the defendant by his client. Similarly, with respect to "b)," the timing of the defendant's arrest has no possible relevance as to whether anything demanded by the defendant was "in furtherance of" his client's "objectives," nor would that claim, even if true, be a legal defense. (*See* Gov't Letter dated Dec. 31, 2019 at 4-5 (Dkt. No. 111).) As to "c)," this claim also is not a legal defense (*see id.* at 9-11), and, in any event, again has no discernible connection to the timing of the defendant's arrest.

Of course, the defendant may, to the extent grounded in admissible evidence, argue that the evidence at trial is insufficient to prove him guilty beyond a reasonable doubt. But the alleged "haste" or lack of a "proper" investigation (Def. MIL Opp'n 12) is not an argument about the weight of the evidence; rather, it is an argument about the personnel who gathered that evidence, and thus is irrelevant, confusing, and improper. *See, e.g.*, *United States v. Knox*, 687 F. App'x 51, 54-55 (2d Cir. 2017) (instructing jury that the "government is not on trial" is "appropriate" (internal

quotation marks omitted)); *United States v. Saldarriaga*, 204 F.3d 50, 52 (2d Cir. 2000) ("The Court properly charged the jury to base its decision on the evidence or lack of evidence that had been presented at trial, and to focus solely on whether, in light of that evidence or lack of evidence, the jury was convinced beyond a reasonable doubt that the defendant was guilty of the crimes with which he was charged."). It also conflicts with the settled instruction, which the Court should give, that law enforcement is not required to investigate a case through any particular means. *See, e.g.*, *Saldarriaga*, 204 F.3d at 53 ("The jury correctly was instructed that the government has no duty to employ in the course of a single investigation all of the many weapons at its disposal, and that the failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged."); Sand *et al.*, *Modern Federal Jury Instructions*, Instr. 4-4. The defendant should not be permitted to argue or suggest otherwise.

### III. Evidence or Argument Concerning Whether the Defendant's Conduct Can or Should Be Dealt With Solely as an Administrative or Civil Matter Should Be Precluded

The defendant first appears to accept the premise that any argument about whether his conduct could or should have been dealt with as an administrative or civil matter is improper, because the sole issue at trial is his guilt, *see Saldarriaga*, 204 F.3d at 52, but then, at the very end of the relevant section of his opposition, states without elaboration that he may "argue that there is a forum—a Bar proceeding—to address mere violations of ethics rules" (Def. MIL Opp'n 13). To be sure, the jury may learn through expert testimony that such a forum exists, but any argument that some other forum would be preferable to adjudicate the allegations here would serve no purpose but to suggest to the jury that even if it finds that the defendant is guilty, it should acquit because he may be punished again or should be punished in a different forum instead of this one. That is in invitation for nullification, and should be precluded.

16

IV.   **Evidence or Argument Concerning Whether the Charges in This Case Are Unconstitutionally Vague Should Be Precluded**

As with the foregoing motion, the defendant first appears to accept the premise that he may not argue that the charges against him are confusing or vague, but then states a proposition at odds with the premise.  Namely, the defendant states that he "intends to argue that [Attorney-1], a seasoned and respected criminal defense lawyer with decades of experience, actively participated with him in every meeting and phone call, and never expressed any concerned during any of the meetings or recorded conversations that they were crossing any line." (Def. MIL Opp'n 14.)  In addition to being factually inaccurate, this line of argument is legally impermissible, highly confusing, and should be precluded for the reasons set forth in Part III.C of the Government's Supplemental Motion *in Limine* (Dkt. No. 104) and above, *see supra* Part I.C.  The argument becomes no more proper by being couched as an argument about the Government's allegedly incorrect or confusing view of the law.

V.   **Evidence or Argument Concerning the Government's Charging Decisions with Respect to Others Should Be Precluded**

The defendant makes clear that, notwithstanding his prior statements to the contrary, and notwithstanding the settled law described in the Government's opening brief and above, he intends to attempt to place before the jury his characterization of the Government's charging decisions. (Def. MIL Opp'n 14-16.)  The defendant asserts that he either (a) will elicit testimony on this issue from Attorney-1 directly, or (b) if Attorney-1 invokes his constitutional right against self-incrimination, will move for the Court to compel the Government to immunize Attorney-1 or provide a missing witness instruction to the jury.  (*Id.* at 15-16.)  While the Government will respond fully to any such motion if it is made, it is clear from the record that there is no legal or factual basis for what the defendant seeks, which would only confuse and distract the jury from the sole question before it: the defendant's guilt.

