**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 13, 2020

**BY ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

   Re: *United States v. Michael Avenatti*,
      19 Cr. 373 (PGG)

Dear Judge Gardephe:

  The Government respectfully writes in opposition to the defendant's letter motion of last night requesting the Court to preclude the Government (but not the defendant) "from affirmatively using any of [certain] late produced documents and materials at trial" or, alternatively, for a 30-day adjournment ("Def. Ltr." (Dkt. No. 134)). This motion is meritless. There are no "late produced documents" in the manner asserted by the defendant. Even if there were, the defendant is not entitled to what he seeks. On the contrary, it is apparent from the defendant's letter that his true purpose is unconnected to his complaints about purportedly "late produced documents," and is instead to seek to use certain recent productions and information to bolster his unrelated and unfounded request to preclude highly probative and straightforward evidence of his motive. That attempt should be rejected, and trial should proceed on the schedule set when the defendant's prior request for a multiple-month adjournment was granted.

  **I. The Defendant's Complaints of Purportedly Belated Discovery Are Meritless**

  As an initial matter, to the extent that the defendant's letter motion concerns discovery, it does not comply with Local Criminal Rule 16.1 because he neither conferred with the Government prior to filing it nor included an affidavit with it. *See, e.g.*, *United States v. Castro*, No. 08 Cr. 268 (NRB), 2008 WL 5062724, at *1 (S.D.N.Y. Nov. 25, 2008) (a motion concerning discovery "should be denied" where "defense counsel failed to comply with Local Criminal Rule 16.1"). In any event, the defendant's description of the scope and content of recent productions is misleading at best.

  *First*, the defendant points to the production of "four thousand pages pertaining to [the defendant's] client," which, he states, "the government acknowledged it overlooked and should [have] been produced back in August." (Def. Ltr. 2.) The defendant similarly refers without elaboration to "2,300 pages of documents . . . produced by Nike to the government five months ago." (*Id.*) But as the Government has repeatedly informed the defendant, in both writing and orally, both of these sets of documents—internal Nike documents that were (a) gathered by the

United States Attorney's Office for the Southern District of New York in connection with another investigation, not run by this prosecution team, and (b) entirely unknown to the defendant at the time of the conduct at issue—have been produced only as a courtesy in response to a request of the defendant and to moot or narrow potential litigation in advance of trial.[1]  The documents, which are neither admissible nor material to the defense, were not and are not discoverable under Federal Rule of Criminal Procedure 16.  They also are not in any way exculpatory, nor has the defendant claimed to the contrary.[2]

Indeed, throughout the Government's discussions with the defendant and in its submissions to this Court, the Government has set forth the many reasons why none of these documents, or any similar document, is admissible, and why, to the extent the defendant disagrees, that disagreement is part of an improper effort to blame the victim and seek to distract the jury from the only question before it: the defendant's guilt.  (*See* Gov't Mot. *In Limine* 11-20 (Dkt. No. 96); Gov't Reply in Supp. of Mot. *In Limine* 22-25 (Dkt. No. 118); *see also* Nike Mot. to Quash 4-10 (Dkt. No. 115).)  As this Court has explained in denying the defendant's request for a Rule 17(c) subpoena, "Evidence that Nike engaged in widespread corruption in the area of amateur basketball likewise does not provide a defense to the extortion and honest services wire fraud charges against Avenatti." *United States v. Avenatti*, No. 19 Cr. 373 (PGG), 2020 WL 86768, at *5 n.2 (S.D.N.Y. Jan. 6, 2020).  In short, the materials that the defendant complains have only recently been provided go far beyond the Government's discovery obligations, and are therefore not a ground for adjournment (although the Government has no objection to the defendant's request to preclude use of these documents, provided that such preclusion applies equally to both sides, given that the documents are inadmissible).

The defendant also appears to suggest that the Government acted improperly by declining to produce an even broader set of non-discoverable materials, but instead permitting the defendant to review them privately with his counsel at the Government's offices.  (Def Ltr. 2.)  The defendant states that the Government did so "for reasons unclear and unexplained."  (*Id.*)  Not so.  The Government discussed this proposal with defense counsel weeks ago, and explained that these

---

[1]  The Government agreed, as a courtesy and to forestall wasteful litigation, to run particular search terms against Nike documents and produce the results.  The Government discovered and promptly notified the defendant, on January 4, 2020, that the searches had inadvertently not been run across all documents previously produced by Nike.  The Government promptly produced the additional 4,000 page referenced by the defendant (Def. Ltr. 2), which were the results of running the search terms across the full set of Nike documents, again as a courtesy and to forestall wasteful litigation even though these documents went far beyond the Government's discovery obligations.  The defendant nonetheless requested that the Government run an even broader set of search terms, resulting in the 2,300 pages referenced by the defendant (*id.*).

