LAW OFFICES

# SCOTT A. SREBNICK, P.A.

SCOTT A. SREBNICK*
* ALSO ADMITTED IN NEW YORK

201 S. Biscayne Boulevard
Suite 1210
Miami, Florida 33131

Tel: 305-285-9019
Fax: 305-377-9937
E-mail: scott@srebnicklaw.com
*www.srebnicklaw.com*

January 20, 2020

**Via ECF**
Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

> **Re:** ***United States v. Avenatti*, No. S1 19 Cr. 373 (PGG)**
> **Letter Response regarding Outstanding Judgments**

Dear Judge Gardephe:

We write in response to the government's letter of January 15, 2020, regarding the outstanding money judgments. (Dkt. No. 148).[1] We address only the evidence of judgments that the government intends to offer in its case-in-chief, (Dkt. No. 148:2-3), without waiving our arguments that financial condition evidence should be excluded under Rules 402, 403, and 404(b) for the reasons articulated in our previous submissions on this issue. (Dkt. Nos. 89, 116, 134).

## 1. **Judgment in Favor of Jason Frank Law PLC**

Mr. Avenatti does not dispute the authenticity of the Judgment against him personally for **$5,054,287.75** (Dkt. No. 148:2; 148-1:7-8), nor does he contest that it was pending against him in March 2019. Moreover, Mr. Avenatti does not dispute that this amount represents that portion of a $10,000,000 judgment against the law firm Eagan Avenatti, LLP, that Mr. Avenatti had personally guaranteed (including pre-judgment interest). Mr. Avenatti does not know how much of the personal judgment Jason Frank Law, PLC, has actually collected.

However, Mr. Avenatti ***does*** dispute that he would be personally liable for any portion of the remainder of the $10,000,000 judgment against Eagan Avenatti as this judgment represents a debt of the limited liability partnership. *See* Calif. Corp. Code §16306(c). Mr. Avenatti ***does*** dispute the position in the government's clarifying letter "[b]ased on further conversations with lay witnesses," (Dkt. No. 167-1), that the $10,000,000 judgment and the

---

[1] During the telephonic status conference on January 14, 2020, the Court directed the parties to make a submission regarding outstanding judgments by January 15, 2020, at 10am, but then granted Mr. Avenatti's application to delay the filing in view of his arrest shortly after the telephonic conference. (Dkt. No. 151).

$5,054,287.75 judgment are separate obligations which are not overlapping or duplicative. As the government correctly noted in its original letter, the personal judgment against Mr. Avenatti represents that portion of the judgment against the partnership that Mr. Avenatti personally guaranteed. *See* GX 585 (attached as Exhibit 1), at page 6. Thus, he objects to the introduction of the $10,000,000 judgment against Eagan Avenatti.

2. **The William Parrish Debt**

Mr. Avenatti does not dispute that there was a default judgment entered against him in the amount of $2,194,301.87 in favor of William Parrish that was pending as of March 2019.

3. **The Support Debt**

Mr. Avenatti does not dispute that Lisa Storie-Avenatti obtained a Court Order on October 22, 2018, based on a hearing held on July 16, 2018, requiring Mr. Avenatti to make *monthly* payments for spousal support and child support in the amounts set forth in the government's letter (Dkt. No. 148:3, 148-1:22-35), as well as the additional amounts for attorney's fees and accounting fees. That is, Mr. Avenatti does not dispute the authenticity of that Order. Mr. Avenatti is unaware of any judgment or court order that required Mr. Avenatti to pay $2,049,000 in spousal and child support as of March 2019. Further, testimony from the former attorney for Ms. Storie-Avenatti, who was retained after Mr. Avenatti's arrest in March 2019, about his personal belief regarding the amount owed lacks foundation and is based on hearsay. To be clear, Mr. Avenatti disputes that he owed the amount of $2,049,000 as of March 2019, especially in view of the payment of certain monies and turnover of certain assets.

Mr. Avenatti, who was representing himself, was unable to appear at the July 16, 2018, hearing; the family court judge accepted uncontested testimony from Ms. Storie-Avenatti. After the Order was entered, however, Mr. Avenatti retained counsel (on December 13, 2018), and his new counsel advised him that there were grounds to challenge the Order based on misrepresentations made at the hearing. As of March 2019, Mr. Avenatti believed that the Order would be set aside. Testimony about this spousal and child support should be excluded for the reasons previously advanced; in addition, it will invite a side-show about family law issues that should not be a part of this trial.

Respectfully,
/s/ Scott A. Srebnick
Scott A. Srebnick
Jose M. Quinon
E. Danya Perry

## SETTLEMENT AGREEMENT AND RELEASES

This Settlement Agreement and Releases ("Agreement") is entered into this 12th day of December 2017 by and between Jason Frank Law, PLC, a professional law corporation organized in California ("JFL"), Jason Frank ("FRANK"), an individual, Scott Sims ("SIMS"), an individual, Andrew Stolper ("STOLPER"), an individual, and Frank Sims & Stolper LLP, a limited liability partnership organized in California ("FSS") (collectively, the "JFL Parties"), on the one hand, and Eagan Avenatti LLP ("EA"), a limited liability partnership organized in California, Avenatti & Associates, APC ("A&A"), a professional corporation organized in California, Michael Avenatti ("AVENATTI"), an individual, and Michael Eagan, an individual ("EAGAN") (collectively, the "EA Parties"), on the other hand. The JFL Parties and EA Parties are collectively referred to as the "Parties."

