UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
:
UNITED STATES OF AMERICA          :
:
     - *v.* -                         :         S1 19 Cr. 373 (PGG)
:
MICHAEL AVENATTI,                 :
:
         Defendant.           :
:
-------------------------------------------------------x


# MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO THE DEFENDANT'S MOTION TO COMPEL THE TESTIMONY OF MARK GERAGOS


GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

Matthew D. Podolsky
Daniel C. Richenthal
Robert B. Sobelman
Assistant United States Attorneys

- Of Counsel -

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1
BACKGROUND .............................................................................................................................. 1
ARGUMENT .................................................................................................................................... 4
I.   ATTORNEY-1 MAY NOT BE COMPELLED TO TESTIFY WITHOUT IMMUNITY .. 4
II.  THE COURT SHOULD NOT COMPEL IMMUNITY ....................................................... 6
     A.  Applicable Law ................................................................................................ 6
     B.  Discussion ........................................................................................................ 7
CONCLUSION ............................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**CASES**

*Boucher v. DiLorenzo*, No. 84 Civ. 7868 (CBM), 1986 WL 14971 (S.D.N.Y. Dec. 15, 1986) ..... 6

*Hoffman v. United States*, 341 U.S. 479 (1951) .................................................................................. 4

*Kastigar v. United States*, 406 U.S. 441 (1972) .................................................................................. 4

*United States v. Berg*, 710 F. Supp. 438 (E.D.N.Y. 1989) ................................................................ 9

*United States v. Diaz*, 176 F.3d 52 (2d Cir. 1999) ............................................................................. 6

*United States v. Dolah*, 245 F.3d 98 (2d Cir. 2001) .......................................................................... 7

*United States v. Ebbers*, 458 F.3d 110 (2d Cir. 2006) ............................................................ 6, 7, 8, 10

*United States v. Ferguson*, 676 F.3d 260 (2d Cir. 2011) ................................................................. 7

*United States v. Gage*, 331 F. App'x 547, 2009 WL 2700322 (9th Cir. 2009) .......................... 10

*United States v. James*, 609 F.2d 36 (2d Cir. 1979) ........................................................................ 5

*United States v. Kaplan*, 490 F.3d 110 (2d Cir. 2007) ..................................................................... 9

*United States v. Longstreet*, 567 F.3d 911 (7th Cir. 2009) ............................................................. 5

*United States v. Miranti*, 253 F.2d 135 (2d Cir. 1958) ................................................................. 5, 6

*United States v. Oldbear*, 568 F.3d 814 (10th Cir. 2009) ................................................................ 9

*United States v. Praetorius*, 622 F.2d 1054 (2d Cir. 1979) ............................................................ 7

*United States v. Stewart*, 907 F.3d 677 (2d Cir. 2018) .......................................................... 4, 7, 8

*United States v. Turkish*, 623 F.2d 769 (2d Cir. 1980) ................................................................... 7

**RULES**

Fed. R. Evid. 701. ................................................................................................................................... 9

**OTHER AUTHORITIES**

Justice Manual, § 9-23.214
https://www.justice.gov/jm/jm-9-23000-witness-immunity#9-23.214 ......................................... 8

