**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 20, 2020

**BY ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Michael Avenatti*,
             S1 19 Cr. 373 (PGG)

Dear Judge Gardephe:

      The Government respectfully writes with respect to (a) certain materials marked as defense exhibits that the Government believes to be inadmissible in whole or in part, and (b) certain names or phrases that the Government is concerned the defendant may use in his opening statement or in cross-examination of Government witnesses that are irrelevant or, at least depending on how the defendant uses them, risk inflaming or confusing the jury. The Government requests that the Court order the defendant not to describe such materials or to use names or phrases before the jury, including in his opening statement or cross-examination, absent a sufficient proffer, not in front of the jury, as to their relevance and admissibility. The Government also requests that the Court order the defendant not to cross-examine witnesses about their prior political work, alleged political views, or campaign donations, if any, which have no relevance and risk juror confusion.[1]

---

[1] The defendant provided a list of materials that he may seek to offer during the Government's case-in-chief on January 15, 2020, the date previously agreed upon by the parties. On January 17, 2020, the Government emailed the defendant's counsel and asked about the defendant's intentions with respect to these materials and certain names or phrases, requesting a response by the following afternoon, January 18, 2020. In addition, the Government asked about the defendant's intentions with respect to potential cross-examination regarding witnesses' prior political work, alleged political views, or campaign donations, if any, issues that the Government previously raised with defense counsel and that defense counsel had represented at the time it was not prepared to commit not to pursue. The Government also offered to confer regarding these subjects. Defense counsel have not responded, in whole or in part. The Government also has concerns about other materials marked as defense exhibits, such as internal texts and emails of NIKE, Inc. ("Nike") not authored or received by any witness with relevant testimony, but believes that these concerns are fairly encompassed within prior briefing. The Government will provide a complete list of those materials marked as defense exhibits about which it has concerns, or expand on any of the points discussed herein, upon request. The Government will also be prepared to discuss these matters at the conference scheduled for this Wednesday, January 22, 2020, at 10:00 a.m.

Honorable Paul G. Gardephe
United States District Judge
January 20, 2020
Page 2

### A. Law Firm Biographies

The defendant has marked three biographies, which appear to be printouts from law firm webpages. One is his own (DX K), one is that of Mark Geragos (DX X), and one is of an associate of Mr. Geragos (DX Y). (Ex. A.) None is relevant or admissible. All risk substantial juror confusion or distraction.

None of these materials, or any similar materials, could be offered by the defendant for the truth of any matter asserted therein. *See* Fed. R. Evid. 802. It is equally indisputable that the defendant is not permitted to offer his own biography, which contains what the defendant presumably views as prior good acts or accomplishments, or any similar document, to suggest that he must not have committed the charged acts. *See, e.g.*, *United States v. Benedetto*, 571 F.2d 1246, 1249-50 (2d Cir. 1978); *United States v. Fazio*, No. 11 Cr. 873 (KBF), 2012 WL 1203943, at *5 (S.D.N.Y. Apr. 11, 2012), *aff'd*, 770 F.3d 160 (2d Cir. 2014). The Government is similarly unaware of any authority permitting a defendant to offer evidence of the alleged prior good acts of those with whom he associated (or those with whom such a person in turn associated).

The only conceivably proper purpose for offering these biographies might be to seek to demonstrate a contemporaneous state of mind of a lay witness. But no such purpose could be achieved by offering these materials, since they all post-date the charged conduct—all appear to have been printed out either last month or this month. Nor is there any evidence of which the Government is aware that any lay witness who both saw and relied upon the content of such materials, even if they were from the proper time period, in forming a relevant state of mind that would bear on a contested fact to be determined by the jury. In any event, these materials generally, and the defendant's self-serving biography in particular, are filled with irrelevant, misleading, confusing, distracting, and/or potentially politically charged or controversial references, such as to the defendant's alleged campaign work, including for former Vice-President Joseph R. Biden; a case against O.J. Simpson; and a lawsuit against President Donald J. Trump. Given that type of content, even assuming *arguendo* that the defendant could articulate some modicum of theoretical relevance to these materials, they should be precluded under Federal Rule of Evidence 403.[2]

---

[2] The Government also notes that, if the defendant's biography is admitted, or if the defendant were to cross-examine witnesses or make arguments resting on the alleged achievements described therein, that would open the door to, among other things, evidence that the defendant has previously been accused of and/or committed ethical violations and fraud against clients. Moreover, although targeted evidence of the defendant's financial condition in March 2019, and in particular, his own statements, is admissible in any event, this biography or any suggestion that the defendant was highly successful would open the door to additional such evidence. (*See* Jan. 14, 2020 Transcript of Telephonic Conference, at 50 (Court: "I think everyone probably understands that if Mr. Avenatti or his counsel were to go down the road of I am a highly successful lawyer and why would I ever stoop to extorting Nike for 15 to $25 million, in other words, any sort of witness examination or argument along those lines would immediately open the door.").)

