LAW OFFICES
# SCOTT A. SREBNICK, P.A.

SCOTT A. SREBNICK*
* ALSO ADMITTED IN NEW YORK

201 S. Biscayne Boulevard
Suite 1210
Miami, Florida 33131

Tel: 305-285-9019
Fax: 305-377-9937
E-mail: scott@srebnicklaw.com
www.srebnicklaw.com

January 20, 2020

**Via ECF**
Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

> Re:   *United States v. Avenatti*, No. S1 19 Cr. 373 (PGG)
>       Letter Regarding Office Manager's Testimony

Dear Judge Gardephe:

We write to supplement the letter we just filed regarding the outstanding money judgments with our position regarding the Office Manager's Testimony (Dkt. No. 148).

The government proposes to have the Office Manager testify that, at some point between March 15 and March 25, Mr. Avenatti called her to tell her that "he was about to receive enough money to pay off his debts." (Dkt. No. 148:2). According to the government, the Office Manager "*estimates* that the defendant's debts at that time [in March 2019] totaled approximately $20 million to $25 million." (Dkt. No. 148:2) (emphasis added). These are numbers seemingly plucked from the air, untethered to the actual personal judgments against Mr. Avenatti, and the government provides no basis for the Office Manager's estimate. Then, based on her *own (inaccurate) estimate* of his debts, the Office Manager is prepared to testify that she "thus *understood* that the defendant was communicat[ing] to the Office Manager that he soon expected to receive at least approximately $20 million to $25 million." (Dkt. No. 148:2). Notably, she will not testify that Mr. Avenatti *stated* that he expected to receive that amount or that he even mentioned any amount at all. Moreover, that amount makes no sense in view of the fact that Mr. Avenatti would have conducted the internal investigation jointly with Mr. Geragos' law firm and would have had to pay other lawyers, private investigators, accountants, and the like (as Mr. Geragos pointedly told the BSF lawyers), to conduct the investigation. The Office Manager's "estimate" of debt is irrelevant and her understanding of what was in Mr. Avenatti's mind is pure speculation.

Moreover, the proffered relevance for the Office Manager's testimony – that Mr. Avenatti's estimated cost for the internal investigation was somehow designed to virtually match dollar for dollar with his purported debts – is belied by the evidence. To be sure, Mr. Avenatti was not the first lawyer in the meetings to put any number on the internal

investigation: that was Mr. Wilson. In the March 19, 2019 meeting, Mr. Avenatti stated: "whatever the internal investigation costs, it costs." In the March 20, 2019 call, Mr. Avenatti repeatedly avoided assigning a number to it, asking Mr. Wilson over and over what Boies would charge for such an investigation and stating that he and Mr. Geragos would charge that amount. Eventually, Mr. Wilson stated: "Could an investigation like this hit the 10 to 20 million-dollar range? I suppose it could." Only then, in the March 21, 2019 meeting, did Mr. Avenatti provide his ask of a $15-25 million range. Thus, if this range was tethered to any number, it was to the numbers suggested by Mr. Wilson, not the Office Manager's estimate of Mr. Avenatti's debt.

Simply put, the Office Manager has no relevant testimony about Coach Gary Franklin, Mark Geragos, Nike, or the settlement negotiations. Her testimony will not make it more or less likely that Mr. Avenatti's conduct was "wrongful" or that he violated his duty of honest services to Coach Franklin through bribes or kickbacks. Her testimony should be excluded.

Respectfully,

/s/ Scott A. Srebnick
Scott A. Srebnick
Jose M. Quinon
E. Danya Perry