**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

MICHAEL AVENATTI,

       *Defendant*.

No. S1 19 Cr. 373 (PGG)

## MEMORANDUM OF LAW IN OPPOSITION TO NON-PARTY NIKE'S MOTION TO QUASH

Scott A. Srebnick
SCOTT A. SREBNICK, P.A.
201 South Biscayne Boulevard
Suite 1210
Miami, FL 33131
Telephone: (305) 285-9019
Facsimile: (305) 377-9937
E-Mail: Scott@srebnicklaw.com

Jose M. Quinon
JOSE M. QUINON, P.A.
2333 Brickell Avenue, Suite A-1
Miami, FL 33129
Telephone: (305) 858-5700
Facsimile: (305) 358-7848
E-Mail: jquinon@quinonlaw.com

E. Danya Perry
PERRY GUHA LLP
35 East 62nd Street
New York, New York 10065
Telephone: (212) 399-8340
Facsimile: (212) 399-8331
E-mail: dperry@perryguha.com

*Attorneys for Defendant Michael Avenatti*

## I. INTRODUCTION

Several weeks ago, Nike moved to quash the subpoenas served on a number of its witnesses, arguing that their testimony would be irrelevant and would create a mini-trial (Dkt. No. 114). Now, in its effort to drive home its argument that Mr. Avenatti is not entitled to a "'defense'" (Dkt. No. 139:2) (belittling quotations in original), Nike now moves to quash Mr. Avenatti's subpoenas *duces tecum* as well. Mr. Avenatti's requests are narrow, specific, focused, and call for highly relevant and indeed critical material for Mr. Avenatti's "defense." Nike's second motion to quash should be denied.

## II. BACKGROUND

### A. Mr. Avenatti's Trial Defense

In his response to Nike's motion to quash his trial subpoenas (Dkt. No. 131), Mr. Avenatti argued (among other things) that, as an essential piece of his defense, he is entitled to present evidence to the jury of Nike's bias and motive. Since the filing of that response, the government has produced additional 3500 and discovery material that make this defense all the more clear and all the more critical.[1]

Nike was served with a federal grand jury subpoena in September 2017, in connection with an investigation conducted by the United States Attorney's Office for the Southern District of New York into corruption within amateur basketball. Between October 2017 and May 2018, Nike produced slightly more than 11,000 pages of documents to the SDNY pursuant to that subpoena. Along the way, Nike's in-house and outside lawyers provided

---

[1] An abbreviated recitation of the facts contained in Mr. Avenatti's previous reply is repeated herein for the Court's convenience.

interim reports to SDNY about the status of its internal investigation. According to notes from those proffers,[2] *Nike largely exonerated itself during these meetings*. Nike stated that it had been aware of and frustrated by payments made by competitors Adidas and Under Armour to players, but that, in contrast, Nike itself had virtuously refused to pay players and their families. For example, on December 14, 2017, Nike's lawyers stated that there was evidence that Adidas and Under Armour were paying families to join their leagues, which was frustrating to Nike, but there was no evidence that Nike employees were paying players). And on January 31, 2018, Nike's lawyers reported that, according to EYBL executive John Stovall, Nike does not need to pay players because the players want to play for Nike.

Nike informed the government on May 4, 2018, that its investigation was substantially complete. As is apparent from its interim reports to the government and the dearth of incriminating documents it produced up to that date, Nike then took the position with the government that there was little or no evidence of systemic wrongdoing.

