UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

MICHAEL AVENATTI,

              Defendant.

No. 19 Cr. 373

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
NON-PARTY NIKE, INC.'S MOTION TO QUASH SUBPOENAS**

Peter M. Skinner
Andrew Z. Michaelson
David L. Simons
Victor Zapana
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2300
(f) +1 212 446 2380

*Attorneys for NIKE, Inc.*

NIKE, Inc. ("Nike") respectfully submits this reply memorandum of law in further support of its motion to quash Defendant Michael Avenatti's subpoenas *duces tecum* for certain materials that he believes may be in the possession of Nike or its attorneys at Boies Schiller Flexner LLP ("BSF").

## PRELIMINARY STATEMENT

Mr. Avenatti's opposition repeats many of the same false and misleading assertions regarding Nike's purported lack of cooperation that he made in opposing Nike's motion to quash his subpoenas for trial testimony. (*See generally* Dkt. 131.) Nike has addressed these claims at length, including by offering a chronology of its cooperation. (Dkt. 137 at 4-8.) Mr. Avenatti's latest brief offers <u>no facts</u> that call into question the adequacy of Nike's cooperation or BSF's investigation. Instead, he asks this Court to adopt a narrative contradicted by the factual record.

As this Court has previously ruled, Nike's conduct provides no defense to the charges against Mr. Avenatti. (*See* Order of Jan. 6, 2020 [122] (hereinafter "Jan. 6 Order") at 10 & n.2.)[1] Because Mr. Avenatti continues to demand irrelevant, inadmissible documents—or documents that are clearly intended only for impeachment—the Court should quash the subpoenas *duces tecum* issued to Nike and BSF.

## FACTUAL BACKGROUND

Following the receipt of a grand jury subpoena, Nike immediately began cooperating with SDNY and made a series of rolling document productions and factual proffers between October 2017 and May 2018. Beginning in January 2019, the Government reached out to Nike with follow-up requests, including specific requests regarding Mel McDonald. Nike made additional productions in February and March 2019 in response to these follow-up requests from SDNY.

---

[1] Despite its clear relevance to his arguments about Nike's conduct, Mr. Avenatti has yet to address the Jan. 6 Order in his motion papers regarding his subpoenas to Nike and BSF.

1

Mr. Avenatti claims that Nike produced these documents because it was concerned about its response to SDNY's subpoena following Jeffrey Auerbach's contact with Nike. But he offers no support for that claim, which is demonstrably incorrect. Put simply, as reflected in contemporaneous correspondence between SDNY and BSF, the Government requested new documents on top of those it had previously requested in the September 2017 subpoena:[2]

- On January 16, 2019 (12:30 P.M.), AUSA Aline Flodr emailed BSF to request banking information for three amateur basketball teams.
- On February 6, 2019 (11:40 A.M.), AUSA Flodr emailed BSF to request banking information and documents relating to any teams associated with Mr. McDonald. (This request encompassed documents relating to California Supreme, because Mr. McDonald was affiliated with the team for the 2016 and 2017 seasons.)
- On February 19, 2019 (12:19 P.M.), AUSA Flodr emailed BSF to request information about seven persons or entities, including Mr. McDonald.

In response to SDNY's new January and February 2019 requests, Nike produced a limited number of documents, including those concerning Mr. McDonald and California Supreme.

Nike had, however, previously produced to SDNY any documents that it had identified about Mr. McDonald and California Supreme that were responsive to the grand jury subpoena, including certain invoices from California Supreme. Mr. Avenatti's papers do not reference any significant document concerning Mr. McDonald or California Supreme that Nike produced to SDNY for the first time in response to the Government's follow-up requests. Further, Nike met with SDNY on March 12, 2019[3]—not March 17 as Mr. Avenatti erroneously claims (Opp. [187] at 5)—to discuss the Government's January and February 2019 requests, including Mr. McDonald and California Supreme, among other topics.

---

[2] Nike's understanding is that the Government has produced this correspondence to Mr. Avenatti (and the Court) as 3500 material. Mr. Avenatti does not address it.

[3] Contrary to Mr. Avenatti's narrative, this meeting occurred prior to any outreach by Mr. Avenatti or Mr. Geragos to Nike.

2

In sum, the facts reflect that prior to Mr. Auerbach's outreach to Nike, Nike was actively cooperating with the Government, including by producing documents and proffering on California Supreme at SDNY's request. There is no evidence that Nike's productions or proffers were influenced in any way by Mr. Auerbach.

Mr. Avenatti also continues to claim that the volume of Nike's document production after his arrest somehow proves Nike's lack of cooperation with the Government. As Nike has already explained at length (*see, e.g.*, Dkt. 137 at 4-8), following its meeting with Mr. Avenatti, it produced a small number of documents directly relevant to his allegations. And Nike made an additional production that consisted almost entirely of documents reflecting its communications with Gary Franklin or other individuals associated with California Supreme. Those documents were *not* responsive to the grand jury subpoena (since Nike had produced long before—no later than May 4, 2018—all the responsive documents it had identified). Despite having access to most (or possibly all) of the documents that Nike produced to the Government following his arrest, Mr. Avenatti makes no showing that Nike's explanation of its productions are inaccurate, or that its prior productions had been incomplete in any meaningful way.[4] Nor does he respond to Nike's earlier argument (Dkt. 137 at 4) that Mr. Avenatti himself frequently cites to documents that Nike produced to the Government on or before May 4, 2018, more than ten months before his contact with Nike.

