January 23, 2020

**Via ECF**
Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

> Re: *United States v. Avenatti*, **No. S1 19 Cr. 373 (PGG)**
> **Letter Motion to Exclude: 1) Two Post-arrest Text Messages
> from Jeffrey Auerbach that Mr. Avenatti Demonstrably
> did not Receive (GX 310); and 2) Mr. Avenatti's Post-arrest
> Tweets (GX108).**

Dear Judge Gardephe:

Pursuant to Rules 402 and 403, Mr. Avenatti respectfully moves the Court to exclude the following from evidence and to preclude the government from referring to this evidence in opening statement pending the Court's ruling on this motion:

> **1)** two text messages sent by Jeffrey Auerbach to Mr. Avenatti (GX 310) on March 25, 2019, *after* FBI agents arrested Mr. Avenatti and seized his i-Phone, which messages Mr. Avenatti demonstrably never received (for reasons explained below). *See* Exhibit 1 (attached hereto), at page 2.

> **2)** post-arrest tweets by Mr. Avenatti, contained within GX 108, in which Mr. Avenatti, beginning on the day after his arrest, publicly disclosed certain documents provided to him by Jeffrey Auerbach on behalf of Coach Gary Franklin.[1]

Presumably, the government seeks to offer both categories of evidence to suggest that Mr. Avenatti violated California Rule of Professional Conduct 1.6 (duty of confidentiality) *after* Mr. Avenatti was arrested and charged in this case. Such evidence of an alleged ethics violation following arrest is probative of nothing; it is irrelevant to whether Mr. Avenatti attempted to extort Nike or to commit honest services wire fraud through bribes or kickbacks. Moreover, any

---

[1] Government Exhibit 108 consists of 101 pages of post-arrest tweets (USAO373-29121-29221), although the Government's Exhibit List reflects the word "Selected," so undersigned counsel do not know which of the 101 pages the government will seek to offer in evidence. Late last night we asked government counsel to identify those pages for us, which they indicated they would (and are in the process of doing).

1

probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.

### The Facts

On March 25, 2019, at approximately 12:39pm Eastern time, FBI agents arrested Mr. Avenatti at Hudson Yards.  *See* Arrest Log (attached as Exhibit 2).  They seized his i-Phone at that time pursuant to a search warrant.  Approximately 19 minutes later (at 9:58am *Pacific* time), Jeffrey Auerbach texted Mr. Avenatti as follows: "Michael, very upsetting to say the least.  Please call me before going public in any way.  Gary and I would like to discuss strategy with you."  Shortly thereafter, Mr. Auerbach again texted Mr. Avenatti: "Just saw CNN! Are you fucking kidding me? Pls. call."[2]  It is indisputable that, at the time Mr. Auerbach sent those text messages, the FBI agents were in possession of Mr. Avenatti's i-Phone.

In the meantime, at approximately 2pm Eastern time on March 25, 2019, while Mr. Avenatti was in custody, U.S. Attorney Geoffrey Berman issued a press release to announce Mr. Avenatti's arrest earlier that afternoon. (Dkt. No. 30-1).  USA Berman stated that Mr. Avenatti "used illegal and extortionate threats for the purpose of obtaining millions of dollars in payments from" Nike.  (Dkt. No. 30-1).  USA Berman commented that "[w]hen lawyers use their law licenses as weapons, as a *guise* to extort payments for themselves, they are no longer acting as attorneys.  They are acting *as criminals*, and they will [be] held responsible for their conduct." (Dkt. No. 30-1) (emphasis added).  FBI Asst. Dir. William F. Sweeney Jr., added that "[a]s alleged, Michael Avenatti approached Nike last week with a list of financial demands in exchange for covering up allegations of misconduct on behalf of the company."  (Dkt. No. 30-1) (emphasis added).  FBI Asst. Dir. Sweeney opined that "[t]his is nothing more than a straightforward case of extortion.  In the event anyone needs to be reminded, this type of behavior is illegal and it will not be tolerated – especially when committed by a lawyer who is supposed to use his license to practice law, not to willfully violate it." (Dkt. No. 30-1).

In addition to the press release, USA Berman held a press conference, (Dkt. No. 133), using as a visual aid a poster board entitled "The Alleged Extortion Scheme Timeline," illustrating that the alleged scheme played out over a 3-day period and repeating USA Berman's talking point that Mr. Avenatti demanded payments "under the guise of legal work."  During the press conference, USA Berman boldly proclaimed that "Avenatti's conduct had nothing to do with zealous advocacy for a client or any other kind of legitimate legal work."  The USAO-SDNY compounded the press release and press conference with multiple tweets on March 25, 2019, to draw more viewers and attract increased attention to the arrest and charges against Mr. Avenatti.

