

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 23, 2020

**BY ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Michael Avenatti*,
             **S1 19 Cr. 373 (PGG)**

Dear Judge Gardephe:

      The Government respectfully submits this letter in opposition to the defendant's letter motion of earlier today, January 23, 2020 (Dkt. No. 196, re-filed at Dkt. No. 197) ("Def. Ltr.") in which the defendant seeks an order of this Court (a) precluding the Government from referring to certain communications in its opening statement, and (b) precluding the admission into evidence of those same communications. Both of these requests are without merit.

      I.        <u>Two Communications from Jeffrey Auerbach to the Defendant</u>

      The defendant asserts that two text messages from Jeffrey Auerbach to the defendant on March 25, 2019 are irrelevant if the defendant did not contemporaneously see them. (Def. Ltr. 3.) That assertion is meritless, even if the defendant did not contemporaneously see them.[1]

      As an initial matter, the defendant's suggestion (*id.* at 2) that both of the two messages of Mr. Auerbach that the defendant challenges were sent in response to the defendant's arrest is incorrect. The defendant's arrest was not public at the time the first of the two messages was sent. Mr. Auerbach is expected to testify that he sent it after he saw the Twitter post of the defendant (GX 107, enclosed herewith as Ex. A), because, in sum, it was flatly inconsistent with the instructions that he and Gary Franklin, Sr., had given the defendant and their understanding, based on their conversations with the defendant, that certain information would remain confidential and not be made public. The second message was sent after Mr. Auerbach learned from CNN that the

---

[1]  The evidence on this point is more muddled than the defendant conclusorily states. The Government is in contact with Apple, Inc., and is attempting to confirm whether the messages were delivered to and read by the defendant either before his arrest or after his release that same evening. But as explained below, the communications are admissible regardless of whether the defendant contemporaneously saw them. The defendant's letter also makes several other conclusory and unsupported claims about the facts and the expected evidence (*see* Def. Ltr. 2-4), much of which is not relevant to his motion.

Honorable Paul G. Gardephe
United States District Judge
January 23, 2020
Page 2

Government alleged that the defendant had demanded between $15 million and $25 million for himself from Nike. Mr. Auerbach is expected to testify that he sent that second message because, in sum, he was appalled that the defendant appeared to have secretly used the information provided by him and Mr. Franklin to seek what Mr. Auerbach thought was an enormous sum of money from Nike for himself, for a so-called "internal investigation" that the defendant had never discussed with Mr. Auerbach (or Mr. Franklin). The messages, in short, are highly probative evidence of Mr. Auerbach's then-existing state of mind and of the nature and content of the conversations, only days earlier, between Mr. Auerbach, Mr. Franklin, and the defendant—which the defendant has repeatedly made clear on the record will be a central contested issue at trial. Their probative value in this respect does not rest on whether the defendant contemporaneously saw them.[2]

Moreover, although a defendant is not generally required to take consistent positions (except to the extent that such inconsistency implicates the doctrine of judicial estoppel, *see Pegram v. Herdrich*, 530 U.S. 211, 228 (2000)), the defendant's apparent position today—that only those communications of Mr. Auerbach that the defendant contemporaneously saw are relevant—is irreconcilable with the defendant's apparent position yesterday that all communications between Mr. Auerbach and Mr. Franklin concerning their views of NIKE, Inc. are not just an appropriate subject of cross-examination but also admissible because they purportedly bear on what they told the defendant. (*See, e.g.*, Transcript of January 22, 2020 Conference (enclosed herewith as Ex. B), at 107 (defense counsel arguing that Mr. Auerbach's and Mr. Franklin's test messages to each other should be admissible "to prove what was the expectations, what were the directives that were communicated to Mr. Avenatti as to what Franklin interpreted justice to mean").) As the Government stated yesterday, it does not agree with that position for multiple reasons, including because many such communications substantially predate the events in this case, do not mention or concern the defendant, and contain embedded hearsay or irrelevant asides. By comparison, the two text messages that the defendant now challenges were sent during the events in this case, to the defendant, about actions of the defendant. In any event, it would be misleading to the jury and unfairly prejudice the Government for the defendant to be permitted to refer in his opening statement, cross-examine witnesses about, and/or offer text messages predating his meetings and conversations with Mr. Auerbach and Mr. Franklin, on the ground that they bear on what the defendant was told, without the Government being able to do the same with respect to text messages with a far closer connection to same exact subject.

For the same reasons, the defendant's undeveloped suggestion that these text messages should be precluded under Federal Rule of Evidence 403 (Def. Ltr. 3) should be swiftly rejected. To the extent that the defendant wishes to argue that these messages do not, in fact, bear on what he was told by Mr. Auerbach and Mr. Franklin, and what he led them to understand, he is entitled to make such an argument to the jury. He is not entitled to have the jury only see those messages that he believes support his theory of defense.

