IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | NO. 3:19-cr-00053-1 |
| v. ) | JUDGE RICHARDSON |
| ) | |
| MARK MCELWEE ) | |

# MEMORANDUM OPINION & ORDER

Before the Court are Defendant's Motions to Suppress (Doc. Nos. 351, 353, 355, 358, "Motions"). Via the first Motion (Doc. No. 351), Defendant seeks to suppress the fruits of a search of 142 Five Oaks Drive, Nashville, Tennessee ("Residence") and all evidence from a search of the CubeSmart Storage Facility, Unit C0256, 1058 Murfreesboro Pike, Nashville Tennessee ("Storage Facility"). Defendant alleges that the warrant to search the Residence was insufficient because it did not describe with particularity the place to be searched and the things to be seized. Defendant also argues that the search warrant was not supported by probable cause because the search warrant affidavit was based on information from a confidential informant who was not shown to be sufficiently reliable. (Doc. No. 352). The Government contends that "the information presented in the four corners of the [Residence] affidavit suggested that there was a 'fair probability' that evidence of criminal activity would be found at the defendant's residence." (Doc. No. 402). The Government also contends that the firearms were lawfully seized from Defendant's Residence under the principle of "cure by incorporation" or the plain view exception to the warrant requirement. (*Id.*). Regarding the search of the Storage Facility, Defendant alleges that the Government's seizure of "scales and mixing devices" violated his Fourth Amendment right because the warrant failed to describe the items seized. (Doc. No. 352). The Government asserts that the evidence discovered in the Storage Facility was lawfully seized under the plain view

exception to the warrant requirement. (Doc. No. 402).

Via the second Motion (Doc. No. 353), Defendant seeks to suppress the fruits of the search of a black 2008 Nissan Altima ("Vehicle") which Defendant was driving on March 29, 2018 in Nashville, Tennessee. (Doc. No. 353). Defendant alleges that the officers lacked probable cause to stop Defendant's Vehicle and to justify a warrantless search of the Vehicle. (Doc. No. 354). The Government contends that the officer had probable cause to stop the vehicle because the officer observed the Vehicle fail to come to a complete stop at a stop sign and the passenger throw a lit object out of the window. (Doc. No. 402). In addition, the Government asserts that it had probable cause to search the vehicle after the officer smelled the aroma of marijuana coming from the vehicle, Defendant admitted to smoking marijuana earlier in the day, and the passenger admitted to having a marijuana roach in the rear floorboard. (*Id.*)

Via the third Motion (Doc. No. 358), Defendant seeks to suppress evidence obtained by the use of a pole camera. Defendant acknowledges that Sixth Circuit precedent permits the warrantless use of a pole camera. Nevertheless, in light of evolving case law on this issue, Defendant moves the Court to suppress the pole camera evidence in order to preserve the argument for appeal. The Government argues that because the pole camera viewed only the curtilage—which was visible from a public road—the warrantless use of the pole camera was permissible under the Fourth Amendment.

Via the fourth and final Motion (Doc. No. 355), Defendant seeks to suppress certain extrajudicial statements made to law enforcement officers subsequent to his arrest on a federal warrant on March 4, 2019. Defendant argues that law enforcement did not properly advise him of his constitutional rights, specifically his right to remain silent pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and did not obtain a proper waiver acknowledging that he understood his *Miranda*

rights. (Doc. No. 355). Defendant also argues that if the Court does find that he waived his rights under *Miranda*, he revoked that waiver approximately ten minutes into the interview when he refused to sign the Advice of Rights Waiver and requested to speak to a lawyer. (*Id.*). The Government contends that Defendant knowingly waived his *Miranda* rights prior to the March 4, 2019 interview. (Doc. No. 402). The Government further argues that Defendant did not thereafter revoke his waiver because he did not unambiguously and unequivocally invoke his right to counsel and, even if he did, he reinitiated conversation with law enforcement after any invocation. (*Id.*).

