**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 26, 2020

**BY ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Michael Avenatti*,
            S1 19 Cr. 373 (PGG)

Dear Judge Gardephe:

The Government respectfully submits this letter in opposition to the defendant's letter motion of late Friday, January 24, 2020 (Dkt. No. 210) ("Def. Ltr."), in which the defendant seeks six orders:

(1) precluding the Government from commenting in its opening statement on or offering:

    a. certain of his web history and searches (*id.* at 1-2),

    b. a letter emailed to him shortly after his arrest instructing him not to disclose publicly information that he thereafter publicly disclosed (*id.* at 2),

    c. certain text messages sent to and postings by him after his arrest (*id.* at 3), and

    d. evidence of the amount of the payment that he demanded from NIKE, Inc. ("Nike"), purportedly for an internal investigation (*id.* 3-4);

(2) precluding the Government from arguing that he sought payment in exchange for "silence" (*id.* 2-3 (internal quotation marks omitted)); and

(3) permitting the defendant to talk about Colin Kaepernick (*id.* at 4-5).

Multiple of these issues could have been raised previously—indeed, weeks or months ago. One is effectively a motion for reconsideration. None has merit.

I. The Defendant's Web History and Searches

On March 10, 2019, shortly after a phone call with Jeffrey Auerbach and after receiving a follow-up email from Mr. Auerbach, the defendant used his iPhone to search for "nike.put options," to visit the website "Nasdaq.com – Nike, Inc. (NKE) Option Chain," and to search for "insider trading." Evidence of these searches and browsing history is highly relevant. This conduct corroborates both the defendant's contemporaneous belief that he could use the confidential information provided to him by Gary Franklin, Sr., and Mr. Auerbach to harm Nike's stock price and his intent to use that information to benefit himself (by purchasing put options and thereafter causing Nike's stock to drop, or at least purchasing such options so as to benefit personally if he followed through on his threats to make such information public). It also demonstrates that the defendant acted deliberately, and not rashly, and thus helps to show that he acted wrongfully. And it further demonstrates that the defendant's focus, from the very beginning, was on himself, not his client.[1]

Furthermore, this evidence is not confusing or unfairly prejudicial. The Government does not intend to argue that the defendant carried through with a plan to purchase options or committed insider trading—instead, he sought to obtain sums without a capital investment through the charged conduct. In any event, that the defendant considered purchasing options or searched for "insider trading" is certainly no more sensational or disturbing than the crimes with which he is charged—extortion and honest services fraud—and there is no plausible risk that the jury will convict him based on an insider trading theory. *See United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). The Government also has no objection to a limiting instruction concerning this evidence, should the defendant request one.

Nor does this evidence fall within Federal Rule of Evidence 404(b). Rather, it is direct evidence of the defendant's conduct and intent, and of the deliberate manner in which he acted with respect to the charged conduct. *See United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997) (evidence of an uncharged criminal act is not considered a separate act and is properly admissible as "direct proof" of the charged crime "if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding

---

[1] The Government does not intend to refer to this evidence in its opening statement.

Honorable Paul G. Gardephe
United States District Judge
January 26, 2020
Page 3

the charged offense, or if it is necessary to complete the story of the crime on trial" (internal quotation marks omitted and alterations incorporated)).[2]

Other than conclusorily asserting that "there is no probative value to such evidence" and that "it goes without saying" that "there is substantial danger of unfair prejudice," the defendant argues only that it is "[i]ronic[ ]" that the Government seeks to offer evidence of these Internet searches and a webpage visit when the Government sought to preclude other "search terms and results." (Def. Ltr. 2.)  Of course, nothing about the admissibility of any evidence turns on whether that evidence happens to take the form "search terms and results," and the fact that some other search terms or webpage visits might not be relevant or might be confusing or unfairly prejudicial sheds no light on the relevance or admissibility of this evidence.

    II. <u>A Letter Emailed to the Defendant After His Arrest by Mr. Franklin's Counsel</u>

      A. <u>Relevant Background</u>

On March 27, 2019, at 6:43 p.m. Eastern Time and 8:09 p.m. Eastern Time, approximately two days after his arrest, the defendant publicly disclosed on Twitter confidential information and documents that had been sent to him by Mr. Auerbach in an email with a "Privileged & Confidential" header on March 18, 2019 (GX 308, Dkt. No. 205-6).  (GX 108A & 108B, Dkt. Nos. 205-3 & 205-4.)[3]  That same day, at 9:10 p.m. Eastern Time, Michael Proctor, Esq., new counsel for Mr. Franklin, sent an email to the defendant at both ma@augustusllp.com and mavenatti@eaganavenatti.com with the subject line: "Urgent correspondence: Gary Franklin Sr." (GX 313, Dkt. No. 205-9.)  The defendant did not respond.  On April 26, 2019, Mr. Proctor received what appeared to be a notice from the email server for mavenatti@eaganavenatti.com that his prior email to that address was not delivered.  Mr. Proctor never received such a notice from the email server for ma@augustusllp.com.

