**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 27, 2020

**BY ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Michael Avenatti*,
              S1 19 Cr. 373 (PGG)

Dear Judge Gardephe:

The Government respectfully submits this letter pursuant to the Court's order dated January 22, 2020, directing the Government to describe the anticipated testimony in the Government's case-in-chief of the Office Manager and a forensic accountant with the Federal Bureau of Investigation ("FBI"). (Dkt. No. 194.)

### I. The Office Manager's Expected Testimony

The Government expects that the Office Manager would provide focused testimony, summarized as follows (which is not cumulative of the evidence or a stipulation of the fact of judgments against the defendant, because the testimony connects those judgments to the defendant's knowledge, intent, and charged conduct):

- The Office Manager worked for the defendant for approximately ten years, ending on the date of his arrest in this case, March 25, 2019.

- In March 2019 (as well as for years prior), the Office Manager was responsible for assisting the defendant with managing his law firm's finances and, on some occasions, with his personal finances. During that period, the defendant and the Office Manager spoke by telephone virtually every day (often more than once), and also communicated frequently by text message and email.

- In the weeks preceding March 25, 2019, the Office Manager and the defendant had frequent conversations about the poor financial state of the defendant's law firm, which was owned by an LLC of which the defendant was the sole member, and

Honorable Paul G. Gardephe
United States District Judge
January 27, 2020
Page 2

debts owed by the law firm to various sources, including a $10,000,000 judgment,[1] approximately $2.4 million in unpaid bills to the law firm's vendors (GX 129, attached hereto as Exhibit 1),[2] and approximately $11,000 in overdue health insurance premiums (GX 111, attached hereto as Exhibit 2).[3]

- In sum, the Office Manager's conversations with the defendant included, among other things, discussions about how difficult it was for the law firm to continue to function given its outstanding debts and how the new law firm that the defendant had founded shortly before his arrest, Augustus LLP, would not be able to engage appropriately and efficiently in the practice of law if Eagan Avenatti's debts were not paid, because vendors would not be willing to do business with the defendant and/or his firm.

- In at least early March 2019 through on or about March 19, 2019, the Office Manager had several conversations with the defendant about whether the law firm would be able to meet its payroll obligations that were due on March 15, 2019 (and had similar discussions for a few months prior, as the law firm's finances deteriorated). As part of these communications, the Office Manager sent the following text message to the defendant on March 15, 2019: "Know you don't need this today – but let me know what to tell people on payroll." (GX 102, attached hereto as Exhibit 3.) After that text message, the Office Manager and the defendant had several conversations in which the defendant, among other things, expressed frustration about the law firm's finances. On March 19, 2019, the defendant's law

---

[1] Consistent with the Court's ruling, the Government intends to propose a stipulation with respect to this judgment. (Transcript of January 22, 2020 Conference (Dkt. No. 205-2 ("Tr.")), at 15 ("I will allow the government to introduce evidence that has not been seriously disputed. That evidence includes the judgments that had been entered against Avenatti as of March 2019.").) Regardless of whether a stipulation is reached or whether the Government offers the judgment into evidence, the Government will not inquire of the Office Manager about how the judgment (or any others) arose. (*See id.* ("I do not intend to admit evidence concerning how these obligations arose.").)

[2] GX 129 was found on the defendant's laptop computer, which was seized at the time of his arrest. The metadata from GX 129, which the Government intends to offer at trial, reflects that it was last accessed on the defendant's laptop on or about March 5, 2019.

[3] GX 111, which was addressed to the Office Manager, was found in hard copy in the defendant's briefcase at the time of his arrest.

