

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 27, 2020

**BY ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Michael Avenatti*,
            S1 19 Cr. 373 (PGG)

Dear Judge Gardephe:

      Pursuant to the Court's order dated January 22, 2020, directing the parties to file any amendments to their requests to charge in light of the Court's ruling with respect to the scope of expert testimony (Dkt. No. 194), the Government respectfully encloses amended requests to charge with respect to honest services wire fraud. These have been modestly revised, principally in light of *United States v. Silver*, --- F.3d ----, 2020 WL 284426, at *7 (2d Cir. Jan. 21, 2020), and now also include a section on applicable duties and rules.

                        Respectfully submitted,

                        GEOFFREY S. BERMAN
                        United States Attorney

          By:    s/ Daniel C. Richenthal
                Matthew D. Podolsky
                Daniel C. Richenthal
                Robert B. Sobelman
                Assistant United States Attorneys
                (212) 637-1947/2109/2616

Enclosure

cc:     (by ECF)

       Counsel of Record

**REQUEST NO. 13**

**Count Three: Honest Services Wire Fraud**

As I mentioned earlier, Count Three charges the defendant with honest services wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346. This count alleges that the defendant, who is a lawyer, engaged in a scheme to defraud his client of that client's right to the defendant's honest services by seeking to obtain payments for himself from Nike in exchange for taking action and making decisions regarding his representation of his client. A lawyer owes a fiduciary duty—that is, a duty of honest and faithful services—to his client. When lawyer seeks or obtains an undisclosed payment in exchange for taking actions or making decisions in the course of his representations of a client to help or benefit the person making the undisclosed payment, he has breached his duty of honest and faithful service.

In order to establish the offense of honest services wire fraud, the Government must prove the following four elements beyond a reasonable doubt:

First, there was a scheme or artifice to deprive the defendant's client of his intangible right to the defendant's honest services through bribes or kickbacks, which more generally may be referred to as *quid pro quo* payments;

Second, the defendant knowingly participated in the scheme or artifice, with knowledge of its fraudulent nature and with specific intent to defraud;

Third, the scheme or artifice to defraud involved a material misrepresentation, omission, false statement, false pretense, or concealment of fact; and

Fourth, in execution of that scheme, the defendant used, or caused the use by others of, interstate or foreign wires.

Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 44-3; the jury instructions of the Honorable Loretta A. Preska in *United States v. Tanner*, 17 Cr. 61 (LAP); the jury instructions of the Honorable Andrew L. Carter in *United States v. Seabrook*, 16 Cr. 467 (ALC); the jury instructions of the Honorable George B. Daniels in *United States v. Mazer*, 11 Cr. 121 (GBD).

**REQUEST NO. 14**

**Count Three: Honest Services Wire Fraud**

**First Element: Scheme or Artifice**

The first element of honest services wire fraud is the existence of a scheme or artifice to defraud the defendant's client by depriving him of his intangible right to the honest services of the defendant through bribes or kickbacks, which, as I mentioned, can more generally be described as *quid pro quo* payments, which I will explain in a moment.

A "scheme or artifice" is merely a plan for the accomplishment of an object. A scheme to defraud is any plan, device, or course of action to deprive another of the intangible right of honest services by means of false or fraudulent pretenses, representations, or promises reasonably calculated to deceive persons of average prudence.

To prove that the defendant committed honest services fraud, the Government must show a *quid pro quo*, that is, that the defendant sought to receive something of value from Nike or its representatives or at their direction in exchange for an act performed or promised to be performed in the course of his representation of his client in violation of his fiduciary duty to the client, and that the deprivation of the defendant's honest services was material to his client. The Government is not required to show that the defendant performed, or promised to perform, an act solely because of the benefit. It is no defense that the defendant may have ultimately chosen to perform the same act even if he had not received a payment from Nike in exchange. All that is required is the defendant performed, or promised to perform, or conveyed to Nike that he would perform, the act in question at least in part because of the potential payment.

Additionally, the Government is not required to show that any acts the defendant performed, or promised to perform, or conveyed that he would perform, were contrary to his

3

client's interests or caused, or were intended to cause, financial harm to his client.  Rather, the only intended loss the Government must prove is the defendant's client's loss of his intangible right to the defendant's honest services.  However, while the Government need not prove that any actions taken by the defendant were contrary to his client's interests, you are instructed that you may consider such evidence, if any, in determining whether the defendant took any action or promised to take any action at least in part because of a potential payment and not exclusively because it was at the direction, or for the benefit, of his client.  In other words, it is not a defense that the defendant sought something of value in exchange for actions that were lawful, desirable, or even beneficial to his client.

