**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

          v.

MICHAEL AVENATTI,

                Defendant.

Case No. 1:19-CR-00373 (PGG)


# MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY CARLTON DEBOSE MOTION TO QUASH SUBPOENA

Milton L. Williams
Daniel J. Chirlin
Richard W. Fox
WALDEN MACHT & HARAN LLP
1 Battery Park Plaza
New York, NY 10004
(t) 212-335-2030
(f) 212-335-2040

*Attorneys for Carlton DeBose*

## Table of Contents

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND .................................................................................................. 2

APPLICABLE LEGAL STANDARD ...................................................................................... 3

ARGUMENT ......................................................................................................................... 4

CONCLUSION ....................................................................................................................... 8

# Table of Authorities

Page(s)

**<u>Cases</u>**

<u>Bowman Dairy Co. v. United States</u>,
   341 U.S. 214 (1951) ........................................................................................................... 3

<u>Delaware v. Van Arsdall</u>,
   475 U.S. 673 (1986) ........................................................................................................... 5

<u>United States v. Abel</u>,
   469 U.S. 45 (1984) ............................................................................................................. 4

<u>United States v. Atherton</u>,
   936 F.2d 728 (2d Cir. 1991) ........................................................................................... 6, 7

<u>United States v. Haggett</u>,
   438 F.2d 396 (2d Cir. 1971) ............................................................................................... 4

<u>United States. v. Harvey</u>,
   547 F.2d 720 (2d Cir. 1976) ........................................................................................... 4, 5

<u>United States v. James</u>,
   609 F.2d 36 (2d Cir. 1979) ................................................................................................. 6

<u>United States v. Khan</u>,
   2009 WL 152582 (E.D.N.Y. Jan. 20, 2009) ................................................................... 3, 4

<u>United States v. Lankford</u>,
   955 F.2d 1545 (11th Cir. 1992) ...................................................................................... 5, 6

<u>United States v. Nixon</u>,
   418 U.S. 683 (1974) ........................................................................................................... 3

<u>United States v. Salerno</u>,
   937 F.2d 797 (2d Cir. 1991) ............................................................................................... 7

**<u>Rules</u>**

Fed. R. Crim. P. 17(a) ............................................................................................................. 3

Carlton DeBose ("Mr. Debose") respectfully submits this memorandum of law in support of his motion to quash Defendant Michael Avenatti's ("Avenatti" or "Defendant") subpoena for Mr. DeBose to testify at the Defendant's criminal trial.

## PRELIMINARY STATEMENT

Permitting the Defendant to call, and then cross-examine Mr. DeBose during the defense case will serve no purpose apart from confusing the jury and creating a wholly unnecessary and irrelevant mini trial. Moreover, it will allow the Defendant to further perpetuate his campaign of public harassment and slander of Mr. DeBose in a transparent attempt to save himself. Mr. DeBose -- at the behest of his attorneys -- has remained silent until now, despite the many scurrilous accusations. But the truth -- and the sum total of Mr. DeBose's testimony-- would be that he and Nike did not violate any law.

Knowing this, the Defendant is desperately seeking to pervert the evidentiary rule allowing for impeachment by extrinsic evidence. Traditionally, Courts will allow a defendant to impeach a government witness with extrinsic testimonial evidence. However, in those cases, the extrinsic testimony directly impeaches some aspect of the government witness's testimony. Here, though, Mr. DeBose's testimony will not impeach any government witness. To the extent Mr. DeBose has any relevant testimony, whatsoever, he would testify that he did not violate any laws. Therefore, the Defendant would then need to impeach Mr. DeBose -- the Defendant's own witness -- in the hope that this will discredit the government witnesses -- a form of "impeachment by association," or, perhaps, more aptly described as "circuitous impeachment." To allow the Defendant to employ this aberrant form of impeachment seems contrary to the existing legal precedent as there are no cases of which Mr. Debose's counsel are aware, or Defendant's counsel cite, where a court has permitted testimony under these circumstances.

1

Indeed, this scenario threatens to turn the trial into a circus sideshow by converting it into a trial of Mr. DeBose's and Nike's conduct -- an outcome the Defendant clearly desires. As has been stated in prior briefing, Mr. DeBose's conduct at Nike -- which was never illicit -- has no bearing, whatsoever, on the Defendant's guilt or innocence. Mr. DeBose has never met the Defendant, nor does he have any relevant first-hand knowledge about anything having to do with the facts alleged in the indictment against the Defendant.

Finally, Mr. DeBose adopts the arguments set forth by Nike and the government in their briefing on Nike's Motion to Quash dated January 2, 2020 concerning relevancy, admissibility under Rule 403(b), and the high likelihood of jury confusion. Mr. DeBose does not intend to assert his Fifth Amendment privilege against self-incrimination if this Court denies this Motion to Quash.

