February 6, 2020

**Via ECF**
Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

   **Re:** *United States v. Avenatti*, **No. S1 19 Cr. 373 (PGG)**
      **Letter Motion Regarding Text Messages**

Dear Judge Gardephe:

  In light of the government's redirect examination of Jeffrey Auerbach yesterday, as excerpted below, we write to request that the Court reconsider its ruling restricting our ability to offer in evidence only those text messages and emails between and among Coach Gary Franklin and Mr. Jeffrey Auerbach that qualify as "prior inconsistent statements." The government's redirect examination was seriously misleading and opened the door to the text messages themselves.

  As the Court is aware, Mr. Avenatti has argued that so long as a relevant text message or email is non-hearsay (*i.e.,* not offered for the truth), or is subject to an exception such as for state of mind under Fed.R.Evid. 803(3), the text or email should be admissible in hard copy form regardless of whether it is inconsistent with the witness's trial testimony. (Tr. 921-26; Tr. 987-997). Inasmuch as Auerbach has testified, and Franklin will testify, about what they wanted, believed, understood, and how they reacted – leading up to their meeting with Mr. Avenatti – we should be able to show the jury the quantity and context of the text message exchanges, which paint a more complete picture of their then-existing "motive, intent, or plan" and directives to each other under Rule 803(3). So, for example, although Mr. Auerbach testified that he was interested in "diplomacy" and "re-forging" the relationship with Nike, the jury should be allowed to see text messages where Mr. Auerbach communicates, in writing, that, among other things, he and Mr. Franklin have to "go after Nike," "slay the dragon," "f--k these assholes," and the like. Or, as another example, while Mr. Auerbach testified that the matter was not "urgent," the jury should be allowed to see text messages that reflect urgency. Even if not classic "prior inconsistent statements" under FRE 613, the texts themselves constitute documentary evidence of expressions of intent inconsistent with "diplomacy" or "re-forging" a relationship with

1

Nike; that the witnesses, on cross-examination, are confronted with the existence of these texts and concede their authenticity supports the admission, not the exclusion, of that relevant documentary evidence of "motive, intent, or plan."

To be sure, there are dozens upon dozens of text messages that tell the story of how Mr. Auerbach and Mr. Franklin toiled unsuccessfully in their year-long quest to hold Nike accountable, repeatedly communicated Coach Franklin's objectives in writing, reached out to Mr. Avenatti precisely because of his public profile and ability to garner press coverage, and wanted Coach Franklin's lawyer, whomever it would be, to expose Nike. The tone and content of the text messages between Auerbach and Franklin after John Slusher referred Auerbach to litigation counsel at Boies in February 2019, evidence a preference for aggressive confrontation, rather than diplomacy.

There has been extended debate about the issue. The Court has ruled. (*E.g.,* Tr. 925-27, 956). Among the court's rulings is that the defense cannot ask whether a prior communication between a witness and another person (*e.g.,* between Messrs. Auerbach and Franklin) was "by way of text or by way of email," (Tr. 956) -- with the exception of a text exchange containing multiple exclamation points, Defense Exhibit MM-2.

On redirect examination of Mr. Auerbach on February 4, 2020, the government improperly took advantage of this ruling, as follows:

> Q: Over the one-year period before you reached out to the defendant, how many text messages approximately did you exchange with Mr. Franklin?
>
> A: I believe from February 2018 to March – through March 2019, there were over 2300 text messages.
>
> Q: That's 2,300?
>
> A: Yes.
>
> Q: Roughly how many pages do those text messages cover?
>
> A: I believe it was just over 440 pages.
>
> ***Q: And to be clear, you were only asked about a handful of those today; is that right?***
>
> ***A: Yes.***

(Tr. 1054) (emphasis added). This redirect testimony suggested to the jury that, out of thousands of text messages between Mr. Auerbach and Mr. Franklin, only a handful were favorable to Mr. Avenatti. Had we been permitted to offer relevant text messages and emails in evidence, the jury would have seen dozens and dozens to rebut the testimony of Mr. Auerbach about his then existing state of mind and that of Coach Franklin. Moreover,

if we are permitted to ask a witness whether a particular communication is by email or text, we would be able to offset the negative implication of the government's redirect examination.

      Accordingly, in light of the government's redirect examination of Mr. Auerbach, we ask that the Court revisit its rulings regarding the use of text messages and emails.

                                          Respectfully,

                                          <u>/s/ Scott A. Srebnick</u>
                                          Scott A. Srebnick
                                          Jose M. Quinon
                                          E. Danya Perry