*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 8, 2020

**BY ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Michael Avenatti*,
             S1 19 Cr. 373 (PGG)

Dear Judge Gardephe:

The Government respectfully writes with respect to two matters in this case.

*First*, the Government writes in opposition to the letter motion of the defendant, filed just before noon today (Dkt. No. 249) ("Def. Ltr."), in which he seeks preclusion of any cross-examination of him and the introduction of any extrinsic evidence (in any form, and regardless of what he says) concerning:

1. his financial condition, beyond that which is already in evidence;
2. his search history for "insider trading" and "put options"; and
3. any conduct at issue in two other pending federal criminal cases.

The defendant's wide-sweeping motion should be denied. He is not entitled to present the jury with a misleading, sanitized, and one-sided story of his knowledge and intent leading up to and during the events of March 2019. Nor is he entitled to preclude cross-examination concerning conduct that both is probative of credibility generally and rebuts any suggestion that intended to obtain or had obtained consent from Gary Franklin, Sr. before soliciting or accepting millions of dollars from NIKE, Inc. ("Nike").

*Second*, the Government moves (a) to preclude the defendant from testifying concerning his alleged prior retention of or receipt of legal advice from Mark Geragos, and (b) so that the Court may exercise its responsibility to ensure that "inadmissible evidence is not suggested to the jury by any means," Fed. R. Evid. 103(d), for an order that the defendant proffer, before testifying, what he intends to say regarding his prior relationship with or knowledge of Mr. Geragos. The defendant has not waived attorney-client privilege with respect to any prior retention, has not given notice to the Court or the Government of an advice-of-counsel defense, and should not be permitted to suggest that he has a defense that the law says he does not have.

Honorable Paul G. Gardephe
United States District Judge
February 8, 2020
Page 2

        I.        The Defendant's Letter Motion Concerning Cross-Examination

           A.  Applicable Law

     "It is essential . . . to the proper functioning of the adversary system that when a defendant takes the stand, the government be permitted proper and effective cross-examination in an attempt to elicit the truth." *United States v. Havens*, 446 U.S. 620, 626-27 (1980).

     Such cross-examination properly includes questions exploring a defendant's credibility generally when "a defendant offers an innocent explanation" for his conduct. *United States v. Payton*, 159 F.3d 49, 58 (2d Cir. 1998) (when such an explanation is offered, "the government is entitled to attack his credibility on cross-examination"). In short, a defendant who "'opens the door'" by presenting an innocent explanation for his conduct "has no right to avoid cross-examination into the truth of his direct examination, even as to matters not related to the merits of the charges against him." *Id.*

     The Government is also entitled to cross-examine a defendant about his prior conduct, even where it is not probative generally of truthfulness, when the prior conduct calls into question the credibility of his explanation of his current conduct. *Cf., e.g.*, *United States v. Garcia*, 936 F.2d 648, 654 (2d Cir. 1991) ("Once [the defendant] testified that he had no idea that the white powder was cocaine, he opened the door for the Government to impeach his testimony by establishing on cross-examination that he was familiar with and indeed had used cocaine as recently as the day before his arrest."). This principle equally applies where a defendant has not personally provided such an explanation, but his counsel has. *Cf., e.g.*, *United States v. Williams*, 605 F. App'x 45, 46 (2d Cir. 2015) ("Once the defense counsel made [the defendant's] credibility an issue by implying that he had been framed by law enforcement, the government [properly] moved to impeach [the defendant], if he testified, with his previous false statements to law enforcement in 2007, where he had also alleged that he was framed.").

     Finally, the Government is entitled to cross-examine a defendant concerning other conduct where that conduct rebuts the defendant's self-portrayal. *See, e.g.*, *Garcia*, 936 F.2d at 654 (affirming cross-examination concerning a defendant's family history when he attempted on direct examination "to portray himself as a solid citizen with a stable family life").

