UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,              :

vs.                                    :          S1 19 Cr. 373 (PGG)

MICHAEL AVENATTI,                      :

            Defendant.              :
_____


**DEFENDANT AVENATTI'S REPLY MEMORANDUM
IN SUPPORT OF POST-TRIAL MOTIONS**


        Scott A. Srebnick
        SCOTT A. SREBNICK, P.A.
        201 South Biscayne Boulevard
        Suite 1210
        Miami, FL 33131
        Telephone: (305) 285-9019
        Facsimile:  (305) 377-9937
        E-Mail:  Scott@srebnicklaw.com

## TABLE OF CONTENTS

I.      MOTION FOR JUDGMENT OF ACQUITTAL......................................................1

II.     MOTION FOR NEW TRIAL .................................................................................4

III.    CONCLUSION .......................................................................................................9

Defendant Michael Avenatti, through counsel, and pursuant to Fed.R.Crim.P. 29(c) and 33, respectfully replies to the government's memorandum of law in opposition to Mr. Avenatti's post-trial motions (Dkt. No. 292).

## I.      MOTION FOR JUDGMENT OF ACQUITTAL

In his motion for judgment of acquittal, Mr. Avenatti argued that the government presented insufficient evidence that Mr. Avenatti believed he was exceeding the authority granted to him by his client, Coach Gary Franklin, by demanding that he, Mr. Avenatti, be retained by Nike to conduct an internal investigation of Nike.  In its response, the government cites no such evidence, for good reason.  The evidence was uncontroverted that: 1) Coach Franklin and his consultant, Jeffrey Auerbach, communicated to Mr. Avenatti that Coach Franklin wanted to help Nike "clean-up EYB" and "get rid of the corruption and corrupt execs;" (GX304:6); 2) Coach Franklin and Mr. Auerbach gave Mr. Avenatti a power-point presentation that posed three questions, all of which would require an internal investigation to answer; (GX311:5); 3) Mr. Auerbach and Coach Franklin told Mr. Avenatti that Nike had engaged in racketeering and corporate bullying, and that Coach Franklin wanted Nike to "self-report" to the authorities; (Tr.1750-51); and 4) Mr. Auerbach and Coach Franklin told Mr. Avenatti that Coach Franklin's goal was to achieve justice, which to Coach Franklin meant "ridding Nike EYB of the bad actors, meaning Carlton and Jamal, so nobody else got harmed, financial compensation for Gary for the brand and his club and his program and what he has – his losses, and working with Nike to report this to the authorities was very important to him, and then assisting them in any way in helping, you know, change the situation again so nobody could be bullied and abused like this."  (Tr.1072).  Mr. Avenatti's demand that Nike retain him to conduct an internal investigation, as one component of a settlement of Coach Franklin's claims, was

entirely consistent with Coach Franklin's goal of getting DeBose and James fired and assisting Nike to clean up EYB and self-report to the authorities.

To be sure, Mr. Avenatti made it clear to Coach Franklin that he, Mr. Avenatti, would try to achieve a $1 million monetary settlement and the firing of DeBose and James, goals which Coach Franklin embraced.  There was no evidence that Coach Franklin or Mr. Auerbach restricted Mr. Avenatti in any way in how to achieve those goals during the first round of negotiations.  Mr. Avenatti was authorized to make "tactical decisions" that were impliedly authorized by the representation.  (Tr.2338).  Any final settlement of Coach Franklin's claims would have required Coach Franklin's consent; Mr. Avenatti never executed a settlement on Coach Franklin's behalf without his consent or otherwise impaired his substantive rights.

The government argues that Mr. Avenatti's conduct was not authorized because he "repeatedly misled Franklin, both directly and through Auerbach…"  (Dkt. No. 292:11).  But the government does not cite a single false statement that Mr. Avenatti made to either Coach Franklin or Mr. Auerbach.  Rather, the government relies entirely on evidence that Mr. Avenatti did not share with them every detail of the negotiating tactics he intended to employ to achieve the goals that Mr. Avenatti had clearly articulated to Coach Franklin: 1) a $1 million settlement; and 2) the firing of DeBose and James.  The government's exclusive reliance on "omissions" highlights the major flaw – and unconstitutional vagueness – of this prosecution. In the final analysis, Mr. Avenatti stands convicted of extortion and honest services wire fraud because, in the government's view, he failed to adequately communicate his negotiating tactics to his client, notwithstanding that Mr. Avenatti's two-pronged settlement demand was plainly in furtherance of Coach Franklin's objectives of obtaining restitution and justice.

