UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

UNITED STATES OF AMERICA :

-*v*.- : S1 19 Cr. 373 (PGG)

MICHAEL AVENATTI, :

Defendant. :

---------------------------------------------------------------x

**THE GOVERNMENT'S SENTENCING MEMORANDUM**

AUDREY STRAUSS
United States Attorney
Southern District of New York

Matthew D. Podolsky
Daniel C. Richenthal
Robert B. Sobelman
Assistant United States Attorneys
Southern District of New York

- Of Counsel -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ........................................................................................................ 2

I. The Defendant's Criminal Schemes ........................................................................ 2

II. The Advisory Guidelines Range ............................................................................ 3

III. The Probation Office's Recommendation ................................................................. 4

DISCUSSION ........................................................................................................... 4

I. The Probation Office's Guidelines Calculation Is Correct ............................................ 4

A. The Probation Office's Grouping Analysis Is Correct .................................................. 4

B. The Probation Office Correctly Applied U.S.S.G. § 2B4.1 to Group Two ...... 7

C. The Probation Office Correctly Calculated the Amount Demanded and Amount of the Bribe ........................................................................ 9

II. A Very Substantial Term of Imprisonment Is Warranted ........................................... 10

III. The Court Should Order Restitution ..................................................................... 15

CONCLUSION ......................................................................................................... 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

UNITED STATES OF AMERICA :

-*v*.- : S1 19 Cr. 373 (PGG)

MICHAEL AVENATTI, :

Defendant. :

---------------------------------------------------------------x

**THE GOVERNMENT'S SENTENCING MEMORANDUM**

The Government respectfully submits this memorandum in advance of the sentencing of defendant Michael Avenatti, and in response to the defendant's sentencing memorandum dated June 9, 2021 (Dkt. No. 317) ("Def. Mem.").

**PRELIMINARY STATEMENT**

The defendant, a prominent attorney and media personality with a large public following, betrayed his client and sought to enrich himself by weaponizing his public profile in an attempt to extort a publicly-traded company out of tens of millions of dollars. This was an egregious abuse of trust, and it warrants real and serious punishment.

The defendant's United States Sentencing Guidelines ("Guidelines") range reflects the seriousness of his conduct. He faces an advisory Guidelines range of 135 to 168 months' imprisonment, as set forth in the Presentence Investigation Report ("PSR") of the United States Probation Office ("Probation Office"), in which the Probation Office recommends a sentence of 96 months' imprisonment. While the Government, like the Probation Office, believes that a below-Guidelines sentence would be sufficient but not greater than necessary to serve the

legitimate purposes of sentencing, the Government asks this Court to impose a very substantial sentence.

## BACKGROUND

### I. The Defendant's Criminal Schemes

As described in greater detail in the PSR, in Complaint 19 Mag. 2927, and in Superseding Indictment S1 19 Cr. 373—and as proven at trial—the defendant, an experienced lawyer, wrongfully used confidential information obtained from his client, Gary Franklin, Sr., in a failed effort to extort NIKE, Inc. ("Nike"), a publicly-traded corporation, into paying at least $15 million, not to Franklin, but directly to the defendant himself. (PSR ¶¶ 16-24.[1]) In violation of his duties owed to Franklin, the defendant demanded that Nike pay him personally—at least ten times what he asked Nike to pay Franklin—in exchange for which the defendant would, among other things, cause any potential claims by Franklin against Nike to be resolved and forgo using his media influence to damage and embarrass Nike. (*See* PSR ¶¶ 18-19.) Indeed, when one of Nike's attorneys asked whether Nike could resolve the defendant's demands simply by paying Franklin more money, the defendant responded that Nike should not increase its payment to Franklin. In the defendant's words, it did not make sense for Nike to pay Franklin an "exorbitant sum of money . . . in light of his role in this." (PSR ¶ 21.) Not surprisingly, the defendant did not inform Franklin of his demands or of Nike's responses, much less receive authorization for what he did, but instead misled Franklin regarding the nature of his purported negotiations, concealed facts from Franklin, and misused Franklin's confidential information. (*See* PSR ¶ 22.)

---

[1] Because the Court presided over the trial, the Government will not describe all aspects of the scheme or cite all relevant evidence herein.

## II. The Advisory Guidelines Range

The Probation Office calculates the defendant's advisory Guidelines range as follows:

- Pursuant to U.S.S.G § 3D1.2, Counts One and Two are treated as a single group ("Group One"), but Count Three is treated as a separate Group ("Group Two"). (PSR ¶¶ 29-30.)

