# EXHIBIT 1



PETER M. SKINNER
Tel.: (212) 303-3654
E-mail: pskinner@bsfllp.com

June 25, 2021

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *United States v. Avenatti*, 19 Cr. 373 (PGG)

Dear Judge Gardephe:

We write on behalf of NIKE, Inc. ("Nike"), the victim of Michael Avenatti's extortion, in response to the Court's June 23, 2021 Order (Dkt. 326) seeking "additional briefing and billing records demonstrating that the fees sought [as part of Nike's restitution request] fall within recoverable categories as set forth in *Lagos*." Nike seeks $1 million in restitution, to be paid after Mr. Avenatti's individual victims.

As described in Nike's Victim Impact Statement (Dkt. 321, Ex. A), Mr. Avenatti caused substantial harm to Nike, financially and otherwise. Financially, Nike has incurred costs and expenses assisting in the government's investigation, addressing Mr. Avenatti's ongoing false attacks on the company following his arrest, preparing for and participating in Mr. Avenatti's trial, and pursuing a just sentence and fair restitution. Those amounts include time and expenses incurred by the company's own employees as well as the company's outside lawyers.

To avoid the "potentially time-consuming controversies" the Supreme Court warned of in *Lagos v. United States*, 138 S. Ct. 1684, 1689 (2018), Nike limited its restitution request to $1 million, which is far less than the total financial harm it suffered. Nike's legal bills from Boies Schiller Flexner (BSF) alone, which do not include the costs and expenses incurred by Nike's employees, exceeded $2.7 million. Of that $2.7 million amount, at least $1.7 million is recoverable as restitution under *Lagos* and its progeny.

With this submission, we provide the Court with billing records and analysis demonstrating that BSF's legal fees alone are more than sufficient to justify Nike's $1 million restitution request.

**A.     The Legal Standard**

As the Court recognized in its Order, "the Mandatory Victims Restitution Act (the "MVRA") authorizes courts to enter orders of restitution for certain types of investigative expenses incurred by victims in connection with 'government investigations and criminal proceedings.'" Dkt. 326 at 1 (quoting *Lagos*, 138 S. Ct. at 1690). Those expenses include attorneys' fees that a "victim was required to incur to advance the investigation or prosecution of the offense." *United States v. Maynard*, 743 F.3d 374, 381 (2d Cir. 2014).



In *Lagos*, the Supreme Court considered whether, in the MVRA, "the words 'investigation' and 'proceedings' are limited to government investigations and criminal proceedings, or whether they include private investigations and civil proceedings," concluding that "the words 'investigation' and 'proceedings' are limited to government investigations and criminal proceedings." *Lagos*, 138 S. Ct. at 1687.

Following *Lagos*, Judge Engelmayer found at least three categories of legal work for which "[r]estitution for fees and expenses . . . is consistent with the MVRA as construed in *Lagos*." *United States v. Afriyie*, No. 16-CR-377 (PAE), 2020 WL 634425, at *2 (S.D.N.Y. Feb. 11, 2020). Those categories are:

 1. Responding to subpoenas and requests from the government in connection with the corporate victim's assistance in the prosecution;

 2. Preparing witnesses to testify at trial; and

 3. Representing the corporate victim in connection with post-verdict restitution proceedings.

*Id.* This is not an exhaustive list. Rather, Judge Engelmayer listed and analyzed the categories of attorney work for which the corporate victim in *Afriyie* sought restitution. *See id.*

Notably, "the MVRA requires only a reasonable approximation of losses supported by a sound methodology." *United States v. Napout*, No. 15-CR-252 (PKC), 2018 WL 6106702, at *2 (E.D.N.Y. Nov. 20, 2018) (internal citation omitted). As the Supreme Court observed in *Lagos*, district courts should not be required to wade into "potentially time-consuming controversies [about restitution] as part of criminal sentencing." *Lagos*, 138 S. Ct. at 1689; *see also Napout*, 2018 WL 6106702, at *8 (same).

**B.     Nike's Legal Bills**

Shortly following the initiation of Mr. Avenatti's extortion on March 19, 2019, BSF created a new matter called the "Avenatti/Geragos Matter" for all work the firm would do for Nike in connection with the extortion. The firm billed no work related to any other matters it was handling for Nike to the Avenatti/Geragos matter, including the government's NCAA investigation and the internal investigation Nike conducted as a result. For avoidance of any doubt, Nike is not seeking restitution for any work BSF did in connection with the NCAA investigation, and no such time entries are included in the documentation produced to the Court under cover of this letter.

