

July 14, 2021

Hon. Paul G. Gardephe
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *United States v. Michael Avenatti*
              No. 19-Cr.-373 (PGG)

Dear Judge Gardephe:

      We represent NIKE, Inc. ("Nike," or the "Company"), the victim in the above-referenced matter, and offer this supplemental submission in accordance with the Court's instructions at Defendant Michael Avenatti's July 8, 2021 sentencing. Nike continues to seek restitution from Mr. Avenatti, to be paid only after his individual victims are paid. In an effort to avoid further litigation of the restitution issue, however, the Company will not oppose Categories Two through Five of Mr. Avenatti's objections, which were raised in his July 1, 2021 submission (Dkt. 332).

      Moreover, consistent with the Court's guidance, Nike has removed all redacted entries from its restitution request, along with all entries relating to press or media monitoring or Nike's response to Mr. Avenatti's post-arrest attacks on the Company. As shown in Exhibit A, and as explained below, the remaining fees for which Nike seeks restitution fall into the following categories, each of which is properly recoverable under the Mandatory Victims Restitution Act (the "MVRA") consistent with *United States v. Lagos*, 138 S. Ct. 1684 (2018):

    A.  Assisting in the government's investigation of Mr. Avenatti, including participating in recorded meetings and calls, conferring with the prosecutors and the FBI, and responding to the government's requests for documents and information;

    B.  Preparing Nike and BSF witnesses for interviews by the government and to testify at Mr. Avenatti's trial;

    C.  Analyzing court filings and engaging in motion practice;

    D.  Attending hearings and the trial; and

    E.  Representing Nike in connection with sentencing and restitution.

      After removing the redacted entries, the press and media entries, and the entries covered by Categories Two through Five, the fees supporting Nike's restitution demand have been reduced from $1.7 million to $856,162. Accordingly, Nike has reduced its restitution request to **$856,162**.



## **Background**

Nike originally requested $1 million in restitution with the goal of avoiding a drawn-out dispute and minimizing any administrative burden on the Court.  To that end, the Company requested a figure far less than the roughly $2.7 million in legal fees it incurred as a result of Mr. Avenatti's extortion.  Mr. Avenatti nevertheless objected, and the Court required the Government and Nike to submit evidence supporting Nike's request.

On June 25, 2021, Nike submitted extensive billing entries from this firm—all of which the Company had previously paid in full—totaling more than $1.7 million in legal fees for work arising out of Mr. Avenatti's extortion. (Dkt. 329 at Exs. A-C).  In an effort to further streamline the process, that submission reflected a substantial discount, totally roughly $890,000, from the full amount Nike could have sought as restitution under the MVRA.

First, many of this firm's diary entries were mixed, reflecting both legal work done directly in connection with the Government's investigation and prosecution as well as work that is not covered by the MVRA.  Rather than try to estimate what portion of the work was recoverable and what was not, Nike omitted all mixed billing entries, totaling roughly $815,000.  That is, it did not seek recovery for any billing entry that included time spent—no matter how small—on work that fell outside the scope of legal expenses recoverable under the MVRA.

For example, the first page of Dkt. 329, Exhibit C, reflects billing records for the undersigned attorney from March 2019.  Nike redacted the third through seventh billing entries in their entirety.  All of those entries included work that is clearly recoverable as restitution, such as responding to the Government's requests for documents and information, but also included time for work spent on non-recoverable legal tasks, such as analyzing Nike's potential civil claims against Mr. Avenatti.  Nike has not sought restitution for any portion of these mixed entries, or any other mixed entries.

Second, Nike's restitution request did not include fees for any legal expenses incurred in 2021, including in connection with Nike's submission of a Victim Impact Statement or its ongoing efforts to seek restitution, which is a recoverable category under *United States v. Lagos*, 138 S. Ct. 1684 (2018) and its progeny.  *See United States v. Afriyie*, No. 16-CR-377 (PAE), 2020 WL 634425, at *2 (S.D.N.Y. Feb. 11, 2020) (holding that the MVRA covers representing a corporate victim in connection with post-verdict restitution proceedings).  Those omitted billing entries totaled at least $50,000.