As an initial matter, the defendant's proffer regarding Attorney-1's statements to the Government is profoundly self-serving and misleading.  The defendant asserts that Attorney-1's statements to the Government were "exculpatory of" the defendant (*id.* at 14), and that Attorney-1 "never expressed any concern to [the defendant] that threats of a press conference or demand for an internal investigation constitute extortion under the circumstances presented" (*id.* at 15).  The defendant goes on to claim that Attorney-1 "told prosecutors that it was he who had insisted on the internal investigation of Nike."  (*Id.*)  These assertions are wrong.  Indeed, although Attorney-1 denied that *he* intended to extort Nike, his statements to the Government were significantly inculpatory as to the defendant.[5]

Most notably, and contrary to the defendant's repeated assertions (*e.g.*, *id.* at 14), Attorney-1 has advised the Government that he did express to the defendant that he was concerned that the defendant had "crossed a[ ] line" (*id.*).  During an in-person meeting, which was video-recorded, between the defendant, Attorney-1, and representatives of Nike, after representatives of Nike, at the direction of law enforcement, asked whether Nike could make a lump-sum payment to the defendant in lieu of hiring him to conduct an internal investigation, the defendant and Attorney-1 left the room.  According to Attorney-1, at that time, Attorney-1 privately told the defendant that the defendant must convey Nike's offer to the defendant's client, and that Attorney-1 was concerned about and uncomfortable with the situation (and in particular the possibility of a lump-sum payment with no internal investigation to follow), which Attorney-1 believed may have

---

[5]     The defendant is aware of the statements made by Attorney-1 to the Government because the Government produced notes and reports of those statements to the defendant.

become extortionate.[6]   According to Attorney-1, notwithstanding his expressed concern about a lump-sum payment, the defendant returned to the conference and, on video, demanded a lump-sum payment of $22.5 million to purchase his silence.[7]

Attorney-1 has also advised the Government that he raised his concern and lack of comfort multiple times thereafter with the defendant, and insisted that the defendant must inform his client (to whom Attorney-1 never spoke or otherwise communicated) of Nike's offer, which the defendant said he would do (but did not, as demonstrated by evidence independent of Attorney-1). Attorney-1 has further advised that, due to his lack of comfort with the circumstances, he did not intend to (and in fact did not) attend the March 25, 2019 meeting (immediately prior to which the defendant was arrested), at which, the defendant had previously told Nike's representatives, Nike would have to agree to pay the defendant.

In sum, Attorney-1 has told the Government that (1) he raised with the defendant the possibility that his conduct was improper, (2) at least by a certain point, he was not comfortable with the defendant's conduct, and (3) he told that defendant that it was necessary to consult with his client on these matters, which the defendant said he would do, but which independent evidence demonstrates he did not.

It is clear from the circumstances here that, particularly given that Attorney-1's testimony does not exculpate the defendant (and indeed would provide substantial inculpatory evidence), and

---

[6]   It was only in the context of the possibility of a lump sum payment that Attorney-1 "told prosecutors that it was he who had insisted on the internal investigation of Nike" (Def. MIL Opp'n 15)—because at the time, Attorney-1 was concerned that the lump sum payment that the defendant requested would otherwise be extortionate.

[7]   Remarkably, the defendant describes the sequence of events in which Attorney-1 told the defendant, in substance, that he could not properly pursue a lump-sum payment as follows: "Mr. Avenatti, after consulting with [Attorney-1], proposed a settlement amount of $22.5 million." (Def. MIL Opp'n 10.)

the Government has not provided immunity to any witness in this case, there is no proper basis to compel the Government to immunize Attorney-1.  *See United States v. Ebbers*, 458 F.3d 110, 118-19 (2d Cir. 2006).  And for the same reasons, the defendant is not entitled to a missing witness instruction.  Indeed, the case relied on by the defendant (Def. MIL Opp'n 16) is contrary to his argument, and makes clear that no missing witness instruction should be given.  *See United States v. Meyerson*, 18 F.3d 153, 158-60 (2d Cir. 1994) (other than in exceptional circumstances, invocation of the right against self-incrimination is not a basis for a missing witness instruction).