[2]  Moreover, the parties' agreed-upon date for the production of material under 18 U.S.C. § 3500 and *Giglio* was and remains January 14, 2020 (and in any event, the documents do not fall within *Giglio* for the reasons explained in the Government's motion *in limine* concerning the defendant's intent to cross-examine witnesses about unrelated alleged misconduct of Nike).

materials, which were identified using additional terms requested by the defendant after the Government already had produced an initial tranche of documents, went far beyond any plausible theory of discovery and were produced confidentially in connection with another investigation, and that the Government therefore would not turn simply them over. The Government further explained that, by that point, the defendant had repeatedly disclosed in his public filings the substance and content of these types of materials in an apparent effort to distract from issues and facts relevant to this case, and the Government was highly concerned that the defendant would do so again. Notwithstanding the foregoing, the Government agreed to provide a subset of the documents to the defendant after his review, at his request, and stated that it would consider providing others if the defendant explained why he needed the actual documents themselves—and not just knowledge of them—for his defense. The defendant did not object to this procedure and has not provided a basis for the Government to consider providing more, or for the Court to order more.[3]

*Second*, the defendant points to "a number of transcripts containing hundreds of pages of sworn testimony given by the defendant." (Def. Ltr. 2.) But as the Government explained to the defendant last week, the Government turned over these materials promptly—indeed, generally the same day—upon obtaining them, and prior to the Government having an opportunity to review them. Contrary to the defendant's suggestion, the Government has not in any way delayed production to gain some kind of advantage. Moreover, as the defendant acknowledges, these transcripts were from prior court proceedings in which the defendant himself testified (indeed, in which he was a party) and therefore he presumably had access to them long before the Government. The Government also understands that nearly all of these transcripts were produced by the United States Attorney's Office for the Central District of California ("USAO-CDCA") to the defendant's counsel in his case in that district in March and in August of 2019. Given these facts, there is no basis whatsoever to preclude admission of these transcripts, to the extent otherwise admissible, or for an adjournment of trial.

*Third*, the defendant complains of the production of "thousands of pages of other documents," which the defendant asserts relate to evidence of his debts. (Def. Ltr. 2.) It is unclear to which documents the defendant refers, and the only materials to which he points with specificity are contents of his own laptop, which was searched pursuant to a warrant. (*Id.* at 2 n.2.) Any complaint about the allegedly late production of these materials is puzzling, given that, as the defendant acknowledges, he received the full contents of this laptop on November 21, 2019, but the prosecution team has only had access to a limited number of documents from the laptop for approximately one week, owing to the necessity of a review for privilege by a walled-off filter team for potential privilege. (*Id.*) Moreover, the privilege review process included the sharing of

---

[3] Nor is the defendant correct that the Government is required affirmatively to produce documents, even where—unlike here—they fall within Rule 16. While "[i]t is common practice for the Government to produce to defendants copies of Rule 16 material, either in digital or paper form, . . . it is not required by the terms of the rule. Rather, Rule 16 requires that the Government disclose the material and make it available for inspection, copying, or photographing." *United States v. Healey*, 860 F. Supp. 2d 262, 269 (S.D.N.Y. 2012)."

Honorable Paul G. Gardephe
United States District Judge
January 13, 2020
Page 4

documents with defense counsel by the filter team prior to release to the prosecution team, so defense counsel was specifically given advance copies of any documents released to the prosecution team before the prosecution team received them.  Nor, to the Government's knowledge, did the defendant ever inform the filter team that he allegedly declined to review any material on his laptop until recently (*see id.*).  The notion that the Government should be precluded from offering, for any purpose, evidence to which the defendant has had access for months more than the Government has no basis in law or logic.[4]