WHEREAS, JFL and FRANK entered into an Independent Contractor Agreement with EA effective November 1, 2013 (the "JFL Agreement") and prior to that time FRANK had been an employee of EA;

WHEREAS, SIMS entered into an Employment Agreement with EA dated March 1, 2014 (the "SIMS Employment Agreement");

WHEREAS, on or about February 28, 2016, JFL filed a Demand for Arbitration with JAMS against EA asserting claims for damages and other remedies for breach of contract, which demand was later amended to include claims for fraud, unjust enrichment, declaratory relief and punitive damages (the "JFL Arbitration");

WHEREAS, on or about May 20, 2016, JFL, FRANK, SIMS and STOLPER ceased practicing law at EA and formed a new law firm, FSS;

WHEREAS, the clients in the matters listed on Exhibit "A" (attached hereto) (collectively, the "Matters") terminated EA as their counsel in the Matters and retained FSS as their counsel in certain of the Matters;

WHEREAS, EA asserted attorneys' liens in the Matters and/or claimed it had the right to recover its reasonable attorneys' fees and costs for the work performed at EA on the Matters;

WHEREAS, on or about July 22, 2016, EA filed a Demand for Arbitration with JAMS against EA's former client, Kimberly Birbrower, seeking to recover fees and costs in the Birbrower v. Quorn Foods, Inc. matter, which is one of the Matters (the "EA/Birbrower Arbitration");

WHEREAS, on or about August 9, 2016, SIMS filed a Demand for Arbitration with JAMS against EA seeking certain sums owed under the SIMS Employment Agreement, including claims for breach of contract, fraud, accounting and constructive trust (the "SIMS Arbitration");

1

USAO373_00056929

WHEREAS, on or about September 23, 2016, EA filed counterclaims against SIMS in the SIMS Arbitration asserting claims for breach of contract, fraud, violation of the California Uniform Trade Secret Act, breach of fiduciary duty, breach of duty of loyalty, conversion, accounting, and constructive trust;

WHEREAS, on or about September 12, 2016, EA filed counterclaims against JFL in the JFL Arbitration asserting claims for breach of contract, fraud, breach of fiduciary duty, breach of duty of loyalty, conversion, accounting, constructive trust and tortious interference;

WHEREAS, on or about December 15, 2016, EA filed a complaint in California Superior Court, County of Orange, Case No. 30-2016-00892564-CU-BC-CJC against its former client, William Scott Callaway, seeking to recover fees and costs in the Callaway v. Mercedes Benz USA, Inc. et al. matter, which is one of the Matters (the "EA/Callaway Lawsuit");

WHEREAS, on or about December 21, 2016, EA filed a complaint in California Superior Court, County of Orange, Case No. 30-2016-00893847-CU-MC-CJC against Paul Root and Madison Street Partners, Inc. asserting claims for aiding and abetting breach of duty of loyalty and aiding and abetting fraud (the "EA/Root Lawsuit");

WHEREAS, on or about February 8, 2017, EA's former clients, Authentic Entertainment Properties, LLC and Authentic Entertainment Properties Development, LLC (collectively "AEP") filed a Demand for Arbitration with JAMS against EA seeking declaratory relief and damages relating to EA's former representation of AEP in the AEP v. Royal Center Associates, LLC et al. matter, which is one of the Matters (the "AEP/EA Arbitration");

WHEREAS, on or about February 28, 2017, EA filed a motion to adjudicate its attorney lien against AEP in the District Court for Clark County Nevada, in the AEP v. Royal Center Associates, LLC et al. matter, which such motion was denied and is currently being appealed by EA;

WHEREAS, on or about March 1, 2017, an Involuntary Bankruptcy Petition against EA, seeking that EA be a debtor in a Chapter 11 case was filed in the Middle District of Florida, Case No. 6:17-bk-01329-KSJ (the "Bankruptcy Case");

WHEREAS, on or about March 10, 2017, EA consented to entry of Order for Relief in the Bankruptcy Case;

WHEREAS, on or about May 16, 2017, the Bankruptcy Case was transferred to the Central District of California, Santa Ana Division, before the Honorable Catherine E. Bauer (the "Bankruptcy Court"), and assigned a new case number 8:17-bk-1191-CB;

WHEREAS, on or about June 19, 2017, JFL filed a Proof of Claim in the Bankruptcy Case in the amount of not less than $18,615,886, which included (a) $12,396,633 in unpaid compensation under the JFL Agreement; (b) $1,868,221 in prejudgment, prepetition interest; (c) $500,000 in pre-petition attorneys' fees and costs; and (d) fraud damages and punitive damages in an unliquidated amount but likely in excess of $4,000,000;

USAO373_00056930

WHEREAS, on or about June 19, 2017, FRANK, SIMS, STOLPER and FSS also filed Proofs of Claim in the Bankruptcy Case;

WHEREAS, on or about July 12, 2017, JFL filed a motion for relief from stay to proceed with the JFL Arbitration [Bankruptcy Case Docket Nos. 155, *et al.*] ("JFL RFS Motion"), the Debtor and certain other parties filed oppositions to the JFL RFS Motion, JFL filed a reply to those oppositions, a hearing on the JFL RFS Motion commenced on August 9, 2017 and was continued by direction of the Bankruptcy Court until September 20, 2017 and repeated times thereafter through and including December 13, 2017;