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                      :
   UNITED STATES OF AMERICA                           :
                                                      :
              - v. -                                  :    S1 19 Cr. 373 (PGG)
                                                      :
   MICHAEL AVENATTI,                                  :
                                                      :
                         Defendant.                   :
                                                      :
------------------------------------------------------x
```

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the defendant's motion to compel the testimony of Mark Geragos, referred to in the Superseding Indictment and herein as Attorney-1 ("Def. Mot.") (Dkt. No. 169).

## BACKGROUND

As set forth in detail in the Complaint, Indictment, and Superseding Indictment, the defendant is charged with wrongfully using information obtained from his client (or potential client), Client-1, in a failed effort to extort NIKE, Inc. ("Nike"), a public corporation, into paying at least $15 million, not to the client, but directly to the defendant himself, in exchange for declining to publicly disclose Client-1's information and settling any potential claims Client-1 might have had.  Unbeknownst to Client-1, the defendant used a second attorney—Attorney-1, who had a prior relationship with certain executives at Nike—to make contact with Nike and arrange the phone calls and meetings in which the defendant carried out his scheme.  (*See* Indictment ¶ 8.)  Attorney-1 attended those phone calls and meetings, during which the defendant threatened that he would publicly disclose potentially damaging information about Nike unless Nike agreed, among other things, to retain the defendant and Attorney-1 to conduct a purported

internal investigation of Nike. (*See* S1 Indictment ¶¶ 1-2, 10-11, 13-14.) The defendant did not inform his client of his demands or of Nike's responses, much less receive authorization for what he did, but instead misled his client regarding the nature of his "negotiations," concealed facts from his client, and misused and threatened to misuse his client's confidential information. (S1 Indictment ¶¶ 10, 11(f), 14(g).)

On May 22, 2019, the grand jury returned the first Indictment, charging the defendant in four counts with transmission of interstate communications with intent to extort, extortion, and conspiracy to commit each offense. On June 3, 2019, and June 24, 2019, Attorney-1 met with the Government pursuant to what is commonly referred to as an "innocence proffer" agreement, under which Attorney-1 agreed that he would not seek to prevent the Government from offering against him at trial, were he to be charged, statements made by Attorney-1 at those meetings.[1]

During the meetings, Attorney-1 stated, in substance and among other things, the following (as confirmed in 3500 material provided to the defendant and the Court):

- Attorney-1 did not have criminal intent and did not want or intend to extort Nike.

- In Fall 2018, the defendant obtained a loan from Attorney-1 for $250,000, which the defendant told Attorney-1 would be used to cover the defendant's payroll and rent for his law firm.[2] Attorney-1 later loaned the defendant additional money, including in March 2019, immediately prior to and during the charged conduct in this case.

- Attorney-1 never met with or spoke to Client-1.

---

[1] The defendant asserts that the presence of certain senior members of the United States Attorney's Office at a prior attorney proffer, which Attorney-1 did not attend, was "*unique—if not unprecedented.*" (Def. Mot. 10 (emphasis in original).) That characterization is both inaccurate and irrelevant.

[2] Contrary to what he told Attorney-1, the defendant in fact used the money obtained from Attorney-1 to, among other things, repay money stolen from a client so that the client would not notice the money had been taken. The defendant has been separately charged by this office with defrauding that client. *See United States v. Michael Avenatti*, No. 19 Cr. 374 (DAB).

- Attorney-1 never discussed with the defendant what Client-1 wanted, and never spoke to the defendant about the defendant's goals or strategy. Attorney-1 thought that Client-1's potential claim might have been for wrongful termination, but was not aware of whether or not Client-1 was an employee of Nike.

- The defendant told Attorney-1 that Nike would pay a lot of money for an internal investigation. Attorney-1 believed that the defendant included Attorney-1 in his demand for an internal investigation to make the idea more palatable to Nike and to leverage Attorney-1's relationship with Nike to increase the payoff to Client-1 and to the defendant.