### B. Unrelated Federal Civil Complaints Filed Since 2009

The defendant has marked 637 pages of prior federal civil complaints filed by him or his former law firm(s) (DX DD) since 2009, including a lawsuit by Stephanie Clifford, a/k/a "Stormy Daniels," against President Trump (*id.* at 583-637). (Exs. B-C.[3]) No proper purpose could possibly be served by offering or describing any of these materials (which are also inadmissible hearsay if offered for the truth of their assertions). As Government explained in its reply in support of its motions *in limine* (Dkt. No. 118, at 21-22), it is undisputed that the defendant is a lawyer who has filed civil suits or held press conferences in the past; indeed, the Government expects that Client-1 and/or other witnesses will testify on direct examination that they understood this when they hired or interacted with the defendant. The specific nature and content of prior lawsuits have no bearing on any fact of relevance. And even if they did, any modicum of relevance is far outweighed by the manifest risk of confusion, distraction, unfair prejudice, and the introduction of potentially politically charged or controversial matters in this individual criminal case caused by the defendant offering the nature and content of prior lawsuits purportedly for an undisputed point that does not turn on such information.[4]

### C. The National Collegiate Athletic Association Division I Manual From 2016-2017

The defendant has marked the 314-page National Collegiate Athletic Association ("NCAA") Division I Manual from 2016-2017 at an exhibit (DX L). (Ex. D.) The Government does not understand the relevance or admissibility of this document. The only conceivable purpose in seeking to offer it—which purpose would, in any event, not require offering all of it—would be to seek to demonstrate that certain alleged payments made by or at the direction of Nike violated NCAA rules. But as the Government has explained (*see, e.g.*, Dkt. No. 96, at 17; Dkt. No. 118, at 23 n.9), and the defendant previously appeared to acknowledge (Dkt. No. 52, at 8), that is *not* the theory of the Adidas-related prosecution which, of course, did not charge the defendants in that case with violating provisions of the NCAA manual. Even if the Court were inclined to permit the defendant to cross-examine Nike witnesses as to their alleged bias in favor of the Government in light of their understanding of that prosecution, there is no need for the defendant to seek to demonstrate that certain alleged payments allegedly violated certain NCAA rules, and any theoretical probative value in attempting to do so would be far outweighed by the confusion and distraction that would necessarily follow. This is particularly so because none of the Government's

---

[3] This defense exhibit is too large to docket as one PDF.

[4] This concern is not limited to the defendant's suit against President Trump. The defendant's exhibit includes a number of other potentially controversial and/or highly confusing matters, including a deferred prosecution agreement between the Department of Justice and American Express (DX DD, at 108-36), a lawsuit involving alleged fraud by an accounting firm (*id.* at 151-242), multiple lawsuits involving the alleged testing of cosmetic products on animals (*id.* at 243-68, 268-94, 295-314), and a lawsuit involving a fatal shooting by law enforcement officers (*id.* at 469-80). In addition, as above, admission of these materials, or cross-examination or argument resting on them, would also open to the door to, among other things, evidence that the defendant has previously been accused of and/or committed ethical violations and fraud against clients.

witnesses is an expert on NCAA rules, a representative of the NCAA, or otherwise competent to provide a definitive interpretation of those rules, which are not straightforward.

In short, this is not a trial about whether Nike in fact committed a crime, much less a trial about whether alleged payments in fact violated NCAA rules. *See United States v. Avenatti*, No. S1 19 Cr. 373 (PGG), 2020 WL 86768, at *5 n.2 (S.D.N.Y. Jan. 6, 2020) ("Evidence that Nike engaged in widespread corruption in the area of amateur basketball . . . does not provide a defense to the extortion and honest services wire fraud charges against Avenatti."). The defendant should not be permitted to suggest otherwise or to seek to confuse or distract the jury by turning his individual criminal trial into something else.