Some months after the conclusion of Nike's self-exonerating investigation, Coach Gary Franklin decided to come forward to seek "justice" against Nike. Toward that end, consultant Jeffrey Auerbach reached out to EYBL executives DeBose and James on January 28, 2019 to begin a dialogue about Coach Franklin and his complaints about them and Nike. Mr. James responded that they would have their lawyers look at it. Mr. Auerbach then spoke at length with Nike EVP John Slusher on February 6, 2019. During that call, Mr. Auerbach made specific allegations of corruption against Messrs. DeBose and James and described "how they

---

[2] Because many of the notes are illegible, the defense's understanding of them is somewhat limited at this time. The government has agreed to help us in deciphering the notes.

brought this corruption into California Supreme." (Dkt. No. 30-10:6). Mr. Auerbach made it clear that Coach Franklin "now wants Justice," which included "help[ing] the company clean-up EYB, get rid of the corruption and corrupt execs." (Dkt. No. 30-10:6). Mr. Slusher emailed Mr. Auerbach on February 11, 2019 to say: "Due to the seriousness of the matters you raised and how serious we take those situations, I immediately contacted my legal department and they are reviewing." (Dkt. No. 30-10:3). He also suggested that any additional communications would be best handled by Nike's "outside counsel that deals with EYBL matters," BSF. It is clear, then, that Nike immediately reached out to BSF in late January/early February with the news that Coach Franklin was prepared to blow the whistle on his allegations of corruption within Nike.

Almost immediately after Mr. Auerbach's outreach to Messrs. DeBose, James and Slusher, and with the full understanding that Coach Franklin was prepared to ensure that the corruption at Nike was investigated and exposed, Nike began producing documents to the SDNY grand jury once again. Thus, whereas Nike had not produced a single document in some nine months (since May 4, 2018), it now made several new batches of production, beginning on February 2, 2019.[3] It then produced two new batches of documents on February 11, 2019

---

[3] Nike states in its reply to its first motion to quash that the government had reached out to Nike with a specific request in mid-January 2019. (Dkt. No. 137). But that request had nothing to do with Gary Franklin or California Supreme – it had to do with three separate AAU teams. Tellingly, Nike produced many new documents relevant to Coach Franklin's allegations only after Mr. Auerbach reached out to Nike executives. And while Nike states in its reply papers that it had previously provided documents relevant to Coach Franklin on or before May 4, 2018, the fact remains that it produced reams of "supplemental" (Nike's word) documentation only *after* Mr. Auerbach's outreach, and indeed stated as much in transmittal letters to the government. Those additional documents include numerous fake remittance advices, invoice detail reports, payment requests, and invoices relating to California Supreme and other teams with similar issues.

and March 11, 2019. It also met with the government to provide a status update on its renewed internal investigation on March 17, 2019 – after BSF has begun its dialogue with Mr. Geragos about Nike's "Adidas problem" and only two days before the March 19, 2019 meeting. And then, after Mr. Avenatti's arrest on March 25, 2019 and as late as July 12, 2019 – nearly 21 months after being served with the grand jury subpoena – Nike produced a total of some 6,500 additional documents to the SDNY.  In total, as of July 12, 2019, Nike had produced more than 17,800 pages to the government – much of which was produced to the government only *after* it became aware through Mr. Auerbach that Coach Franklin was beginning to make noise about the corruption within EYBL.

As set forth in Mr. Avenatti's earlier filing, Nike was on edge before Mr. Avenatti walked in the door to the meeting with BSF on March 19, 2019.  Mr. Avenatti's theory of defense is that Nike was not fearful and did not feel threatened as a result of his statements; to the extent that Nike felt any concern, it was that it had a problem with SDNY. As is clear from the notes of the March 19 meeting, BSF attorney Scott Wilson did not react at all like a victim who was being extorted; he acted like a lawyer who was in a settlement negotiation with another set of lawyers on the other side. Yet he immediately reached out to the same SDNY prosecutors to whom BSF had been reporting the results of its anemic and self-exonerating investigation. Mr. Avenatti is entitled to argue and present evidence that Nike was motivated by a sense of self-preservation to cast itself as a cooperative victim.

Nike's mantra that it is not on trial is true. But, in short and as Mr. Avenatti has explained, Nike's other mantra – that Mr. Avenatti is not entitled to present a "defense" that implicates Nike's motives – is wrong as a matter of law.