## LEGAL STANDARD

Under *Nixon*, a party seeking documents must establish their "relevancy," "admissibility," and "specificity"—in other words, that (1) "the documents are evidentiary and relevant"; (2) "they are not otherwise procurable reasonably in advance of trial by the exercise of due diligence";

---

[4] Mr. Avenatti also fails to address Nike's statement that he was "either mistaken or deliberately misleading about the content of Nike's subsequent productions." (*See* Dkt. 137 at 7.)

3

(3) "the party cannot properly prepare for trial without such production" and "failure to obtain [the materials] may tend unreasonably to delay the trial"; and (4) "the application is made in good faith and is not intended as a general 'fishing expedition.'"  418 U.S. at 699-700; (*see also* Jan. 6 Order at 7-8).  If the party fails to meet any of these requirements, the Court may quash the subpoena. *See, e.g.*, *United States v. Pena*, No. 15-cr-551 (AJN), 2016 WL 8735699, at *2-3 (S.D.N.Y. Feb. 12, 2016).

## ARGUMENT

Mr. Avenatti now appears to seek four categories of documents, none of which he is entitled to under Rule 17(c):

*First*, Mr. Avenatti seeks notes that he asserts BSF attorney Valecia Battle took about phone conversations between BSF and the Government on March 19, 2019.  To the extent such notes exist, they fall under either the attorney-client or work product privileges—which Mr. Avenatti does not dispute (*see* Opp. at 10).  *See also, e.g.*, *Am. Civil Liberties Union v. NSA*, 925 F.3d 576, 589 (2d Cir. 2019); *Crosby v. City of New York*, 269 F.R.D. 267, 277 (S.D.N.Y. 2010).  Moreover, they are irrelevant to whether Mr. Avenatti committed the crimes for which he is charged.[5]  Finally, they are inadmissible hearsay, and the only conceivable use for them at trial would be for impeachment.  As this Court has previously ruled, Mr. Avenatti cannot use a Rule 17(c) subpoena to seek impeachment materials.  (Jan. 6 Order at 13 (citing *Nixon*, 418 U.S. at 701-02).)

---

[5] Mr. Avenatti posits that he is entitled to argue that "Nike was motivated by a sense of self-preservation to cast itself as a cooperative victim."  (Opp. at 5; *see also id.* ("Mr. Avenatti is . . . entitled to present a 'defense' that implicates Nike's motives . . . .").)  Whatever Nike's motivation to report Mr. Avenatti to the Government may have been, it is no defense to his crimes.  Nike anticipates that its counsel will testify at trial regarding its contact with the Government.  Mr. Avenatti can cross-examine them, but he cannot use a Rule 17(c) subpoena to obtain documents to impeach them.

*Second*, Mr. Avenatti seeks documents created by BSF attorney Benjamin Homes regarding calls and/or meetings with Mr. Avenatti.[6] Like Ms. Battle's, these notes constitute inadmissible hearsay and, if sought as impeachment evidence, cannot be acquired through a Rule 17(c) subpoena. In addition, Mr. Avenatti's request for Mr. Homes' notes of communications with Mr. Avenatti that were recorded (on March 20 and 21, 2019) should be rejected because they are inadmissible under the "best evidence" rule. Rule 1002 of the Federal Rules of Evidence provides that, in general, an "original . . . recording . . . is required in order to prove its content." Here, the government has turned over the recordings to Mr. Avenatti. Those recordings, if introduced by the government at trial (as expected), will constitute the best evidence of what was said in those calls and meetings.[7]

*Third*, Mr. Avenatti seeks "any non-privileged internal Nike documents regarding" Jeffrey Auerbach's outreach to Nike in January and February 2019. (Opp. at 7.) Mr. Avenatti's overbroad demand for "any" internal documents that may relate even tangentially to Mr. Auerbach violates *Nixon*'s specificity requirement and is tantamount to a "fishing expedition." *Nixon*, 418 U.S. at 699-700. Further, any such documents are irrelevant, hearsay, and/or for impeachment.[8]

*Finally*, Mr. Avenatti demands any non-privileged documents that discuss Mr. Avenatti and Mr. Geragos' outreach to Nike in 2019. As Nike explained in its opening brief, this broad request—"[a]ll documents relating to, mentioning or concerning Michael Avenatti or Mark

---

[6] Nike has already produced to the Government its final notes of any unrecorded calls or meetings with Mr. Avenatti and/or Mr. Geragos.

[7] Mr. Avenatti vaguely suggests that "portions of the records are unintelligible." (Opp. at 9.) Even if true, the criticism does not justify production of secondary evidence such as Mr. Homes' notes, which are inadmissible hearsay. *See* Fed. R. Evid. 1004.

[8] Mr. Avenatti suggests that Nike's internal reaction to Mr. Auerbach is relevant to show that Nike feared Mr. Franklin's allegations. (*See* Opp. at 7.) Mr. Avenatti will have an opportunity to cross-examine its counsel regarding their reaction to his allegations, and this request should be denied because he makes explicit that the evidence is for impeachment. (*Id.*)

Geragos from March 1, 2019, through the present" (Opp. at 7 (citation omitted))—is a "fishing expedition." Furthermore, BSF and Nike have already produced to SDNY any responsive, non-privileged documents with Mr. Avenatti or Mr. Geragos. Whatever remains is not relevant to the case at hand and, in any event, appears to be sought for impeachment.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Nike's January 13, 2020, memorandum of law, this Court should quash Mr. Avenatti's subpoenas *duces tecum* served on Nike and BSF.

Dated: January 21, 2020                                Respectfully submitted,

/s/ Peter M. Skinner
Peter M. Skinner
Andrew Z. Michaelson
David L. Simons
Victor Zapana
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2300
(f) +1 212 446 2380

*Attorneys for NIKE, Inc.*