When Mr. Avenatti was released from custody in the late afternoon on March 25, 2019, he was not given his i-Phone, which was retained by the FBI pursuant to the search warrat.  So, Mr.

---

[2] Earlier that morning, Coach Franklin had received a visit from two FBI agents with a subpoena, which Mr. Auerbach presumably knew about by the time he sent the text messages.  Mr. Auerbach's reference to what he saw on CNN presumably was to the public reports of Mr. Avenatti's arrest.

Avenatti obtained a new phone. The government's production of Mr. Avenatti's i-Cloud returns in discovery confirms that, when Mr. Avenatti obtained the new phone, the most recent iCloud backup was from March 19, 2019, at 8:57pm. Thus, Mr. Avenatti never received two earlier text messages on March 25, 2019, from Mr. Auerbach. After obtaining a new phone, Mr. Avenatti texted Mr. Auerbach: "Can you give me a call?" (Exh. 1, at p.2), without having seen Mr. Auerbach's prior two messages. Indeed, he and counsel never saw those messages until we received discovery produced by the government of Mr. Auerbach's messages; they do not appear on Mr. Avenatti's messages. They never spoke thereafter.

Over the course of next several days, and in response to his very public arrest, Mr. Avenatti disclosed (via Twitter) documents from a 41-page Memorandum of Actions that had been provided to him by Mr. Auerbach on behalf of Coach Franklin, including text messages with Nike executives, redacted bank records, and fake invoices submitted by Coach Franklin to Nike at the direction of Nike executives.[3] Those documents largely form the basis for Coach Franklin's claim, communicated by him and Mr. Auerbach to Mr. Avenatti, that Nike executives had corrupted the California Supreme program by directing Coach Franklin to make payments to "handlers" for the benefit of amateur basketball players, including to a handler who colluded with Nike executives to take away Franklin's 17U team while he had a pending contract. The documents were first disclosed by Coach Franklin to Mr. Auerbach (a non-lawyer) and then shown by Mr. Avenatti to Nike outside counsel Scott Wilson during the settlement meeting on March 19, 2019, in an effort to settle Coach Franklin's claims.

**Legal Discussion**

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining this action." Fed.R.Evid. 401. The government presumably seeks to offer GX108 and GX310 as evidence that, after Mr. Avenatti's arrest, he violated his duty of confidentiality to Coach Franklin by disclosing the evidence of Nike's misconduct despite Mr. Auerbach's request that Mr. Avenatti call him before going public. The evidence is irrelevant because Mr. Avenatti never received the text message from Mr. Auerbach so it is not probative of an intent to defy the directives of a client. But, even if Mr. Avenatti had received the message, evidence of the post-arrest tweets is irrelevant and far more prejudicial than probative.

Mr. Avenatti's post-arrest disclosure does not make it more probable that he intended to extort Nike, as charged in Counts One and Two. Likewise, it does not make it more probable that he intended to defraud Coach Franklin of his right to honest services through bribes or kickbacks prior to Mr. Avenatti's arrest. The only conceivable purpose for this "subsequent act" evidence is an illegitimate one: to suggest that Mr. Avenatti is a person of bad character who allegedly violated his duty of confidentiality to Coach Franklin after Mr. Avenatti's arrest. Thus, while subsequent act evidence does not ***inherently*** lack relevance, *see United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990), there is no relevance here.

---

[3] The information that was disclosed is contained within Dkt. No. 30-4.

Moreover, introduction of the post-arrest tweets would be unfairly prejudicial, misleading, and a waste of time. Mr. Avenatti disclosed the documents ***after*** the government engineered a media onslaught against him on the date of his arrest. Given the pending criminal case, Mr. Avenatti had the right to publicly defend himself and attempt to clear his name. Introduction of the post-arrest tweets would entitle Mr. Avenatti to present evidence of the reasons ***why*** he tweeted the information – namely, as a response to USA Berman's deliberate media campaign -- which would inject matters into the case that the government has expressly sought to avoid.

Beyond the irrelevance and unfairly prejudicial nature of the evidence, Mr. Avenatti respectfully submits that his actions did not constitute an ethical violation at all. Significantly, Rule 1.6 of the Model Rules of Professional Conduct, adopted in some form in most states, permits a lawyer to reveal confidential information "to the extent the lawyer reasonably believes necessary … to establish a defense to a criminal charge or civil claim against the lawyer based on conduct in which the client was involved."[4] To be sure, the overwhelming number of jurisdictions contain a similar provision. While California Rule of Professional Conduct 1.6, representing the minority view, does not ***expressly*** contain a similar clause, it would be pure speculation to suggest that Mr. Avenatti would be subject to discipline in California for publicly defending himself against federal criminal charges. Indeed, the undeniable relevance and admissibility of this evidence in Mr. Avenatti's in-court defense to the current charges confirms that Mr. Avenatti's disclosure post-arrest was consistent with his right to use that evidence to defend himself.