---

[2] The messages are also admissible in the event that the defendant attacks the credibility of Mr. Auerbach with respect to what occurred in his conversations with the defendant, *see* Fed. R. Evid. 801(d)(1)(B), as the defendant has repeatedly made plain he intends to do.

Honorable Paul G. Gardephe
United States District Judge
January 23, 2020
Page 3

## II. The Defendant's Post-Arrest Tweets

The defendant also asserts that his public posting of Mr. Franklin's confidential information after he was arrested is irrelevant. (Def. Ltr. 3.) Common sense is to the contrary. The defendant chose to disseminate publicly information (GX 108A, 108B, 108C, enclosed herewith as Exs. C, D, & E, respectively) that Mr. Auerbach sent to the defendant as an attachment to an email marked "Privileged & Confidential" (GX 308, at 1, enclosed herewith as Ex. F) or that was marked on the document itself as "Privileged & Confidential" (GX 304, at 2, enclosed herewith as Ex. G)—which warning the defendant cropped out in the version that he posted on Twitter (GX 108D, at 3, enclosed herewith as Ex. H). The defendant posted this information in violation of both his duties to his client and his client's instructions, which is highly relevant to the defendant's intent, both generally to use client information without consent for the defendant's own benefit and specifically to publicly disseminate through Twitter confidential client information without consent. In particular, the most egregious public disclosure of documents (GX 108C, Ex. E) was made after the defendant was expressly instructed by Mr. Franklin's new counsel, by emailed letter on March 27, 2019, not to make any further public disclosures of that type (GX 313, enclosed herewith as Ex. I).[3] And yet the defendant posted even more information. To be sure, as set forth above, there is no dispute that these particular messages were posted after the defendant was arrested. But that does not make them "irrelevant" (Def. Ltr. 1, 3). *See United States v. Ramirez*, 894 F.2d 565, 569 ("Relevancy cannot be reduced to mere chronology[.]"). That is particularly so because they followed similar messages sent prior to his arrest. (*See* GX 106, 107, enclosed herewith as Exs. A & J, respectively.)

Indeed, notably, the defendant does not contend that he was authorized by his client to post such information at any time, much less after being told in no uncertain terms not to do so. He claims instead that it was purportedly to "defend himself." (Def. Ltr. 4). This claim, which the defendant did not contemporaneously make, and went against a clear directive of his client, is nonsensical—even if California permitted such disclosure, which it does not, as the defendant concedes (*id.*). It plainly was not "necessary" to *publicly* post his client's confidential information. In any event, that the defendant has a potential response to the Government's view of evidence does not render such evidence "irrelevant" (*id.* at 1, 3). Rather, "[o]nce relevance is established," challenges to persuasiveness "go to weight rather than admissibility." *United States v. Diaz*, 878 F.2d 608, 615 (2d Cir. 1989); *see also, e.g.*, *United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006) ("so long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded" as irrelevant (citing *United States v. Ravich*, 421 F.2d 1196, 1204 n. 10 (2d Cir. 1970) (Friendly, J.))).

Moreover, as with the text messages discussed above, and contrary to the defendant's apparent position, it would be misleading to the jury for it not to be aware of these postings. The defendant has repeatedly, in both written submissions in conferences, asserted that he intends to

---

[3] The Government understands that, several weeks later, Mr. Franklin's new counsel received a notification of undeliverability from one of the two email addresses (mavenatti@eaganavenatti.com) to which he sent this letter.

Honorable Paul G. Gardephe
United States District Judge
January 23, 2020
Page 4

argue that he did not do more than what his client directed him to do. (*See, e.g.*, Transcript of January 22, 2020 Conference, at 107 (defense counsel arguing that "Mr. Avenatti was not seeking justice for his own sake. He was, obviously, seeking a legal fee for accomplishing the objectives . . . of Auerbach and Franklin").) The post-arrest posts prove the falsity of that argument. Accordingly, even if the Court were not otherwise inclined to permit the Government to comment on or offer such posts, in the event that the defendant were to argue affirmatively that his conduct was cabined by his client's instructions or that he only shared such material in what he misleadingly terms a "settlement meeting" (Def. Ltr. 3), the Government should at that time be permitted to offer the posts.

    Respectfully submitted,

    GEOFFREY S. BERMAN
    United States Attorney

By:     s/ Daniel C. Richenthal
    Matthew D. Podolsky
    Daniel C. Richenthal
    Robert B. Sobelman
    Assistant United States Attorneys
    (212) 637-1947/2109/2616

Enclosures

cc:     (by ECF)

    Counsel of Record