During the evidentiary hearing on January 7, 2020, the parties stipulated to the following:

- Mr. McElwee never signed a written waiver of his *Miranda* rights;
- The audio recording submitted to the Court as Plaintiff's Exhibit 1 accurately reflects the interview of Defendant at that time;
- "The pole camera used to obtain the footage in this case was located on a telephone pole in a parking lot that was accessible to the public and, from which, a member of the public could view the frontage of 142 Five Oaks Drive, Nashville, Tennessee" (Pl. Ex. 3); and
- "The footage recorded did not contain any significant footage of the inside of the 142 Five Oaks Drive either through an open door, window or any other opening such that it captured any private moments of the occupants therein. To the extent that any footage of the interior of the home was observed and recorded by the pole camera it is to the same extent that any member of the public could also observe if that person was standing in the public area of the parking lot where the pole camera was mounted." (*Id.*).

During the hearing, the Court denied in their entirety two of the Motions to Suppress (Doc.

3

Nos. 353, 358). It also denied Defendant's Motion to Suppress Search of 142 Five Oaks Drive and the CubeSmart Storage Facility, and Request for a Franks Hearing (Doc. No 351), except to the extent the Government sought to introduce more than one scale allegedly found at the Storage Facility; to that extent, the Court granted the motion filed at Doc. No. 351. The Court ruled that the Government had established by a preponderance of the evidence the applicability of the plain-view exception to, at most, one scale, because the Government's sole witness testified that he could not say that more than a single scale (which, he testified, was found in a desk drawer) was found in the Storage Facility. If the Government intends to introduce this scale at trial, the Government must satisfy the Court, to the degree required by Fed. R. Evid. 901, that it is in fact this scale (*i.e.*, the same scale found, pursuant to the plain view doctrine, in the desk drawer).

Finally, the Court took under advisement Defendant's Motion to Suppress Extrajudicial Statements Made to Law Enforcement on March 4, 2019 (Doc. No. 355). For the reasons discussed below, the Motion to Suppress at Doc. No. 355 is also denied.

I. <u>Motion to Suppress Search of 142 Five Oaks Drive and the CubeSmart Storage Facility, and Request for a Franks Hearing (Doc. No. 351)</u>

Under the Fourth Amendment, "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (en banc) (citing *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018)). In its recent en banc decision in *Christian*, the Sixth Circuit instructed that probable cause should be determined "[v]iewing the 'totality of the circumstances,' *Florida v. Harris*, 568 U.S. 237, 244 [] (2013), through the 'lens of common sense,' as the Supreme Court has instructed, *id.* at 248[.]" *Id.* at 309. The Sixth Circuit further

4

explained:

> Time and again the Supreme Court has emphasized that [p]robable cause is not a high bar to clear. Where, as here, a magistrate has issued a search warrant based on probable cause, we do[ ] not write on a blank slate. Rather, the magistrate's probable-cause determination should be paid great deference, and we overturn that decision only if the magistrate arbitrarily exercised his or her authority. We are not permitted to attempt a de novo review of probable cause.

*Id.* at 311-12 (citations and quotation marks omitted). The "'haste of a criminal investigation' under which officers often draft an affidavit supporting a search warrant" is also relevant to a probable cause analysis. *Id.* at 310. Courts should keep in mind that "police officers are mostly non-lawyers who must draft search-warrant affidavits 'on the basis of nontechnical, common-sense judgments.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 235-36 (1983)).

Where a search warrant affidavit relies upon information provided by a confidential informant, it must either provide indicia of the informant's reliability or "contain substantial independent police corroboration." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005). "[T]his independent police corroboration may be established by a police-monitored controlled buy . . ." *United States v. Hawkins*, 278 F. App'x 629, 635 (6th Cir. 2008). However, "information supplied by an informant of proven reliability may be sufficient, standing alone, to demonstrate probable cause." *United States v. Smith*, 182 F.3d 473, 483 (6th Cir. 1999).