---

[2] Although this evidence is not covered by Rule 404(b), the defendant's assertion that "the government . . . never gave notice" of the evidence (Def. Ltr. 1) is false.  The Government produced these materials to the defendant on September 10, 2019, prior to the Government reviewing them, due to the necessity of a privilege review.  On January 6, 2020, after identifying the evidence, the Government sent a letter to the defendant stating that, although the evidence did not fall under Rule 404(b), "we may offer evidence at trial that on or about March 10, 2019, the defendant conducted Google searches for, among other things, 'Nike put options' and 'insider trading,' and visited Nasdaq.com's webpage regarding NIKE, Inc.'s common stock option chain."  Shortly thereafter, at the defendant's request, the parties conferred regarding the Government's intention to offer this evidence, and the manner in which it would do so.  The defendant does not explain why he waited nearly three weeks, until the proverbial eve of trial, to move to preclude that evidence.

[3] The defendant's motion to preclude these Twitter posts, which the Government has opposed, is pending.  (Dkt Nos. 196, 197, 205.)

At trial, the Government expects the Office Manager to testify that the ma@augustusllp.com email address ran on a Google Gmail platform, and Mr. Auerbach to testify that he communicated with the defendant at that email address as recently as at least on or about March 18, 2019. There is no reason to think that Mr. Proctor's email to the defendant at that email address was not delivered to the defendant, nor does the defendant suggest any such reason. By contrast, the Government understands that law enforcement agents working with the United States Attorney's Office for the Central District of California seized the private email server that hosted the mavenatti@eaganavenatti.com address on or about March 25, 2019, which understandably may have caused difficulties in the defendant's receipt of email sent to that address.

On April 6 and 8, 2019, the defendant publicly posted on Twitter additional confidential information and documents that had been sent to the defendant by Mr. Auerbach, which were attached to an email and/or a memorandum that each contained a "Privileged & Confidential" header. (GX 108C, Dkt No. 205-5; GX 108D, Dkt. No. 205-8.)

B.   Discussion

The defendant first claims that Mr. Proctor's March 27, 2019 emailed letter should be precluded because there is "no evidence" that the defendant "saw" it. (Def. Ltr. 2.)[4] This assertion is misleading. As explained above, Mr. Proctor sent the letter to ma@augustusllp.com, which was hosted on a Google Gmail platform and, as multiple witnesses will testify, the defendant used that email address only days before. Any suggestion that the defendant did not receive the email is therefore inconsistent with the facts, and any suggestion that the defendant saw the email, but did not actually read it, would go to the weight of the evidence, not its admissibility. *See United States v. Tin Yat Chin*, 371 F.3d 31, 37 (2d Cir. 2004) ("Rule 901 does not erect a particularly high hurdle," and is "satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity.").

The defendant also argues that the emailed letter is "classic hearsay for which no exception applies." (Def. Ltr. 2.) But the Government does not intend to offer the letter for the truth of any matters asserted therein. The Government offers the letter both for (1) the defendant's knowledge and state-of-mind, and (2) as evidence of the nature and content of conversations, only days earlier, between Mr. Franklin and the defendant—which the defendant has repeatedly made clear will be a central contested issue at trial. The letter's probative value in the latter respect does not rest on whether the defendant contemporaneously saw it.[5]

---

[4]   The Government does not intend to refer to this letter in its opening statement.

[5]   The letter is also admissible in the event that the defendant attacks the credibility of Mr. Franklin with respect to what occurred in his conversations with the defendant or what he intended for the defendant to do on his behalf, *see* Fed. R. Evid. 801(d)(1)(B), as the defendant has repeatedly made plain he intends to do.