Honorable Paul G. Gardephe
United States District Judge
January 27, 2020
Page 3

>  firm received a $100,000 wire transfer from Geragos & Geragos APC, which was used, in part, to pay the law firm's payroll (approximately four days late).[4]

- Sometime between on or about March 15 and on or about March 25, 2019 (at the same time the defendant was engaged in the charged extortion and honest services wire fraud schemes), the defendant called the Office Manager and told her, in substance, that he was about to receive enough money to pay off his personal and business debts. On that call, the defendant sounded enthusiastic and excited, and indicated that, after receiving that money, he would be able to live his life the way he wanted to.[5]

### II. The Forensic Accountant's Expected Testimony

The Government anticipates calling an FBI forensic accountant to present brief testimony, that, in sum, that he has reviewed certain bank records of the defendant and his law firm (the admissibility of which the defendant has not challenged), and that they show little or no income in the first four months of 2019. The Government also anticipates offering a simple summary chart or two showing the same, pursuant to Federal Rule of Evidence 1006. The forensic accountant's testimony is expected to be very short and limited to summarizing balances, inflows, and outflows of the relevant bank accounts.

---

[4] Consistent with the Court's ruling that it "intend[s] to exclude evidence that Avenatti owed money to Geragos" (Tr. 16), the Government will not inquire of the Office Manager about the Office Manager's understanding of why this wire transfer was made or whether the funds were expected to be repaid by the defendant or his law firm (unless the defendant opens the door).

[5] Consistent with the Court's ruling, the Government will not inquire regarding the Office Manager's estimate of the defendant's total debts as of March 2019. (Tr. 16 ("The office manager will not be permitted to testify that she estimates that Avenatti's debts, as of March 2019, totaled approximately $20 to $25 million.").)

Honorable Paul G. Gardephe
United States District Judge
January 27, 2020
Page 4

        Respectfully submitted,

        GEOFFREY S. BERMAN
        United States Attorney

By:    */s/ Robert B. Sobelman*
        Matthew D. Podolsky
        Daniel C. Richenthal
        Robert B. Sobelman
        Assistant United States Attorneys
        (212) 637-1947/2109/2616

Attachments

cc:    (by ECF)

       Counsel of Record

# EXHIBIT 1

Case 1:19-cr-00373-PGG   Document 212-1   Filed 01/27/20   Page 1 of 4

## EA - A/P Aging Summary

| VENDOR | AMOUNT |
|---|---:|
| Ace Parking | 9,550.00 |
| Aderant | 10,185.62 |
| Advanced Discovery | 20,367.34 |
| Allied Alarm | 250.00 |
| Alphagraphics | 3,296.21 |
| AT&T | 130.46 |
| Atkinson Baker | 550.00 |
| Baker Hostetler | 5,539.55 |
| Baker, Keener & Nahra LLP | 204,554.43 |
| Barkley Court Reporters | 1,291.79 |
| Ben Hyatt Court Reporters | 788.80 |
| Blue Cross/Anthem | 37,826.46 |
| Burlington Rockenbach | 981.63 |
| Cascade Capital Group | 60,050.00 |
| CCROLA | 2,350.22 |
| Central Communications | 7,497.52 |
| City of Newport Beach | 340.00 |
| Collision and Injury Dynamics, Inc. | 173.50 |
| Competition Economics | 520,960.40 |
| County of Orange | 496.15 |
| D.O.S. LLC | 11,261.93 |
| David W. Stewart, PhD | 13,333.33 |
| Eisenhower Carlson PLLC | 90,632.87 |
| Employers Preferred Ins. Co. | 3,495.11 |
| Esner Chang | 34,468.19 |
| Esquire Court Reporters | 336.95 |
| Executive Presentations | 217,225.45 |
| First Legal | 111.30 |
| Gass Weber Mullins LLC | 7,285.85 |
| GMGS | 5,548.00 |
| Green Street Advisors/JFL | 39,924.44 |
| HSNO Forensics | 675.33 |
| Humberto R. Gray | 1,225.00 |
| iManage | 1,555.39 |

GOVERNMENT EXHIBIT 129
S1 19 Cr. 373 (PGG)