In this context, a *quid pro quo* payment is anything of value, which is solicited, offered, or provided, directly or indirectly, in exchange for taking or agreeing to take action in violation of a fiduciary duty, whether or not the defendant actually accepts the thing of value or ultimately performs the action promised.  The defendant need not have initiated the payment, but he must have known that the payment was sought in exchange for influencing his actions based on his role as his client's lawyer.

If you find beyond a reasonable doubt that the defendant has violated the duty to provide honest services by soliciting a corrupt payment, as defined here, regardless of whether he actually received such a payment, then this element is satisfied.  Because the crime is engaging in a scheme to defraud, and sending a wire or causing a wire to be sent in furtherance of that scheme, the crime has been committed even if no payment is ever actually made or promised.

> Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 44-4;
> the jury instructions of the Honorable Loretta A. Preska in *United*

*States v. Tanner*, 17 Cr. 61 (LAP); the jury instructions of the Honorable Andrew L. Carter in *United States v. Seabrook*, 16 Cr. 467 (ALC); the jury instructions of the Honorable Loretta A. Preska in *United States v. Stevenson*, 13 Cr. 161 (LAP); the jury instructions of the Honorable George B. Daniels in *United States v. Mazer*, No. 11 Cr. 121 (GBD); the jury instructions of the Honorable Loretta A. Preska in *United States v. Ho*, 17 Cr. 779 (LAP) (regarding instruction that payment is not necessary); the jury instructions of the Honorable Vernon S. Broderick in *United States v. Ng*, 15 Cr. 706 (VSB) (same); *see also United States v. Coyne*, 4 F.3d 100, 113 (2d Cir. 1993) (a valid purpose that partially motivates a transaction that is corrupt in part does not insulate participants in an unlawful transaction from criminal liability), *cert. denied*, 510 U.S. 595 (1994); *United States v. Woodward*, 149 F.3d 46, 71 (1st Cir. 1998) ("[a] defendant may be prosecuted for deprivation of honest services if he has a dual intent, *i.e.*, if he is found to have intended both a lawful and unlawful purpose to some degree. If the jury finds that an unlawful purpose was present, it may convict the defendant." (citing *United States v. Greber*, 760 F.2d 68, 72 (3d Cir. 1985)); *United States v. Silver*, --- F.3d ----, 2020 WL 284426, at *7 (2d Cir. Jan. 21, 2020) ("it is the official's *conveyed* intent—not her actual intent—that is determinative in an honest services fraud conviction" (emphasis in original)); *United States v. Ganim*, 510 F.3d 134, 142 (2d Cir. 2007) ("the requisite quid pro quo for the crimes at issue may be satisfied upon a showing that a government official received a benefit in exchange for his promise to perform official acts or to perform such acts as the opportunities arise").

## REQUEST NO. 15

### Count Three: Honest Services Wire Fraud

### Second Element: Intent to Defraud

The second element of honest services wire fraud is that the defendant participated in the scheme to defraud knowingly and with specific intent to defraud.

As I mentioned earlier, a person acts knowingly if he or she acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness.

Specific intent to defraud means to act knowingly and with the specific intent to deceive for the purpose of depriving the defendant's client of his right to the defendant's honest services. Direct proof of knowledge and fraudulent intent is almost never available. It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent. Such direct proof is not required.

The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, conduct, and acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.

Since an essential element of the crime charged is intent to defraud, it follows that good faith on the part of the defendant is a complete defense to a charge of wire fraud. A defendant, however, has no burden to establish a defense of good faith. The burden is on the Government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt.

As I previously explained, when a lawyer takes or agrees to take or offers to take an action in the course of his representation of a client in part because of a concealed or sought payment, the

lawyer has breached his duty to his client. Thus, the client is not receiving what he expects and is entitled to, namely, the client's right to his lawyer's honest and faithful service.

The fact that a lawyer's conduct violates one or more of the duties or rules or codes of conduct required of lawyers does not necessarily mean that there was a scheme to defraud. Nor is it sufficient to merely prove that the defendant was engaged in undisclosed self-dealing or failed to disclose a conflict of interest. However, you may consider any evidence that the defendant violated the duties or rules that apply to lawyers or intentionally did not disclose, or concealed, material information about a financial or personal conflict of interest, money sought or received, or any behavior indicating consciousness of guilt as evidence of the defendant's state of mind. The Government must prove that the defendant took or promised to take or conveyed that he would take or agreed to take some actions, at least in part, because of the payment.