## **FACTUAL BACKGROUND**

Since the Defendant first went public with his unfounded accusations against Nike in April 2019, Mr. DeBose has suffered irreparable professional and reputational damage. Parading Mr. DeBose up in front of a jury for further harassment by the Defendant's attorneys would only exacerbate the unwarranted harm. Just as importantly, it would serve no real purpose. Mr. DeBose will not offer any testimony that impeaches any of the government's Nike witnesses. If Mr. DeBose were to testify, his counsel fully expects that he would deny any allegations that he or Nike acted illegally. As a result, the Defendant would need to conduct a mini trial to separately impeach Mr. DeBose.

Mr. DeBose's testimony will not shed any further light on Nike's "bias and motive." Indeed, with every allegation and denial, the Defendant threatens to go "further down the rabbit hole" and farther away from relevant facts at issue in the indictment. There is nothing that Mr.

2

DeBose can offer that would strengthen Defendant's bias and motive argument beyond what we understand Nike counsel would willingly admit – that, to their knowledge, the DOJ investigation into amateur basketball is ongoing, and Nike is cooperating.

Nor can Mr. DeBose offer any probative testimony with respect to the other subjects Defendant outlined in his opposition briefing:  "that Nike did not 'fully cooperate' with the SDNY in its investigation; that Nike did not produce certain critical documents to the government until it became apparent that Nike had a whistleblower in the form of Coach Franklin; that the investigation of Nike was 'continuing' at least as of the time Mr. Avenatti was arrested (and apparently still is); and that Nike was motivated to (belatedly) self-report to those same prosecutors and point the finger elsewhere in order to curry favor with them."  Def's Opp. to Motion to Quash at 3.  Mr. DeBose has no information on issues relating to the conduct or progress of the Nike investigation.

## APPLICABLE LEGAL STANDARD

Subpoenas seeking testimony for use in a criminal trial are governed by Federal Rule of Criminal Procedure 17. See Fed. R. Crim. P. 17(a); see also Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951). The proponent of a Rule 17 subpoena must demonstrate "(1) relevancy; (2) admissibility; [and] (3) specificity," as well as "that the application is made in good faith and is not intended as a general fishing expedition." United States v. Nixon, 418 U.S. 683 (1974); see also United States v. Khan, No. 06-CR-255 (DLI), 2009 WL 152582, at *2 (E.D.N.Y. Jan. 20, 2009) (applying the Nixon test to several subpoenas for trial testimony).  If the proponent fails to

meet each of these requirements, the court may quash the subpoena. See Khan, 2009 WL 152582, at *2-4.

## ARGUMENT

Impeachment through extrinsic evidence means precisely what it says -- that the evidence offered by its proponent will tend to impeach.  Here, the Defendant's extrinsic evidence -- Mr. DeBose's testimony -- cannot possibly further any legitimate impeachment objective, because Mr. DeBose would simply explain why he and Nike did not violate any law.  Thus, we expect that the extrinsic evidence in this instance would corroborate, not impeach, the government's Nike witnesses.

Given that fact, the Defendant's strategy would necessarily pervert the typical instance where courts have allowed extrinsic evidence of bias.  The Defendant's primary case, United States. v. Harvey, involved a circumstance where the trial court refused to admit the testimony of an impeachment witness who would have testified that the government's sole identification witness had a bias against the defendant (i.e. the identification witness had "accused [the defendant] of fathering her child and refusing to support it").  547 F.2d 720, 722 (2d Cir. 1976).  This is the classic scenario involving extrinsic impeachment evidence to demonstrate bias.  See also United States v. Abel, 469 U.S. 45, 48 (1984) (concluding that a defense witness's "membership in the prison gang [with the defendant] was sufficiently probative of [the witness's] possible bias towards [the defendant] to warrant its admission into evidence" through testimony that directly contradicted the defense witness's assertion that he was not in a prison gang with the defendant); United States v. Haggett, 438 F.2d 396, 400 (2d Cir. 1971) ("[A]fter the [government witness] denied any attempt to suborn perjury, independent evidence [in the form of defense witnesses] should have been received both in order to contradict this statement

and to show [the government witness's] alleged hostility to the defendant." (emphasis added)).

Here, instead, Defendant proposes to call, and then immediately impeach, his own witness, Mr.