     For similar reasons, the Government is entitled to "to impeach [a defendant's] credibility on its rebuttal case through evidence that was barred from its case in chief." *United States v. Atherton*, 936 F.2d 728, 734 (2d Cir. 1991); *see generally United States v. Rosa*, 11 F.3d 315, 335 (2d Cir. 1993) ("The rule of 'opening the door,' or 'curative admissibility,' gives the trial court discretion to permit a party to introduce otherwise inadmissible evidence on an issue (a) when the opposing party has introduced inadmissible evidence on the same issue, and (b) when it is needed to rebut a false impression that may have resulted from the opposing party's evidence.").

Honorable Paul G. Gardephe
United States District Judge
February 8, 2020
Page 3

### B. Discussion

The defendant's motion fails under the settled principles set forth above. The Supreme Court has "repeatedly insisted that when defendants testify, they must testify truthfully or suffer the consequences." *Havens*, 446 U.S. at 626. So it is here.

#### 1. The Defendant's Financial Condition

In his letter motion, other than stating that he will "not testify" about his "financial condition" (Def. Ltr. 1, 3), the defendant offers no explanation whatsoever as to why the Government should not be permitted to cross-examine him concerning his debts and financial condition to impeach him as to his intent and motivation. For the reasons previously discussed with and articulated by the Court, evidence of the defendant's debts and financial condition was properly admitted into evidence. For the same reasons, it is an entirely proper subject for cross-examination, including with respect to contemporaneous debts not in evidence, because these facts rebut any suggestion of an innocent explanation for the defendant's conduct—and in particular, any suggestion that the defendant only sought an internal investigation, for which he would be paid millions of dollars, because Mr. Franklin or Jeffrey Auerbach purportedly directed the defendant to seek such an investigation.

Indeed, although this would be a proper subject for cross-examination in any event, it is notable that, to date, the defendant has repeatedly—and falsely—suggested to the jury, through the cross-examination of others, that, at the relevant time, he had easy access to substantial sums of money. (Tr. 902-03 ("Q. And by track record you mean verdicts and settlements that he had achieved in other cases, correct? A. Let me restate that. I have no knowledge of whether he filed lawsuits or not. I just know that there were successful settlements."); Tr. 904 ("Q. What other— did you see any other settlements or verdicts in the millions of dollars that he had been able—Mr. Avenatti had been able to achieve? A. Yes. But I can't recall which ones they are now.").) While the Government did not object to these questions as posed, there is no basis in law or logic for the Government to be prevented from exploring the defendant's contemporaneous financial condition if he chooses to testify and offers an innocent or selfless explanation for his conduct.

#### 2. Certain of the Defendant's Searches

The Government believes that it would be proper to cross-examine the defendant concerning his search for "insider trading." However, unless he affirmatively opens the door, the Government does not intend to explore the search for "insider trading" on cross-examination or to introduce evidence of this search. But the Government does intend to cross-examine the defendant concerning his searches for "put options," the price of Nike's stock, and Nike's reputation, and to offer evidence of the same. This subject goes directly to the defendant's contemporaneous knowledge, focus, and intent, and it squarely rebuts any suggestion offered by the defendant that his threats to Nike were no more than an attempt to carry out his client's purported instructions.

Specifically, on March 10, 2019, shortly after a phone call with Mr. Auerbach and after receiving a follow-up email from Mr. Auerbach, the defendant used his iPhone to, among other

things, search for "nike.put options" and to visit the website "Nasdaq.com – Nike, Inc. (NKE) Option Chain." The Government previously argued (Dkt. No. 211, at 2-3) that this conduct both (a) corroborates the defendant's contemporaneous belief that he could use the confidential information provided to him by Mr. Franklin and Mr. Auerbach to harm Nike's stock price and his intent to use that information to benefit himself, and (b) demonstrates that the defendant acted deliberately, and not rashly, and thus helps to show that he acted wrongfully. The Court ruled that the evidence may not be offered in the Government's case-in-chief, while noting, "I'm ruling strictly for purposes of the government's direct case. Obviously, if Mr. Avenatti took the stand, we would be having a different conversation." (Tr. 109.)