The government argues that Mr. Avenatti's settlement demands could not have been authorized because they "indisputably violated his core ethical duties as an attorney," (Dkt. No. 292:12), reasoning that Mr. Avenatti's demands created a conflict of interest that required informed written consent from Coach Franklin.  While Coach Franklin's written consent may have been required under the California Rules of Professional Conduct before Mr. Avenatti could actually be retained by Nike, the negotiations never progressed to that point where Nike actually retained Mr. Avenatti.  Moreover, as this Court noted during the trial, Nike never made a single settlement offer to Coach Franklin.  Thus, Mr. Avenatti never rejected a settlement offer to Coach Franklin in favor of his own personal interest.  Both components of the settlement demand that Mr. Avenatti made to Nike lawyers -- $1.5 million to Coach Franklin and an internal investigation to be led by Mr. Avenatti – were in furtherance of the objectives articulated by Coach Franklin.  There was no conflict for Mr. Avenatti to seek both objectives in the first round of negotiations.

Finally, the government argues that "the evidence was more than sufficient to demonstrate a lack of nexus between the defendant's ***demands*** and any claim of right on the part of his client."  (Dkt. No. 292:13) (emphasis added).  The government contends that the sums demanded by Mr. Avenatti "bore no conceivable relationship to Franklin's claims, which were based on a contract worth $72,000."  (Dkt. No. 292:13).  This argument is a strawman because the required nexus is the nexus between Mr. Avenatti's ***threats*** and Coach Franklin's claim of right, not the nexus between the amount of the demand and the value of the claim. *United States v. Jackson*, 180 F.3d 55, 67-71 (2d Cir. 1999), on reh'g, 196 F.3d 383 (2d Cir.

1999).[1]  Unlike the "marital infidelity" example, here there was plainly a nexus between Mr. Avenatti's threat to publicly expose the treatment of Coach Franklin and Coach Franklin's claim of right against Nike.

## II.     MOTION FOR NEW TRIAL

The Court improperly excluded text messages and e-mails from evidence, thereby depriving Mr. Avenatti of his Fifth and Sixth Amendment rights to present a defense and his right to a fair trial.  The excluded text messages and e-mails included DX FF-02, FF-07, FF-611, FF-613, FF-623, FF-633, FF-638, FF-647, FF-713, FF-741, FF-777, FF-886, FF-915, FF-926, FF-962, GG-2, GG-25778, MM-03, MM-04, MM-05, BBB, and EEE.  (*See* Dkt. No. 253).  Most of the text messages and emails were excluded even without a contemporaneous objection by the government.

In response, the government first argues, in conclusory fashion, that the exhibits "contained inadmissible hearsay and irrelevant and inflammatory statements."  (Dkt. No. 292:20).  The government, however, never objected at trial on hearsay grounds and, more importantly, does not cite a single example from the 22 text messages and/or emails of a

---

[1] In *Jackson*, the Second Circuit found a "nexus" to be lacking because defendant Jackson had no plausible claim.  On that issue, the panel opinion repeatedly made it clear that the appropriate inquiry is whether there was a nexus between *the threat* and the claim.  180 F.3d at 70-71.  On rehearing, the panel reaffirmed this view, 196 F.3d at 387 (noting its conclusion that §875(d) prohibits threats to reputation for purposes of obtaining money "if there is no nexus between *the threat* and the defendant's claim") (emphasis added).  Later in the rehearing opinion, the panel conflated the issue by observing that Jackson had failed to proffer sufficient evidence of a nexus between the claim and *the demand* (as opposed to *the threat*).  196 F.3d at 388.  Given the marital infidelity example used by the *Jackson* panel, it is only logical that the nexus requirement speaks to the relationship between the claim and *the threat*, not the claim and *the demand*.  *See also United States v. Coss*, 677 F.3d 278, 285-86 (6th Cir. 2012) (evaluating the nexus between the threat and the claim of right).  Otherwise, every time a prospective plaintiff demands more than a claim is worth, the plaintiff would be an extortionist, contrary to the well-established principle that puffing and posturing during settlement negotiations is acceptable behavior.