- Group One

  - The Sentencing Guideline applicable to Group One is U.S.S.G. § 2B3.3. (PSR ¶ 31.)

  - Pursuant to U.S.S.G. § 2B3.3(a), the base offense level for Group One is 9. (PSR ¶ 31.)

  - Pursuant to U.S.S.G §§ 2B1.1(b)(1)(K) & 2B3.3(b)(1)(B), because the amount demanded was more than $9,500,000 but not more than $25,000,000, the offense level is increased by 20 levels. (PSR ¶ 32.)

  - Pursuant to U.S.S.G. § 3B1.3, because the defendant abused a position of private trust and/or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, the offense level is increased by 2 levels. (PSR ¶ 34.)

  - Accordingly, the Guidelines offense level applicable to Group One is 31. (PSR ¶ 36.)

- Group Two

  - The Sentencing Guideline applicable to Group Two is U.S.S.G. § 2B4.1. (PSR ¶ 37.)

  - Pursuant to U.S.S.G. § 2B4.1(a), the base offense level is 8. (PSR ¶ 37.)

  - Pursuant to U.S.S.G. §§ 2B1.1(b)(1)(K) & 2B4.1(b)(1)(B), because the value of the bribe solicited was more than $9,500,000 but not more than $25,000,000, the offense level is increased by 20 levels. (PSR ¶ 38.)

  - Pursuant to U.S.S.G. § 3B1.3, because the defendant abused a position of private trust and/or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, the offense level is increased by 2 levels. (PSR ¶ 40.)

  - Accordingly, the Guidelines offense level applicable to Group Two is 30. (PSR ¶ 42.)

- Pursuant to U.S.S.G. § 3D1.4(a), Group One counts as one Unit, and, because Group Two is 1 level less serious than Group One, Group Two counts as one Unit, and the offense level of Group One is therefore increased by 2 levels. (PSR ¶ 43.)

- Accordingly, the applicable Guidelines offense level is 33. (PSR ¶¶ 46, 49.)

The defendant has no known prior convictions, so his Criminal History Category is I. (PSR ¶¶ 50-53.) Based upon these calculations, the defendant's advisory Guidelines range is 135 to 168 months' imprisonment. (PSR ¶ 133.)

## III. The Probation Office's Recommendation

Taking into account all of the factors set forth in 18 U.S.C. § 3553(a), including the defendant's age and background, the nature and circumstances of his offenses, and the need to avoid unwarranted sentencing disparities, the Probation Office recommends a sentence of 96 months' imprisonment. (PSR pp. 44, 47.)

# DISCUSSION

## I. The Probation Office's Guidelines Calculation Is Correct

The defendant advances multiple challenges to the Probation Office's calculation, asserting that his total offense level should be 9 rather than 33. (Def. Mem. 2-8.) A ruling in the defendant's favor on all of his challenges would result in an advisory Guidelines range of only 8 to 14 months' imprisonment. (*Id.* at 8.) As set forth below, each of the defendant's challenges to the Probation Office's calculation of the advisory Guidelines range is wrong, although some or all such challenges, even if correct, would be unlikely to affect the appropriate sentence in this case and therefore need not be resolved by this Court.

### A. The Probation Office's Grouping Analysis Is Correct

The Probation Office concluded, consistent with the plain language of the Guidelines:

(a) pursuant to U.S.S.G § 3D1.2, Counts One and Two—the two extortion counts—are treated as a single group because those counts involve the same victim and the same act or transaction, but

(b) Count Three—honest services wire fraud—is treated as a separate Group, because Count Three does not involve the same victim as Counts One and Two under U.S.S.G. § 3D1.2(a)-(b), no count embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to any other count under U.S.S.G. § 3D1.2(c), and U.S.S.G. § 2B3.3 is specifically excluded from the operation of U.S.S.G. § 3D1.2(d).

(PSR ¶¶ 29-30.)

The defendant, by comparison, seeks to group all counts together, to avoid the Guidelines enhancement associated with criminal conduct involving multiple harms. (Def. Mem. 2-5.) The defendant's position is legally wrong, for the reasons discussed below. However, the Government expects that the Court will not need to resolve this dispute, because even if the defendant were correct, his advisory Guidelines range would still be 108 to 135 months' imprisonment, a sentencing range that is above what, in both the Probation Office's view and the Government's view, is sufficient but not greater than necessary to serve the purposes of sentencing. *See United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005) (court need not resolve Guidelines dispute where same non-Guidelines sentence would be imposed in either event); *see also United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) (imposition of enhancement harmless error where district court stated it would have imposed same sentence without enhancement). However, to the extent that the Court chooses to resolve the defendant's grouping challenge, it should reject it.