With respect to the work billed to the Avenatti/Geragos Matter, BSF has reviewed all of the firm's diary entries from March 19, 2019 to the present to identify the types of work it performed and to determine whether restitution for that work is consistent with the MVRA as construed by *Lagos* and its progeny. We identified the following categories of work that are covered by the MVRA:

 1. Assisting in the government's investigation of Mr. Avenatti, including participating in recorded meetings and calls, conferring with the prosecutors and the FBI, and responding to the government's requests for documents and information;



2. Preparing Nike and BSF witnesses for interviews by the government and to testify at Mr. Avenatti's trial;

3. Analyzing court filings and engaging in motion practice;

4. Attending hearings and the trial;

5. Addressing Mr. Avenatti's ongoing assault on Nike following his arrest, which is described in detail in Nike's Victim Impact Statement (Dkt. 321, Ex. A); and

6. Representing Nike in connection with sentencing and restitution.

We respectfully submit that, while certain of these categories of work are not coextensive with those identified by Judge Engelmayer in *Afriyie*, they are permissible under the MVRA for similar reasons that the categories of work analyzed in that case were permissible.

First, witness prep fees should include BSF witnesses in addition to Nike's witnesses because the BSF witnesses were either (a) acting as Nike's agents and present alongside Nike's witnesses at the time of the extortion, or (b) were prepped because the government had identified them as potential witnesses. *See Napout*, 2018 WL 6106702, at *4 (approving restitution award where "[t]here is no dispute that [the employees were] called as . . . witness[es] at the government's request").

Second, Nike was forced to incur attorneys' fees before and during the trial because of Mr. Avenatti's litigation decisions. The company had to defend itself in the pretrial proceedings because Mr. Avenatti chose to serve overly broad and ultimately unenforceable subpoenas for documents and witnesses. Mr. Avenatti further sought to expand the scope of the trial to include evidence about Nike's response to the government's NCAA investigation, requiring Nike to monitor and participate in the entire trial. But for Mr. Avenatti's tactics, these expenses would have been unnecessary. *See United States v. Amato*, 540 F.3d 153, 161 (2d Cir. 2008) (permitting victim's attorneys' fees "incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense").

Third, Mr. Avenatti continued his assault on the company and individual employees with false attacks after his arrest, requiring Nike to expend resources to track his attacks and formulate strategies for how to mitigate the damage they caused. "Where, as here, Mr. Avenatti was granted bail and continued to weaponize his social media accounts against Nike and its employees while he was prosecuted, reimbursement for Nike's legal expenses is clearly permissible under the MVRA, the "overarching goal" of which "is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." *United States v. Qurashi*, 634 F.3d 699, 703 (2d Cir. 2011); *see also United States v. Maynard*, 743 F.3d 374, 381 (2d Cir. 2014) ("This Circuit takes a broad view of what expenses are 'necessary.'").

3



Nike does not seek restitution for any work that was billed to the Avenatti/Geragos matter that does not fit into one of the above categories, including:

1. Nike's internal investigation of Mr. Avenatti's extortion;

2. Nike's analysis of civil remedies it has against Mr. Avenatti;

4. The time BSF's witnesses spent preparing to be interviewed, being interviewed, preparing to testify, and testifying; and

5. Monitoring Mr. Avenatti's other criminal cases.

When reviewing the diary entries, BSF deleted entries that were mixed — that is, it omitted all diary entries that reflected work to categories that are subject to restitution *and* to categories that are not subject to restitution. For example, the attorneys who participated in recorded meetings and calls in March 2019 at the FBI's instruction also billed for work they did on the same dates for analysis of Nike's civil claims against Mr. Avenatti. To avoid unnecessary litigation about the amount of time those attorneys dedicated to particular tasks, we deleted those entries in their entirety, removing a substantial amount of time that would otherwise clearly be covered by restitution under the MVRA.

As a result of this analysis, we respectfully submit that, of the $2,735,137.75 in total fees and costs billed to the Avenatti/Geragos Matter by BSF, at least $1,705,116.45 is properly collectible as restitution, of which Nike seeks restitution only for $1 million. For the Court's review, we are attaching the following:

Exhibit A: A summary of the billable rates for the attorneys and non-legal staff who worked on the Avenatti/Geragos matter, which were discounted by at least 15% from the firm's standard rates at the time;

Exhibit B: A summary of the amounts billed and paid by Nike on a monthly basis, with reductions for the work for which Nike does not seek restitution;

Exhibit C: Monthly diary entries, which have been redacted to remove privileged information and entries for which Nike does not seek restitution.[1]

---

[1] We have not included the bills for June 2021, which are not yet final. We estimate that we will bill approximately $50,000 in June for Nike's Victim Impact Statement and efforts to secure restitution. This amount, which is not included in the $2.7 million figure identified above, is also clearly collectible as restitution under the MVRA. *See United States v. Afriyie*, 2020 WL 634425 at *2. Any additional amounts Nike expends seeking restitution going forward will likewise be collectible as restitution.



      We thank the Court for considering this submission and are available to provide any additional information the Court may need to evaluate Nike's restitution request.

      Respectfully,

      */s/ Peter M. Skinner*
      Peter M. Skinner
      David L. Simons