Third, Nike did not include any of the expenses that Nike itself incurred in connection with the Government's investigation—such as gathering Nike records in response to the Government's requests for information and making its employees available for interviews with the Government—or in connection with the trial.  Those additional omitted expenses totaled more than $25,000.

In sum, Nike's June 25 evidence in support of its restitution demand was already significantly discounted.



On July 1, 2021, Mr. Avenatti objected to Nike's restitution request. (Dkt. 332). In addition to making general objections to the entirety of Nike's demand, Mr. Avenatti incorporated the billing entries Nike had submitted in support of its request into a spreadsheet and propounded specific objections to each billing entry. (Dkt. 332-1). That spreadsheet applied at least one of the following five objections to each entry:

> Objection 1:   There is no evidence that these activities were required or requested by the government. Further, the total amount billed for the tasks identified is not reasonable.
>
> Objection 2:   Nike is not permitted to recover for fees for time spent on tasks that are redacted and not fully disclosed.
>
> Objection 3:   Nike may not recover for time spent relating to press and media relations, including time spent monitoring and responding to Mr. Avenatti's exercise of his right to free speech after his arrest on the morning of March 25, 2019. This is especially true because of the USAO-SDNY press conference held on March 25, 2019 and Nike's public statements after Mr. Avenatti's arrest; Mr. Avenatti had a First Amendment right at all times to publicly defend himself.
>
> Objection 4:   Nike may not recover for any expenses or fees incurred before the government's investigation or prosecution began.
>
> Objection 5:   Includes time spent on tasks that Nike expressly stated in its letter it was not seeking reimbursement for (ECF 329-1:5).

At Mr. Avenatti's sentencing, the Court reserved decision on restitution. (Sentencing Tr. at 46-48). The Court observed that redactions to the billing entries made them difficult to review. (*Id.* at 47). The Court further held that legal fees for monitoring and responding to Avenatti's post-arrest attacks on Nike were not recoverable under the MVRA. (*Id.*). The Court gave the Government and Nike until July 14, 2021 to submit a supplemental request for restitution.

## Discussion

For the reasons explained below, Nike will not oppose Mr. Avenatti's Objections Two through Five. With respect to Objection 1, Nike has eliminated any entries that relate in any way to press, news media, or Twitter monitoring or analysis. The remaining entries, all of which are recoverable under the MVRA, total $856,162.



### A. The Five Categories of Work for Which Nike Seeks Restitution

Mr. Avenatti's objections to the remaining entries shown at Exhibit A should be overruled because they all reflect legal fees falling into one of the five recoverable categories listed above.

First, after *Lagos*, the law does not require evidence that activities were "required or requested" by the Government to be collectible under the MVRA. For example, in a recent opinion from this district, Judge Engelmayer held that recovery for fees and expenses incurred in representing a corporate victim "in connection with post-verdict restitution proceedings" is "consistent with the MVRA as construed in *Lagos*," even though the Government did not require or request that activity. *Afriyie*, 2020 WL 634425, at *2; *see also United States v. Napout*, No. 15-CR-252 (PKC), 2018 WL 6106702, at *4 (E.D.N.Y. Nov. 20, 2018) ("legal fees incurred by FIFA to prepare its restitution request" were "recoverable under the [MVRA]"). Notably, "the Second Circuit has taken a very broad view of what, under the MVRA, may compose a 'necessary' link between the offense and the victims' expenses." *United States v. Gupta*, 925 F. Supp. 2d 581, 585 (S.D.N.Y. 2013), *aff'd*, 747 F.3d 111 (2d Cir. 2014); *see also United States v. Maynard*, 743 F.3d 374, 381 (2d Cir. 2014) ("Generally, this Circuit takes a broad view of what expenses are 'necessary.'").