## VI.   Evidence or Argument Concerning the Defendant's Prior Commission of Good Acts and/or Failure to Commit Other Bad Acts Should Be Precluded

The defendant asserts that "to the extent that any good acts are relevant under Fed.R.Evid. 401, inextricably intertwined with the evidence, and/or necessary for the jury to understand the complete picture of what happened ***in this case***, [he] should not be precluded from presenting any such evidence."  (Def. MIL Opp'n 16 (emphasis in original).)  It is of course true that if evidence relating to prior "good acts" is admissible for some other, proper purpose, and not precluded as confusing or unfairly prejudicial or otherwise under Rule 403, the evidence may be admitted.  But the only example that the defendant provides (*id.* at 16-17) is not such a situation.  According to the defendant, he should be able to offer recordings of his own press conferences and interviews because links to those recordings were contained in text messages exchanged between Client-1 and another individual.  (*Id.* at 17.)  The defendant claims that those recordings are evidence of Client-1's "reasons and motivations for hiring [the defendant], as opposed to a timid lawyer . . . squarely contradict[ing] the government's flawed theory that [Client-1] did not authorize [the defendant] to do so" (apparently referring to the defendant's demands for an internal investigation).  (*Id.*)

The defendant fails to explain how these videos would demonstrate Client-1's reasons and motivations or how, in any event, a desire to hire a non-"timid" lawyer could plausibly support the inference that Client-1 authorized the defendant to take any particular action, such as requiring side payments in exchange for maintaining his silence and causing Client-1 to settle any claims he might have.  Nor does the defendant offer support for the proposition that only a "timid" lawyer would fail to seek money for himself in return for settling or extinguishing his client's claim(s).

But even if there were some marginal evidentiary value to these video-clips, it would be substantially outweighed by the confusion and unfair prejudice of focusing the jury on prior actions of the defendant that have no bearing on this case.  In any event, even if such evidence were to be admitted on a limited basis, the defendant should be precluded from arguing that his prior press conferences or representations demonstrate good actions or lack of criminality on any other occasion and therefore make it less likely that he is guilty.  *See, e.g.*, *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990).

## VII.  Evidence or Argument Concerning Whether Other Threatened or Actual Civil Lawsuits Have Achieved Positive Things for Clients or Society Should Be Precluded

The defendant states that he "does not intend to present evidence of results in other unrelated lawsuits for the purpose of showing his good character or contributions to society," but "intends to present evidence that he is a trial lawyer who regularly files civil lawsuits, that the complaints he files often include claims for damages and injunctive relief, and that he often held press conferences as part of his litigation strategy."  (Def. MIL Opp'n 17.)  But it is undisputed that the defendant is a lawyer who has filed civil suits or held press conferences in the past; indeed, the Government expects that Client-1 and/or other witnesses will testify on direct examination that they understood this when they hired or interacted with the defendant.  It is unclear what additional "evidence" the defendant intends to offer on this point, but if he intends to offer specific examples

21

of lawsuits, as he has suggested previously to the Government, that should be precluded.  The specific nature and content of prior lawsuits have no bearing on any fact of relevance.  And even if they did, any modicum of relevance is far outweighed by the risk of confusion, distraction, and unfair prejudice caused by the defendant offering the nature and content prior lawsuits purportedly for an undisputed point that does not turn on such information.[8]

In short, if the defendant wishes to offer character evidence, he may do so in proper form. *See, e.g.*, *United States v. Benedetto*, 571 F.2d 1246, 1249-50 (2d Cir. 1978); *United States v. Fazio*, No. 11 Cr. 873 (KBF), 2012 WL 1203943, at *5 (S.D.N.Y. Apr. 11, 2012), *aff'd*, 770 F.3d 160 (2d Cir. 2014).  He should not be permitted to do so in the guise of proving an undisputed point.