*Fourth*, the defendant states that he only recently received "the entire content of an iPhone belong to [the defendant's] former office manager." (Def. Ltr. 2.)  That is false.  The production made by the Government consists of only a relatively small number of files from that cellphone that were deemed responsive to a warrant executed on that cellphone (and which were cleared as non-privileged by a walled-off filter team).  It does not contain "thousands of text messages and emails involving Mr. Avenatti." (*Id.*)  The production contains a total of approximately 546 SMS messages, MMS messages, and iMessage chat messages, only a portion of which were sent by the defendant, and no emails.  And again, the Government produced this material to the defendant the same day and in the same format in which the Government obtained it.  As a courtesy, the Government also included a software application with which the files could be reviewed.[5]  Moreover, the Government understands that the same material was produced by the USAO-CDCA to the defendant's counsel in that case in November 2019.  Furthermore, all or virtually all of the messages contained in the production that were sent by the defendant already were produced to the defendant in the Government's production of the defendant's Apple iCloud account in September 2019.  There is no basis for preclusion of evidence or an adjournment of trial based on this material.[6]

## II.     Even If Discovery Were Belated, Neither Preclusion Nor a Lengthy Adjournment Would Be Warranted

Even assuming *arguendo* that the defendant's complaints regarding belated discovery had merit (and they do not), preclusion would not be warranted.  It is settled law that preclusion of evidence is rarely an appropriate sanction for a discovery delay.  Rather, a continuance is the preferred remedy, "because it gives the defense time to alleviate any prejudice it may have suffered from the late disclosure." *United States v. Marshall*, 132 F.3d 63, 69 (D.C. Cir. 1998) (citing *United States v. Euceda-Hernandez*, 768 F.2d 1307, 1312 (11th Cir. 1985)); *see United States v.*

---

[4]  The Government presently intends to offer at trial only a handful of documents found on the defendant's laptop, and the Government already has identified those files in its exhibit list, which was provided to the defendant on January 10, 2020.

[5]  If the defendant had informed the Government that he had technical issues relating to this production, as he now says (Def. Ltr. 2), the Government gladly would have provided assistance.  The defendant did not so inform the Government prior to filing his letter, and still has not reached out to the Government to seek assistance.

[6]  In any event, the Government does not presently intend to offer any evidence in its case-in-chief from the defendant's former assistant's cellphone.

Honorable Paul G. Gardephe
United States District Judge
January 13, 2020
Page 5

*Giraldo*, 822 F.2d 205, 212 (2d Cir. 1987) ("a court may allow previously undisclosed tapes to be introduced after a delay of a few days to permit counsel in the interim to inspect them and fashion a challenge to them"); *United States v. Pineros*, 532 F.2d 868, 871 (2d Cir. 1976) (the court should consider, *inter alia*, "'the feasibility of rectifying [any] prejudice by a continuance'" (quoting Advisory Committee Notes on Rule 16(g)). "A continuance is the least severe remedy necessary to preserve the defendant's right to a fair trial, promote the fair and efficient administration of justice, and ensure full compliance with Rule 16(a)." *United States v. Graham*, No. 99 Cr. 271 (CFD), 2000 WL 1902425, at *2 (D. Conn. Dec. 21, 2000).

Here, however, no continuance—let alone the lengthy continuance sought by the defendant—not warranted. "Whether or not to adjourn a trial date is traditionally within the discretion of the trial judge." *United States v. Scopo*, 861 F.2d 339, 344 (2d Cir. 1988) (internal quotation marks omitted). While there "is no mechanical test with respect to requests for a continuance or adjournment," *United States v. Al Fawaaz*, 116 F. Supp. 3d 194, 210 (S.D.N.Y. 2015), the Second Circuit has identified certain situations in which an adjournment may be appropriate: (1) the requested delay is of a short (or at least fixed duration); (2) the sought-after evidence is specified with particularity; (3) the proposed evidence is critical to the defense; and (4) the defendant has not been dilatory, *id.* at 211 (summarizing considerations in *United States v. White*, 324 F.3d 814, 814-16 (2d Cir. 1963)). These factors weigh against an adjournment here, much less of the length sought by the defendant. That is particularly true given that, as described above, the bulk of materials about which the defendant complains were provided to him months ago and known to him for even longer, and, as to the Nike documents, are wholly irrelevant. It would be entirely appropriate for the Court to deny the defendant's request in its entirety. But if the Court were inclined to grant an adjournment, which is not necessary, it should be for no more than one week. An adjournment of a greater period would unfairly prejudice the Government, potentially conflict with the schedules of witnesses (several of whom will be traveling from out of town to testify), and undermine the public's and the victims' interests in a speedy trial.