WHEREAS, AVENATTI is the managing member and majority equity holder of EA and solely owns and controls A&A;

WHEREAS, JFL, FRANK and SIMS have asserted that AVENATTI is personally liable to them for all or substantially all claims they have against EA and that A&A may be liable to them, all of which Avenatti and A&A dispute;

WHEREAS, it is in the personal, professional and business interests of AVENATTI and the professional and business interests of EA and A&A that the disputes among the JFL Parties and EA Parties be resolved promptly and each has concluded that he/it will received meaningful value if this Agreement is executed, approved and fully satisfied; and

WHEREAS, the Parties desire to resolve any and all disputes between them on the terms set forth herein (the "Settlement");

NOW THEREFORE, for and in consideration of the mutual covenants contained herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Dismissal of Bankruptcy Case.**

    1.1. Subject to Paragraph 1.5 below, the effectiveness of the terms and obligations of this Agreement are contingent upon (a) EA filing a motion ("Settlement and Dismissal Motion") with the Bankruptcy Court seeking entry of one or more orders (the "Orders") approving the Settlement and authorizing and directing the Debtor to fully comply with all terms of this Agreement pursuant to Fed. R. Bankr. Pro. 9019 ("Settlement Order"), and dismissing the Bankruptcy Case, pursuant to Bankruptcy Code Section 1112(b) ("Dismissal Order"), on terms acceptable to JFL and EA, on or before January 3, 2018,with a hearing on the Settlement and Dismissal Motion to be held on January 24, 2018; (b) entry of the Orders on or before January 31, 2018; (c) the Bankruptcy Case being dismissed within sixteen (16) calendar days after entry of the Dismissal Order; (d) execution of the Guaranty Agreement (as defined below), on or before December 12, 2017; and (e) if a stay of the Settlement Order or Dismissal Order has been entered pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure ("Rule 8007"), a

USAO373_00056931

Termination Notice, as defined in Paragraph 1.5 below, having not been provided by JFL or EA. The proposed Order(s) are attached as Exhibit B.

1.2.     The JFL Parties will not oppose any of the relief sought in the proposed Orders, nor will they encourage others to do so, all subject to the timely satisfaction of the deadlines set forth herein (collectively "Deadlines").

1.3.     In the event the Orders are not entered by the Deadlines for their entry, or the Guaranty Agreement is not executed by the pertinent Deadline for its execution, the Parties will be returned to the *status quo ante* prior to their execution of this Agreement, and the Agreement shall be deemed null and void, and neither this Agreement, its execution nor any statements contained therein may be used in any subsequent proceedings in any court or arbitration.

1.4.     The hearing on the JFL RFS Motion shall be continued until January 24, 2018.

1.5.     If a stay of the Settlement Order or Dismissal Order is entered pursuant to Rule 8007 (a "Stay Order") or if the terms of this Agreement are materially modified by the Court, then JFL or EA may elect to withdraw from and terminate this Agreement, in which case this Agreement and all Orders entered thereon will be rescinded and all Parties will be restored to the *status quo ante* prior to the execution of this Agreement, and the Agreement shall be deemed null and void, and neither this Agreement, its execution nor any statements contained therein may be used in any subsequent proceedings in any court or arbitration.  If JFL or EA elects to exercise this right to terminate this Agreement, it shall provide notice of this election to the other parties to this Agreement, in writing, within five (5) business days after the Stay Order is entered (the "Termination Notice").  Upon such election, the Parties will cooperate in taking any action necessary to request that the appropriate court vacate the Settlement Order, the Dismissal Order and Stay Order, and will not object to or oppose such actions.

1.6.     If a Stay Order is issued and neither JFL or EA elect to terminate the Agreement in accordance with Paragraph 1.5, then the time for performing all obligations under this Agreement will commence upon the later of: (a) sixteen (16) calendar days after the Stay Order is no longer in effect provided that the Settlement Order and Dismissal Order have been affirmed; or (b) the time when the obligation would have otherwise been required to be performed under the terms of this Agreement.

2.     **Resolution of EA's Asserted Liens and Right to Attorneys' Fees and Costs in the Matters.**

2.1.     Within sixteen (16) calendar days of entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, EA will withdraw all purported liens asserted in the Matters and will forever waive and forego, with prejudice and finality, any present or future claims for attorneys' fees, costs, expenses, damages, or any other compensation or remedies arising out of or relating to the Matters.

USAO373_00056932

2.2.    Upon the sixteenth (16th) day following the entry of the Settlement Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, the EA Parties will be deemed to have released and forever waived and foregone, with prejudice and finality, any present or future claims for damages, legal fees and costs, or other remedies against (a) the JFL Parties, (b) the current, prior or future parties in the Matters; (c) the current, prior or future co-counsel of EA or FSS in the Matters, or (d) any other party or their counsel for claims arising out of or relating to the Matters, as more fully set forth in Section 5 of this Agreement.

2.3.    In exchange for the consideration provided under the terms of this Agreement, JFL has agreed to reduce its claim in the Bankruptcy Case, as set forth in paragraph 3.1, below, and SIMS, FRANK, STOLPER and FSS have agreed to waive, forego and withdraw each of their claims in the Bankruptcy Case, subject to and except for the terms of the Releases provided in Paragraph 5 below and compliance with the terms and conditions of this Agreement.