- Attorney-1 never had discussions with the defendant about a potential lawsuit, a draft complaint, or anything related to preparing for a lawsuit related to Client-1.

- Attorney-1 believed that there was a problem when, during the March 21 meeting with the defendant and Nike's attorneys (which was recorded, unbeknownst to Attorney-1 or the defendant, at the direction of law enforcement), one of Nike's attorneys asked whether the defendant would accept a lump-sum payment in lieu of payment for an internal investigation.

- At that point in the meeting, Attorney-1 and the defendant stepped out of the meeting and spoke privately. In that conversation, Attorney-1 told the defendant that Attorney-1 was uncomfortable with the request and further told the defendant that (1) the discussions were going down a road that they could not go down, and (2) the defendant had to convey to his client the proposed payoff. Attorney-1 thought that they could not be paid to stay silent regarding the defendant's client's potential claims, and was thinking about a prior extortion case of which he was aware.[3]

---

[3] The defendant states that it "simply is not true" that Attorney-1 told the Government that he expressed concern to the defendant that he had crossed a line. (Def. Mot. 2 n.1; *see also id.* at 12.) The Government's memorandum memorializing Attorney-1's proffer statements, while of course not a verbatim recitation of Attorney-1's statements, states that Attorney-1 "was uncomfortable with the request" by Nike's attorney for "a lump sum payment." (3557-09, at 5.) Attorney-1 then "told [the defendant] that it was going down a road, he did not think they could go down." (*Id.*) Attorney-1 specifically "told [the defendant] during the break, following the meeting, and in a text that he was not comfortable with the situation." (*Id.*) Attorney-1 "thought they might be treading close to the line where the payoff does not bring finality." (*Id.*) Nonetheless, the defendant returned after the break to request a lump-sum payment, and "became fixated with the lump sum payoff." (*Id.* at 6.) Attorney-1 "should have walked away and washed his hands at this point." (*Id.*)

The defendant also makes numerous other conclusory, unsupported, and inaccurate assertions of what, according to the defendant, is allegedly is undisputed, would purportedly be said by Attorney-1 if he testifies, or occurred in conversations that were audio- and video-recorded. (*See, e.g.*, Def. Mot. 8 n.3; *id.* at 14; *id.* at 19-20.)

3

- After the break, despite Attorney-1's warnings, the defendant stated that he would accept a $22.5 million lump-sum payment to remain silent.

- Following that meeting, Attorney-1 again told the defendant that he was uncomfortable, and that the defendant could not accept a payoff without Client-1 being on board.[4]

On November 13, 2019, the grand jury returned the Superseding Indictment, charging the defendant with (1) transmission of interstate communications with intent to extort; (2) extortion; and (3) honest services wire fraud.

## ARGUMENT

### I. ATTORNEY-1 MAY NOT BE COMPELLED TO TESTIFY WITHOUT IMMUNITY

"[T]he Fifth Amendment privilege against compulsory self-incrimination . . . protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972). "'The privilege afforded not only extends to answers that would in themselves support a conviction under a . . . criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a . . . crime.'" *United States v. Stewart*, 907 F.3d 677, 684 (2d Cir. 2018) (per curiam) (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)) (ellipses in *Stewart*).

The defendant argues, without citation to authority, that Attorney-1 may be compelled to testify in this case, without immunity, because (1) he waived his Fifth Amendment privilege by proffering with the Government; and (2) the defendant believes the Government will not prosecute Attorney-1. (Def. Mot. 18-19.) Both of these contentions are foreclosed by controlling law.

---

[4] In fact, the defendant never informed Client-1 about any of his threats or demands, including the demand for a $22.5 million lump-sum payment.

4