### D. Nike and Tyco International Ltd. Form 10-Ks

The defendant has marked the Nike 2017 and 2018 Form 10-Ks as exhibits (DXs N and O). (Ex. E.) He has also marked the Tyco International Ltd. ("Tyco") 2002 Form 10-K as an exhibit (DX II). (Ex. F.)[5] These documents too are irrelevant and inadmissible. They have presumably been marked in support of the defendant's apparent theory, which he has never expounded upon, that (i) a public company has a duty to report publicly certain information and (ii) Nike may not have done so here. (*See* Def. Requests to Charge (Dkt. No. 97), at 39.) As the Government explained in a letter responding to the defendant's requests to charge (Dkt. No. 111, at 9), that theory is both misleading and irrelevant. But even if there were some theoretical relevance to the defendant's theory, introducing the intricacies of securities laws and disclosures would be extraordinary confusing and distracting to the jury. Indeed, it is difficult to imagine a subject more likely to result in a complicated mini-trial. Moreover, even if the defendant were to demonstrate some purported need to cross-examine witnesses on his theory, there is no need for him to offer into evidence hundreds of pages of filings to prove the undisputed point that a public company is required to make certain disclosures, much less to offer a 168-page filing of an unrelated company, in an unrelated industry, from nearly two decades ago, filed under the then-applicable securities laws.

### E. Two Statements to the Media by Nike in 2017

The defendant has asked the Government to stipulate to the authenticity of two statements made to the media by Nike, and has listed that proposed stipulation on his exhibit list. The two statements, as described in a draft stipulation, are:

- Nike issued the following statement to the media on or about September 26, 2017: "Nike believes in fair and ethical play both in business and sports and strongly opposes any form of manipulation."

---

[5]   A Form 10-K is a public company's annual report filed with the Securities and Exchange Commission. *See* https://www.sec.gov/fast-answers/answers-form10khtm.html (last visited Jan. 20, 2020). The Tyco document is a Form 10-K/A, that is, an amended Form 10-K, but the Government does not understand that to be pertinent and refers to it herein as a Form 10-K.

- Nike issued the following statement to the media on or about September 28, 2017: "Nike firmly believes in compliance with laws and fair play in all sports. There are no allegations against Nike in the complaints and we are committed to cooperating with any government investigation into this matter."

Both of these statements substantially predate the events in this case, neither was made by a Government witness, and neither has any bearing on any fact to be determined by the jury. The only conceivable purpose of the defendant offering these statements—which are only a subset of what Nike has said, and omits what it has said about this case—would be to attempt to show that, contrary to certain statements made in 2017, Nike purportedly learned in 2019 from the defendant that certain of its employees had engaged in misconduct—to attempt, in short, to demonstrate that Nike is a "bad" company or that those in charge were unaware of certain alleged facts until the defendant brought those facts to Nike's attention. But Nike is not on trial. Nor are its employees. And nothing in these statements could plausibly be used to demonstrate that any Government witness at trial is not telling the truth about what happened in March 2019 (much of which is recorded), much less could the value of any such cross-examination outweigh the confusion and distraction necessitated by the statements' admission, which would likely require the Government offer evidence concerning, among other things, to what inquiries or events the statements were responding and how they were drafted.

### F. Nike's Code of Conduct

The defendant has marked Nike's code of conduct as an exhibit (DX P). (Exs. G-H.[6]) The version marked by the defendant appears to be from May 2019, and thus postdates the events in this case.[7] But even if it were from the operative time period, as with so much else that the defendant has marked or made plain he intends to try to do at trial, there is no conceivable purpose in offering this document except to seek to demonstrate that Nike is a "bad" or hypocritical company, which both has no bearing on any fact to be determined by the jury and would inevitably lead to a confusing, contentious, and distracting side-show.

### G. A *New York Times* Article on David Boies

The defendant has marked a lengthy profile in the *New York Times* of David Boies, from September 2018, as an exhibit (DX R). (Ex. I.) The Government understands that a link to this article was sent by Mr. Geragos to the defendant on March 13, 2019, and that it was viewed on the defendant's cellphone on March 18, 2019. The article has nothing to do with this case. It has nothing do with Nike, basketball, internal investigations, or any other fact or person of even theoretical relevance. At the same time, it expressly connects Mr. Boies to the law firm that he founded, Boies Schiller Flexner LLP, and contains extensive discussion of politically charged or highly controversial topics, including Mr. Boies's representation of and work for Harvey

---

[6] This defense exhibit is too large to docket as one PDF.