### B. The Subpoenas *Duces Tecum* to Nike/BSF

Despite that Mr. Avenatti has asked for a limited set of materials from Nike and its counsel, Boies Schiller Flexner ("BSF"), Nike reflexively labels his request a "fishing expedition." Yet, Mr. Avenatti's requests are narrowly tailored and go to the heart of his defense. On January 20 and 21, 2020, counsel for the defense spoke with counsel at BSF in an effort to narrow its requests and come to some consensus. BSF remained steadfast that it is unwilling to provide *any* documents. Each of the defense's subpoena requests follow, along with an explanation of the ways in which the defense is willing to narrow its request and the significance of each request to the defense:

1. **All documents relating to Coach Gary Franklin and/or Jeffrey Auerbach from January 2019 through the present, including but not limited to, documents memorializing, discussing or involving outreach from Auerbach to Jamal James, Carlton Debose, and/or John Slusher, and any actions taken as a result of such outreach.** (*See* BSF Subpoena, Dkt. No. 139, Exh. A).[4]

---

[4] Requests 1 and 2 from the Nike Subpoena (as narrowed by the defense in our conversations with BSF) overlap with Request 1 from the BSF subpoena, and thus our explanation for why the requested documents are needed is the same and will not be repeated.
Request 1 from the Nike subpoena reads:
> All text messages, emails, notes, memoranda, and correspondence (without redaction) relating to, mentioning or concerning Michael Avenatti, Gary Franklin, Jeffrey Auerbach or Mark Geragos after January 25, 2019. Note: You are requested to produce all drafts of any such notes, emails, memoranda and correspondence, as well as all electronic files (complete with metadata) relating to the documents.

Request 2 from the Nike subpoena reads:
> All notes, memoranda, and summaries relating to, mentioning or concerning any communications or meetings with Mark Geragos, Gary Franklin, Jeffrey Auerbach or Michael Avenatti after January 25, 2019. Note: You are requested to produce all drafts of any such notes, memoranda or summaries, as well as all electronic files (complete with metadata) relating to the documents.

(*See* Nike Subpoena, Dkt. No. 139, Exh. B).

The defense has informed BSF that it is willing to narrow this request to any non-privileged internal Nike documents regarding Mr. Auerbach's outreach to Messrs. James, DeBose, and Slusher in January/February 2019. As set forth above, it is Mr. Avenatti's theory that Mr. Auerbach's outreach caused consternation within Nike that it would be exposed and that it would face scrutiny by the SDNY. It is therefore critical for the defense to establish Nike's reaction upon first learning of Coach Franklin's allegations and quest for "justice." In addition, it is important for the defense to establish Coach Franklin's interests as expressed directly to Nike. Coach Franklin and Mr. Auerbach are expected to testify that Mr. Avenatti was not authorized to make the demands that he made. Mr. Avenatti is entitled to evidence that will establish that indeed the demands that he made were in line with the earlier expression of Coach Franklin's interests, before Mr. Avenatti's involvement. The requested documents will establish the state of mind of Coach Franklin and Mr. Auerbach, which of course is a central element to Count Three.

> **2. All documents relating to, mentioning or concerning Michael Avenatti or Mark Geragos from March 1, 2019, through the present.** (BSF Subpoena, Dkt. No. 139, Exh. A).

These documents are important for the same reasons as the first category of documents. In addition, Nike and Boies witnesses will testify that they felt "threatened" and that they were concerned and anxious as a result of Mr. Avenatti's statements. Mr. Avenatti is therefore entitled to know, for example, what Nike's internal, real-time reaction was to him and Mr. Geragos.

> **3. All audio and/or video recordings of telephone calls and meetings in March 2019 involving Mark Geragos and/or Michael Avenatti.** (BSF Subpoena, Dkt. No. 139, Exh. A).

BSF has informed counsel that no recordings were made of the March 19, 2019 meeting or any of the phone calls that preceded the meeting. Accordingly, this request has been mooted and Mr. Avenatti withdraws it.