For the foregoing reasons, Mr. Avenatti moves the Court to exclude GX 108 and the last two text messages from Mr. Auerbach in GX 310.

Respectfully,

/s/ Scott A. Srebnick
Scott A. Srebnick
Jose M. Quinon
E. Danya Perry

---

[4] New York Rule of Professional Conduct 1.6(b)(5)(i) allows a lawyer to reveal confidential information "to the extent that the lawyer reasonably believes necessary to defend the lawyer … against an accusation of wrongful conduct."

**Michael Avenatti, Jeffrey Auerbach Text Messages**

iMessage with +1 (949) 887-4118<br>3/10/19, 6:12 PM

> Jeff - Michael Avenatti here. Can you give me a call?
>
> Ma@augustusllp.com

> Got it. Thx!

3/18/19, 10:29 AM

> Jeff - can you and Gary and I meet at 5 pm today?

> Let me check.
>
> I'm sure we can

> Great

> Confirmed. See you at you at 5pm.
>
> Your building?
>
> BTW, sending over materials shortly. Sorry, had to run out unexpectedly yesterday to help my son and buddies who were stranded in Hollywood... Lol.

> Yes pls. You can bring the materials with you if that's easier.

> Great. See you at 5pm.

3/18/19, 7:21 PM

> Michael thank you! Thank you! You're the best! Let me know if there's anything I can do. Go get-em. Travel safe.

> I know. 🙏🙏

USAO373_00026115

3/19/19, 12:43 PM

> Hi Michael can we do a three-way call at 1 PM? I just spoke with Gary.

Delivered

3/25/19, 9:58 AM

> Michael, very upsetting to say the least. Please call me before going public in any way. Gary and I would like to discuss strategy with you.

SMS with +1 (949) 887-4118

> Just saw CNN! Are you fucking kidding me? Pls call.

iMessage with +1 (949) 887-4118
3/25/19, 6:56 PM

Can you give me a call?

USAO373_00026116

ARREST LOG

SUBJECT: MICHAEL AVENATTI
DOB: 2/16/71                     POB: SACRAMENTO, CA

_____  ARREST DATE

| TIME | INITIALS | EVENT |
|---|---|---|
| 12:39p | CH | ARRESTED AT: 20 Hudson Yards, New York NY |
| | | VERBALLY ADVSED OF RIGHTS BY: |
| | | SA/DET: |
| | | SA/DET: |
| 1:49 | CH | WRITTEN ADVICE OF RIGHTS BY: |
| | | SA/DET: HARPER, CHRISTOPHER G. |
| | | SA/DET: |
| 1:00p | CH | BEGIN TRANSPORT TO FBI NYO |
| 1:25p | CH | ARRIVE AT FBI NYO |
| 1:25p | CH | BEGIN ARREST PROCESSING |
| 1:42p | CH | END ARREST PROCESSING |
| | | DEPART FOR MCC/MDC/CENTRAL BOOKING FOR SAFEKEEPING |
| | | ARRIVE AT MCC/MDC/CENTRAL BOOKING FOR SAFEKEEPING |
| | | RELEASED TO CUSTODY OF USMS/NYPD FOR SAFEKEEPING |
| | | NEW DATE IF RECEIVED FROM SAFEKEEPING |
| | | RECEIVED FROM CUSTODY OF USMS/NYPD |
| 2:23p | CH | DEPART FOR SDNY/EDNY/SNC |
| 2:40p | | ARRIVE AT SDNY/EDNY/SNC |
| | | RELEASED TO CUSTODY OF USMS/NYPD FOR PROCESSING |
| | | RECEIVED FROM CUSTODY OF USMS/NYPD |
| | | ARRIVE AT PRE-TRIAL SERVICES |
| | | COMPLETE PRE-TRIAL SERVICES |
| 4:55p | CH | ARRIVE AT US MAGISTRATE COURT/STATE COURT |
| 6:30p | CH | ARRAIGNMENT BEGINS |
| 7:15p | CH | ARRAIGNMENT COMPLETED |
| | | RELEASED TO CUSTODY OF USMS/NYPD (IF REMANDED) |

ARRAIGNMENT INFORMATION:
MAGISTRATE JUDGE: KATHARINE PARKER
        AUSA/ADA: PODOLSKY
   LEGAL COUNSEL: SYLVIE JILL LEVINE (PD)

REMANDED?: YES/NO     RELEASED?: YES/NO   $300,000
CONDITIONS: CASH/SURETY/PRB OR AMOUNT:

ARRESTING SA/DET: JUSTIN ELLARD SDNY
PROCESSING SA/DET: HARPER
ARRAIGNMENT SA/DET: GALICIA

USAO373_00028576