When a court determines that a search warrant was not supported by probable cause, such that the search was in violation of the Fourth Amendment, the fruits of the search are not necessarily suppressible. Pursuant to *United States v. Leon*, 468 U.S. 897, 905 (1984), "the introduction of evidence obtained in violation of the Fourth Amendment is permitted in criminal trials when the evidence is 'obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment.'" *United States v. Moorehead*, 912 F.3d 963, 967 (6th Cir. 2019) (quoting *Leon*, 468 U.S. at 909). A search warrant affidavit is insufficient for police to

5

rely upon in good-faith if it is "bare bones." But if an affidavit is not bare-bones, it is one upon which an officer can rely in good-faith. *Christian*, 925 F.3d at 312.

"[T]o be considered bare bones, an affidavit must be 'so lacking in indicia of probable cause' as to make an officer's 'belief in its existence [] objectively unreasonable.'" *Id.* (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)). An affidavit is bare bones only if it "merely 'states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *Id.* (quoting *United States v. Washington*, 380 F.3d 236, 241 n.4 (6th Cir. 2004)). Further, "[t]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 313 (citation and internal quotation marks omitted).

The Fourth Amendment also requires that the "items to be seized pursuant to a search warrant [] be described with particularity to prevent 'the seizure of one thing under a warrant describing another.'" *United States v. Blair*, 214 F.3d 690, 697 (6th Cir. 2000) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)). However, the particularity requirement is inapplicable to searches and seizures not subject to the warrant requirement, such as the seizure of evidence discovered in plain view. *See Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971) ("It is well established that under certain circumstances the police may seize evidence in plain view without a warrant."). In order for the plain view doctrine to apply, four factors must be satisfied: (1) the object must be in plain view; (2) the officer must be legally present in the place from which the object can be plainly seen; (3) the object's incriminating nature must be immediately apparent; and (4) the officer must have a right of access to the object. *Horton v. California*, 496 U.S. 128,

136–37 (1990).[1]

Where a defendant seeks to challenge the sufficiency of a warrant affidavit, he is entitled to a *Franks* hearing if he can satisfy a two-part test: "(1) he must make a substantial preliminary showing that the warrant affidavit contained false statements that were made 'knowingly and intentionally, or with reckless disregard for the truth,' and (2) the challenged statements must be necessary to a finding of probable cause." *United States v. Hawkins*, 278 F. App'x 629, 633 (6th Cir. 2008) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). If the defendant fails to satisfy these factors, he will not be entitled to a *Franks* hearing.

II. Motion to Suppress Fruits of 3/29/18 Vehicle Search at the Intersection of Patricia Drive and Thompson Place

"An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). The Sixth Circuit "has developed two separate tests to determine the constitutional validity of vehicle stops: an officer must have probable cause to make a stop for a civil infraction, and reasonable suspicion of an ongoing crime to make a stop for a criminal violation." *Id.* Caselaw in this circuit also "has asserted, albeit in dicta, that reasonable suspicion of a completed misdemeanor is not sufficient to justify an investigatory stop." *United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008) (citing *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004)). The Sixth Circuit has recognized that caselaw in this circuit lacks clarity regarding when probable cause is needed and when reasonable suspicion is sufficient to justify the stop of an automobile. *See United States v. Collazo*, 818 F.3d 247, 254 (6th Cir. 2016). This clarity is especially necessary to establish the

---

[1] The Supreme Court has held that inadvertence is not a necessary condition for a plain-view seizure. *Horton*, 496 U.S. 128, 140 (1990). Thus, evidence may be seized under the plain view doctrine regardless of whether an officer expects to find that item during the course of his or her search—provided, of course, that the four circumstances necessary under the plain view doctrine are satisfied. *Id.*

7

requisite standard for stopping a vehicle based on a completed misdemeanor that is non-traffic related, such as littering. *Compare United States v. Lopez-Arias*, 344 F.3d 623, 628 (6th Cir. 2003) ("[A] law enforcement officer who lacks probable cause to justify an arrest may nevertheless briefly detain an individual without violating the Fourth Amendment if the officer possesses a reasonable and articulable suspicion that the individual has committed a crime.") *and United States v. Bost*, 606 F. App'x 821, 823 (6th Cir. 2015) ("*Terry* applies to traffic stops.") *with Simpson*, 520 F.3d at 539 ("Police may also make a stop when they have reasonable suspicion of a completed felony, though not of a mere completed misdemeanor.") *and United States v. Smith*, 421 F. App'x 572, 574 (6th Cir. 2011) ("We require probable cause to justify stops for completed misdemeanor *traffic violations*.") (emphasis added) (citing *Simpson*, 520 F.3d at 540–41).