   III.  Argument That the Defendant Sought Money in Exchange for "Silence"

  As alleged in the Superseding Indictment, and as reflected in recordings that are expected to be admitted into evidence, the defendant threatened to publicize alleged misconduct by Nike employees unless Nike paid him millions of dollars. (*See* Superseding Indictment ¶¶ 10(c)-(d), 13(e), 14(d)-(e).) The defendant also told Nike's attorneys that, if they agreed to hire him to conduct a purported internal investigation, Nike would be able to control the information and decide what to do with it. As he acknowledges (Def. Ltr. 2), the defendant also stated that he would "ride off into the sunset" if paid $22.5 million in a lump sum. In short, the evidence establishes that the defendant would publicize allegations against Nike if he were not paid, and he would not publicize or report those allegations if he were paid.

  Notwithstanding this evidence, much of which is recorded, and the Superseding Indictment's express allegation that that defendant "demanded" payment in exchange for "silence" (Superseding Indictment ¶ 1), the defendant contends that the Government should not be able so to argue. (Def. Ltr. 2-3.) This contention—which the defendant could have raised months ago—may be described as frivolous. It has little or no basis in admissible evidence, much less a persuasive one.[6] But even if it did, there is "no summary judgment in criminal cases," *United States v. Elie*, No. 10 Cr. 336 (LAK), 2012 WL 383403, at *1 (S.D.N.Y. Feb. 7, 2012), the "government has broad latitude in the inferences it may reasonably suggest to the jury," *United States v. Casamento*, 887 F.2d 1141, 1189 (2d Cir. 1989), and the arguments of counsel are not the law, but simply "how that party views the evidence the jury has seen and heard and to suggest to that body what significance or inference it should attach to or draw from the evidence under the relevant law charged by the trial court," *United States v. Arboleda*, 20 F.3d 58, 61 (2d Cir. 1994).

  To be sure, the defendant is entitled to argue at trial that he "never promised silence *from the authorities* (Def. Ltr. 2 (emphasis in original)), if he deems that relevant, so long as he does not refer to a fact not in the record or misstate the evidence in the record, *see, e.g.*, *United States v. Suarez*, 588 F.2d 352, 354 (2d Cir. 1978). But he is not entitled to block the Government from arguing that he is guilty as expressly charged.

   IV.  Certain Text Messages Sent to and Postings by the Defendant After His Arrest

  In a section of his letter that appears to be a reply in support of the defendant's pending motion *in limine* with respect to the same evidence (Dkt. Nos. 196, 197), the defendant offers two responses to Government's opposition to that motion (Dkt. No. 205). Neither has merit.

---

[6] The defendant's assertion to the contrary rests on incomplete quotations from the draft transcript of the March 21, 2020 meeting. (*See* Def. Ltr. 2.) In fact, the defendant said, "They're gonna have to self-report, in my view. Now again, that's not ultimately up to me." (Draft Tr. 27:10-12.) In other words, notwithstanding the defendant's professed view that Nike would have to self-report at some point, if it paid him what he demanded, it would retain control over how the information was used—that is, in short, Nike could buy the defendant's silence.

Honorable Paul G. Gardephe
United States District Judge
January 26, 2020
Page 6

*First*, with respect to two text messages sent by Mr. Auerbach to the defendant on March 27, 2019, the defendant suggests that the Court should reject the Government's argument that these messages are admissible to help demonstrate the nature and content of conversations, only days earlier, between Mr. Auerbach, Mr. Franklin, and the defendant, on the ground that this argument is inconsistent with an argument of Government counsel at the January 22, 2020 conference. (Def. Ltr. 3.) There is no inconsistency.[7]

The Government's position has been, and remains, that evidence that does not bear on the contemporaneous knowledge and intent of the defendant is irrelevant. However, this does not necessarily mean that only communications seen by the defendant himself are relevant—a point with which the defendant has not just agreed, but pressed at the conference (Dkt. No. 205-2, at 107), and repeats again in his letter (Def. Ltr. 3) As the Government explained at the conference, its view is that the defendant's blanket invocation of this general principle is far too wide-sweeping, and that, in particular, text messages that substantially predate the events in this case and that do not mention or concern the defendant should not be admitted on the ground that they purportedly show what occurred far later. In short, as with all evidentiary questions, the pertinent analysis must proceed on a communication-by-communication basis, under both Federal Rule of Evidence 401 and Federal Rule of Evidence 403. The two text messages here easily meet the modest threshold of relevance, and are not in any way unfairly prejudicial or confusing, much less substantially so.