Page 1 of 3

USAO373_FT_001092

## EA - A/P Aging Summary

| | |
|---|---:|
| **Innovative Computing Systems, Inc.** | 453.33 |
| **International Personnel Protection, Inc.** | 51,010.33 |
| **Int'l Church of the Foursquare** | 10,878.38 |
| **Jack Cross & Associates, Inc.** | 5,266.35 |
| **Jams** | 4,707.50 |
| **John C. Crotts Consulting** | 7,217.49 |
| **KCC/Gilardi** | 4,500.00 |
| **KNJ Ventures** | 99,894.98 |
| **L. Lin Wood** | 300.00 |
| **Litigation Services** | 324.50 |
| **Martindale** | 1,279.00 |
| **Mehler & Hagerstrom** | 5,443.60 |
| **Momentum Engineering Corp** | 1,205.60 |
| **Nationwide Legal** | 42,547.49 |
| **Paperstreet** | 360.00 |
| **PB Purchase** | 1,196.56 |
| **Personal Court Reporters, Inc.** | 51,684.00 |
| **Poyner Spruill** | 2,734.00 |
| **R Johnson** | 12,977.61 |
| **Raines Feldman** | 105,810.54 |
| **Rest Your Case Evidence Storage** | 1,890.00 |
| **Ricoh** | 13,470.80 |
| **Shred-It** | 3,720.88 |
| **Simpson Court Reporters** | 150.00 |
| **SoCal Subpoena** | 557.02 |
| **Source One** | 30.57 |
| **Special Delivery** | 159.60 |
| **Suzy Quinn** | 23,121.59 |
| **Tabs3** | 937.00 |
| **The Irvine Company** | 515,882.35 |
| **The Montage Laguna Beach** | 7,854.00 |
| **The Montlake Group, LLC** | 6,666.00 |
| **The Neurobehavioral Clinic** | 1,038.75 |
| **The X-Law Group** | 21,040.51 |
| **Thomas J. Berger** | 3,000.00 |

USAO373_FT_001093

## EA - A/P Aging Summary

| | |
|---|---:|
| **Thomson West** | 40,535.04 |
| **Unisearch** | 1,314.00 |
| **Veritext** | 2,896.71 |
| **Wilentz Goldman and Spitzer** | 58,888.89 |
| **TOTAL** | **2,427,204.19** |

USAO373_FT_001094

# EXHIBIT 2



**Anthem.**
**BlueCross**
PO BOX 9062
Oxnard, CA 93031-9062

EAGAN AVENATTI LLP
520 NEWPORT CTR DR #1400
NEWPORT BEACH, CA 92660

February 26, 2019

**Your premium payment was returned by your bank**

Dear ▮

Thank you for choosing Anthem Blue Cross for your health care coverage. We're sorry to tell you that your premium of $11626.24 for January was returned by your bank for the reason listed below. To avoid cancellation, you'll need to send us your payment within twenty (20) business days.

**Reason for return: INSUFFICIENT FUNDS**

**What you need to do**
Send your full payment, to the address listed below within twenty (20) business days of the date of this letter. You can send us a cashier's check, certified check or money order. Make payable to Anthem Blue Cross. You may also contact us at the number listed below to make a payment by phone, or make your payment online via EmployerAccess.

**Mail to:**
Anthem Blue Cross
PO BOX 51011
Los Angeles, CA 90051-5311

If you already sent us a replacement payment, simply disregard this notice. The returned item fee will appear on a future invoice.

If you feel you have received this letter in error, or you have any questions, call Small Group Services at 1-855-854-1429. We appreciate your business.

Sincerely,

Small Group Services

Anthem Blue Cross is the trade name of Blue Cross of California. Independent licensee of the Blue Cross Association. ®ANTHEM is a registered trademark of Anthem Insurance Companies, Inc. The Blue Cross name and symbol are registered marks of the Blue Cross Association.

**GOVERNMENT EXHIBIT 111**
S1 19 Cr. 373 (PGG)

USAO373_00029392

# EXHIBIT 3

| Participants | Source | From | Body | Status | Timestamp: Time | Read: Time |
|---|---|---|---|---|---|---|
| ███████<br>Michael John Avenatti (owner)<br>███████<br>███████ | iMessage: ███████ | ███████ | Know you don't need this today - but let me know what to tell people on payroll. | Read | 3/15/2019 5:31:01 PM(UTC+0) | 3/15/2019 5:47:32 PM(UTC+0) |

GOVERNMENT EXHIBIT 102
S1 19 Cr. 373 (PGG)