> Adapted from Sand *et al.*, *Modern Federal Jury Instructions*, Instr. 44-5; the jury instructions of the Honorable Loretta A. Preska in *United States v. Tanner*, 17 Cr. 61 (LAP); the jury instructions of the Honorable Valerie E. Caproni in *United States v. Percoco*, 16 Cr. 776 (VEC); the jury instructions of the Honorable Andrew L. Carter in *United States v. Seabrook*, 16 Cr. 467 (ALC).

**REQUEST NO. 16**

**Count Three: Honest Services Wire Fraud**

**Third Element: Materiality**

The third element that the Government must prove beyond a reasonable doubt is that the scheme or artifice to defraud involved a material misrepresentation, false statement, false pretense, or omission.

A statement, representation, or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made. A statement, representation, or document is fraudulent if it was made falsely and with intent to deceive. Deceitful statements, half-truths, the concealment of facts, and the expression of an opinion not honestly entertained may also constitute false or fraudulent statements. The deception need not be premised on spoken or written words alone. The arrangement of the words or the circumstances in which they are used may convey the false and deceptive appearance. For example, the deceit may consist of the concealment of *quid pro quo* payment that the lawyer has demanded or solicited or received, or the lawyer's implicit false representation to his client that he has not solicited or obtained a payment in exchange for taking actions on behalf of the person or entity providing the payment. If there is deception, the manner in which it is accomplished is immaterial.

A representation, statement, false pretense, omission, or concealment of fact is "material" if it would naturally tend to lead or is capable of leading a reasonable person, in this case the defendant's client, to change his conduct.

It does not matter whether the client might have discovered the fraud had he probed it further. If you find that a scheme or artifice existed, it is irrelevant whether you believe that the client or anyone else involved was careless, gullible, or even negligent. Furthermore, it is not

8

necessary that the Government prove that the intended victim actually suffered any loss.  It is sufficient for the Government to prove that the defendant's client did not receive the honest and faithful services of his lawyer, the defendant.

> Adapted from Sand *et al.*, *Modern Federal Jury Instructions*, Instr. 44-4; the jury instructions of the Honorable Loretta A. Preska in *United States v. Tanner*, 17 Cr. 61 (LAP); the jury instructions of the Honorable Andrew L. Carter in *United States v. Seabrook*, 16 Cr. 467 (ALC); *see also United States v. Rybicki,* 354 F.3d 124, 145 (2d Cir. 2003) (en banc) ("the misrepresentation or omission at issue for an honest services fraud conviction must be 'material,' such that the misinformation or omission would naturally tend to lead or is capable of leading a reasonable employer to change its conduct.").

## REQUEST NO. 17

### Count Three: Honest Services Wire Fraud

### Fourth Element: Use of Wires

The fourth and final element that the Government must establish beyond a reasonable doubt is that interstate or international wire facilities were used in furtherance of the scheme to defraud. The term "wire facilities" includes telephones, faxes, emails, text messages, and wire transfers between banks. The use of the wire facilities must pass between two or more states, or from outside the United States into the United States or vice versa.

It is not necessary for the defendant to directly or personally use any wire facility, as long as such use is reasonably foreseeable in the execution of the alleged scheme to defraud. In this regard, it would be sufficient to establish this element of the crime if the evidence justifies a finding that the defendant caused the wires to be used by others; and this does not mean that the defendant himself must have specifically authorized others to use a wire facility. When one does an act with knowledge that the use of the wire will follow in the ordinary course of business or where such use of the wires can reasonably be foreseen, even though not actually intended, then he causes the wires to be used. Incidentally, this wire use requirement is satisfied even if the wire use was done by a person with no knowledge of the fraudulent scheme, including a victim of the alleged fraud.

The use of the wire need not itself be fraudulent. Stated another way, the material wired need not contain any fraudulent representation, or even any request for money. It is sufficient if the wires were used to further or assist in carrying out the scheme to defraud.