DeBose. In this tortuous way, the Defendant would need to undermine his own witness to show

bias in the government's witnesses. But allowing such a mini trial threatens to confuse the issues

and sidetrack the jury. See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) ("It does not

follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge

from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution

witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is

concerned to impose reasonable limits on such cross-examination based on concerns about,

among other things, harassment, prejudice, confusion of the issues, the witness' safety, or

interrogation that is repetitive or only marginally relevant."); Harvey, 547 F.2d at 723 ("[T]he

scope of a defendant's right to introduce evidence of bias is not limitless, and may be restricted

as the trial court in its sound discretion deems proper. . . .").

Moreover, the Defendant cites no cases where a Court has allowed a defendant to call an

impeachment witness only to immediately attack that witness's credibility in order to impeach

another witness. Indeed, the cases on which the Defendant relies merely confirm what is

otherwise obvious and consistent with common sense -- that Courts admit extrinsic impeachment

evidence to demonstrate bias only where such evidence undermines the impression that the

government witness is not biased, and does so in a manner consistent with Rule 403. For

example, in United States v. Lankford, relied on by the Defendant, the Eleventh Circuit held that

a defendant should have been able to cross examine the government's key witness regarding his

motive to cooperate with the government in light of the fact that his "sons had been arrested by

state authorities for the sale of twenty pounds of marijuana." 955 F.2d 1545, 1548 (11th Cir.

1992).  Insofar as Lankford stands for the unremarkable proposition that a defendant is entitled to cross examine a government witness to probe for bias, no one has challenged the Defendant's ability to do so.  The Defendant, however, insists that he should be permitted to go further and cross examine -- and try to impeach -- his own witness.   Lankford, of course, provides no support for that position.  The defendant in Lankford was not seeking to call the sons to testify about their drug-related arrests, because the father's testimony on that subject was sufficient to demonstrate his alleged bias.  The same logic should apply here.

The Defendant also relies on United States v. James, where a potentially biased government witness testified that he was told by a prosecutor in an unrelated matter that the government did not intend to bring charges against him in that matter.  See 609 F.2d 36, 45 (2d Cir. 1979).  The defendant sought to elicit testimony from the prosecutor that, contrary to the witness's account, the government never promised the witness that it would not indict him.  See id.  The Second Circuit held that the defendant should have been able to offer the prosecutor's testimony to show "that [the government witness] had never been promised immunity and that he therefore had a motive to falsify testimony in this particular case."  Id. at 46 (emphasis added).  In other words, the extrinsic testimonial evidence was relevant to the issue of bias because it directly contradicted the witness's narrative that he was not biased.  As previously explained, Mr. DeBose's testimony would not contradict the government's Nike witnesses.

Likewise, Defendant's reliance on United States v. Atherton, 936 F.2d 728 (2d Cir. 1991) is perplexing.  There, the Second Circuit held that the district court properly excluded the defense witness's proffered testimony on the defendant's past drug use, because the government witness's drug use did not realistically expose him to criminal liability, and, thus, was not

probative of any bias in favor of the government.  Id. at 733-34.  Accordingly, Atherton is simply inapposite.

Finally, the Defendant's reliance on United States v. Salerno, 937 F.2d 797 (2d Cir. 1991) is similarly misplaced.  In Salerno, the defendant sought to cross examine FBI agents concerning certain conduct that demonstrated the agents' bias or ill-will toward the defendant.  See id. at 809. The district court prohibited such cross examination on the ground that the defense would be permitted to explore the issue during its case.  See id.  However, when the defendant sought to recall the FBI agents during his case, the district court denied the request, finding that the defendant should have raised the issue during cross examination.  See id. at 810.  The Second Circuit found the trial court's "about-face" to be reversible error.  Id.

Salerno is inapposite because the thrust of the Second Circuit's reversal was predicated on the district court's decision not to honor its earlier promise to allow the defendant to explore the agents' biases during the defense case.  As no such error is likely to occur here, Salerno is not relevant.

In sum, to the extent they are relevant, the cases cited by the Defendant demonstrate that the proffered evidence should demonstrate bias in a direct, straightforward manner, i.e. by contradicting some aspect of the government witness's relevant testimony.  Mr. DeBose's testimony fails in that regard given that, as explained above, he would merely corroborate the government's Nike witnesses' testimony.  Of course, the Defendant challenges that assertion, but notice his sleight of hand here: he conflates his right to present a defense with his "right" to put Nike on trial.  The Constitution guarantees the Defendant only the former; the rules of evidence, precedent, and common sense prohibit the latter.  See also January 27, 2020 Trial Tr. at 6: 22-24

("Accordingly, the trial will not involve an exploration of whether Nike was engaged in a large-scale effort to corrupt amateur basketball.").

## **CONCLUSION**

For the foregoing reasons, Mr. DeBose's motion to quash the Defendant's subpoena should be GRANTED.