In his letter motion, other than stating that he will "reiterate[s] the arguments" he "previously made" (Def. Ltr. 1) the defendant says nothing about this subject, or why he should be permitted to testify about "the conversations that he had with Coach Franklin and Jeffrey Auerbach and their directives to him" (*id.*), without being cross-examined with contemporaneous evidence that, from the very beginning, he was looking to make money for himself, in a manner not shared with his client. The defendant is not entitled to set his own self-interested limit on what constitutes "the facts of this case" (*id.*) or to avoid cross-examination on a subject that directly undermines his apparent story by stating that he will not affirmatively "testify to his search history" (*id.* at 3). To the contrary, the Government is entitled to impeach the defendant's testimony with evidence of the defendant's intent to use his client's information to his own benefit. *Cf., e.g., Garcia*, 936 F.2d at 654.

Moreover, as noted above, the Government is not seeking to put at issue the search for "insider trading" and will not offer any evidence or make any arguments regarding insider trading (unless the defendant affirmatively opens the door). There is no unfair prejudice under Rule 403 to the mere fact that the defendant searched for "nike.put options" and visited the website "Nasdaq.com – Nike, Inc. (NKE) Option Chain" when he did. "Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be *unfair*." *Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) (emphasis in original). There nothing unfair about this evidence, which is straightforward and highly probative of the defendant's intent. Nor is there a risk that questions about this evidence, or the evidence itself, will elicit a separate, heightened response from the jury that would prevent the jury's fair assessment of the facts—particularly given the close temporal and substantive connection between the evidence and the charged conduct. *See, e.g., United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (perceiving "no undue prejudice under Rule 403 [where] the evidence did not involve conduct more serious than the charged crime"); *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (evidence not unfairly prejudicial because it "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged").

### 3. The Defendant's Prior Conduct With Respect to Certain Clients

Unless the defendant affirmatively opens the door, the Government does not intend to cross-examine the defendant concerning the fact that he has been indicted in multiple other cases or otherwise to present the jury with evidence that the defendant has been accused by a grand jury in this district and in another district of other crimes. However, the Government does intend to

Honorable Paul G. Gardephe
United States District Judge
February 8, 2020
Page 5

cross-examine the defendant concerning certain of his *conduct*, which both is probative of credibility generally and rebuts any suggestion that he intended to obtain or had obtained consent from Mr. Franklin before soliciting or accepting millions of dollars from Nike. In particular, the Government is aware of evidence that, contrary to any suggestion that the defendant has not previously defrauded or concealed money from a client, the defendant has done so repeatedly, and has done so in ways directly rebut any claim that he intended to present Mr. Franklin with a settlement agreement that included all material terms before the defendant accepted money from Nike.

As an initial matter, the defendant concedes that the charges against him in his other federal criminal cases "involve allegations of deceit and theft, including that [he] lied to and stole from certain clients." (Def. Ltr. 2.) That alone renders them a proper subject of cross-examination. *See, e.g.*, *Payton*, 159 F.3d 49, 58 (when the defendant offers an innocent explanation for his conduct, "the government is entitled to attack his credibility on cross-examination"); *cf. United States v. Brown*, 621 F. App'x 44, 48 (2d Cir. 2015) ("government's cross-examination regarding the prior fraudulent real estate scheme was . . . justifiably aimed at probing [the defendant's] credibility pursuant to Fed. R. Evid. 608(b)"). But the Court need not determine whether the Government would be permitted to cross-examine the defendant concerning certain prior conduct for this reason alone, because the conduct about which the Government intends to cross-examine the defendant bears directly on the defendant's state-of-mind in this case.[1]

In particular, in the months and weeks immediately preceding the conduct at issue, five prior clients accused the defendant of defrauding them, in the aggregate, of millions of dollars. The mere fact of these accusations, which would have led the defendant to be concerned that he might owe even more money to even more people, and soon, is relevant to the defendant's motive and state-of-mind and impeaches innocent explanations of his intent and motive. Moreover, the Government has far more than a good-faith basis to inquire into the defendant's fraudulent conduct, which goes both to his state-of-mind in March 2019 and to his truthfulness as a witness. In particular, the defendant lied repeatedly, misleading client into believing the defendant had not received settlement funds when, in fact, the defendant had received and appropriated those funds. As to the fifth client—Stephanie Clifford, a/k/a "Stormy Daniels"—the defendant defrauded her of the proceeds of an advance on a book deal through the use of a fraudulent consent purporting to bear her signature, and again lied and misled her into believing that the funds he had converted to his own use had never been sent. These matters are directly relevant to the defendant's intent in this case, and are highly probative, if not necessary, for the jury to be able to evaluate fairly and fully the credibility of the defendant as a witness.