statement that would have been excludable on hearsay or "inflammatory" grounds.  Moreover, the government agreed with the Court's assessment at trial that defense counsel's inquiry into the content of those excluded messages was relevant.[2]

The government next argues that the excluded text messages and emails were properly excluded because they "could not bear on the *defendant's* state of mind because they were never shared with the defendant, and the messages themselves were therefore not actually probative of any fact of consequence."  (Dkt. No. 292:21) (emphasis in original).  This argument flouts basic principles of relevance and, in fact, accentuates why the court's response to the jury's note during deliberations deprived Mr. Avenatti of a fair trial.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining this action."  Fed.R.Evid. 401. "To be relevant, evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable doubt."  *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010).  Rule 401 prescribes a "very low standard" for relevance. *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012).  [U]nless an exception applies, all 'relevant evidence is admissible.'"  *Id.* (quoting Fed.R.Evid. 402).

Plainly, the excluded written communications between Coach Franklin and Mr. Auerbach and others (*i.e.,* Trent Copeland), in which Coach Franklin expressed his goals and objectives vis-à-vis Nike in the months before he retained Mr. Avenatti were ***relevant***, as the

---

[2]  THE COURT:  So the reason why I think it is relevant is that it has some bearing -- it could possibly have some bearing on what the jury concludes Mr. Franklin said he wanted from Mr. Avenatti, and that's why I have allowed it.  MR. SOBELMAN: OK.  That's why we haven't objected.  (Tr.1645; *see also* Tr.1646).

Court concluded and the government itself acknowledged. (Tr.1645-46). First, they showed that Coach Franklin wanted to be aggressive toward Nike, directly contrary to his testimony at trial. Second, the frequency with which Coach Franklin expressed those goals and objectives to his trusted consultant Auerbach and another attorney (Copeland) provided an evidentiary basis for the jury to reasonably infer that Coach Franklin communicated those same goals to Mr. Avenatti.

The government argues that the text messages and emails were "cumulative of Auerbach and Franklin's testimony because they essentially duplicate what the two men testified to." (Dkt. No. 292:22) (quoting Tr.1924). Not so. Neither Auerbach nor Franklin remembered the exact words that they used in text messages and emails from months earlier, and their disjointed oral testimony was a poor substitute for their own written communications that the jury should have been permitted to actually see, read, and taking back to the jury room during deliberations.

> "The elementary wisdom of the best evidence rule rests on the fact that the document is a more reliable, complete and accurate source of information as to its contents and meaning than anyone's description...." *Gordon v. United States*, 344 U.S. 414, 421, 73 S.Ct. 369, 374, 97 L.Ed. 447 (1953). Thus, pursuant to the best evidence rule, this Court finds that the correspondence and other documents speak for themselves and therefore the affidavits, to the extent that they are submitted to show subjective intent, are neither necessary nor relevant, and will therefore be disregarded.

*In re Chateaugay Corp.*, 116 B.R. 887, 905 (Bankr. S.D.N.Y. 1990). To be sure, the Supreme Court in *Gordon* wrote as follows:

> The Court of Appeals affirmed on the ground that Marshall's admission, on cross-examination, of the implicit contradiction between the documents and his testimony removed the need for resort to the statements and the admission was all the accused were entitled to demand. We cannot agree. We think that an admission that a contradiction is contained in a writing should not bar admission of the document itself in evidence, providing it meets all other requirements of

admissibility and no valid claim of privilege is raised against it. The elementary wisdom of the best evidence rule rests on the fact that the document is a more reliable, complete and accurate source of information as to its contents and meaning than anyone's description and this is no less true as to the extent and circumstances of a contradiction. We hold that the accused is entitled to the application of that rule, not merely because it will emphasize the contradiction to the jury, but because it will best inform them as to the document's impeaching weight and significance.

*Gordon, supra*, 344 U.S. at 420-21.