*First*, the defendant contends that all three counts should form one group under U.S.S.G. § 3D1.2(c), because, in his view, the defendant's honest services fraud embodies the same conduct for which Group One was "enhanced by two levels based on a finding that [he] abused his position of trust vis-à-vis his client . . . under U.S.S.G. § 3B1.3." (Def. Mem. 2-3.) Notably, the defendant selectively paraphrases the PSR, which in fact explains that, with respect to Group One, the enhancement under U.S.S.G. § 3B1.3 results from the defendant receiving "confidential

information from his client during the course of their attorney-client relationship," and abusing "a position of public or private trust, or us[ing] a special skill." (PSR ¶ 34.) The defendant's conviction for soliciting a payment in exchange for violating his fiduciary duty to his client is therefore not an embodiment of the "abuse of trust" enhancement for Group One, and even if it were, it certainly would not be an embodiment of the equally applicable enhancement for use of a "special skill," and there is therefore no double-counting problem. *See* U.S.S.G. § 3B1.3 cmt. n.4 ("'***Special skill***' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing" "includ[ing] . . . lawyers." (emphasis in original)).[2]

*Second*, the defendant contends the reverse: that the extortion offenses embody conduct that is treated as a specific offense characteristic for the honest services wire fraud count. (Def. Mem. 3.) According to the defendant, this is so because the payments demanded from Nike as part of the extortion attempt are the same payments that constitute the bribe in the honest services wire fraud count. (*Id.*) But the fact that the payments demanded from Nike might constitute both an extortion payment and a bribe hardly means that extortion "embodies" "the value of the bribe." U.S.S.G. §§ 2B4.1(b)(1), 3D1.2(c). Punishment for the extortion offenses concerns the

---

2 This case is therefore unlike *United States v. Sedoma*, 332 F.3d 20 (1st Cir. 2003), cited by the defendant (Def. Mem. 3), where the presentence investigation report stated that the honest services fraud was committed to facilitate a drug trafficking scheme, and an enhancement for abuse of trust was imposed on that basis, *Sedoma*, 332 F.3d at 25-26.

The defendant also relies on *United States v. Leung*, 360 F.3d 62 (2d Cir. 2004). (Def. Mem. 3.) *Leung* concerns whether an obstruction conviction should have been grouped with the offense in service of which the defendant obstructed justice, and for which the defendant received an obstruction enhancement. 360 F.3d at 68. As the Second Circuit explained, the Guidelines explicitly mandate that such counts be grouped. *Id.* at 68-69 (citing U.S.S.G. § 3D1.2(c) cmt. n.5). This conclusion has no bearing on the defendant's claim here, which is that a bribery count should be grouped with an extortion count where the defendant receives an enhancement for abuse of trust or use of a special skill as a lawyer, a claim that does not find support in the Guidelines.

defendant's attempt to extract money by threatening improperly to damage the victim financially or reputationally, while the enhancement for the value of the bribe sought for the honest services wire fraud offense relates to the manner in which the Guidelines calculates the gravity of the particular attempted fraud. In short, U.S.S.G. § 3D1.2(c) is not implicated here.

*Third*, the defendant argues that all counts should be grouped under U.S.S.G. § 3D1.2(d) as being "determined largely on the basis of the total amount of harm or loss." (Def. Mem. 4-5.) Yet as the defendant appears to concede (*id.* at 3), the Guidelines specifically "exclude[]" from the operation of grouping under U.S.S.G. § 3D1.2(d) offenses covered by U.S.S.G. § 2B3.3, like Counts One and Two. U.S.S.G. § 3D1.2(d) & cmt. n.6 (noting that U.S.S.G. § 3D1.2(d) provides for grouping of "most property crimes" "except . . . extortion"). It is true that the cases in which these exclusions have been implicated generally concern a series of separate violent crimes. *See, e.g.*, *United States v. Ruggiero*, 100 F.3d 284, 292 (2d Cir. 1996). Nonetheless, the defendant's claim appears to be precluded by the plain and explicit language of the Guidelines. *See United States v. Napoli*, 179 F.3d 1, 7 n.2 (2d Cir. 1999) ("Subsection (d) also lists a series of counts that are '[s]pecifically excluded from the operation of this subsection,' including all offenses against persons, *see* Chapter 2, Part A, most other crimes, including property crimes, that involve violence or the threat of violence, *see, e.g.*, §§ 2B3.1 (robbery), § 2B3.2 (extortion), and a set of others crimes excluded mainly for policy reasons, *see, e.g.*, § 2D2.1 (narcotics possession).").