For example, in *Gupta*, Judge Rakoff held that Goldman Sachs was entitled to restitution for over six million dollars in legal fees paid to Sullivan & Cromwell for "representing the Firm and its directors, officers, and employees in responding to criminal and regulatory enforcement investigations and the resulting prosecutions . . . and providing other legal services *that were the direct by-product of Gupta's conduct*." 925 F. Supp. 2d at 584-85 (internal quotation omitted) (emphasis added). Those fees included fees for "Goldman Sachs's expenses arising from the parallel SEC case against Gupta," as well as "Goldman Sachs's legal fees incurred in connection with . . . participating in the Government's investigation in *United States v. Rajaratnam*," a related case. *Id.*

Judge Rakoff expressly rejected Gupta's argument that "under the MVRA, Goldman is entitled to restitution of only those fees it can demonstrate were necessarily incurred in connection with specific requests by the government . . . or were otherwise required to be done . . . in the investigation or prosecution of the Gupta case." *Id.* (internal quotation omitted). Ultimately, Judge Rakoff concluded that "this Court has no difficulty in concluding, by a preponderance of evidence, that nearly all of the expenses Goldman Sachs here claims were the necessary, direct, and foreseeable result of the investigation and prosecution of Gupta's offense of conviction and thus well within the statute's coverage as interpreted by the Second Circuit." *Id.* While *Gupta* predated *Lagos*, Judge Rakoff thus adopted the same standard that the Supreme Court adopted in *Lagos*. *Compare Gupta*, 925 F. Supp. 2d at 584 (allowing recovery of expenses that "were incurred while participating in the investigation, prosecution, or attendance at proceedings regarding the offense") *with Lagos*, 138 S. Ct. at 1690 ("we conclude that the words 'investigation' and 'proceedings' in the Mandatory Victims Restitution Act refer to government investigations and criminal proceedings").[1]

---

[1] Following *Lagos*, Judge Chen twice favorably cited to *Gupta* in considering an appropriate restitution award in *United States v. Napout*. 2018 WL 6106702, at *4-5.



Second, unlike in *Lagos*, Nike seeks to recover only for work it performed to assist the Government's investigation and prosecution of Mr. Avenatti, which is expressly covered under the MVRA. *See* 18 U.S.C. § 3663A(b)(4) (allowing victims to recover for "expenses incurred during participation in the investigation or prosecution of the offense"). In *Afriyie*, Judge Engelmayer held that "responding to subpoenas and information requests from the USAO responsible for the defendant's prosecution falls squarely within the ambit of *Lagos*." 2020 WL 634425, at *2. As explained in its earlier submission (Dkt. 329, Ex. A at 2), Nike does *not* seek restitution for any expenses relating to its own internal investigation, which was billed to a separate client/matter number.

Third, with respect to preparing witnesses for trial, "the expenses [Nike] incurred preparing witnesses to testify at [Avenatti's] trial was undisputedly done at the invitation of the USAO, which conducted the prosecution. As such, these expenses were also squarely within the ambit of *Lagos*." *Afriyie*, 2020 WL 634425, at *3; *see also Napout*, 2018 WL 6106702, at *4 ("the Court finds that FIFA's requests for attorneys' fees in connection with [trial witness] testimony . . . are compensable under the MVRA" after *Lagos*).

Fourth, Nike's attendance at hearings and the trial is recoverable under the plain language of the MVRA, which permits recovery for "expenses incurred during . . . attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4); *see also United States v. Amato*, 540 F.3d 153, 161 (2d Cir. 2008) (permitting victim's attorneys' fees "incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense"). As explained in the Government's earlier submission, Nike's involvement here far exceeded that of a typical corporate victim in that "Nike's counsel participated in certain proceedings before this Court throughout the trial (e.g., oral arguments regarding privilege issues and Rule 17(c) litigation) and represented three Nike-affiliated witnesses who testified during the Government's case." Dkt. 329 at 3 n.1.

Fifth, Nike's involvement in motion practice before and during trial was a direct, foreseeable result of the Government's decision to prosecute Mr. Avenatti and Mr. Avenatti's strategic decisions with respect to his defense, including issuing trial subpoenas to over half a dozen Nike employees, each of whom needed to be prepared to testify, as well as multiple Boies Schiller lawyers. Nike did not engage in motion practice for its own purposes outside of the Government's criminal prosecution. As such, the resulting expenses were "incurred during . . . prosecution of the offense." 18 U.S.C. § 3663A(b)(4); *see also Amato*, 540 F.3d at 161 (stating that victim's attorneys' fees are "obviously associated with investigation and prosecution, particularly in the case of fraud offenses").