## VIII.   Evidence or Argument Concerning Whether Nike Engaged in Misconduct, of Which the Defendant Was Unaware at the Time of the Defendant's Charged Actions, Should Be Precluded

As noted above, in an encapsulation of his litigation strategy, the defendant devotes the vast majority of allegedly factual background contained in his principal opposition to recounting in detail his present understanding of alleged payments made by Nike employees to amateur players.  (Def. MIL Opp'n 1-11.)  In short, as has been apparent for some time, the defendant intends to seek to turn his trial for extortion and honest services wire fraud into his own version of an exposé on payments that might have been made to amateur basketball players.  Of course, these alleged facts, even assuming their accuracy, are irrelevant as a matter of law.  *United States v. Jackson*, 196 F.3d 383, 387 (2d Cir. 1999); *United States v. Jackson*, 180 F.3d 55, 66, 71 (2d Cir. 1999).  Indeed, the irrelevance of the alleged evidence recited at length by the defendant is made

---

[8]    The admission of such evidence or arguments based on them might also open the door to the Government offering evidence that, contrary to a suggestion that the defendant has not previously acted improperly or focused on himself rather than his clients, he has repeatedly been accused of ethical violations and/or fraud by clients.

clear by a simple observation: One can assume that each and every fact asserted by the defendant about payments made by Nike employees is true, and it would still have no bearing whatsoever as to whether the defendant attempted to obtain another's property, to which he had no claim of right, through fear of economic and reputational harm.[9]

The defendant nonetheless argues that he should be able to seek to prove all of these alleged facts on the theory that they purportedly demonstrate the bias of witnesses who work for or represent Nike.  (Def. MIL Opp'n 19-22.)  But the defendant fails to provide any explanation, let alone a persuasive one, for why admitting this alleged evidence—which does not itself prove any criminality—provides any material proof of alleged bias beyond (1) the fact, which will be undisputed at trial, that Nike received a subpoena in a criminal investigation, and (2) the evidence of potential misconduct that was provided to the defendant by his client.  In any event, any marginal value offered by cross-examination or by evidence regarding purported misconduct of which the defendant was not contemporaneously aware would be far outweighed not only by confusion and distraction of the jury but also by the transparently improper and inflammatory purpose for which the defendant seeks to use this evidence: focusing the jury on alleged wrongdoing by the victim.  *See United States v. Harvey*, 991 F.2d 981, 996 (2d Cir. 1993); *United States v. Borello*, 766 F.2d 46, 59 (2d Cir. 1985); *United States v. Jamil*, 707 F.2d 638, 644 (2d

---

[9]    Although the truth of the defendant's assertions regarding these payments has no relevance at this trial, it is also notable that the defendant acknowledges that the theory of criminal liability in the prior criminal case concerning payments to amateur basketball players was based on "a scheme to bribe high school basketball players to attend and play for universities that had contracts with Adidas" (Def. MIL Opp'n 2-3), and yet fails to make a single allegation regarding evidence that the alleged payments here constituted such illegal bribes or involved Nike-sponsored universities, or were made with a particular and improper purpose.  In short, even in his own telling, it does not appear that the defendant ever possessed proof of criminality by anyone at Nike (despite his repeated public allegations); he merely came into possession of alleged facts that might be embarrassing and harmful to Nike if publicized in a particular way, including by a press conference on the eve of a quarterly earnings call and the NCAA men's basketball tournament.

Cir. 1983); *see also United States v. Korogodsky*, 4 F. Supp. 2d 262, 265-66 (S.D.N.Y. 1998) ("It is no defense that the victims of the fraud may have been engaged in some misconduct" and therefore "possible misconduct of the victim [is] not relevant . . . ."). This is particularly true since the bulk of the defendant's statements to the very witnesses whom the defendant seeks to impeach were recorded. Whether these witnesses had or have an incentive to "cooperate against [the defendant]" (Def. MIL Opp'n 22) is largely beside the point.