### III.     Evidence of the Defendant's Debts Is Admissible

Although styled as a motion concerning discovery, the defendant spends the majority of his letter re-arguing his position that evidence of his debts, in any form, should not be admitted. (Def. Ltr. 2-4.) As the Government previously set forth (Dkt. No. 108), evidence of the defendant's debts, and in particular the amount of those debts, is highly probative of his guilt, and such evidence is routinely admitted in cases such as this.

That evidence explains why the defendant was motivated to seek payments for himself to which he was not entitled, even at the expense of his client, and, indeed, why he sought the amounts from Nike that he did, and thus is directly relevant to the defendant's intent, which he plainly will contest at trial. Further, since the Government filed its opposition to the defendant's motion to preclude all such evidence, it has only become more clear why such evidence should be admitted. Recently, the defendant produced in reciprocal discovery, among other things, his own biography. Irrespective of whether the defendant were to seek to offer such document (which is inadmissible hearsay), it is apparent that the defendant fully intends at trial to suggest—if not outright argue— that he was a successful lawyer who had no reason to commit a financially-motivated offense.

That suggestion would be false. As the Government explained, at the time he committed the charged offenses, the defendant owed millions of dollars to various people and entities.

In his letter, the defendant contends that, even if this subject were proper, the Government should be precluded from calling any lay witnesses concerning it. (Def. Ltr. 3-4.) That broad contention, in support of which the defendant does not cite any authority, should be rejected. As an initial matter, the defendant omits from his letter that the parties have discussed a potential stipulation that may moot the need for testimony by nearly all of the witnesses about which he complains.[7] In any event, even if the defendant were to decline to stipulate, testimony of lay witnesses to confirm outstanding debts is plainly admissible and would not, as the defendant hyperbolically asserts, somehow "swallow the trial" (*id.* at 2). Indeed, the testimony of nearly all of these witnesses would be limited to confirming that particular judgments (themselves public records) remained outstanding at a particular point in time. This testimony would be both short and straightforward.[8]

The defendant also asserts that the testimony of a Federal Bureau of Investigation financial analyst summarizing certain financial records (i) "will delve into areas traditionally reserved for experts" and (ii) "raises a myriad of issues," which the defendant does not identify. (Def. Ltr. 4.) However, this witness and his anticipated testimony, which is limited, was disclosed long prior to the Government's witness list; nearly a month ago, the Government explained that it intended to call "a law enforcement witness who may present one or more summary charts, including regarding financial records." (Gov't Opp'n to Financial Condition Mot. *In Limine* 2 (Dkt. No. 108).) The defendant has not previously suggested that to the extent the underlying financial records are admissible (and the defendant does not argue that they are not), the Government cannot offer testimony and/or a chart summarizing their content. That is not the law. *See, e.g.*, *United States v. Yousef*, 327 F.3d 56, 158 (2d Cir. 2003); *see also* Fed. R. Evid. 1006. Nor does the defendant even attempt to explain how such testimony may only be offered by an "expert[]." (Def. Ltr. 4.) It is, of course, common practice in this district to call a law enforcement agent or analyst to summarize financial records. The expected use of such a witness here does not constitute expert testimony and is not a basis for preclusion of evidence or for an adjournment of any length.

In sum, the defendant has pointed to nothing other than the Government's ongoing and prompt compliance with its discovery obligations—and indeed, the Government's efforts to provide material beyond the scope of those obligations—and offers no basis that would justify

---

[7] The Government previously explained to the defendant that the Government intended to list such witnesses on its witness list at this time only because such a stipulation has not yet been signed.

[8] Although not clear from the defendant's letter, the "copy of the employee's iPhone" referenced on page four of the letter is the same material addressed above and referred to earlier in the letter as the "content of an iPhone belonging to [the defendant's] former office manager." (Def. Ltr. 2, 4.)

Honorable Paul G. Gardephe
United States District Judge
January 13, 2020
Page 7

preclusion of any evidence offered by the Government nor an adjournment, let alone the lengthy adjournment requested by the defendant.

                Respectfully submitted,

                GEOFFREY S. BERMAN
                United States Attorney

By:    s/ Matthew D. Podolsky
        Matthew D. Podolsky
        Daniel C. Richenthal
        Robert B. Sobelman
        Assistant United States Attorneys
        (212) 637-1947/2109/2616

cc:    (by ECF)

       Counsel of Record