2.4.    In addition, the JFL Parties have agreed that EA will receive 50% of any and all legal fees which would otherwise be paid to FSS or FRANK in the future in connection with FSS's contingency agreement with AEP in the AEP v. Royal Center Associates, LLC et al. matter.  This arrangement will be documented in a separate written agreement between EA, AEP and FSS (the "AEP Fee Sharing Agreement"), the execution of which shall be required for this Agreement to take effect.  A copy of the AEP Fee Sharing Agreement is attached as Exhibit C.

3.    **Settlement Payments to JFL.**

3.1.    Upon entry of the Settlement Order, JFL will have an allowed claim against EA in the amount of TEN MILLION DOLLARS ($10,000,000.00), which claim ("JFL Allowed Claim") of JFL and liability of EA will survive dismissal of the Bankruptcy Case, and will not be subject to any further defenses, offsets, counterclaims, oppositions, answers, objections, contests, disputes or other challenges by any EA Party or any other party, provided, however, if (a) the Dismissal Order is not entered, (b) a Stay Order is entered and a Termination Notice is timely sent, or (c) the Settlement Order is overturned, vacated or remanded on appeal, then the JFL Allowed Claim will be null and void and the proof of claim it filed in the Bankruptcy Case and all the claims, rights, and damages asserted therein and in the JFL Arbitration will remain pending.  Nothing in this Paragraph 3.1 is intended to limit the rights of any Parties to enforce the terms of this Agreement.[1]

---

[1] For the avoidance of any doubt, the Parties arrived at the JFL Allowed Claim amount of TEN MILLION DOLLARS ($10,000,000.00) after deducting the credit for fees on the Matters as described in Paragraph 2.3 above and additionally JFL, thereafter, further agreed to reduce its claim to TEN MILLION DOLLARS ($10,000,000.00) as part of this Settlement.  In other words, the Allowed Claim of TEN MILLION DOLLARS ($10,000,000.00) will not be further reduced by any credit for fees, costs, expenses, damages or any other compensation allegedly owed on the Matters.

USAO373_00056933

3.2.    EA will pay JFL the sum of FOUR MILLION EIGHT HUNDRED AND FIFTY THOUSAND DOLLARS ($4,850,000.00) pursuant to the following schedule:

    3.2.1.    Within sixty (60) calendar days after the entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007 and remains in effect, EA will wire JFL the sum of TWO MILLION DOLLARS ($2,000,000.00), in immediately available funds, pursuant to written wire instructions to be provided by JFL.

    3.2.2.    Within one-hundred and twenty (120) calendar days after the entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007 and remains in effect, EA will wire JFL the sum of TWO MILLION EIGHT HUNDRED AND FIFTY THOUSAND DOLLARS ($2,850,000.00), in immediately available funds, pursuant to written wire instructions to be provided by JFL.

    3.2.3.    The payments to be made in accordance with Paragraphs 3.2.1 and 3.2.2 are collectively referred to as the "Settlement Payments."

3.3.    In consideration of the terms of this Agreement, including, without limitation, the Releases set forth herein and the nature and pendency of the disputes between JFL and the EA Parties, AVENATTI agrees to personally guarantee, in his individual capacity, the FOUR MILLION EIGHT HUNDRED FIFTY THOUSAND DOLLARS ($4,850,000.00) of Settlement Payments.  The complete terms of this guaranty shall be set forth in a separate agreement ("Guaranty Agreement") between JFL and AVENATTI. A copy of the Guaranty Agreement is attached as Exhibit D.

3.4.    As will be set forth in the Guaranty Agreement, it is the intention of JFL and AVENATTI that AVENATTI's payment obligations under the Guaranty Agreement shall be non-dischargeable, under 11 U.S.C. Section 523(b) in the event AVENATTI becomes a debtor in a bankruptcy case while the Settlement Payments remain outstanding and thereafter to the extent any party in (1) AVENATTI's bankruptcy case or (2) a subsequent bankruptcy case or similar proceeding in which EA is the debtor or has a similar role seeks to recover all or any portion of the Settlement Payments.

3.5.    If the Settlement Payments are paid by EA to JFL within the timeframes and in the manner required by this Agreement, then effective 367 calendar days after the final Settlement Payment is received by JFL, JFL will waive and forego its right to collect any part of the remaining FIVE MILLION ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($5,150,000.00) of its allowed claim.

3.6.    <u>Remedy Upon Payment Default.</u>  If the Settlement Payments are not made within three (3) business days of the applicable Settlement Payment date due, then all of the EA Parties agree that they will not oppose the entry by the Bankruptcy Court of a final, non-

USAO373_00056934

appealable judgment against EA in favor of JFL in the amount of TEN MILLION DOLLARS minus any amounts previously paid to JFL pursuant to this Agreement (the "Final Judgment"), and will not oppose the reopening of the Bankruptcy Case for the limited and sole purpose only of entering this Final Judgment. JFL and the EA Parties expressly consent to the exclusive jurisdiction of the Bankruptcy Court to enter this Final Judgment against EA. By seeking or obtaining any of the relief described in this paragraph, JFL will not in any way waive or otherwise prejudice or impact its right to enforce the personal guarantee and Guaranty Agreement set forth in Paragraphs 3.3 and 3.4 of the Agreement.