*First*, it has long been the law that engaging in a proffer session with the Government, or otherwise voluntarily speaking on a manner, does not waive an individual's right to invoke the Fifth Amendment if compelled to testify about the same subjects in a later proceeding. *See, e.g.*, *United States v. James*, 609 F.2d 36, 45 (2d Cir. 1979) (statements made to law enforcement and to the grand jury did not waive ability to invoke privilege against self-incrimination at later trial because "[a] waiver of the privilege in one proceeding does not affect a witness'[s] rights in another proceeding"); *United States v. Miranti*, 253 F.2d 135, 139 (2d Cir. 1958) ("The government does not contend that the statements previously made by [a witness] to the FBI constitute a waiver of the privilege against self-incrimination to deprive him of the right to invoke the privilege in this grand jury hearing.  Such contention would be frivolous because it is well established that a waiver of the privilege in one proceeding does not affect the rights of a witness or the accused in another independent proceeding."); *see also United States v. Longstreet*, 567 F.3d 911, 923 (7th Cir. 2009) (Fifth Amendment privilege not waived by proffer with the government).  Indeed, if the defendant were correct, his argument would significantly hinder the ability of the government to engage in proffer sessions, as anyone who engaged in a proffer with the government could later be compelled to testify.

*Second*, the defendant's opinion that "the government has obviously decided not to prosecute" Attorney-1 (Def. Mot. 19), even if accurate, would not void Attorney-1's Fifth Amendment privilege.  Nor is the defendant's assertion accurate that the Government has somehow formally "exonerated" Attorney-1 (*id.* at 18) by not charging him in the Superseding

5

Indictment.[5] The Second Circuit has already addressed "whether or not a witness can invoke his privilege against self-incrimination where practically there is only a slight possibility of prosecution" and found "no justification for limiting the historic protections of the Fifth Amendment by creating an exception to the general rule which would nullify the privilege whenever it appears that the government would not undertake to prosecute." *Miranti*, 253 F.2d at 139; *see also Boucher v. DiLorenzo*, No. 84 Civ. 7868 (CBM), 1986 WL 14971, at *1-2 (S.D.N.Y. Dec. 15, 1986) (same).

## II. THE COURT SHOULD NOT COMPEL IMMUNITY

In the event that the Court disagrees with the defendant that Attorney-1 has waived or otherwise cannot invoke his Fifth Amendment privilege, the defendant seeks an order compelling the Government to immunize Attorney-1 or dismissing the Superseding Indictment. (Def. Mot. 19-20.) The defendant does not meet his heavy burden to be entitled to such an extraordinary order.

### A. Applicable Law

"The government is under no general obligation to grant use immunity to witnesses the defense designates as potentially helpful to its case but who will invoke the Fifth Amendment if not immunized." *United States v. Ebbers*, 458 F.3d 110, 118 (2d Cir. 2006); *see also United States v. Diaz*, 176 F.3d 52, 115 (2d Cir. 1999) (absent extraordinary circumstances, "the Due Process Clause imposes no requirement that defense witness immunity be ordered whenever it seems fair to grant it" (internal quotation marks omitted)). Because immunity is "preeminently a function of

---

[5] To be clear, the Government has at no time represented publicly or to any party that, under no circumstances, might Attorney-1 be charged. Moreover, even assuming such a representation had been made, the United States Attorney's Office for the Southern District of New York could not and does not bind other prosecuting authorities—either state or federal—that might have an interest in the conduct at issue.

the Executive Branch," *United States v. Turkish*, 623 F.2d 769, 776 (2d Cir. 1980), "as a general rule the Government may not be required to confer immunity for the benefit of the defense," *United States v. Dolah*, 245 F.3d 98, 105 (2d Cir. 2001), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36, 63 (2004).

A defendant requesting such relief must make a two-pronged showing:

> First, the defendant must show that the government has used immunity in a discriminatory way, has forced a potential witness to invoke the Fifth Amendment through overreaching, or has deliberately denied immunity for the purpose of withholding exculpatory evidence and gaining tactical advantage through such manipulation. . . . Second, the defendant must show that the evidence to be given by an immunized witness will be material, exculpatory and not cumulative and is not obtainable from any other source.

*Stewart*, 907 F.3d at 685 (quoting *Ebbers*, 458 F.3d at 119) (ellipsis in *Stewart*).

The Second Circuit has recognized that this is a burden that will rarely, if ever, be met:

> "The situations in which the United States is required to grant statutory immunity to a defense witness are few and exceptional." So few and exceptional are they that, in the nearly thirty years since establishing a test for when immunity must be granted, we have yet to reverse a failure to immunize.