[7] The code of conduct is publicly available at https://purpose-cms-production01.s3.amazonaws.com/wp-content/uploads/2019/05/22191640/Nike-Inside-the-Lines-Code-of-Conduct_May_2019.pdf (last visited Jan. 20, 2020).

Honorable Paul G. Gardephe
United States District Judge
January 20, 2020
Page 6

Weinstein, an alleged "sexual predator," on behalf of whom Mr. Boies allegedly engaged "in an undercover operation to smear . . . victims and deceive Times reporters" (DX R, at 3) and his representation of President Trump (*id.* at 6). It also includes comments of a law professor about how "'legal ethics and the ethics of ordinary people'" may differ (*id.*) and Mr. Boies's view of what does or does not constitute a "conflict of interest" (*id.* at 15). The defendant has not explained why he wishes to offer this article, but the only comprehensible purpose appears to be to attempt to smear a law firm, call into question the ethics of those working for the firm (which includes at least one Government witness), and inflame and confuse the jury. To the extent that the defendant seeks to use the article in this way, it is inadmissible hearsay, irrelevant, and improper. And to the extent that the defendant may claim that the mere reading of this article (assuming he read all of it) somehow informed his then-existing state of mind, there is no conceivable relevance to whatever state of mind might have resulted from reading the article. In either case, even if there were some theoretical relevance to this article, it should be precluded under Rule 403.

### H.  Certain Names or Phrases

As noted above, prior to filing this letter motion, the Government asked defense counsel whether the defendant intended to use certain names or phrases in his opening statement or in cross-examination that, in the Government's view, are irrelevant or, at least depending on how the defendant uses them, risk inflaming or confusing the jury. Many are contained in the defendant's marked exhibits or prior submissions or both. The complete list sent to defense counsel is:

1. Stormy Daniels (or Stephanie Clifford)
2. Donald Trump (or any variant thereof, such President of the United States, the Administration, or the White House)
3. R. Kelly
4. Jeffrey Epstein
5. Rudy Giuliani
6. Colin Kaepernick
7. Republicans (or the Republican Party)
8. Conservatives
9. The Right
10. Democrats (or the Democratic Party)
11. Liberals
12. Progressives
13. The Left
14. Any other current or former public official or representative thereof, or term for a political affiliation or group.
15. Any other specific former client or adversary or person involved in a lawsuit brought or threatened to be brought by the defendant or Mark Geragos.

The Government is unaware of any material relevance of these names or phrases, much less does it appear that the probative value of using them outweighs the substantial risk of confusion, distraction, unfair prejudice, and the injection into this case or potentially politically charged or controversial matters having nothing to do with what the jury will be asked to decide. So too with the names Harvey Weinstein and Elizabeth Homes, both of which are discussed at

Honorable Paul G. Gardephe
United States District Judge
January 20, 2020
Page 7

some length in the article described above. The Court should order the defendant not to use such names or phrases before the jury, including in his opening statement or cross-examination, absent a sufficient proffer, not in front of the jury, as to their relevance and admissibility.

### I. Cross-Examination Regarding Witnesses' Prior Political Work, Alleged Political Views, or Campaign Donations, If Any

As also noted above, prior to filing this letter motion, the Government asked defense counsel whether the defendant intended to cross-examine witnesses about their prior political work, alleged political views, or campaign donations, if any, an issue that the Government previously raised with defense counsel and that defense counsel had represented at the time it was not prepared to commit not to pursue. The Court should preclude such a line of cross-examination. This case has nothing to with politics, and witnesses' prior political work, alleged political views (which are not, to the Government's knowledge, all on the same side of the political spectrum), or campaign donations, if any, do not bear in any way on their credibility, much less sufficiently so as to outweigh the substantial risk of juror confusion and distraction by a line of cross-examination that suggests otherwise.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:  s/ Daniel C. Richenthal
Matthew D. Podolsky
Daniel C. Richenthal
Robert B. Sobelman
Assistant United States Attorneys
(212) 637-1947/2109/2616

Enclosures

cc: (by ECF)

Counsel of Record