4. **All documents, including notes, memoranda, letters and summaries relating to, mentioning or concerning any communications or meetings with Mark Geragos or Michael Avenatti in March 2019. Note: You are requested to provide all drafts, handwritten or otherwise, of any such notes, memoranda, letters or summaries, as well as all electronic files (complete with metadata) relating to the documents.**

This request is as critical as it is simple. Nike/BSF claim that they have produced everything relevant to the subpoena to the government and, for its part, the government has represented to the defense that it has produced all of the notes that BSF has provided to the government regarding Mr. Avenatti and Mr. Geragos. Yet there are some glaring omissions. The defense has informed Nike/BSF that it is willing to limit the request to the following narrow sets of documents:

i. **Memorializations of Mr. Avenatti's Statements by Government Witness Homes**

Though both the March 20 call and the March 21 meeting were both recorded, Mr. Homes also took contemporaneous notes of those conversations. Those notes should have been produced as Rule 16 statements of the defendant and as Rule 3500 statements by a government witness. The government has informed the defense that it does not have these notes. BSF should produce them now to the defense, or the government should be required to obtain them and produce them.

Mr. Homes is a key government witness, and it was Mr. Homes who drafted the hand-written and typed notes of the unrecorded March 19 meeting. BSF had told the defense that it does not "need" the notes because it has the recorded conversations. Mr. Homes is a principal witness for the government who took contemporaneous notes of the *defendant's statements*. This is a case where every word matters, and portions of the recordings are unintelligible. The government produced two versions of Mr. Homes' notes (hand-written and typed) from the March 19 meeting, in accordance with its obligations to produce all of the defendant's statements to him. Mr. Homes' hand-written notes of conversations with Mr. Avenatti contain a version of his statements, just as the recordings do, and already should have been produced by the government to Mr. Avenatti. It is not for BSF to determine which version of Mr. Avenatti's statements it chooses to produce; all of them should be produced. Moreover, BSF has not previously withheld Mr. Homes' notes on the grounds of privilege; there is absolutely no logical reason to do so here.

Likewise, the defense requests electronic drafts of Mr. Homes' type-written notes from the March 19 meeting. Mr. Homes' notes are the only memorialization of that unrecorded meeting, which meeting is obviously a key component of the government's case against Mr. Avenatti. The defense seeks drafts and the metadata for the typed notes, including whether any other attorneys made any changes to them and what those changes are.

    **ii.**    **Memorialization of BSF outreach to SDNY**

BSF had at least two phone conversations with the SDNY on March 19, 2019, following the meeting with Messrs. Avenatti and Geragos. Mr. Homes told the government that he briefly took notes on one of those calls and that BSF associate Valecia Battle took notes

9

of both of those calls. As noted above, BSF's immediate post-meeting reaction to the March 19 meeting is an important window into BSF's actual perception of Mr. Avenatti's statements at the meeting. The government has produced notes drafted by Ms. Battle of a phone call between Messrs. Wilson and Geragos, but it either did not request or did not receive Ms. Battle's notes from the March 19 calls to SDNY. Understanding the importance of these calls to the defense, the government did produce notes taken by government attorneys of the call. Notes from the BSF side of those same calls are at least equally important to the defense.

5. **All documents, including emails, letters, correspondence and call logs with the Department of Justice and/or the United States Attorney's Office for the Southern District of New York and/or the FBI relating to Nike, Carlton Debose, Jamal James, Michael Avenatti and/or Mark Geragos, from September 26, 2017, through the present. Note: This includes all call logs and notes of calls with Department of Justice and/or the United States Attorney's Office for the Southern District of New York and/or in the FBI in February and March 2019.[5]**

Mr. Avenatti has informed BSF that it has received many of the above-requested documents from the government, and it therefore withdraws this request.