In Tennessee, throwing a cigarette out of a car window, though not a *traffic violation*, is a violation of T.C.A. § 39-14-503. "A person commits littering who ... [k]nowingly places, drops or throws litter on any public or private property without permission and does not immediately remove it...." T.C.A. § 39-14-502(a)(1). Litter is defined as "garbage, refuse, rubbish, and all other waste material." *Id.* § 39-14-501(2). Mitigated criminal littering is a Class C misdemeanor. T.C.A. § 39-14-503(b). Because the officer had probable cause to stop Defendant's Vehicle after witnessing the passenger throw a lit object (perhaps a cigarette) out the window of the Vehicle, the Court need not resolve whether probable cause or reasonable suspicion is required to stop a vehicle for a violation of T.C.A. § 39-14-503(b).

In Tennessee, failure to stop at a stop sign is a violation of T.C.A. 55-8-149(c), which is a Class C misdemeanor. T.C.A. 55-8-149(c) states:

> Every driver of a vehicle and every operator of a streetcar approaching a stop sign shall stop before entering the crosswalk on the near side of the intersection, or in the event there is no crosswalk, shall stop at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver or operator has

8

Case 3:19-cr-00053   Document 452   Filed 01/23/20   Page 8 of 17 PageID #: 1531

a view of approaching traffic on the intersecting roadway before entering the intersection, except when directed to proceed by a police officer or traffic control signal.

A violation of T.C.A. 55-8-149(c) is a traffic offense but not one that is "ongoing" in nature. Therefore, an officer must have probable cause to stop a vehicle pursuant to T.C.A. 55-8-149(c).

After an officer has lawfully stopped a vehicle, officers may conduct a warrantless search of a vehicle under the automobile exception to the warrant requirement if they have probable cause to believe that the vehicle contains evidence of a crime. *United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011). The scope of a warrantless automobile search is "no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause." *United States v. Ross*, 456 U.S. 798, 809 (1982). Therefore, the automobile exception permits officers to search only in areas and containers where evidence could be found. *See California v. Acevedo*, 500 U.S. 565, 570 (1991) (recognizing *United States v. Ross* as allowing a "'probing search' of compartments and containers within the automobile so long as the search is supported by probable cause"); *United States v. Burnett*, 791 F.2d 64, 67 (6th Cir. 1986) (holding that when a small bag of marijuana was found on the floor of the car, the officer "had every right to search the passenger area of the car, the trunk, and any and all containers which might conceal contraband").

   III.   Motion to Suppress Evidence Seized from a Pole Camera (Doc. No. 358)

In *United States v. Houston*, 813 F.3d 282 (6th Cir. 2016), the Sixth Circuit held that there was no Fourth Amendment violation whether officers had collected video footage recorded by a camera that was located on top of a public utility pole and that captured the same views enjoyed by passersby on public roads. *Id.* at 288-90. The Sixth Circuit held that defendant had no reasonable expectation of privacy for the curtilage that could be viewed by persons on public roads. *Id.* "Additionally, the length of the surveillance did not render the use of the pole camera unconstitutional, because the Fourth Amendment does not punish law enforcement for using

9

technology to more efficiently conduct their investigations." *Id.* at 288. However, it is worth noting that in *United States v. Anderson-Bagshaw*, 509 F. App'x 396 (6th Cir. 2012), the Sixth Circuit, in dicta, suggested that long-term use of a pole camera might implicate the Fourth Amendment. *Id.* at 405.

Other circuits have similarly held that where an area is visible to the public, usage of video surveillance does not constitute a Fourth Amendment violation. In *United States v. Jackson*, 213 F.3d 1269 (10th Cir. 2000) (judgment vacated on other grounds), the Tenth Circuit held that using a pole camera to view outdoor areas surrounding a home that was easily observable by people passing by does not violate the Fourth Amendment. *Id.* at 1281. However, the Fifth Circuit, also in dicta, suggested that surveillance over a 10-foot fence that was erected to prevent the public from being able to view private property constitutes a Fourth Amendment search. *See United States v. Cuevas-Sanchez*, 821 F.2d 248, 251 (5th Cir. 1987).