The defendant does not persuasively contend to the contrary. He does not raise Rule 403, and asserts only that these particular text messages reflect what Mr. Auerbach thought "at that time," meaning, when he sent them. (*Id.*) That assertion is a red herring. Plainly, that Mr. Auerbach's immediate reaction to a Twitter post of the defendant (GX 107, Dkt No. 205-1) was to text the defendant that the post was "very upsetting" and that the defendant should "call me before going public in any way" bears on what he and Mr. Franklin told the defendant, and were led to understand by the defendant, only days earlier. So too with Mr. Auerbach's second message, sent when he learned of and was appalled by the allegation that that the defendant secretly used the information provided by him and Mr. Franklin to seek an enormous sum of money from Nike for himself, for a so-called "internal investigation" that the defendant had never discussed with Mr. Auerbach or Mr. Franklin. To be sure, as the Government stated in its opposition, to the extent that the defendant wishes to argue that these messages, contrary to their content and commonsense, do not, in fact, bear on what he was told by Mr. Auerbach and Mr. Franklin, and what he led them to understand, he is both entitled to cross-examine Mr. Auerbach about the messages and to make

---

[7] Even if there were an inconsistency, to the extent the Court has ruled on an issue, or suggested an inclination to rule in a certain manner, that ruling applies equally to both parties, and the Government is entitled to argue that it supports admission of other, similar evidence, particularly to avoid the jury having a misleading impression.

Honorable Paul G. Gardephe
United States District Judge
January 26, 2020
Page 7

such a claim to the jury. But he is not entitled to have the jury only see those messages that he believes support his theory of defense.[8]

*Second*, with respect to Twitter posts of the defendant after his arrest, he asserts that his "mental state would have differed a great deal" from earlier. (Def. Ltr. 3.) That again may be so, but it does not render the posts, which track those he sent earlier (GX 106, 107), and were sent contrary to instructions given to him by Mr. Franklin and Mr. Auerbach both before and after the defendant's arrest, irrelevant. *See United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990) ("Relevancy cannot be reduced to mere chronology[.]"). Nor does the defendant cogently explain why the posts "fail a simple Rule 403 balancing test" (Def. Ltr. 3). The fact that the defendant was arrested will come into evidence, and the defendant is free to argue to the jury that his mental state had therefore sufficiently "differed" from earlier such that the posts are not inculpatory. That is not a basis to preclude them. Rather, as the Government explained in its opposition, "[o]nce relevance is established," challenges to persuasiveness "go to weight rather than admissibility." *United States v. Diaz*, 878 F.2d 608, 615 (2d Cir. 1989); *see also, e.g.*, *United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006) ("so long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded" as irrelevant (citing *United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir. 1970) (Friendly, J.))).

Finally, as the Government also explained in its opposition, even if the Court were not otherwise inclined to permit the posts to come into evidence, in the event that the defendant were to argue affirmatively that his conduct was consistent with his client's instructions or that he only shared such material with Nike, the Government should at that time be permitted to offer the posts, because the jury would otherwise have a false impression of the defendant's conduct. The defendant does to respond to this point in his letter.

V.  Evidence of the Sums of Money Demanded by the Defendant

Based on taking words of both the Court and of the Government at the recent conference out of context, the defendant seeks to preclude all evidence of the amounts of his extortionate demands.[9] (Def. Ltr. 3-4.) Obviously, evidence of the defendant's demands, including the

---

[8]  As the Government stated in its opposition, the messages are also admissible in the event that the defendant attacks the credibility of Mr. Auerbach with respect to what occurred in his conversations with the defendant, *see* Fed. R. Evid. 801(d)(1)(B), as the defendant has repeatedly made plain he intends to do. The defendant does not respond to this point in his letter.

[9]  As was perfectly clear during the conference, what was being discussed was whether the Government would argue that $15-25 million was or was not an objectively reasonable cost for an internal investigation. (*See* Tr. 122:22-129:1 (Jan. 22, 2020).) What the Government stated at the time, and has stated elsewhere, is that it does not intend so to argue, but it does intend to argue, among other things, that the amount demanded was not tethered to anything concrete, was far larger than the amount sought for Mr. Franklin, and was related to the amount of personal and business debts that the defendant had accrued.

Honorable Paul G. Gardephe
United States District Judge
January 26, 2020
Page 8

amounts of those demands, is relevant, for multiple reasons.  The defendant does not seriously argue otherwise.  Instead, he suggests that the jury should learn of the amount that he sought for Mr. Franklin, but not the amount that the defendant sought for himself.  The defendant is not entitled to such a one-sided presentation of evidence, much less when the defendant's demands—including with respect to amount—were recorded.  The only result of such a misleading presentation of the facts would be to frustrate "the very nature of a trial" that is, "a search for truth."  *Nix v. Whiteside*, 475 U.S. 157, 166 (1986).