Finally, if you find that the wire communication was reasonably foreseeable and that the interstate wire use charged in the Indictment took place, then this element is satisfied even it if

was not foreseeable that the wire communication would cross state or national lines. However, if you find that wire communications were used in furtherance of the scheme to defraud, you must be unanimous as to at least one of the particular interstate or foreign wire communications in furtherance of the scheme that occurred.

> Adapted from Sand *et al.*, *Modern Federal Jury Instructions*, Instr. 44-7; the jury instructions of the Honorable Loretta A. Preska in *United States v. Tanner*, 17 Cr. 61 (LAP); the jury instructions of the Honorable Andrew L. Carter in *United States v. Seabrook*, 16 Cr. 467 (ALC).

**REQUEST NO. 18**

**Count Three: Honest Services Wire Fraud**

**A Lawyer's Duties and Certain Applicable Rules**

You will recall that a few moments ago I told you that a lawyer owes a fiduciary duty—that is, a duty of honest and faithful services—to his client, and that when lawyer seeks or obtains an undisclosed payment in exchange for taking actions or making decisions in the course of his representations of a client to help or benefit the person making the undisclosed payment, he has breached his duty of honest and faithful service.

I am now going to explain to you further the nature of a lawyer's duty, to assist you determining whether the Government has proven this aspect of this count.

I am also going to tell you a bit about certain rules of the State of California, where the defendant was a member of the bar, that is, licensed to practice law.  Please keep in mind that you need not determine whether the defendant violated one or more than one of these rules in order to find the defendant guilty.  Rather, as I said earlier, you need to determine only whether the defendant sought or obtained payment in violation of his fiduciary duty.  I describe these rules merely to assist you in weighing the evidence in this case that has been offered for you to consider whether the defendant violated that duty, and if he did, whether he did so knowingly, as I have described that term earlier.  Please also keep in mind that I am not going to describe all of rules governing a lawyer's conduct, but only those that I believe may assist you in this particular case.

Finally, I am going to tell you briefly about the law governing what is known as a "retainer agreement."  I provide this you to help you weigh certain evidence, but again, you need not determine whether the defendant complied with this particular area of law.

A Lawyer's Duty

I said earlier that a lawyer has a duty of honest and faithful services to his client. That duty, which is sometimes referred to as a "fiduciary duty," encompasses for our purposes three sub-duties, that is, it has three components. You need not find that the defendant violated all three of these components to find that he violated his fiduciary duty.

*First*, a lawyer owes a duty of loyalty to his client. In short, a lawyer must put his client's interest above the lawyer's self-interest. This means, at bottom, that a lawyer must represent the client's interests without being influenced by the lawyer's actual or perceived personal or financial interests. A lawyer may violate this duty by, among other things, (a) prioritizing his or her own financial interest above that of the client, including by using the client's confidential information, as I will define that term below, to advance the lawyer's own financial or other interest, (b) seeking to take on other work or another client that creates a conflict of interest or otherwise hinders or prevents the lawyer from focusing fully on advancing the client's interest, or (c) failing to be honest and forthright with the client about the lawyer's views of the client's potential claim(s), the lawyer's actions, or the lawyer's interests.[1]

*Second*, a lawyer owes a duty of confidentiality to his client. This requires the lawyer to maintain the confidence of any confidential information provided to the lawyer by or on behalf of the client. This duty includes, but is not limited to, communications protected by the lawyer-

---

[1] *See, e.g.*, Mark L. Tuft *et al.*, *California Practice Guide on Professional Responsibility* ("*California Practice Guide*"), Chapter 3, Section E(2); *id.* Chapter 4; *Stockton v. Ford*, 11 How. 232, 247 (1850); *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co., Inc.*, 6 Cal. 5th 59, 104 (2018); *Stanley v. State Bar*, 50 Cal. 3d 555, 567 (1990); *Mayo v. State Bar*, 23 Cal. 3d 72, 75 (1978); *Rader v. Thrasher*, 57 Cal. 2d 244, 250 (1962); *Cox v. Delmas*, 99 Cal. 104, 123 (1893); *Betts v. Allstate Ins. Co.*, 154 Cal. App. 3d 688, 715-16 (1984); *In Matter of Brimberry*, 3 Cal. State Bar Ct. Rptr. 390, 1995 WL 638575, at *14 (1995).