The defendant suggests that the Government should not be permitted even to *ask* about any such conduct, because that would create a "trial within a trial." (Def. Ltr. 3.) That suggestion

---

[1] The Government reserves the right to seek to cross-examine the defendant concerning other conduct in the event that his testimony opens the door to the Government doing so, including, but not limited to, if the defendant suggests that has never defrauded other clients, carefully follows the law or his ethical duties, listens closely to clients, and/or has achieved the goals of other clients.

conflates the proper scope of cross-examination, which is rightly broad, *see, e.g.*, *Havens*, 446 U.S. at 626-27, with whether the Government may offer documentary evidence in a rebuttal case contradicting the defendant's answers to questions, which is a separate inquiry and cannot be determined before the defendant testifies and gives answers. *Compare* Fed. R. Evid. 611(b), *with* Fed. R. Evid. 608(b). Nor does the defendant even attempt to explain why merely asking him whether he engaged in certain conduct in the weeks and months preceding that in this case somehow has an "emotional gut-punch" (Def. Ltr. 3), much less such a strong one that Rule 403 bars cross-examination that is otherwise plainly proper and would assist the jury in weighing the defendant's credibility, which he need not—but apparently intends to—put squarely at issue.

II. <u>The Defendant's Prior Alleged Retention of and Relationship with Mark Geragos</u>

As the Court is aware, the defendant has repeatedly suggested that the jury should acquit him because he involved another lawyer, Mark Geragos, in his conduct. That suggestion is legally and factually wrong (and is one of the reasons why the defendant should not be permitted to offer testimony of Tina Glandian, or anyone else, concerning the prior work of Mr. Geragos).

As the Court is also aware, prior to trial, the defendant suggested that he should be permitted to offer evidence of his alleged prior retention of Mr. Geragos, notwithstanding that he has not has not waived attorney-client privilege with respect to such alleged retention, has not given notice to the Court or the Government of an advice-of-counsel defense, and has not even attempted to demonstrate that any such prior alleged retention is relevant. The Government is highly concerned that, if the defendant chooses to testify, he will broach this subject and suggest that he has a defense that the law says he does not have. Accordingly, the Government moves (a) to preclude the defendant from testifying concerning his alleged prior retention of or receipt of legal advice from Mark Geragos, and (b) so that the Court may exercise its responsibility to ensure that "inadmissible evidence is not suggested to the jury by any means," Fed. R. Evid. 103(d), for an order that the defendant proffer, before testifying, what he intends to say regarding his prior relationship with or knowledge of Mr. Geragos. It is not sufficient, as the defendant suggested before trial, for him first to offer such testimony before the jury and then for the Court to determine whether it is relevant and admissible. *See, e.g.*, *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012); *United States v. Quinones*, 417 F. App'x 65, 67 (2d Cir. 2011); *United States v. Atias*, No. 14 Cr. 403 (DRH), 2017 WL 563978, at *3 (E.D.N.Y. Feb. 10, 2017); *SEC v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013).

Honorable Paul G. Gardephe
United States District Judge
February 8, 2020
Page 7

                                             Respectfully submitted,

                                             GEOFFREY S. BERMAN
                                             United States Attorney

                                 By:    s/ Daniel C. Richenthal
                                             Matthew D. Podolsky
                                             Daniel C. Richenthal
                                             Robert B. Sobelman
                                             Assistant United States Attorneys
                                             (212) 637-1947/2109/2616

cc:      (by ECF)

         Counsel of Record