The government cannot get around the logic and wisdom of *Gordon* so it instead argues that *Gordon* was decided before the modern "best evidence rule" was "codified at Rules 1002 through 1003 of the Federal Rules of Evidence." (Dkt. No. 292:21). But the government does not explain how the "best evidence rule" in Rule 1002 undermines Mr. Avenatti's argument in any way. To the contrary, the very rationale for the best evidence rule was articulated by the Supreme Court in *Gordon*. *See, e.g., United States v. Morales-Madera*, 352 F.3d 1, 9 (1st Cir. 2003) (citing *Gordon*).

To the extent the written communications were "cumulative" of defense counsel's questioning of Auerbach and Franklin about their recollection of those written communications -- which we vigorously dispute – it was only because the Court refused to allow Mr. Avenatti to choose his much preferred method of presenting the evidence through the written communications. The Court did not limit the government's presentation of evidence in the same manner; it permitted the government to offer in evidence written communications and then elicit oral testimony from the witnesses about those same documents.

The Court compounded this evidentiary error by improperly restricting the jury's consideration of inferences that could be drawn from the few text messages that were admitted

in evidence.  Namely, the Court should have explained to the jury, in response to the jury question I.B (Court Exh. 4), that they were permitted to infer from a "state of mind" document that the declarant then **acted upon** the state of mind and communicated his state of mind to Mr. Avenatti.  Instead, the jury was left to believe that, absent evidence that a particular text message was actually shown to Mr. Avenatti, they could not **infer** that Mr. Auerbach and Coach Franklin communicated their stated desires to him.

The government argues that the Court's supplemental instruction "limited the jury only from using an exhibit admitted for state-of-mind purposes 'for the truth of the statements that were made in that exhibit.'"  (Dkt. No. 292:27) (quoting Tr.2408).  The government is incorrect.  The Court told the jury that it could "draw inferences from exhibits that were admitted to demonstrate state of mind, **but only as to state of mind**.  Exhibits received without any limitation may be considered by you for all purposes, including for their truth.  But where I admitted an exhibit for purposes of demonstrating state of mind, that exhibit **can only be considered for purposes of state of mind**, and not for the truth of the statements that were made in that exhibit." (Tr.2408) (emphasis added).  The Court did not permit the jury to infer from the text messages that Coach Franklin and Mr. Auerbach acted upon their stated intentions by in fact communicating their objectives to Mr. Avenatti.

The government also incorrectly argues for plain error review of Mr. Avenatti's request for the instruction that "from state of mind documents, you may draw inferences, including an inference that the person who made the statement thereafter acted in accordance with the stated intent." (Dkt. No. 292:28; Dkt. No. 264:2).  Mr. Avenatti contemporaneously objected to the Court's proposed instruction and initially requested that the Court answer the question "Yes, you may draw inferences from state-of-mind documents, and you may draw inferences from

8

exhibits admitted into evidence." (Tr.2400). The Court rejected that request.[3] After the Court gave its response to the jury, but ***before*** the jury resumed its deliberations the following morning, Mr. Avenatti proposed the supplemental response to the jury question (Dkt. No. 264:2). That request was timely and preserved because ***nothing*** had happened in the interim; the Court was given an opportunity to rule on Mr. Avenatti's supplemental response before the jury deliberated again. The Court declined to give the supplemental instruction. The supplemental response is clearly preserved.

### III. CONCLUSION

For the foregoing reasons, Mr. Avenatti respectfully requests that the Court grant a judgment of acquittal on all counts. In the alternative, Mr. Avenatti respectfully requests that the Court grant him a new trial.

Respectfully submitted,

By:    /s/Scott A. Srebnick
        Scott A. Srebnick, P.A.
        201 South Biscayne Boulevard
        Suite 1210
        Miami, FL 33131
        Telephone: (305) 285-9019
        Facsimile: (305) 377-9937
        E-Mail: Scott@srebnicklaw.com

---

[3] Contrary to the government's contention, (Dkt. No. 292:28 n.5), Mr. Avenatti does not retreat from his initial requested answer to the jury note at the time. Indeed, Mr. Avenatti's proposed answer was a correct statement of the law.