**B. The Probation Office Correctly Applied U.S.S.G. § 2B4.1 to Group Two**

The Probation Office determined that the Guidelines provision of commercial bribery—U.S.S.G. § 2B4.1—is applicable to the defendant's conviction for engaging in a scheme to defraud his client through bribery and kickbacks. (PSR ¶ 37.) Objecting to the application of U.S.S.G.

§ 2B4.1, the defendant points to the Background to Section 2B4.1, which states that "[t]his guideline applies to violations of various federal bribery statutes that do not involve governmental officials." (Def. Mem. 5.) According to the defendant, the honest services wire fraud statute "is a fraud statute, *not* a federal bribery statute." (*Id.* at 5 (emphasis in original).)

The defendant points to no definition of "federal bribery statute," let alone one that excludes honest services wire fraud. Rather, as the defendant observes, the Supreme Court has described Section 1346 as applying to bribery and kickbacks schemes, and indeed designed specifically as an anti-bribery and kickback law. *Skilling v. United States*, 561 U.S. 358, 404-12 (2010); *see also United States v. Nouri*, 711 F.3d 129, 137 n.1 (2d Cir. 2013) ("the violation of [a fiduciary] duty through the employee's participation in a bribery or kickback scheme is within the core of actions criminalized by § 1346"); *United States v. Percoco*, No. 16 Cr. 776 (VEC), 2019 WL 493962, at *20 (S.D.N.Y. Feb. 8, 2019) (listing Section 1346 as one of "the bribery statutes").

Further, language in the commentary to U.S.S.G. § 2B4.1 that the defendant does not quote makes plain that the provision was intended to cover all "commercial bribery offenses and kickbacks that do not involve officials of federal, state, or local government, foreign governments, or public international organizations." U.S.S.G. § 2B4.1 cmt. n.1. And even if there were any merit to the assertion that Section 1346 does not qualify as a "bribery statute" and U.S.S.G. § 2B1.1 must always be applied to a fraud statute, which there is not, U.S.S.G. § 2B4.1 would still govern by operation of U.S.S.G. § 2B1.1(c)(3) and its commentary, which provide that, "in cases in which the defendant is convicted of a general fraud statute, and the count of conviction establishes an offense involving fraudulent conduct that is more aptly covered by another guideline," that other guideline applies. U.S.S.G. § 2B1.1(c)(3) & cmt. n.17.

The defendant makes reference to a District of Massachusetts case that applied U.S.S.G. § 2B1.1 to an honest services wire fraud conviction. (Def. Mem. 5 (citing *United States v. Abbott*, No. 19 Cr. 10117 (IT), 2019 WL 4394934, at *2 (D. Mass. Sept. 13, 2019)).) Courts in the Southern District of New York, however, have, consonant with the plain language of the Guidelines, consistently and properly applied U.S.S.G. § 2B4.1 to private honest services fraud convictions, and the Second Circuit has upheld its application. *See United States v. Rybicki*, 38 F. App'x 626, 633 (2d Cir. 2002); *United States v. Seabrook*, No. 16 Cr. 467 (AKH) (S.D.N.Y. Feb. 25, 2019), Dkt. Nos. 300 (sentencing of Murray Huberfeld) & 302 (sentencing of Norman Seabrook); *United States v. Tanner*, No. 17 Cr. 61 (LAP) (S.D.N.Y. Nov. 8, 2018), Dkt. No. 214 (sentencing); *United States v. Kelly*, No. 17 Cr. 547 (RWS), 2018 WL 2411593, at *4 (S.D.N.Y. May 29, 2018).