As this Court acknowledged in its July 6, 2021 Order denying Mr. Avenatti's post-trial motions, there was a "blizzard of pre-trial filings," many of which went to Mr. Avenatti's efforts to obtain or introduce evidence relating to Nike's underlying conduct, leading the Court to "set parameters for relevance and admissibility" on the first day of trial that made clear that evidence about Nike's conduct was irrelevant. Dkt. 336 at 47-49. Yet despite these rulings, "Defendant continued his efforts to introduce materials that Avenatti had never seen, much of which" related to the issue of Nike's underlying conduct. *Id.* at 51; *see also* Trial Tr. 445-46 (laying out the



Court's "principles" regarding admissibility of evidence relating to Nike), 1815-18 (granting motions to quash trial subpoenas issued to three Nike employees on the basis of relevance). The expenses incurred by Nike in responding to Mr. Avenatti's persistent efforts to create a mini-trial about Nike's conduct were plainly "expenses the victim was required to incur to advance the investigation or prosecution of the offense." *United States v. Maynard*, 743 F.3d 374, 381 (2d Cir. 2014); *see also Gupta*, 925 F. Supp. 2d at 585 ("The Second Circuit has similarly taken a broad view of what meets the requirement that the expenses be incurred during participation in the investigation, the prosecution of the offense, or during attendance at proceedings related to the offense.") (citing *Amato*).

The Supreme Court's decision in *Lagos* does not alter this analysis because, as another court in this Circuit has recently explained, "the Supreme Court did not interpret the scope of 'other expenses' in *Lagos* but only interpreted the scope of 'investigation.'" *United States v. Razzouk*, No. 11-CR-430 (ARR), 2021 WL 1422693, at *3 (E.D.N.Y. Apr. 15, 2021). Here, Nike is not seeking recovery for expenses relating to an independent investigation of its own initiation, but rather for expenses that it necessarily incurred relating to the Government's prosecution of Mr. Avenatti, including motion practice brought upon by that prosecution. *See id.* ("*Lagos* does not abrogate *Amato's* interpretation of 'other expenses,' and that interpretation remains binding on me."); *see also United States v. Razzouk*, 984 F.3d 181, 190 (2d Cir. 2020) ("In *Lagos*, the Supreme Court clarified the meaning of 'investigations' and 'proceedings' in this provision as pertaining only to 'government investigations and criminal proceedings.'") (quoting *Lagos*, 138 S. Ct. at 1688).

**B.    Nike Has Removed All Entries Covered Under Mr. Avenatti's Objections Two, Three, Four, and Five**

Although Nike disagrees with the merits of most of Mr. Avenatti's specific objections, in the interest of resolving the Company's restitution request expeditiously, Nike's revised restitution request removes all entries covered by four of Mr. Avenatti's five objection categories.

*Objection 2:  Diary Entries with Redactions*

As noted above, Nike completely redacted entries for which the Company is *not* seeking any recovery. Any partially-redacted entries in Nike's June 25 submission were redacted to protect privileged information. Although Nike believes that each of these entries is properly recoverable, in the interest of reaching an expeditious resolution, Nike will withdraw its requests for all partially-redacted time entries, which together total $276,716. In short, Nike is no longer seeking restitution for any redacted diary entries.

*Objection 3:  Fees Incurred in Relation to Press and Media Relations*

Mr. Avenatti objects to 75 time entries in connection with "press and media relations." Dkt. 332-1. Although many of the billing entries listed by Mr. Avenatti under this category involve



time spent on other, clearly recoverable activities,[2] in deference to the Court's guidance, Nike respectfully withdraws its requests for these time entries in their entirety, which together totaled $234,856.[3]