Moreover, as explained in the Government's opening brief (Gov't MIL 17-18), were the defendant to succeed in turning his individual criminal trial into a civil case against Nike on a theory that such a civil case purportedly demonstrates certain witnesses' alleged bias, the Government would have to question the same witnesses, and also likely to offer additional evidence, concerning, among other things, how a corporation responds to a subpoena, including through formal and informal conversations with a prosecuting office, and the Government's charging policies and practices (both generally and with respect to corporations). These subjects are beyond the ken of the average lay juror and the proper scope of an individual criminal trial, would materially lengthen and complicate the trial, and are likely to prove highly confusing and distracting.[10]

The defendant argues that he nevertheless should be able effectively to put Nike on trial because it purportedly would corroborate his client's claim of right. (Def. MIL Opp'n 22-23.) But the defendant fails to explain how proof of Nike's alleged misconduct having nothing to do with his client has any relevance to a claim of right by his client; how, in any event, a claim of right on the part of his client is a defense to the defendant's own demands that he *himself* receive exorbitant

---

[10]    These matters also might require one or more witnesses to decline to answer certain questions on the ground of attorney work-product and/or attorney-client privilege, requiring additional instructions or evidence, further lengthening and complicating the trial, and risking substantial jury confusion.

payments; how documents the defendant first learned about after his arrest could possibly shed any light on his intent at the time of his conduct; or how the probative value of this evidence, even if relevant, could possibly justify the confusion and unfair prejudice its introduction will cause.

Finally, the defendant contends that he should be able to offer evidence of specific purported misconduct by Nike of which he was not aware at the time he acted because he "was aware of the broader misconduct, even if not the specific instances of it, which justified his demand on behalf of [his client] to root out corruption." (*Id.* at 23.)  This argument is a *non sequitur*.  The defendant fails to explain in any logical fashion how his "general" knowledge would justify admission of evidence of "specifics" of which he was not aware.  In any event, to the extent that the defendant is asserting that he demanded to be hired to do an investigation not because his client asked for it, but because he was aware of Nike's alleged problem from news reports and had come into possession of embarrassing evidence, this is simply a description of an extortion scheme and not a legally permissible defense.

## IX.    Evidence or Argument Concerning Whether Client-1's Potential Legal Claims Had Value, and/or the Cost of an Internal Investigation, Without a Connection to the Defendant's Contemporaneous Knowledge, Should Be Precluded

The defendant appears to agree that evidence concerning any value of Client-1's potential claims or the cost of an internal investigation must be tethered to the defendant's contemporaneous knowledge (Def. MIL Opp'n 25-26), and therefore any evidence or argument without such a connection should be precluded.

## X.    Proffered Out-of-Court Statements Made by Attorney-1 to the Government After the Defendant Was Arrested Are Inadmissible

The defendant provides no argument whatsoever to support the admission of those statements of Attorney-1 to the Government that the defendant previously sought to have admitted. (*See* Gov't MIL 20-25.)  Instead, the defendant offers misleading and inaccurate facts, as addressed

25

above, *see supra* Part V, and a request for the Court simply not to rule at this time.  There is no reason to delay a ruling on this issue, as the statements are not admissible.

## XI.    The Defendant Should Be Precluded from Offering Expert Testimony Regarding What Is "Reasonable"

In his opposition, the defendant contends that his "expert should be permitted to opine that it would be reasonable for a lawyer to not inform a client about statements made by opposing counsel in a settlement conference that do not rise to the level of a settlement offer."  (Def. MIL Opp'n 27.)  This attempt to have the defendant's expert opine on whether particular conduct is "reasonable" is outside the apparent expertise of the witness, is proffered without any basis in the defendant's notice, and appears to be an improper attempt to instruct the jury as to the propriety of the defendant's conduct.  *See United States v. Schatzle*, 901 F.2d 252, 257 (2d Cir. 1990).  This proffered testimony, along with the other testimony discussed in the Government's Motions *in Limine* (at 26-29), certain of which the defendant does not defend, should be precluded.

## <u>CONCLUSION</u>

For the foregoing reasons, the Government's initial and supplemental motions *in limine* should be granted.

Dated:  New York, New York
        January 5, 2020

                                    Respectfully submitted,

                                    GEOFFREY S. BERMAN
                                    United States Attorney

                            By:     <u>s/ Daniel C. Richenthal</u>
                                    Matthew D. Podolsky
                                    Daniel C. Richenthal
                                    Robert B. Sobelman
                                    Assistant United States Attorneys
                                    (212) 637-1947/2109/2616