4. **Dismissal of Lawsuits and Arbitrations.**

4.1.     Within sixteen (16) calendar days of entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, the commencing party in each of the following actions shall dismiss the actions and all claims therein with prejudice: (a) the JFL Arbitration and EA's counterclaims therein; and (b) the SIMS Arbitration and EA's counterclaims therein. With respect to the other litigation, EA will not pursue the EA/Birbrower Arbitration, the EA/Callaway Lawsuit, the EA/Root Lawsuit or any claims against AEP. AEP has dismissed, without prejudice, the AEP/EA Arbitration.

5. **Releases**.

5.1.     **Release of EA Parties by JFL Parties**. Effective upon the latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, and in consideration of the terms of this Agreement and other good and valuable consideration, JFL, FRANK, SIMS, STOLPER and FSS on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, owners, employees, heirs, parents, children, spouses, and related organizations hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the EA Parties, and each of them, and every one of their respective partners, officers, directors, owners, agents, employees, companies, parents, subsidiaries, divisions, affiliates, attorneys, trustees, legatee, personal representative, administrators, insurers, fiduciaries, executors, representatives, predecessors, successors, assigns, related parties, heirs, parents, children and spouses from and for any and all claims, causes of action, liabilities, damages, legal or administrative relief, of any basis or source, whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future, including, but not limited to, any and all claims raised in the JFL Arbitration, the Sims Arbitration or the Bankruptcy Case and/or any and all claims arising out of or relating to the JFL Agreement, the Sims Agreement and JFL's, Frank's, Sims' or Stolper's employment at or other rendition of services at EA. However, and notwithstanding any other terms in this Agreement, this release <u>does</u> <u>not</u> include or in any way release or waive claims held by any of the JFL Parties for indemnification, contribution and insurance coverage for any claims brought against them related to their employment at, or rendition of services at,

USAO373_00056935

EA, including without limitation indemnification for tax liability that they may have now or in the future against EA. Further, notwithstanding the foregoing or any other terms of this Agreement, the releases set forth in this paragraph shall not operate to release the EA Parties from any of their payment and other covenants, obligations and duties under this Agreement or the Guaranty Agreement, nor will they in any way waive, limit or foreclose any of the JFL Parties from seeking and obtaining any appropriate remedies for any violation of the terms of this Agreement or the Guaranty Agreement.

5.2.    **Release of JFL Parties by the EA Parties.** Effective upon the latest of (a) entry of the Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, and in consideration of the terms of this Agreement and other good and valuable consideration, EA, EAGAN, A&A and AVENATTI on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, heirs, parents, children, spouses, creditors, owners, executors, trustees and related parties hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the JFL Parties, and each of them, and every one of their respective partners, officers, directors, owners, agents, employees, companies, subsidiaries, divisions, affiliates, attorneys, trustees, legatee or personal representative, administrators, insurers, fiduciaries, executors, representatives, predecessors, successors, assigns, related organizations, heirs, parents, children and spouses from and for any and all claims, causes of action, liabilities, damages, legal or administrative relief, of any basis or source, whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future.  This release includes, but is not limited to any and all claims or counterclaims raised in the JFL Arbitration, the SIMS Arbitration or the Bankruptcy Case and/or any and all claims arising out of or relating to the JFL Agreement, the SIMS Agreement or the Parties employment at EA or other rendition of services at EA, or any and all claims for tortious interference, unfair competition, misappropriation, trade secret, conversion, fraud, breach of fiduciary duty, breach of duty or other such claims against the JFL Parties.  Notwithstanding the foregoing, theses releases shall not operate to release the JFL Parties from any of their covenants, obligations and duties under this Agreement or the Guaranty Agreement, nor will they in any way waive, limit or foreclose any of the EA Parties from seeking and obtaining any appropriate remedies or relief for any violation of the terms of this Agreement or the Guaranty Agreement.

5.3.    **Release of Counsel in the Matters by the EA Parties.**  Effective upon the latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, and in consideration of the terms of this Agreement and other good and valuable consideration, each of EA, EAGAN, A&A and AVENATTI on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, heirs, parents, children, spouses, creditors and related organizations hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the current, past or future co-counsel, in-house counsel, local counsel or subsequent

USAO373_00056936

counsel for current, past or future clients of FSS in the Matters for any claims for attorneys' fees, costs, expenses, damages, or any other compensation or remedies arising out of or related to the matters listed on Exhibit "A," whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future.   The persons and entities covered by this release include, but are not limited to: (a) Franklin D. Azar & Associates, P.C., Franklin D. Azar, Esq. Keith R. Scranton, Esq. and Jonathan Parrott, Esq.; (b) Law Offices of Steven R. Young and Steven R. Young, Esq.; (c) Girardi Keese, LLP and James O'Callahan, Esq.; (d) McNicholas & McNicholas, LLP, Patrick McNicholas, Esq., Matthew McNicholas, Esq., Philip Shakhnis Esq., and Michael J. Kent, Esq.; (e) Yuhl Carr LLP, Eric Yuhl, Esq. and Colin Yuhl Esq.; (f) Snell & Wilmer LLP and Steve T. Graham; (g) Lewis Roca Rothgerber Christie LLP and Dan R. Waite, Esq.; (h) Bridgford Gleason & Artinian, Richard K. Bridgford, Esq. and Michael H. Artinian, Esq.; (i) Orrick, Herrington & Sutcliffe LLP and Jörg Ritter, Esq.; (j) Osborn Machler and Simeon J. Osborn, Esq.; (k) Smyth & Mason PLLC and Jeffrey Smyth Esq. and (l) FSS, FRANK, SIMS and STOLPER as well as their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees and related organizations.