*United States v. Ferguson*, 676 F.3d 260, 291 (2d Cir. 2011) (quoting *United States v. Praetorius*, 622 F.2d 1054, 1064 (2d Cir. 1979)); *see also Stewart*, 907 F.3d at 685 (noting that the Second Circuit still had not reversed a failure to immunize and that that "case [wa]s no exception").

### B. Discussion

The defendant does not and cannot meet either of the required showings for what he seeks.

*First*, the defendant makes no real effort to demonstrate that "that the government has used immunity in a discriminatory way, has forced a potential witness to invoke the Fifth Amendment through overreaching, or has deliberately denied immunity for the purpose of withholding exculpatory evidence and gaining tactical advantage through such manipulation." *Stewart*, 907

7

F.3d at 685.  And for good reason: The Government has not provided immunity to any witness in this case (or entered into a non-prosecution or deferred prosecution agreement with any witness in this case), nor has the Government taken any other action whatsoever regarding a potential invocation by any witness of the Fifth Amendment.  *See Ebbers*, 458 F.3d at 119-20.  The failure to make the requisite showing regarding the first prong is fatal to the defendant's motion, and the Court need not even address the second prong.  *See Stewart*, 907 F.3d at 686.[6]

*Second*, and even assuming that the Court were to overlook that fatal defect and consider the second prong, the defendant's arguments on that prong fail as well.  In support of his position that Attorney-1's expected testimony would be exculpatory, the defendant provides a list of statements that he allegedly believes Attorney-1 would make at trial.  (Def. Mot. 11.)  What is notable about this list is that none of this theoretical testimony is relevant or admissible—because all of it goes solely to Attorney-1's own state of mind, which is not at issue.[7]  In short, it appears that the defendant's goal is to have Attorney-1 testify that Attorney-1 did not himself have criminal

---

[6]     The sole attempt that the defendant makes to try to meet the required first prong is to characterize certain statements by Attorney-1's counsel, during a meeting not attended by Attorney-1, which the defendant suggests, without elaboration, may have constituted a proposal that the Government agree not to charge Attorney-1 in return for Attorney-1 not assisting the defendant.  (Def. Mot. 11-12.)  That suggestion is entirely baseless, as it is grounded solely on a characterization of advocacy by Attorney-1's counsel and not upon any statement of Attorney-1 or, more importantly, on any actual agreement with or statement by the Government.  The defendant similarly suggests that counsel for the Government somehow did something improper in informing the defendant that the Government "will not immunize Mr. Geragos 'at this time.'" (*Id.* at 14.)  The defendant does not even attempt to explain how it was unusual, much less improper, for Government counsel to advise, consistent with Department of Justice policy (*see* https://www.justice.gov/jm/jm-9-23000-witness-immunity#9-23.214), that after considering all of the facts and circumstances of this case, it had no present intention to seek immunity.

[7]     To the extent that it is even conceivably relevant to the defendant's state of mind "that [Attorney-1], a highly respected criminal defense lawyer, was a full participant with [the defendant]" (Def. Mot. 11), Attorney-1's testimony would be cumulative, as it will be clear from the testimony of other witnesses and the audio- and video-recordings that Attorney-1 was present and participated, at least to a limited degree, in conversations with Nike's lawyers.

8

intent. However, such testimony is not admissible to prove the defendant's intent. *See United States v. Kaplan*, 490 F.3d 110, 122 (2d Cir. 2007) (holding district court erred in admitting evidence of one person's knowledge to show defendant's knowledge, expressing doubt that evidence was relevant, and explaining that, in any event, it should have been precluded under Federal Rule of Evidence 403 because it "required [the jury] to draw a series of inferences, unsupported by other evidence," yet was offered on "the ultimate issue in the case"); *see also, e.g.*, *United States v. Oldbear*, 568 F.3d 814, 821 (10th Cir. 2009) (affirming preclusion of evidence in embezzlement case as to how persons other than defendant used funds because "only [the defendant's] actions and state of mind were material to her guilt"); *United States v. Berg*, 710 F. Supp. 438, 445 (E.D.N.Y. 1989) (testimony concerning the "custom of other arms dealers in complying with arms export laws" precluded on the ground that such evidence was irrelevant to the state of mind of defendants), *aff'd in part, rev'd in part on other grounds sub nom. United States v. Schwartz*, 924 F.2d 410 (2d Cir. 1991). Moreover, Attorney-1 has stated that he never met Client-1 and did not discuss with the defendant either the defendant's goals or strategies or Client-1's goals or strategies, and therefore Attorney-1's state of mind has no probative value as to the defendant's.[8]