### III.  ARGUMENT

As set forth above, the defense has proposed to narrow down its subpoena to Nike and to BSF to just a few extremely narrow tailored, hyper-critical requests: (i) non-privileged internal communications regarding Messrs. Auerbach, Franklin, Geragos and Avenatti in

---

[5] Request 3 from the Nike Subpoena overlaps with Request 5 from the BSF subpoena and is withdrawn for the same reason. That request read:
>All emails, letters and correspondence with the Department of Justice, the United States Attorney's Office for the Southern District of New York and/or any other United States Attorney's Office relating to Nike, Carlton Dubose, Jamal James, Gary Franklin, Michael Avenatti or Mark Geragos.

(*See* Nike Subpoena, Dkt. No. 139, Exh. B).

January through March 2019; (ii) Mr. Homes' notes of statements made by Mr. Avenatti on March 20 and March 21, 2019, and drafts of Mr. Homes' notes prior to producing the final type-written notes of the March 19, 2019 meeting; and (iii) notes taken by a BSF lawyer on March 19, 2019 about the meeting with Mr. Avenatti earlier that day.  The documents requested under the subpoena easily meet the *Nixon* test for relevance, admissibility, and specificity. *See United States v. Nixon*, 418 U.S. 683, 700 (1974). Each of Nike/BSF's arguments for why the subpoenas should be quashed is mooted or meritless.

*First*, they argue that the subpoenas are overbroad (Dkt. No. 139: 5-6). Yet, they point to only one request to make this argument, the one to BSF requesting all documents to the SDNY from September 26, 2017 to the present.  Mr. Avenatti has withdrawn this request and has proposed to greatly narrow the breadth of the (already narrowly drawn) subpoenas, as described above.

*Second*, they claim that "many" of the requested documents could be obtained from the government. (Dkt. No. 139: 6). As set forth above, the defense has withdrawn the requests to the extent that the government has produced certain documents to the defense. But, as also set forth above, the documents that the defense continues to press are *not* in the government's hands; they are solely in the possession of Nike/BSF. Thus, this argument, too, fails.

*Third*, Nike and BSF claim that there is nothing that remains beyond what has been produced to the government that would not be privileged. (Dkt. No. 139: 5-6). As the defense has informed BSF, and as set forth herein, it does not seek privileged documents.

11

*Fourth*, Nike and BSF claim that, to the extent they have non-privileged documents that have not been produced to the government, the defense has not shown that the documents are relevant or that Mr. Avenatti cannot properly prepare for trial without them. (Dkt. No. 139:7-8). As explained at length above, the narrow universe of documents requested by Mr. Avenatti is relevant and, indeed, critical to his defense.

*Finally*, Nike and BSF argue that Rule 17(c) does not permit Mr. Avenatti to seek any of these documents for impeachment in advance of trial. (Dkt. No. 139:8). Trial will commence in such short order that this is a distinction without a difference.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Avenatti respectfully requests that the Court deny the motion by Nike and BSF motion to quash Mr. Avenatti's subpoenas *duces tecum*.

Dated:     January 21, 2020

Respectfully submitted

| | | | |
|---|---|---|---|
| By: | /s/Scott A. Srebnick<br>Scott A. Srebnick, P.A.<br>201 South Biscayne Boulevard<br>Suite 1210<br>Miami, FL 33131<br>Telephone: (305) 285-9019<br>Facsimile: (305) 377-9937<br>E-Mail: Scott@srebnicklaw.com | By:<br><br><br><br><br><br><br><br>By: | /s/Jose M. Quinon<br>Jose M. Quinon, P.A.<br>2333 Brickell Avenue, Suite A-1<br>Miami, FL 33129<br>Telephone: (305) 858-5700<br>Facsimile: (305) 358-7848<br>E-Mail: jquinon@quinonlaw.com<br><br>/s/ E. Danya Perry<br>E. Danya Perry<br>PERRY GUHA LLP<br>35 East 62nd Street<br>New York, New York 10065<br>Telephone: (212) 399-8340<br>Facsimile: (212) 399-8331<br>E-mail: dperry@perryguha.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2020, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

/s/Scott A. Srebnick

Scott A. Srebnick