IV. <u>Motion to Suppress Extrajudicial Statements Made to Law Enforcement on March 4, 2019 (Doc. No. 355)</u>

Finally, Defendant seeks to suppress statements made to law enforcement officers during an interview conducted after his arrest on March 4, 2019. The Court did not rule on this Motion at the evidentiary hearing but rather took this Motion under advisement so that it could listen to the audio recording of the interview. During the hearing, the parties stipulated that the audio recording accurately represents the interview of Defendant at the time in question and that Defendant did not sign the Advice of Rights Waiver.

**1. Defendant Validly Waived his *Miranda* Rights**

The Fifth Amendment provides that a defendant in a criminal case cannot be compelled to be a witness against himself. Consistent with that right, "[i]n *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that under the Fifth Amendment, a suspect may not be subjected

10

Case 3:19-cr-00053    Document 452    Filed 01/23/20    Page 10 of 17 PageID #: 1533

to custodial interrogation until he has been informed that he has a right to counsel, that he has a right to remain silent, and that anything he says can be used against him in a court of law." *Moore v. Mitchell*, 708 F.3d 760, 808 (6th Cir. 2013). The *Miranda* rule is limited to "custodial interrogations," which the Supreme Court has defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977). Once it has been established that the officer gave the accused a *Miranda* warning, "the court can proceed to consider whether there has been an express or implied waiver of *Miranda* rights." *Berghuis v. Thompkins*, 560 U.S. 370, 388 (2010). The Government bears the burden of establishing waiver by a preponderance of the evidence. *Id.* at 384 (citing *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)). Defendant contests that he understood his rights and voluntarily waived them.

A suspect can waive his or her *Miranda* rights expressly or implicitly. *See North Carolina v. Butler*, 441 U.S. 369, 373 (1979). To expressly waive *Miranda* rights, the suspect must state, or sign something stating, that he waives his rights. *Id.* Suspects can also waive their rights implicitly. *See id*. An implicit waiver requires that the suspect behave in a way that indicates a knowing and voluntary waiver of *Miranda* rights. *Id.* "[A] suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police." *Berghuis*, 560 U.S. at 389. Thus, an implied waiver may be inferred from the accused's silence combined with his conduct indicating waiver after receiving and understanding his *Miranda* warning. *Id.* at 385. A defendant may waive the rights conveyed in *Miranda* warnings "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444. The inquiry is twofold:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion,

11

or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986).

Defendant asserts that the Court should suppress his statements made during the interview because (1) the officers failed to get a written waiver and (2) the Government cannot meet its burden of proving that Defendant voluntarily waived his *Miranda* rights because "there is uncertainty from the audiotape whether Defendant McElwee responded in the affirmative that he understood his rights and voluntarily wished to speak to the officers." (Doc. No. 355 at 2). In particular, Defendant points out that "[t]here is a faint and almost inaudible reply from Defendant McElwee when asked if he understood his rights." (*Id.* at 1).

The Court finds that although Defendant did not expressly waive his *Miranda* rights either by written waiver or oral confirmation, Defendant's conduct following his receipt of the *Miranda* warnings, coupled with his expressed understanding of those rights, act as an implicit waiver of his right to remain silent and to have an attorney present. *See Berghuis*, 560 U.S. at 385 ("[A] waiver of *Miranda* rights may be implied through 'the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver.'").

First, the Court finds that Defendant was properly informed of his *Miranda* rights. At the outset of the custodial interrogation, before any questions were asked, Defendant was read his *Miranda* rights. Defendant does not contest this conclusion, which is clearly supported by the audio recording.