      VI.    <u>Mention Of and Argument Concerning Colin Kaepernick</u>

Finally, the defendant asks this Court to permit him both to mention and discuss Colin Kaepernick. (Def. Ltr. 4-5.)  However, the Court already ruled that the defendant may not, unless Mr. Kaepernick's name is on a recording that will be heard by the jury. (*See* Tr. 149:2-11 (Jan. 22, 2020).)  And the defendant acknowledges that Mr. Kaepernick's name is *not* on any such recording. (Def. Ltr. 4.)  The defendant's argument is thus effectively a motion for reconsideration.  "The standard" for reconsideration "'is strict and [such a motion] will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"  *Boyd v. United States*, No. 12 Civ. 474 (JSR), 2015 WL 1345809, at *1 (S.D.N.Y. Mar. 21, 2015) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).  The defendant does not come close to meeting this standard.  He asserts merely that because, in non-recorded conversations, Mr. Kaepernick's name may have been mentioned, he should be allowed both to elicit that fact and to make arguments concerning it. (Def. Ltr. 4-5.)  That assertion fails for multiple reasons.

As an initial matter, that a name may have been used in a non-recorded conversation does not automatically mean that the defendant should be permitted to use it at trial (or that the Government should be permitted to do so), much less make arguments concerning the person named.  Put differently, the name "will be featured" (*id.* at 4) only if the defendant chooses so to feature it.  The question is whether the defendant should be permitted to do so.  The answer is no.

The defendant's sole argument to the contrary is to state that he purportedly "approached Mr. Geragos, believing that Nike would trust a lawyer as serious as Mr. Geragos (together with Mr. Avenatti) to conduct a legitimate investigation," because Mr. Geragos had "resolved a case ***as sensitive as Kaepernick's*** with Nike." (*Id.* at 5 (emphasis in original).)  The defendant cites nothing in support of this purported fact—which is not supported by the defendant's own text messages with Mr. Geragos, which show that what the defendant cared about was connecting with Nike as soon as possible, not *why* Mr. Geragos was able to do so.  Notably, Mr. Kaepernick's name does not appear in those text messages.

But even if there were some theoretical relevance to Mr. Kaepernick's name (rather than the nature of Mr. Geragos's prior relationship with Nike, which can be explained without using the name), it should be precluded under Rule 403 for the reasons previously discussed with the Court.  Rightly or wrongly, Mr. Kaepernick is a controversial figure.  *Compare, e.g., Heroes of the 2010s: Colin Kaepernick, at* https://www.motherjones.com/politics/2019/12/heroes-of-the-

Honorable Paul G. Gardephe
United States District Judge
January 26, 2020
Page 9

2010s-colin-kaepernick/ (last visited Jan. 26, 2020), *with, e.g.*, *NFL Executive: Colin Kaepernick Is 'A Traitor,'* at https://newyork.cbslocal.com/2016/08/31/colin-kaepernick-rae-carruth/ (last visited Jan. 26, 2020), *and*, *'He's a racist': Graham rips 'loser' Kaepernick for 'un-American' criticism of Soleimani strike*, *at* https://www.washingtonexaminer.com/news/hes-a-racist-graham-rips-loser-kaepernick-for-un-american-criticism-of-soleimani-strike (last visited Jan. 26, 2020). And, importantly, his work and relationship with Nike, in particular, again rightly or wrongly, also is controversial. *See, e.g.*, *When It Comes to Colin Kaepernick, the Flag and Nike, It's Just Business*, The Wall Street Journal, July 3, 2019, *available at* https://www.wsj.com/articles/when-it-comes-to-colin-kaepernick-the-flag-and-nike-its-just-business-11562161561; *Nike drawn into NFL-Kaepernick dispute over private workout*, *at* https://www.foxbusiness.com/sports/nike-nfl-colin-kaepernick-workout-commercial (last visited Jan. 26, 2020). That presumably is why the defendant is fighting so hard to use his name, when it is otherwise wholly irrelevant. And it is precisely why the defendant's argument should be rejected, again.

                Respectfully submitted,

                GEOFFREY S. BERMAN
                United States Attorney

By:    s/ Daniel C. Richenthal
        Matthew D. Podolsky
        Daniel C. Richenthal
        Robert B. Sobelman
        Assistant United States Attorneys
        (212) 637-1947/2109/2616

cc:    (by ECF)

      Counsel of Record