client privilege, also known as the attorney-client privilege, which covers communications made in confidence for the purpose of obtaining legal advice.  In other words, it is broader than lawyer-client privilege.  The duty includes anything that the client wants kept in confidence or might be embarrassing or otherwise detrimental to client, and does not terminate at the end of a lawyer-client relationship.  This duty also applies with respect to individuals conferring with a lawyer regarding potential legal claims and retaining the lawyer.  A lawyer may violate this duty by using or disclosing to another party or publicly a client's confidential information without first obtaining the informed consent of the client.[2]

"Informed consent" means a person's agreement to a proposed course of conduct after the lawyer has communicated and explained (i) the relevant circumstances and (ii) the material risks, including any actual and reasonably foreseeable adverse (meaning, negative or problematic) consequences of the proposed course of conduct.[3]

*Third*, a lawyer owes a duty of communication to his client.  The duty of communication requires a lawyer both to respond promptly to inquiries of the client and to keep the client reasonably informed.  This means that a lawyer must keep his client informed about any significant developments, and must confer with the client regarding both the client's objectives and the means of achieving those objectives.  This duty flows from the principle that the client—not the lawyer—is the ultimate authority for how and whether to dispose of or settle a matter.  Any information that might inform a client's decision in this respect should be communicated, to

---

[2] *See* Cal. Bus. & Prof. § 6068(e)(1); Cal. R. Prof'l Conduct 1.18; *see also, e.g.*, California Practice Guide, Chapter 3, Section E(3); *id.* Chapter 7; *Goldstein v. Lees*, 46 Cal. App. 3d 614, 621 n.5 (1975); ABA Model Rule 1.6.

[3] *See* Cal. R. Prof'l Conduct 1.0.1(e).

14

allow the client to make an informed decision. For this reason, even a nonbinding offer of settlement (meaning, one that is not formal, reduced to a contract, or final), or one that addresses only certain of a client's goals (but not all of them), should be communicated. Similarly, a lawyer should not assume that a client necessarily wants to press all of his or her potential rights, without regard to the potential impact on others. A lawyer accordingly should communicate and work with his or her client to discern both the client's objectives and the means through which the client wishes, or does not wish, to achieve these objectives.[4]

Applicable Rules

The State of California, like all other states, has enacted certain rules of professional responsibility, which are publicly-available, and binding (meaning, have the force of law) on lawyers.[5] They are designed to protect the public, the courts, and the legal profession; protect the integrity of the legal system; and promote the administration of justice and confidence in the legal profession.[6] Among these rules are the following.

---

[4] *See* Cal. Bus. & Prof. § 6068(m); Cal. R. Prof'l Conduct 1.4.1 cmt.; *see also, e.g.*, *California Practice Guide*, Chapter 3, Section E(4); *Calvert v. State Bar*, 54 Cal. 3d 765, 782 (1991); *Kull + Hall LLP v. Karimi*, 2013 WL 2144997, at *3 (Court of App., Second Dist., Div. 4, Cal., May 15, 2013); *Matter of Yagman*, 3 Cal. State Bar Ct. Rptr. 788, 795 (1997); *Nehad v. Mukasey*, 535 F.3d 962, 970-71 (9th Cir. 2008); *In re Clawson*, 434 B.R. 556, 570-71 (N.D. Cal. 2010); Restatement (Third) of the Law Governing Lawyers § 20 and Comment c.

[5] *See* Current Rules of Professional Conduct, *The State Bar of California*, http://www.calbar.ca.gov/Attorneys/Conduct-Discipline/Rules/Rules-of-Professional-Conduct/Current-Rules; Cal. R. Prof'l Conduct 1.0(a).

[6] *See* Cal. R. Prof'l Conduct 1.0(a); *see also, e.g.*, *Sheppard, Mullin, Richter & Hampton, LLP*, 6 Cal. 5th at 74.

Rule 1.2

This rule provides "a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by rule 1.4, shall reasonably consult with the client as to the means by which they are to be pursued." The rule confers upon the client the ultimate authority to determine the purposes to be served by legal representation.[7]

Rule 1.4

This rule provides that a lawyer shall, among other things, "reasonably consult with the client about the means by which to accomplish the client's objectives in the representation," "keep the client reasonably informed about significant developments relating to the representation, including promptly complying with reasonable requests for information and copies of significant documents when necessary to keep the client so informed," and "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." In this context, whether a particular development is "significant" will generally depend on the surrounding facts and circumstances.[8]

Rule 1.6

This rule provides that, absent informed consent, a lawyer may not reveal or disclose a client's confidential information except where necessary to prevent a criminal act likely to result in death or substantial bodily harm.[9]

---

[7]   See Cal. R. Prof'l Conduct 1.2(a); Cal. R. Prof'l Conduct 1.2 cmt. 1.
[8]   See Cal. R. Prof'l Conduct 1.4; Cal. R. Prof'l Conduct 1.4 cmt. 1.
[9]   See Cal. R. Prof'l Conduct 1.6(a).