### C. The Probation Office Correctly Calculated the Amount Demanded and Amount of the Bribe

The defendant contends that the amount demanded from Nike as extortion payments and bribes should be offset by the "value" of an internal investigation that he was purportedly to perform for Nike, which, he asserts, conveniently and without a factual basis, would have been $20 million. (Def. Mem. 6-7.) The defendant provides no authority for the notion that the amount of the extortion demand under U.S.S.G. § 2B3.3(b)(1) or the amount of the bribe under U.S.S.G. § 2B4.1(b)(1) should be offset by the value of services purportedly to be provided by the defendant to his victim if his victim gives in to his threats, and therefore purchases such "services." But even assuming *arguendo* that the Guidelines do provide for such an offset, there is no basis for it here.

*First*, the evidence at trial demonstrated that the defendant had no genuine intention to provide real value to Nike, much less did he tie such an intention to any legitimate market figure. To the contrary, the defendant repeatedly demanded a large upfront payment, "deemed earned

when paid" (Government Trial Exhibit ("GX") 2T at 14:8-9), and provided no rational connection to the value of any work he would allegedly perform. Instead, the amount was simply a reflection of what the defendant thought he could extract from his victim. And ultimately, the defendant dropped even the pretense of an investigation, offering to "ride off into the sunset" for $22.5 million. (GX 2T at 25:8.) That alone dooms his self-serving and unsupported claim.

*Second*, as Nike has explained in its victim impact statement, which is attached as Exhibit A, any "investigation" conducted by the defendant, who plainly had a conflict of interest, would have had no value. Nike had no interest in and would not have benefited from an investigation by the defendant both because Nike had already conducted an investigation and because an investigation by the defendant would have been conducted by an indisputably conflicted attorney. (*See* Ex. A at 5.) In fact, as Scott Wilson testified, hiring the defendant to conduct an investigation would have been "incredibly problematic" for Nike, because "it would look like to the Department of Justice that Nike had hired the lawyer for a whistleblower, for a third party outside of the company, that we hired his lawyer to try to get our stories straight with this guy or otherwise to sit on this individual." (Trial Transcript ("Tr.") 312:16-20; *see also* Tr. 677:5-22.)

In short, the defendant has offered no plausible basis in the record by which this Court could make a finding to reduce the Guidelines' measurement of the extent and gravity of the particular extortion and bribery schemes undertaken by the defendant, much less reduce it to zero, as he asks—even if his "offset" theory had legal grounding, which he also fails to offer. The Probation Office's calculations were correct.

## II. A Very Substantial Term of Imprisonment Is Warranted

Taking into account all of the factors set forth in 18 U.S.C. § 3553(a), including the defendant's background, the nature and circumstances of his offenses, the need to avoid

unwarranted sentencing disparities, and the importance of general deterrence, a very substantial term of imprisonment—significantly in excess of the defendant's proposal of 6 months' imprisonment, which would constitute a more than 95% variance below the bottom of the Guidelines range—is warranted.

*First*, the nature and seriousness of the offenses and the need to provide just punishment warrant such a sentence. *See* 18 U.S.C. § 3553(a)(1), (2)(A). The defendant was a nationally prominent attorney who had sought and gained a sizable and avid following based, at least in part, on his supposed willingness to take on high-profile or powerful opponents on behalf of clients who had been taken advantage of. As the Probation Office observes, the defendant "often put himself forth as a champion for the Davids of the world, facing off with those Goliaths who would bully the small, the weak, the victimized." (PSR at 45.) And it was precisely this reputation, and the enormous influence that the defendant wielded on the national stage and across media platforms, that he weaponized. He used his skills as a lawyer and his power as a media figure not to benefit his client, but instead to threaten harm in an effort to extract millions of dollars from a victim, which, while sophisticated, the defendant believed would be forced into acquiescing secretly to his demands. As set forth in Nike's victim impact statement, the harm that the defendant threatened and inflicted was substantial and sustained. (*See* Ex. A.)

Moreover, the defendant's betrayal of Franklin—someone who went to the defendant based on a belief that the defendant was the type of person and lawyer who wished to help—was profound, as was clear from Franklin's testimony at trial. As Franklin writes in his victim impact statement, attached as Exhibit B, "[t]hough I had limited experience with lawyers at this point, I trusted Mr. Avenatti to keep information I shared with him confidential and to act at all times in my interests. I placed my faith entirely in Mr. Avenatti." (Ex. B at 1.) But,

> Mr. Avenatti quickly abused that trust when he announced on Twitter, without my knowledge and without my consent, that he would be holding a press conference to discuss a scandal at Nike that "involved some of the biggest names in college basketball." I never imagined that Mr. Avenatti would proceed to post on Twitter details of the information I had relayed to him as part of our attorney-client privileged discussions, including the names of the players I coached. I never imagined that he would go one step further and publicly post links to my confidential documents and make them available for anyone to download. And I never imagined that Mr. Avenatti would fly to New York and, along with Mr. Geragos, use me and my information to try to extort Nike for millions of dollars. I had been betrayed by the person who was supposed to be looking out for me—my lawyer.