*Objection 4: Pre-Investigation Fees*

Mr. Avenatti objects to nine time entries on the basis that "Nike may not recover for any expenses or fees incurred before the government's investigation or prosecution began." Dkt. 332-1. Although several entries falling under this objection explicitly evidence Nike's assistance with the Government's investigation,[4] once again, in the interest of expeditious resolution, Nike is withdrawing its requests for all entries Mr. Avenatti listed under Objection Four, which together totaled $61,078.[5]

*Objection 5: Fees for Which Nike Indicated It Would Not Seek Reimbursement*

Mr. Avenatti objects to 78 entries on the basis that they "[i]nclude[] time spent on tasks that Nike expressly stated in its letter it was not seeking reimbursement for." Dkt. 332-1 (citing Dkt. 329-1:5). Most of these entries fall squarely within the core expenses recoverable under the MVRA. For example, many entries involve preparing subpoenaed witnesses for trial testimony or for meetings with the Government.[6] *See Afriyie*, 2020 WL 634425, at *2. Rather than litigate the propriety of these entries, however, Nike will withdraw them in the interest of moving forward with restitution expeditiously. Those diary entries total $382,588.

---

[2] *See, e.g.,* P. Skinner January 23, 2020 entry ("Prepare Ben Homes for trial testimony; prepare Scott Wilson for trial testimony; analyze order denying motion to quash and confer with client re same; analyze potential counsel for Lynn Merritt and confer with same; email correspondence; ***review key press***; analyze trial issues; analyze subpoena directed to P. Skinner"); P. Skinner January 24, 2020 entry ("Prepare Valecia Battle for trial testimony; confer with counsel for Lynn Merritt; confer with Lynn Merritt; analyze MTQ and 502(d) issues; BSF team meeting; prepare Casey Kaplan for trial testimony; analyze witness fee issues; ***review key press***").

[3] As explained further below, many of the time entries that Nike has offered to withdraw were objected to on multiple bases, so the total amount withdrawn is not accurately determined by adding the totals for each category of objections.

[4] *See, e.g.*, March 19, 2019 S. Wilson entry ("teleconfs with AUSA R. Boone and E. Diskant, with P. Skinner, re M. Avenatti/M. Geragos meeting"); March 19, 2019 V. Battle entry ("participated in calls with M. Williams, J. Sack, and SDNY"); March 19, 2019 P. Skinner entry ("confer with SDNY and FBI"); March 20, 2019 P. Skinner entry ("confer with SDNY and FBI; review document productions to SDNY").

[5] One of these entries involving Boies Schiller lawyer Adam Agatston did not include an "Amount" in Mr. Avenatti's submission. Mr. Agatston's time was billed at $580 per hour, so his time entry from March 19, 2019 totaled $3,248.

[6] *See, e.g.,* P. Skinner January 24, 2020 entry ("Prepare Valecia Battle for trial testimony"); A. Michaelson January 24, 2020 entry ("Prep at SDNY with S. Wilson"); P. Skinner February 2, 2020 entry ("SDNY prep session with [Scott Wilson] and [Rob Leinwand]"). For avoidance of doubt, as explained in its initial submission, Nike is not seeking restitution for any "time BSF's witnesses spent preparing to be interviewed, being interviewed, preparing to testify, and testifying." Dkt. 329, Ex. 1 at 4.



### C. The Court Should Overrule Avenatti's Objection 1

Under Objection 1, Mr. Avenatti objected to every single diary entry submitted in support of Nike's restitution request on the basis that: "There is no evidence that these activities were required or requested by the Government," and "the total amount billed for the tasks identified is not reasonable." (Dkt. 332 Ex. 1). We have reviewed the remaining entries covered only by Objection 1—any entry covered by another objection was already eliminated, as per the discussion above—and have further removed any entry related to media or responding to Mr. Avenatti's public attacks. The remaining entries are included in Exhibit A.