5.4. **Release of the Clients in the Matters by the EA Parties.** Effective upon the latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, each of EA, EAGAN, A&A and AVENATTI on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, heirs, parents, children, spouses, creditors and related organizations hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the clients and class members in the Matters for any claims for attorneys' fees, costs, expenses, damages, or any other compensation or remedies arising out of or related to the Matters whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future. The persons and entities covered by this release include, but are not limited to: (a) Kimberly Birbrower; (b) William (Scott) and Elizabeth Callaway; (c) Authentic Entertainment Properties, LLP, Authentic Entertainment Properties Development, LLP, RCC Company, LLC, Robert Coffman, Robert O'Neil and Steve Graham; (d) Hannes Kuhn; (e) Gary and Louise Weaver; (f) Jeffrey Wall; (g) the Estate of Jonathan A. Spound, Corey Spound, Michael Spound, and Amy Spound; (h) Skylar Ward; (i) Jamie Deehan; (j) Rasheed, Robinson and Jiminez; (k) Shayna Broadstone and Kristine Billon; (l) Benjamin Lagunas, Dianna Mendoza and Susan Jung; and (m) Al Chaffee, Yuping Chen, Jeanne Demund, Laird Devick, Todd Hager, Ash Hanlon, Peter Heathcote, Nathaniel Heathcote, Mike Scheffler, Matthew Wahlman and Michael Wilson, as well as their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, related organizations, heirs, parents, siblings and children.

6. **Waiver of Civil Code § 1542**. Each of the Parties has read and understood the following language contained in Section 1542 of the California Civil Code:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT

USAO373_00056937

TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
OF HER MUST HAVE MATERIALLY AFFECTED HIS OR
HER SETTLEMENT WITH THE DEBTOR.

To the extent that Section 1542 is applicable, each of the Parties hereto expressly waives
all rights, if any, that they may have under this statute.

7.      **No Admission of Liability**.   This Agreement is made in settlement of claims and
allegations which are denied, disputed, and contested.   Neither this Agreement nor
anything contained in this Agreement shall be construed as an admission of any fact,
issue, liability, or responsibility by any Party hereto to any other Party hereto, all of
which are expressly denied.

8.      **Assignment**.   Each of the Parties represents and warrants that he, she, or it has not
assigned or transferred to any person not a Party to this Agreement any part or portion of
any matter released under this Agreement, and each Party agrees to defend, indemnify,
and hold harmless the other Parties against any claim (including the payment of
attorneys' fees and costs actually incurred whether or not litigation or other proceedings
are commenced) based on or in connection with, or arising out of any such assignment or
transfer made, purported, or claimed.   Each of the Parties represents and warrants that he,
she, or it will not assign or transfer to any person not a Party to this Agreement any part
or portion of any obligations or liabilities created under this Agreement, except that JFL
may assign its rights to receive the Settlement Payments to any party, in its sole
discretion, and no Party may assign any of its other rights or obligations.   Each Party
agrees to defend, indemnify, and hold harmless the other Parties against any claim
(including the payment of attorneys' fees and costs actually incurred whether or not
litigation or other proceedings are commenced) based on or in connection with, or arising
out of any such assignment or transfer made, purported, or claimed in violation of this
paragraph.

9.      **Indemnification of Claims Brought by Green Street Advisors, LLC**.   The EA Parties,
and each of them, hereby agree they will fully indemnify the JFL Parties and the Estate of
Jonathan A. Spound and its Administrators, Corey and Michael Spound, for any and all
claims brought by Green Street Advisors, LLC ("Green Street") against them individually
or collectively for amounts owed under the Service Engagement Agreement entered into
between EA and Green Street in the matter Spound v. SSV Properties et al., dated March
31, 2016, and modified by an Addendum with the same date (the "Green Street
Engagement"), including but not limited to providing a defense and paying for all
reasonable attorneys' fees, costs and expenses incurred defending against such claims.

10.     **Mutual Non-Defamation**.   Each of the Parties agree that they will not make any
defamatory statements about each other to any third party, whether orally or in writing.

USAO373_00056938

11.  **Changes to FSS Website.**  At the request of EA, FSS has made changes to its website with respect to matters that were previously resolved at EA, and those changes will remain in effect as long as such matters are included on the website.

12.  **EA Cooperation on Fee Applications.**  EA will cooperate with FSS to promptly compile and provide FSS with all time sheets, emails and other records documenting the time spent at EA on the disputed Matters so that FSS may submit such time in support of any necessary fee applications or other motion practice.

13.  **EA Agreement to Automatically Forward Emails.**  EA shall arrange to have all emails sent to the EA email addresses for FRANK, SIMS, STOLPER or Maritza Nowowiejski automatically forwarded to FRANK, SIMS, STOLPER and Maritza Nowowiejski at FSS for a period expiring no earlier than December 31, 2018, and thereafter disable the email addresses.