---

[8] The defendant states that he "is in full agreement with [Attorney-1] that neither he nor [Attorney-1] did anything improper, let alone criminal," in what the defendant misleadingly calls "short-lived settlement discussions with Nike on behalf of" Client-1. (Def. Mot. 4.) But, as explained above, Attorney-1 has not said that the defendant did not do anything improper, and Attorney-1 lacked key factual information necessary to evaluate the defendant's conduct. Nor, more generally, could Attorney-1 offer such an opinion or conclusory testimony at trial. *See* Fed. R. Evid. 701.

Nor would Attorney-1's testimony, even if admissible, be materially exculpatory of the defendant.[9] Among other things, as discussed above, Attorney-1 would be expected to testify that he never spoke to Client-1 (or to the defendant about Client-1's goals), and therefore any assumptions he might have made regarding Client-1's goals—or about the propriety of the defendant's conduct as it pertained to Client-1 and those goals—were no more than that. And, as noted above, when the defendant expressed interest in a lump-sum payoff, Attorney-1 told the defendant that he was uncomfortable with such a payoff and that the defendant would have to inform his client before pursuing such an arrangement. Nevertheless, the defendant continued to pursue the lump-sum payment and did not inform his client (as demonstrated by independent evidence). In short, Attorney-1's expected testimony is at least largely inculpatory as to the defendant. The defendant therefore cannot make the necessary showing under the second prong. *See, e.g.*, *Ebbers*, 458 F.3d at 119; *see also United States v. Gage*, 331 F. App'x 547, 2009 WL 2700322, at *1 (9th Cir. 2009) (reversing district court order requiring immunity because "[d]ue process compels use immunity only for defense witnesses who will offer testimony that directly contradicts the testimony of a government witness who has been given use immunity" and "[d]irect contradiction means more than just different subjective interpretations of the same facts").

Finally, there is equally little merit to the defendant's repeated suggestion that the failure of Attorney-1 to testify would somehow "distort the fact-finding process" (Def. Mot. 21; *see also id.* at 17, 18, 19), even if that were the standard on a motion to compel immunity, which it is

---

[9] The defendant also suggests that the Government has previously conceded to the contrary, stating that "the government now claims that [Attorney-1's] statements—*which were produced to the defense as **exculpatory** materials under Brady*—are not in fact as exculpatory as they appear on the four corners of the proffer notes." (Def. Mot. 12 (emphasis in original).) Not only is the argument irrelevant but it is also false. The transmittal letter accompanying these materials stated that "[t]he Government does not agree that you are entitled to all of these materials at this time or otherwise, but provides them to you in their entirety, in response to your recent request and consistent with our telephonic conversation."

10

not. As explained above, the relevant, material, admissible testimony that Attorney-1 might add to the trial is his account of the separate, unrecorded conversation between himself and the defendant during the March 21 meeting in which he expressed that he was uncomfortable with the circumstances and advised the defendant not to pursue a lump-sum payment and to inform his client—advice that the defendant entirely ignored. The remainder of the testimony that the defendant seeks to introduce through Attorney-1, even assuming that Attorney-1 would give such testimony, would be irrelevant and improper, as Attorney-1's own state of mind is not at issue in this trial.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion should be denied.

Dated:  New York, New York
        January 20, 2020

                                    Respectfully submitted,

                                    GEOFFREY S. BERMAN
                                    United States Attorney

                        By:     s/ Matthew D. Podolsky
                                Matthew D. Podolsky
                                Daniel C. Richenthal
                                Robert B. Sobelman
                                Assistant United States Attorneys
                                (212) 637-1947/2109/2616