Second, the Court finds that Defendant understood his rights. Defendant contests whether the Government has established, by a preponderance of the evidence, that Defendant did understand his rights. The Court finds that Government has met its burden. Specifically, after

12

reading Defendant his rights, the officer asked, "You understand these rights as I have recited them to you?" (Plaintiff Exhibit 1). Defendant's answer to this question cannot be heard clearly from the audio recording. However, after the inaudible response, the officer confirms that Defendant understood his rights, stating "you do?" and then "okay." (*Id.*) Based on the officer's statements in reply to Defendant's inaudible response, the Court finds that Defendant did in fact explicitly confirm that he understood his rights. Moreover, Defendant does not claim that he did not hear or fully understand his rights. Defendant does not even assert that he did not answer the officer in the affirmative. Accordingly, the Government has established, by a preponderance of the evidence, that Defendant was properly given, and understood, the *Miranda* warnings.

Third, Defendant's conduct following the *Miranda* warnings indicated his intent to waive his right to remain silent. In *Berghuis*, the Supreme Court held that the defendant's answer to the detective's question was "a course of conduct indicating waiver of the right to remain silent." *Berghuis*, 560 U.S. at 386 (quoting *Butler*, 441 U.S. at 373). The Supreme Court stated, "[i]f [defendant] wanted to remain silent, he could have said nothing in response to [the detective's] questions, or he could have ambiguously invoked his *Miranda* rights and ended the interrogation." *Id*. Here, after being read his *Miranda* rights and acknowledging his understanding of the same, Defendant willingly spoke with the officers. And because the Government has established that Defendant understood his rights, "it follows that he chose not to invoke or rely on those rights when he did speak." *Id*. at 385.

Finally, there is no evidence that suggests that Defendant's statements were coerced. The interview was conducted in Defendant's Residence at approximately 8:00 p.m. and lasted just fifteen minutes. Defendant does not suggest that he was coerced—he does not allege that he was incapacitated, threatened, or deprived of sleep or food. *Id.* at 387. Accordingly, Defendant's

13

uncoerced statements, made with the full understanding of his rights, acted as a waiver of his right to remain silent. *Id.* at 384 ("Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent.").

In addition, the Court finds inapposite *United States v. Ray*, 803 F.3d 244 (6th Cir. 2015). Defendant cites *Ray* for the proposition that statements given after mid-stream *Miranda* warnings should be analyzed with greater scrutiny. (Doc. No. 355). In *Ray*, the Sixth Circuit adopted the multi-factor test set out by the plurality in *Missouri v. Seibert*, 542 U.S. 600, 614 (2004), to determine the admissibility of statements given after *Miranda* warnings when the suspect was not *Mirandized* until after the interrogation was underway. *Ray*, 803 F.3d at 272. A critical difference between *Ray* and the case at hand is that Defendant was in fact *Mirandized* at the beginning of the interview. Although the Advice of Rights Waiver was presented to Defendant approximately ten minutes into the interview (arguably "mid-stream"), the *Miranda* warnings were not given "mid-stream." Moreover, Defendant does not need to sign an Advice of Rights Waiver in order for the waiver to be effective. *See Butler*, 441 U.S. at 374-75 (finding waiver effective where defendant said to the police, "I will talk to you but I am not signing any form"); *see also Davie v. Mitchell*, 547 F.3d 297, 306-07 (6th Cir. 2008) (finding waiver effective where defendant repeatedly refused to initial waiver but was read his *Miranda* rights and acknowledged that he understood them).

Accordingly, there is no basis to hold that Defendant did not waive his rights prior to the custodial interrogation in a knowing or voluntary fashion. To the contrary, the preponderance of the evidence suggests otherwise. Defendant's statements made during his custodial interrogation at the police station are not suppressible on the grounds that Defendant never validly waived his *Miranda* rights.