### Rule 1.7

This rule provides that a lawyer shall not, without informed written consent from each affected client, represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person, or by the lawyer's own interests.

A conflict of interest requiring informed written consent exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities, interests, or relationships, whether legal, business, financial, professional, or personal.[10]

### Rule 1.8.2

This rule provides that a lawyer shall not use a client's confidential information to the disadvantage of the client unless the client gives informed consent. "Disadvantage" means detrimental or unfavorable.[11]

### Rule 2.1

This rule provides that in "representing a client, a lawyer shall exercise independent professional judgment and render candid advice." "Independent" judgment means judgment made without regard to any conflict of interest or the lawyer's own interests. "Candid" means honest and complete.[12]

---

[10]   *See* Cal. R. Prof'l Conduct 1.7; Cal. R. Prof'l Conduct 1.7 cmts. 1, 4.

[11]   *See* Cal. R. Prof'l Conduct 1.8.2; Cal. R. Prof'l Conduct 1.8.2 cmt.

[12]   *See* Cal. R. Prof'l Conduct 2.1; *see also, e.g.*, Robert M. Contis, Jr., *Ethical Considerations: Independent Professional Judgment, Candid Advice, and Reference to Nonlegal Considerations*, 77 Tul. L. Rev. 1223 (2003).

Formation of the Lawyer-Client Relationship

You have heard me mention a number of times the word "client" in describing a lawyer's duties or certain rules.  I instruct you that for the purposes of these duties and rules, the lawyer-client relationship may begin, that is, an individual become a "client," without a contract, or a discussion of fees, or the lawyer or individual using the word client.  Rather, an individual becomes a client when, a reasonable person in the same circumstances would consider the lawyer to have agreed to represent the individual.  For the same reason, an individual need not have agreed to pay any money to the lawyer in order for the lawyer-client relationship to begin.[13]

Retainer Agreements and Fees

Under California law, in any situation in which it is reasonably foreseeable that total expense to a client, including attorney fees, will exceed one thousand dollars, a lawyer is supposed is enter into a written contract with the client, known as a retainer agreement.  That contract is supposed to include, among other things, the basis of compensation, the general nature of the legal services to be provided to the client, and the respective responsibilities of the attorney and the client as to the performance of the contract.[14]

Where a lawyer does not enter into such a contract, the lawyer is entitled only to collect a reasonable fee, on an hourly basis, for work already and actually performed, under what is called "quantum meruit," which fee is not calculated simply as a percentage of any amount of money that may have been collected or will be collected on behalf of the client.  In other words, without a

---

[13] *See, e.g.*, *Lister v. State Bar*, 51 Cal. 3d 1117, 1126 (1990); *Responsible Citizens v. Superior Court*, 16 Cal. App. 4th 1717, 1732-33 (1993); *California Practice Guide*, Chapter 3, Section B.

[14] *See* Cal. Bus. & Prof. §§ 6147-48; Cal. R. Prof'l Conduct 1.5; *California Practice Guide*, Chapter 5, Section F.

written retainer agreement, a lawyer is not entitled to what is known as a contingency fee, but may only collect a fee equal to a reasonable hourly rate multiplied by the hours actually worked. The burden in such instances is on the attorney to prove the hours that he or she worked and the reasonableness of the fee.[15]

---

[15] *See* Cal. Bus. & Prof. § 6148(c); Cal. R. Prof'l Conduct 1.5; *California Practice Guide*, Chapter 5, Section F; *Hance v. Super Store Indus.*, --- Cal. Rptr. 3d ----, 2020 WL 373070, at *7 (Jan. 23, 2020); *Leighton v. Forster*, 8 Cal. App. 5th 467, 490 (2017); *Miller v. Campbell, Warburton, Fitzsimmons, Smith, Mendel & Pastore*, 162 Cal. App. 4th 1331, 1344 (2008); *Mardirossian & Associates, Inc. v. Ersoff*, 153 Cal. App. 4th 257, 272 (2007); *Maglica v. Maglica*, 66 Cal. App. 4th 442, 449-51 (1998).