(*Id.* at 1-2.)

Whatever the merits of the issues raised by Franklin about certain conduct related to Nike—the validity of which were not at issue in this trial, and are not at issue now—there can be no dispute that Franklin was genuinely concerned about the youth basketball program he had built. Franklin was also deeply concerned about the children that he mentored, and was fully committed to his partnership with Nike, which had supported his team for many years. (*See id.* at 1.) And there can be no dispute, either, that the defendant exploited Franklin, deliberately, for the defendant's own ends—never meaningfully seeking what Franklin wanted most (his team back), and telling Nike it ought to pay the defendant more and Franklin less. And when it became clear that the defendant's scheme was unraveling, in an effort to smear his other victim, Nike, and seek to defend himself in the press, the defendant divulged information that Franklin had shared in confidence, betraying him again.

The defendant repeatedly seeks to minimize this egregious conduct, never expressing remorse or acknowledging the harm and suffering caused to his victims, and instead claiming that he "caused no direct loss to either Nike or Coach Franklin." (Def. Mem. 10.) But the fact that Nike, at great risk to its own bottom line and reputation, determined not to accede to his demands,

but instead to report his crimes, hardly reduces the seriousness of the defendant's conduct. Moreover, as described in Nike's victim impact statement, the defendant *did* cause significant harm, even after it was clear to the defendant that he would reap no financial benefit. (*See* Ex. A.)

With respect to Franklin, even assuming *arguendo* the validity of the claim that the defendant caused him no "direct loss," the defendant fails to address the substantial hardship and distress his conduct imposed. Harm that is difficult or impossible to quantify is still harm, and when an attorney preys on and betrays the trust of his client, that attorney causes real harm, both to the client and the trust that our legal system places in lawyers. As Franklin writes, the defendant's conduct "devastated me financially, professionally, and emotionally." (Ex. B at 2). Franklin continues:

> The actions of Mr. Avenatti have destroyed my reputation in the community. Enrollment in my club is at a record low. I no longer feel welcome in places I once felt comfortable. I have struggled with my mental health. My family has suffered. Because of Mr. Avenatti's actions, this "scandal" is now the first result when you Google my name. Not the hundreds of kids I've helped to coach and mentor and get into college. Not the families whose lives I've helped to change or the great relationships or the great work of our non-profit program. All of my other achievements, all of the students I have helped, are overshadowed by Mr. Avenatti's greed.

(*Id.*). In short, what the defendant did, knowingly and deliberately, hurt a real person. It demands real and substantial punishment.

*Second*, the needs for the sentence imposed to promote respect for the law and to afford adequate deterrence to criminal conduct warrant a substantial sentence. *See* 18 U.S.C. § 3553(a)(2)(A), (2)(B). While the circumstances of the defendant's crimes, and his ability to leverage a national reputation to commit them, may be unusual, his crimes were, unfortunately, not unique. Indeed, as the defendant observes, only months after his arrest, two other attorneys were charged and arrested for engaging in a similarly brazen scheme to extort a large company,

using tools of the legal trade as leverage. (Def. Mem. 15-16.) There is also reason to think that such crimes go underreported, as it is clear from Nike's victim impact statement and the nature of the offense that it is often in the financial or reputational interest of a company simply to pay the extortionist rather than to report the crime. (*See* Ex. A.) And even if reported, without solid evidence like the recordings in this case, similar crimes may not be successfully prosecuted. A very substantial sentence is critical, therefore, to send a message to lawyers who may believe that they can cross the line from negotiation to extortion with impunity, seeking to cloak themselves in their law degrees or the rules of evidence, as the defendant sought to do here, and expecting that when an extortionate threat is conveyed across a conference table rather than on the street, it will be more difficult to prove that it was, nevertheless, an extortionate threat.

In short, for multiple reasons, the Court should reject the defendant's request for a sentence of six months' incarceration and twelve months' home confinement. (Def. Mem. 2, 12-17.) Such an extraordinarily lenient sentence, constituting a more than 95% variance below the bottom of the Guidelines range, is not called for the by the facts of this case, would fail to recognize the seriousness of the conduct at issue, and would not send the appropriate message to the defendant, others similarly situated, or the public.