As discussed above, the expenses sought by Nike are all recoverable under the MVRA. Consequently, the Court should reject Mr. Avenatti's general objection that for every entry, "the total amount billed for the tasks identified is not reasonable."[7] It simply cannot be that every single entry is per se unreasonable. Where there are valid concerns that amounts billed are too high because of the number of attorneys working on a task or the rates charge, the standard practice in this Circuit is to apply a modest across-the-board reduction to a restitution request. *See Gupta*, 925 F. Supp. 2d at 587 (S.D.N.Y. 2013) (reducing attorneys' fees by 10% "in an excess of caution" where "on a few occasions, the number of attorneys staffed on a task—while perhaps perfectly appropriate on the assumption that [the victim] wished to spare no expense on a matter of great importance to it—exceeded what was reasonably necessary under the MVRA").[8]

Nike respectfully submits that such a reduction is not needed here, where it has already substantially reduced—both before and after Mr. Avenatti's objections—the amount it is seeking for its legal fees. Nevertheless, if the Court believes the remaining fees are too high, the solution is to apply a percentage reduction to the overall amount of restitution, not to preclude any restitution at all. *See United States v. Hatfield*, No. 06-CR-0550 (JS)(AKT), 2015 WL 13385926, at *13 (E.D.N.Y. Mar. 27, 2015) ("That the Company is not entitled to the full amount of legal expenses claimed, however, does not beget the conclusion that the claim for legal expenses should be disallowed in its entirety. Indeed, the Government has put before the Court far more than enough information to allow the Court to make a reasonable approximation of recoverable losses.").

---

[7] Mr. Avenatti's attack on certain costs incurred by Nike (Dkt. 332 at 6) is similarly misguided. These expenses, which totaled less than $35,000 (Dkt. 329 at Ex. B), and were further discounted in Nike's initial request, constitute clearly recoverable costs such as travel to Portland, Oregon to participate in interviews of Nike witnesses that were conducted in Portland at the express request of the Government.

[8] *See also United States v. Ebrahim*, No. 12 CR. 471 (JPO), 2013 WL 2216580, at *1 (S.D.N.Y. May 21, 2013) ("Following Judge Rakoff's lead in *Gupta*" and reducing attorneys' fees by 10%, where review of the billing records "suggest[ed] that some of the billing may have been, in some discrete instances, excessive," and "there was an unnecessary [number] of lawyers involved in certain tasks"); *see also United States v. Napout*, No. 15-CR-252 (PKC), 2018 WL 6106702, at *5 (E.D.N.Y. Nov. 20, 2018) (reducing attorneys' fees by 15%); *United States v. Sazonov*, No. 1:17-CR-00657 (SDA), 2018 WL 922151, at *2 (S.D.N.Y. Feb. 16, 2018) (reducing the attorneys' fees by 15%); *United States v. Qurashi*, No. 05-CR-498 (SJF)(AKT), 2009 WL 10677000, at *27 (E.D.N.Y. Sept. 1, 2009) (reducing the attorneys' fees by 10%), *report and recommendation adopted*, No. 05-CR-498 (SJF)(AKT), 2009 WL 10677129 (E.D.N.Y. Sept. 30, 2009), *aff'd and remanded*, 634 F.3d 699 (2d Cir. 2011).



      We respectfully submit that Nike's revised restitution request and supporting materials provide a "reasonable approximation of losses supported by a sound methodology" sufficient to satisfy the preponderance of the evidence standard required by the MVRA. *United States v. Gushlak*, 728 F.3d 184, 196 (2d Cir. 2013) ("the preponderance standard must be applied in a practical, common-sense way. So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution.") (internal quotation omitted); *see also Napout*, 2018 WL 6106702, at *2 (same); 18 U.S.C. §3664(e) ("[a]ny dispute as to the proper amount . . . of restitution shall be resolved by the court by the preponderance of the evidence").

## Conclusion

      In sum, in the interest of expeditiously resolving restitution in this matter, Nike agrees to withdraw its submission of fees falling under Mr. Avenatti's objection Categories Two through Five. Nike has reviewed and reduced the remaining entries to eliminate any other legal fees dedicated to Nike's response to Mr. Avenatti's post-arrest attacks or other press monitoring. The remaining expenses (*see* Exhibit A), which form the basis for Nike's revised restitution demand, total $856,162.

      For the foregoing reasons, Nike respectfully requests restitution in the revised amount of **$856,162**.

      Respectfully,

*/s/ Peter M. Skinner*
Peter M. Skinner
David L. Simons