14.  **EA Agreement to Delete FRANK's Personal Folder.**  EA agrees that FRANK will be provided with access to his personal folder on EA's computer system, and upon request, will permanently delete any such items from EA's system.

15.  **Destruction of Documents and Use in Future Legal Proceedings.**  Within sixteen (16) calendar days of entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, the Parties and each of their respective attorneys, consultants, experts, agents, and representatives and any other person or entity under the direction or control of any of them, and any other person or entity that they caused information to be disseminated to will destroy the original and all copies of the following materials and documents, whether in hard copy or electronic form:

    - All discovery, documents, materials, and electronic files received from any Party that were marked confidential.

    The Parties shall also jointly request JAMS and its arbitrators to destroy its entire file relating to the JFL arbitration, with the exception of billing information, within 10 days or other reasonable time period proposed by JAMS and agreed to by the Parties, and carry out all reasonable steps to ensure compliance.

    Further, to the extent consistent with their professional, ethical and legal obligations, the Parties further agree they will not use the following documents in any subsequent legal proceeding, litigation or arbitration, unless the litigation is between the Parties:

    - All discovery responses provided by any Party during the JFL Arbitration;
    - All orders entered by any arbitrator during the JFL Arbitration relating to discovery or sanctions;
    - All pleadings relating to any motion for sanctions and/or terminating sanctions submitted in connection with the JFL arbitration, including but not limited to all exhibits filed in connection with any such pleading.

USAO373_00056939

16.     **Payment, Dismissal and Release Obligations Are Not Excused by Alleged Breaches of this Agreement.**  The payment, dismissal and release obligations set forth in this Agreement and the Guaranty Agreement will not be delayed or excused by any alleged breach or violation of Section 7 through 27 of this Agreement.  However, any such breaches may be remedied pursuant to the dispute resolution procedures set forth in Paragraph 21 of this Agreement.

17.     **Representations and Warranties.**  The Parties hereto represent and warrant that each has read and understood and has received independent legal advice with respect to the advisability of making this Agreement, and/or has had the opportunity to obtain such legal advice and has knowingly entered into this Agreement without taking advantage of the opportunity to obtain such advice.  Each Party has made such investigation of the facts pertaining to this Agreement and of all other matters pertaining hereto as they deem necessary.  The Parties hereto represent and warrant that each signatory hereto has the full right and authority to enter into this Agreement and bind the Party on whose behalf he, she, or it has executed this Agreement.

18.     **Further Assurances.**  Each Party hereto agrees to cooperate fully and to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement and which are not inconsistent with its terms and intent.

19.     **Headings.**  The various headings in this Agreement are inserted for convenience only, and shall not be deemed a part of or in any manner affect this Agreement or any provision hereof.

20.     **Governing Law.**  This Agreement shall be governed and construed in accordance with the substantive laws of the State of California and the United States Bankruptcy Code.  Respective counsel for each Party hereto has participated in the drafting of, read, and approved the language of this Agreement.  The language of this Agreement shall be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties hereto.

21.     **Dispute Resolution Procedure.**  Any disputes regarding this Agreement, with the exception of the procedures set forth in Paragraph 3.6 above pertaining to failures to make the Settlement Payments in accordance with the terms of this Agreement, shall be first submitted to the Honorable Louis Meisinger to resolve in mediation, and the cost of the mediation shall be equally borne by the JFL Parties, on the one hand, and the EA Parties, on the other hand.  If the Parties are unable to resolve the dispute, then 10 days after the mediation, they will submit the claim to binding arbitration before Benchmark Resolution Group, Inc. (the organization recently formed by Judge Meisinger) in Los Angeles, California to be resolved employing their rules and procedures for arbitration.

22.     **Waiver/Severability.**  The Parties agree that no waiver by any Party of any particular provision or right under this Agreement shall be deemed to be a waiver of any other

USAO373_00056940

provision or right herein.  The Parties further agree that each provision or term of this Agreement is intended to be severable from the others so that if any particular provision or term hereof is or determined to be illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the legality or validity of the remaining provisions and terms hereof.

23.     **Attorneys' Fees**.  The Parties agree that should any relief be brought by any Party to enforce any provision or right under this Agreement, the prevailing party shall be entitled to recover, in addition to any other relief, reasonable attorneys' fees and costs incurred therein.

24.     **Entire Agreement.**   This Agreement constitutes the sole and entire agreement and understanding between the Parties concerning the subject matter hereof and supersedes all prior agreements and understandings between the Parties on those subjects hereto with the exception of (a) the AEP Fee Sharing Agreement and the Guaranty Agreement and (b) the Separation Agreement entered into between EA and STOLPER dated May 23, 2016 (the "STOLPER Separation Agreement").  If there is an inconsistency between this Agreement and the STOLPER Separation Agreement, this Agreement will control. Each of the Parties hereto acknowledge to each of the other Parties that no other Party or any agent or attorney of any Party has made any promise, representation or warranty whatsoever, express or implied, written or oral, not contained herein concerning the subject matter hereof to induce him, her, or it to execute this Agreement, and each of the Parties hereto acknowledges that he, she, or it has not executed this Agreement in reliance on any promise, representation or warranty not expressly contained herein.  No person has any authority to make any representation or promise on behalf of any Party that is not set forth herein.   This Agreement may be modified only with a written instrument duly executed by each of the Parties hereto.