### 2. Defendant Did Not Revoke His Waiver

In the alternative, assuming Defendant did validly waive his *Miranda* rights at the outset of the interview, Defendant requests that the Court suppress any statements made after Defendant mentioned and asked about "my lawyer." "[A]fter a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Davis v. United States*, 512 U.S. 452, 461 (1994). Under the rule promulgated in *Edwards v. Arizona*, 451 U.S. 477, 484–485 (1981), officers must immediately cease questioning a suspect who has invoked his right to counsel. *Id.* at 484-85; *see also McNeil v. Wisconsin*, 501 U.S. 171, 176-77 (1991) ("Once a suspect asserts the right [to counsel], not only must the current interrogation cease, but he may not be approached for further interrogation 'until counsel has been made available to him[.]'"). But the request for an attorney must be unambiguous and unequivocal. *Weissert v. Palmer*, 699 F. App'x 534, 540 (6th Cir. 2017). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.* (quoting *Davis*, 512 U.S. at 459). "Although a suspect need not 'speak with the discrimination of an Oxford don,' he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* (citation omitted). Moreover, not all references to an attorney are sufficient to invoke the right to counsel and trigger the *Miranda* protections. Citing the Supreme Court, the Sixth Circuit has stated:

> Interrogation must cease only when the suspect has expressed his wish for the particular sort of lawyerly assistance that is the subject of *Miranda*. It requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police.

*Williams v. Houk*, 676 F. App'x 524, 537 (6th Cir. 2017) (internal quotation marks omitted).

15

It is clear from the audio recording that Defendant did not ask for counsel to be present during the interview. Defendant's purported invocation transpired as follows:

> Officer: Would you mind signing. . . so I read you your rights and this is the Advice of Rights Waiver[2] you don't have to sign it if you don't want. I'd like it if you did. It's just that I read you your Miranda is all it is. If you want to scribble your signature on there for me. I wouldn't. I'd like it but you don't have to.
>
> Defendant: I'd rather my lawyer sign it.
>
> Officer: Lawyers can't sign these
>
> Defendant: Can I talk to my lawyer first?
>
> Officer: Before you sign your Miranda?
>
> Defendant: I've been cooperative I was talking to you and now you're telling me I ain't giving you what you want.

(Plaintiff Exhibit 1). This is not an unequivocal request for counsel. The Supreme Court's decision in *Connecticut v. Barrett*, 497 U.S. 523, 529 (1987) is instructive here. In *Barrett*, the Court held that the defendant's statement that he was willing to speak with police but would not make a written statement without the assistance of counsel did not preclude the police from questioning the defendant. *Id.* at 529-30. The Court characterized his request for counsel as a "limited invocation" and held that it was not effective for all purposes. *Id.* at 530. Similarly, Defendant's request that his lawyer sign the Advice of Rights Waiver and that he be permitted to speak to his attorney before signing an Advice of Rights Waiver does not rise to the level of an unambiguous request that counsel be present. Defendant's request was clearly a limited invocation to speak to

---

[2] The officer told Defendant that the "Advice of Rights Waiver" was merely a statement declaring that Defendant was read his rights. This was wrong. The Court has viewed the waiver and is aware that the waiver is both an averment that rights were read *and* that Defendant in fact waived those rights. Although this is not dispositive of any issue on the motion to suppress the Court notes its concern that this conduct was, intentionally or unintentionally, misleading. The Court understands that law enforcement generally may use deception during interrogations, but surely it should be accurate when describing the forms it is asking a defendant to sign to waive constitutional rights.

his attorney before signing any document.[3] Accordingly, the Court finds that Defendant did not unambiguously invoke his right to counsel and revoke his initial *Miranda* waiver.

## CONCLUSION

For the above-mentioned reasons, the Court **DENIES** Defendant's Motion to Suppress Extrajudicial Statements Made to Law Enforcement on March 4, 2019 (Doc. No. 355).

After reviewing the briefs, the above-stated standards, and the evidence and argument presented at the evidentiary hearing on January 7, 2020, the Court **DENIES** Defendant's Motions to Suppress (Doc. Nos. 351, 353, & 358) for the reasons stated on the record at the evidentiary hearing, except to the extent it **GRANTS** Doc. No. 351 in part as discussed above.[4]

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[3] On this point, as noted above Defendant was informed—albeit incorrectly—that the Advice of Rights Waiver stated only that the officer had read Defendant his rights and not that he was waiving those rights.

[4] As discussed above, Defendant's Motion to Suppress (Doc. No. 351) was denied except with respect to any scale(s) beyond the single scale sufficiently established to have been lawfully seized in the Storage Facility under the plain view doctrine.