Contrary to the defendant's assertion (Def. Mem. 12-17), his request for such an unusually dramatic variance from the Guidelines range would itself lead to unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6). The defendant points particularly to *United States v. Jackson*, No. 97 Cr. 121 (BSJ) (S.D.N.Y.), *United States v. Litzenburg*, No. 20 Cr. 13 (NKM-JCH) (W.D. Va.), and *United States v. Kincheloe*, No. 20 Cr. 14 (NKM-JCH) (W.D. Va.). These cases—all of which, in any event, involved sentences of incarceration longer than that sought by the defendant—do not support his request. Notably, *Jackson* involved an aggrieved daughter seeking

money from her own father. *United States v. Jackson*, 180 F.3d 55, 59 (2d Cir. 1999). It did not involve an attorney taking advantage of an unsuspecting client, using that client's information to extort a company, trading that client's interests for his own, and ultimately revealing unsubstantiated claims about his victim by disclosure of confidential materials provided by his client.

As for *Litzenburg* and *Kincheloe*, these cases too do not support what the defendant seeks. Unlike the defendant here, both of those defendants quickly accepted responsibility, and the lead defendant was sentenced to the statutory maximum sentence of 24 months' imprisonment for the crime of conviction (transmission of interstate communications with intent to extort), such that one cannot know what the sentence would have been had the statutory maximum been higher. Additionally, and importantly, those defendants also did not seek to leverage outsized public influence against the victim, whereas the defendant here used his public following against his victim, and threatened to and did in fact disclose confidential client information in service of his scheme, hurting his client in a second way.

## III. The Court Should Order Restitution

The Mandatory Victims Restitution Act ("MVRA") provides for mandatory restitution to victims of certain crimes, including extortion. *See* 18 U.S.C. § 3663A(c). "The primary and overarching goal of the MVRA is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." *United States v. Qurashi*, 634 F.3d 699, 703 (2d Cir. 2011) (internal quotation marks and citation omitted).

To that end, the MVRA requires defendants convicted of covered offenses to "reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). A victim's attorneys' fees are among the types

of "other expenses" that may be included in such a restitution order where they are "necessary" and "incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." *United States v. Amato*, 540 F.3d 153, 161 (2d Cir. 2008) (quoting 18 U.S.C. § 3663A(b)(4)). The statutory terms "investigation," "prosecution," and "proceedings" refer to government investigations and criminal proceedings (not private investigations victims may choose to conduct on their own). *Lagos v. United States*, 138 S. Ct. 1684, 1690 (2018).

"Generally, this Circuit takes a broad view of what expenses are 'necessary.'" *United States v. Maynard*, 743 F.3d 374, 381 (2d Cir. 2014). A district court has "broad discretion to determine restitution" and must make a "reasonable estimate" of the actual loss "based on the evidence before it." *United States v. Milstein*, 481 F.3d 132, 137 (2d Cir. 2007).

Nike, as a victim of the defendant's extortion scheme, is owed restitution for the attorneys' fees it has incurred in connection with its cooperation with the Government's investigation and prosecution of this case. Nike conservatively estimates those costs to be at least $1 million. At Nike's request (*see* Ex. A at 5 n.21), the Government accordingly asks the Court to enter an order of restitution, in a form to be submitted by the Government, imposing restitution in the amount of $1 million to Nike, to be paid only after the defendant fully pays any restitution owing to the individual victim in this case and the victims in the defendant's pending cases in *United States v. Avenatti*, No. 19 Cr. 374 (JMF) (S.D.N.Y.), and *United States v. Avenatti*, No. 19 Cr. 61 (C.D. Cal.), should he be convicted and ordered to pay restitution in one or both of those cases.[3] *See* 18 U.S.C. § 3664(i) (permitting courts to "provide for a different payment schedule for each victim

---

[3] The Government understands that Nike is prepared to provide support for the $1 million figure in an *in camera* submission if requested by the Court.

based on the type and amount of each victim's loss and accounting for the economic circumstances of each victim").

**CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court impose a very substantial term of imprisonment, which would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing, and also order restitution.

Dated: New York, New York
June 16, 2021

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By: s/______________________
Matthew D. Podolsky
Daniel C. Richenthal
Robert B. Sobelman
Assistant United States Attorneys
(212) 637-1947/2109/2616