25.     **Binding Agreement.**   This Agreement shall bind and shall inure to the benefit of successors and assigns of each Party.   With respect to the individual Parties, this Agreement shall also bind and inure to the benefit of his or her heirs, assigns, executors, legatees, administrators and personal representatives.  With respect to the entity Parties, this Agreement shall also bind and inure to the benefit of any parent, affiliate, predecessor-in-interest, successor-in-interest, transferee, endorsee, or assign.

26.     **Notice Provision**.  Any and all notices required by this Agreement shall be mailed and emailed in writing to the following:

26.1.   **To the JFL Parties**.  To Jason Frank, Scott Sims, & Andrew Stolper, Frank Sims & Stolper LLP, 19800 McArthur Blvd., Suite 855, Irvine, California 92612, jfrank@lawfss.com; ssims@lawfss.com; astolper@lawfss.com

26.2.   **To the EA Parties**.  To Michael Avenatti & Michael Eagan, Eagan Avenatti, LLP, 520 Newport Center Drive, Ste. 1400, Newport Beach, CA 92660, mavenatti@eaganavenatti.com.

USAO373_00056941

27. **Execution/Counterparts.** This Agreement may be executed in counterparts, and a facsimile or PDF signature shall have the same force and effect as an original signature penned in ink. When each of the Parties hereto has signed and delivered at least one such counterpart to all other Parties or their counsel, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one fully executed agreement which shall be binding upon and effective as to all Parties.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the day and year indicated below.

December 12, 2017

EAGAN AVENATTI LLP

Michael J. Avenatti
Its Managing Partner

December 12, 2017

AVENATTI & ASSOCIATES, APC

Michael J. Avenatti
Its President

December 12, 2017

MICHAEL J. AVENATTI

Michael J. Avenatti
In his individual capacity

December 12, 2017

MICHAEL Q. EAGAN

Michael Q. Eagan
In his individual capacity

December 12, 2017

JASON FRANK LAW, PLC

Jason M. Frank
Its President

137774123.8

14

USAO373_00056942

December 2, 2017

FRANK SIMS & STOLPER, LLP

Jason M. Frank
Partner

December 12, 2017

JASON M. FRANK

Jason M. Frank
In his individual capacity

December 12, 2017

SCOTT H. SIMS

Scott H. Sims
In his individual capacity

December __, 2017

ANDREW D. STOLPER

Andrew D. Stolper
In his individual capacity

APPROVED AS TO FORM:

January 30, 2018
~~December __, 2017~~

PACHULSKI STANG ZIEHL & JONES LLP

~~Richard M. Pachulski~~ Robert M, Saunders
Counsel to Eagan Avenatti LLP

137774123.8                           15

December 22, 2017                 PERKINS COIE LLP

                                 _____
                                 Sara L. Chenetz
                                 Counsel to the JFL Parties

December __, 2017                 SULMEYER KUPETZ LLP

                                 _____
                                 Marc Haroupian
                                 Counsel to Michael Avenatti and Avenatti &
                                 Associates APC

137774123.8                          16

USAO373_00056944

December __, 2017          PERKINS COIE LLP


_____
Sara L. Chenetz
Counsel to the JFL Parties

December __, 2017          SULMEYER KUPETZ ~~LLP~~ APC


_____
~~Marc Haroupian~~
Counsel to Michael Avenatti and Avenatti &
Associates APC

MARK HOROUPIAN

137774123.8          16

USAO373_00056945

# Exhibit A to Settlement Agreement

| Case Name |
|---|
| **1.  Birbrower v. Quorn Foods, Inc.**<br><br>•   Nationwide class action for false advertising |
| **2.  Callaway v. Mercedes Benz USA, Inc.**<br><br>•   California class action concerning defective seat heaters |
| **3.  Authentic Entertainment Properties v. Royal Center et al.**<br><br>•   Breach of Joint Venture Agreement |
| **4.  Weaver v. Southern California Edison, et al.**<br><br>•   Personal injury action<br>•   Plaintiff is Jason Frank's cousin |
| **5.  Shine v. Williams Sonoma.**<br><br>•   California employment class action challenging on-call shift policy |
| **6.  Ward v. Tilly's**<br><br>•   California employment class action challenging on-call shift policy |
| **7.  Deehan v. Gap, Inc.**<br><br>•   California employment class action challenging on-call shift policy |
| **8.  Rasheed v. Gap, Inc.**<br><br>•   California employment class action challenging on-call shift policy |
| **9.  Broadstone v. Pacific Sunwear**<br><br>•   California employment class action challenging on-call shift policy |
| **10. Broadstone/Billon v. Bath & Body**<br><br>•   California employment class action challenging on-call shift policy |
| **11. Robinson v. BCBG**<br><br>•   California employment class action challenging on-call shift policy |
| **12. Lagunas v. Ambercrombie**<br><br>•   California employment class action challenging on-call shift policy |
| **13. Jiminez (Dylan)**<br><br>•   Unaware of any case by this name |

USAO373_00056946

| **14. RFF v. Spound** |
| --- |
| • Hourly breach of contract case representing Defendant<br>• Incorrectly listed on EA's schedule as a plaintiff case |
| **15. Hannes Kuhn** |
| **16. Chaffe v. Keller Rohrback** |
| • Attorney malpractice action |
| **17. Eldard (Wall) v. Hewlett Packard** |
| • California employment class action for waiting time penalties |

USAO373_00056947