LAW OFFICE OF

# BENJAMIN SILVERMAN

224 WEST 30TH ST., SUITE 302
NEW YORK, NY 10001

TEL (212) 203-8074
FAX (646) 843-3938
Benjamin@bsilvermanlaw.com

January 5, 2022

**By ECF**
Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

  Re: *United States v. Michael Avenatti*, 19 Cr. 373 (PGG)

Your Honor:

  I write in response to a phone call from Chambers earlier today.

  Attached as Exhibit A is the August 13, 2021 morning transcript from Mr. Avenatti's trial in California, which contains the balance of John Drum's testimony.

  Attached as Exhibit B is a transcript from an *in camera* session held by the Honorable James V. Selna on August 16, 2021 – three days after Drum testified – to address Drum materials provided by the government for *in camera* review.[1] At that conference, Judge Selna ordered that those Drum materials be produced to Mr. Avenatti "post-haste." Ex. B at 4:5. We note that the materials provided to Judge Selna for review on August 16 did not include the analyses of Mr. Avenatti's law firms' profitability and cash flow that were later produced in the separate 443-page Drum Reports this past October – six weeks after the mistrial was declared. It is the materials produced in October that are the subject of Mr. Avenatti's motion for an indicative ruling (Dkt. 358). Drum's cross examination was naturally confined to the materials produced *before* Drum testified, which did not include either (a) the nearly 400 pages that Judge Selna ordered disclosed on August 16 or (b) the 443-page Drum Reports produced last October that include the analyses of Mr. Avenatti's and his firms' financial condition.

  As noted in Mr. Avenatti's motion for an indicative ruling (Dkt. 358 at 3-4), there was a mistrial motion concerning withheld Drum documents that remained pending when Judge Selna ordered a mistrial for failure to produce other financial *Brady* materials. *See*

---

[1] This transcript was later provided to the defense but, because it contains an "under seal" heading, I am respectfully filing it under seal in an abundance of caution.

Hon. Paul G. Gardephe
January 5, 2022
Page  2

*United States v. Avenatti*, No. 19 Cr. 61 (JVS) (C.D.C.A. Aug. 14, 2021), Dkts. 705 (motion), 720 (motion supplement), 732 (opposition), 739 (reply). The mistrial ruling on the other *Brady* motion mooted the pending Drum motion.

Respectfully submitted,

/s/ Benjamin Silverman
Benjamin Silverman
*Attorney for Michael Avenatti*

cc: Counsel of Record (by ECF)

(Attachments)

# Exhibit A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

UNITED STATES OF AMERICA,      )CERTIFIED TRANSCRIPT
                    Plaintiff,  )
     vs.                        )
                                )  SACR-19-00061-JVS
MICHAEL JOHN AVENATTI,          )
                    Defendant.  )TRIAL DAY 20, VOL. 1
------------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

August 13, 2021

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   NICOLA T. HANNA
     United States Attorney
 4   BRANDON D. FOX
     Assistant United States Attorney
 5   Chief, Criminal Division
     ALEXANDER WYMAN
 6   Assistant United States Attorney
     Major Frauds Section
 7   1100 United States Courthouse
     312 North Spring Street
 8   Los Angeles, CA  90012
     (213) 894-6683
 9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   MICHAEL JOHN AVENATTI, PRO SE

15   H. DEAN STEWARD, ADVISORY COUNSEL
     H. DEAN STEWARD LAW OFFICES
16   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
17   (949) 481-4900

18

19

20

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
 1
 2                              I-N-D-E-X
 3
 4    PLAINTIFF'S
      WITNESSES:              DIRECT    CROSS    REDIRECT    RECROSS
 5
      JOHN DRUM
 6      (Continued)            23        84
 7    PLAINTIFF'S
      EXHIBITS:                                 MARKED      RECEIVED
 8
      Exhibit 359                                            46
 9    Exhibit 382                                            46
      Exhibit 371                                            54
10
      DEFENSE
11    WITNESSES:         DIRECT    CROSS    REDIRECT    RECROSS
12    (None)
13    DEFENSE
      EXHIBITS:                               MARKED      RECEIVED
14
      Exhibit 1080                             85
15
16
17
18
19
20
21
22
23
24
25
```

4

SANTA ANA, CALIFORNIA; FRIDAY, AUGUST 13, 2021; 8:31 A.M.

08:22    2        (Jury present)

08:31    3        THE CLERK:  Item 1, SACR-19-00061-JVS, United

08:31    4   States of America versus Michael John Avenatti.

08:31    5        MR. SAGEL:  Good morning, Your Honor.  Brett Sagel

08:31    6   and Alexander Wyman on behalf of the United States.  And at

08:31    7   counsel table is Special Agent Remoun Karlous.

08:31    8        THE COURT:  Good morning.

08:31    9        MR. AVENATTI:  Good morning, Your Honor.  Michael

08:31   10   Avenatti, present with Mr. Dean Steward and

08:31   11   Ms. Cummings-Cefali.

08:31   12        THE COURT:  Good morning.

08:31   13        I received several filings overnight, two relating

08:32   14   to witness one.  It would appear to me if she doesn't have a

08:32   15   fever, under the ground rules laid out by the CDC, she

08:32   16   should be free to testify and is safe to testify.

08:32   17        Thoughts?

08:32   18        MR. SAGEL:  Currently we don't disagree.  What we

08:32   19   figured, especially in light of the defense case not

08:32   20   starting until next week, is we would reach out to her

08:32   21   probably on Sunday or Monday and find out if she has any

08:32   22   symptoms.

08:32   23        If not, then we would proceed.  If she does, we

08:32   24   can file on Monday anything in response to the confrontation

08:32   25   clause that Your Honor had asked if it becomes necessary

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:32    **1**   that she could not testify in person.

08:32    **2**          THE COURT:  Mr. Avenatti.

08:32    **3**          MR. AVENATTI:  Your Honor, I want to note

08:32    **4**   something for the record because I think it's important.  We

08:32    **5**   subpoenaed the witness.  Instead of responding to us, the

08:32    **6**   witness reaches out to the government, is now in regular

08:33    **7**   communication with the government about whether she is going

08:33    **8**   to respond to the subpoena that we served her with.

08:33    **9**          The government, from what I can tell, is not

08:33  **10**   representing her but is in regular contact with her and is

08:33  **11**   almost acting -- almost, if not acting, you know, as an

08:33  **12**   advocate for the witness.  So this is rather bizarre to me.

08:33  **13**   I don't understand it.

08:33  **14**         So I don't know why we are proceeding through

08:33  **15**   Mr. Sagel and the government relating --

08:33  **16**         THE COURT:  Sir, the issue before the Court is the

08:33  **17**   conditions in bringing witness number one.  Do you have any

08:33  **18**   further comments on that?

08:33  **19**         MR. AVENATTI:  Other than what I filed, no, sir.

08:33  **20**         THE COURT:  Okay.  Well, let's see what her

08:33  **21**   situation is on Monday and proceed accordingly.

08:34  **22**         The government filed its response to

08:34  **23**   Mr. Avenatti's motion for a mistrial based on alleged

08:34  **24**   failure to comply with Federal Rule of Evidence 615.  The

08:34  **25**   government filed its opposition last night.

08:34  **1**      Do you want to address that, Mr. Avenatti?

08:34  **2**      MR. AVENATTI:  Yes, sir.

08:34  **3**      The government has conflated and confused the

08:34  **4**  timeline of what happened in connection with this case.  The

08:34  **5**  government raised no other objections other than Touhy prior

08:34  **6**  to those subpoenas being quashed by the Court, and then the

08:34  **7**  government proceeded to purposely have the agents in the

08:34  **8**  courtroom.

08:34  **9**      There is no finding by the Court that they were

08:34  **10**  necessary to the government's case.  The government did not

08:34  **11**  seek that finding or anything of that nature.

08:34  **12**      And, Your Honor, I also, as we pointed out in our

08:35  **13**  papers -- and I think this is very important -- two weeks

08:35  **14**  before the government told Your Honor that Touhy precluded

08:35  **15**  me from subpoenaing the agents, Mr. Steward provided the

08:35  **16**  Bahamonde case to the government.  He asked for any contrary

08:35  **17**  authority.  No contrary authority was presented because

08:35  **18**  there is no contrary authority because Touhy does not apply

08:35  **19**  in the Ninth Circuit.  That is clear.

08:35  **20**      Despite that knowledge, the government then --

08:35  **21**  Mr. Sagel represented to Your Honor that Touhy precluded the

08:35  **22**  subpoenas without informing Your Honor of Bahamonde, which

08:35  **23**  led Your Honor to commit reversible error.  Then we file a

08:35  **24**  motion for reconsideration pointing out that the government

08:35  **25**  had led the Court astray.

08:35  1        THE COURT:  Having presented to the Court for the

08:35  2 first time Bahamonde, evidence -- authority that would

08:35  3 support the proposition that Touhy doesn't apply in criminal

08:36  4 cases.

08:36  5        MR. AVENATTI:  That's correct, Your Honor.

08:36  6 Although, if you go back and you look at the transcript of

08:36  7 that morning when you quashed the subpoena, I attempted to

08:36  8 explain Bahamonde or the existence of Bahamonde.  I was cut

08:36  9 off by Your Honor.  I was told just answer the question.

08:36 10 Did you comply with Touhy?  It was something along those

08:36 11 lines.

08:36 12        THE COURT:  Right.

08:36 13        MR. AVENATTI:  And I answered Your Honor's

08:36 14 question because I know that Your Honor is not happy when

08:36 15 lawyers doesn't answer Your Honor's question.

08:36 16        THE COURT:  And it doesn't matter who the lawyer

08:36 17 is either.

08:36 18        MR. AVENATTI:  Understood, Your Honor.  I'm not

08:36 19 saying that it does.  Had I been provided an opportunity, I

08:36 20 would have informed the Court about Bahamonde.  But the

08:36 21 point is this, Your Honor --

08:36 22        THE COURT:  Sir, you could have always filed it

08:36 23 and brought it to the Court's attention that way.

08:36 24        MR. AVENATTI:  Well, Your Honor, I did file it.  I

08:36 25 filed a motion for reconsideration.  But let's be clear

08:36  1  about something.  Two weeks prior, both U.S. attorneys were

08:37  2  informed about Bahamonde, and the authority could not be

08:37  3  more clear.  There is no subsequent authority that even

08:37  4  calls it into question.

08:37  5      Knowing that, full knowledge, Mr. Sagel stood up

08:37  6  before Your Honor and said you have to quash the subpoenas

08:37  7  because of Touhy.  That's not proper, Your Honor.  He knew

08:37  8  about Bahamonde.  He led the Court astray purposely.

08:37  9      THE COURT:  Sir, I appreciate your point.

08:37  10      MR. AVENATTI:  All right.  And then lastly, Your

08:37  11  Honor, he compounded it by having the agents remain in the

08:37  12  courtroom.  That was not an accident.  It was not good-faith

08:37  13  reliance on an order from the Court.  He knew he had gotten

08:37  14  away with one.

08:38  15      And then he took advantage of it, and that is not

08:38  16  proper, Your Honor.  He knew about 615.  He knew exactly

08:38  17  what we were doing, and he knew that we were right.  And for

08:38  18  that reason, Your Honor, the motion should be granted.

08:38  19      THE COURT:  Well, I agree with you that if the

08:38  20  government was aware of contra authority it certainly would

08:38  21  have been a better course to have brought that to my

08:38  22  attention.

08:38  23      Nevertheless, I'm going to deny the motion.

08:38  24  Clearly under Robertson, the rule is to cross-examine the

08:38  25  witnesses.  Moreover, in its opposition, the government

08:38  1    raises potential technical defects in the subpoenas
08:38  2    themselves in that they are not sealed and signed, so query
08:38  3    whether those subpoenas which the government attaches to its
08:38  4    opposition at Docket 691 were valid.
08:38  5         MR. AVENATTI:  Your Honor, my understanding is
08:39  6    that when they were served on the agents they had the seal
08:39  7    and the signature.  That's my understanding.
08:39  8         THE COURT:  Okay.
08:39  9         MR. AVENATTI:  But that is a technical issue that
08:39  10   was not raised until well after the fact.  That was not the
08:39  11   reason for the -- and there's no question about this.
08:39  12   That's not the reason why the subpoenas were quashed.  They
08:39  13   were quashed because of the belief that Touhy applied.
08:39  14         THE COURT:  Correct.
08:39  15         MR. AVENATTI:  And, Your Honor, let me just say
08:39  16   this about the cross-examination issue.  I don't believe
08:39  17   that's the rule, and here is why.  It doesn't make any
08:39  18   sense, Your Honor.  If that was the case --
08:39  19         THE COURT:  Is Robertson incorrectly decided?
08:39  20         MR. AVENATTI:  Your Honor, I think Robertson was
08:39  21   inartfully worded -- let me put it that way -- for this
08:39  22   reason --
08:39  23         THE COURT:  I don't agree with that.
08:39  24         MR. AVENATTI:  Well, for this reason, Your
08:39  25   Honor --

| | | |
|---|---|---|
| 08:39 | 1 | THE COURT:  I read the relevant passage into the |
| 08:39 | 2 | record twice.  I don't think Robertson could be clearer as |
| 08:39 | 3 | to what the remedy is absent extraordinary circumstances. |
| 08:40 | 4 | MR. AVENATTI:  Your Honor, I think at best for the |
| 08:40 | 5 | government it is fact specific as to what happened in that |
| 08:40 | 6 | case.  But let me just make this point.  It cannot be the |
| 08:40 | 7 | law that a witness can purposely violate 615 and then the |
| 08:40 | 8 | entire remedy is, well, you can just cross-examine the |
| 08:40 | 9 | witness about the fact that they listened to the prior |
| 08:40 | 10 | testimony. |
| 08:40 | 11 | It renders 615 basically a nullity.  It renders |
| 08:40 | 12 | 615 useless, and it undercuts the long line of cases and |
| 08:40 | 13 | jurisprudence about the existence of 615, which is -- the |
| 08:40 | 14 | concept has been around since biblical times. |
| 08:40 | 15 | I mean, it is well established in the law.  It |
| 08:40 | 16 | would be render 615 a nullity.  Everybody could just sit in |
| 08:40 | 17 | the courtroom, and you could call them to the stand, and you |
| 08:40 | 18 | get to cross-examine them, and that's it.  It doesn't make |
| 08:40 | 19 | any sense, Your Honor. |
| 08:40 | 20 | THE COURT:  Sir, I have your position. |
| 08:40 | 21 | MR. AVENATTI:  Thank you. |
| 08:40 | 22 | THE COURT:  I'm denying the motion.  I'm following |
| 08:40 | 23 | Robertson, which I believe is directly on point. |
| 08:41 | 24 | MR. AVENATTI:  Thank you. |
| 08:41 | 25 | THE COURT:  The government made a filing at Docket |

08:41  1   690 with regard to communications between the government and

08:41  2   Mr. Armenta.  Three documents were produced, and both appear

08:41  3   to summarize the substance of their testimony.  The

08:41  4   government identified two additional documents which it

08:41  5   attaches to the filing at 691.

08:41  6          I don't believe they have anything, certainly the

08:41  7   last one.  Exhibit 5 doesn't have anything, and Exhibit 4

08:41  8   notes that certain prefixes to the transfer numbers were

08:41  9   missing and incomplete.  To me, that's of very little

08:42  10  substance.

08:42  11          Mr. Avenatti.

08:42  12          MR. AVENATTI:  Well, I respectfully disagree, Your

08:42  13  Honor.  We will file something over the weekend relating to

08:42  14  the seriousness of this issue, because it is a very serious

08:42  15  issue, and it brings --

08:42  16          THE COURT:  Sir, am I incorrect that the only

08:42  17  thing of substance is the correction of the wire number in

08:42  18  Exhibit No. 4?

08:42  19          MR. AVENATTI:  Yes, sir.

08:42  20          THE COURT:  Okay.

08:42  21          MR. AVENATTI:  And I'll put it in writing and

08:42  22  explain why.

08:42  23          THE COURT:  Okay.

08:42  24          MR. AVENATTI:  Thank you.

08:42  25          I will also note, Your Honor, but for my question

08:42  1  we would have never received any of the e-mails.

08:42  2        THE COURT:  Sir, you received them; didn't you?

08:42  3        MR. AVENATTI:  I'm talking about the e-mails, Your

08:42  4  Honor, not the interview memorandum.

08:43  5        THE COURT:  All right.

08:43  6        MR. AVENATTI:  Okay.  And it's not my job to ask

08:43  7  witnesses on the stand as to whether Jencks materials exist

08:43  8  so that I can then bring it the attention of Your Honor.

08:43  9        THE COURT:  It may not be your job, but it's

08:43  10  certainly your prerogative if you have an ongoing suspicion

08:43  11  that the government has not complied with its Jencks

08:43  12  obligation with respect to virtually every single witness's

08:43  13  testimony.  So it's not your obligation, but it's certainly

08:43  14  your prerogative, and you're exercising it.

08:43  15        MR. AVENATTI:  Understood, Your Honor.  But,

08:43  16  again, it's not something that I should be required to do.

08:43  17  It is not my job to prove that the government is not

08:43  18  complying with their obligation.  I will submit the filing

08:43  19  and explain why this raises a whole host of issues because

08:43  20  it demonstrates, Your Honor, that they are not doing what

08:43  21  they are supposed to do relating to looking for Jencks.  I

08:43  22  will explain it in my brief.

08:43  23        THE COURT:  Very good.

08:43  24        I think we are waiting for the government's

08:43  25  opposition on Bahamonde.  I think we agree with regard to

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 08:44 | 1 | Ms. Gardner's reviewing of the tweets.  I think that's the |
| 08:44 | 2 | only outstanding matter we have to address. |
| 08:44 | 3 | MR. AVENATTI:  Your Honor, do you need any further |
| 08:44 | 4 | submission relating to the tweets from us? |
| 08:44 | 5 | THE COURT:  No, I don't think so. |
| 08:44 | 6 | MR. AVENATTI:  Okay. |
| 08:44 | 7 | THE COURT:  I mean, the major thing that you put |
| 08:44 | 8 | before the Court with that filing is Exhibit B, which may be |
| 08:44 | 9 | a more wholesome record of what was out there.  I think |
| 08:44 | 10 | there is still a question in my mind of how many of those |
| 08:44 | 11 | did Ms. Gardner actually see.  But I appreciate the |
| 08:44 | 12 | expansion of the record as to what was out there. |
| 08:44 | 13 | MR. AVENATTI:  Fair enough. |
| 08:44 | 14 | THE COURT:  Okay. |
| 08:44 | 15 | MR. SAGEL:  For clarity's sake on a couple of |
| 08:44 | 16 | matters from I believe it was yesterday morning, I think |
| 08:45 | 17 | Your Honor had asked for a proffer from the defendant |
| 08:45 | 18 | relating to three individuals, the two SDNY agents and |
| 08:45 | 19 | Mr. Varani. |
| 08:45 | 20 | THE COURT:  He made the proffer for Mr. Varani |
| 08:45 | 21 | before we resumed after lunch yesterday. |
| 08:45 | 22 | MR. SAGEL:  And I didn't think if it was just |
| 08:45 | 23 | Mr. Varani. |
| 08:45 | 24 | THE COURT:  I thought I indicated that. |
| 08:45 | 25 | MR. SAGEL:  So where do we stand on the other two |

| | | |
|---|---|---|
| 08:45 | 1 | individuals?  Obviously they're putting their jobs on hold |
| 08:45 | 2 | pending being called and traveling cross country.  What's |
| 08:45 | 3 | the time frame for him to submit the proffer on the other |
| 08:45 | 4 | two?  Obviously our request would be as soon as possible. |
| 08:45 | 5 | MR. AVENATTI:  Your Honor, what I would like to do |
| 08:45 | 6 | in the interest of time is come back at 1:15 today and |
| 08:45 | 7 | provide an oral proffer. |
| 08:45 | 8 | THE COURT:  I can't do that.  I need the full |
| 08:45 | 9 | lunch hour today. |
| 08:46 | 10 | MR. AVENATTI:  I'm sorry? |
| 08:46 | 11 | THE COURT:  I need the full lunch hour today.  How |
| 08:46 | 12 | about the end of the day? |
| 08:46 | 13 | MR. AVENATTI:  Can I do the proffer at the end of |
| 08:46 | 14 | the day? |
| 08:46 | 15 | THE COURT:  Sure. |
| 08:46 | 16 | MR. AVENATTI:  Okay.  Thank you. |
| 08:46 | 17 | MR. SAGEL:  Not to put a further burden on the |
| 08:46 | 18 | Court, but is there a possibility or an opportunity for us |
| 08:46 | 19 | to know subsequent to that some kind of a decision so that |
| 08:46 | 20 | we can let the agents know prior to the weekend whether or |
| 08:46 | 21 | not they are potentially flying out here on Monday? |
| 08:46 | 22 | THE COURT:  I will have Ms. Bredahl contact you. |
| 08:46 | 23 | MR. SAGEL:  Thank you, Your Honor. |
| 08:46 | 24 | Generally speaking, all we need to know is to tell |
| 08:46 | 25 | them to be here or not to be here. |

08:46    1           THE COURT:  Right.

08:46    2           MR. SAGEL:  With regards to Special Agent Galicia,

08:46    3 she is in a slightly different category, what would be

08:46    4 closer to the Harper category and Penland, just whether or

08:46    5 not there is admissible evidence, because we understand Your

08:47    6 Honor's ruling from the other day.

08:47    7           THE COURT:  Okay.

08:47    8           MR. SAGEL:  Thank you, Your Honor.

08:47    9           THE COURT:  Mr. Avenatti.

08:47   10           MR. AVENATTI:  Your Honor, I had two issues.

08:47   11 Number one is, is Mr. Drum the government's last witness?

08:47   12           MR. WYMAN:  Yes, Your Honor.

08:47   13           MR. AVENATTI:  Number two, where is the Tabs data?

08:47   14 I just need a Bates stamp number.  I don't need to argue

08:47   15 this point.  I just want the government to provide the Bates

08:47   16 stamp number for the Tabs data which they have had for

08:47   17 two-and-a-half years.

08:47   18           MR. SAGEL:  Would you like me to respond to that,

08:47   19 Your Honor?

08:47   20           THE COURT:  Please.

08:47   21           MR. SAGEL:  Defendant, as he wants to do, starts

08:47   22 talking about how critical items are and how important they

08:47   23 are and what the government does and doesn't have.

08:48   24           THE COURT:  Well, the question is has the

08:48   25 government produced that data, or, more importantly, does

08:48    **1**    the government have that data?

08:48    **2**           MR. SAGEL:  I will start with the obvious.

08:48    **3**    Everything that is in the prosecution team's possession he

08:48    **4**    has.

08:48    **5**           THE COURT:  Does the government have the Tabs

08:48    **6**    data?

08:48    **7**           MR. SAGEL:  Other than what's attached to e-mails

08:48    **8**    and, for example, has come into evidence -- there are places

08:48    **9**    where we see it where it's attached to things.  I'm not

08:48   **10**    seeing anything where it's the database by itself.

08:48   **11**           So the answer is that what we have of it and what

08:48   **12**    Judy Regnier testified to like that e-mail for Johnson, the

08:48   **13**    e-mail for Barela, those are from their Tabs database.  We

08:48   **14**    don't have anything separate.  So anything that we have, we

08:48   **15**    have provided to him.

08:48   **16**           The one thing that I went back to look for between

08:48   **17**    the last time and --

08:48   **18**           THE COURT:  So you don't have a parallel to the --

08:48   **19**           MR. SAGEL:  QuickBooks?

08:48   **20**           THE COURT:  Right.

08:48   **21**           MR. SAGEL:  Correct.  And what I could say with

08:49   **22**    regards to the QuickBooks, there was a separate thing that

08:49   **23**    Judy Regnier at her house when they were doing the search

08:49   **24**    warrant showed them where on her computer the QuickBooks was

08:49   **25**    kept.  So that was taken off of her computer.

08:49   1        I don't believe that -- I don't know this because

08:49   2  I'm not the one doing any of it, and it's all on the taint

08:49   3  side, but I'm not sure the QuickBooks ever came off of the

08:49   4  server.  It came off of Judy Regnier's computer at her

08:49   5  house.  I at least know that's one place where it came from.

08:49   6        With regard to the Tabs, I don't know where -- if

08:49   7  it even exists and so forth.  So I don't know about the

08:49   8  extractions.  We don't have anything in our database

08:49   9  separate of Tabs and so forth.

08:49  10        What I did go back and look at is -- as Your Honor

08:49  11  will recall -- and I can give some of the docket numbers.

08:49  12  Starting at Docket 50 was the first time defendant asked for

08:49  13  access to the Eagan Avenatti servers and what he wanted.  At

08:49  14  no point did he mention Tabs, his need for Tabs, or anything

08:50  15  like that.

08:50  16        He had access as Your Honor knows.  He went

08:50  17  physically to the IRS CI offices where the servers were

08:50  18  re-set up for him and got upwards of 40,000 to 60,000 files

08:50  19  from the servers.  If they were critical, he, who knows of

08:50  20  his servers, could have gotten them at that point and had

08:50  21  access to his servers, which we did not.

08:50  22        Then after having multiple opportunities to get to

08:50  23  the servers, get files from the servers and get reports from

08:50  24  the servers, he doesn't contact us or the IRS or anybody for

08:50  25  any other files for I think it was about eight more months.

08:50  1          At that point, he asked for after he had already

08:50  2  had everything we had produced in February, which is both

08:50  3  the taint and the non-taint material, we provided everything

08:50  4  that we received I think it was in May.  And in July, maybe

08:50  5  June, June of 2020, he files his next motion of how he wants

08:51  6  to have access to the Eagan Avenatti servers after we had

08:51  7  already produced everything that we got through discovery.

08:51  8          Not only does he not mention Tabs at all, but in

08:51  9  our response, which was at 195, we attached the documents

08:51  10  saying here are the financials that we have and the costs

08:51  11  and expenses we have.  And we even attached the very e-mails

08:51  12  and documents, the Tabs related to Mr. Barela, related to

08:51  13  Mr. Johnson, QuickBooks files that related to them as well,

08:51  14  showing there are financial records in our production.

08:51  15  These are them.  What we have has been produced.

08:51  16          At no point did he say, no, there's Tabs.  There

08:51  17  is something else.  We even said in our filing if there is

08:51  18  something specific that he thinks he doesn't have, we can

08:51  19  address that.  He also has other options.  He could have

08:51  20  done other things himself.

08:52  21          THE COURT:  He could have subpoenaed the trustee,

08:52  22  the records of the trustee.

08:52  23          MR. SAGEL:  He could even do that right now under

08:52  24  a 17(c) subpoena that's not a fishing expedition, which is a

08:52  25  specific subpoena for specific documents if they're

08:52  **1**  critical.  There are many things he can do.  And while he

08:52  **2**  can say time and time the government hasn't done it, at no

08:52  **3**  point can he show why we have this Tabs data.

08:52  **4**      I'd also point out that it doesn't even make

08:52  **5**  sense, because according to him, he took out his costs and

08:52  **6**  fees and expenses from Mr. Johnson based on exactly the Tabs

08:52  **7**  data that was there even if they weren't correct.  And then

08:52  **8**  he tells Mr. Johnson three years later, four years later, he

08:52  **9**  still owes him 1.9.  So it's not like there's 2 million less

08:52  **10**  of costs and expenses coming out of that.  It's the same

08:52  **11**  thing with Barela.  For two of the clients, there aren't

08:52  **12**  even any costs or expenses that he has.

08:53  **13**      Anything and everything we have, we have produced.

08:53  **14**  If there was something else, he has had more than sufficient

08:53  **15**  opportunities to get them.

08:53  **16**      MR. AVENATTI:  Your Honor, there has been a number

08:53  **17**  of representations just made to this Court that are not

08:53  **18**  accurate, and I'm going to explain why.

08:53  **19**      The government executed a search warrant relating

08:53  **20**  to the law firm servers.  They obtained images of the law

08:53  **21**  firm servers.  I believe included within those law firm

08:53  **22**  servers is the Tabs database.  There was never any privilege

08:53  **23**  issue relating to the Tabs database.  The government had an

08:54  **24**  obligation under Rule 16, Brady and Giglio, to produce the

08:54  **25**  Tabs database.  It was never produced.

08:54     1       We have consistently in this case filed motions

08:54     2 requesting all of the cost and expense data for each of the

08:54     3 clients. The government had an obligation to produce it.

08:54     4 They didn't do so.

08:54     5       Ms. Regnier testified, Your Honor, under oath that

08:54     6 she made the government aware of the Tabs data on multiple

08:54     7 occasions. For whatever reason, they still didn't produce

08:54     8 it to us even though they were aware of the Tabs data. They

08:54     9 had an obligation to produce.

08:54    10       Now, let's talk about my access to the servers,

08:54    11 because what has just been represented to Your Honor is just

08:54    12 not accurate. The government did not make the entirety of

08:54    13 the servers available and say, Mr. Avenatti and Mr. Steward,

08:54    14 whatever you want from the servers you can just come in and

08:55    15 get. That's not what happened, and the record is clear in

08:55    16 that regard.

08:55    17       Here is what happened. The IRS made the e-mails

08:55    18 available to me and Mr. Steward, the e-mails from the

08:55    19 servers and documents from client files like pleadings and

08:55    20 correspondence and things of that nature. That's the only

08:55    21 thing that the government made available to me and

08:55    22 Mr. Steward.

08:55    23       The government then fought our ability to have

08:55    24 additional access to other files on the servers. And, Your

08:55    25 Honor, I'm going to make a filing on this just so we have a

| | | |
|---|---|---|
| 08:55 | 1 | clear record.  Mr. Sagel represented to Your Honor |
| 08:55 | 2 | repeatedly in connection with the server issue -- you asked |
| 08:55 | 3 | actually I think it was on June 6th -- I may be wrong -- |
| 08:55 | 4 | June 6th of 2020 or thereabouts -- I looked at the |
| 08:55 | 5 | transcript last night.  You specifically asked Mr. Sagel or |
| 08:55 | 6 | it may have been Mr. Andre:  Has all of the Brady and Giglio |
| 08:56 | 7 | information from the servers been produced?  That's what you |
| 08:56 | 8 | asked.  You were told yes. |
| 08:56 | 9 | THE COURT:  I was told yes on multiple occasions. |
| 08:56 | 10 | MR. AVENATTI:  Correct.  And, Your Honor, that was |
| 08:56 | 11 | not true.  They knew about the Tabs data.  The database is |
| 08:56 | 12 | on the servers.  They didn't produce the database of the |
| 08:56 | 13 | costs.  It's been a consistent defense in this case that I |
| 08:56 | 14 | was entitled to deduct fees and costs and that the wire |
| 08:56 | 15 | counts -- I can't be convicted criminally if I am accused of |
| 08:56 | 16 | taking money that I was otherwise entitled to because it |
| 08:56 | 17 | constituted fees and costs.  That has been a consistent |
| 08:56 | 18 | defense, Your Honor. |
| 08:56 | 19 | We have repeatedly in filings before this Court, |
| 08:56 | 20 | repeatedly we have said we don't have all the cost and fee |
| 08:56 | 21 | information. |
| 08:56 | 22 | THE COURT:  Sir, I have your position.  It's about |
| 08:56 | 23 | time to bring the jury in. |
| 08:56 | 24 | MR. AVENATTI:  I would like to have the |
| 08:57 | 25 | opportunity, because this is an important issue, to file |

08:57   1   something over the weekend with the Court.

08:57   2           THE COURT:  You are welcome to do that.

08:57   3           MR. AVENATTI:  Thank you.  So I would like the

08:57   4   Court to reserve judgment at this point on this issue, but I

08:57   5   think it is now established that there is no Bates stamp

08:57   6   number for the Tabs database because we were never provided

08:57   7   the Tabs database.

08:57   8           THE COURT:  And the government represents that it

08:57   9   does not have it in its inventory of documents that the

08:57   10  prosecution team has.

08:57   11          MR. AVENATTI:  Well, Your Honor, we can have a

08:57   12  debate as to when they say we don't have it.  I don't know

08:57   13  what "we" is.  I don't know if we're talking --

08:57   14          THE COURT:  "We" is the prosecution team as I

08:57   15  understand Mr. Sagel's statement.

08:57   16          MR. AVENATTI:  But that's not the standard under

08:57   17  Brady and Giglio.  It's not.  It's not limited to the three

08:57   18  gentlemen sitting at the table.  We know that.  It's not

08:57   19  limited to those individuals.  It's just not.

08:57   20          THE COURT:  Very good, sir.

08:57   21          MR. AVENATTI:  Thank you.

08:57   22          THE COURT:  Okay.  We will be in recess briefly.

08:58   23              (Recess taken at 8:58 a.m.;

08:58   24               proceedings resumed at 9:05 a.m.)

08:58   25          (Jury present)

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:05 | 1 | THE CLERK:  Item 1, SACR-19-00061-JVS, United |
| 09:05 | 2 | States of America versus Michael John Avenatti. |
| 09:05 | 3 | MR. WYMAN:  Good morning, Your Honor.  Alex Wyman |
| 09:05 | 4 | and Brett Sagel on behalf of the United States.  And with us |
| 09:05 | 5 | at counsel table is Special Remoun Karlous. |
| 09:05 | 6 | THE COURT:  Good morning. |
| 09:06 | 7 | MR. AVENATTI:  Good morning, Your Honor.  Michael |
| 09:06 | 8 | Avenatti, present with Mr. Dean Steward and |
| 09:06 | 9 | Ms. Cummings-Cefali.  Ms. Hernandez will be joining us |
| 09:06 | 10 | probably after the morning break. |
| 09:06 | 11 | THE COURT:  Very good. |
| 09:06 | 12 | Good morning, ladies and gentlemen. |
| 09:06 | 13 | THE JURY:  Good morning. |
| 09:06 | 14 | THE COURT:  Mr. Wyman. |
| 09:06 | 15 | JOHN DRUM, GOVERNMENT'S WITNESS, PREVIOUSLY SWORN |
| 09:06 | 16 | DIRECT EXAMINATION (Continued) |
| 09:06 | 17 | BY MR. WYMAN: |
| 09:06 | 18 | Q    Good morning, Mr. Drum. |
| 09:06 | 19 | A    Good morning. |
| 09:06 | 20 | Q    If you could please pull up Exhibit 48. |
| 09:06 | 21 | Do you recall yesterday afternoon, Mr. Drum, we |
| 09:06 | 22 | were discussing Exhibit 48, the spreadsheet that Judy |
| 09:06 | 23 | Regnier e-mailed to defendant? |
| 09:06 | 24 | A    Yes. |
| 09:06 | 25 | Q    And at the end of the calculations there, there was |

09:06  1    that total amount for costs and expenses related to

09:06  2    Mr. Johnson's case, which is now on the screen, for about

09:06  3    $736,000.  Do you remember that?

09:06  4    A    Yes.

09:06  5    Q    And I believe your testimony was that this number was

09:06  6    higher than your figure because this included some double

09:06  7    counting?

09:06  8    A    Correct.

09:07  9    Q    Generally speaking, what records did you rely on in

09:07  10   determining whether the payments reflected in this

09:07  11   spreadsheet were actually paid?

09:07  12   A    I relied on the case-related spreadsheet, the

09:07  13   QuickBooks records, as well as the settlement agreement with

09:07  14   the County of L.A.

09:07  15   Q    Did you also review the underlying bank records?

09:07  16   A    Yes.

09:07  17        MR. AVENATTI:  Leading.

09:07  18        THE COURT:  Overruled.

09:07  19   BY MR. WYMAN:

09:07  20   Q    If we could please go back to Exhibit 420 now.  Once

09:07  21   you did your calculation using QuickBooks, that spreadsheet,

09:07  22   and the banks records, what was the total amount that you

09:07  23   calculated for case-related expenses for Mr. Johnson's case?

09:07  24   A    $543,062.

09:07  25   Q    Does that include just Eagan Avenatti's costs and

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 09:08 | 1 | expenses? |
| 09:08 | 2 | A    Yes. |
| 09:08 | 3 | Q    So if there was a co-counsel on the matter who incurred |
| 09:08 | 4 | approximately $2,776 in expenses, what would the total |
| 09:08 | 5 | amount of Johnson-related expenses be approximately? |
| 09:08 | 6 | A    Approximately 545,700. |
| 09:08 | 7 | Q    The row right below that, what does that say? |
| 09:08 | 8 | A    Total due to client as of January 29th, 2015. |
| 09:08 | 9 | Q    And what is the number listed there? |
| 09:08 | 10 | A    $1,856,938. |
| 09:08 | 11 | Q    How did you calculate that figure? |
| 09:08 | 12 | A    That is the $4 million total settlement amount paid on |
| 09:08 | 13 | 1/29/15, minus the $1.6 million in legal fees, minus the |
| 09:08 | 14 | $543,000 for case-related expenses. |
| 09:08 | 15 | Q    And so if you factor in an additional $2,776 in |
| 09:08 | 16 | co-counsel expenses, would that reduce the amount in this |
| 09:09 | 17 | row by a corresponding amount? |
| 09:09 | 18 | A    Yes, it would. |
| 09:09 | 19 | Q    And then lastly, what does the last line on this chart |
| 09:09 | 20 | reflect? |
| 09:09 | 21 | A    It reflects that none of the amounts that were |
| 09:09 | 22 | deposited into the client trust account were paid to |
| 09:09 | 23 | Geoffrey Johnson. |
| 09:09 | 24 | Q    Could you please go now to Exhibit 421.  What is the |
| 09:09 | 25 | title of this chart? |

09:09  1   A    Tracing of Geoffrey Johnson's Settlement Funds.

09:09  2   Q    Now, in the upper left it looks like there is a legend

09:09  3   explaining some sort of color-coding system; is that right?

09:09  4   A    That's right.  The blue bubbles represent independent

09:09  5   accounts.  The yellow bubbles are client trust accounts.

09:09  6   The orange bubbles are other accounts that are associated

09:10  7   with Mr. Avenatti, and the green bubbles represent the

09:10  8   clients.

09:10  9   Q    And it looks like some of the orange and yellow bubbles

09:10  10  have abbreviations -- EA, A&A, and GB.  What do those

09:10  11  abbreviations stand for?

09:10  12  A    Those stand for Eagan Avenatti, Avenatti & Associates,

09:10  13  and Global Baristas.

09:10  14  Q    For all of the bubbles that are either orange or

09:10  15  yellow, was the defendant a signatory to those accounts?

09:10  16  A    Yes.

09:10  17  Q    Starting with the bubble on the left-hand side, the

09:10  18  blue one that says County of Los Angeles, what does that

09:10  19  first arrow going to the right show?

09:10  20  A    That represents the payment that was deposited into EA

09:10  21  8541, the client trust account.

09:10  22  Q    It looks like there is then three arrows going from the

09:11  23  EA 8541 bubble -- well, let me ask this first.  The EA 8541

09:11  24  bubble there, does that reflect the account that the

09:11  25  $4 million settlement check was deposited into?

09:11  1  A    Yes.

09:11  2  Q    Okay.  Now let's go to the three arrows going away from

09:11  3  that bubble, starting with the one at the bottom.  What does

09:11  4  that show?

09:11  5  A    At the bottom it shows a gray box that were

09:11  6  miscellaneous transfers, and that represents that on -- that

09:11  7  after a certain time the amount in EA 8541 were commingled

09:11  8  with another large deposit that cannot be directly

09:11  9  attributable to the Johnson settlement payment.

09:11  10  Q    Okay.  And then going -- next, the arrow going to the

09:11  11  right, what does that show?

09:11  12  A    That shows $3.1 million was withdrawn from EA 8541 and

09:12  13  deposited into EA 2851 in approximately two months between

09:12  14  January 30th and March 30th, 2015.

09:12  15  Q    And then lastly what does the arrow going up to the

09:12  16  green bubbles show?

09:12  17  A    That shows that no withdrawals were made from EA 8541

09:12  18  to Geoffrey Johnson that can be associated with the

09:12  19  settlement payment.

09:12  20  Q    So next to the bubble after the $3.1 million to EA

09:12  21  2851, it looks like there are more miscellaneous transfers

09:12  22  going down; is that correct?

09:12  23  A    That's correct.

09:12  24  Q    And then to the right, what does that arrow show?

09:12  25  A    That shows that 1.7 million was withdrawn from EA 2851

09:12   1   and deposited into A&A 0661 in approximately the same two

09:12   2   months.

09:12   3   Q       And you said A&A stands for that?

09:12   4   A       Avenatti & Associates.

09:12   5   Q       Have you reviewed the bank records associated with the

09:13   6   Avenatti & Associates account ending in 0661?

09:13   7   A       Yes.

09:13   8   Q       Generally speaking, what kind of expenses did you see

09:13   9   charged to that account?

09:13   10  A       Mixed, business-related and personal expenses.

09:13   11  Q       Then it looks like about $50,000 -- if you go to the

09:13   12  right, the very last arrow to the right -- it looks like

09:13   13  $50,000 was transferred to the Avenatti personal account; is

09:13   14  that right?

09:13   15  A       Yes.

09:13   16  Q       And then what does the last transfer going up show?

09:13   17  A       $250,000 being deposited into a Global Baristas

09:13   18  account, GB 9962.

09:13   19  Q       If you could please go to Exhibit 422 now.  What is the

09:13   20  title of this charge?

09:13   21  A       Activities of EA Trust Account 8541 after receiving

09:13   22  Geoffrey Johnson's Settlement Payment.

09:14   23  Q       And generally speaking, what does this chart show?

09:14   24          MR. AVENATTI:  Objection, Your Honor, 401, 403.

09:14   25          THE COURT:  Overruled.

| | | |
|---|---|---|
| 09:14 | 1 | THE WITNESS: Generally speaking, this shows that |
| 09:14 | 2 | this account had a beginning balance of zero and then |
| 09:14 | 3 | received a deposit of $4 million on January 29th, 2015. And |
| 09:14 | 4 | then there is a series of withdraws. All of those can be |
| 09:14 | 5 | associated with that $4 million deposit. And then on |
| 09:14 | 6 | March 31st, 2015, this account received another deposit of |
| 09:14 | 7 | approximately $3 million, and then there are more withdraws. |
| 09:14 | 8 | BY MR. WYMAN: |
| 09:14 | 9 | Q    Let me stop you there. If you could turn briefly to |
| 09:14 | 10 | the end of the exhibit, page 3, the very last row. |
| 09:14 | 11 | MR. WYMAN: If you could pull up the bottom |
| 09:14 | 12 | portion. It looks like there is a dash mark at the end |
| 09:14 | 13 | there. |
| 09:14 | 14 | BY MR. WYMAN: |
| 09:14 | 15 | Q    What does that mean? |
| 09:14 | 16 | A    That means -- |
| 09:14 | 17 | MR. AVENATTI: Same objection, Your Honor. Could |
| 09:14 | 18 | I have a standing? |
| 09:14 | 19 | THE COURT: No. |
| 09:14 | 20 | MR. AVENATTI: Okay. |
| 09:14 | 21 | THE COURT: Overruled. |
| 09:15 | 22 | THE WITNESS: The dash mark indicates that as of |
| 09:15 | 23 | July 6th, 2015, this account had a balance of zero. |
| 09:15 | 24 | BY MR. WYMAN: |
| 09:15 | 25 | Q    Okay. |

09:15  1          MR. WYMAN:  Now if we could please go back to
09:15  2   page 1, and if we could blow up the first handful of rows
09:15  3   going to -- that's fine.
09:15  4   BY MR. WYMAN:
09:15  5   Q    On January 29th -- well, let me ask first.  It looks
09:15  6   like there is black text in the second column under amount
09:15  7   paid and then some red text in parentheses.  What does the
09:15  8   red text mean?
09:15  9   A    The red text represents withdraws.
09:15  10  Q    And what is the black text?
09:15  11  A    Deposits.
09:15  12  Q    Deposits you said?
09:15  13  A    Yes.
09:15  14  Q    Okay.  So on January 29th, at the top I see, I guess,
09:15  15  the deposit for $4 million.  Then it looks like there are
09:15  16  several withdrawals in red.  Do you see that?
09:15  17  A    Yes.
09:16  18  Q    In the row right below the $4 million deposit, what is
09:16  19  the amount of the withdrawal?
09:16  20  A    1.6 million.
09:16  21  Q    And where did that amount go?
09:16  22  A    To account EA 2851.
09:16  23  Q    Based on your review of the banks reports, is the EA
09:16  24  2851 account an attorney/client trust account?
09:16  25  A    No, it's not.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:16    1    Q    And $1.6 million, is that the same amount that you

09:16    2    calculated Eagan Avenatti would be entitled to in attorney

09:16    3    fees under the settlement agreement with Mr. Johnson?

09:16    4    A    Under the fee agreement, yes.

09:16    5    Q    Thank you.  That's what I meant to say.

09:16    6           All right.  Right below the 1.6 million, it looks

09:16    7    like there is another withdrawal to that same account for

09:16    8    approximately $736,000.  Do you see that?

09:16    9    A    Yes.

09:16   10    Q    And without going back to Exhibit 48, is this the same

09:16   11    amount rounded to the nearest dollar as the total amount of

09:17   12    costs and expenses in that spreadsheet in Exhibit 48?

09:17   13    A    Yes.

09:17   14    Q    And then right below that, what is the amount of the

09:17   15    next withdrawal?

09:17   16    A    $2,776.

09:17   17    Q    And the date?

09:17   18    A    February 4th, 2015.

09:17   19    Q    Okay.  Would you please pull up what is already in

09:17   20    evidence as Exhibit 50 -- at the top, please.

09:17   21    A    (Witness complies.)

09:17   22    Q    Do you see that this is an e-mail from Judy Regnier on

09:17   23    that same date, February 4th, to the defendant?

09:17   24    A    Yes.

09:17   25    Q    And what is the subject of this e-mail?

09:17    **1**    A    Forward Johnson.

09:17    **2**    Q    And the name of the attachment?

09:17    **3**    A    Johnson costs advanced.

09:17    **4**    Q    And what is the content of the message right there?

09:17    **5**    A    It just says, "FYI, total is $2,776."

09:18    **6**    MR. WYMAN:  And if we could scroll down a little

09:18    **7**    bit.

09:18    **8**    BY MR. WYMAN:

09:18    **9**    Q    Do you see that this is an e-mail that Ms. Regnier

09:18    **10**    received from someone named Mary Welsh with a copy to

09:18    **11**    Patrick McNicholas?

09:18    **12**    A    Yes.  I see that.

09:18    **13**    MR. WYMAN:  Turning now, please, to Exhibit 422,

09:18    **14**    page 1.  Can we blow up the top few lines again.

09:18    **15**    BY MR. WYMAN:

09:18    **16**    Q    The transfer below the $736,000, $2,776, is that the

09:18    **17**    same amount rounded to the nearest dollar that we saw in

09:18    **18**    that previous e-mail?

09:18    **19**    A    Yes.

09:18    **20**    MR. WYMAN:  Okay.  If we could please blow up the

09:18    **21**    following rows now.

09:18    **22**    BY MR. WYMAN:

09:18    **23**    Q    After these transfers for 1.6 million, the amount of

09:19    **24**    attorneys' fees, and then the two amounts of costs from

09:19    **25**    those dates, it looks like there is a break of about a month

| | | |
|---|---|---|
| 09:19 | 1 | in activity; is that right? |
| 09:19 | 2 | A    That's right. |
| 09:19 | 3 | Q    And on the right-hand side, what is the balance in the |
| 09:19 | 4 | account during that month? |
| 09:19 | 5 | A    Approximately 1.66 million. |
| 09:19 | 6 | Q    So that amount just sits in the account for about a |
| 09:19 | 7 | month? |
| 09:19 | 8 | A    Yes. |
| 09:19 | 9 | Q    Then below that, starting on March 2nd, 2015, what does |
| 09:19 | 10 | the account show? |
| 09:19 | 11 | A    It shows a series of withdraws that are going to |
| 09:19 | 12 | EA 2851. |
| 09:19 | 13 | Q    Now, I'm not going to go through the entire chart, but |
| 09:19 | 14 | between January 29th when this chart begins and July 6th |
| 09:19 | 15 | when the account is zeroed out at the end, are there any |
| 09:20 | 16 | transfers to Mr. Johnson in this chart? |
| 09:20 | 17 | A    No, there are not. |
| 09:20 | 18 | MR. WYMAN:  If we could go to Exhibit 423. |
| 09:20 | 19 | BY MR. WYMAN: |
| 09:20 | 20 | Q    What is the title of this chart? |
| 09:20 | 21 | A    Activities of EA account 2851 after receiving portions |
| 09:20 | 22 | of Geoffrey Johnson's settlement payment from EA trust |
| 09:20 | 23 | account 8541. |
| 09:20 | 24 | Q    And what is the date that this chart begins on? |
| 09:20 | 25 | A    January 30th, 2015. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:20   1   Q    And it looks like the beginning balance there on the
09:20   2   screen is a little over 25,000?
09:20   3   A    That's right.
09:20   4   Q    And then right below that, what is reflected?
09:20   5        MR. AVENATTI:  Objection, Your Honor, 401, 403.
09:20   6        THE COURT:  Overruled.
09:20   7        THE WITNESS:  The second line reflects a deposit
09:20   8   of 1.6 million coming from EA 8541.
09:20   9   BY MR. WYMAN:
09:20   10  Q    And it looks like this chart spans seven pages?
09:21   11  A    Yes.
09:21   12  Q    And then at the end, if we can go to page 7 at the end,
09:21   13  what is the date of the last entry on this chart?
09:21   14       MR. AVENATTI:  Same objections, Your Honor.
09:21   15       THE COURT:  Overruled.
09:21   16       THE WITNESS:  March 30th, 2015.
09:21   17  BY MR. WYMAN:
09:21   18  Q    And what is the balance of the account on that date?
09:21   19       MR. AVENATTI:  Same objection, Your Honor.
09:21   20       THE COURT:  Overruled.
09:21   21       THE WITNESS:  Just over $1,000.
09:21   22  BY MR. WYMAN:
09:21   23  Q    Now, again, I'm not going to go through all of the
09:21   24  transfers in this chart, but it looks like -- if we could
09:21   25  pull up page 3, maybe the bottom third of the page -- it

09:21　1　looks like there are some payments in here to Sunrise of

09:22　2　West Hills; is that right?

09:22　3　A　　Yes.

09:22　4　Q　　And for one of the ones on the screen, generally how

09:22　5　much are those payments for?

09:22　6　A　　About $5,500.

09:22　7　Q　　In this seven-page chart of account activities, are

09:22　8　there any payments to Geoffrey Johnson directly?

09:22　9　A　　No.

09:22　10　　　　MR. WYMAN:  If we could please go to Exhibit 424

09:22　11　now.

09:22　12　BY MR. WYMAN:

09:22　13　Q　　What is the title of this chart?

09:22　14　A　　Activities of A&A account 0661 after receiving portions

09:22　15　of Geoffrey Johnson's settlement payment from EA account

09:22　16　2851.

09:22　17　Q　　This chart also appears to span from January 30th to

09:22　18　March 30th, 2015; is that right?

09:23　19　A　　That's right.

09:23　20　　　　MR. WYMAN:  If we could go to the last row on

09:23　21　page 3.

09:23　22　BY MR. WYMAN:

09:23　23　Q　　What is the amount -- what is the account balance as of

09:23　24　March 30th, 2015?

09:23　25　　　　MR. AVENATTI:  Objection, Your Honor, 401, 403.

09:23   1           THE COURT:  Overruled.

09:23   2           THE WITNESS:  The balance as of March 30th, 2015,

09:23   3   is $958.

09:23   4   BY MR. WYMAN:

09:23   5   Q    Are there any payments to Geoffrey Johnson reflected in

09:23   6   this chart?

09:23   7   A    No.

09:23   8   Q    Based on your review of the bank records associated

09:23   9   with the defendant, are you aware that the defendant sent

09:23  10   periodic payments to Geoffrey Johnson beginning in

09:23  11   approximately July 2015?

09:23  12   A    Yes.

09:23  13   Q    Would you please take a look at Exhibit 425.

09:23  14           MR. WYMAN:  If we could blow up the content of the

09:23  15   chart, please.

09:24  16   BY MR. WYMAN:

09:24  17   Q    The top left, is that that same legend with the color

09:24  18   coding?

09:24  19   A    That's correct.

09:24  20   Q    And what does this chart show?

09:24  21   A    This chart shows a graphic depiction of the payments

09:24  22   that were made to Geoffrey Johnson.  On the right-hand side

09:24  23   you have a green bubble showing Geoffrey Johnson, and there

09:24  24   are six arrows that point at that green bubble.  That

09:24  25   represents that Geoffrey Johnson received payments from six

09:24   1   different accounts.

09:24   2          For some of those payments I was able to trace the

09:24   3   source of funds back further, and I've depicted some of

09:24   4   those on the bubbles in the middle portion.  On the

09:24   5   left-hand side we have a blue bubble for the County of Los

09:24   6   Angeles and an arrow going to EA 8541.  That depicts the

09:24   7   $4 million deposit that we discussed earlier.  And the

09:24   8   vertical line represents that none of the money that was

09:25   9   deposited into EA 8541 was paid to Geoffrey Johnson.

09:25  10   Q    So does this chart purport to reflect all of the

09:25  11   individual payments sent to Mr. Johnson by the defendant?

09:25  12   A    No.  It only reflects the accounts from which Geoffrey

09:25  13   Johnson received payments.

09:25  14   Q    And you talked about the bubble on the left of that

09:25  15   dotted line there.  What is the fact that there is no arrow

09:25  16   going from the right, going to the right from the EA 8541

09:25  17   bubble signify?

09:25  18   A    That signifies that no payments made to Geoffrey

09:25  19   Johnson can be traced to the deposit for the Johnson

09:25  20   settlement, the $4 million deposit.

09:25  21   Q    Right below that there is a blue bubble titled

09:25  22   Personalized Beauty Discovery.  What does that represent?

09:26  23   A    That represents the Michelle Phan repurchase payment.

09:26  24   Q    And why is that included on this chart?

09:26  25   A    Because payment to Geoffrey Johnson can be traced to

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:26    1    the Michelle Phan repurchase amount.

09:26    2    Q    Apart from determining that these accounts listed on

09:26    3    this chart was the source of payments to Mr. Johnson, did

09:26    4    you conduct further analysis into the source of the payments

09:26    5    to Mr. Johnson?

09:26    6    A    Yes.

09:26    7    Q    Let's look at a few short examples.  Can you please

09:26    8    turn to Exhibit 426.  What is the title of this chart?

09:26    9    A    GB account funds used to make a payment to Geoffrey

09:26    10   Johnson on 4/7/16.

09:26    11   Q    And what does this chart depict, starting from the

09:26    12   left?

09:26    13   A    So this depicts one payment that was made to Geoffrey

09:27    14   Johnson on that date, April 7, 2016.  That payment came from

09:27    15   accounts EA 2851, and I can trace the source of that payment

09:27    16   to a GB source.  So on the left you see that the account

09:27    17   2851 had a beginning balance on the day before the payment

09:27    18   to Geoffrey Johnson of negative $5,000.  On that same day it

09:27    19   received a transfer from GB 2240 of $6,000, and then the

09:27    20   next day it withdrew $1,900 to pay Geoffrey Johnson.

09:27    21   Q    So based on this analysis, where did at least part of

09:27    22   the $1,900 to Mr. Johnson come from?

09:27    23   A    From GB 2240.

09:27    24        MR. WYMAN:  Let's look at Exhibit 427 now, please.

         25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:28    1    BY MR. WYMAN:

09:28    2    Q    What is the title of this chart?

09:28    3    A    GB account funds use to make a payment to Geoffrey

09:28    4    Johnson on January 5th, 2018.

09:28    5    Q    And what does this chart show?

09:28    6    A    This shows another payment made to Geoffrey Johnson for

09:28    7    $1,900, and I'm able to trace the source of that payment to

09:28    8    GB account.  So then starting on the left, this account had

09:28    9    a beginning balance of approximately $1,400 on January 5th,

09:28   10    2018.

09:28   11         On that same day it received two deposits from GB

09:28   12    accounts that totaled $17,600.  And then on that same day

09:28   13    $1,900 was withdrawn to pay Geoffrey Johnson.

09:28   14    Q    So same as the last one, where were you able to trace

09:28   15    that $1,900 back to?

09:29   16    A    At least a portion of the $1,900 was traceable to

09:29   17    Global Baristas accounts.

09:29   18         MR. WYMAN:  If we could go to Exhibit 428 now.

09:29   19    BY MR. WYMAN:

09:29   20    Q    What is the title of this chart?

09:29   21    A    GB account funds used to make a payment to Geoffery

09:29   22    Johnson on February 15th, 2018.

09:29   23    Q    And what does this chart reflect?

09:29   24    A    This reflects the payment to Geoffery Johnson for

09:29   25    $1,900 on February 15th, 2018.  And the source of that fund

09:29   1   is traceable to GB accounts.

09:29   2   Q    And if you wouldn't mind walking from the left to the

09:29   3   right.

09:29   4   A    So the account from which Geoffrey Johnson received the

09:29   5   payment, EA 4613, had a beginning balance of $1,761.  And

09:29   6   then over the next two days it received two transfers from

09:30   7   Global Baristas accounts that total approximately $26,000.

09:30   8   And then on February 15th, 2018, it withdrew $1,900 to pay

09:30   9   Geoffrey Johnson.

09:30   10  Q    And you said earlier that at least one of the payments

09:30   11  to Mr. Johnson was traceable to Ms. Phan's repurchase

09:30   12  amount; is that correct?

09:30   13  A    That's correct.

09:30   14  Q    Did you prepare a chart to reflect that tracing

09:30   15  analysis?

09:30   16  A    Yes.

09:30   17  Q    Would you please turn to Exhibit 429.  What is the

09:30   18  title of 429?

09:30   19  A    A portion of Michelle Phan's stock repurchase payment

09:30   20  transferred to EA 0313, and then this is a three-page

09:30   21  exhibit.

09:30   22  Q    Okay.  So starting with page 1, what does this chart

09:30   23  show?

09:30   24  A    So this shows that a $150,000 transfer to EA 0313 was

09:30   25  traceable to the Michelle Phan client trust account.  On the

09:31 1   left we have the balance of $8.3 million in CNB 4705, and

09:31 2   then on April 9th, 2018, a $150,000 deposit was made into

09:31 3   EA 0313.

09:31 4   Q     Then going to page 2, please?

09:31 5   A     So page 2 continues from page 1.  This shows that

09:31 6   account EA 0313 had a beginning balance of $2,000 and

09:31 7   received a transfer from CNB 4705 -- that's the Michelle

09:31 8   Phan client trust account -- of $150,000.  And then on that

09:31 9   same day, that account made a transfer to EA 4613 of

09:31 10  $32,000.

09:31 11  Q     And then the last page, please?

09:32 12  A     The last page continues from the prior page.  It shows

09:32 13  that account EA 4613 had a beginning balance of $224 before

09:32 14  receiving the transfers from EA 0313.  And then on that same

09:32 15  day it received a transfer and made a payment to Geoffrey

09:32 16  Johnson for $1,900.

09:32 17  Q     And so based on this analysis, that last payment for

09:32 18  $1,900, what is that traceable to?

09:32 19  A     To Michelle Phan's client trust account.

09:32 20  Q     Based on your analysis of these bank records in

09:32 21  connection with Mr. Johnson's settlement money, how much of

09:32 22  that $4 million settlement payment is traceable to

09:32 23  Mr. Johnson?

09:32 24  A     None of the $4 million settlement was transferred to

09:32 25  Mr. Johnson.

| | | |
|---|---|---|
| 09:32 | 1 | Q    Okay.  Let's turn now to Exhibits 430 through 438.  If |
| 09:33 | 2 | you could please let us know, which clients do those charts |
| 09:33 | 3 | relate to? |
| 09:33 | 4 | A    These relate to Alexis Gardner. |
| 09:33 | 5 | Q    Okay.  Let's start with Exhibit 430.  What is the title |
| 09:33 | 6 | of this chart? |
| 09:33 | 7 | A    Total amount due to Alexis Gardner as of January 25th, |
| 09:33 | 8 | 2017, and November 2020. |
| 09:33 | 9 | Q    Starting with the first row, what does that row |
| 09:33 | 10 | reflect? |
| 09:33 | 11 | A    That reflects a similar amount paid on January 25th, |
| 09:33 | 12 | 2017, for $2.75 million. |
| 09:33 | 13 | Q    Did you review bank records showing that the defendant |
| 09:33 | 14 | received the settlement amount on that date? |
| 09:33 | 15 | A    Yes. |
| 09:33 | 16 | Q    If you could please pull up what is already in evidence |
| 09:33 | 17 | as Exhibit 148, page 1. |
| 09:33 | 18 | A    (Witness complies.) |
| 09:33 | 19 | Q    And in the top left-hand corner, can you please let us |
| 09:33 | 20 | know what the name on the account is. |
| 09:34 | 21 | A    Eagan Avenatti, LLP, Attorney/Client Trust Account. |
| 09:34 | 22 | Q    And in the top right what are the last four digits of |
| 09:34 | 23 | the account number? |
| 09:34 | 24 | A    8671. |
| 09:34 | 25 | Q    If you could please go to the middle of the page now |

09:34 | 1 | under deposits and credits.  What is reflected there?
09:34 | 2 | A    That reflects a $2.75 million deposit from Hassan
09:34 | 3 | Whiteside on January 25th, 2017.
09:34 | 4 | Q    Okay.  Please go back to Exhibit 430 now.  The second
09:34 | 5 | row below the settlement amount paid, what does that say?
09:34 | 6 | A    That's your legal fees of $990,000.
09:34 | 7 | Q    And where did that figure come from?
09:34 | 8 | A    That came from the fee agreement, which was 33 percent
09:35 | 9 | of the settlement amount, the total settlement amount of the
09:35 | 10 | 2.75 plus the amount due in November 2020 of $250,000.
09:35 | 11 | Q    So that's 33 percent of the total of 3 million?
09:35 | 12 | A    Yes.
09:35 | 13 | Q    Then the next row says less case-related expenses.
09:35 | 14 | What figure is reflected there?
09:35 | 15 | A    $65,615.
09:35 | 16 | Q    And how did you calculate that figure?
09:35 | 17 | A    That figure was based on the amount identified in
09:35 | 18 | QuickBooks related to Alexis Gardner.
09:35 | 19 | Q    Right below that, what does the next row show?
09:35 | 20 | A    Total due to client as of January 25th, 2017.
09:35 | 21 | Q    How much is listed there?
09:35 | 22 | A    Approximately $1.7 million.
09:35 | 23 | Q    So based on your calculations and your review of the
09:35 | 24 | fee agreement, is that how much your understanding was that
09:36 | 25 | was owed to Ms. Gardner as of that date?

| | | |
|---|---|---|
| 09:36 | 1 | MR. AVENATTI: Objection, leading. |
| 09:36 | 2 | THE COURT: Overruled. |
| 09:36 | 3 | THE WITNESS: Yes, that's correct. |
| 09:36 | 4 | BY MR. WYMAN: |
| 09:36 | 5 | Q Below that, what do the next two rows show? |
| 09:36 | 6 | A The next row is plus settlement amount due |
| 09:36 | 7 | November 2020, $250,000. And then the following row is the |
| 09:36 | 8 | total due to Alexis Gardner as of November 2020, the amount |
| 09:36 | 9 | due in January 2017, and $250,000, and that totals to |
| 09:36 | 10 | $1.9 million. |
| 09:36 | 11 | Q And the last row in red, what does that represent? |
| 09:36 | 12 | A That says total client received from settlement of zero |
| 09:36 | 13 | dollars. That represents that none of the amount that was |
| 09:36 | 14 | deposited into Alex Gardner's client trust account was paid |
| 09:36 | 15 | to Alexis Gardner. |
| 09:36 | 16 | MR. WYMAN: Could you please go to Exhibit 431 |
| 09:37 | 17 | now. And if we could blow up the whole contents, please. |
| 09:37 | 18 | BY MR. WYMAN: |
| 09:37 | 19 | Q What is the title of this chart? |
| 09:37 | 20 | A Tracing of Alexis Gardner's first settlement payment. |
| 09:37 | 21 | Q And in the top left-hand corner, is that the same |
| 09:37 | 22 | legend for color coding? |
| 09:37 | 23 | A That's correct. |
| 09:37 | 24 | Q Starting from the left, what does the first arrow going |
| 09:37 | 25 | to the right show? |

09:37  1   A    That shows the first settlement payment on

09:37  2   January 25th, 2017.  It was deposited into EA 8671.

09:37  3   Q    Then if we could please go to the right, it looks like

09:37  4   there are three arrows going from that bubble; is that

09:37  5   right?

09:37  6   A    That's correct.

09:37  7   Q    So starting from the one on the bottom, the one going

09:37  8   down, what does that show?

09:37  9   A    That shows $2.5 million was withdrawn from the client

09:37  10  trust accounts 8671 and sent to X-Law Group.

09:38  11  Q    Then if we could please go to the right, what happens

09:38  12  after that 2.5 million was sent to the X-Law Group?

09:38  13  A    On the same day $2.5 million was sent to Honda Aircraft

09:38  14  Company.

09:38  15  Q    If we can go back to the middle, please, what does the

09:38  16  arrow in the middle going to the right show?

09:38  17  A    $250,000 withdrawal from the client trust account into

09:38  18  EA 2851.

09:38  19  Q    And then to the right of that, what happened to that

09:38  20  money?

09:38  21  A    On that same day $250,000 was withdrawn and deposited

09:38  22  into A&A 0661.

09:38  23       MR. WYMAN:  At this time, Your Honor, the

09:38  24  government would move two bank records into evidence,

09:38  25  Exhibits 359 and 382, for which the custodian declarations

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:38   1    for both is Exhibit 394, page 2.

09:39   2            MR. AVENATTI:  Objection, Your Honor.  Hearsay,

09:39   3    401, 403.

09:39   4            THE COURT:  The numbers again?

09:39   5            MR. WYMAN:  The exhibits are 359 and 382.

09:39   6            THE COURT:  359 and 382 will be received.  The

09:39   7    objection is overruled.

09:39   8            (Exhibits 359 and 382 received in evidence)

09:39   9            MR. WYMAN:  If we could please pull up

09:39   10   Exhibit 382, page 1.

09:39   11   BY MR. WYMAN:

09:39   12   Q    What is the name of this account?

09:39   13   A    Eagan Avenatti, LLP.

09:39   14   Q    And the last four in the top right-hand corner of the

09:39   15   account number?

09:39   16   A    2851.

09:39   17   Q    And then if you go down to the deposits and credits, is

09:39   18   there -- on January 26th, 2017, do you see a deposit for

09:40   19   $250,000 on that day?

09:40   20   A    Yes.

09:40   21            MR. WYMAN:  Then if we could please go to

09:40   22   Exhibit 359, page 1.

09:40   23   BY MR. WYMAN:

09:40   24   Q    What is the name of this account?

09:40   25   A    Avenatti & Associates, A Professional Corp.

09:40  1  Q    And in the top right what are the last four numbers of
09:40  2  this account number?
09:40  3  A    0661.
09:40  4  Q    And then down on this page do you see a deposit or
09:40  5  credit for $250,000?
09:40  6  A    Yes.
09:40  7  Q    On what date?
09:40  8  A    January 26th.
09:40  9        MR. WYMAN:  If we could please go back to
09:40  10  Exhibit 431 now.
09:40  11  BY MR. WYMAN:
09:40  12  Q    Are those the transfers reflected in the middle there
09:41  13  going to the right?
09:41  14  A    Yes.
09:41  15  Q    And then lastly, in the middle the arrow going up to
09:41  16  the green bubble, what does that show?
09:41  17  A    That shows that no money was withdrawn from the 8671
09:41  18  and sent to Alexis Gardner.
09:41  19        MR. WYMAN:  If we could please go to Exhibit 432
09:41  20  now.
09:41  21  BY MR. WYMAN:
09:41  22  Q    What is the title of this chart?
09:41  23  A    Activities of EA trust account 8671 after receiving
09:41  24  Alexis Gardner's first settlement payment.
09:41  25  Q    The first row in light blue looks like there is a

09:41  1    balance of zero.  Is that what that hash mark means?

09:41  2    A    Yes.  That's right.

09:41  3    Q    And then the first row below that, January 25th, 2017,

09:41  4    is that the day that the settlement amount came in?

09:41  5    A    Yes.

09:41  6    Q    And what do the three rows below that show?

09:41  7    A    The two rows below that show there are two withdraws,

09:42  8    one for $2.5 million sent to the X-Law Group, and one for

09:42  9    $250,000 sent to EA 2851.

09:42  10   Q    And as of January 26th, 2017, at the end of this chart,

09:42  11   how much is left of Ms. Gardner's settlement money in this

09:42  12   trust account?

09:42  13   A    Zero.

09:42  14   Q    Did any of the money in this chart go to Ms. Gardner?

09:42  15   A    No, it did not.

09:42  16   Q    Based on your e-mail review of the defendant's bank

09:42  17   records, are you aware that certain payments were made from

09:42  18   those accounts to Ms. Gardner?

09:42  19   A    Yes, I'm aware that payments were made to Ms. Gardner.

09:42  20           MR. WYMAN:  If we could please look at

09:42  21   Exhibit 433.

09:42  22   BY MR. WYMAN:

09:42  23   Q    What is the title of this chart?

09:42  24   A    Payments to Alexis Gardner.

09:42  25   Q    On the left-hand side at the top, it looks like there's

```
09:42   1    that same legend; is that right?
09:42   2    A     Yes.
09:43   3    Q     And if we could start here on the left, what does the
09:43   4    left portion of this chart show to the left of the dashed
09:43   5    line?
09:43   6    A     The left portion shows settlement payments.  So the top
09:43   7    one represents the payment from Hassan Whiteside to the
09:43   8    client trust account EA 8671, and the bottom set of bubbles
09:43   9    represents the Michelle Phan repurchase agreement payment
09:43  10    deposited into CNB 4705.
09:43  11    Q     And then to the right of the dashed line, what do these
09:43  12    bubbles and arrows reflect?
09:43  13    A     So the orange and yellow bubbles are either client
09:43  14    trust account or other Avenatti & Associates accounts, and
09:43  15    the arrows represent flows of money.  On the right-hand side
09:43  16    we have a green bubble for Alexis Gardner, and it shows that
09:44  17    she received payments from four different accounts.
09:44  18                MR. WYMAN:  If we could please zoom back out so we
09:44  19    can see the full chart.
09:44  20    BY MR. WYMAN:
09:44  21    Q     It looks like there are no arrows from the EA 8671
09:44  22    account that received the Hassan Whiteside payment to
09:44  23    Ms. Gardner.  What does that mean?
09:44  24    A     That means none of the amount that was deposited into
09:44  25    EA 8671 for settlement were paid to Ms. Gardner.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:44  1   Q     As with Mr. Johnson, did you conduct additional

09:44  2   analysis for the source of certain payments to Ms. Gardner?

09:44  3   A     Yes.

09:44  4   Q     Take a look at Exhibit 434.

09:44  5   A     (Witness complies.)

09:44  6   Q     What is the title of this chart?

09:44  7   A     GB account funds used to make a payment to Alexis

09:44  8   Gardner on April 14th, 2017.

09:44  9   Q     And can you please explain what this chart reflects.

09:44  10  A     So this chart reflects that Alexis Gardner received a

09:44  11  payment of $16,000 on April 14th, 2017.  She received that

09:45  12  payment from account A&A 0661, and I am able to trace the

09:45  13  source of that payment to a GB account.

09:45  14  Q     So starting from the left, what do these bars mean?

09:45  15  A     So starting with the left, the account from which

09:45  16  Ms. Gardner received her payments, A&A 0661 had a beginning

09:45  17  balance of $3,300.  And then on April 7th that account

09:45  18  received a deposit from GB 2240 of $185,000.  And then

09:45  19  approximately a week later that same account made a transfer

09:45  20  to Alexis Gardner of $16,000.

09:45  21        MR. WYMAN:  If we could go to Exhibit 435 now.

09:45  22  BY MR. WYMAN:

09:45  23  Q     What is the title of this chart?

09:45  24  A     GB account funds used to make a payment to Alexis

09:46  25  Gardner on May 15th, 2017.

| | | |
|---|---|---|
| 09:46 | 1 | Q    And what does this chart reflect? |
| 09:46 | 2 | A    So this chart reflects another $16,000 payment made to |
| 09:46 | 3 | Alexis Gardner, this time approximately a month after the |
| 09:46 | 4 | previous one, also from A&A 0661.  And I am able to trace |
| 09:46 | 5 | the source of that payment to a GB account. |
| 09:46 | 6 | So starting on the left, this account had a |
| 09:46 | 7 | balance of $5,300 on May 15th.  And then on that same day it |
| 09:46 | 8 | received a transfer from GB 2240 of $30,000 and then made a |
| 09:46 | 9 | payment to Alexis Gardner for $16,000. |
| 09:46 | 10 | Q    And at Exhibit 436, please, what is the title of this |
| 09:46 | 11 | chart? |
| 09:46 | 12 | A    GB account funds used to make a payment to Alexis |
| 09:47 | 13 | Gardner on January 16th, 2018. |
| 09:47 | 14 | Q    What does this chart reflect? |
| 09:47 | 15 | A    This chart reflects another $16,000 payment received by |
| 09:47 | 16 | Alexis Gardner on January 16th, 2018, this time from account |
| 09:47 | 17 | EA 3174.  And I am able to trace the source of that payment |
| 09:47 | 18 | to a GB account.  So starting on the left, on January 16th, |
| 09:47 | 19 | 2018, the account from which Alexis Gardner received her |
| 09:47 | 20 | payment had a beginning balance of $155.  It received a |
| 09:47 | 21 | transfer from GB 3730 of 25,000 on that same day, and then |
| 09:47 | 22 | also on that same day that account made a transfer to Alexis |
| 09:47 | 23 | Gardner of $16,000. |
| 09:47 | 24 | MR. WYMAN:  Exhibit 437, please. |
| | 25 | |

09:47    1    BY MR. WYMAN:

09:47    2    Q    What is the title of Exhibit 437?

09:48    3    A    GB account funds used to make a payment to Alexis

09:48    4    Gardner on February 20th, 2018.

09:48    5    Q    And is this the same analysis showing the source of a

09:48    6    payment to Alexis Gardner?

09:48    7    A    Yes.

09:48    8    Q    What was the amount of that payment?

09:48    9    A    $16,000.

09:48    10    Q    And based on this tracing analysis, what was the source

09:48    11    of that money?

09:48    12    A    From Global Baristas account.

09:48    13        MR. WYMAN:  Let's go lastly to Exhibit 438 on

09:48    14    Ms. Gardner.

09:48    15    BY MR. WYMAN:

09:48    16    Q    It looks like this is a two-page exhibit?

09:48    17    A    Yes.

09:48    18    Q    What is the title of the exhibit?

09:48    19    A    A portion of Michelle Phan's stock repurchase payment

09:48    20    was transferred to EA 4613.

09:48    21    Q    And would you please explain what is reflected on

09:48    22    page 1.

09:48    23    A    On page 1, that reflects starting with the left-hand

09:48    24    blue bar the balance in CNB 4705 that reflects the Michelle

09:48    25    Phan repurchase payments.  And then $200,000 of that money

09:49  1    was withdrawn and transferred to account EA 4613.

09:49  2    Q    And on page 2, is this a continuation of page 1?

09:49  3    A    Yes, it's a continuation of page 1.  So on the

09:49  4    left-hand side we see that account EA 4613 had a beginning

09:49  5    balance of $1,500 before receiving the $200,000 deposit from

09:49  6    CNB 4705 on April 17th, 2018.  And then on that same day a

09:49  7    $34,000 withdraw was made and paid to Alexis Gardner.

09:49  8    Q    So based on this analysis, that $34,000 payment to

09:49  9    Alexis Gardner on April 17th, 2018, what was the source of

09:49  10   that money?

09:50  11   A    Michelle Phan's repurchase.

09:50  12   Q    Based on your analysis of the bank records associated

09:50  13   with Ms. Gardner, how much of the settlement money from

09:50  14   Hassan Whiteside went to Ms. Gardner?

09:50  15   A    None.  Zero.

09:50  16   Q    Turning now to Exhibits 439 through 443, which client

09:50  17   do these charts relate to?

09:50  18   A    Greg Barela.

09:50  19   Q    Starting with Exhibit 439, what is the title of this

09:50  20   chart?

09:50  21   A    Total amount due to Greg Barela as of January 5th,

09:50  22   2018, and January 2021.

09:50  23   Q    Focusing on the top, what does the first line reflect?

09:50  24   A    Settlement amount paid on January 5th, 2018, for

09:50  25   $1.6 million.

| 09:51 | 1 | Q    Did you review bank records showing that the defendant |
| 09:51 | 2 | received a settlement amount in that amount on that day? |
| 09:51 | 3 | A    Yes.  I reviewed bank records that showed a deposit of |
| 09:51 | 4 | that amount into the client trust account. |
| 09:51 | 5 | MR. WYMAN:  Could I have one moment, Your Honor. |
| 09:51 | 6 | (Government counsel conferring) |
| 09:51 | 7 | MR. WYMAN:  At this time, Your Honor, the |
| 09:51 | 8 | government moves Exhibit 371 into evidence, for which the |
| 09:51 | 9 | custodian declaration is at Exhibit 397, pages 3 and 4. |
| 09:51 | 10 | MR. AVENATTI:  Objection, Your Honor.  Hearsay as |
| 09:51 | 11 | well as 401 and 403. |
| 09:51 | 12 | THE COURT:  Overruled.  371 will be received. |
| 09:51 | 13 | (Exhibit 371 received in evidence) |
| 09:51 | 14 | MR. WYMAN:  Could we please pull up Exhibit 371 |
| 09:51 | 15 | and blow up the first half of the page. |
| 09:51 | 16 | BY MR. WYMAN: |
| 09:51 | 17 | Q    What is the title of this?  And if you would like, it |
| 09:52 | 18 | should be in the binder, too, if it's easier to see. |
| 09:52 | 19 | What is the title of this document? |
| 09:52 | 20 | A    "Transaction Detail Report." |
| 09:52 | 21 | Q    And what is the amount of the transaction? |
| 09:52 | 22 | A    $1.6 million. |
| 09:52 | 23 | Q    What is reflected there at the bottom right-hand |
| 09:52 | 24 | corner? |
| 09:52 | 25 | A    That reflects information about this transfer.  It says |

09:52   1   "Brock USA 2018 Settlement Payment."

09:52   2   Q    And who is the originator of the wire?

09:52   3   A    Brock USA, LLC.

09:52   4   Q    And then if we could pull up the right side.  Who is

09:52   5   the beneficiary?

09:53   6   A    Michael J. Avenatti, Attorney/Client Trust Account.

09:53   7   Q    And what is the send date listed here for the wire?

09:53   8   A    January 5th, 2018.

09:53   9        MR. WYMAN:  If we could go back to Exhibit 439

09:53   10  now, please.

09:53   11  BY MR. WYMAN:

09:53   12  Q    Below that settlement amount paid January 5th, 2018, of

09:53   13  1.6 million, what does the next row say?

09:53   14  A    Less legal fees for $760,000.

09:53   15  Q    Where did that number come from?

09:53   16  A    That came from the fee agreement between Barela and

09:53   17  Avenatti.

09:53   18  Q    And then right below that, what does the next line

09:53   19  reflect?

09:53   20  A    Case-related expenses, approximately $181,000.

09:53   21  Q    How did you calculate that number?

09:54   22  A    That number reflects a combination of the amounts

09:54   23  identified in QuickBooks as related to Greg Barela's case

09:54   24  and a spreadsheet sent by Judy Regnier.

09:54   25  Q    And the spreadsheet sent by Judy Regnier, was that

09:54  1  similar to the spreadsheet you reviewed related to

09:54  2  Mr. Johnson?

09:54  3  A    Yes.

09:54  4  Q    It then says total due to client as of January 5th,

09:54  5  2018.  And how much is listed there?

09:54  6  A    $659,000.

09:54  7  Q    So as of that date, January 5th, 2018, is that how much

09:54  8  you calculated was due to Mr. Barela?

09:54  9  A    That's right.

09:54  10 Q    And how did you calculate that figure?

09:54  11 A    That is the $1.6 million settlement amount paid minus

09:54  12 the legal fees of $760,000, minus the case-related expenses

09:54  13 of $180,000.

09:55  14 Q    It then looks like there are three rows that start with

09:55  15 Brock settlement amount.  What does that mean?

09:55  16 A    Those are additional settlement amounts that were due

09:55  17 with their dates.

09:55  18 Q    And then at the end it says total due to client,

09:55  19 approximately $959,000.

09:55  20 A    Yes.

09:55  21 Q    And what does the very last row in red show?

09:55  22 A    That shows that the total client received from the

09:55  23 settlement of zero dollars.  That reflects none of the

09:55  24 amounts deposited into Greg Barela's trust account were paid

09:55  25 to Greg Barela.

09:55  1   Q     In this chart when you calculated the legal fees of
09:55  2   $760,000, what was that percentage based on?
09:55  3   A     That's based on the total settlement amount, which is
09:55  4   the 1.6 million plus the three $100,000 amounts, to a total
09:56  5   of 1.9 million.
09:56  6   Q     So that's 1.9 million times 40 percent?
09:56  7   A     Yes.
09:56  8          MR. WYMAN:  If we could go to Exhibit 440 now,
09:56  9   please, and if we could blow up the content of the whole
09:56  10  side, please.
09:56  11  BY MR. WYMAN:
09:56  12  Q     What is the title of this chart?
09:56  13  A     "Tracing Greg Barela's First Settlement Payment."
09:56  14  Q     In the top left-hand corner, it looks like it's the
09:56  15  same color-coded legend.
09:56  16  A     Yes.
09:56  17  Q     Starting from the left and going to the right, what
09:56  18  does that first arrow reflect?
09:56  19  A     That arrow reflects the $1.6 million settlement payment
09:56  20  deposited into CNB 5566.
09:56  21  Q     What is CNB 5566?
09:56  22  A     That's the client trust account.
09:56  23         MR. WYMAN:  Then if we could blow up the second
09:57  24  top of the right side of the page.
       25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

BY MR. WYMAN:

Q    It looks like there are three arrows going from that bubble; is that right?

A    That's right.

Q    So starting with the arrow going down to the bottom, what does that show?

A    That shows that between January 10th and March 14th, almost $500,000 was withdrawn from the client trust accounts into GB and EA accounts.

Q    And when it says GB and EA, what does that mean?

A    Those are Global Baristas and Eagan Avenatti accounts.

Q    Next, the arrow going to the right in the middle, what does that show?

A    That shows that between January 5th and March 14th, approximately $1.1 million was withdrawn and sent to various independent accounts.

Q    And can you please read what the independent accounts listed in that bubble are.

A    GB expenses, X-Law Group, Edward Ricci, and other miscellaneous transfers.

Q    And then lastly the arrow in red going up to the green bubble, what does that show?

A    That shows that none of the amount that was deposited into CNB 5566 was paid to Greg Barela.

Q    If we could go now to Exhibit 441, what is the title of

09:58    1    this chart?

09:58    2    A    "Activities of CNB Trust Account 5566 After Receiving

09:58    3    Greg Barela's First Settlement Payment."

09:58    4    Q    And the top row in light blue, what does that line

09:58    5    show?

09:58    6    A    That shows that the beginning balance on January 5th,

09:58    7    2018, was zero before receiving the $1.6 million deposit

09:58    8    from Brock USA.

09:58    9    Q    And is that the deposit reflected on the line right

09:59   10    below?

09:59   11    A    Yes.

09:59   12    Q    Again, like the previous charts like this, the red

09:59   13    numbers within parentheticals, does that reflect

09:59   14    withdrawals?

09:59   15    A    Yes.

09:59   16    Q    I want to ask you about just a few of these payments.

09:59   17    A few rows down from the top, I see a payment for 41 --

09:59   18    actually a withdrawal for $41,885.  Do you see that?

09:59   19    A    Yes.

09:59   20    Q    Who is that withdrawal to?

09:59   21         MR. AVENATTI:  Objection, Your Honor, 401, 403.

09:59   22         THE COURT:  Overruled.

09:59   23         THE WITNESS:  That was paid to Dillanos Coffee

09:59   24    Roasters.

        25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 09:59 | 1 | BY MR. WYMAN: |
| 09:59 | 2 | Q    And then a few down from that, there is a payment or |
| 09:59 | 3 | withdrawal for $617,000 approximately? |
| 09:59 | 4 | A    Yes. |
| 09:59 | 5 | MR. AVENATTI:  Same objection. |
| 09:59 | 6 | THE COURT:  Overruled. |
| 09:59 | 7 | BY MR. WYMAN: |
| 09:59 | 8 | Q    Who was that for? |
| 09:59 | 9 | A    That was paid to Edward Ricci. |
| 09:59 | 10 | Q    And the date? |
| 09:59 | 11 | A    January 8th, 2018. |
| 09:59 | 12 | Q    And scrolling down through, it looks like there are a |
| 10:00 | 13 | number of payments or withdrawals to Global Baristas, LLC? |
| 10:00 | 14 | MR. AVENATTI:  Same objection, Your Honor. |
| 10:00 | 15 | THE COURT:  Overruled. |
| 10:00 | 16 | THE WITNESS:  Yes.  That's correct. |
| 10:00 | 17 | BY MR. WYMAN: |
| 10:00 | 18 | Q    And additional payment to Dillanos Coffee Roasters and |
| 10:00 | 19 | Alki Bakery? |
| 10:00 | 20 | MR. AVENATTI:  Same objection. |
| 10:00 | 21 | THE COURT:  Overruled. |
| 10:00 | 22 | THE WITNESS:  Yes. |
| 10:00 | 23 | BY MR. WYMAN: |
| 10:00 | 24 | Q    If you could please go to page 3, the end of this |
| 10:00 | 25 | chart, it looks like this chart ends on March 14, 2018; is |

| | | |
|---|---|---|
| 10:00 | 1 | that right? |
| 10:00 | 2 | A    That's right. |
| 10:00 | 3 | Q    And as of March 14th, 2018, how much is left in this |
| 10:00 | 4 | trust account? |
| 10:00 | 5 | MR. AVENATTI:  Same objection. |
| 10:00 | 6 | THE COURT:  Overruled. |
| 10:00 | 7 | THE WITNESS:  $610. |
| 10:00 | 8 | BY MR. WYMAN: |
| 10:00 | 9 | Q    In this chart are there any payments reflected to |
| 10:00 | 10 | Gregory Barela? |
| 10:00 | 11 | A    No, there are not. |
| 10:00 | 12 | Q    Based on your review of the defendant's banks records |
| 10:00 | 13 | associated with Mr. Barela, are you aware that the defendant |
| 10:00 | 14 | sent a few payments to Mr. Barela? |
| 10:00 | 15 | A    Yes. |
| 10:01 | 16 | Q    If we can look at Exhibit 442, what is the title of |
| 10:01 | 17 | this chart? |
| 10:01 | 18 | A    "Payments to Greg Barela." |
| 10:01 | 19 | Q    Starting on the left-hand side, what do these bubbles |
| 10:01 | 20 | to the left of the dashed line show? |
| 10:01 | 21 | A    Again, these show settlement payment deposits with the |
| 10:01 | 22 | top set of bubbles shows a deposit from Brock USA to |
| 10:01 | 23 | CNB 5566.  That's the $1.6 million payment that we showed on |
| 10:01 | 24 | earlier exhibits.  Below that represents Michelle Phan's |
| 10:01 | 25 | repurchase payments. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:01　1　　Q　　And then to the right of the dashed line, what do these

10:01　2　　bubbles show?

10:01　3　　A　　Those show two other client trust accounts, and the

10:01　4　　arrows represent payments to Greg Barela.

10:02　5　　Q　　Are these the accounts from which Greg Barela received

10:02　6　　payments?

10:02　7　　A　　Yes.

10:02　8　　Q　　As with Mr. Johnson and Ms. Gardner for the similar

10:02　9　　charts you created, does this chart purport to reflect all

10:02　10　　of the payments?

10:02　11　　A　　No.  It only reflects the accounts from which they

10:02　12　　received the payment.

10:02　13　　　　　　MR. WYMAN:  If we could zoom back out, please.

10:02　14　　BY MR. WYMAN:

10:02　15　　Q　　The bottom left-hand bubble there from Personalized

10:02　16　　Beauty Discovery, why is that reflected in this chart?

10:02　17　　A　　That's reflected in this chart because payments to Greg

10:02　18　　Barela can be traced to the Michelle Phan repurchase

10:02　19　　agreement settlement amount.

10:02　20　　Q　　And then right above that we see the bubble from Brock

10:02　21　　USA with an arrow to CNB 5566, and then there is no arrow

10:02　22　　going to the right of the dashed line.  Why is that?

10:02　23　　A　　That reflects that none of the amounts that were paid

10:02　24　　into the client trust account 5566 were ultimately paid to

10:02　25　　Greg Barela.

| 10:03 | 1 | Q | As with Mr. Johnson and Ms. Gardner, did you conduct a |

10:03    1    Q    As with Mr. Johnson and Ms. Gardner, did you conduct a

10:03    2    more detailed analysis to trace at least one of the payments

10:03    3    to Mr. Barela?

10:03    4    A    Yes.

10:03    5    Q    Would you please take a look at Exhibit 443.

10:03    6    A    (Witness complies.)

10:03    7    Q    What is the title of this chart?

10:03    8    A    A portion of Michelle Phan's stock repurchase payment

10:03    9    was transferred to EA 4613.

10:03   10    Q    And is this a two-page exhibit?

10:03   11    A    Yes.

10:03   12    Q    Starting with the first page, can you please explain

10:03   13    what this chart reflects.

10:03   14    A    Sure.  This reflects on the left-hand side the balance

10:03   15    of CNB 4705, which reflects Michelle Phan's stock repurchase

10:03   16    payment.  And on April 4th, 2018, this account CNB 4705 made

10:03   17    a transfer to account EA 4613 in the amount of approximately

10:04   18    $190,000.

10:04   19    Q    And then going to page 2, is this a continuation of

10:04   20    page 1?

10:04   21    A    That's correct.

10:04   22    Q    And what is shown on this page?

10:04   23    A    So the left-hand side shows that account EA 4613 which

10:04   24    received the $190,000 deposit on April 4th.  Prior to

10:04   25    receiving that deposit, that account had a balance of $60.

| | | |
|---|---|---|
| 10:04 | 1 | And the next day that account EA 4613 made a payment to |
| 10:04 | 2 | Waypoint PPG of $60,000. |
| 10:04 | 3 | Q    And what is your understanding of what Waypoint PPG is? |
| 10:04 | 4 | A    I understand that to be associated with Mr. Barela. |
| 10:04 | 5 | Q    And based on your analysis here, that $60,000 payment |
| 10:05 | 6 | to Waypoint PPG, what is the source of that money? |
| 10:05 | 7 | A    Michelle Phan's repurchase payment. |
| 10:05 | 8 | Q    Based on your review of the bank records associated |
| 10:05 | 9 | with Mr. Barela's settlement money, how much of that |
| 10:05 | 10 | settlement money did Mr. Barela receive? |
| 10:05 | 11 | A    Zero dollars. |
| 10:05 | 12 | Q    Turning now to Exhibits 444 through 450, which client |
| 10:05 | 13 | do these exhibits relate to? |
| 10:05 | 14 | A    Michelle Phan, Pratigya Phan, and Long Tran. |
| 10:05 | 15 | Q    Starting with Exhibit 444, what is the title of this |
| 10:05 | 16 | chart? |
| 10:05 | 17 | A    Total amount due to Michelle Phan, Pratigya Phan, and |
| 10:05 | 18 | Long Tran as of March 14th, 2018. |
| 10:05 | 19 | Q    What does the first row say? |
| 10:06 | 20 | A    First repurchase amount paid on September 18th, 2017, |
| 10:06 | 21 | for $28.9 million. |
| 10:06 | 22 | Q    And the second line? |
| 10:06 | 23 | A    Second repurchase amount paid on March 14th, 2018, for |
| 10:06 | 24 | approximately $8.3 million. |
| 10:06 | 25 | Q    Are these the amounts -- are these the amount of |

10:06   1   payments to those clients that you saw reflected in the bank
10:06   2   records?
10:06   3   A    Yes.  Those are the amounts of deposits that I saw into
10:06   4   the client trust account.
10:06   5   Q    Thank you.  Good clarification.  Right below that, the
10:06   6   total repurchase amount, what is reflected there?
10:06   7   A    That's the sum of the two amounts above, for
10:06   8   approximately $37.2 million.
10:06   9   Q    Right below that, what does the next row reflect?
10:06  10   A    Less legal fees of $2.79 million.
10:07  11   Q    How did you calculate that figure?
10:07  12   A    That represents 7.5 percent of the total repurchase
10:07  13   account.
10:07  14   Q    And when you're saying the total repurchase amount, are
10:07  15   you referring to the approximately $37.168 million figure
10:07  16   right above?
10:07  17   A    Yes.
10:07  18   Q    Right below that, what is listed for case-related
10:07  19   expenses?
10:07  20   A    Zero.
10:07  21   Q    Then below that, it says total due to clients as of
10:07  22   March 14th, 2018, and what amount is listed there?
10:07  23   A    34.38 million.
10:07  24   Q    Lastly, the row at the bottom in red, what is shown
10:07  25   there?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:07 | 1 | A    Total clients received from repurchase of approximately |
| 10:07 | 2 | $30.4 million. |
| 10:08 | 3 | Q    What is the approximate different between the last two |
| 10:08 | 4 | rows? |
| 10:08 | 5 | A    Approximately $4 million. |
| 10:08 | 6 | Q    For the amount of legal fees listed here, $2,787,651, |
| 10:08 | 7 | did you review bank records showing that the defendant |
| 10:08 | 8 | received that amount? |
| 10:08 | 9 | A    Yes. |
| 10:08 | 10 |         MR. WYMAN:  If you could please pull up what is |
| 10:08 | 11 | already in evidence as Exhibit 367, page 1, focusing on the |
| 10:08 | 12 | check at the top there. |
| 10:08 | 13 | BY MR. WYMAN: |
| 10:08 | 14 | Q    Who is the check made out to? |
| 10:08 | 15 | A    To operating. |
| 10:08 | 16 | Q    And what is the amount of this check? |
| 10:08 | 17 | A    $2,787,650.87. |
| 10:09 | 18 | Q    Is that the total amount of legal fees that you |
| 10:09 | 19 | calculated in your chart? |
| 10:09 | 20 | A    That's right. |
| 10:09 | 21 | Q    Let's go to Exhibit 445 now, please.  What is the title |
| 10:09 | 22 | of this chart? |
| 10:09 | 23 | A    "Tracing of Michelle Phan, Pratigya Phan, and Long |
| 10:09 | 24 | Tran's First Repurchase Payment." |
| 10:09 | 25 | Q    And starting from the left, it looks like there is that |

| | | |
|---|---|---|
| 10:09 | 1 | same color-coded legend; is that right? |
| 10:09 | 2 | A    That's correct. |
| 10:09 | 3 | Q    And what does the bubble on the left and the three |
| 10:09 | 4 | arrows going to the right show? |
| 10:09 | 5 | A    The bubble on the left and the three arrows show the |
| 10:09 | 6 | deposit into CNB 4705, the client trust account, of the |
| 10:09 | 7 | first repurchase payment, which was 28 million and change. |
| 10:09 | 8 | Q    And what were the amounts of those three payments, |
| 10:09 | 9 | please? |
| 10:10 | 10 | A    475,000, 984,750, and approximately 27.4 million. |
| 10:10 | 11 | Q    And I see a date listed above those three.  Was that |
| 10:10 | 12 | the date of all three of these wires? |
| 10:10 | 13 | A    That's correct. |
| 10:10 | 14 | Q    And then if we could go to the right now, it looks like |
| 10:10 | 15 | there are two arrows from the CNB 4705 bubble? |
| 10:10 | 16 | A    That's correct. |
| 10:10 | 17 | Q    Starting with the ones in the bottom, what is reflected |
| 10:10 | 18 | there? |
| 10:10 | 19 | A    That shows a transfer of $2.787 million to CNB 3504. |
| 10:10 | 20 | Q    And then the arrow going to the top? |
| 10:10 | 21 | A    That shows $26.1 million being transferred out of the |
| 10:10 | 22 | client trust account to Michelle Phan and Pratigya Phan and |
| 10:10 | 23 | Long Tran. |
| 10:10 | 24 | Q    And between what dates were those payments to those |
| 10:11 | 25 | three individuals? |

```
10:11   1    A      Between September 18th, 2017, and October 3rd, 2017.
10:11   2    Q      If we could go to Exhibit 446, what is the title of
10:11   3    this chart?
10:11   4    A      Activities of CNB trust account 4705 after receiving
10:11   5    the first repurchase payment.
10:11   6    Q      And at the top three rows here, are those the payments
10:11   7    that you just described from Personalized Beauty Discovery?
10:11   8    A      That's correct.
10:11   9    Q      And at the end on October 3rd at the bottom of the
10:11   10   chart, what is the amount of the account balance?
10:11   11   A      Zero dollars and then a negative $12.
10:12   12   Q      Please go to Exhibit 447 now.  Mr. Drum, there should
10:12   13   be a version on the cart right behind you.
10:12   14          MR. WYMAN:  Your Honor, we made a redacted
10:12   15   version.
10:12   16          THE COURT:  That's fine.
10:12   17          THE WITNESS:  I don't think I have the redacted
10:13   18   version.
10:13   19          MR. WYMAN:  Your Honor, if it's okay, I'd like to
10:13   20   come back to this chart.  It's possible we could get to the
10:13   21   morning break after we bring a redacted version.
10:13   22          THE COURT:  That's fine.
10:13   23          MR. WYMAN:  Your Honor, actually now might be a
10:13   24   good time for a break if that's acceptable to Your Honor.
10:13   25          THE COURT:  That's fine.
```

| | | |
|---|---|---|
| 10:13 | 1 | Ladies and gentlemen, we will take our mid-morning |
| 10:13 | 2 | break here.  We will be in recess for 15 minutes.  Please |
| 10:13 | 3 | remember the admonition not to discuss the case with anyone |
| 10:13 | 4 | and not to form any opinions on the issues in the case until |
| 10:13 | 5 | it is submitted to you.  And please do not do any research. |
| 10:14 | 6 | We will be in recess for 15 minutes. |
| 10:14 | 7 | (Recess taken at 10:14 a.m.; |
| 10:14 | 8 | proceedings resumed at 10:34 a.m.) |
| 10:14 | 9 | (Jury present) |
| 10:34 | 10 | BY MR. WYMAN: |
| 10:34 | 11 | Q    Mr. Drum, right before the break we were about to |
| 10:34 | 12 | discuss Exhibit 448.  Do you have the new version right in |
| 10:34 | 13 | front of you? |
| 10:34 | 14 | A    447? |
| 10:34 | 15 | Q    Yes.  I'm sorry, 447. |
| 10:34 | 16 | A    Yes. |
| 10:34 | 17 | Q    What is the -- I put it here on the elmo.  What is the |
| 10:34 | 18 | title of this chart? |
| 10:34 | 19 | A    Tracing of Michelle Phan and Long Tran's second |
| 10:34 | 20 | repurchase payment. |
| 10:34 | 21 | Q    At the top left it looks like there's that same |
| 10:34 | 22 | color-coded legend? |
| 10:34 | 23 | A    Yes. |
| 10:34 | 24 | Q    And then on the left side that I've put on the screen |
| 10:34 | 25 | here, what information is reflected? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:35  1    A    That shows the second repurchase payments made by

10:35  2    Personalized Beauty Discovery deposited into CNB 4705.

10:35  3    Q    What is the date of those wire transfers?

10:35  4    A    March 14th, 2018.

10:35  5    Q    Focusing in the middle to these arrows, what does this

10:35  6    portion of the chart show?

10:35  7    A    This portion of the chart shows withdraws from

10:35  8    CNB 4705.  Starting at the bottom, approximately 4.3 million

10:35  9    was sent to Michelle Phan and Long Tran.  In the middle,

10:35  10   260,000 was sent to EA 0313, and at the top approximately

10:36  11   3.8 million was sent to EA 4613.

10:36  12   Q    Focusing on the bottom, the portion you said that was

10:36  13   sent to Michelle Phan and Long Tran, what are the dates of

10:36  14   the transfers making up that approximately 4.3 million

10:36  15   amount?

10:36  16   A    April 23rd, 2018, to May 4th, 2018.

10:36  17   Q    And you said the range there.  Are those the only two

10:36  18   dates on which there were wire transfers?

10:36  19   A    I believe that's right.

10:36  20   Q    Going back to the left, there is a bubble labeled

10:36  21   EA 4613 showing a $46,350 wire, it looks like, back into the

10:36  22   trust account; is that right?

10:36  23   A    That's right.

10:36  24   Q    And what is the date of that transfer?

10:37  25   A    May 4th, 2018.

10:37  1    Q    And did that transfer immediately predate the May 4th

10:37  2    transfer to Michelle Phan?

10:37  3    A    Yes, it did.

10:37  4    Q    Going to the right now.  After those two middle

10:37  5    transfers that you described to the EA 4613 account and

10:37  6    EA 0313 account, what information is reflected here on the

10:37  7    right?

10:37  8    A    This shows that $32,000 was sent from EA 0313 into

10:37  9    EA 4613, and then from 4613 we have various payments to

10:37  10   three other clients and a payment to EA bankruptcy account.

10:37  11   Q    Let's start with that.  So it looks like EA 4613

10:38  12   received approximately 3.8 million or a little bit less from

10:38  13   the trust account, and then received 32,000 from EA 0313,

10:38  14   and then there are these various transfers.  What is the

10:38  15   first transfer at the top arrow?

10:38  16              MR. AVENATTI:  Objection, Your Honor, 401, 403.

10:38  17              THE COURT:  Overruled.

10:38  18              THE WITNESS:  The first transfer at the top is

10:38  19   $2.8 million to EA bankruptcy counsel on March 15th, 2018.

10:38  20   BY MR. WYMAN:

10:38  21   Q    And then to the right of that, there is another blue

10:38  22   bubble.  What is that arrow?

10:38  23              MR. AVENATTI:  Same objection, Your Honor.

10:38  24              THE COURT:  Overruled.

10:38  25              THE WITNESS:  That reflects a payment that EA

| | | |
|---|---|---|
| 10:38 | 1 | bankruptcy counsel made to the IRS for approximately |
| 10:38 | 2 | $1.5 million. |
| 10:38 | 3 | BY MR. WYMAN: |
| 10:39 | 4 | Q    And then below that, the three green bubbles, what do |
| 10:39 | 5 | those arrows reflect? |
| 10:39 | 6 | MR. AVENATTI:  Objection, Your Honor, 401, 403. |
| 10:39 | 7 | THE COURT:  Overruled. |
| 10:39 | 8 | THE WITNESS:  Those reflect the clients -- Greg |
| 10:39 | 9 | Barela, Geoffrey Johnson, Alexis Gardner -- receiving |
| 10:39 | 10 | payments from EA 4613. |
| 10:39 | 11 | BY MR. WYMAN: |
| 10:39 | 12 | Q    And the payments on this chart to Mr. Johnson, |
| 10:39 | 13 | Mr. Barela, and Ms. Gardner, are those the same payments |
| 10:39 | 14 | that are traceable to Ms. Phan's money that we discussed in |
| 10:39 | 15 | an earlier exhibit? |
| 10:39 | 16 | MR. AVENATTI:  Same objections, Your Honor. |
| 10:39 | 17 | THE COURT:  Overruled. |
| 10:39 | 18 | THE WITNESS:  That's right. |
| 10:39 | 19 | BY MR. WYMAN: |
| 10:39 | 20 | Q    And this payment at the top sent to the IRS of |
| 10:39 | 21 | $1,508,422, what did you say the date was on that? |
| 10:39 | 22 | A    March 26th, 2018. |
| 10:40 | 23 | MR. WYMAN:  Would you please pull up what's |
| 10:40 | 24 | already in evidence as Exhibit 392.  If you could blow up |
| 10:40 | 25 | the top of the check, please. |

| | | |
|---|---|---|
| 10:40 | 1 | BY MR. WYMAN: |
| 10:40 | 2 | Q    What is the amount on this check, if you can see it? |
| 10:40 | 3 | A    $1,508,422. |
| 10:40 | 4 | Q    Is that the same amount on the exhibit we were just |
| 10:40 | 5 | referring to? |
| 10:40 | 6 | A    Yes. |
| 10:40 | 7 | Q    And who is the remitter of the check? |
| 10:40 | 8 | A    Sulmeyer Kupetz. |
| 10:40 | 9 | Q    And the date? |
| 10:40 | 10 | A    March 26th, 2018. |
| 10:41 | 11 | MR. WYMAN:  If you could please go now to |
| 10:41 | 12 | Exhibit 448. |
| 10:41 | 13 | BY MR. WYMAN: |
| 10:41 | 14 | Q    What is the title of this chart? |
| 10:41 | 15 | A    Activities of CNB trust account 4705 after receiving |
| 10:41 | 16 | the second repurchase payment. |
| 10:41 | 17 | Q    At the top there in that light blue line, what is |
| 10:41 | 18 | reflected in that row? |
| 10:41 | 19 | A    That reflects that the balance before receiving the |
| 10:41 | 20 | second repurchase payment was zero. |
| 10:41 | 21 | Q    Then below that it looks like there were two deposits |
| 10:41 | 22 | in the amount of the Personalized Beauty Discovery payment? |
| 10:41 | 23 | A    That's correct. |
| 10:41 | 24 | Q    And then the next day on March 15th, 2018, what is |
| 10:41 | 25 | shown there after the two bank fees? |

| | | |
|---|---|---|
| 10:41 | 1 | A    A $3 million withdraw that was paid into EA 4613. |
| 10:42 | 2 | MR. WYMAN:  And if we could zoom out. |
| 10:42 | 3 | BY MR. WYMAN: |
| 10:42 | 4 | Q    Between March 15th and April 23rd, what kind of |
| 10:42 | 5 | activity occurs in this chart? |
| 10:42 | 6 | MR. AVENATTI:  Objection, Your Honor, 401, 403. |
| 10:42 | 7 | THE COURT:  Overruled. |
| 10:42 | 8 | THE WITNESS:  It looks like withdraws to other EA |
| 10:42 | 9 | accounts and bank fees. |
| 10:42 | 10 | BY MR. WYMAN: |
| 10:42 | 11 | Q    As of April 23rd, immediately prior to the last row, |
| 10:42 | 12 | how much is left in the account? |
| 10:42 | 13 | A    As of the end of April 23rd? |
| 10:42 | 14 | Q    Let's start at the beginning of April 23rd prior to the |
| 10:42 | 15 | transfers shown in this chart. |
| 10:42 | 16 | A    Approximately 4.3 million. |
| 10:42 | 17 | Q    And then do you see a payment there to Long Tran of |
| 10:42 | 18 | approximately 147,000? |
| 10:43 | 19 | A    Yes. |
| 10:43 | 20 | Q    Then on May 4th, at the bottom of the page, do you see |
| 10:43 | 21 | two wires there at the bottom of page 1? |
| 10:43 | 22 | A    Yes, I do. |
| 10:43 | 23 | Q    What is the first wire? |
| 10:43 | 24 | A    The first wire is a deposit from EA 4613 for this |
| 10:43 | 25 | $46,350. |

```
10:43    1   Q    And after that deposit how much is in the account?
10:43    2   A    4,146,350.
10:43    3   Q    And right below that what is the last transfer
10:43    4   reflected on this page?
10:43    5   A    That's a withdrawal paid to IM&T Operations of 146,288.
10:44    6   Q    At the top of page 2, what is the first transfer
10:44    7   reflected on the chart on page 2?
10:44    8   A    That's a withdraw on that same day of $4 million paid
10:44    9   to IM&T Operations.
10:44   10   Q    After that $4 million withdrawal, how much is left in
10:44   11   the account?
10:44   12   A    Sixty-two dollars.
10:44   13   Q    So we just talked about three transfers on May 4th.
10:44   14   One was a deposit for approximately 46,000, and then one was
10:44   15   a withdrawal for 146,000 approximately, and then one was a
10:44   16   withdrawal of 4 million; is that right?
10:44   17   A    That's right.
10:44   18   Q    If that $46,000 approximate amount had not been
10:44   19   transferred in on May 4th, would there have been enough
10:44   20   money in the account to make the next two withdrawals?
10:44   21   A    No, there would not.
10:45   22   Q    As of May 4th, at the end of this chart, what is the
10:45   23   account balance?
10:45   24        MR. AVENATTI:  Objection.  Asked and answered.
10:45   25        THE COURT:  Overruled.
```

| | |
|---|---|
| 10:45 | 1 |
| 10:45 | 2 |
| 10:45 | 3 |
| 10:45 | 4 |
| 10:45 | 5 |
| 10:45 | 6 |
| 10:45 | 7 |
| 10:45 | 8 |
| 10:45 | 9 |
| 10:45 | 10 |
| 10:45 | 11 |
| 10:45 | 12 |
| 10:45 | 13 |
| 10:45 | 14 |
| 10:45 | 15 |
| 10:45 | 16 |
| 10:45 | 17 |
| 10:45 | 18 |
| 10:46 | 19 |
| 10:46 | 20 |
| 10:46 | 21 |
| 10:46 | 22 |
| 10:46 | 23 |
| 10:46 | 24 |
| 10:46 | 25 |

1    THE WITNESS:  At the end of May 4th after the bank
2  fee is taken out, the balance is $23.
3    MR. WYMAN:  If we could go to Exhibit 449.
4  BY MR. WYMAN:
5  Q    What is the title of this chart?
6  A    Activities of EA trust account 4613 after receiving a
7  portion of the second repurchase payment from CNB trust
8  account 4705.
9  Q    Starting at the top in that light blue line in the
10  first row, what is the account balance?
11    MR. AVENATTI:  Objection, Your Honor, 401, 403.
12    THE COURT:  Overruled.
13    THE WITNESS:  $1,217.
14  BY MR. WYMAN:
15  Q    And that's prior to the transfer reflected in the next
16  row; is that right?
17  A    That's correct.
18  Q    How much is that transfer for?
19    MR. AVENATTI:  Same objection, Your Honor.
20    THE COURT:  Overruled.
21    THE WITNESS:  $3 million.
22  BY MR. WYMAN:
23  Q    And then in the row right below that, it looks like
24  there is a sizable withdrawal.  What is that for?
25    MR. AVENATTI:  Same objection.

| | | |
|---|---|---|
| 10:46 | 1 | THE COURT:  Overruled. |
| 10:46 | 2 | THE WITNESS:  That's on the same day as the |
| 10:46 | 3 | $3 million deposit, a withdrawal of $2.8 million paid to |
| 10:46 | 4 | Sulmeyer Kupetz. |
| 10:46 | 5 | BY MR. WYMAN: |
| 10:46 | 6 | Q    Then scrolling down a little bit, what other activity |
| 10:46 | 7 | occurred on March 15th? |
| 10:46 | 8 | MR. AVENATTI:  Same objections, Your Honor.  Can I |
| 10:46 | 9 | have a standing objection? |
| 10:46 | 10 | THE COURT:  No, sir.  Overruled. |
| 10:46 | 11 | THE WITNESS:  The remaining transfers on |
| 10:46 | 12 | March 15th of $1,200 payment to Global Baristas and a |
| 10:46 | 13 | $171,000 payment to EA 0313. |
| 10:46 | 14 | BY MR. WYMAN: |
| 10:46 | 15 | Q    And if we could scroll down a little bit, on March 20th |
| 10:46 | 16 | it looks like there is a payment of $1,900 to Geoffrey |
| 10:47 | 17 | Johnson; is that right? |
| 10:47 | 18 | MR. AVENATTI:  Same objections, Your Honor. |
| 10:47 | 19 | THE COURT:  Overruled. |
| 10:47 | 20 | THE WITNESS:  That's correct. |
| 10:47 | 21 | MR. WYMAN:  If could blow up just the payee |
| 10:47 | 22 | portion of the second half of the page. |
| 10:47 | 23 | BY MR. WYMAN: |
| 10:47 | 24 | Q    Later in March it appears that there are a number of |
| 10:47 | 25 | transfers to Global Baristas and Passport 420 and the |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 10:47 | 1 | A&A 0661 account; is that right? |
| 10:47 | 2 | MR. AVENATTI: Same objections, Your Honor. |
| 10:47 | 3 | THE COURT: Overruled. |
| 10:47 | 4 | THE WITNESS: That's correct. I see one for |
| 10:47 | 5 | EA 0313 in there as well. |
| 10:47 | 6 | BY MR. WYMAN: |
| 10:47 | 7 | Q I'm now going to page 2. Without going through all of |
| 10:47 | 8 | these, it looks like there are a number of additional |
| 10:47 | 9 | payments to Global Baristas and Passport 420; is that right? |
| 10:47 | 10 | MR. AVENATTI: Same objections, Your Honor. |
| 10:47 | 11 | THE COURT: Overruled. |
| 10:47 | 12 | THE WITNESS: That's correct. |
| 10:47 | 13 | BY MR. WYMAN: |
| 10:48 | 14 | Q Then at the very last row on page 2, what is the wire |
| 10:48 | 15 | transfer reflected there? |
| 10:48 | 16 | MR. AVENATTI: Same objections. |
| 10:48 | 17 | THE COURT: Overruled. |
| 10:48 | 18 | THE WITNESS: That's a $60,000 payment paid to |
| 10:48 | 19 | Waypoint PPG. |
| 10:48 | 20 | BY MR. WYMAN: |
| 10:48 | 21 | Q And you testified earlier that that was the entity you |
| 10:48 | 22 | understood was associated with Mr. Barela? |
| 10:48 | 23 | A That's correct. |
| 10:48 | 24 | Q Then lastly, on page 3 it looks like there are more |
| 10:48 | 25 | payments to Passport 420, Global Baristas, and the A&A 0661 |

| | | |
|---|---|---|
| 10:48 | 1 | account? |
| 10:48 | 2 | MR. AVENATTI:  Same objections, Your Honor. |
| 10:48 | 3 | THE COURT:  Overruled. |
| 10:48 | 4 | THE WITNESS:  Yes.  I see that. |
| 10:48 | 5 | BY MR. WYMAN: |
| 10:48 | 6 | Q    And then what does the very last row reflect? |
| 10:48 | 7 | MR. AVENATTI:  Same objections. |
| 10:48 | 8 | THE COURT:  Overruled. |
| 10:48 | 9 | THE WITNESS:  That's a $34,000 payment to Alexis |
| 10:48 | 10 | Gardner. |
| 10:48 | 11 | BY MR. WYMAN: |
| 10:48 | 12 | Q    After that payment how much is left in the account as |
| 10:48 | 13 | of April 17th, 2018? |
| 10:48 | 14 | MR. AVENATTI:  Same objections. |
| 10:48 | 15 | THE COURT:  Overruled. |
| 10:48 | 16 | THE WITNESS:  $90,501. |
| 10:48 | 17 | MR. WYMAN:  Would you please go to Exhibit 450, |
| 10:49 | 18 | please. |
| 10:49 | 19 | BY MR. WYMAN: |
| 10:49 | 20 | Q    What is the title of this chart? |
| 10:49 | 21 | A    "A Portion Of Michelle Phan's Stock Repurchase Payment |
| 10:49 | 22 | Was Transferred To EA 4613." |
| 10:49 | 23 | Q    And it looks like it's a two-page exhibit? |
| 10:49 | 24 | A    That's correct. |
| 10:49 | 25 | Q    So if we could go to the second page and finish the |

| | | |
|---|---|---|
| 10:49 | 1 | name, the title of the chart, please. |
| 10:49 | 2 | A    So the full title of the chart would be:  "A Portion Of |
| 10:49 | 3 | Michelle Phan's Stock Repurchase Payment Was Transferred To |
| 10:49 | 4 | EA 4613 And Was Used To Pay EA's Bankruptcy Counsel Which |
| 10:49 | 5 | Paid The IRS." |
| 10:49 | 6 | Q    Starting on page 1, could you please describe what this |
| 10:49 | 7 | chart reflects. |
| 10:49 | 8 |             MR. AVENATTI:  Objection, Your Honor, 401, 403. |
| 10:49 | 9 |             THE COURT:  Overruled. |
| 10:49 | 10 |             THE WITNESS:  Starting on the left, we have the |
| 10:49 | 11 | balance of the client trust account associated with Michelle |
| 10:49 | 12 | Phan's stock repurchase; and on March 15th, 2018, that |
| 10:50 | 13 | account made a $3 million transfer to EA 4613. |
| 10:50 | 14 | BY MR. WYMAN: |
| 10:50 | 15 | Q    Then going to page 2, what does this page reflect? |
| 10:50 | 16 |             MR. AVENATTI:  Same objections, Your Honor. |
| 10:50 | 17 |             THE COURT:  Overruled. |
| 10:50 | 18 |             THE WITNESS:  On page 2 we start with that same |
| 10:50 | 19 | account 4613, and we see the beginning balance prior to |
| 10:50 | 20 | receiving the $3 million deposit was $1,200.  It then |
| 10:50 | 21 | received $3 million and on that same day transferred $2.8 |
| 10:50 | 22 | million to Sulmeyer Kupetz.  And then approximately 11 days |
| 10:50 | 23 | later, Sulmeyer Kupetz made a payment of $1.5 million to the |
| 10:50 | 24 | IRS. |
| | 25 | |

| | | |
|---|---|---|
| 10:50 | 1 | BY MR. WYMAN: |
| 10:50 | 2 | Q    Now, we have been discussing the second set of payments |
| 10:50 | 3 | that the defendant received in his trust account in |
| 10:51 | 4 | March 2018 for approximately 8.3 million; is that right? |
| 10:51 | 5 | A    That's correct. |
| 10:51 | 6 | Q    And you described in one of the charts how Mr. Tran |
| 10:51 | 7 | received his approximately $147,000; is that right? |
| 10:51 | 8 | A    That's correct. |
| 10:51 | 9 | Q    And Ms. Phan or her entity received a total of two wire |
| 10:51 | 10 | transfers? |
| 10:51 | 11 | A    Yes. |
| 10:51 | 12 | Q    And one of those was for 4 million? |
| 10:51 | 13 | A    Yes, I believe so. |
| 10:51 | 14 | Q    And how much was the other one for approximately? |
| 10:51 | 15 | A    146,000. |
| 10:51 | 16 | Q    Based on your review of the fee agreement and the |
| 10:51 | 17 | settlement agreement and the calculations you performed that |
| 10:51 | 18 | we discussed earlier, how much more was she entitled to |
| 10:51 | 19 | under those agreements? |
| 10:51 | 20 | A    Approximately $4 million. |
| 10:51 | 21 | Q    Based on your review of the bank records associated |
| 10:52 | 22 | with the defendant, did Ms. Phan ever receive that |
| 10:52 | 23 | approximately $4 million that she was owed? |
| 10:52 | 24 | A    No. |
| 10:52 | 25 | Q    Let's look at one more chart that you prepared.  Would |

10:52   1   you please go to Exhibit 456.

10:52   2   A      (Witness complies.)

10:52   3   Q      What is the title of this chart?

10:52   4   A      Most payments made to clients were not directly from

10:52   5   their settlements.

10:52   6   Q      Okay.  Let's start on the left side.  It looks like we

10:52   7   have that same color-coded legend at the top; is that right?

10:52   8   A      That's correct.

10:52   9   Q      And what are these bubbles in blue and yellow on the

10:52   10  left?

10:52   11  A      Those reflect the settlement payments and the deposits

10:52   12  into the client trust accounts.

10:52   13  Q      When you say the settlement payments, whose settlement

10:52   14  payments are you referring to?

10:52   15  A      Those are the settlement payments for the defendants

10:53   16  [sic].

10:53   17  Q      So does this chart relate to all four of the clients we

10:53   18  have been discussing?

10:53   19  A      Yes.

10:53   20          MR. WYMAN:  Then if we could please zoom out.

10:53   21  BY MR. WYMAN:

10:53   22  Q      What are the bubbles and arrows that kind of look like

10:53   23  a spider web on the right?  What does that reflect?

10:53   24  A      The spider web reflects various accounts from which the

10:53   25  defendants received the payments.

| 10:53 | 1 | Q   When you say defendants, do you mean clients? |
| 10:53 | 2 | A   I meant clients, yes. |
| 10:53 | 3 | Q   The bubbles on the right, the green bubbles, what names |
| 10:53 | 4 | are listed there? |
| 10:53 | 5 | A   Geoffrey Johnson, Alexis Gardner, Greg Barela, Michelle |
| 10:53 | 6 | Phan, Pratigya Phan, and Long Tran. |
| 10:53 | 7 | Q   We looked at a handful of -- or four charts that look |
| 10:53 | 8 | similar to this, one for each client.  Is this sort of like |
| 10:53 | 9 | a combination of those charts? |
| 10:53 | 10 | A   That's exactly right. |
| 10:53 | 11 | Q   Going back to the left side, the only bubbles I see, |
| 10:54 | 12 | arrows going to the right of the dashed line, are the ones |
| 10:54 | 13 | from CNB 4705 which received the payments from Personalized |
| 10:54 | 14 | Beauty Discovery.  What does that mean? |
| 10:54 | 15 | A   That means that payments associated with the |
| 10:54 | 16 | Personalized Beauty Discovery/Michelle Phan settlement were |
| 10:54 | 17 | paid to the client. |
| 10:54 | 18 | Q   Other than Ms. Phan who you testified a minute ago |
| 10:54 | 19 | received all but 4 million of her settlement money, did any |
| 10:54 | 20 | of these other clients receive a penny of their settlement |
| 10:54 | 21 | funds? |
| 10:54 | 22 | A   I believe Long Tran did. |
| 10:54 | 23 | Q   Thank you.  That's a good clarification.  I'm referring |
| 10:54 | 24 | to other than Michelle Phan, Long Tran, and Pratigya Phan, |
| 10:55 | 25 | who received money associated with their settlement with |

| | | |
|---|---|---|
| 10:55 | 1 | Personalized Beauty Discovery, did any of the other |
| 10:55 | 2 | clients -- Mr. Johnson, Mr. Barela, Ms. Gardner -- receive a |
| 10:55 | 3 | penny of their settlement funds? |
| 10:55 | 4 | A    No.  That's why there are no arrows from those trust |
| 10:55 | 5 | accounts across the dotted line. |
| 10:55 | 6 |         MR. WYMAN:  Thank you, Mr. Drum.  No further |
| 10:55 | 7 | questions. |
| 10:55 | 8 |         THE COURT:  Mr. Avenatti. |
| 10:55 | 9 |                    CROSS-EXAMINATION |
| 10:55 | 10 | BY MR. AVENATTI: |
| 10:56 | 11 | Q    Mr. Drum, good morning. |
| 10:56 | 12 | A    Good morning. |
| 10:56 | 13 | Q    You and I have never communicated before, correct? |
| 10:57 | 14 | A    That's correct. |
| 10:57 | 15 | Q    What does CPA stand for? |
| 10:57 | 16 | A    Certified public accountant. |
| 10:57 | 17 | Q    And you're licensed in Illinois as a CPA; am I correct? |
| 10:57 | 18 | A    That's correct. |
| 10:57 | 19 | Q    And to get that license, you had to pass an exam that |
| 10:57 | 20 | had four parts; am I correct? |
| 10:57 | 21 | A    That's correct. |
| 10:57 | 22 | Q    Isn't it true that you barely passed that exam? |
| 10:57 | 23 | A    I don't believe that's true. |
| 10:57 | 24 |         MR. AVENATTI:  Your Honor, can I approach? |
| 10:57 | 25 |         THE COURT:  You may. |

| 10:57 | 1 | (Document handed to the witness) |
| 10:58 | 2 | BY MR. AVENATTI: |
| 10:58 | 3 | Q    Mr. Drum, in order to pass the CPA exam, you have to |
| 10:58 | 4 | pass all four parts, correct? |
| 10:58 | 5 | A    That's correct. |
| 10:58 | 6 | Q    And you have to have a score of at least 75 on all four |
| 10:58 | 7 | parts; don't you? |
| 10:58 | 8 | A    That's my recollection. |
| 10:58 | 9 | MR. AVENATTI:  Your Honor, I would offer 1080 as |
| 10:58 | 10 | impeachment. |
| 10:58 | 11 | MR. WYMAN:  Your Honor, objection.  Foundation, |
| 10:58 | 12 | hearsay. |
| 10:58 | 13 | THE COURT:  Lay the foundation. |
| 10:58 | 14 | BY MR. AVENATTI: |
| 10:58 | 15 | Q    Mr. Drum, isn't it true that on one of the parts of the |
| 10:58 | 16 | CPA exam, namely, the part entitled regulation that you took |
| 10:58 | 17 | on January 28th, 2008, you got a score of 77? |
| 10:59 | 18 | A    That's correct. |
| 10:59 | 19 | MR. AVENATTI:  Your Honor, I offer 1080 as |
| 10:59 | 20 | impeachment. |
| 10:59 | 21 | MR. WYMAN:  Same objections, Your Honor. |
| 10:59 | 22 | THE COURT:  Lay the foundation. |
| 10:59 | 23 | BY MR. AVENATTI: |
| 10:59 | 24 | Q    Sir, isn't it true that if you got less than 75, you |
| 10:59 | 25 | failed? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:59 | 1 | MR. WYMAN: Objection. Asked and answered. |
| 10:59 | 2 | THE COURT: Sustained. |
| 10:59 | 3 | BY MR. AVENATTI: |
| 10:59 | 4 | Q Mr. Drum, the minimal score that you could get on that |
| 10:59 | 5 | portion of the exam was 75 in order to pass; isn't that |
| 10:59 | 6 | true? |
| 10:59 | 7 | MR. WYMAN: Same objection. |
| 10:59 | 8 | THE COURT: Sustained. |
| 10:59 | 9 | BY MR. AVENATTI: |
| 10:59 | 10 | Q Sir, you barely passed one of the four portions of the |
| 10:59 | 11 | exam when you took it; isn't that true? |
| 10:59 | 12 | MR. WYMAN: Same objection. |
| 10:59 | 13 | THE COURT: Sustained. |
| 10:59 | 14 | BY MR. AVENATTI: |
| 10:59 | 15 | Q Sir, when you took the exam, what did you understand |
| 10:59 | 16 | you had to get in order to become a CPA? |
| 10:59 | 17 | MR. WYMAN: Same objection and relevance, 403. |
| 11:00 | 18 | THE COURT: Sustained. |
| 11:00 | 19 | BY MR. AVENATTI: |
| 11:00 | 20 | Q Sir, when you became licensed as a CPA and you took the |
| 11:00 | 21 | regulatory portion of the exam, what did that deal with? |
| 11:00 | 22 | MR. WYMAN: Objection. Relevance, 403. |
| 11:00 | 23 | THE COURT: Overruled. |
| 11:00 | 24 | THE WITNESS: I believe the regulatory section is |
| 11:00 | 25 | primarily tax-related accounting issues. |

| | | |
|---|---|---|
| 11:00 | 1 | BY MR. AVENATTI: |
| 11:00 | 2 | Q    The regulatory section of the CPA exam, sir, isn't it |
| 11:00 | 3 | true that that deals with the regulation of accountants |
| 11:00 | 4 | including legal and ethical requirements? |
| 11:00 | 5 | A    There is also an ethics portion of the exam and -- |
| 11:00 | 6 | MR. AVENATTI:  Move to strike. |
| 11:00 | 7 | Can I have the question read back? |
| 11:00 | 8 | THE COURT:  You may. |
| 11:00 | 9 | (Record read) |
| 11:00 | 10 | THE WITNESS:  I don't know that that's true. |
| 11:01 | 11 | BY MR. AVENATTI: |
| 11:01 | 12 | Q    Well, sir, you took the portion of the exam, right? |
| 11:01 | 13 | A    I did. |
| 11:01 | 14 | Q    Okay.  And as you sit here today, you don't recall that |
| 11:01 | 15 | that portion dealt with regulations of accountants and legal |
| 11:01 | 16 | and ethical issues?  Is that your testimony? |
| 11:01 | 17 | A    I don't recall the specificity of what that portion of |
| 11:01 | 18 | the exam related to. |
| 11:01 | 19 | Q    Do you dispute that? |
| 11:01 | 20 | A    I have no basis to dispute that. |
| 11:01 | 21 | Q    Switching topics, how long have you been providing CPA |
| 11:02 | 22 | services on this matter that is pending in this court? |
| 11:02 | 23 | A    I believe I started work on this sometime in late 2018. |
| 11:02 | 24 | Q    So over two-and-a-half years? |
| 11:02 | 25 | A    Yes. |

| | | |
|---|---|---|
| 11:02 | 1 | Q    And have you met with the government in connection with |
| 11:02 | 2 | your work? |
| 11:02 | 3 | A    Not in person. |
| 11:02 | 4 | Q    So the first time you met anyone from the government in |
| 11:02 | 5 | connection with this case was today or yesterday? |
| 11:02 | 6 | A    No.  The first time was on Monday. |
| 11:02 | 7 | Q    Everything else was done by phone and e-mail? |
| 11:02 | 8 | A    That's correct. |
| 11:02 | 9 | Q    And you were aware beginning in 2018 that this was a |
| 11:02 | 10 | matter pending here in the state of California, correct? |
| 11:02 | 11 | A    Yes. |
| 11:03 | 12 | Q    How did you know that? |
| 11:03 | 13 | MR. WYMAN:  Objection.  Relevance. |
| 11:03 | 14 | THE COURT:  Overruled. |
| 11:03 | 15 | THE WITNESS:  That was my understanding from my |
| 11:03 | 16 | discussions with counsel. |
| 11:03 | 17 | BY MR. AVENATTI: |
| 11:03 | 18 | Q    When you say counsel, who are you referring to? |
| 11:03 | 19 | A    The government. |
| 11:03 | 20 | Q    Mr. Sagel? |
| 11:03 | 21 | A    Yes.  I spoke with Mr. Sagel. |
| 11:03 | 22 | Q    Well, I agree you spoke with Mr. Sagel.  I'm talking |
| 11:03 | 23 | about this particular issue, sir.  Who informed you that the |
| 11:03 | 24 | matter was taken in California?  Was that Mr. Sagel? |
| 11:03 | 25 | A    I don't recall who it was. |

| | | |
|---|---|---|
| 11:03 | 1 | Q    Was it Mr. Andre? |
| 11:03 | 2 | A    I don't recall. |
| 11:03 | 3 | Q    Are you licensed in the state of California as an |
| 11:03 | 4 | accountant, sir? |
| 11:03 | 5 | A    No, I'm not. |
| 11:03 | 6 | Q    What is the California Board of Accountancy? |
| 11:04 | 7 | A    I don't know. |
| 11:04 | 8 | Q    Have you ever heard of that? |
| 11:04 | 9 | A    I'm aware that each state has a board of accountancy or |
| 11:04 | 10 | similarly titled organization. |
| 11:04 | 11 | Q    And the California Board of Accountancy sets rules and |
| 11:04 | 12 | regulations relating to who can come into the state of |
| 11:04 | 13 | California and practice accountancy; don't they? |
| 11:04 | 14 | MR. WYMAN:  Objection.  Foundation. |
| 11:04 | 15 | THE COURT:  Overruled. |
| 11:04 | 16 | THE WITNESS:  That's what I would expect the Board |
| 11:04 | 17 | Of Accountancy of California to do. |
| 11:04 | 18 | BY MR. AVENATTI: |
| 11:04 | 19 | Q    And you are aware, are you not, sir, that if you come |
| 11:04 | 20 | into the state of California and you practice accountancy |
| 11:04 | 21 | without being licensed in the state, that's a criminal |
| 11:04 | 22 | misdemeanor.  You're aware of that, right? |
| 11:04 | 23 | MR. WYMAN:  Calls for a legal conclusion. |
| 11:04 | 24 | THE COURT:  Sustained. |
| | 25 | |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|--|--|--|
| 11:04 | 1 | BY MR. AVENATTI: |
| 11:04 | 2 | Q   Sir, did you ever have any communications with the |
| 11:05 | 3 | government wherein they informed you that you had to be |
| 11:05 | 4 | licensed in the state of California in order to practice |
| 11:05 | 5 | accountancy within the borders of the state? |
| 11:05 | 6 | A   No.  They were aware of my credentials. |
| 11:05 | 7 | Q   And they never told you that? |
| 11:05 | 8 | A   We did not have that discussion. |
| 11:05 | 9 | Q   Did you ever ask anybody? |
| 11:05 | 10 | A   I don't believe I did. |
| 11:05 | 11 | Q   Have you made any effort over the last two-and-a-half |
| 11:05 | 12 | years while you have been working on this matter pending in |
| 11:05 | 13 | the state of California to become licensed as an accountant |
| 11:06 | 14 | in California? |
| 11:06 | 15 | A   No, I have not. |
| 11:06 | 16 | Q   Now, prior to testifying in this case, you have never |
| 11:06 | 17 | testified in a court of law in connection with any other |
| 11:06 | 18 | accounting matter; isn't that true? |
| 11:06 | 19 | A   That's correct. |
| 11:06 | 20 | Q   Have you ever testified in any criminal matter? |
| 11:06 | 21 | A   No. |
| 11:06 | 22 | Q   Have you ever done any accounting work for any criminal |
| 11:06 | 23 | matter, a pending criminal case? |
| 11:07 | 24 | A   I don't believe so. |
| 11:07 | 25 | Q   How was it that you became retained by the government |

| | | |
|---|---|---|
| 11:07 | 1 | to work on this case? |
| 11:07 | 2 | A    The government first contacted my colleague and |
| 11:07 | 3 | described the matter, and the government decided to hire |
| 11:07 | 4 | Analysis Group.  My colleague reached out to me and thought |
| 11:07 | 5 | it would be a good fit for my area of expertise. |
| 11:07 | 6 | Q    Who is your colleague? |
| 11:07 | 7 | A    Chris Borek. |
| 11:07 | 8 | Q    Please spell it for the court reporter. |
| 11:07 | 9 | A    C-h-r-i-s, B-o-r-e-k. |
| 11:08 | 10 | Q    Did Chris Borek do any work in connection with this |
| 11:08 | 11 | matter? |
| 11:08 | 12 | A    Yes. |
| 11:08 | 13 | Q    For how long? |
| 11:08 | 14 | A    Chris was involved tangentially I would say throughout |
| 11:08 | 15 | the matter. |
| 11:08 | 16 | Q    Is he still at Analysis Group? |
| 11:08 | 17 | A    Yes, he is. |
| 11:08 | 18 | Q    So he has been working on this matter as well for |
| 11:08 | 19 | two-and-a-half years, right? |
| 11:08 | 20 | A    Yes. |
| 11:08 | 21 | Q    Is there an engagement letter relating to the services |
| 11:08 | 22 | that you provided the government? |
| 11:08 | 23 | A    Yes. |
| 11:08 | 24 | Q    Have you reviewed it? |
| 11:08 | 25 | A    I believe so. |

| | | |
|---|---|---|
| 11:08 | 1 | Q    When did you do that? |
| 11:08 | 2 | A    I can't remember. |
| 11:08 | 3 | Q    Was it this week or two years ago? |
| 11:08 | 4 | A    I would say both. |
| 11:08 | 5 | Q    So you've reviewed it on multiple times? |
| 11:09 | 6 | A    Yes. |
| 11:09 | 7 | Q    Throughout the engagement? |
| 11:09 | 8 | A    I've referred to it, yes. |
| 11:09 | 9 | Q    And did you review it when it was sent to the |
| 11:09 | 10 | government? |
| 11:09 | 11 | A    I would imagine so.  There is an engagement between us |
| 11:09 | 12 | and the government.  I don't know whether it was sent to the |
| 11:09 | 13 | government or we sent it to the government. |
| 11:09 | 14 | Q    Well, strike that.  Have you approved the engagement |
| 11:09 | 15 | letter? |
| 11:09 | 16 | A    I don't believe I'm a signatory to the agreement |
| 11:09 | 17 | between the government and the office group. |
| 11:09 | 18 | Q    Well, that's not exactly what I asked.  Have you |
| 11:09 | 19 | approved the engagement letter? |
| 11:09 | 20 | A    I'm not quite sure what you mean. |
| 11:09 | 21 | Q    Is there anything in the engagement letter that you |
| 11:09 | 22 | disagree with? |
| 11:09 | 23 | A    I don't think so. |
| 11:10 | 24 | Q    What does the engagement letter provide? |
| 11:10 | 25 | A    The agreement between the government and Analysis Group |

| | | |
|---|---|---|
| 11:10 | 1 | would outline the general nature of Analysis Group's work |
| 11:10 | 2 | and the fees that the government agreed to. |
| 11:10 | 3 | Q    Including the hourly fees, correct? |
| 11:10 | 4 | A    Yes. |
| 11:10 | 5 | Q    And do you approve of the hourly fee associated with |
| 11:10 | 6 | you that's in that engagement letter? |
| 11:10 | 7 | A    I'm not sure what you mean by whether I approved of it. |
| 11:10 | 8 | Q    Do you agree with it? |
| 11:10 | 9 | A    It's what it is. |
| 11:10 | 10 | Q    I understand that.  What is the hourly fee for you in |
| 11:10 | 11 | the engagement letter? |
| 11:10 | 12 | A    I believe it's $495. |
| 11:10 | 13 | Q    Per hour, correct? |
| 11:10 | 14 | A    Correct. |
| 11:10 | 15 | Q    And that's been true for two-and-a-half years, right? |
| 11:11 | 16 | A    That's correct. |
| 11:11 | 17 | Q    Did you ever tell anyone that you thought that was too |
| 11:11 | 18 | little or too much? |
| 11:11 | 19 | A    No.  I don't have any control over my hourly rate. |
| 11:11 | 20 | Q    Is Chris junior or senior to you? |
| 11:11 | 21 | A    Chris is senior to me. |
| 11:11 | 22 | Q    How have you communicated with the Assistant U.S. |
| 11:11 | 23 | Attorneys and agents during the last two-and-a-half years? |
| 11:11 | 24 | A    Via e-mail and phone calls. |
| 11:12 | 25 | Q    Including e-mails from you, correct? |

| | | |
|---|---|---|
| 11:12 | 1 | A    Correct. |
| 11:12 | 2 | Q    And have you over the last two-and-a-half years been in |
| 11:12 | 3 | fairly regular communication with the Assistant U.S. |
| 11:12 | 4 | Attorneys and the agents in connection with this matter? |
| 11:12 | 5 | A    Yes. |
| 11:12 | 6 | Q    Including by e-mail? |
| 11:12 | 7 | A    Yes. |
| 11:12 | 8 | Q    Who have you communicated with by e-mail? |
| 11:12 | 9 | A    Alex Wyman, Brett Sagel, and prior to that Julian |
| 11:12 | 10 | Andre. |
| 11:12 | 11 | Q    Anyone else from the prosecution or investigative |
| 11:12 | 12 | teams? |
| 11:12 | 13 | A    Yes, but I can't recall their name. |
| 11:12 | 14 | Q    Was it an agent or an attorney? |
| 11:12 | 15 | A    No.  There are agents on the e-mails as well. |
| 11:13 | 16 | Q    No.  I'm speaking about the name you can't recall. |
| 11:13 | 17 | What do you recall about that person? |
| 11:13 | 18 | A    Well, I listed attorneys, and I know there were agents |
| 11:13 | 19 | on the e-mails, and I can't recall the agents' names. |
| 11:13 | 20 | Q    Before testifying in this case, beginning yesterday, |
| 11:13 | 21 | did anybody ask you to compile those communications that you |
| 11:13 | 22 | had sent to the AUSAs and the agents? |
| 11:13 | 23 | A    No. |
| 11:13 | 24 | Q    Have you had any other written communications with the |
| 11:13 | 25 | government -- and by government, I mean the prosecutors and |

| | | |
|---|---|---|
| 11:13 | 1 | the agents -- other than e-mails? |
| 11:13 | 2 | A    I don't believe so. |
| 11:13 | 3 | Q    Have you ever sent any text messages to any of them? |
| 11:13 | 4 | A    No. |
| 11:14 | 5 | Q    How about letters? |
| 11:14 | 6 | A    No. |
| 11:14 | 7 | Q    Did you ever have any communication with any prosecutor |
| 11:14 | 8 | or any agent where it was discussed that something would not |
| 11:14 | 9 | be put in writing? |
| 11:14 | 10 | A    I don't believe so. |
| 11:14 | 11 | Q    Did you ever provide drafts of the charts that we were |
| 11:14 | 12 | looking at -- and we're going to get to them in a minute. |
| 11:14 | 13 | Did you ever provide any drafts of those charts by e-mail? |
| 11:14 | 14 | A    Yes. |
| 11:14 | 15 | Q    Was that a fairly regular occurrence as you were |
| 11:14 | 16 | working on the charts? |
| 11:14 | 17 | A    There were a handful in the duration, yes. |
| 11:14 | 18 | Q    And was that over the last two-and-a-half years? |
| 11:14 | 19 | A    Yes. |
| 11:14 | 20 | Q    During the last two-and-a-half years, did you make |
| 11:14 | 21 | requests for information, for documents that you wanted to |
| 11:14 | 22 | review, by e-mail? |
| 11:14 | 23 | A    Yes. |
| 11:15 | 24 | Q    Did you pose questions to the agents and the |
| 11:15 | 25 | prosecutors by e-mail that you had along the way? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
11:15   1   A    To clarify, I know I made requests for documents.  And
11:15   2   to answer your question, yes, I had questions.  I don't
11:15   3   think I can say whether those were conveyed via phone calls
11:15   4   or via e-mail.
11:15   5   Q    You're not certain without looking at the e-mails?
11:15   6   A    That's correct.
11:15   7   Q    Generally while you were compiling these charts, these
11:15   8   exhibits that you were asked about, there were times over
11:15   9   the last two-and-a-half years where you would consult with
11:15   10  the government about what the charts showed, correct?
11:15   11  A    That's correct.
11:15   12  Q    And how would you consult with them if you were not
11:15   13  doing it in person?
11:15   14  A    We would consult with them on phone calls.
11:16   15  Q    And would you send a draft of the charts ahead of time
11:16   16  so that they would know what to look at?
11:16   17  A    Yes.
11:16   18  Q    And that would be by e-mail?
11:16   19  A    Correct.
11:16   20  Q    Do you have any estimate as to the number of the
11:16   21  e-mails and phone calls that you had with the prosecutors
11:16   22  and the agents over the last two-and-a-half years?
11:16   23  A    Not a reliable estimate.
11:16   24  Q    It's safe to say there were many, though, correct?
11:16   25  A    Yes.
```

| | | |
|---|---|---|
| 11:16 | 1 | Q    And then how often did you bill for the time that you |
| 11:16 | 2 | spent on this matter? |
| 11:16 | 3 | A    Ideally once a month. |
| 11:16 | 4 | Q    And how would those bills be generated and sent to the |
| 11:17 | 5 | government? |
| 11:17 | 6 | A    They were generated by Analysis Group, and then our |
| 11:17 | 7 | billing department would send them to the government. |
| 11:17 | 8 | Q    Does anyone review the bills before they're sent to the |
| 11:17 | 9 | government to make sure they're accurate? |
| 11:17 | 10 | A    Yes. |
| 11:17 | 11 | Q    Who reviewed the bills over the last two-and-a-half |
| 11:17 | 12 | years to make sure they were accurate? |
| 11:17 | 13 | A    I did. |
| 11:17 | 14 | Q    So you would get draft bills and then you would approve |
| 11:17 | 15 | them, and then they would be sent to the government, |
| 11:17 | 16 | correct? |
| 11:17 | 17 | A    That's correct. |
| 11:17 | 18 | Q    And is that generally what happened for the last |
| 11:17 | 19 | two-and-a-half years? |
| 11:17 | 20 | A    Yes. |
| 11:17 | 21 | Q    And would those bills detail how much time was spent on |
| 11:17 | 22 | each individual task? |
| 11:17 | 23 | A    It would detail how much time was spent and a general |
| 11:17 | 24 | description of the tasks that were accomplished. |
| 11:17 | 25 | Q    And in connection with you approving the bills before |

| 11:17 | 1 | they were sent, you would make sure that that information |
| 11:17 | 2 | was accurate; am I correct? |
| 11:18 | 3 | A    That's correct. |
| 11:18 | 4 | Q    And you would correct any inaccuracies before they were |
| 11:18 | 5 | sent; is that right?  Was that your custom and practice? |
| 11:18 | 6 | A    Yes. |
| 11:18 | 7 | Q    So is it safe to say if you were billing on a monthly |
| 11:18 | 8 | basis, there's approximately 30 bills that were sent to the |
| 11:18 | 9 | government in connection with the subject matter of your |
| 11:18 | 10 | testimony in this case? |
| 11:18 | 11 | A    I would expect the number to be lower because there |
| 11:18 | 12 | were months in which Analysis Group did not perform those |
| 11:18 | 13 | services. |
| 11:18 | 14 | Q    At least 20 bills relating to the subject matter of |
| 11:18 | 15 | your testimony, correct? |
| 11:18 | 16 | A    That may be a reasonable estimate. |
| 11:18 | 17 | Q    And when I was asking about the e-mails, you understood |
| 11:18 | 18 | me to be asking about e-mails relating to the subject matter |
| 11:18 | 19 | of your testimony, correct? |
| 11:18 | 20 | A    Yes. |
| 11:19 | 21 | Q    Before taking the stand, did anybody ask you to gather |
| 11:19 | 22 | the bills? |
| 11:19 | 23 | A    No. |
| 11:19 | 24 | Q    What were you asked to do in connection with this case, |
| 11:19 | 25 | and who asked you to do it? |

| | |
|---|---|
| 11:19 | 1 |
| 11:19 | 2 |
| 11:19 | 3 |
| 11:19 | 4 |
| 11:19 | 5 |
| 11:19 | 6 |
| 11:19 | 7 |
| 11:19 | 8 |
| 11:19 | 9 |
| 11:20 | 10 |
| 11:20 | 11 |
| 11:20 | 12 |
| 11:20 | 13 |
| 11:20 | 14 |
| 11:20 | 15 |
| 11:20 | 16 |
| 11:20 | 17 |
| 11:20 | 18 |
| 11:20 | 19 |
| 11:20 | 20 |
| 11:20 | 21 |
| 11:20 | 22 |
| 11:21 | 23 |
| 11:21 | 24 |
| 11:21 | 25 |

1    MR. WYMAN:  Objection.  Vague.

2    THE COURT:  Overruled.

3    THE WITNESS:  I was asked to trace what happened

4 to the money that was deposited into client trust accounts,

5 and I was asked to trace the source of payments that were

6 made to the four clients.

7 BY MR. AVENATTI:

8 Q    The four clients or the five clients?

9 A    The clients associated with the four matters.

10    MR. AVENATTI:  Your Honor, could I have a sidebar?

11    THE COURT:  No.

12    MR. AVENATTI:  The request relates to Jencks, but

13 I'll ask my next question.

14 BY MR. AVENATTI:

15 Q    Who determined, sir, what you reviewed in connection

16 with your work in this case?

17 A    Could you clarify what you mean by who determines.

18 Q    Well, what I'm trying to figure out is did you ask for

19 information, or were you just given information?  So here is

20 my question:  Who determined what documents you reviewed in

21 connection with the work you did in connection with this

22 case?

23 A    Both were true.  I was provided with information and

24 performed analyses and asked for additional information and

25 received additional information.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:21    1    Q    So it did not start off with you asking for

11:21    2    information. It started off with the government giving you

11:21    3    information, correct?

11:21    4    A    The very first step I suppose is a conversation with

11:21    5    the government. Obviously I wanted what they wanted me to

11:21    6    do.

11:21    7    Q    And what was the next step?

11:21    8    A    I can't recall if the next step was me asking,

11:21    9    requesting the information or the government providing or

11:21   10    telling me what they were going to provide. I don't recall.

11:21   11    Q    What do you recall receiving from the government

11:21   12    initially?

11:22   13    A    I believe my earliest recollection of what we received

11:22   14    was a database of bank information, bank records.

11:22   15    Q    What do you mean when you say a database?

11:22   16    A    A large spreadsheet that contains banking transactions.

11:22   17    Q    You didn't create that spreadsheet; did you?

11:22   18    A    I did not. I did verify the accuracy, though.

11:22   19         MR. AVENATTI: Move is to strike after I did not

11:22   20    as nonresponsive, Your Honor.

11:22   21         THE COURT: It will be stricken.

11:22   22         MR. AVENATTI: Thank you.

11:22   23    BY MR. AVENATTI:

11:22   24    Q    Now, so one of the first things you received, if not

11:22   25    the first thing, was a database of banking transactions that

11:22  1   the government provided to you, right?

11:22  2   A    That's my recollection.

11:22  3   Q    And you later came to learn that that database was not

11:23  4   prepared by a bank; was it?

11:23  5   A    I understood that database was prepared by the

11:23  6   government.

11:23  7   Q    So when I asked you it was not prepared by a bank, that

11:23  8   was correct, right?

11:23  9   A    It was based on the information that I was provided by

11:23  10  the government.

11:23  11          MR. AVENATTI:  Move to strike as nonresponsive.

11:23  12          THE COURT:  It will be stricken.

11:23  13  BY MR. AVENATTI:

11:23  14  Q    Mr. Drum, please just listen to my question.  And if

11:23  15  you need me to rephrase it or explain it because sometimes I

11:23  16  ask a bad question, just ask me.  Okay?

11:23  17  A    Okay.

11:23  18  Q    All right.  When you received the database, you

11:23  19  understood that no bank had prepared that database, right?

11:23  20  A    Yes.

11:23  21  Q    And the government informed you at the time that the

11:23  22  government had prepared this database, correct?

11:23  23  A    That's correct.

11:24  24  Q    Do you know who at the government prepared this

11:24  25  database and how they prepared it?

| | | |
|---|---|---|
| 11:24 | 1 | A   I don't know who prepared the database. |
| 11:24 | 2 | Q   Do you know how they prepared it? |
| 11:24 | 3 | A   I know that it was based on the bank records. |
| 11:24 | 4 | Q   Well, because that's what they told you, right?  Yes? |
| 11:24 | 5 | A   Yes. |
| 11:24 | 6 | Q   Did you ever talk to anybody who prepared the database? |
| 11:24 | 7 | A   I don't know. |
| 11:24 | 8 | Q   Did you ever ask to speak with anyone that actually |
| 11:24 | 9 | prepared the database? |
| 11:24 | 10 | A   I don't believe so. |
| 11:24 | 11 | Q   All right.  So the database was one of the very first |
| 11:24 | 12 | things you were provided.  What else do you remember being |
| 11:24 | 13 | provided? |
| 11:24 | 14 | A   I was provided access to EA's QuickBooks records.  I |
| 11:24 | 15 | was provided with the settlement agreements and the |
| 11:25 | 16 | retention agreements, and I was provided with thousands of |
| 11:25 | 17 | pages of pdf bank records. |
| 11:25 | 18 | Q   Were you ever provided with anything else? |
| 11:25 | 19 | A   I believe so. |
| 11:25 | 20 | Q   What else? |
| 11:25 | 21 | A   We were provided -- I was provided with information |
| 11:25 | 22 | that relates to the other matter.  I don't want to confuse |
| 11:25 | 23 | the two, but -- |
| 11:25 | 24 | Q   What other information were you provided relating to |
| 11:25 | 25 | the subject matter of your testimony? |

11:25  1   A    I don't recall anything else.

11:26  2   Q    Do you recall asking for anything else over the last

11:26  3   two-and-a-half years other than what you have just

11:26  4   described?

11:26  5   A    No, I don't recall.

11:26  6   Q    Have you now told the jury everything that you reviewed

11:26  7   in connection with this case?

11:26  8   A    Everything that I recall.

11:26  9   Q    What is Tabs?

11:26  10  A    I understand Tabs is a term used to describe the

11:26  11  spreadsheets that Judy Regnier e-mailed that contained

11:26  12  client-related expenses.

11:27  13           MR. AVENATTI:  One moment, Your Honor.

11:27  14           (Pause in proceedings)

11:27  15  BY MR. AVENATTI:

11:27  16  Q    Do you see what I have written there, the big word

11:27  17  "Tabs" with a circle around it?

11:27  18  A    I see that.

11:27  19  Q    You understand that Tabs is not just a couple of

11:27  20  printouts that Judy Regnier provided.  You understand that

11:27  21  Tabs is an accounting program; do you not?

11:28  22  A    I don't know that.

11:28  23  Q    No one from the government ever told you about Tabs?

11:28  24  A    Only in connection to the spreadsheets that Judy

11:28  25  Regnier e-mailed.

```
11:28   1   Q    No one from the government ever told you that there was
11:28   2   an accounting program that tracked the costs for the client
11:28   3   matters and that the program was called Tabs?  Yes or no?
11:28   4   A    I understood that Tabs was a system that tracked
11:28   5   client-related expenses which is contained in the
11:28   6   spreadsheets Judy Regnier e-mailed.
11:28   7            MR. AVENATTI:  Move to strike, Your Honor.
11:28   8            THE COURT:  Denied.
11:28   9   BY MR. AVENATTI:
11:28   10  Q    Sir, please listen to my question.  Did anyone from the
11:29   11  government ever tell you that there was a software program
11:29   12  called Tabs where the firm tracked client costs?
11:29   13           MR. WYMAN:  Asked and answered.
11:29   14           THE COURT:  Overruled.
11:29   15           THE WITNESS:  I believe that is how the government
11:29   16  described it to me.
11:29   17  BY MR. AVENATTI:
11:29   18  Q    Did you ever say, "I want to see the software database
11:29   19  Tabs"?
11:29   20  A    No, I did not.
11:29   21  Q    Did you ever have any other communications with the
11:29   22  government about the data in the Tabs database?
11:29   23  A    No.
11:29   24  Q    Is it your understanding -- well, strike that.  Do you
11:30   25  have any understanding beyond the two draft documents that
```

11:30 **1**    you referred to that Ms. Regnier sent, do you have any

11:30 **2**    understanding of what was tracked in Tabs for the clients?

11:30 **3**    Do you know?

11:30 **4**    A    Other than those two spreadsheets, no.

11:30 **5**    Q    Before testifying in the case and in connection with

11:30 **6**    the over $600,000 that your firm was paid, did you ever make

11:30 **7**    any effort to find out what was in Tabs?

11:30 **8**    A    I did not.

11:30 **9**    Q    You understood that in connection with your testimony,

11:30 **10**    you had to figure out what the actual out-of-pocket costs

11:30 **11**    expended for the clients was, right? You knew you had to

11:30 **12**    figure that out, correct?

11:30 **13**    A    Yes.

11:31 **14**    Q    Now, you understood, sir, did you not, before taking

11:31 **15**    the stand that you, unlike other witnesses who have

11:31 **16**    testified, you had the ability to actually review witness

11:31 **17**    trial testimony before you testified? You understood that,

11:31 **18**    correct?

11:31 **19**    A    I don't think I understood that.

11:31 **20**    Q    Did you ever ask to review any of the trial testimony

11:31 **21**    thus far in the case that has been provided to the jury?

11:31 **22**    A    No, I don't believe I did.

11:31 **23**    Q    Before taking the stand, did you ever ask anybody, hey,

11:32 **24**    what did Judy Regnier testify to as it relates to the

11:32 **25**    accounting of Eagan Avenatti?

| 11:32 | 1 | A    I did not ask that. |
| 11:32 | 2 | Q    Sir, did you understand that in order for you to |
| 11:32 | 3 | competently testify in front of the jury, that you had to |
| 11:32 | 4 | understand how the accounting and the management of the law |
| 11:32 | 5 | firm worked first? |
| 11:32 | 6 |             MR. WYMAN:  Objection.  Argumentative. |
| 11:32 | 7 |             THE COURT:  Overruled. |
| 11:32 | 8 |             THE WITNESS:  Can you ask your question again? |
| 11:32 | 9 |             MR. AVENATTI:  Can I have it read back, please? |
| 11:32 | 10 |             THE COURT:  Yes. |
| 11:32 | 11 |             (Record read) |
| 11:33 | 12 |             THE WITNESS:  The information that I was |
| 11:33 | 13 | provided -- |
| 11:33 | 14 | BY MR. AVENATTI: |
| 11:33 | 15 | Q    Yes or no, sir?  Just answer my question. |
| 11:33 | 16 | A    I'm sorry.  Can I have it -- it's a long question.  Can |
| 11:33 | 17 | I have it read again? |
| 11:33 | 18 |             THE COURT:  Yes. |
| 11:33 | 19 |             (Record read) |
| 11:33 | 20 |             THE WITNESS:  Of a law firm or of the law firm? |
| 11:33 | 21 | BY MR. AVENATTI: |
| 11:33 | 22 | Q    Of the law firm.  Yes or no? |
| 11:33 | 23 | A    No, I don't think I actually did. |
| 11:33 | 24 | Q    Who knows more about how expenses and costs were |
| 11:34 | 25 | tracked at the law firm in your estimation?  You or Judy |

| 11:34 | 1 | Regnier? |
| 11:34 | 2 | MR. AVENATTI: Calls for speculation. |
| 11:34 | 3 | THE COURT: Overruled. |
| 11:34 | 4 | THE WITNESS: I would suspect Judy knows more than |
| 11:34 | 5 | I do. |
| 11:34 | 6 | BY MR. AVENATTI: |
| 11:34 | 7 | Q   Are you aware that Ms. Regnier testified repeatedly in |
| 11:34 | 8 | response to questions by me before this jury that in order |
| 11:34 | 9 | to figure out the costs for a client, you had to look at |
| 11:34 | 10 | QuickBooks and Tabs and specifically the electronic data? |
| 11:34 | 11 | Are you aware of that? |
| 11:34 | 12 | A   No. |
| 11:34 | 13 | Q   The government never told you that before you took the |
| 11:35 | 14 | stand; did they? |
| 11:35 | 15 | A   No. |
| 11:35 | 16 | Q   And despite your firm being paid over $600,000, you |
| 11:35 | 17 | never asked; did you? |
| 11:35 | 18 | A   I never asked what? |
| 11:35 | 19 | Q   You never asked what data would have to be reviewed in |
| 11:35 | 20 | order to properly figure out what a client was owed; did |
| 11:35 | 21 | you? |
| 11:35 | 22 | A   I asked for information about client-related expenses, |
| 11:35 | 23 | yes, I did. |
| 11:35 | 24 | Q   You asked the government for that? |
| 11:35 | 25 | A   Yes. |

| | | |
|---|---|---|
| 11:35 | 1 | Q    But they didn't give you the Tabs data other than the |
| 11:35 | 2 | two draft spreadsheets; isn't that true? |
| 11:36 | 3 | A    They did not give me Tabs data other than the two |
| 11:36 | 4 | spreadsheets.  That's correct. |
| 11:36 | 5 | Q    Did the government inform you in connection with your |
| 11:36 | 6 | work that in fact on at least two occasions over the last |
| 11:36 | 7 | two-and-a-half years before the trial, Ms. Regnier told the |
| 11:36 | 8 | government about Tabs? |
| 11:36 | 9 | A    I'm sorry.  What was the first part of the question? |
| 11:36 | 10 | MR. AVENATTI:  May I have it read back, Your |
| 11:36 | 11 | Honor? |
| 11:36 | 12 | THE COURT:  Yes. |
| 11:36 | 13 | (Record read) |
| 11:36 | 14 | THE WITNESS:  No, I don't believe the government |
| 11:36 | 15 | conveyed that to me. |
| 11:36 | 16 | BY MR. AVENATTI: |
| 11:36 | 17 | Q    Now, in connection with your work, did you ever ask to |
| 11:37 | 18 | speak with Ms. Regnier? |
| 11:37 | 19 | A    I did not. |
| 11:37 | 20 | Q    Did you ever ask to speak with Mr. Johnson? |
| 11:37 | 21 | A    No. |
| 11:37 | 22 | Q    Ms. Gardner? |
| 11:37 | 23 | A    No. |
| 11:37 | 24 | Q    Ms. Phan? |
| 11:37 | 25 | A    Nope. |

| | | |
|---|---|---|
| 11:37 | 1 | Q    Mr. Tran? |
| 11:37 | 2 | A    Nope. |
| 11:37 | 3 | Q    How about Mr. Barela, the government's star witness? |
| 11:37 | 4 | A    No. |
| 11:37 | 5 | MR. WYMAN:  Objection.  Argumentative. |
| 11:37 | 6 | THE COURT:  Sustained.  Reask the question. |
| 11:37 | 7 | The answer is stricken. |
| 11:37 | 8 | BY MR. AVENATTI: |
| 11:37 | 9 | Q    How about Mr. Barela? |
| 11:37 | 10 | A    No. |
| 11:37 | 11 | Q    And you never asked to speak with me or communicate |
| 11:37 | 12 | with me; did you? |
| 11:37 | 13 | A    No. |
| 11:37 | 14 | Q    Or Mr. Steward? |
| 11:37 | 15 | A    No. |
| 11:37 | 16 | Q    Or Ms. Cummings-Cefali, correct? |
| 11:38 | 17 | A    Correct.  I did not ask to speak with her. |
| 11:38 | 18 | Q    Did you review any transcripts or interview reports or |
| 11:38 | 19 | notes from the government relating to any of the clients |
| 11:38 | 20 | before you testified, starting yesterday? |
| 11:38 | 21 | A    I'm sorry.  Starting yesterday? |
| 11:38 | 22 | Q    Maybe I asked a bad question.  I'll strike the |
| 11:38 | 23 | question. |
| 11:38 | 24 | Before testifying for the first time yesterday in |
| 11:38 | 25 | this case, did you review any transcripts or interview notes |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:38 | 1 | from any interviews of any of the clients? |
| 11:38 | 2 | A    I don't recall reviewing the interview notes. |
| 11:38 | 3 | Q    Did you review any interview notes or transcripts from |
| 11:39 | 4 | any meetings that Ms. Regnier had with the government? |
| 11:39 | 5 | A    I don't believe so. |
| 11:39 | 6 | Q    So am I correct that as you sit here today, you have no |
| 11:39 | 7 | idea what Ms. Regnier has said in the last three years about |
| 11:39 | 8 | the accounting at Eagan Avenatti?  Am I correct about that? |
| 11:39 | 9 | A    That's correct. |
| 11:40 | 10 | Q    And am I correct that as you sit here today, you have |
| 11:40 | 11 | no idea what any client, any of the clients that you |
| 11:40 | 12 | testified about, you have no idea what any of them have told |
| 11:40 | 13 | the government or the jury?  Am I correct about that? |
| 11:40 | 14 | A    That is correct. |
| 11:40 | 15 | Q    So you have no idea what they have actually testified |
| 11:40 | 16 | to relating to what they were owed or not owed; is that |
| 11:40 | 17 | right? |
| 11:40 | 18 | MR. WYMAN:  Objection.  Asked and answered. |
| 11:40 | 19 | THE COURT:  Sustained. |
| 11:40 | 20 | BY MR. AVENATTI: |
| 11:40 | 21 | Q    Are you aware of any representations that have been |
| 11:40 | 22 | made by any client as to monies they were allegedly due? |
| 11:40 | 23 | MR. WYMAN:  Same objection. |
| 11:40 | 24 | THE COURT:  Overruled. |
| 11:40 | 25 | THE WITNESS:  Could I have the question read back |

| | | |
|---|---|---|
| 11:40 | 1 | to me? |
| 11:40 | 2 | (Record read) |
| 11:41 | 3 | THE WITNESS:  I have seen press that relates to |
| 11:41 | 4 | the clients who testified. |
| 11:41 | 5 | BY MR. AVENATTI: |
| 11:41 | 6 | Q    During the trial? |
| 11:41 | 7 | A    I believe there's -- |
| 11:41 | 8 | Q    I just want you to answer my question.  You have read |
| 11:41 | 9 | this press during the trial; is that right? |
| 11:41 | 10 | A    Yes, that's correct. |
| 11:41 | 11 | Q    Is that on social media? |
| 11:41 | 12 | A    No.  It was on regular media. |
| 11:41 | 13 | Q    And within what you reviewed within the press were |
| 11:41 | 14 | quotes of actual witness testimony, right? |
| 11:41 | 15 | A    I don't recall if they were direct quotes or not. |
| 11:41 | 16 | Q    Well, I asked you about what people have said, and you |
| 11:41 | 17 | referred to the press.  So did they describe what witnesses |
| 11:41 | 18 | have testified to? |
| 11:42 | 19 | A    The press described it, yes. |
| 11:42 | 20 | Q    And that was during the trial, correct? |
| 11:42 | 21 | A    Correct. |
| 11:42 | 22 | Q    But other than that, you don't have any idea what |
| 11:42 | 23 | clients have claimed I allegedly did, right? |
| 11:42 | 24 | A    Other than -- |
| 11:42 | 25 | Q    I'm talking about what clients have stated, sir. |

| | | |
|---|---|---|
| 11:42 | 1 | That's what I -- I want you to focus, please, on my |
| 11:42 | 2 | question. |
| 11:42 | 3 | A    Other than what I have seen in the media, I don't have |
| 11:42 | 4 | any information about what they have stated in court. |
| 11:42 | 5 | Q    Did you ever ask for any information that you were not |
| 11:42 | 6 | provided? |
| 11:42 | 7 | A    I don't believe so. |
| 11:43 | 8 | Q    Now, other people have worked on this case along with |
| 11:43 | 9 | you; am I correct? |
| 11:43 | 10 | A    Yes. |
| 11:43 | 11 | Q    Okay.  Who else has worked on the case? |
| 11:43 | 12 | A    I worked with Evan Carter. |
| 11:43 | 13 | Q    Who else? |
| 11:43 | 14 | A    Ryan Keithahn. |
| 11:43 | 15 | Q    Anyone else? |
| 11:43 | 16 | A    Another analyst in the Analysis Group, My Khe Nguyen. |
| 11:44 | 17 | Q    Anyone else? |
| 11:44 | 18 | A    No. |
| 11:44 | 19 | Q    So the four of you plus Chris, correct? |
| 11:44 | 20 | A    Yes. |
| 11:44 | 21 | Q    Those have been the four billers on the matter since it |
| 11:44 | 22 | came in? |
| 11:44 | 23 | A    That's what I would expect.  There may be others that I |
| 11:44 | 24 | am not recalling. |
| 11:44 | 25 | Q    And have you been the most senior person other than |

| | | |
|---|---|---|
| 11:44 | 1 | Chris working on the matter? |
| 11:44 | 2 | A    Yes. |
| 11:44 | 3 | Q    Whose has billed the most time on the matter? |
| 11:44 | 4 | A    I don't know. |
| 11:44 | 5 | Q    What are the rates of the other individuals' billing |
| 11:44 | 6 | time on the matters? |
| 11:44 | 7 |         MR. WYMAN:  Objection, 401, 403. |
| 11:44 | 8 |         THE COURT:  Overruled. |
| 11:44 | 9 |         THE WITNESS:  I don't recall. |
| 11:44 | 10 | BY MR. AVENATTI: |
| 11:44 | 11 | Q    Well, can you estimate for the jury?  I mean, is it $50 |
| 11:44 | 12 | an hour or a thousand dollars an hour? |
| 11:44 | 13 | A    I would guess between 300 and 500. |
| 11:45 | 14 | Q    Per hour? |
| 11:45 | 15 | A    Correct. |
| 11:45 | 16 | Q    If we had the bills, that would tell us, right? |
| 11:45 | 17 | A    Yes. |
| 11:45 | 18 | Q    How much time has Evan Carter spent on the matter? |
| 11:45 | 19 | A    I don't know. |
| 11:45 | 20 | Q    Is it a little bit?  A lot? |
| 11:45 | 21 | A    It varies over time.  Recently a lot. |
| 11:45 | 22 | Q    I mean, Mr. Drum, Ms. Carter has been heavily involved |
| 11:45 | 23 | in preparing you for your testimony in this case; isn't that |
| 11:45 | 24 | true? |
| 11:45 | 25 | A    Yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:45 | 1 | Q    And she has been heavily involved in preparing the |
| 11:45 | 2 | exhibits that you were asked about by the government; isn't |
| 11:45 | 3 | that true? |
| 11:45 | 4 | A    Yes. |
| 11:46 | 5 | Q    And she has been working on this matter for some time |
| 11:46 | 6 | now, correct? |
| 11:46 | 7 | A    For some time. |
| 11:46 | 8 | Q    A couple years? |
| 11:46 | 9 | A    No. |
| 11:46 | 10 | Q    A year? |
| 11:46 | 11 | A    No. |
| 11:46 | 12 | Q    How long? |
| 11:46 | 13 | A    Several months. |
| 11:46 | 14 | Q    Other than yourself, who is the most knowledgeable |
| 11:46 | 15 | relating to this matter at your firm? |
| 11:46 | 16 | A    I would guess Evan Carter. |
| 11:46 | 17 | Q    Evan Carter is kind of the one that got her hands dirty |
| 11:46 | 18 | relating to really looking at things, right? |
| 11:46 | 19 | A    Evan Carter was heavily involved in assisting me to |
| 11:46 | 20 | prepare for this testimony. |
| 11:46 | 21 | Q    Including getting down in the nitty-gritty, right? |
| 11:46 | 22 | A    Perhaps. |
| 11:46 | 23 | Q    I mean, Evan Carter filled the John Drum role which is |
| 11:47 | 24 | what John Drum usually does in connection with other |
| 11:47 | 25 | matters.  He prepares other people to testify, right, in |

| 11:47 | 1 | your experience? |
| 11:47 | 2 | MR. WYMAN:  Objection.  Vague, compound. |
| 11:47 | 3 | THE COURT:  Sustained. |
| 11:47 | 4 | BY MR. AVENATTI: |
| 11:47 | 5 | Q    Sir, generally up until this case, we've already |
| 11:47 | 6 | established you don't testify.  You assist other people in |
| 11:47 | 7 | getting ready to testify, right? |
| 11:47 | 8 | A    That is a part of my job, yes. |
| 11:47 | 9 | Q    That's been a big part of your job for ten years, |
| 11:47 | 10 | right? |
| 11:47 | 11 | A    Yes. |
| 11:47 | 12 | Q    And that's what Evan Carter did in this case.  She |
| 11:47 | 13 | helped get you ready to testify? |
| 11:47 | 14 | A    Yes. |
| 11:47 | 15 | Q    Is Evan Carter -- well, strike that.  Evan Carter works |
| 11:47 | 16 | out of Denver, right? |
| 11:47 | 17 | A    That's correct. |
| 11:47 | 18 | Q    Is Evan Carter in Southern California right now? |
| 11:47 | 19 | MR. WYMAN:  401, 403, Your Honor. |
| 11:47 | 20 | MR. AVENATTI:  Sustained. |
| 11:47 | 21 | BY MR. AVENATTI: |
| 11:47 | 22 | Q    What is the last time you spoke with Evan Carter about |
| 11:47 | 23 | this case? |
| 11:48 | 24 | MR. WYMAN:  Same objection. |
| 11:48 | 25 | THE COURT:  Overruled. |

```
11:48    1              THE WITNESS:  Yesterday morning.
11:48    2    BY MR. AVENATTI:
11:48    3    Q    In person or on the phone?
11:48    4              MR. WYMAN:  Same objection.
11:48    5              THE COURT:  Overruled.
11:48    6              THE WITNESS:  Via Chat.
11:48    7    BY MR. AVENATTI:
11:48    8    Q    Via Chat, meaning on your phone, on your cell phone?
11:48    9    A    Yeah, the Chat program with Microsoft Teams.
11:48   10    Q    When is the last time you met in person with Evan
11:48   11    Carter about this case?
11:48   12    A    On Wednesday.
11:48   13    Q    Two days ago?
11:48   14    A    Correct.
11:48   15    Q    Where did you meet Evan Carter about this case?
11:48   16    A    We met in the lobby of the hotel in California.
11:48   17    Q    Close to the courthouse here?
11:48   18    A    Yes.  The Residence Inn.
11:49   19    Q    Is Evan Carter here in Southern California to help you
11:49   20    with your testimony?
11:49   21              MR. WYMAN:  401, 403, Your Honor.
11:49   22              THE COURT:  Overruled.
11:49   23              THE WITNESS:  She is no longer in Southern
11:49   24    California.
        25
```

| | | |
|---|---|---|
| 11:49 | 1 | BY MR. AVENATTI: |
| 11:49 | 2 | Q    Are you aware that we have been trying to serve her |
| 11:49 | 3 | with a subpoena? |
| 11:49 | 4 | MR. WYMAN:  Same objection. |
| 11:49 | 5 | THE COURT:  Sustained. |
| 11:49 | 6 | BY MR. AVENATTI: |
| 11:49 | 7 | Q    You went over a number of exhibits with Mr. Wyman.  Who |
| 11:49 | 8 | prepared those? |
| 11:49 | 9 | A    I prepared them. |
| 11:50 | 10 | Q    Every one of them? |
| 11:50 | 11 | A    Yes. |
| 11:50 | 12 | Q    Did Ms. Carter have anything to do with preparing |
| 11:50 | 13 | those? |
| 11:50 | 14 | A    Yes.  She assisted me in preparing them. |
| 11:50 | 15 | Q    Okay.  So it wasn't just you? |
| 11:50 | 16 | A    That's correct. |
| 11:50 | 17 | Q    All right.  Well, who else prepared them other than you |
| 11:50 | 18 | and Ms. Carter? |
| 11:50 | 19 | A    I prepared them with a team working at my direction. |
| 11:50 | 20 | Q    And those are the people you mentioned earlier? |
| 11:50 | 21 | A    Yes. |
| 11:50 | 22 | Q    Prior to taking the stand, did you engage in any mock |
| 11:50 | 23 | cross-examination? |
| 11:50 | 24 | A    Yes. |
| 11:50 | 25 | Q    Who played me? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:50 | 1 | A    Evan Carter. |
| 11:50 | 2 | Q    So far did she do a good job? |
| 11:50 | 3 | MR. WYMAN:  Objection.  Relevance. |
| 11:50 | 4 | MR. AVENATTI:  I will ask another question. |
| 11:50 | 5 | BY MR. AVENATTI: |
| 11:50 | 6 | Q    When did you do your mock cross-examinations where Evan |
| 11:50 | 7 | Carter played me? |
| 11:51 | 8 | MR. WYMAN:  Same objection. |
| 11:51 | 9 | THE COURT:  Overruled. |
| 11:51 | 10 | THE WITNESS:  This week and last week and probably |
| 11:51 | 11 | before. |
| 11:51 | 12 | BY MR. AVENATTI: |
| 11:51 | 13 | Q    So for the last two-and-a-half weeks before you took |
| 11:51 | 14 | the stand, you have been engaged in mock cross-examinations |
| 11:51 | 15 | where Evan Carter played me and you played yourself, the |
| 11:51 | 16 | witness, right? |
| 11:51 | 17 | A    That's correct. |
| 11:51 | 18 | MR. AVENATTI:  Now is a good time for a break if |
| 11:51 | 19 | that's okay with Your Honor. |
| 11:51 | 20 | THE COURT:  That's fine. |
| 11:51 | 21 | We'll take the lunch recess here.  We'll resume at |
| 11:51 | 22 | 1:30, ladies and gentlemen.  Please remember the admonition |
| 11:51 | 23 | not to discuss the case with anyone and not to form any |
| 11:51 | 24 | opinions on the issues in the case until it is submitted to |
| 11:51 | 25 | you.  And no research, please. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:51 | 1 | See you all at 1:30. |
| 11:51 | 2 | (Jury not present) |
| 11:52 | 3 | THE COURT:  Sir, you may step down. |
| 11:52 | 4 | Mr. Avenatti. |
| 11:53 | 5 | MR. AVENATTI:  Your Honor, I would ask that the |
| 11:53 | 6 | government be directed to immediately provide the Jencks |
| 11:53 | 7 | materials that were clearly withheld from me.  They should |
| 11:53 | 8 | have been provided before I began my cross-examination, and |
| 11:53 | 9 | it is highly prejudicial that they were not.  And I reserve |
| 11:53 | 10 | all other rights associated with this. |
| 11:53 | 11 | This is a very serious matter and it continues to |
| 11:53 | 12 | arise, and there is no question based on this testimony that |
| 11:53 | 13 | we don't have it.  And in light of what happened last night |
| 11:53 | 14 | with Mr. Armenta, I think it's pretty clear that this was in |
| 11:53 | 15 | absolute bad faith.  And I want the materials, and I want |
| 11:53 | 16 | them now. |
| 11:53 | 17 | MR. WYMAN:  Your Honor, Mr. Drum is an expert |
| 11:53 | 18 | witness working at the government's prosecution team's |
| 11:54 | 19 | direction.  To the extent he had substantive conversations |
| 11:54 | 20 | relating to his testimony, it's covered by the work product |
| 11:54 | 21 | privilege. |
| 11:54 | 22 | For an expert witness we're required to give |
| 11:54 | 23 | disclosure about opinions that he will testify to, which we |
| 11:54 | 24 | did on several occasions, including providing a memorandum |
| 11:54 | 25 | of interview covering exactly what the testimony would be a |

| | | |
|---|---|---|
| 11:54 | 1 | couple of weeks ago, which we weren't required to do. |
| 11:54 | 2 | We also produced draft versions of these charts |
| 11:54 | 3 | which are, as we discussed previously, substantially |
| 11:54 | 4 | identical and within our case about a year and a half ago. |
| 11:54 | 5 | We've complied with our discovery obligations for Mr. Drum. |
| 11:54 | 6 | THE COURT: Mr. Avenatti. |
| 11:54 | 7 | MR. AVENATTI: Your Honor, I know of no rule or |
| 11:54 | 8 | case that holds that if the government calls an expert, that |
| 11:54 | 9 | Jencks and 26.2 do not apply. I know of no such case. I |
| 11:54 | 10 | don't believe that's the law. Number one. |
| 11:54 | 11 | Number two, there is clearly a number of e-mails. |
| 11:55 | 12 | There is multiple drafts of these exhibits, multiple drafts, |
| 11:55 | 13 | not just one draft. We got one draft, to be clear. |
| 11:55 | 14 | Actually -- I want to be clear -- we have two drafts. We |
| 11:55 | 15 | have the draft in May, and then we have the final draft |
| 11:55 | 16 | that's in the exhibit book. |
| 11:55 | 17 | We don't have the e-mails. We don't have all the |
| 11:55 | 18 | drafts. We don't have all the communications from him. We |
| 11:55 | 19 | don't have the billing records, Your Honor, which he |
| 11:55 | 20 | testified he approved. I elicited that testimony. |
| 11:55 | 21 | Once he approves the bills and they're sent to the |
| 11:55 | 22 | government, that's a statement of a witness under 26.2 and |
| 11:55 | 23 | Jencks. So those should have been produced. |
| 11:55 | 24 | They're also Brady. They're also Giglio, and they |
| 11:55 | 25 | weren't produced. I mean, I'm speechless. And as you know, |

| 11:55 | 1 | that's rare.  That's rare that I'm speechless. |
| 11:55 | 2 | THE COURT:  We will be in recess. |
| 11:55 | 3 | (Recess taken at 11:55 a.m.) |
| 11:55 | 4 | *   *   * |
| 11:55 | 5 | |
| 11:55 | 6 | |
| 11:55 | 7 | |
| 11:55 | 8 | |
| 11:55 | 9 | |
| 11:55 | 10 | |
| 11:55 | 11 | |
| 11:55 | 12 | |
| 11:55 | 13 | |
| 11:55 | 14 | |
| 11:55 | 15 | |
| 11:55 | 16 | |
| 11:55 | 17 | |
| 11:55 | 18 | |
| 11:55 | 19 | |
| 11:55 | 20 | |
| 11:55 | 21 | |
| 11:55 | 22 | |
| 11:55 | 23 | |
| 11:55 | 24 | |
| 11:55 | 25 | |

11:55  1
11:55  2
11:55  3
11:55  4                     **CERTIFICATE**
11:55  5
11:55  6          I hereby certify that pursuant to Section 753,
11:55  7   Title 28, United States Code, the foregoing is a true and
11:55  8   correct transcript of the stenographically reported
11:55  9   proceedings held in the above-entitled matter and that the
11:55 10   transcript page format is in conformance with the
11:55 11   regulations of the Judicial Conference of the United States.
11:55 12
11:55 13   Date:  August 14, 2021
11:55 14
11:55 15
11:55                          /s/   Sharon A. Seffens  8/14/21
11:55 16                       _____
11:55                          SHARON A. SEFFENS, U.S. COURT REPORTER
11:55 17
      18
      19
      20
      21
      22
      23
      24
      25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**MR. AVENATTI: [95]** 4/9 5/3 5/19 6/2 7/5
7/13 7/18 7/24 8/10 9/5 9/9 9/15 9/20 9/24
10/4 10/21 10/24 11/12 11/19 11/21 11/24
12/3 12/6 12/15 13/3 13/6 13/13 14/5 14/10
14/13 14/16 15/10 15/13 19/16 21/10 21/24
22/3 22/11 22/16 22/21 23/7 24/17 28/24
29/17 29/20 34/5 34/14 34/19 35/25 44/1 46/2
54/10 59/21 60/5 60/14 60/20 61/5 71/16
71/23 72/6 72/16 74/6 75/24 76/11 76/19
76/25 77/8 77/18 78/2 78/10 78/16 79/2 79/7
79/14 80/8 80/16 84/24 85/9 85/19 87/6 99/10
99/12 100/19 100/22 101/11 103/13 104/7
106/9 107/2 108/10 115/20 118/4 118/18
119/5 120/7
**MR. SAGEL: [16]** 4/5 4/18 13/15 13/22 13/25
14/17 14/23 15/2 15/8 15/18 15/21 16/2 16/7
16/19 16/21 18/23
**MR. WYMAN: [70]** 15/12 23/3 29/11 30/1
32/6 32/13 32/20 33/18 35/10 35/20 36/14
38/24 39/18 44/16 45/25 46/9 46/21 47/9
47/19 48/20 49/18 50/21 51/24 52/13 54/5
54/7 54/14 55/9 57/8 57/23 62/13 66/10 68/14
68/19 68/23 72/23 73/11 74/2 76/3 77/21
79/17 82/20 84/6 85/11 85/21 86/1 86/7 86/12
86/17 86/22 88/13 89/14 89/23 99/1 104/13
106/6 109/5 110/18 110/23 113/7 115/2
115/19 115/24 116/4 116/21 117/4 118/3
118/8 119/17
**THE CLERK: [2]** 4/3 23/1
**THE COURT: [131]**
**THE WITNESS: [49]** 29/1 29/22 34/7 34/16
34/21 36/2 44/3 59/23 60/16 60/22 61/7 68/17
71/18 71/25 72/8 72/18 74/8 76/1 76/13 76/21
77/2 77/11 77/20 78/4 78/12 78/18 79/4 79/9
79/16 80/10 80/18 86/24 87/10 88/15 89/16
99/3 104/15 106/8 106/12 106/20 107/4
108/14 110/25 111/3 113/9 116/1 116/6
116/23 118/10

**$**

**$1,000 [1]** 34/21
**$1,200 [2]** 77/12 80/20
**$1,217 [1]** 76/13
**$1,400 [1]** 39/9
**$1,500 [1]** 53/6
**$1,508,422 [2]** 72/21 73/3
**$1,761 [1]** 40/5
**$1,856,938 [1]** 25/10
**$1,900 [11]** 38/20 38/22 39/7 39/13 39/15
39/16 39/25 40/8 41/16 41/18 77/16
**$1.1 [1]** 58/15
**$1.1 million [1]** 58/15
**$1.5 [2]** 72/2 80/23
**$1.5 million [2]** 72/2 80/23
**$1.6 [8]** 25/13 31/1 53/25 54/22 56/11 57/19
59/7 61/23
**$1.6 million [6]** 31/1 53/25 54/22 56/11 57/19
59/7
**$1.7 [1]** 43/22
**$1.7 million [1]** 43/22
**$1.9 [1]** 44/10
**$1.9 million [1]** 44/10
**$100,000 [1]** 57/4
**$12 [1]** 68/11
**$147,000 [1]** 81/7
**$150,000 [1]** 40/24 41/2 41/8
**$155 [1]** 51/20
**$16,000 [7]** 50/11 50/20 51/2 51/9 51/15
51/23 52/9
**$17,600 [1]** 39/12
**$171,000 [1]** 77/13
**$180,000 [1]** 56/13
**$181,000 [1]** 55/20
**$185,000 [1]** 50/18
**$190,000 [1]** 63/18 63/24
**$2,000 [1]** 41/6
**$2,776 [5]** 25/4 25/15 31/16 32/5 32/16
**$2,787,650.87 [1]** 66/17

**$2,787,651 [1]** 66/6
**$2.5 [2]** 45/9 45/13 48/8
**$2.5 million [3]** 45/9 45/13 48/8
**$2.75 [2]** 42/12 43/2
**$2.75 million [2]** 42/12 43/2
**$2.787 [1]** 67/19
**$2.787 million [1]** 67/19
**$2.79 [1]** 65/10
**$2.79 million [1]** 65/10
**$2.8 [3]** 71/19 77/3 80/21
**$2.8 million [2]** 71/19 77/3
**$200,000 [2]** 52/25 53/5
**$224 [1]** 41/13
**$23 [1]** 76/2
**$250,000 [9]** 28/17 43/10 44/7 44/9 45/17
45/21 46/19 47/5 48/9
**$26,000 [1]** 40/7
**$26.1 [1]** 67/21
**$26.1 million [1]** 67/21
**$28.9 [1]** 64/21
**$28.9 million [1]** 64/21
**$3 [7]** 29/7 74/1 76/21 77/3 80/13 80/20 80/21
**$3 million [7]** 29/7 74/1 76/21 77/3 80/13
80/20 80/21
**$3,300 [1]** 50/17
**$3.1 [2]** 27/12 27/20
**$3.1 million [1]** 27/20
**$30,000 [1]** 51/8
**$30.4 [1]** 66/2
**$30.4 million [1]** 66/2
**$32,000 [2]** 41/10 71/8
**$34,000 [3]** 53/7 53/8 79/9
**$37.168 [1]** 65/15
**$37.168 million [1]** 65/15
**$37.2 [1]** 65/8
**$37.2 million [1]** 65/8
**$4 [15]** 25/12 26/25 29/3 29/5 30/15 30/18
37/7 37/20 41/22 41/24 66/5 75/8 75/10 81/20
81/23
**$4 million [15]** 25/12 26/25 29/3 29/5 30/15
30/18 37/7 37/20 41/22 41/24 66/5 75/8 75/10
81/20 81/23
**$41,885 [1]** 59/18
**$46,000 [1]** 75/18
**$46,350 [2]** 70/21 74/25
**$495 [1]** 93/12
**$5,000 [1]** 38/18
**$5,300 [1]** 51/7
**$5,500 [1]** 35/6
**$50 [1]** 113/11
**$50,000 [2]** 28/11 28/13
**$500,000 [1]** 58/8
**$543,000 [1]** 25/14
**$543,062 [1]** 24/24
**$6,000 [1]** 38/19
**$60 [1]** 63/25
**$60,000 [3]** 64/2 64/5 78/18
**$600,000 [2]** 105/6 107/16
**$610 [1]** 61/7
**$617,000 [1]** 60/3
**$65,615 [1]** 43/15
**$659,000 [1]** 56/6
**$736,000 [3]** 24/3 31/8 32/16
**$760,000 [3]** 55/14 56/12 57/2
**$8.3 [2]** 41/1 64/24
**$8.3 million [2]** 41/1 64/24
**$90,501 [1]** 79/16
**$958 [1]** 36/3
**$959,000 [1]** 56/19
**$990,000 [1]** 43/6

**/**

**/s [1]** 122/15

**0**

**0313 [11]** 40/20 40/24 41/3 41/6 41/14 70/10
71/6 71/8 71/13 77/13 78/5
**0661 [10]** 28/1 28/6 35/14 45/22 47/3 50/12
50/16 51/4 78/1 78/25

**1870 [1]** 1/21

**1**

**1-1053 [1]** 1/20
**1.6 [1]** 34/8
**1.6 million [5]** 30/20 31/6 32/23 55/13 57/4
**1.66 million [1]** 33/5
**1.7 million [1]** 27/25
**1.9 [1]** 19/9
**1.9 million [2]** 57/5 57/6
**1/29/15 [1]** 25/13
**1053 [1]** 1/20
**107 [1]** 2/16
**1080 [3]** 3/14 85/9 85/19
**10:14 [1]** 69/7
**10:34 [1]** 69/8
**10th [1]** 58/7
**11 [1]** 80/22
**1100 [1]** 2/7
**11:55 [1]** 121/3
**13 [2]** 1/17 4/1
**14 [2]** 60/25 122/13
**146,000 [2]** 75/15 81/15
**146,288 [1]** 75/5
**147,000 [1]** 74/18
**148 [1]** 42/17
**14th [9]** 50/8 50/11 58/7 58/14 61/3 64/18
64/23 65/22 70/4
**15 [3]** 25/13 69/2 69/6
**15th [11]** 39/22 39/25 40/8 50/25 51/7 71/19
73/24 74/4 77/7 77/12 80/12
**16 [2]** 19/24 38/10
**16th [3]** 51/13 51/16 51/18
**17 [1]** 18/24
**17th [3]** 53/6 53/9 79/13
**18th [2]** 64/20 68/1
**195 [1]** 18/9
**1:15 [1]** 14/6
**1:30 [2]** 118/22 119/1

**2**

**2 million [1]** 19/9
**2.5 million [1]** 45/12
**2.75 [1]** 43/10
**20 [2]** 1/12 98/14
**2008 [1]** 85/17
**2015 [13]** 25/8 27/14 29/3 29/6 29/23 31/18
33/9 33/25 34/16 35/18 35/24 36/2 36/11
**2016 [1]** 38/14
**2017 [15]** 42/8 42/12 43/3 43/20 44/9 45/2
46/18 48/3 48/10 50/8 50/11 50/25 64/20 68/1
68/1
**2018 [40]** 39/4 39/10 39/22 39/25 40/8 41/2
51/13 51/16 51/19 52/4 53/6 53/9 53/22 53/24
55/1 55/8 55/12 56/5 56/7 59/7 60/11 60/25
61/3 63/16 64/18 64/23 65/22 70/4 70/16
70/16 70/25 71/19 72/22 73/10 73/24 79/13
81/4 81/4 87/23 88/9
**2020 [6]** 18/5 21/4 42/8 43/10 44/7 44/8
**2021 [4]** 1/17 4/1 53/22 122/13
**20th [2]** 52/4 77/15
**21 [1]** 122/15
**213 [1]** 2/8
**2240 [4]** 38/19 38/23 50/18 51/8
**23 [1]** 3/6
**23rd [5]** 70/16 74/4 74/11 74/13 74/14
**25,000 [2]** 34/2 51/21
**25th [6]** 42/7 42/11 43/3 43/20 45/2 48/3
**26.2 [2]** 120/9 120/22
**260,000 [1]** 70/10
**26th [5]** 46/18 47/8 48/10 72/22 73/10
**27.4 million [1]** 67/10
**28 [1]** 122/7
**28 million [1]** 67/7
**2851 [13]** 27/13 27/21 27/25 30/22 30/24
32/12 33/21 35/16 38/15 38/17 45/18 46/16
48/9
**28th [1]** 85/17
**29th [5]** 25/8 29/3 30/5 30/14 33/14

**2**

**2nd** [1]  33/9

**3**

**3 million** [1]  43/11
**3.8** [1]  71/12
**3.8 million** [1]  70/11
**30** [1]  98/8
**300** [1]  113/13
**30th** [8]  27/14 27/14 33/25 34/16 35/17 35/18 35/24 36/2
**312** [1]  2/7
**3174** [1]  51/17
**31st** [1]  29/6
**32,000** [1]  71/13
**33 percent** [2]  43/8 43/11
**338-3598** [1]  2/12
**34.38 million** [1]  65/23
**3504** [1]  67/19
**359** [6]  3/8 45/25 46/5 46/6 46/8 46/22
**3598** [1]  2/12
**367** [1]  66/11
**371** [5]  3/9 54/8 54/12 54/13 54/14
**3730** [1]  51/21
**382** [6]  3/9 45/25 46/5 46/6 46/8 46/10
**392** [1]  72/24
**394** [1]  46/1
**397** [1]  54/9
**3rd** [2]  68/1 68/9

**4**

**4 million** [3]  75/16 81/12 83/19
**4,146,350** [1]  75/2
**4.3 million** [3]  70/8 70/14 74/16
**4/7/16** [1]  38/10
**40 percent** [1]  57/6
**40,000** [1]  17/18
**401** [14]  28/24 34/5 35/25 46/3 54/11 59/21 71/16 72/6 74/6 76/11 80/8 113/7 115/19 116/21
**403** [16]  28/24 34/5 35/25 46/3 54/11 59/21 71/16 72/6 74/6 76/11 80/8 86/17 86/22 113/7 115/19 116/21
**41** [1]  59/17
**411** [2]  1/20 2/11
**420** [4]  24/20 77/25 78/9 78/25
**421** [1]  25/24
**422** [2]  28/19 32/13
**423** [1]  33/18
**424** [1]  35/10
**425** [1]  36/13
**426** [1]  38/8
**427** [1]  38/24
**428** [1]  39/18
**429** [2]  40/17 40/18
**430** [3]  42/1 42/5 43/4
**431** [2]  44/16 47/10
**432** [1]  47/19
**433** [1]  48/21
**434** [1]  50/4
**435** [1]  50/21
**436** [1]  51/10
**437** [2]  51/24 52/2
**438** [2]  42/1 52/13
**439** [3]  53/16 53/19 55/9
**440** [1]  57/8
**441** [1]  58/25
**442** [1]  61/16
**443** [2]  53/16 63/5
**444** [2]  64/12 64/15
**445** [1]  66/21
**446** [1]  68/2
**447** [3]  68/12 69/14 69/15
**448** [2]  69/12 73/12
**449** [1]  76/3
**450** [2]  64/12 79/17
**456** [1]  82/1
**46** [2]  3/8 3/9
**46,000** [1]  75/14

**4613** [24]  40/5 41/9 41/13 52/20 53/1 53/4 70/9 70/11 70/12 70/16 70/17 70/25 71/9 71/11 72/10 74/1 74/24 76/6 79/22 80/4 80/13 80/19
**4705** [15]  41/1 41/7 49/10 52/24 53/6 63/15 63/16 67/6 67/15 68/4 70/2 70/8 73/15 76/8 83/13
**475,000** [1]  67/10
**48** [4]  23/20 23/22 31/10 31/12
**481-4900** [1]  2/17
**4900** [1]  2/17
**4th** [13]  1/20 31/18 31/23 63/16 63/24 70/16 70/25 71/1 74/20 75/13 75/19 75/22 76/1

**5**

**50** [2]  17/12 31/20
**500** [1]  113/13
**54** [1]  3/9
**543-0870** [1]  1/21
**545,700** [1]  25/6
**5566** [7]  57/20 57/21 58/24 59/2 61/23 62/21 62/24
**5th** [10]  39/4 39/9 53/21 53/24 55/8 55/12 56/4 56/7 58/14 59/6

**6**

**60,000** [1]  17/18
**615** [7]  5/24 8/16 10/7 10/11 10/12 10/13 10/16
**6683** [1]  2/8
**690** [1]  11/1
**691** [2]  9/4 11/5
**6th** [4]  21/3 21/4 29/23 33/14

**7**

**7.5 percent** [1]  65/12
**714** [2]  1/21 2/12
**75** [3]  85/6 85/24 86/5
**753** [1]  122/6
**77** [1]  85/17
**7th** [1]  50/17

**8**

**8.3** [1]  81/4
**8/14/21** [1]  122/15
**8000** [1]  2/11
**84** [1]  3/6
**85** [1]  3/14
**8541** [12]  26/21 26/23 26/23 27/7 27/12 27/17 28/21 33/23 34/8 37/6 37/9 37/16
**8671** [8]  42/24 45/2 45/10 47/17 47/23 49/8 49/21 49/25
**894-6683** [1]  2/8
**8:31** [1]  4/1
**8:58** [1]  22/23
**8th** [1]  60/11

**9**

**90012** [1]  2/8
**92672** [1]  2/16
**92701** [1]  1/20 2/11
**949** [1]  2/17
**984,750** [1]  67/10
**9962** [1]  28/18
**9:05** [1]  22/24
**9th** [1]  41/2

**A**

**a.m** [6]  4/1 22/23 22/24 69/7 69/8 121/3
**abbreviations** [2]  26/10 26/11
**ability** [2]  20/23 105/16
**able** [6]  37/2 39/7 39/14 50/12 51/4 51/17
**about** [56]  5/7 7/20 8/1 8/2 8/8 8/16 9/11 9/16 10/9 10/13 12/3 14/12 15/22 17/7 17/25 20/10 21/11 21/22 21/24 31/12 32/25 33/6 35/6 37/14 54/25 59/16 69/11 75/13 88/23 94/16 94/17 95/5 96/8 96/10 98/17 98/13 103/23 104/22 106/24 107/22 108/8 109/3 109/9 110/7 110/8 110/12 110/13 111/16 111/25 112/4 114/2

**15/22 116/11 116/15 119/23 120/4**
**102/5 105/21 120/3 105/6 140/2 114/27/5**
**above-entitled** [1]  122/9
**absent** [1]  10/3
**absolute** [1]  119/15
**acceptable** [1]  68/24
**access** [7]  17/13 17/16 17/21 18/6 20/10 20/24 102/14
**accident** [1]  8/12
**accomplished** [1]  97/24
**according** [1]  19/5
**accordingly** [1]  5/21
**account** [110]  25/22 26/21 26/24 28/6 28/9 28/13 28/18 28/21 29/2 29/6 29/23 30/22 30/24 30/24 31/7 33/4 33/6 33/10 33/15 33/21 33/23 34/18 35/7 35/14 35/15 35/23 38/9 38/16 39/3 39/8 39/8 39/21 40/4 40/25 41/6 41/8 41/9 41/13 41/19 42/20 42/21 42/23 48/12 49/8 49/14 49/22 50/7 50/12 50/13 50/15 50/17 50/19 50/24 51/5 51/6 51/12 51/16 51/18 51/19 51/22 52/3 52/12 53/1 53/4 54/4 55/6 56/24 57/22 59/2 61/4 62/24 63/16 63/17 63/23 63/25 64/1 65/4 65/13 67/6 67/22 68/4 68/10 70/22 71/5 71/6 71/10 71/13 73/15 74/12 75/1 75/11 75/20 75/23 76/6 76/8 76/10 78/1 79/1 79/12 80/11 80/13 80/19 81/3
**accountancy** [7]  89/6 89/9 89/11 89/13 89/17 89/20 90/5
**accountant** [3]  84/16 89/4 90/13
**accountants** [2]  87/3 87/15
**accounting** [8]  86/25 90/18 90/22 103/21 104/2 105/25 106/4 110/8
**accounts** [29]  26/5 26/5 26/6 26/15 37/1 37/12 38/2 38/15 39/12 39/17 40/1 40/7 45/10 48/18 49/14 49/17 58/8 58/9 58/11 58/16 58/17 62/3 62/5 62/11 74/9 82/12 82/24 84/5 99/4
**accuracy** [1]  100/18
**accurate** [5]  19/18 20/12 97/9 97/12 98/2
**accused** [1]  21/15
**across** [1]  84/5
**acting** [2]  5/11 5/11
**activities** [9]  28/21 33/21 35/7 35/14 47/23 59/2 68/4 73/15 76/6
**activity** [3]  33/1 74/5 77/6
**actual** [1]  105/10 111/14
**actually** [10]  13/11 21/3 24/11 59/18 68/23 102/8 105/16 106/23 110/15 120/14
**additional** [9]  11/4 20/24 25/15 50/1 56/16 60/18 78/8 99/24 99/25
**address** [3]  6/1 13/2 18/19
**admissible** [1]  15/5
**admonition** [2]  69/3 118/22
**advanced** [1]  32/3
**advantage** [1]  8/15
**ADVISORY** [1]  2/15
**advocate** [1]  5/12
**after** [27]  9/10 13/21 17/22 18/1 18/6 23/10 27/7 27/20 28/21 32/23 33/21 35/14 45/12 47/23 51/3 59/2 68/4 68/21 71/4 73/15 73/25 75/1 75/10 76/1 76/6 79/12 100/19
**afternoon** [1]  23/21
**again** [8]  12/16 32/14 34/23 46/4 59/12 61/21 106/8 106/17
**agent** [4]  4/7 15/2 94/14 95/8
**agents** [14]  6/7 6/15 8/11 9/6 13/18 14/20 93/23 94/4 94/15 94/18 94/22 95/1 95/24 96/22
**agents'** [1]  94/19
**ago** [5]  83/18 92/3 116/13 120/1 120/4
**agree** [5]  8/19 9/23 12/25 88/22 93/8
**agreed** [1]  93/2
**agreement** [12]  24/13 31/3 31/4 43/8 43/24 49/9 55/16 62/19 81/16 81/17 92/16 92/25
**agreements** [3]  81/19 102/15 102/16
**ahead** [1]  96/15
**Aircraft** [1]  45/13
**Alex** [3]  23/3 44/14 94/9

## A

**ALEXANDER [2]** 2/5 4/6
**Alexis [27]** 42/4 42/7 43/18 44/8 44/15 44/20 47/18 47/24 48/24 49/16 50/7 50/10 50/20 50/24 51/3 51/9 51/12 51/16 51/19 51/22 52/3 52/6 53/7 53/9 72/9 79/9 83/5
**Alki [1]** 60/19
**all [27]** 8/10 12/5 14/24 17/2 18/8 20/2 21/6 21/20 26/14 29/4 31/6 34/23 37/10 62/9 67/12 78/7 82/17 83/19 85/4 85/6 101/18 102/11 117/17 119/1 119/10 120/17 120/18
**alleged [1]** 5/23
**allegedly [2]** 110/22 111/23
**almost [3]** 5/11 5/11 58/8
**along [3]** 7/10 95/25 112/8
**already [7]** 18/1 18/7 31/19 42/16 66/11 72/24 115/5
**also [12]** 6/12 11/25 18/19 19/4 24/15 35/17 51/4 51/22 87/5 120/2 120/24 120/24
**Although [1]** 7/6
**always [1]** 7/22
**am [14]** 11/16 21/15 50/12 51/4 51/17 84/17 84/20 98/2 110/6 110/8 110/10 110/13 112/9 112/24
**AMERICA [3]** 1/9 4/4 23/2
**amount [64]** 24/1 24/22 25/5 25/12 25/16 25/17 27/7 30/6 30/19 30/21 31/1 31/11 31/11 31/14 32/17 32/23 33/6 35/23 38/1 40/12 42/7 42/11 42/14 43/5 43/9 43/9 43/10 43/17 44/6 44/8 44/13 48/4 49/24 52/8 53/21 53/24 54/2 54/2 54/4 54/21 55/12 56/11 56/15 57/3 58/23 62/19 63/17 64/19 64/23 64/25 65/6 65/6 65/14 65/22 66/6 66/8 66/16 66/18 68/10 70/15 73/2 73/4 73/22 75/18
**amounts [11]** 25/21 32/24 55/22 56/16 56/24 57/4 62/23 64/25 65/3 65/7 67/8
**Ana [4]** 1/16 1/20 2/11 4/1
**analyses [1]** 99/24
**analysis [19]** 38/4 38/21 40/15 41/17 41/20 50/2 52/5 52/10 53/8 53/12 63/2 64/5 91/4 91/16 92/25 93/1 97/6 98/12 112/16
**analyst [1]** 112/16
**Andre [3]** 21/6 89/1 94/10
**Angeles [2]** 2/8 26/18 37/6
**another [9]** 27/8 29/6 31/7 39/6 51/2 51/15 71/21 112/16 118/4
**answer [7]** 9/7 7/15 16/11 96/2 106/15 109/7 111/8
**answered [5]** 7/13 75/24 86/1 104/13 110/18
**any [59]** 4/21 5/17 6/9 10/17 10/19 12/1 13/3 17/2 17/25 19/12 19/22 33/15 35/8 36/5 48/14 61/9 69/4 69/5 83/19 84/1 90/9 90/11 90/17 90/20 90/22 90/22 91/10 93/19 94/24 95/3 95/3 95/7 95/7 95/8 95/13 96/20 98/4 104/21 104/25 105/1 105/25 109/18 109/19 109/25 110/1 110/1 110/3 110/4 110/11 110/11 110/12 110/21 110/22 111/22 112/4 112/5 117/22 118/23
**anybody [6]** 17/24 90/9 94/21 98/21 102/6 105/23
**anyone [10]** 69/3 88/4 93/17 94/11 97/8 102/8 104/10 112/15 112/17 118/23
**anything [15]** 4/24 6/11 11/6 17/7 16/10 16/14 16/14 17/8 17/14 19/13 92/21 102/18 103/1 103/2 117/12
**Apart [1]** 38/2
**appear [2]** 4/14 11/2
**APPEARANCES [1]** 2/1
**appears [2]** 35/17 77/24
**applied [1]** 9/13
**apply [3]** 6/18 7/3 120/9
**appreciate [2]** 8/9 13/11
**approach [1]** 84/24
**approve [2]** 93/5 97/14
**approved [4]** 92/14 92/19 93/7 120/20
**approves [1]** 120/21
**approving [1]** 97/25
**approximate [2]** 66/3 75/18
**approximately [41]** 25/4 25/5 25/6 27/13 28/1

## B

(column break)

29/7 31/8 33/5 36/11 39/9 40/7 43/22 50/19 65/15 66/1 66/5 67/10 70/8 70/10 70/14 71/12 72/1 74/16 74/18 74/25 75/15 80/22 81/4 81/7 81/14 81/20 81/23 98/8
**April [15]** 38/14 41/2 50/8 50/11 50/17 53/6 53/9 63/16 63/24 70/16 74/4 74/11 74/13 74/14 79/13
**April 14th [2]** 50/8 50/11
**April 17th [1]** 79/13
**April 23rd [4]** 70/16 74/4 74/11 74/14
**April 4th [2]** 63/16 63/24
**April 7 [1]** 38/14
**April 7th [1]** 50/17
**are [84]** 5/14 9/2 12/20 12/21 21/24 14/21 15/22 15/23 16/8 16/13 18/10 18/19 19/11 19/17 22/2 26/5 26/6 26/6 26/14 27/21 29/7 30/15 33/11 33/15 33/17 35/1 35/5 35/7 36/5 36/9 36/24 42/22 45/4 46/5 47/1 47/12 48/7 48/17 49/13 49/21 56/14 56/16 58/2 58/11 58/18 60/12 61/9 61/11 61/13 62/5 64/25 64/25 65/3 65/14 67/15 68/6 70/13 70/17 71/14 72/13 72/14 77/24 78/5 82/9 82/14 82/15 82/22 83/4 83/12 84/4 88/18 89/3 89/19 89/19 94/15 107/7 107/11 110/21 113/5 117/2 117/20 120/3
**area [1]** 91/5
**aren't [1]** 19/11
**argue [1]** 15/14
**Argumentative [2]** 106/6 109/5
**arise [1]** 119/12
**Armenta [1]** 11/2 119/14
**around [2]** 10/14 103/17
**arrow [20]** 26/19 27/10 27/15 27/24 28/12 37/6 37/15 44/24 45/16 47/15 57/18 57/19 58/5 58/12 58/21 62/21 62/21 67/20 71/15 71/22
**arrows [17]** 26/22 27/2 36/24 45/4 49/12 49/15 49/21 58/2 62/4 67/4 67/5 67/15 70/5 72/5 82/22 83/12 84/4
**as [68]** 5/11 6/12 10/2 10/5 12/7 13/12 14/4 14/4 15/21 17/10 17/16 18/13 22/12 22/14 24/13 24/13 25/8 29/22 31/11 31/20 35/23 36/2 39/14 42/17 43/20 43/25 44/8 48/10 50/1 53/21 54/10 54/11 55/23 56/4 56/7 61/3 62/8 63/1 64/18 65/21 66/11 72/24 74/11 74/13 75/22 77/2 78/5 79/12 84/17 85/9 85/19 86/20 87/14 89/3 90/13 91/18 94/15 95/15 96/20 100/20 101/11 105/24 110/6 110/10 110/22 120/3 120/25

(column break)

**ask [22]** 12/6 26/23 30/5 59/16 90/9 94/21 98/21 99/13 99/18 101/16 101/16 102/8 105/20 105/23 106/1 106/8 108/17 108/20 109/17 112/15 118/4 119/5
**asked [29]** 4/25 6/16 13/17 17/12 18/1 21/2 21/5 21/8 75/24 86/1 92/18 96/8 98/24 98/25 99/3 99/5 99/24 101/7 104/13 107/17 107/18 107/19 107/22 107/24 109/11 109/22 110/18 111/16 114/2
**asking [5]** 98/17 98/18 100/1 100/8 103/2
**assist [1]** 115/6
**Assistant [5]** 2/4 2/6 2/10 93/22 94/3
**assisted [1]** 117/14
**assisting [1]** 114/19
**associated [17]** 26/6 27/18 28/5 29/5 36/8 53/12 61/13 64/4 64/8 78/22 80/11 81/21 83/15 83/25 93/5 99/9 119/10
**Associates [5]** 26/12 28/4 28/6 46/25 49/14
**astray [1]** 6/25 8/8
**attached [4]** 16/7 16/9 18/9 18/11
**attaches [2]** 91/3 11/5
**attachment [1]** 32/2
**attempted [1]** 7/7
**attention [3]** 7/23 8/22 12/8
**attorney [2]** 2/3 2/4 2/6 2/10 30/24 31/2 42/21 55/6 94/14
**attorney/client [3]** 30/24 42/21 55/6
**attorneys [4]** 8/1 93/23 94/4 94/18
**attorneys' [1]** 32/24

(column break)

**attributable [1]** 27/9
**AUSAs [1]** 94/22
**authority [7]** 6/17 6/17 6/18 7/2 8/3 8/20 8/25
**available [3]** 20/13 20/18 20/21
**AVENATTI [32]** 1/11 2/14 4/4 4/10 5/2 6/1 11/11 15/9 17/13 18/6 20/13 23/2 23/8 26/7 26/12 26/12 28/4 28/6 28/13 31/2 42/21 46/13 46/25 49/14 55/6 55/17 58/11 84/8 105/25 110/8 119/4 120/6
**Avenatti's [2]** 5/23 24/25
**Avenida [1]** 2/16
**aware [16]** 8/20 20/6 20/8 36/9 48/17 48/19 61/13 88/9 89/9 89/19 89/22 90/6 107/7 107/11 110/21 117/2
**away [2]** 8/14 27/2

## B

**B-o-r-e-k [1]** 91/9
**back [23]** 7/6 14/6 16/16 17/10 24/20 30/1 31/10 37/3 39/15 43/4 45/15 47/9 49/18 55/9 62/13 68/20 70/20 71/22 81/4 83/11 87/7 106/9 108/10 110/25
**bad [3]** 101/16 109/22 119/15
**Bahamonde [9]** 6/16 6/22 7/2 7/8 7/8 7/20 8/2 8/8 12/25
**Bakery [1]** 60/19
**balance [29]** 29/2 29/23 33/3 34/1 34/18 35/23 36/2 38/17 39/9 40/5 41/1 41/6 41/13 48/1 50/17 51/7 51/20 52/24 53/5 59/6 63/14 63/25 68/10 73/19 75/23 76/2 76/10 80/11 80/19
**bank [24]** 24/15 28/5 36/8 41/20 42/13 45/24 48/16 53/12 54/1 54/3 64/8 65/1 66/7 73/25 74/9 76/1 81/21 100/14 100/14 101/4 101/7 101/19 102/3 102/17
**banking [2]** 100/16 100/25
**bankruptcy [4]** 71/10 71/19 72/1 80/4
**banks [3]** 24/22 30/23 61/12
**bar [1]** 52/24
**Barela [27]** 16/13 18/12 19/11 53/18 53/21 55/16 56/6 56/25 58/24 61/10 61/13 61/14 61/18 62/4 62/5 62/18 62/25 63/3 64/4 64/10 72/9 72/13 78/22 83/9 109/3 109/9
**Barela's [5]** 55/23 56/24 57/13 59/3 64/9
**barely [2]** 84/22 86/10
**Baristas [11]** 26/13 28/17 39/17 40/7 52/12 58/11 60/13 77/12 77/25 78/9 78/25
**bars [1]** 50/14
**based [23]** 5/23 19/6 30/23 36/8 38/21 41/17 41/20 43/17 43/18 48/16 52/10 53/8 53/12 57/2 57/3 61/12 64/5 64/8 81/16 81/21 101/9 102/3 119/12
**basically [1]** 10/11
**basis [2]** 87/20 98/8
**Bates [3]** 15/14 15/15 22/5
**be [53]** 4/16 7/25 8/2 8/18 10/2 10/6 10/16 12/9 12/16 13/8 14/4 14/25 14/25 15/3 21/3 21/15 22/22 23/9 25/5 27/8 27/18 29/4 31/2 37/19 37/25 46/6 54/12 54/18 62/18 64/4 68/13 68/23 69/2 69/6 80/2 90/3 91/5 95/9 96/18 97/4 97/15 98/11 98/16 98/18 100/21 101/12 107/19 112/23 119/6 119/25 120/13 120/14 121/2
**Beauty [8]** 37/22 62/16 68/7 70/2 73/22 83/14 83/16 84/1
**became [2]** 86/20 90/25
**because [21]** 5/4 6/17 6/18 7/14 8/7 9/13 11/14 12/19 15/17 19/5 20/11 21/16 21/25 22/6 24/6 37/25 62/17 98/11 101/15 102/4
**become [2]** 86/16 90/13
**becomes [1]** 4/25
**been [31]** 7/19 8/21 10/14 18/15 19/16 20/11 21/6 21/7 21/13 21/17 75/18 75/19 81/2 82/18 87/21 90/12 91/18 93/15 94/2 105/21 110/21 112/21 112/25 113/22 114/1 114/5 115/9 117/2 117/14 119/8 120/23
**before [30]** 5/16 6/14 8/6 13/8 13/21 21/19 38/17 41/13 53/5 59/7 69/11 73/19 84/13

**B**

**before...** [17] 94/20 97/8 97/25 98/4 98/21 105/5 105/14 105/17 105/23 107/8 107/13 108/7 109/20 109/24 118/11 118/13 119/8
**began** [1] 119/8
**beginning** [16] 29/2 34/1 36/10 38/17 39/9 40/5 41/6 41/13 50/16 51/20 53/4 59/6 74/14 80/19 88/9 94/20
**begins** [2] 33/14 33/24
**behalf** [2] 4/6 23/4
**behind** [1] 68/13
**being** [7] 6/6 14/2 28/17 67/21 89/21 102/12 107/16
**belief** [1] 9/13
**believe** [30] 9/16 10/23 11/6 13/16 17/1 19/21 24/5 70/19 81/13 83/22 84/23 86/24 87/23 90/10 90/24 91/25 92/16 93/12 95/2 95/10 100/13 102/10 102/19 104/15 105/22 108/14 110/5 111/7 112/7 120/10
**believe there's** [1] 111/7
**below** [26] 25/7 30/18 31/6 31/14 32/16 33/9 34/4 37/21 43/5 43/19 44/5 48/3 48/6 48/7 55/12 55/18 59/10 61/24 65/5 65/9 65/18 65/21 72/4 73/21 75/3 76/23
**beneficiary** [1] 55/5
**best** [1] 10/4
**better** [1] 8/21
**between** [15] 11/1 16/16 27/13 33/14 55/16 58/7 58/14 66/3 67/24 68/1 74/4 92/11 92/17 92/25 113/13
**beyond** [1] 104/25
**biblical** [1] 10/14
**big** [2] 103/16 115/9
**bill** [1] 97/1
**billed** [1] 113/3
**billers** [1] 112/21
**billing** [4] 97/7 98/7 113/5 120/19
**bills** [11] 97/4 97/8 97/11 97/14 97/21 97/25 98/8 98/14 98/22 113/16 120/21
**binder** [1] 54/18
**bit** [5] 32/7 71/12 77/6 77/15 113/20
**bizarre** [1] 5/12
**black** [2] 30/6 30/10
**blow** [10] 30/2 32/14 32/20 36/14 44/17 54/15 57/9 57/23 72/24 77/21
**blue** [10] 26/4 26/18 37/5 37/21 47/25 52/24 59/4 71/21 73/17 76/9 82/9
**board** [4] 89/6 89/9 89/11 89/16
**book** [1] 120/16
**borders** [1] 90/5
**Borek** [2] 91/7 91/10
**both** [6] 8/1 11/2 18/2 46/1 92/4 99/23
**bottom** [16] 27/3 27/5 29/11 34/25 45/7 49/8 54/23 58/5 62/15 65/24 67/17 68/9 70/8 70/12 74/20 74/21
**box** [1] 27/5
**Brady** [4] 19/24 21/6 22/17 120/24
**BRANDON** [1] 2/4
**break** [7] 23/10 32/25 68/21 68/24 69/2 69/11 118/18
**Bredahl** [1] 14/22
**BRETT** [4] 2/9 4/5 23/4 94/9
**brief** [1] 12/22
**briefly** [2] 22/22 29/9
**bring** [3] 12/8 21/23 68/21
**bringing** [1] 5/17
**brings** [1] 11/15
**Brock** [6] 55/1 55/3 56/15 59/8 61/22 62/20
**brought** [2] 7/23 8/21
**bubble** [24] 26/17 26/23 26/24 27/3 27/20 36/23 36/24 37/5 37/14 37/17 37/21 45/4 47/16 49/16 58/3 58/18 58/22 62/15 62/20 67/3 67/5 67/15 70/20 71/22
**bubbles** [20] 26/4 26/5 26/6 26/7 26/9 26/14 27/16 37/4 49/8 49/12 49/13 61/19 61/22 62/2 72/4 82/9 82/22 83/3 83/3 83/11
**Building** [1] 2/10
**burden** [1] 14/17
**business** [1] 28/10
**business-related** [1] 28/10

**C**

**C-h-r-i-s** [1] 91/9
**CA** [4] 1/20 2/8 2/11 2/16
**calculate** [5] 25/11 43/16 55/21 56/10 65/11
**calculated** [4] 24/23 31/2 56/8 57/1 66/19
**calculation** [1] 24/21
**calculations** [3] 23/25 43/23 81/17
**CALIFORNIA** [18] 1/5 1/16 4/1 88/10 88/24 89/3 89/6 89/17 89/18 89/17 89/20 90/4 90/13 90/14 115/18 116/16 116/19 116/24
**call** [1] 10/17
**called** [3] 14/2 104/3 104/12
**calls** [8] 8/4 89/23 93/24 96/3 96/14 96/21 107/2 120/8
**came** [9] 17/3 17/4 17/5 38/14 43/8 48/4 55/16 101/3 112/22
**can** [41] 4/24 5/9 10/7 10/8 12/8 14/13 14/20 17/11 18/18 19/1 19/2 19/3 20/14 22/11 27/18 29/4 32/14 34/7 37/9 37/25 38/7 38/15 42/19 45/15 49/19 50/9 58/17 61/16 62/18 63/12 73/2 77/8 84/24 87/7 89/12 96/3 106/8 106/9 106/16 106/16 113/11
**can't** [7] 14/8 21/15 92/2 94/13 94/16 94/19 100/8
**cannot** [2] 10/6 27/8
**cart** [1] 68/13
**Carter** [20] 112/12 113/18 113/22 114/16 114/17 114/19 114/23 115/12 115/15 115/15 115/18 115/22 116/11 116/15 116/19 117/12 117/18 118/1 118/7 118/15
**case** [46] 4/19 6/4 6/10 6/19 18/10 20/1 21/13 24/2 24/12 24/23 24/23 25/14 43/13 55/20 55/23 56/18 59/3 69/4 88/5 90/16 90/23 91/1 94/20 98/10 98/24 99/16 99/22 103/7 105/5 105/21 109/25 112/8 112/11 113/23 115/5 115/12 115/23 116/11 116/15 118/23 118/24 120/4 120/8 120/9
**case-related** [7] 24/12 24/23 25/14 43/13 55/20 56/12 65/18
**cases** [2] 7/4 10/12
**category** [2] 15/3 15/4
**CDC** [1] 4/15
**Cefali** [3] 4/11 23/9 109/16
**cell** [1] 116/8
**CENTRAL** [1] 1/5
**certain** [5] 11/8 27/7 48/17 50/2 96/5
**certainly** [4] 8/20 11/6 12/10 12/13
**CERTIFICATE** [1] 1/9 84/16
**CERTIFIED** [2] 1/9 84/16
**certify** [1] 122/6
**change** [1] 67/7
**charge** [1] 28/20
**charged** [1] 28/9
**chart** [82] 25/19 25/25 28/23 33/13 33/14 33/16 33/20 33/24 34/10 34/13 34/24 35/7 35/13 35/17 36/6 36/15 36/20 36/21 37/10 37/24 38/3 38/8 38/11 39/2 39/5 39/20 39/23 40/14 40/22 42/6 44/19 47/22 48/10 48/14 48/23 49/4 49/19 50/6 50/9 50/10 50/23 51/1 51/2 51/11 51/14 51/15 53/20 57/1 57/12 59/1 60/25 60/25 61/9 61/17 62/9 62/16 62/17 63/7 63/13 64/16 66/19 66/22 68/3 68/10 68/20 69/18 70/6 70/7 72/12 73/14 74/5 74/15 75/7 75/22 76/5 79/20 80/1 80/2 80/7 81/25 82/3 82/17
**charts** [14] 42/2 53/17 59/12 62/9 81/6 83/7 83/9 95/11 95/13 95/16 96/7 96/10 96/15 120/2
**Chat** [1] 6/16 116/8 116/9
**check** [7] 26/25 66/12 66/14 66/16 72/25 73/2 73/7
**Chief** [1] 2/5
**Chris** [7] 91/7 91/10 91/14 93/20 93/21 112/19 113/1
**CI** [1] 17/17
**circle** [1] 103/17
**Circuit** [1] 6/19

**circumstances** [1] 10/3
**clarification** [2] 65/5 83/23
**clarify** [2] 96/1 99/17
**clarity's** [1] 13/15
**clause** [1] 4/25
**clear** [8] 6/19 7/25 8/3 20/15 21/1 119/16 120/13 120/14
**clearer** [1] 10/2
**clearly** [3] 8/24 119/7 120/11
**Clemente** [1] 2/16
**client** [45] 20/19 25/8 25/22 26/5 26/21 30/24 40/25 41/8 41/19 42/21 43/20 44/12 44/14 45/9 45/17 49/8 49/13 53/16 54/4 56/4 56/18 56/22 57/22 58/8 62/3 62/24 64/12 65/4 67/6 67/22 80/11 82/12 83/8 83/17 99/4 103/12 104/2 104/5 104/12 107/9 107/20 107/22 110/11 110/22
**client-related** [3] 103/12 104/5 107/22
**clients** [27] 19/11 20/3 26/8 42/2 65/1 65/21 66/1 71/10 72/8 82/4 82/17 83/1 83/2 83/20 84/2 99/6 99/8 99/8 99/9 99/9 105/2 105/11 109/19 110/1 110/11 111/4 111/23 111/25
**Close** [1] 116/17
**closer** [1] 15/4
**CNB** [22] 41/1 41/7 49/10 52/24 53/6 57/20 57/21 58/24 59/2 61/23 62/21 63/15 63/16 67/6 67/15 67/19 68/4 70/2 70/8 73/15 76/7 83/13
**CNB 4705** [1] 70/8
**CNB 5566** [1] 61/23
**co** [2] 25/3 25/16
**co-counsel** [2] 25/3 25/16
**Code** [1] 122/7
**coded** [4] 57/15 67/1 69/22 82/7
**coding** [3] 26/3 36/18 44/22
**Coffee** [2] 59/23 60/18
**colleague** [3] 91/2 91/4 91/6
**color** [7] 26/3 36/17 44/22 57/15 67/1 69/22 82/7
**color-coded** [4] 57/15 67/1 69/22 82/7
**color-coding** [1] 26/3
**column** [1] 30/6
**combination** [2] 55/22 83/9
**come** [9] 14/6 16/8 20/14 38/22 43/7 55/15 68/20 89/12 89/19
**coming** [2] 19/10 34/8
**comments** [1] 5/18
**commingled** [1] 27/7
**commit** [1] 6/23
**communicate** [1] 109/11
**communicated** [3] 84/13 93/22 94/8
**communication** [3] 5/7 94/3 95/7
**communications** [6] 11/1 90/2 94/21 94/24 104/21 120/18
**Company** [1] 45/14
**competently** [1] 106/3
**compile** [1] 94/21
**compiling** [1] 96/7
**complied** [2] 12/11 120/5
**complies** [5] 31/21 42/18 50/5 63/6 82/2
**comply** [2] 5/24 7/10
**complying** [1] 12/18
**compound** [1] 115/2
**compounded** [1] 8/11
**computer** [3] 16/24 16/25 17/4
**concept** [1] 10/14
**conclusion** [1] 89/23
**conditions** [1] 5/17
**conduct** [3] 38/4 50/1 63/1
**Conference** [1] 122/11
**conferring** [1] 54/6
**conflated** [1] 6/3
**conformance** [1] 122/10
**confrontation** [1] 4/24
**confuse** [1] 102/22
**confused** [1] 6/3
**connection** [21] 6/4 21/2 41/21 88/1 88/5 90/17 91/10 94/4 97/25 98/9 98/24 99/15

**C**

connection... [9] 99/21 99/21 103/7 103/24
105/5 105/9 108/5 108/17 114/24
consistent [2] 21/13 21/17
consistently [1] 20/1
constituted [1] 21/17
consult [3] 96/9 96/12 96/14
contact [5] 5/10 14/22 17/24
contacted [1] 91/2
contained [2] 103/11 104/5
contains [1] 100/16
content [3] 32/4 36/14 57/9
contents [1] 44/17
continuation [1] 53/2 53/3 63/19
Continued [2] 3/6 23/16
continues [3] 41/5 41/12 119/11
contra [1] 8/20
contrary [3] 6/16 6/17 6/18
control [1] 93/19
conversation [1] 100/4
conversations [1] 119/19
conveyed [2] 96/3 108/15
convicted [1] 21/15
copy [1] 32/10
corner [5] 42/19 44/21 46/14 54/24 57/14
Corp [1] 46/25
correct [87] 7/5 9/14 16/21 19/7 21/10 24/8
27/22 27/23 36/19 40/12 40/13 44/3 44/23
45/6 60/16 63/21 67/2 67/13 67/16 68/8 73/23
76/17 77/20 78/4 78/12 78/23 79/24 81/5 81/8
82/8 84/13 84/14 84/17 84/18 84/20 84/21
85/4 85/5 85/18 88/8 90/10 92/3 93/3 93/13
93/14 93/16 93/25 94/1 96/6 96/10 96/11
96/19 96/24 97/16 97/17 98/2 98/3 98/4 98/15
98/19 100/3 101/8 101/22 101/23 105/12
105/18 108/4 109/16 109/17 110/6 110/8
110/9 110/10 110/13 110/14 111/10 111/20
111/21 112/9 112/19 113/15 114/6 115/17
116/14 117/16 118/17 122/8
correction [1] 11/17
correspondence [1] 20/20
corresponding [1] 25/17
cost [2] 20/2 21/20
costs [17] 18/10 19/5 19/10 19/12 21/13
21/14 21/17 24/1 24/25 31/12 32/3 32/24
104/2 104/12 105/10 106/24 107/9
could [70] 5/1 7/22 8/2 10/2 10/16 10/17
16/21 17/20 18/19 18/21 18/23 23/20 24/20
25/24 28/19 29/9 29/11 29/17 30/1 30/2 32/6
32/20 33/18 34/24 35/10 35/20 36/18 37/18
42/2 42/16 42/25 44/16 44/17 45/3 45/11 46/9
46/21 47/9 47/19 48/20 49/3 49/18 50/21 54/5
54/14 55/4 55/9 57/8 57/9 57/23 58/25 60/24
62/13 66/10 67/14 68/2 68/20 72/24 73/11
74/2 76/3 77/15 77/21 79/25 80/6 82/20 86/4
99/10 99/17 110/25
counsel [12] 2/1 2/15 4/7 23/5 25/3 25/16
54/6 71/19 72/1 80/4 88/16 88/18
counting [1] 4/7
country [1] 14/2
counts [1] 21/15
County [3] 24/14 26/18 37/5
couple [4] 13/15 103/19 114/8 120/1
course [1] 8/21
court [20] 1/4 5/16 6/6 6/9 6/25 7/1 7/20 8/8
8/13 13/8 14/18 19/17 21/19 22/1 22/4 87/22
90/17 91/8 112/4 122/16
Court's [1] 7/23
courthouse [3] 1/19 2/7 116/17
courtroom [3] 6/8 8/12 10/17
covered [1] 119/20
covering [1] 119/25
CPA [8] 84/15 84/17 85/3 85/16 86/16 86/20
87/2 87/21
create [1] 100/17
created [1] 62/9
credentials [1] 90/6
credit [1] 47/5
credits [2] 43/1 46/17

**Criminal**

criminal [6] 2/5 7/3 89/21 90/20 90/22 90/23
critical [3] 15/22 17/19 19/1
cross [12] 3/4 3/11 8/24 9/16 10/18 10/18 14/2
84/9 117/23 118/6 118/14 119/8
cross-examination [4] 9/16 84/9 117/23
119/8
cross-examinations [2] 118/6 118/14
cross-examine [8] 8/24 10/8 10/18
Cummings [3] 4/11 23/9 109/16
Currently [1] 4/18
custodian [2] 45/25 54/9
custom [1] 98/5
cut [1] 7/8

**D**

dash [1] 29/12 29/22
dashed [6] 49/4 49/11 61/20 62/1 62/22 83/12
data [16] 15/13 15/16 15/25 16/1 16/6 19/3
19/7 20/2 20/6 20/8 21/11 104/22 107/10
107/19 108/1 108/3
database [25] 16/10 16/13 17/8 19/22 19/23
19/25 21/11 21/12 22/6 22/7 100/14 100/15
100/25 101/3 101/5 101/18 101/19 101/22
101/25 102/1 102/6 102/9 102/12 102/14
104/22
date [19] 31/17 31/23 33/24 34/13 34/18
38/14 42/14 43/25 47/7 55/7 56/7 60/10 67/11
67/12 70/3 70/24 122/7 73/9 122/13
dates [5] 32/25 56/17 67/24 70/13 70/18
day [25] 1/12 14/12 14/14 15/6 38/17 38/18
38/20 39/11 39/12 41/9 41/15 45/13 45/21
46/19 48/4 51/7 51/21 51/22 53/6 54/2 64/1
73/24 75/8 77/2 80/21
days [3] 40/6 80/22 116/13
deal [1] 86/21
deals [1] 87/3
dealt [1] 87/15
DEAN [4] 2/15 2/15 4/10 23/8
debate [1] 22/12
decided [1] 9/19 91/3
decision [1] 14/19
declaration [1] 54/9
declarations [1] 45/25
deduct [1] 21/14
defects [1] 9/1
defendant [17] 1/12 2/13 13/17 15/21 17/12
23/23 26/15 31/23 36/9 36/9 37/11 42/13 54/1
61/13 66/7 81/3 81/22
defendant's [2] 48/16 61/12
defendants [2] 82/15 82/25 83/1
defense [3] 3/10 3/13 4/19 21/13 21/18
demonstrates [1] 12/20
Denied [1] 104/8
Denver [1] 115/16
deny [1] 8/23
denying [1] 10/22
department [1] 97/7
depict [1] 38/11
depicted [1] 37/3
depiction [1] 36/21
depicts [2] 37/6 38/13
deposit [28] 27/8 29/3 29/5 29/6 30/15 30/18
34/7 37/7 37/19 37/20 41/2 43/2 44/7 44/7
50/18 53/5 54/3 59/7 59/9 61/22 63/24 63/25
67/6 74/24 75/1 75/14 77/3 80/20
deposited [17] 25/22 26/20 26/25 27/13 28/1
28/17 37/9 44/14 45/2 45/21 49/10 49/24
56/24 57/20 58/20 70/2 99/4
deposits [9] 30/11 30/12 39/11 43/1 46/17
61/21 65/3 73/21 82/11
describe [3] 80/6 103/10 111/17
described [7] 68/7 71/5 81/6 91/3 103/4
104/16 111/19
description [1] 97/24
despite [2] 6/20 107/16
detail [3] 54/20 97/21 97/23
detailed [1] 63/2
determined [2] 99/15 99/20

**Determines**

determines [1] 99/17
did [108] 6/10 7/10 7/24 13/11 17/10 17/14
17/21 18/16 19/20 22/24 24/9 24/15 24/21 25/11
28/8 30/21 38/3 38/21 40/14 42/13 43/7 43/16
48/14 48/15 50/1 54/1 55/15 55/21 56/10 63/1
64/10 65/11 66/7 71/1 71/3 72/21 81/22 83/19
83/22 84/1 86/15 86/21 87/13 88/12 90/2 90/8
90/9 90/10 91/10 92/1 92/9 93/17 94/21 95/7
95/11 95/13 95/20 95/24 97/1 97/13 98/12
98/21 99/18 99/21 100/1 100/17 100/18
100/18 100/19 102/6 102/8 104/10 104/18
104/20 104/21 105/6 105/8 105/14 105/20
105/22 105/23 105/24 106/1 106/2 106/23
107/14 107/17 107/20 107/23 108/3 108/5
108/17 108/19 108/20 109/12 109/17 109/18
109/25 110/3 111/17 111/23 112/5 115/12
116/15 117/12 117/22 118/2 118/6 119/24
didn't [7] 12/2 13/22 20/4 20/7 21/12 100/17
108/1
different [4] 15/3 37/1 49/17 66/3
digits [1] 42/22
Dllanos [2] 59/23 60/18
direct [4] 3/4 3/11 23/16 111/15
directed [1] 119/6
direction [2] 117/19 119/19
directly [4] 10/23 27/8 35/8 82/4
dirty [1] 114/17
disagree [3] 4/18 11/12 92/22
disclosure [1] 119/23
discovery [10] 18/7 37/22 62/16 68/7 70/2
73/22 83/14 83/16 84/1 120/5
Discovery/Michelle [1] 83/16
discuss [3] 69/3 69/12 118/23
discussed [5] 37/7 72/14 81/18 95/8 120/3
discussing [3] 23/22 81/2 82/18
discussion [1] 90/8
discussions [1] 88/16
dispute [2] 87/19 87/20
DISTRICT [1] 1/4 1/5
DIVISION [1] 1/6 2/5
do [69] 5/17 6/1 12/16 12/21 13/3 13/25 14/5
14/8 14/13 15/21 18/23 19/1 20/4 22/2 23/21
24/3 26/10 30/16 31/8 31/22 32/9 42/2 44/5
46/18 47/4 48/6 49/11 50/14 53/17 59/18
61/19 62/1 64/13 69/5 69/5 69/12 72/4 74/17
74/20 74/22 83/1 87/19 89/17 91/10 92/1 93/5
93/8 94/17 96/20 98/24 98/25 100/6 100/11
100/15 101/24 102/2 102/12 103/2 103/16
103/21 104/24 105/1 105/3 107/5 117/12
118/2 118/6 120/1 120/9
docket [4] 9/4 10/25 17/11 17/12
document [2] 54/19 85/1
documents [11] 11/2 11/4 18/9 18/12 18/25
20/19 22/9 95/21 96/1 99/20 104/25
does [67] 4/23 6/18 7/19 15/23 15/25 16/5
18/8 22/9 24/25 25/7 25/19 26/18 26/24 27/3
27/11 27/15 27/24 28/16 28/23 29/15 30/7
33/9 36/20 37/10 37/22 38/11 39/5 39/23
40/22 42/9 43/5 43/19 44/11 44/24 45/8 45/15
47/16 49/3 49/23 51/1 51/14 53/23 55/13
55/18 56/15 56/21 57/18 58/6 58/10 58/13
58/22 59/4 59/13 62/9 64/19 65/9 67/3 70/5
79/6 80/15 82/17 82/23 83/14 84/15 92/24
97/8 114/24
doesn't [11] 4/14 7/3 7/15 7/16 9/17 10/18
11/7 15/23 17/24 18/18 19/4
doing [5] 8/17 12/20 16/23 17/2 96/13
dollar [2] 31/11 32/17
dollars [6] 44/13 56/23 64/11 68/11 75/12
113/12
don't [67] 4/18 5/13 5/14 9/16 9/23 10/2 11/6
13/5 15/14 16/14 16/18 17/1 17/1 17/6 17/7
17/8 21/20 22/12 22/12 23/13 68/17 84/23
85/7 87/10 87/14 87/17 88/25 89/2 89/7 89/13
90/10 90/24 92/12 92/16 92/23 93/19 95/2
95/10 96/2 100/10 102/1 102/7 102/10 102/22
103/1 103/5 103/22 105/19 105/22 106/23
108/14 110/2 110/5 111/15 111/22 112/3

## D

don't... [11] 112/7 113/4 113/9 113/19 115/6
119/13 120/10 120/17 120/17 120/18 120/19
done [4] 18/20 19/2 88/7 90/22
dotted [2] 37/15 84/5
double [1] 24/6
down [13] 27/22 32/6 45/8 46/17 47/4 58/5
59/17 60/2 60/12 77/6 77/15 114/21 119/3
draft [9] 96/15 97/14 104/25 108/2 120/2
120/13 120/13 120/15 120/15
drafts [5] 95/11 95/15 119/25 120/12 120/14
120/18
DRUM [18] 3/5 15/11 23/15 23/18 23/21 68/12
69/11 84/6 84/11 85/3 85/15 86/4 101/14
113/22 114/23 114/24 119/17 120/1
due [15] 25/8 42/7 43/10 43/20 44/6 44/8 44/9
53/21 56/4 56/8 56/16 56/18 64/17 65/21
110/22
duration [1] 95/17
during [6] 33/4 93/23 95/20 111/6 111/9
111/20

## E

e-mail [16] 16/12 16/13 31/22 31/25 32/9
32/18 48/16 88/7 93/24 94/6 94/8 95/13 95/22
95/25 96/4 96/18
e-mailed [4] 23/23 103/11 103/25 104/6
e-mails [16] 12/1 12/3 16/7 18/11 17/10 20/18
93/25 94/15 94/19 95/1 96/5 96/21 98/17
98/18 120/11 120/17
EA [69] 26/10 26/20 26/23 27/7 27/12
27/13 27/17 27/20 27/25 28/21 30/22 30/23
33/12 33/21 33/22 34/8 35/15 37/6 37/9 37/16
38/15 40/5 40/20 40/24 41/3 41/9 41/9 41/13
41/14 45/2 45/18 47/23 48/9 49/8 49/21 49/25
51/17 52/20 53/1 53/4 58/9 58/10 63/9 63/17
63/23 64/1 70/10 70/11 70/21 71/5 71/6 71/8
71/9 71/10 71/11 71/13 71/19 71/25 72/10
74/1 74/8 74/24 76/6 77/13 78/5 79/22 80/4
80/13
EA 0313 [3] 41/3 71/6 78/5
EA 2851 [1] 33/12
EA 4613 [2] 70/21 71/9
EA's [2] 80/4 102/14
each [4] 20/2 83/8 89/9 97/22
Eagan [10] 17/13 18/6 24/25 26/12 31/2 42/21
46/13 58/11 105/25 110/8
earlier [7] 37/7 40/10 61/24 72/15 78/21 81/18
117/20
earliest [1] 100/13
easier [1] 54/18
Edward [2] 58/19 60/9
effort [2] 90/11 105/7
eight [1] 17/25
either [3] 7/17 26/14 49/13
electronic [1] 107/10
elicited [1] 120/20
elmo [1] 69/17
else [14] 18/17 19/14 88/7 94/11 102/12
102/18 102/20 103/1 103/2 112/11 112/13
112/15 112/17 117/17
end [15] 14/12 14/13 23/25 29/10 29/12 33/15
34/12 34/12 48/10 56/18 60/24 68/9 74/13
75/22 76/1
ending [1] 28/6
ends [1] 60/25
engage [1] 117/22
engaged [1] 118/14
engagement [9] 91/21 92/7 92/11 92/14
92/19 92/22 92/24 93/6 93/11
enough [3] 13/13 75/19
entire [2] 10/8 33/13
entirety [1] 20/12
entitled [6] 21/14 21/16 31/2 81/18 85/16
122/9
entity [2] 78/21 81/9
entry [1] 94/11
error [1] 6/23
especially [1] 4/19

established [3] 10/15 22/5 115/6
estimated [1] 86/4
estimation [1] 106/25
ethical [2] 87/4 87/16
ethics [1] 87/5
Evan [17] 112/12 113/18 114/16 114/17
114/19 114/23 115/12 115/15 115/15 115/18
115/22 116/10 116/15 116/19 118/1 118/6
118/15
even [9] 8/3 17/7 18/11 18/17 18/23 19/4 19/7
19/12 20/8
ever [26] 17/3 81/22 89/8 90/2 90/9 90/20
90/22 93/17 95/3 95/7 95/11 95/13 102/6
102/8 102/18 103/23 104/1 104/11 104/18
104/21 105/6 105/20 105/23 108/17 108/20
112/5
every [2] 12/12 117/10
Everybody [1] 10/16
everything [8] 16/3 18/2 18/3 18/7 19/13 88/7
103/6 103/8
evidence [12] 5/24 7/2 15/5 16/8 31/20 42/16
45/24 46/8 54/8 54/13 66/11 72/24
exactly [5] 8/16 19/6 83/10 92/18 119/25
exam [12] 84/19 84/22 85/3 85/16 86/5 86/11
86/15 86/21 87/2 87/5 87/12 87/18
examination [5] 9/16 23/16 84/9 117/23
119/8
examinations [2] 118/6 118/14
examine [3] 8/24 10/8 10/18
example [1] 16/8
examples [1] 38/7
executed [1] 19/19
exercising [1] 12/14
exhibit [70] 3/8 3/9 3/14 11/7 11/7 11/18
13/8 23/20 23/22 24/20 25/24 28/19 29/10
31/10 31/12 31/20 32/13 33/18 35/10 36/13
38/8 38/24 39/18 40/17 40/21 42/5 42/17 43/4
44/16 46/1 46/10 46/22 47/10 47/19 48/21
50/4 50/21 51/5 52/24 52/2 52/13 52/2
52/18 53/19 54/8 54/9 54/13 54/14 55/9 57/8
58/25 61/16 63/5 63/10 64/15 66/11 66/21
68/2 68/12 69/12 72/15 72/24 73/4 73/12 76/3
79/17 79/23 82/1 120/16
Exhibit 148 [1] 42/17
Exhibit 359 [1] 46/22
Exhibit 367 [1] 66/11
Exhibit 371 [2] 54/8 54/14
Exhibit 382 [1] 46/10
Exhibit 392 [1] 72/24
Exhibit 4 [1] 11/7
Exhibit 420 [1] 24/20
Exhibit 421 [1] 25/24
Exhibit 422 [2] 28/19 32/13
Exhibit 423 [1] 33/18
Exhibit 424 [1] 35/10
Exhibit 425 [1] 36/13
Exhibit 426 [1] 38/8
Exhibit 427 [1] 38/24
Exhibit 428 [1] 39/18
Exhibit 429 [1] 40/17
Exhibit 430 [1] 42/5
Exhibit 431 [2] 44/16 47/10
Exhibit 432 [1] 47/19
Exhibit 433 [1] 48/21
Exhibit 434 [1] 50/4
Exhibit 435 [1] 50/21
Exhibit 436 [1] 51/10
Exhibit 437 [2] 51/24 52/2
Exhibit 438 [1] 52/13
Exhibit 439 [2] 53/19 55/9
Exhibit 440 [1] 57/8
Exhibit 441 [1] 58/25
Exhibit 442 [1] 61/16
Exhibit 443 [1] 63/5
Exhibit 445 [1] 66/21
Exhibit 446 [1] 68/2
Exhibit 447 [1] 68/12
Exhibit 448 [2] 69/12 73/12
Exhibit 449 [1] 76/3

Exhibit 450 [1] 79/17
Exhibit 48 [4] 23/20 23/22 31/10 31/12
Exhibit 5 [1] 11/7
Exhibit 50 [1] 31/20
exhibits [14] 3/7 3/13 42/1 45/25 46/5 46/8
53/16 61/24 64/12 64/13 96/8 114/2 117/7
120/12
Exhibits 359 [1] 45/25
Exhibits 439 [1] 53/16
Exhibits 444 [1] 64/12
exist [1] 12/7
existence [2] 7/8 10/13
exists [1] 17/7
expansion [1] 13/12
expect [3] 89/16 98/11 112/23
expedition [1] 18/24
expended [1] 105/11
expense [1] 20/2
expenses [23] 18/11 19/6 19/10 19/12 24/1
24/23 25/1 25/4 25/5 25/14 25/16 28/8 28/10
31/12 43/13 55/20 56/12 58/9 65/19 103/12
104/5 106/24 107/22
experience [1] 115/1
expert [3] 119/17 119/22 120/8
expertise [1] 91/5
explain [9] 7/8 11/22 12/19 12/22 19/18 50/9
52/21 63/12 101/15
explaining [1] 26/3
extent [1] 119/19
extractions [1] 17/8
extraordinary [1] 10/3

## F

fact [5] 9/10 10/5 10/9 37/15 108/6
factor [1] 25/15
failed [1] 85/25
failure [1] 5/24
Fair [1] 13/13
fairly [1] 94/3 95/15
faith [2] 8/12 119/15
far [2] 105/21 118/2
February [7] 18/2 31/18 31/23 39/22 39/25
40/8 52/4
February 15th [3] 39/22 39/25 40/8
February 20th [1] 52/4
February 4th [2] 31/18 31/23
Federal [2] 2/10 5/24
fee [9] 21/20 31/4 43/8 43/24 55/16 76/2
81/16 93/5 93/10
fees [17] 19/6 21/14 21/17 25/13 31/3 32/24
43/6 55/14 56/12 57/1 65/10 66/6 66/18 73/25
74/9 93/2 93/3
fever [1] 4/15
few [6] 32/14 38/7 59/16 59/17 60/2 61/14
figure [14] 24/6 25/11 43/7 43/14 43/16 43/17
56/10 65/11 65/15 99/18 105/10 105/12 107/9
107/20
figured [1] 4/19
file [5] 4/24 6/23 7/24 11/13 21/25
filed [6] 5/19 5/22 5/25 7/22 7/25 20/1
files [7] 17/18 17/23 17/25 18/5 18/13 20/19
20/24
filing [6] 10/25 11/5 12/18 13/8 18/17 20/25
filings [2] 4/13 21/19
filled [1] 114/23
final [1] 120/15
financial [1] 18/14
financials [1] 18/10
find [2] 4/21 105/7
finding [2] 6/9 6/11
fine [5] 30/3 68/16 68/22 68/25 118/20
finish [1] 79/25
firm [12] 19/20 19/21 19/21 104/12 105/6
106/5 106/20 106/20 106/22 106/25 107/16
114/15
first [40] 7/2 17/12 26/19 26/23 30/2 30/5 42/9
44/20 44/24 45/1 47/24 47/25 48/3 53/23
54/15 57/13 57/18 59/3 63/12 64/19 64/20

**F**

**first... [19]** 66/24 67/7 68/5 71/15 71/18 74/23
74/24 75/6 76/10 88/4 88/6 91/2 100/4 100/24
100/25 102/11 106/5 108/9 109/24
**fishing [1]** 18/24
**fit [1]** 91/5
**five [1]** 4/8
**flows [1]** 49/15
**flying [1]** 14/21
**focus [1]** 112/1
**focusing [4]** 53/23 66/11 70/5 70/12
**following [3]** 10/22 32/21 44/7
**foregoing [1]** 122/7
**form [2]** 69/4 118/23
**format [1]** 122/10
**forth [2]** 17/7 17/9
**Forward [1]** 32/1
**fought [1]** 20/23
**foundation [4]** 85/11 85/13 85/22 89/14
**four [16]** 19/8 42/22 46/14 47/1 49/17 82/17
83/7 84/20 85/4 85/6 86/10 99/6 99/8 99/9
112/19 112/21
**Fourth [1]** 2/11
**FOX [1]** 2/4
**frame [1]** 14/3
**Frauds [1]** 2/6
**free [1]** 4/16
**FRIDAY [1]** 4/1
**front [2]** 69/13 106/3
**full [5]** 8/5 14/8 14/11 49/19 80/2
**fund [1]** 39/25
**funds [1]** 26/1 37/3 38/9 39/3 39/21 50/7
50/24 51/12 52/3 83/21 84/3
**further [6]** 5/18 13/3 14/17 37/3 38/4 84/6
**FYI [1]** 32/5

**G**

**Galicia [1]** 15/2
**Gardner [42]** 13/11 42/4 42/7 43/18 43/25
44/8 44/15 47/18 48/14 48/18 48/19 48/24
49/16 49/23 49/25 50/2 50/8 50/10 50/16
50/20 50/25 51/3 51/9 51/13 51/16 51/19
51/23 52/4 52/6 52/14 53/7 53/9 53/13 53/14
62/8 63/1 72/9 72/13 79/10 83/5 84/2 108/22
**Gardner's [5]** 13/1 44/14 44/20 47/24 48/11
**gather [1]** 98/21
**GB [24]** 26/10 28/18 38/9 38/16 38/19 38/23
39/3 39/8 39/11 39/21 40/1 50/7 50/13 50/18
50/24 51/5 51/8 51/12 51/18 51/21 52/3 58/9
58/10 58/19
**general [2]** 93/1 97/23
**generally [9]** 14/24 24/9 28/8 28/23 29/1 35/4
96/7 97/18 115/5
**generated [2]** 97/4 97/6
**gentlemen [4]** 22/18 23/12 69/1 118/22
**Geoffrey [31]** 25/23 26/1 27/18 28/22 33/22
35/8 35/15 36/5 36/10 36/22 36/24 36/25 37/9
37/12 37/18 37/25 38/9 38/13 38/18 38/20
39/3 39/6 39/13 39/16 40/4 40/9 41/15
72/9 77/16 83/5
**get [32]** 10/18 17/22 17/23 17/23 19/15 20/15
68/20 84/19 86/4 86/16 95/12 97/14 115/13
**getting [2]** 114/21 115/7
**Giglio [4]** 19/24 21/6 22/17 120/24
**give [4]** 17/11 108/1 108/3 119/22
**given [1]** 99/19
**giving [1]** 100/2
**Global [11]** 26/13 28/17 39/17 40/7 52/12
58/11 60/13 77/12 77/20 78/9 78/25
**go [42]** 7/6 17/10 24/20 25/24 27/2 28/11
28/19 30/1 30/21 33/13 34/18 34/12 34/23
35/10 35/20 39/18 42/25 43/4 44/16 45/3
45/11 45/15 46/17 46/18 46/19 47/13 49/4
50/21 52/13 55/9 57/8 58/25 60/24 66/21
67/14 68/2 68/22 73/11 76/3 79/17 79/25 80/6
**going [45]** 5/7 8/23 19/18 20/25 26/19 26/22
27/2 27/10 27/10 27/15 27/22 28/16 30/3
31/10 33/11 33/13 34/23 37/6 37/16 37/16
41/4 44/24 45/4 45/7 45/16 47/13 47/15 57/17

58/2 58/5 58/12 58/21 62/22 63/19 67/4 67/20
72/1 73/9 74/16 85/6 89/1 89/19 90/22 91/20
100/10
**going to [1]** 30/3
**good [23]** 4/5 4/8 4/9 4/12 8/12 12/23 22/20
23/3 23/6 23/7 23/11 23/12 23/13 23/18 23/19
65/5 68/24 83/23 84/11 84/12 91/5 118/12
118/18
**good-faith [1]** 8/12
**got [6]** 17/18 18/7 85/17 85/24 114/17 120/13
**gotten [2]** 8/13 17/20
**government [90]** 5/6 5/7 5/9 5/15 5/22 5/25
6/3 6/5 6/7 6/10 6/14 6/16 6/20 6/24 8/20 8/25
9/3 10/5 10/25 11/1 11/4 12/11 12/17 15/15
15/23 15/25 16/1 16/5 19/2 19/19 19/23 20/3
20/6 20/12 20/21 20/23 22/8 45/24 54/6 54/8
88/1 88/4 88/19 90/3 90/25 91/2 91/3 91/22
92/10 92/12 92/13 92/13 92/17 92/25 93/2
94/25 94/25 96/10 97/5 97/7 97/9 97/15 98/9
100/2 100/5 100/9 100/11 101/1 101/6 101/10
101/21 101/22 101/24 103/23 104/1 104/11
104/15 104/22 107/13 107/24 108/5 108/8
108/14 109/19 110/4 110/13 114/2 119/6
120/8 120/22
**government's [6]** 6/10 12/24 15/11 23/15
109/3 119/18
**granted [1]** 8/18
**graphic [1]** 36/21
**gray [1]** 27/13
**green [9]** 26/7 27/16 36/23 36/24 47/16 49/16
58/21 72/4 83/3
**Greg [15]** 53/18 53/21 55/23 56/24 56/25
57/13 58/24 59/3 61/18 62/4 62/5 62/17 62/25
72/8 83/5
**Gregory [1]** 61/10
**gritty [1]** 114/21
**ground [1]** 4/15
**group [11]** 45/10 45/12 48/8 58/19 84/4 91/16
92/17 92/25 97/6 98/12 112/16
**Group's [1]** 93/1
**guess [1]** 30/14 113/13 114/16

**H**

**had [50]** 4/25 6/25 7/19 8/13 9/6 13/17 15/10
15/16 17/16 17/20 18/1 18/2 18/2 18/6 19/14
19/23 20/3 20/9 29/2 29/23 38/17 39/8 40/5
41/6 41/13 50/16 51/6 51/20 53/4 63/25 75/18
84/19 84/20 86/16 90/3 94/22 94/24 95/25
96/2 96/21 101/19 101/22 105/10 105/11
105/16 105/18 106/3 106/6 106/14 106/20
**half [19]** 15/17 54/15 77/22 87/24 90/11 91/19
93/15 93/23 94/2 95/18 95/20 96/9 96/22
97/11 97/19 103/3 108/7 118/13 120/4
**hand [17]** 26/17 33/3 36/22 37/5 42/19 44/21
46/14 48/25 49/15 52/23 53/4 54/23 57/14
61/19 62/15 63/14 63/23
**handed [1]** 85/1
**handful [3]** 30/2 83/7 95/17
**hands [1]** 114/17
**HANNA [1]** 2/7
**happened [8]** 6/4 10/5 20/15 20/17 45/19
97/18 99/3 119/13
**happens [1]** 45/11
**happy [1]** 7/14
**Harper [1]** 15/4
**has [26]** 4/21 6/3 10/14 12/11 15/24 16/4 16/8
18/15 18/19 19/12 19/14 19/16 20/11 21/6
21/17 22/10 89/9 91/18 105/21 110/7 112/11
113/3 113/18 113/22 114/1 114/5
**hash [1]** 48/1
**hasn't [1]** 19/2
**Hassan [4]** 43/2 49/7 49/22 53/14
**have [140]**
**having [3]** 7/1 8/11 17/22
**he [48]** 6/16 8/7 8/8 8/11 8/13 8/13 8/15 8/16
8/16 8/17 13/20 15/21 16/3 17/13 17/14 17/16
17/16 17/19 17/24 18/1 18/5 18/5 18/6 18/23
18/16 18/18 18/18 18/19 18/24 19/9 19/12 19/14
19/1 19/1 19/5 19/8 19/8 19/12 19/14

91/16 91/17 91/18 114/25 119/19 119/23
**heard [4]** 89/8
**hearsay [3]** 46/2 54/10 85/12
**heavily [3]** 113/22 114/1 114/19
**held [1]** 122/9
**help [1]** 116/19
**helped [1]** 115/13
**her [16]** 4/20 5/8 5/10 5/10 5/20 16/23 16/24
16/25 17/4 50/10 51/19 81/9 83/19 109/17
114/17 117/2
**here [29]** 9/17 14/21 14/25 14/25 18/10 20/17
35/1 49/3 55/7 64/5 66/6 68/6 69/2 69/17
69/25 71/6 87/14 88/10 99/19 110/6 110/10
116/17 116/19 118/21
**hereby [1]** 122/6
**Hernandez [1]** 23/9
**hey [1]** 105/23
**higher [1]** 24/6
**highly [1]** 119/9
**Hills [1]** 35/2
**him [6]** 14/3 16/15 17/18 19/5 19/9 120/18
**himself [1]** 18/20
**hire [1]** 91/3
**his [8]** 17/14 17/20 17/21 18/5 19/5 81/3 81/7
119/20
**hold [1]** 14/1
**holds [1]** 120/8
**Honda [1]** 45/13
**Honor [101]** 4/5 4/9 4/25 5/3 6/12 6/14 6/21
6/22 6/23 7/5 7/9 7/14 7/18 7/21 7/24 8/8 8/7
8/11 8/16 8/19 9/5 9/15 9/18 9/20 9/25 10/4
10/19 11/13 11/25 12/4 12/8 12/15 12/20 13/3
13/17 14/5 14/23 15/8 15/10 15/12 15/19
17/10 17/16 19/10 20/4 20/12 21/2 21/10 21/17
21/10 21/18 22/11 23/3 23/7 28/24 29/17 34/5
34/14 34/19 35/25 45/23 46/2 54/5 54/7 54/10
59/21 60/14 68/14 68/19 68/23 68/24 71/16
71/23 72/6 72/16 74/6 76/11 76/19 77/8 77/18
78/2 78/10 79/2 80/8 80/16 84/24 85/9 85/11
85/19 85/21 99/10 100/20 103/13 104/7
108/11 115/19 116/21 118/19 119/5 119/17
120/7 120/19
**Honor's [3]** 7/13 7/15 15/6
**HONORABLE [1]** 1/8
**host [1]** 12/19
**hotel [1]** 116/16
**hour [6]** 14/9 14/11 93/13 113/12 113/12
113/14
**hourly [4]** 93/3 93/5 93/10 93/19
**house [2]** 16/23 17/5
**how [48]** 13/10 14/11 15/22 15/22 18/5 25/11
35/4 41/21 43/16 43/21 43/24 48/11 53/13
55/21 56/5 56/7 56/10 61/3 64/9 65/11 74/12
75/1 75/10 76/18 79/12 81/6 81/14 81/18
87/21 88/12 90/25 91/13 93/22 95/5 96/12
97/1 97/4 97/21 97/23 101/25 102/2 104/15
106/4 106/24 109/3 109/9 113/18 114/12

**I**

**I'd [2]** 19/4 68/19
**I'll [3]** 11/21 99/13 109/22
**I'm [32]** 7/18 8/23 10/22 10/22 12/3 14/10
16/9 17/2 17/3 19/18 20/25 33/13 34/23 39/7
48/19 69/15 78/7 83/23 88/22 89/5 89/9 92/16
92/20 93/7 94/16 99/18 106/16 108/9 109/21
111/25 120/25 121/1
**I've [3]** 37/3 69/24 92/8
**I-N-D-E-X [1]** 3/2
**idea [5]** 110/7 110/11 110/12 110/15 111/22
**Ideally [1]** 97/3
**identical [1]** 120/4
**identified [1]** 11/4 43/17 55/23
**Illinois [1]** 84/17
**IM [2]** 75/5 75/9
**images [1]** 19/20
**imagine [1]** 112/6
**immediately [3]** 71/1 74/11 119/6
**impeachment [2]** 85/10 85/20

**important [4]** 5/4 6/13 15/22 21/25
**importantly [1]** 15/25
**inaccuracies [1]** 98/4
**inartfully [1]** 9/21
**include [1]** 24/25
**included [3]** 19/21 24/6 37/24
**including [6]** 87/4 93/3 93/25 94/6 114/21 119/24
**incomplete [1]** 11/9
**incorrect [1]** 11/16
**incorrectly [1]** 9/19
**incurred [1]** 23/9
**independent [3]** 26/4 58/16 58/17
**indicated [1]** 13/24
**indicates [1]** 29/22
**individual [2]** 37/11 97/22
**individuals [4]** 13/18 14/1 22/19 67/25
**individuals' [1]** 113/5
**inform [1]** 108/5
**information [23]** 21/7 21/21 54/25 69/25 71/6 95/21 98/1 99/19 99/19 99/23 99/24 99/25 100/2 100/3 100/9 100/14 101/9 102/21 102/24 106/12 107/22 112/4 112/5
**informed [5]** 7/20 8/2 88/23 90/3 101/21
**informing [1]** 6/22
**initially [1]** 100/12
**Inn [1]** 116/18
**Instead [1]** 5/5
**interest [1]** 14/6
**interview [6]** 12/4 109/18 109/25 110/2 110/3 119/25
**interviews [1]** 110/1
**inventory [1]** 22/9
**investigative [1]** 94/11
**involved [4]** 91/14 113/22 114/1 114/19
**IRS [7]** 17/17 17/24 20/17 72/1 72/20 80/5 80/24
**is [307]**
**isn't [10]** 84/22 85/15 85/24 86/6 86/11 87/2 90/18 108/2 113/23 114/2
**issue [10]** 5/16 9/9 9/16 11/14 11/15 19/23 21/2 21/25 22/4 88/23
**issues [2]** 12/19 15/10 69/4 86/25 87/16 118/24
**it [184]**
**it's [30]** 5/4 12/6 12/9 12/13 12/13 12/16 16/9 16/10 17/2 19/9 19/12 21/22 22/17 22/17 22/18 22/19 30/25 53/3 54/18 57/14 68/19 68/20 79/23 93/9 93/12 96/24 106/16 119/14 119/20
**Item [2]** 4/3 23/1
**items [1]** 15/22
**its [6]** 5/22 5/25 8/25 9/3 12/11 22/9
**itself [1]** 16/10

## J

**JAMES [1]** 1/8
**January [35]** 25/8 27/14 29/3 30/5 30/14 33/14 33/25 35/17 39/4 39/9 42/7 42/11 43/3 43/20 44/9 45/2 46/18 47/8 48/3 48/10 51/13 51/16 51/18 53/21 53/22 53/24 55/8 55/12 56/4 56/7 58/7 58/14 59/6 60/11 85/17
**January 10th [1]** 58/7
**January 16th [2]** 51/16 51/18
**January 2017 [1]** 44/9
**January 2021 [1]** 53/22
**January 25th [5]** 42/7 42/11 43/20 45/2 48/3
**January 26th [3]** 46/18 47/8 48/10
**January 28th [1]** 85/17
**January 29th [4]** 25/9 30/5 30/14 33/14
**January 30th [3]** 27/14 33/25 35/17
**January 5th [3]** 39/9 53/21 53/24 55/8 55/12 56/7 58/14 59/6
**January 8th [1]** 60/11
**Jencks [7]** 12/7 12/11 12/21 99/12 119/6 120/9 120/23
**job [6]** 12/6 12/9 12/17 115/8 115/9 118/2
**jobs [1]** 14/1

## JOHN [8]
1/11 2/14 3/5 4/4 23/2 23/15 114/23 115/5 115/12
**Johnson [52]** 16/12 18/13 19/6 19/8 25/5 25/23 27/9 27/18 31/3 32/1 32/3 33/16 35/8 36/5 36/10 36/22 36/23 36/25 37/9 37/11 37/13 37/19 37/19 37/25 38/3 38/5 38/10 38/14 38/18 38/20 38/22 39/4 39/6 39/13 39/22 39/24 40/4 40/9 40/11 41/16 41/23 41/25 50/1 56/2 62/8 63/1 72/9 72/12 77/17 83/5 84/2 108/20
**Johnson's [7]** 24/2 24/23 26/1 28/22 33/22 35/15 41/21
**Johnson-related [1]** 25/5
**joining [1]** 23/9
**JUDGE [1]** 1/8
**judgment [1]** 22/4
**Judicial [1]** 122/11
**Judy [14]** 16/12 16/23 17/4 23/22 31/22 55/24 55/25 103/11 103/20 103/24 104/6 105/24 106/25 107/4
**Julian [1]** 94/9
**July [4]** 18/4 29/23 33/14 36/11
**July 2015 [1]** 36/11
**July 6th [2]** 29/23 33/14
**June [4]** 18/5 18/5 21/3 21/4
**June 6th [2]** 21/3 21/4
**junior [1]** 93/20
**jurisprudence [1]** 10/13
**jury [12]** 4/2 21/23 22/25 23/13 69/9 103/6 105/21 106/3 107/8 110/13 113/11 119/2
**just [32]** 7/9 9/15 10/6 10/8 10/16 13/22 15/4 15/14 15/15 19/17 20/11 20/11 20/14 20/25 22/19 24/25 32/5 33/6 34/21 59/16 68/7 73/4 75/13 77/21 99/19 101/14 101/16 103/3 103/19 106/15 111/8 117/15 120/13
**JVS [3]** 1/11 4/3 23/1

## K

**Karlous [2]** 4/7 23/5
**Keithahn [1]** 112/14
**kept [1]** 16/25
**Khe [1]** 112/16
**kind [5]** 14/19 28/8 74/4 82/22 114/17
**knew [7]** 8/7 8/13 8/16 8/16 8/17 17/11 105/11
**know [34]** 5/11 5/14 7/14 14/19 14/20 14/24 17/1 17/5 17/6 17/7 22/12 22/13 22/18 42/2 42/20 87/10 88/12 89/7 92/12 94/18 96/1 96/16 101/24 102/1 102/2 102/3 102/7 103/22 105/3 113/4 113/19 120/7 120/9 120/25
**Knowing [1]** 8/5
**knowledge [2]** 6/20 8/5
**knowledgeable [1]** 114/14
**knows [4]** 17/16 17/19 106/24 107/4
**Kupetz [4]** 73/8 77/4 80/22 80/23

## L

**L.A [1]** 24/14
**labeled [1]** 70/20
**ladies [3]** 23/12 69/1 118/22
**laid [1]** 4/15
**large [2]** 27/8 100/16
**last [42]** 5/25 11/7 15/16 16/17 21/5 25/19 28/12 28/16 29/10 34/13 35/20 39/14 41/11 41/12 41/17 42/22 44/11 46/14 47/1 56/21 66/3 74/11 75/3 78/14 79/6 90/11 93/23 94/2 95/18 95/20 96/9 96/22 97/11 97/18 103/2 108/6 110/7 115/22 116/10 118/10 118/13 119/13
**lastly [8]** 8/10 25/19 27/15 47/15 52/13 58/21 65/24 78/24
**late [1]** 87/23
**later [6]** 19/8 19/8 50/19 77/24 80/23 101/3
**law [17]** 2/15 10/7 10/15 19/20 19/20 19/21 45/10 45/12 48/8 58/19 90/17 106/4 106/20 106/20 106/22 106/25 120/10
**lawyer [1]** 7/16
**lawyers [1]** 7/15
**Lay [2]** 85/13 85/22

**leading [2]** 24/17 44/1
**leads [1]** 28/9
**least [8]** 17/5 38/21 39/16 40/10 63/3 85/6 98/14 108/6
**led [3]** 6/23 6/25 8/8
**left [46]** 26/2 26/17 36/17 37/5 37/14 38/12 38/16 39/8 40/2 41/1 42/19 44/21 44/24 48/11 48/25 49/3 49/4 49/4 49/6 50/14 50/15 51/6 51/18 52/23 53/4 57/14 57/17 61/3 61/19 61/20 62/15 63/14 63/23 66/25 67/3 67/5 69/21 69/24 70/20 74/12 75/10 79/12 80/10 82/6 82/10 83/11
**left-hand [12]** 26/17 37/5 42/19 44/21 48/25 52/23 53/4 57/14 61/19 62/15 63/14 63/23
**legal [11]** 25/13 43/6 55/14 56/12 57/1 65/10 66/6 66/18 87/4 87/15 89/23
**legend [8]** 26/2 36/17 44/22 49/1 57/15 67/1 69/22 82/7
**less [6]** 19/9 43/13 55/14 65/10 71/12 85/24
**let [9]** 9/15 9/21 10/6 14/20 26/23 29/9 30/5 42/2 42/19
**let's [14]** 5/20 7/25 20/10 27/2 38/7 38/24 42/1 42/5 52/13 66/21 71/11 74/14 81/25 82/6
**letter [2]** 91/21 92/15 92/19 92/21 92/24 93/6 93/11
**letters [1]** 95/5
**license [1]** 84/19
**licensed [6]** 84/17 86/20 89/3 89/21 90/4 90/13
**light [6]** 4/19 47/25 59/4 73/17 76/9 119/13
**like [52]** 14/5 15/16 17/12 17/15 19/9 20/19 21/24 22/3 26/2 26/9 26/22 27/21 28/11 28/12 29/12 30/6 30/15 31/7 32/25 34/1 34/10 34/24 35/1 45/3 47/25 48/25 49/21 52/16 54/17 56/14 57/14 58/2 59/12 59/12 60/12 60/25 66/25 67/14 68/19 69/21 70/21 71/11 73/21 74/8 76/23 77/16 78/8 78/24 79/23 82/6 82/22 83/8
**limited [2]** 22/17 22/19
**line [19]** 10/12 25/19 34/7 37/8 37/15 49/5 49/11 53/23 55/18 59/4 59/9 61/20 62/1 62/22 64/22 73/17 76/9 83/12 84/5
**lines [2]** 7/11 32/14
**listed [12]** 25/9 38/2 43/21 55/7 56/5 58/18 65/18 65/22 66/6 67/11 83/4 94/18
**listen [2]** 101/14 104/10
**listened [1]** 10/9
**little [8]** 11/9 32/6 34/2 71/12 77/6 77/15 93/18 113/20
**LLC [2]** 55/3 60/13
**LLP [2]** 42/21 46/13
**lobby [1]** 116/16
**long [16]** 10/12 64/14 64/18 66/23 67/23 70/9 70/13 74/17 83/6 83/22 83/24 87/21 91/13 106/16 114/12
**longer [1]** 116/23
**look [15]** 7/6 16/16 17/10 36/13 38/7 38/24 48/20 50/4 61/16 63/5 81/25 82/22 83/7 96/16 107/9
**looked [2]** 21/4 83/7
**looking [4]** 12/21 95/12 96/5 114/18
**looks [38]** 25/9 26/9 26/22 27/21 28/11 28/12 29/12 30/5 30/15 31/6 32/25 34/1 34/10 34/24 35/1 45/3 47/25 48/25 49/21 52/16 56/14 57/14 58/2 60/12 60/25 66/25 67/14 69/21 70/21 71/11 73/21 74/8 76/23 77/16 78/8 78/24 79/23 82/6
**Los [3]** 2/8 26/18 37/5
**lot [2]** 113/20 113/21
**lower [1]** 98/11
**lunch [4]** 13/21 14/9 14/11 118/21

## M

**made [34]** 10/25 13/20 19/17 20/6 20/17 20/21 27/17 36/22 37/18 38/13 39/4 41/9 41/15 48/17 48/19 50/19 51/2 51/8 51/22 53/7 63/16 64/1 66/14 68/14 70/1 72/1 80/13 80/23 82/4 90/11 96/1 99/6 110/22
**mail [16]** 16/12 16/13 31/22 31/25 32/9 32/18

## M

**mail...** **[10]** 48/16 88/7 93/24 94/6 94/8 95/13 95/22 95/25 96/4 96/18
**mailed** **[4]** 23/23 103/11 103/25 104/6
**mails** **[16]** 12/1 12/3 16/7 18/11 20/17 20/18 93/25 94/15 94/19 95/1 96/5 96/21 98/17 98/18 120/11 120/17
**major** **[2]** 2/6 13/7
**make** **[19]** 9/17 10/6 10/18 19/4 20/12 20/25 38/9 39/3 39/21 50/7 50/24 51/12 52/3 75/20 95/20 97/9 97/12 98/1 105/6
**making** **[1]** 70/14
**management** **[1]** 106/4
**many** **[3]** 13/10 19/1 96/24
**March** **[26]** 27/14 29/6 33/9 34/16 35/18 35/24 36/2 58/7 58/14 60/25 61/3 64/18 64/23 65/22 70/4 71/19 72/22 73/10 73/24 74/4 77/7 77/12 77/15 77/24 80/12 81/4
**March 14** **[1]** 60/25
**March 14th** **[7]** 58/7 58/14 61/3 64/18 64/23 65/22 70/4
**March 15th** **[6]** 71/19 73/24 74/4 77/7 77/12 80/12
**March 2018** **[1]** 81/4
**March 20th** **[1]** 77/15
**March 26th** **[2]** 72/22 73/10
**March 2nd** **[1]** 33/9
**March 30th** **[4]** 27/14 34/16 35/24 36/2
**March 31st** **[1]** 29/6
**mark** **[3]** 29/12 29/22 48/1
**MARKED** **[2]** 3/7 3/13
**Mary** **[1]** 32/10
**material** **[1]** 18/3
**materials** **[3]** 12/7 119/7 119/15
**matter** **[29]** 7/16 13/2 25/3 87/22 88/10 88/24 90/12 90/18 90/20 90/23 91/3 91/11 91/15 91/18 94/4 97/2 98/9 98/14 98/18 102/22 102/25 112/21 113/1 113/3 113/18 114/5 114/15 119/11 122/9
**matters** **[5]** 13/16 99/9 104/3 113/6 114/25
**may** **[22]** 12/9 13/8 18/4 21/3 21/6 50/25 51/7 70/16 70/25 71/1 74/20 75/13 75/19 75/22 76/1 84/25 87/8 98/16 108/10 112/23 119/3 120/15
**May 15th** **[1]** 51/7
**May 4th** **[8]** 70/16 70/25 71/1 74/20 75/13 75/19 75/22 76/1
**maybe** **[3]** 18/4 34/25 109/22
**McNicholas** **[1]** 32/11
**me** **[34]** 4/14 5/12 6/19 15/9 9/21 10/6 11/9 15/18 20/18 20/21 26/23 29/9 30/5 91/4 93/21 98/18 100/5 100/8 100/10 101/15 101/16 104/16 107/8 108/3 108/15 109/11 109/12 111/1 114/19 117/14 117/25 118/7 118/15 119/7
**mean** **[19]** 10/15 13/7 29/15 30/8 49/23 50/14 56/15 58/10 83/1 83/14 92/20 93/7 94/25 99/17 100/15 113/11 113/22 114/23 120/25
**meaning** **[1]** 116/8
**means** **[4]** 29/16 48/1 49/24 83/15
**meant** **[2]** 31/5 83/2
**media** **[3]** 111/11 111/12 112/3
**meet** **[1]** 116/15
**meetings** **[1]** 110/4
**memorandum** **[2]** 12/4 119/24
**mention** **[2]** 17/14 18/8
**mentioned** **[1]** 117/20
**message** **[1]** 32/4
**messages** **[1]** 95/3
**met** **[4]** 88/1 88/4 116/10 116/16
**MICHAEL** **[7]** 1/11 2/14 4/9 23/2 23/7 73/5
**Michelle** **[29]** 37/23 38/1 40/19 40/25 41/7 41/19 49/9 52/19 52/24 53/11 61/24 62/18 63/8 63/15 64/7 64/14 64/17 66/23 67/22 69/19 70/9 70/13 71/2 79/21 80/3 80/11 83/5 83/16 83/24
**Microsoft** **[1]** 116/9
**mid** **[1]** 69/1
**mid-morning** **[1]** 69/1

## M (continued)

**middle** **[10]** 37/4 42/25 45/15 45/16 47/12 52/1 56/6 64/17 69/12 75/24 93/24 94/7 108/24 110/14 120/24
**might** **[1]** 68/23
**million** **[79]** 19/9 25/12 25/13 26/25 27/12 27/20 27/25 29/3 29/5 29/7 30/15 30/18 30/20 31/1 31/6 32/23 33/5 34/8 37/7 37/20 41/1 41/22 41/24 42/12 43/2 43/11 43/22 44/10 45/9 45/12 45/13 48/9 52/25 54/22 55/13 56/11 57/4 57/5 57/6 57/19 58/15 59/7 61/23 64/21 64/24 65/8 65/10 65/15 65/23 66/2 66/5 67/7 67/10 67/19 67/21 70/8 70/11 70/14 71/12 71/19 72/2 74/19 75/4 75/10 75/16 76/21 77/3 77/3 80/13 80/20 80/21 80/22 80/23 81/4 81/12 81/20 81/23 83/19
**mind** **[2]** 13/10 40/2
**minimal** **[1]** 86/4
**minus** **[4]** 25/13 25/13 56/11 56/12
**minute** **[2]** 83/18 95/12
**minutes** **[2]** 69/2 69/6
**Miramar** **[1]** 2/16
**miscellaneous** **[3]** 27/6 27/21 58/20
**misdemeanor** **[1]** 89/22
**missing** **[1]** 11/9
**mistrial** **[1]** 5/23
**Mixed** **[1]** 28/10
**mock** **[3]** 117/22 118/6 118/14
**moment** **[2]** 54/5 103/13
**Monday** **[5]** 4/21 4/24 5/21 14/21 88/6
**money** **[20]** 21/16 37/8 41/21 45/20 47/17 48/11 48/14 49/15 52/11 52/25 53/10 53/13 64/6 64/9 64/10 72/14 75/20 83/19 83/25 99/4
**monies** **[1]** 110/22
**month** **[5]** 32/25 33/4 33/7 51/3 99/7
**monthly** **[1]** 98/7
**months** **[5]** 17/25 27/13 28/2 98/12 114/13
**more** **[13]** 8/3 13/9 15/25 17/25 19/14 27/21 29/7 63/2 78/24 81/18 81/25 106/24 107/4
**Moreover** **[1]** 8/25
**morning** **[14]** 4/5 4/8 4/9 4/12 7/7 13/16 23/3 23/6 23/7 23/10 23/12 23/13 23/18 23/19 68/21 69/1 84/11 84/12 116/1
**most** **[4]** 82/4 112/25 113/3 114/14
**motion** **[7]** 5/23 6/24 7/25 8/18 8/23 10/22 18/5
**motions** **[1]** 20/1
**move** **[5]** 45/24 87/6 100/19 101/11 104/7
**moves** **[1]** 54/8
**Mr** **[3]** 21/13 24/14 86/4
**Mr.** **[84]** 4/10 5/2 5/15 5/23 6/1 6/15 6/21 8/5 11/2 11/11 13/19 13/20 13/23 15/9 15/11 18/12 18/13 19/6 19/8 20/13 20/13 20/18 20/22 21/1 21/5 22/15 23/8 23/18 23/21 24/2 24/23 26/7 31/3 33/16 37/11 38/3 38/5 38/22 40/11 41/21 41/23 41/24 50/1 56/2 56/8 61/13 61/24 62/8 63/1 63/3 64/4 64/9 64/10 68/12 69/11 72/12 72/13 78/22 81/6 84/2 84/2 84/6 84/8 84/11 85/3 85/15 88/20 88/21 88/22 88/24 89/11 101/14 108/20 109/1 109/3 109/9 109/14 113/22 117/7 119/4 119/17 120/5 120/6
**Mr. Andre** **[1]** 89/1
**Mr. Armenta** **[2]** 1/2 119/14
**Mr. Avenatti** **[9]** 5/2 6/1 11/11 15/9 20/13 26/7 84/8 119/4 120/6
**Mr. Avenatti's** **[1]** 5/23
**Mr. Barela** **[12]** 18/12 56/8 61/13 61/14 63/3 64/4 64/10 72/13 78/22 84/2 109/3 109/9
**Mr. Barela's** **[1]** 64/9
**Mr. Dean** **[2]** 4/10 23/8
**Mr. Drum** **[13]** 15/11 23/18 23/21 68/12 69/11 84/6 84/11 85/3 85/15 101/14 113/22 119/17 120/5
**Mr. Johnson** **[19]** 18/13 19/6 19/8 31/3 33/16 37/11 38/3 38/5 38/22 40/11 41/23 41/25 50/1 56/2 62/8 63/1 72/12 84/2 108/20
**Mr. Johnson's** **[3]** 24/2 24/23 41/21
**Mr. Sagel** **[9]** 5/15 6/21 8/5 21/1 21/5 88/20 88/21 88/22 88/24
**Mr. Sagel's** **[1]** 22/15

## M (continued)

**Mr. Steward** **[5]** 6/15 20/13 20/18 20/22 20/22
**Mr. Tran** **[2]** 81/6 109/1
**Mr. Varani** **[3]** 13/19 13/20 13/23
**Mr. Wyman** **[1]** 117/7
**Ms** **[12]** 20/5 23/9 32/9 48/18 72/13 84/2 105/1 107/7 108/7 108/18 110/4 110/7
**Ms.** **[29]** 4/11 13/1 13/11 14/22 23/9 40/11 43/25 48/11 48/14 48/19 49/23 49/25 50/2 50/16 52/14 53/13 53/14 62/8 63/1 72/14 81/9 81/22 83/18 108/22 108/24 109/16 112/12 117/18
**Ms. Bredahl** **[1]** 14/22
**Ms. Carter** **[3]** 113/22 117/12 117/18
**Ms. Cummings-Cefali** **[3]** 4/11 23/9 109/16
**Ms. Gardner** **[14]** 13/11 43/25 48/14 48/19 49/23 49/25 50/2 50/16 52/14 53/13 53/14 62/8 63/1 108/22
**Ms. Gardner's** **[2]** 13/1 48/11
**Ms. Phan** **[4]** 81/9 81/22 83/18 108/24
**Ms. Phan's** **[2]** 40/11 72/14
**much** **[21]** 35/5 41/21 43/21 43/24 48/11 53/13 56/5 56/7 61/3 64/9 74/12 75/1 75/10 76/18 79/12 81/14 81/18 93/18 97/21 97/23 113/18
**multiple** **[6]** 17/22 20/6 21/9 92/5 120/12 120/13
**my** **[30]** 8/21 9/5 9/7 11/25 12/6 12/17 12/22 13/10 20/10 85/8 88/15 88/15 90/6 91/2 91/4 91/5 93/19 99/13 99/20 100/13 101/2 101/14 104/10 106/15 111/8 112/1 112/16 115/8 117/19 119/8

## N

**name** **[7]** 32/2 42/20 46/12 46/24 80/1 94/13 94/16
**named** **[1]** 32/10
**namely** **[1]** 85/16
**names** **[2]** 83/3 94/19
**nature** **[3]** 6/11 20/20 93/1
**nearest** **[2]** 31/11 32/17
**necessary** **[2]** 4/25 6/10
**need** **[8]** 13/3 14/8 14/11 14/24 15/14 15/14 17/14 101/15
**negative** **[2]** 38/18 68/11
**never** **[12]** 12/1 19/22 19/25 22/6 84/13 90/7 90/16 107/13 107/17 107/18 107/19 109/11
**Nevertheless** **[1]** 8/23
**new** **[1]** 69/12
**next** **[22]** 4/20 18/5 27/10 27/20 31/15 38/20 40/6 43/13 43/19 44/5 44/6 55/13 55/18 58/12 64/1 65/9 73/24 75/20 76/15 99/13 100/7 100/8
**Nguyen** **[1]** 112/16
**NICOLA** **[1]** 2/3
**night** **[3]** 5/25 21/5 119/13
**Ninth** **[1]** 6/19
**nitty** **[1]** 114/21
**nitty-gritty** **[1]** 114/21
**no** **[82]** 5/19 6/5 6/9 6/17 6/18 8/3 9/11 13/5 17/14 18/16 18/16 19/2 22/5 27/17 29/19 30/25 33/17 35/9 36/7 37/12 37/15 37/18 47/17 48/15 49/21 61/11 62/11 62/21 75/21 77/10 81/24 84/4 84/4 84/6 87/20 88/6 89/5 90/6 90/15 90/21 93/19 94/15 94/16 94/23 95/4 95/6 98/23 99/11 101/19 103/5 103/23 104/1 104/3 104/20 104/23 105/4 105/22 106/15 106/22 106/23 107/12 107/15 108/14 108/21 108/23 109/4 109/10 109/13 109/15 110/6 110/11 110/12 110/15 111/12 112/18 114/9 114/11 116/23 118/25 119/12 120/7 120/9
**No.** **[1]** 11/18
**No. 4** **[1]** 11/18
**non** **[1]** 18/3
**non-taint** **[1]** 18/3
**none** **[10]** 3/12 25/21 37/8 41/24 44/13 49/24 53/15 56/23 58/23 62/23
**nonresponsive** **[2]** 100/20 101/11

## N

**Nope [2]** 108/25 109/2

**North [1]** 2/7

**not [100]** 4/19 4/23 5/1 5/9 5/11 6/10 6/18
7/14 7/18 8/2 8/7 8/12 8/12 8/15 9/2 9/10 9/10
9/12 12/4 12/6 12/9 12/11 12/13 12/16 12/17
12/17 12/20 14/17 14/21 14/25 15/5 16/9 17/2
17/3 17/21 18/8 18/8 18/24 19/9 19/17 20/12
20/12 20/15 21/11 22/9 22/16 22/17 22/17
22/18 22/19 30/25 33/13 33/17 34/23 48/15
61/11 69/3 69/4 69/5 75/18 75/21 82/4 88/3
89/5 89/19 90/8 90/15 92/18 92/20 93/7 95/8
96/5 96/12 96/23 98/12 100/1 100/18 100/19
100/24 101/3 101/7 103/19 103/21 104/20
105/8 105/14 106/1 108/3 108/19 109/17
110/16 111/15 112/5 112/24 118/23 118/23
119/2 119/9 120/9 120/13

**note [2]** 5/3 11/25

**notes [5]** 11/8 109/19 109/25 110/2 110/3

**November [4]** 42/8 43/10 44/7 44/8

**November 2020 [4]** 42/8 43/10 44/7 44/8

**now [48]** 5/6 18/23 20/10 22/5 24/2 24/20
25/24 26/2 27/2 28/19 30/1 32/13 32/21 33/13
34/23 35/11 38/24 39/18 42/1 42/25 43/4
44/17 47/10 47/20 50/21 53/16 55/10 57/8
58/25 64/12 66/21 67/14 68/12 68/23 71/4
73/11 78/7 81/2 90/16 100/24 103/6 105/14
108/17 112/8 114/6 115/18 118/18 119/16

**nullity [2]** 10/11 10/16

**number [25]** 5/17 11/17 15/11 15/13 15/14
15/16 19/16 22/6 24/5 25/9 42/23 46/15 47/2
55/15 55/21 55/22 60/13 77/24 78/8 96/20
98/1 117/7 120/10 120/11 120/11

**numbers [5]** 11/8 17/11 46/4 47/1 59/13

## O

**oath [1]** 20/5

**objection [44]** 28/24 29/17 34/5 34/19 35/25
44/1 46/2 46/7 54/10 59/21 60/5 60/14 60/20
61/5 71/16 71/23 72/6 74/6 75/24 76/11 76/19
76/25 77/9 80/8 85/11 86/7 86/12 86/17
86/22 88/13 89/14 99/1 106/6 109/5 110/18
110/23 113/7 115/2 115/24 116/4 117/4 118/3
118/8

**objections [13]** 6/5 34/14 72/16 77/8 77/18
78/2 78/10 78/16 79/2 79/7 79/14 80/16 85/21

**obligation [6]** 12/12 12/13 12/18 19/24 20/3
20/9

**obligations [1]** 120/5

**obtained [1]** 19/20

**obvious [1]** 16/2

**Obviously [3]** 14/1 14/4 100/5

**occasions [4]** 20/7 21/9 108/6 119/24

**occurred [1]** 77/7

**occurrence [1]** 95/15

**occurs [1]** 74/5

**October [2]** 68/1 68/9

**October 3rd [2]** 68/1 68/9

**off [6]** 7/9 16/25 17/3 17/4 100/1 100/2

**offer [2]** 85/9 85/19

**office [1]** 92/17

**offices [2]** 2/15 17/17

**often [1]** 97/1

**okay [29]** 5/20 9/8 11/20 11/23 12/6 13/6
13/14 14/16 15/7 22/22 27/2 27/10 29/20
29/25 30/14 31/19 32/20 40/22 42/1 42/5 43/4
68/19 82/6 87/14 101/16 101/17 112/11
117/15 118/19

**once [3]** 24/20 97/3 120/21

**one [43]** 4/14 5/17 8/14 11/7 15/11 16/16 17/2
17/5 26/18 27/3 35/3 39/14 40/10 45/7
45/7 48/8 48/8 49/7 51/4 54/5 63/2 75/14
75/14 75/15 78/4 81/6 81/12 81/14 81/25 83/8
85/15 86/10 100/24 102/11 103/13 103/23
104/1 114/17 117/10 120/10 120/13 120/13

**ones [3]** 35/4 67/17 83/12

**ongoing [1]** 12/13

**only [9]** 11/16 13/2 18/8 20/20 37/12 62/11
70/17 83/11 103/24

**operating [1]** 66/15

**opinion [1]** 109/18

**opinions [3]** 69/4 118/24 119/23

**opportunities [1]** 17/22 19/15

**opportunity [3]** 7/19 14/18 21/25

**opposition [4]** 5/25 8/25 9/4 12/25

**options [1]** 18/19

**oral [1]** 14/7

**orange [4]** 26/6 26/9 26/14 49/13

**order [8]** 8/13 85/3 86/5 86/16 90/4 106/2
107/8 107/20

**organization [1]** 89/10

**originator [1]** 89/2

**other [46]** 5/19 6/5 6/5 13/25 14/3 15/6 16/7
17/25 18/19 18/20 20/24 26/6 49/14 58/19
62/3 71/10 74/8 77/6 81/14 83/18 83/20 83/24
84/1 90/17 94/24 95/1 102/22 102/24 103/3
104/21 105/4 105/15 108/1 108/3 111/22
111/24 112/3 112/8 112/25 113/5 114/14
114/24 114/25 115/6 117/17 119/10

**others [1]** 112/23

**otherwise [1]** 21/16

**our [11]** 6/12 14/4 17/8 18/9 18/14 18/17
20/23 69/1 97/6 120/4 120/5

**out [29]** 4/15 4/20 4/21 5/6 6/12 6/24 13/9
13/12 14/21 19/4 19/5 19/10 33/15 49/18
62/13 66/14 67/21 74/2 76/2 82/20 91/4 99/18
105/7 105/10 105/10 105/12 107/20 115/10
115/16

**outline [1]** 93/1

**outstanding [1]** 13/2

**over [19]** 11/13 22/1 34/2 34/21 40/6 87/24
90/11 93/19 94/2 95/18 96/8 96/22 97/11
103/2 105/6 107/16 108/6 113/21 117/7

**overnight [1]** 4/13

**overruled [47]** 24/18 28/25 29/21 34/6 34/15
34/20 36/1 44/2 46/7 54/12 59/22 60/6 60/15
60/21 61/6 71/17 71/24 72/7 72/17 74/7 75/25
76/12 76/20 77/1 77/10 77/19 78/3 78/11
78/17 79/3 79/8 79/15 80/9 80/17 86/23 88/14
89/15 99/2 104/14 106/7 107/3 110/24 113/8
115/25 116/5 116/22 118/9

**owed [1]** 43/25 81/23 107/20 110/16 110/16

**owes [1]** 19/9

## P

**page [53]** 29/10 30/2 32/14 34/12 34/25 34/25
35/7 35/21 40/20 40/22 42/14 44/5 41/5 41/11
41/12 41/12 42/17 42/25 46/1 46/10 46/22
47/4 52/16 52/22 52/23 53/2 53/2 53/3 54/15
57/24 60/24 63/10 63/12 63/19 63/20 63/22
66/11 74/20 74/21 75/4 75/6 75/7 77/22 78/7
78/14 78/24 79/23 79/25 80/6 80/15 80/15
80/18 122/10

**page 1 [13]** 30/2 32/14 40/22 41/5 42/17
46/10 46/22 52/22 53/2 63/20 66/11 74/21
80/6

**page 3 [5]** 29/10 34/25 35/21 60/24 78/24

**page 7 [1]** 34/12

**pages [3]** 34/10 54/9 102/17

**pages 3 [1]** 54/9

**paid [30]** 24/11 25/12 25/22 30/7 37/9 42/11
43/5 44/14 49/25 53/7 53/24 55/12 56/11
56/24 58/24 59/23 60/9 62/23 62/24 64/20
64/23 74/1 75/5 75/8 77/3 78/18 80/5 83/17
105/6 107/16

**papers [1]** 6/13

**parallel [1]** 16/18

**parentheses [1]** 30/7

**parentheticals [1]** 59/13

**part [5]** 38/21 85/16 108/9 115/8 115/9

**particular [1]** 88/23

**parts [4]** 84/20 85/4 85/7 85/15

**pass [4]** 84/19 85/3 85/4 86/5

**passage [1]** 10/1

**passed [2]** 84/22 86/10

**Passport [3]** 78/7 78/9 78/25

**Patrick [1]** 32/11

**Pause [1]** 103/14

**pay [4]** 38/20 39/13 40/8 80/4

**paying [1]** 76/20

**payment [82]** 26/20 27/9 27/19 28/22 33/22
35/15 37/23 37/25 38/19 38/13 38/14 38/15
38/17 39/3 39/6 39/7 39/21 39/24 40/5 40/19
41/15 41/17 41/22 44/20 45/1 47/24 49/7 49/9
49/22 50/7 50/11 50/12 50/13 50/24 51/2 51/5
51/9 51/12 51/15 51/17 51/20 52/3 52/6 52/8
52/19 53/8 55/1 57/13 57/19 59/3 59/17 60/2
60/18 61/21 61/22 63/8 63/16 64/1 64/5
64/7 66/24 67/7 68/5 69/20 71/10 71/25 72/20
73/16 73/20 73/22 74/17 76/7 77/12 77/13
77/16 78/18 79/9 79/12 79/21 80/3 80/23

**payments [55]** 24/10 35/1 35/5 35/8 36/5
36/10 36/21 36/25 37/2 37/11 37/13 37/18
38/3 38/4 40/10 48/17 48/19 48/24 49/6 49/17
50/2 50/16 52/25 59/16 60/13 61/9 61/14
61/18 61/25 62/4 62/6 62/10 62/17 63/2 65/1
67/8 67/24 68/6 70/1 71/9 72/10 72/12 72/13
78/9 78/25 81/2 82/4 82/11 82/13 82/14 82/15
82/25 83/13 83/15 99/5

**pdf [1]** 102/17

**pending [5]** 14/2 87/22 88/10 90/12 90/23

**Penland [1]** 15/4

**penny [2]** 83/20 84/3

**people [5]** 111/16 112/8 114/25 115/6 117/20

**Per [2]** 93/13 113/14

**percent [4]** 43/8 43/11 57/6 65/12

**percentage [1]** 57/2

**perform [1]** 98/12

**performed [2]** 81/17 99/24

**Perhaps [1]** 114/22

**periodic [1]** 36/10

**person [7]** 5/1 88/3 94/17 96/13 112/25 116/3
116/10

**personal [2]** 28/10 28/13

**Personalized [8]** 37/22 62/15 68/7 70/2 73/22
83/13 83/16 84/1

**Phan [28]** 37/23 38/1 40/25 41/8 49/9 52/25
62/18 64/14 64/14 64/17 64/17 66/23 66/23
67/22 67/22 69/19 70/9 70/13 71/2 81/9 81/22
83/6 83/6 83/16 83/18 83/24 83/24 108/24

**Phan's [13]** 40/11 40/19 41/19 52/19 53/11
61/24 63/8 63/15 64/7 72/14 79/21 80/3 80/12

**phone [8]** 88/7 93/24 96/3 96/14 96/21 116/3
116/8 116/8

**physically [1]** 17/17

**place [1]** 17/5

**places [1]** 16/8

**Plaintiff [2]** 1/10 2/2

**PLAINTIFF'S [2]** 3/4 3/7

**played [4]** 117/25 118/7 118/15 118/15

**pleadings [1]** 20/19

**please [69]** 15/20 23/20 24/20 25/24 28/19
30/1 31/19 31/20 32/13 32/20 35/10 36/13
36/15 38/7 38/24 40/17 41/4 41/11 42/2 42/16
42/19 42/25 43/4 44/16 44/17 45/3 45/11
45/15 46/9 46/21 47/9 47/19 48/20 49/18 50/9
51/10 51/24 52/21 54/14 55/10 57/9 57/10
58/17 60/24 62/13 63/13 66/10 66/21
67/9 68/12 69/2 69/5 72/23 72/25 73/11 79/17
79/18 80/1 80/6 82/1 82/20 91/8 101/14
104/10 106/9 112/1 118/22 118/25

**plus [4]** 43/10 44/6 57/4 112/19

**pocket [1]** 105/10

**point [13]** 7/21 8/9 10/6 10/23 15/15 17/14
17/20 18/1 18/16 19/3 19/4 22/4 36/24

**pointed [1]** 6/12

**pointing [1]** 6/24

**portion [21]** 29/12 37/4 39/16 40/19 49/4 49/6
52/19 63/8 70/6 70/7 70/12 76/7 77/22 79/21
80/2 86/5 86/21 87/5 87/12 87/15 87/17

**portions [3]** 33/21 35/14 86/10

**pose [1]** 95/24

**position [2]** 10/20 21/22

**possession [1]** 16/3

**possibility [1]** 14/18

**possible [2]** 14/4 68/20

**potential [1]** 9/1

# P

**potentially** [1] 14/21
**PPG** [4] 64/2 64/3 64/6 78/19
**practice** [4] 89/13 89/20 90/4 98/5
**Pratigya** [6] 64/14 64/17 66/23 67/22 83/6 83/24
**precluded** [2] 6/14 6/21
**predate** [1] 71/1
**prefixes** [1] 11/8
**prejudicial** [1] 119/9
**prepare** [2] 40/14 114/20
**prepared** [16] 81/25 101/4 101/5 101/7 101/19 101/22 102/3 102/5 102/12 102/22 102/6 102/9 117/8 117/9 117/17 117/19
**prepares** [1] 114/25
**preparing** [4] 113/23 114/1 117/12 117/14
**prerogative** [2] 12/10 12/14
**present** [6] 4/2 4/10 22/25 23/8 69/9 119/2
**presented** [2] 6/17 7/1
**PRESIDING** [1] 1/8
**press** [5] 111/3 111/9 111/13 111/7 111/19
**pretty** [1] 119/14
**previous** [3] 32/18 51/4 59/12
**previously** [2] 23/15 120/3
**primarily** [1] 86/25
**printouts** [1] 103/20
**prior** [13] 6/5 8/1 10/9 14/20 41/12 63/24 74/11 74/14 76/15 80/19 90/16 94/9 117/22
**privilege** [2] 19/22 119/21
**PRO** [1] 2/14
**probably** [3] 4/21 23/10 118/10
**proceed** [2] 4/23 5/21
**proceeded** [1] 6/7
**proceeding** [1] 5/14
**proceedings** [5] 1/15 22/24 69/8 103/14 122/9
**produce** [5] 19/24 20/3 20/7 20/9 21/12
**produced** [11] 11/2 15/25 18/2 18/7 18/15 19/13 19/25 21/7 120/2 120/23 120/25
**product** [1] 119/20
**production** [1] 18/14
**Professional** [1] 46/25
**proffer** [5] 13/17 13/20 14/3 14/7 14/13
**program** [5] 103/21 104/2 104/3 104/11 116/9
**proper** [2] 8/7 8/16
**properly** [1] 107/20
**proposition** [1] 7/3
**prosecution** [5] 16/3 22/10 22/14 94/11 119/18
**prosecutor** [1] 95/7
**prosecutors** [4] 94/25 95/25 96/21
**prove** [1] 12/17
**provide** [7] 14/7 15/15 92/4 95/11 95/13 100/10 119/6
**provided** [23] 6/15 7/19 16/15 18/3 22/6 91/22 99/23 101/1 101/9 102/12 102/13 102/14 102/15 102/16 102/18 102/21 102/24 103/20 105/21 106/13 112/6 119/8
**providing** [3] 87/21 100/9 119/24
**public** [1] 84/16
**pull** [10] 23/20 29/11 31/19 34/25 42/16 46/9 54/14 55/4 66/10 72/23
**purport** [2] 37/10 62/9
**purposely** [3] 6/7 8/8 10/7
**pursuant** [1] 122/6
**put** [7] 9/21 11/21 13/7 14/17 69/17 69/24 95/9
**putting** [1] 14/1

# Q

**quash** [1] 8/6
**quashed** [4] 6/6 7/7 9/12 9/13
**query** [1] 9/2
**question** [27] 7/9 7/14 7/15 8/4 9/11 11/25 13/10 15/24 87/7 96/2 99/13 99/20 101/14 101/16 104/10 106/8 106/15 106/16 108/9 109/6 109/22 109/23 110/25 111/8 112/2 118/4 119/12
**questions** [4] 84/7 95/24 96/2 107/8

**QuickBooks** [11] 16/19 16/22 16/24 17/3 17/4 17/7 17/9 17/12 17/14 17/23 18/6
**quite** [1] 92/20
**quotes** [2] 111/14 111/15

# R

**raised** [2] 6/5 9/10
**raises** [2] 9/1 12/19
**range** [1] 70/17
**rare** [2] 121/1 121/1
**rate** [1] 93/19
**rates** [1] 113/5
**rather** [1] 5/12
**re** [1] 17/18
**re-set** [1] 17/18
**reach** [1] 4/20
**reached** [1] 91/4
**reaches** [1] 5/6
**read** [13] 10/1 58/17 87/7 87/9 106/9 106/11 106/17 106/19 108/10 108/13 110/25 111/2 111/8
**ready** [2] 115/7 115/13
**Reagan** [1] 2/10
**really** [1] 114/18
**Reask** [1] 109/6
**reason** [6] 8/18 9/11 9/12 9/22 9/24 20/7
**reasonable** [1] 98/16
**recall** [20] 17/11 23/21 87/14 87/17 88/25 89/2 94/13 94/16 94/17 94/19 100/8 100/10 100/11 103/1 103/2 103/5 103/8 110/2 111/15 113/9
**recalling** [1] 112/24
**receive** [4] 64/10 81/22 83/20 84/2
**received** [54] 3/7 3/13 4/13 12/1 12/2 18/4 29/3 29/6 32/10 36/25 37/13 38/19 39/11 40/4 40/6 41/7 41/15 42/14 44/12 46/6 46/8 49/17 49/22 50/10 50/11 50/16 50/18 51/8 51/15 51/19 51/20 54/2 54/12 54/13 56/22 62/5 62/12 63/24 66/1 66/8 71/2 71/13 80/21 81/3 81/7 81/9 82/25 83/13 83/19 83/25 99/25 100/13 100/24 101/18
**receiving** [16] 28/21 33/21 35/14 41/14 47/23 53/5 59/2 59/7 63/25 68/4 72/9 73/15 73/19 76/6 80/20 100/11
**Recently** [1] 113/21
**recess** [8] 22/22 22/23 69/2 69/6 69/7 118/21 121/2 121/3
**recollection** [2] 85/8 100/13 101/2
**reconsideration** [2] 6/24 7/25
**record** [15] 5/4 10/2 13/9 13/12 20/15 21/1 87/9 106/11 106/19 108/13 111/2
**records** [25] 18/14 18/22 24/9 24/13 24/15 24/22 28/5 36/8 41/20 42/13 45/24 48/17 53/12 54/1 54/3 61/12 64/8 65/2 66/7 81/21 100/14 102/3 102/14 102/17 120/19
**RECROSS** [2] 3/4 3/11
**red** [9] 30/7 30/8 30/9 30/16 44/11 56/21 58/21 59/12 65/24
**redacted** [3] 68/14 68/17 68/21
**REDIRECT** [2] 3/4 3/11
**reduce** [1] 25/16
**referred** [3] 50/8 105/1 111/17
**referring** [5] 65/15 73/5 82/14 83/23 88/18
**reflect** [21] 25/20 26/24 37/10 39/23 40/14 42/10 49/12 51/1 51/14 53/23 55/19 57/18 59/13 62/9 65/9 72/5 72/8 79/6 80/15 82/11 82/23
**reflected** [22] 24/10 34/4 36/5 43/1 43/14 47/12 52/21 54/23 59/9 61/9 64/22 67/1 65/1 65/6 67/17 69/25 71/6 73/18 75/4 75/7 76/15 78/15
**reflects** [25] 25/21 34/7 37/12 39/24 42/11 43/2 50/9 50/10 51/2 51/15 52/23 54/22 54/25 55/22 56/23 57/19 62/11 62/23 63/13 63/14 65/23 71/25 73/19 80/7 82/24
**regard** [4] 11/1 12/25 17/6 20/16
**regards** [2] 15/2 16/22
**Regnier** [20] 16/12 16/23 20/5 23/23 31/22 32/9 55/24 55/25 103/11 103/20 103/25 104/6

**Regnier's** [1] 17/4
**regular** [5] 5/6 5/10 94/3 95/15 111/12
**regulation** [2] 85/16 87/3
**regulations** [3] 87/15 89/12 122/11
**regulatory** [3] 86/21 86/24 87/2
**relate** [5] 42/3 42/4 53/17 64/13 82/17
**related** [21] 18/12 18/12 18/13 24/1 24/12 24/23 25/5 25/14 28/10 43/13 43/18 55/23 56/1 56/12 65/18 86/25 87/18 103/12 104/5 107/22
**relates** [4] 99/12 102/22 105/24 111/3
**relating** [18] 4/13 5/15 11/13 12/21 13/4 13/18 19/19 19/23 89/12 91/21 98/14 98/18 102/24 109/19 110/16 114/15 114/18 119/20
**relevance** [4] 86/17 86/22 88/13 118/3
**relevant** [1] 10/1
**reliable** [1] 96/23
**reliance** [1] 8/13
**relied** [2] 24/12
**rely** [1] 24/9
**remain** [1] 8/11
**remaining** [1] 77/11
**remedy** [2] 10/3 10/8
**remember** [5] 24/3 69/3 92/2 102/12 118/22
**remitter** [1] 73/7
**Remoun** [2] 4/7 23/5
**render** [1] 10/16
**renders** [2] 10/11 10/11
**repeatedly** [4] 21/2 21/19 21/20 107/7
**rephrase** [1] 101/15
**Report** [1] 54/20
**reported** [1] 122/8
**reporter** [2] 91/8 122/16
**REPORTER'S** [1] 1/15
**reports** [3] 17/23 30/23 109/18
**represent** [6] 26/4 26/7 37/22 44/11 49/15 62/4
**representations** [2] 19/17 110/21
**represented** [3] 6/21 20/11 21/1
**representing** [3] 5/10
**represents** [12] 22/8 26/20 27/6 30/9 36/25 37/8 37/23 44/13 49/7 49/9 61/24 65/12
**repurchase** [30] 37/23 38/1 40/11 40/9 49/9 52/19 52/25 53/11 61/25 62/18 63/8 63/15 64/7 64/20 64/23 65/6 65/12 65/14 66/1 66/24 67/7 68/5 69/20 70/1 73/16 73/20 76/7 79/21 80/3 80/12
**request** [2] 14/4 99/12
**requesting** [2] 20/2 100/9
**requests** [2] 95/21 96/1
**required** [3] 12/16 119/22 120/1
**requirements** [1] 87/4
**research** [2] 69/5 118/25
**reserve** [2] 22/4 119/9
**Residence** [1] 116/18
**respect** [1] 12/12
**respectfully** [1] 11/12
**respond** [2] 5/8 15/18
**responding** [1] 5/5
**response** [4] 4/24 5/22 18/9 107/8
**resume** [1] 118/21
**resumed** [3] 13/21 22/24 69/8
**retained** [1] 90/25
**retention** [1] 102/16
**reversible** [1] 6/23
**review** [20] 24/15 30/23 36/8 42/13 43/23 48/16 54/1 61/12 64/8 66/7 81/16 81/21 92/9 95/22 97/8 105/16 105/20 109/18 109/25 110/3
**reviewed** [11] 28/5 54/3 56/1 91/24 92/5 97/11 99/15 99/20 103/6 107/19 111/13
**reviewing** [2] 13/1 110/2
**Ricci** [2] 58/19 60/9
**right** [123]
**right-hand** [5] 33/3 36/22 46/14 49/15 54/23
**rights** [1] 119/10
**Roasters** [2] 59/24 60/18

**105/1 105/24 107/1 107/7 108/7 108/18 110/4**

**R**

**Robertson [5]** 8/24 9/19 9/20 10/2 10/23
**role [1]** 114/23
**Ronald [1]** 2/10
**rounded [2]** 31/11 32/17
**row [28]** 25/7 25/17 29/10 30/18 35/20 42/9 42/9 43/5 43/13 43/19 44/6 44/7 44/11 47/25 48/3 55/13 56/21 59/4 64/19 65/9 65/24 73/18 74/11 76/10 76/16 76/23 78/14 79/6
**rows [9]** 30/2 32/21 44/5 48/6 48/7 56/14 59/17 66/4 68/6
**RPR [1]** 1/19
**rule [5]** 5/24 8/24 9/17 19/24 120/7
**rules [2]** 4/15 89/11
**ruling [1]** 15/6
**Ryan [1]** 112/14

**S**

**SACR [3]** 1/11 4/3 23/1
**SACR-19-00061-JVS [1]** 1/11 4/3 23/1
**safe [1]** 4/16 96/24 98/7
**SAGEL [13]** 2/9 4/5 5/15 6/21 8/5 21/1 21/5 23/4 88/20 88/21 88/22 88/24 94/9
**Sagel's [1]** 22/15
**said [10]** 8/6 18/17 21/20 28/3 30/12 40/10 70/12 70/17 110/7 111/16
**sake [1]** 13/15
**same [63]** 19/10 28/1 29/17 31/1 31/7 31/10 31/23 32/17 34/14 34/19 36/17 38/18 39/11 39/12 39/14 41/9 41/14 44/21 45/13 45/21 49/1 50/19 51/7 51/21 51/22 52/5 53/6 57/15 60/5 60/14 60/20 61/5 67/1 69/21 71/23 72/16 73/4 75/8 76/19 76/25 77/2 77/8 77/18 78/2 78/10 78/16 79/2 79/7 79/14 80/6 80/18 80/21 82/7 85/21 86/7 86/12 86/17 110/23 115/24 116/4 117/4 118/8
**San [1]** 2/16
**Santa [1]** 1/16 1/20 2/1 4/1
**saw [3]** 32/17 65/1 65/3
**say [22]** 9/15 16/21 18/16 19/2 20/13 22/12 25/7 31/5 43/5 55/13 64/19 72/21 82/13 83/1 88/18 91/14 92/4 96/3 96/24 98/7 100/15 104/18
**saying [5]** 7/19 18/10 65/14
**says [9]** 26/18 32/5 43/13 44/12 54/25 56/4 56/18 58/10 65/21
**score [3]** 85/6 85/17 86/4
**screen [4]** 24/2 34/2 35/4 69/24
**scroll [2]** 32/6 77/15
**scrolling [2]** 60/12 77/6
**SDNY [1]** 13/18
**SE [1]** 2/14
**seal [1]** 9/6
**sealed [1]** 9/2
**search [2]** 16/23 19/19
**second [14]** 30/6 34/7 43/4 57/23 64/22 64/23 69/19 70/1 73/16 73/20 76/7 77/22 79/25 81/2
**section [4]** 2/6 86/24 87/2 122/6
**see [31]** 5/20 13/11 16/9 28/8 30/14 30/16 31/8 31/22 32/9 32/12 38/16 46/18 47/4 49/19 53/4 54/18 59/17 59/18 62/20 67/11 73/2 74/17 74/20 78/4 79/4 80/19 103/18 104/18 119/1
**seeing [1]** 16/10
**seek [1]** 6/11
**seen [2]** 111/3 112/3
**SEFFENS [3]** 1/19 122/15 122/16
**SELNA [1]** 1/8
**send [3]** 55/7 96/15 97/7
**senior [3]** 93/20 93/21 112/25
**sense [3]** 9/18 10/19 19/5
**sent [31]** 36/9 37/11 45/10 45/12 45/13 47/18 48/8 48/9 55/24 55/25 58/15 61/14 70/9 70/10 70/11 70/13 71/8 72/20 92/9 92/12 92/13 94/22 95/3 97/4 97/8 97/15 98/1 98/5 98/8 105/1 120/21
**separate [3]** 14/16 16/22 17/9
**September [2]** 64/20 68/1
**September 18th [2]** 64/20 68/1

**series [2]** 29/4 33/11
**serious [1]** 11/4
**seriousness [1]** 11/14
**serve [1]** 117/2
**served [2]** 5/8 9/6
**server [2]** 17/4 21/2
**servers [19]** 17/13 17/17 17/19 17/20 17/21 17/23 17/23 17/24 18/6 19/20 19/21 19/22 20/10 20/13 20/14 20/19 20/24 21/7 21/12
**services [3]** 87/22 91/21 98/13
**set [4]** 17/18 49/8 61/22 81/2
**sets [1]** 89/11
**settlement [55]** 24/13 25/12 26/1 26/25 27/9 27/19 28/22 31/13 35/15 37/20 41/21 41/22 41/24 42/14 43/5 43/9 44/6 44/12 44/20 45/1 47/24 48/4 48/11 49/9 49/25 53/13 53/24 54/2 55/1 55/12 56/11 56/15 56/16 56/23 57/3 57/13 57/19 59/3 61/21 62/19 64/9 64/10 81/17 82/11 82/13 82/15 83/16 83/19 83/20 83/25 84/3 102/15
**settlements [1]** 82/5
**seven [2]** 34/10 35/7
**seven-page [1]** 35/7
**several [4]** 4/13 30/16 114/13 119/24
**SHARON [3]** 1/19 122/15 122/16
**she [14]** 4/14 4/15 4/21 4/23 5/1 5/7 15/3 20/6 49/17 50/11 81/18 81/23 114/1 114/5 115/12 116/23 117/14 118/2
**short [1]** 38/7
**should [7]** 4/16 8/18 12/16 54/18 68/12 119/7 120/23
**show [33]** 19/3 26/19 27/4 27/11 27/16 27/24 28/16 28/23 33/10 36/20 39/5 40/23 43/19 44/5 44/25 45/8 45/16 47/16 48/6 48/7 49/4 56/21 58/6 58/13 58/22 59/5 61/20 61/21 62/2 62/3 67/4 67/5 70/6
**showed [6]** 16/24 54/3 61/23 96/10
**showing [7]** 18/14 36/23 42/13 52/5 54/1 66/7 70/21
**shown [4]** 63/22 65/24 73/25 74/15
**shows [28]** 27/5 27/12 27/17 27/25 29/1 33/11 36/21 39/6 40/24 41/5 41/12 45/1 45/9 47/17 49/6 49/16 56/22 58/7 58/14 58/23 59/6 61/22 63/23 67/19 67/21 70/1 70/7 71/8
**sic [1]** 82/16
**side [17]** 17/3 26/17 33/3 36/22 37/5 48/25 49/15 53/4 55/4 57/10 57/24 61/19 63/14 63/23 69/24 82/6 83/11
**sidebar [1]** 99/10
**signatory [2]** 26/15 92/16
**signature [1]** 9/7
**signed [1]** 9/2
**signifies [1]** 37/18
**signify [1]** 37/17
**similar [4]** 42/11 56/1 62/8 83/8
**similarly [1]** 89/10
**since [2]** 10/14 112/21
**single [1]** 12/12
**sir [30]** 5/16 5/19 6/2 7/22 8/9 10/20 11/16 11/19 12/2 21/22 22/20 77/10 85/24 86/10 86/15 86/20 87/2 87/12 88/23 89/4 89/19 90/2 99/15 104/10 105/14 106/2 106/15 111/25 115/5 119/3
**sit [4]** 10/16 87/14 110/6 110/10
**sits [1]** 33/6
**sitting [1]** 22/18
**situation [1]** 5/21
**six [2]** 36/24 36/25
**Sixty [1]** 75/12
**Sixty-two [1]** 75/12
**sizable [1]** 76/24
**slightly [1]** 15/3
**so [89]** 5/12 5/14 9/2 12/8 12/13 13/5 13/25 14/19 16/11 16/14 16/18 16/25 17/7 17/7 17/9 19/9 20/4 20/25 22/3 25/3 25/15 27/20 30/14 33/6 37/10 38/13 38/16 38/21 39/8 39/14 40/4 40/22 40/24 41/5 41/17 43/11 43/23 45/7 49/6 49/13 49/18 50/10 50/14 50/15 51/2 51/6 51/18 53/3 53/8 56/7 57/6 58/5 63/23 71/11

**75/13 75/25 80/2 81/13 82/17 87/24 88/4 90/16 93/1 93/23 95/18 95/22 95/5 95/10 95/10 96/16 97/14 98/7 99/19 100/1 100/24 101/7 102/10 102/11 102/19 110/5 110/6 110/15 111/17 112/7 112/19 117/15 118/2 118/13 120/23**
**social [1]** 111/11
**software [2]** 104/11 104/18
**some [11]** 14/19 17/11 24/6 26/3 26/9 30/7 35/1 37/2 37/3 37/3 114/5 114/7
**someone [1]** 32/10
**something [10]** 5/4 7/10 8/1 11/13 12/16 18/17 18/18 19/14 22/1 95/8
**sometime [1]** 87/23
**sometimes [1]** 101/15
**soon [1]** 14/4
**sorry [5]** 14/10 69/15 106/16 108/9 109/21
**sort [2]** 26/3 83/8
**source [16]** 37/3 38/3 38/4 38/15 38/16 39/7 39/25 50/2 50/13 51/5 51/17 52/5 52/10 53/9 64/6 99/5
**SOUTHERN [4]** 1/6 115/18 116/19 116/23
**span [1]** 35/17
**spans [1]** 34/10
**speak [5]** 102/8 108/18 108/20 109/11 109/17
**speaking [4]** 14/24 24/9 28/8 28/23 29/1 94/16
**Special [3]** 4/7 15/2 23/5
**specific [4]** 10/5 18/18 18/25 18/25
**specifically [2]** 21/5 107/10
**specificity [1]** 87/17
**speculation [1]** 107/2
**speechless [2]** 120/25 121/1
**spell [1]** 91/8
**spent [6]** 97/2 97/21 97/23 113/18
**spider [2]** 82/23 82/24
**spoke [3]** 88/21 88/22 115/22
**spreadsheet [10]** 23/22 24/11 24/12 24/21 31/12 55/24 55/25 56/1 106/10 100/17
**spreadsheets [6]** 103/11 103/24 104/6 105/4 108/2 108/4
**Spring [1]** 2/7
**stamp [3]** 15/14 15/16 22/5
**stand [12]** 10/17 12/7 13/25 26/11 26/12 84/15 98/21 105/15 105/23 107/14 117/22 118/14
**standard [1]** 22/16
**standing [2]** 29/18 77/9
**stands [1]** 28/3
**star [1]** 109/3
**start [9]** 16/2 42/5 49/3 56/14 71/11 74/14 80/18 82/6 100/1
**started [1]** 87/23 100/2
**starting [4]** 4/20 17/12 26/17 27/3 33/9 38/11 39/8 40/22 42/9 44/24 45/7 50/14 50/15 51/6 51/18 52/23 53/19 57/17 58/5 61/9 63/12 64/15 66/25 67/17 70/8 76/9 80/6 80/10 109/20 109/21
**starts [1]** 15/21
**state [9]** 88/10 89/3 89/9 89/12 89/20 89/21 90/4 90/5 90/13
**stated [2]** 111/25 112/4
**statement [2]** 22/15 120/22
**STATES [14]** 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/4 4/6 23/2 23/4 122/7 122/11
**stenographically [1]** 122/8
**step [4]** 100/4 100/7 100/8 119/3
**STEWARD [9]** 2/15 2/15 4/10 6/15 20/13 20/18 20/22 23/8 109/14
**still [4]** 13/10 19/9 20/7 91/16
**stock [2]** 40/19 52/19 63/8 63/15 79/21 80/3 80/12
**stood [1]** 8/5
**stop [1]** 29/9
**Street [3]** 1/20 2/7 2/11
**stricken [1]** 100/21 101/12 109/7
**strike [8]** 87/6 92/14 100/19 101/11 104/7 104/24 109/22 115/15
**subject [5]** 31/25 98/9 98/14 98/18 102/25

**S**

**submission [1]** 13/4
**submit [2]** 12/18 14/3
**submitted [2]** 69/5 118/24
**subpoena [5]** 5/8 7/7 18/24 18/25 117/3
**subpoenaed [2]** 5/5 18/21
**subpoenaing [1]** 6/15
**subpoenas [6]** 6/6 6/22 8/6 9/1 9/3 9/12
**subsequent [2]** 8/3 14/19
**substance [3]** 11/3 11/10 11/17
**substantially [1]** 120/3
**substantive [1]** 119/19
**such [1]** 120/9
**sufficient [1]** 19/14
**Suite [3]** 1/20 2/11 2/16
**Sulmeyer [4]** 73/8 77/4 80/22 80/23
**sum [1]** 65/7
**summarize [1]** 11/3
**Sunday [1]** 4/21
**Sunrise [1]** 35/1
**support [1]** 7/3
**suppose [1]** 100/4
**supposed [1]** 12/21
**sure [8]** 14/15 17/3 63/14 92/20 93/7 97/9 97/12 98/1
**suspect [1]** 107/4
**suspicion [1]** 12/10
**Sustained [10]** 86/2 86/8 86/13 86/18 89/24 109/6 110/19 115/3 115/20 117/5
**Switching [1]** 87/21
**SWORN [1]** 23/15
**symptoms [1]** 4/22
**system [2]** 26/3 104/4

**T**

**table [3]** 4/7 22/18 23/5
**Tabs [38]** 15/13 15/16 16/5 16/13 17/6 17/9 17/14 17/14 18/8 18/12 18/16 19/3 19/22 19/23 19/25 20/6 20/8 21/11 22/6 22/7 103/9 103/10 103/17 103/19 103/21 103/23 104/3 104/4 104/12 104/19 104/22 105/2 105/7 107/10 108/1 108/3 108/8
**taint [3]** 17/2 18/3 18/3
**take [5]** 36/13 50/4 63/5 69/1 118/21
**taken [6]** 16/25 22/23 69/7 76/2 88/24 121/3
**taking [5]** 21/16 98/21 105/14 105/23 117/22
**talk [2]** 20/10 102/6
**talked [2]** 37/14 75/13
**talking [5]** 12/3 15/22 22/13 88/22 111/25
**tangentially [1]** 91/14
**task [1]** 97/22
**tasks [1]** 97/24
**tax [1]** 86/25
**tax-related [1]** 86/25
**team [3]** 22/10 22/14 117/19
**team's [2]** 16/3 119/18
**teams [2]** 94/12 116/9
**technical [2]** 9/1 9/9
**tell [5]** 5/9 14/24 93/17 104/11 113/16
**telling [1]** 100/10
**tells [1]** 19/8
**ten [1]** 115/9
**term [1]** 103/10
**testified [15]** 16/12 20/5 78/21 83/18 90/17 90/20 105/16 105/17 107/7 109/20 110/12 110/15 111/4 111/18 120/20
**testify [10]** 4/16 4/16 5/1 105/24 106/3 114/25 115/6 115/7 115/13 119/23
**testifying [4]** 90/16 94/20 105/5 109/24
**testimony [20]** 10/10 11/3 12/13 24/5 87/16 98/10 98/15 98/19 102/25 105/9 105/17 105/20 111/14 113/23 114/20 116/20 119/12 119/20 119/25 120/24
**text [6]** 30/6 30/7 30/8 30/9 30/10 95/3
**than [20]** 5/19 6/5 16/7 17/14 24/6 83/18 83/24 85/24 95/1 103/3 105/4 107/4 108/1 108/3 111/22 111/24 112/3 112/25 114/14 117/17
**Thank [13]** 10/21 10/24 11/24 14/16 14/23

15/8 22/3 22/21 31/5 65/5 83/23 84/6 100/22
104/21
**that's [113]** 7/5 8/7 9/7 9/12 9/17 10/18 11/9
13/1 17/5 18/24 20/15 20/20 21/7 22/16 26/4
27/23 30/3 31/5 33/2 34/3 35/19 36/19 40/13
41/7 43/6 43/11 44/4 45/6 48/2 56/9
57/3 57/6 57/22 58/4 60/16 61/2 61/23 62/17
63/21 65/7 66/20 67/2 67/13 67/16 68/8 68/16
68/22 68/24 68/25 70/19 70/23 72/18 73/23
75/5 75/8 75/17 76/15 76/17 77/2 77/20 78/4
78/12 78/18 78/23 79/9 79/24 81/5 81/8 82/8
83/10 83/23 84/4 84/14 84/18 84/21 84/23
85/5 85/8 85/18 87/10 88/8 89/16 89/21 90/19
92/18 93/6 93/15 93/16 96/6 96/11 97/17 98/3
101/2 101/23 102/4 108/4 110/9 111/10 112/1
112/23 115/9 115/12 115/17 117/16 118/17
118/19 118/20 120/10 120/16 120/22 121/1
121/1
**their [10]** 11/3 12/18 14/1 16/13 56/17 82/5
83/20 83/25 84/3 94/13
**them [22]** 10/17 10/18 12/2 14/25 16/24 17/20
18/13 18/15 19/15 95/3 95/12 96/12 96/14
97/7 97/15 110/12 117/9 117/10 117/14
117/17 117/19 119/16
**themselves [1]** 9/2
**then [100]** 4/23 6/6 6/20 6/23 8/10 8/15 10/7
12/8 17/22 19/7 20/23 25/19 26/22 27/10
27/15 27/24 28/11 28/16 29/2 29/4 29/5 29/7
30/7 30/15 31/4 32/24 33/9 34/4 34/12 38/19
39/8 39/12 40/6 40/8 40/20 41/2 41/4 41/8
41/11 41/14 43/13 44/7 45/3 45/11 45/19
46/17 46/21 47/4 47/15 48/3 49/11 50/17
50/18 51/7 51/8 51/21 52/5 53/6 55/4 55/18
56/4 56/14 56/18 57/23 58/21 60/2 62/1 62/20
62/21 63/9 65/21 67/14 67/20 68/11 69/24
71/9 71/13 71/14 71/21 72/4 73/21 73/24
74/17 74/20 75/14 75/15 76/23 77/6 78/14
78/24 79/6 80/15 80/20 80/22 82/20 97/1 97/6
97/14 97/15 120/15
**there [113]** 6/9 6/18 8/3 13/9 13/10 13/12
14/18 15/5 16/8 16/22 18/14 18/16 18/17 19/1
19/7 19/11 19/14 19/16 19/22 22/5 23/25
23/25 25/3 25/9 26/2 26/22 26/24 27/21 29/4
29/7 29/9 29/12 29/13 30/6 30/15 31/7 32/4
32/25 33/15 33/17 34/1 35/1 35/8 36/5 36/23
37/15 37/15 37/21 43/1 43/14 43/21 45/4
46/18 47/12 47/25 48/7 49/21 54/23 56/5
56/14 58/2 60/2 60/12 61/9 61/11 62/15 62/21
65/6 65/22 65/25 66/12 66/25 67/15 67/18
68/12 70/17 70/18 70/20 71/14 71/21 73/17
73/21 73/25 74/17 74/21 75/19 75/21 76/24
77/16 77/24 78/5 78/8 78/15 78/24 83/4 84/4
87/5 91/21 92/11 92/21 94/15 94/18 95/17
96/8 96/24 98/11 103/16 104/1 104/11 112/23
119/12 120/11 120/12
**there's [7]** 9/11 18/16 19/9 48/25 69/21 98/8
111/7
**thereabouts [1]** 21/4
**these [26]** 18/15 32/23 38/2 41/20 42/4 49/11
50/14 53/17 59/16 61/19 61/21 62/1 62/5
64/13 64/25 64/25 67/12 70/5 71/14 78/8 82/9
83/20 96/7 96/7 122/10 122/12 114/18
**they [51]** 6/9 9/2 9/6 9/6 9/12 10/9 11/6 12/20
12/21 14/21 15/16 18/23 17/19 19/7
19/20 20/4 20/7 20/8 20/8 21/11 21/12 22/12
62/11 89/13 90/3 90/6 90/7 96/16 97/6 97/12
97/15 98/1 98/4 100/5 100/10 101/25 102/2
102/4 107/14 108/1 108/3 110/15 110/16
110/22 111/15 111/17 112/14 119/7 119/9
120/24
**they're [7]** 14/1 18/25 97/8 97/9 120/21
120/24 120/24
**thing [7]** 11/17 13/7 16/16 16/22 19/11 20/21
100/25
**things [7]** 16/9 18/20 19/1 20/20 100/24
102/12 114/18
**think [22]** 5/4 6/13 9/20 10/2 10/4 12/24 12/25
13/1 13/5 13/9 13/16 13/22 17/25 18/4 21/3
22/5 68/17 92/23 96/3 105/19 106/23 119/14

**thinks [1]** 18/18
**this [191]**
**those [52]** 6/6 7/10 9/6 13/10 13/16 19/21
22/19 26/10 26/12 26/15 29/4 32/25 35/5 37/2
37/4 42/2 47/12 48/18 56/16 58/11 62/3 65/1
65/3 67/8 67/11 67/24 67/24 68/6 70/3 70/17
71/4 72/5 72/8 72/13 81/12 81/19 82/11 82/15
83/9 84/4 94/21 95/13 96/3 97/4 97/21 98/12
105/4 112/21 117/8 117/13 117/20 120/23
**though [3]** 20/8 96/24 100/18
**thought [3]** 13/24 91/4 93/17
**Thoughts [1]** 4/17
**thousand [1]** 113/12
**thousands [1]** 102/16
**three [23]** 11/2 13/18 19/8 22/17 26/22 27/2
40/20 45/4 48/6 56/14 57/4 58/2 67/3 67/5
67/8 67/11 67/12 67/25 68/6 71/10 72/4 75/13
110/7
**three-page [1]** 40/20
**through [9]** 5/14 18/7 33/13 34/23 42/1 53/16
60/12 64/12 78/7
**throughout [2]** 91/14 92/7
**thus [1]** 105/21
**time [31]** 7/2 14/3 14/6 16/17 17/12 19/2 19/2
21/23 27/7 45/23 51/3 51/16 54/7 68/24 88/4
88/6 96/15 97/1 97/21 97/23 101/21 109/24
113/3 113/6 113/18 113/21 114/5 114/7
115/22 116/10 118/18
**timeline [1]** 6/4
**times [4]** 10/14 57/6 92/5 96/8
**title [35]** 25/25 28/20 33/20 35/13 38/8 39/2
39/20 40/18 42/5 44/19 47/22 48/23 50/6
50/23 51/10 52/2 52/18 53/19 54/17 54/19
57/12 58/25 61/16 63/7 64/15 66/21 68/2
69/18 73/14 76/5 79/20 80/1 80/2 82/3 122/7
**titled [2]** 37/21 89/10
**today [7]** 14/6 14/9 14/11 87/14 88/5 110/6
110/10
**told [12]** 6/14 7/9 21/8 21/9 90/7 102/4 103/6
103/23 104/1 107/13 108/7 110/12
**too [3]** 54/18 93/17 93/18
**took [9]** 8/15 19/5 85/16 86/11 86/15 86/20
87/12 107/13 118/13
**top [30]** 30/14 31/20 32/14 36/17 42/19 42/22
44/21 46/14 47/1 48/25 49/6 53/23 57/14
57/24 59/4 59/17 61/22 66/12 67/20 68/6
69/21 70/10 71/15 71/18 72/20 72/25 73/17
75/6 76/9 82/7
**topics [1]** 87/21
**total [28]** 24/1 24/22 25/4 25/8 25/12 31/11
32/5 40/7 42/7 43/9 43/11 43/20 44/8 44/12
53/21 56/4 56/18 56/22 57/3 57/4 64/17 65/6
65/12 65/14 65/21 66/1 66/18 81/9
**totaled [1]** 39/12
**totals [1]** 44/9
**Touhy [8]** 6/5 6/14 6/18 6/21 7/3 7/10 8/7 9/13
**trace [10]** 37/2 38/15 39/7 39/14 50/12 51/4
51/17 63/2 99/3 99/5
**traceable [7]** 39/16 40/1 40/11 40/25 41/18
41/22 72/14
**traced [5]** 37/19 37/25 62/18
**tracing [7]** 26/1 40/14 44/20 52/10 57/13
66/23 69/19
**tracked [5]** 104/2 104/4 104/12 105/2 106/25
**Tran [11]** 64/14 64/18 67/23 70/9 70/13 74/17
81/6 83/6 83/22 83/24 109/1
**Tran's [2]** 66/24 69/19
**transaction [2]** 54/20 54/21
**transactions [2]** 100/16 100/25
**transcript [6]** 1/9 1/15 7/6 21/5 122/8 122/10
**transcripts [3]** 109/18 109/25 110/3
**transfer [26]** 11/8 28/16 32/16 38/19 40/24
41/7 41/9 41/15 50/19 51/8 51/21 51/22 54/25
63/17 67/19 70/24 71/1 71/2 71/15 71/18 75/3
75/6 76/15 76/18 78/15 80/13
**transferred [11]** 28/13 40/20 41/24 52/20
53/1 63/9 67/21 75/19 79/22 80/3 80/21
**transfers [19]** 27/6 27/21 32/23 33/16 34/24

## T

transfers... [14]  40/6 41/14 47/12 58/20 70/3 78/14 70/18 71/5 71/14 74/15 75/13 77/11 77/25 81/10
traveling [1] 14/2
trial [7] 1/12 105/17 105/20 108/7 111/6 111/9 111/20
true [16] 21/11 84/22 84/23 85/15 85/24 86/6 86/11 87/3 87/10 90/18 93/15 99/23 108/2 113/24 114/3 122/7
trust [40] 55/22 26/5 26/21 28/21 30/24 33/22 40/25 41/8 41/19 42/21 44/14 45/10 45/17 47/23 48/12 49/8 49/14 54/4 56/6 56/24 57/22 58/8 59/2 61/4 62/3 62/24 65/4 67/6 67/22 68/4 70/22 71/13 73/15 76/6 76/7 80/11 81/3 82/12 84/4 99/4
trustee [2] 18/21 18/22
trying [2] 99/18 117/2
turn [4] 29/9 38/8 40/17 42/1
Turning [3] 32/13 53/16 64/12
tweets [2] 13/1 13/4
twice [1] 10/2
two [61] 4/13 6/13 8/1 11/4 13/18 13/25 14/4 15/10 15/13 15/17 19/11 27/13 28/1 32/24 39/11 40/6 40/6 44/5 45/24 48/7 48/7 52/16 62/3 63/10 65/7 66/3 67/15 70/17 71/4 73/21 73/25 74/21 75/12 75/20 79/23 81/9 87/24 90/11 91/19 92/3 93/15 93/23 94/2 95/18 95/20 96/9 96/22 97/11 97/19 102/23 103/3 104/25 105/4 108/2 108/3 108/6 108/7 116/13 118/13 120/11 120/14
two-page [3] 52/16 63/10 79/23

## U

U.S [4] 8/1 93/22 94/3 122/16
ultimately [1] 62/24
under [12] 4/15 8/24 18/23 19/24 20/5 22/16 30/6 31/3 31/4 43/1 81/19 120/22
undercuts [1] 10/12
underlying [1] 24/15
understand [11] 5/13 15/5 22/15 64/4 86/15 93/10 103/10 103/19 103/20 106/2 106/4
understanding [8] 9/5 9/7 43/24 64/3 88/15 104/24 104/25 105/2
understood [7] 7/18 12/15 78/22 98/17 101/5 101/19 104/4 105/9 105/14 105/17 105/19
UNITED [14] 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10 4/3 4/6 23/1 23/4 122/7 122/11
unlike [1] 115/1
until [5] 4/20 9/10 69/4 115/5 118/24
up [28] 8/5 17/18 23/20 27/15 28/16 29/11 30/2 31/19 32/14 32/20 34/25 36/14 42/16 44/17 46/9 47/15 54/14 54/15 55/4 57/9 57/23 58/21 66/10 70/14 72/24 77/21 115/5
upper [1] 26/2
upwards [1] 17/18
us [11] 5/5 13/4 14/18 17/24 20/8 23/4 23/9 42/2 42/19 92/11 113/16
USA [3] 55/1 55/3 59/8 61/22 62/21
use [1] 39/3
used [8] 38/9 39/21 50/7 50/24 51/12 52/3 80/4 103/10
useless [1] 10/12
using [1] 24/21
usually [1] 114/24

## V

Vague [2] 99/1 115/2
valid [1] 9/4
Varani [3] 13/14 13/20 13/23
varies [1] 113/21
various [4] 58/15 71/9 71/14 82/24
verify [1] 100/18
version [5] 68/13 68/15 68/18 68/21 69/12
versions [1] 120/2
versus [2] 4/4 23/2
vertical [1] 37/8
very [15] 6/13 11/9 11/14 12/23 18/11 22/20 23/11 28/12 29/10 56/21 78/14 79/6 100/4
via [5] 93/24 96/3 96/4 116/6 116/8
violate [1] 10/7
virtually [1] 12/12
VOL [1] 1/12
vs [1] 1/10

## W

waiting [1] 12/24
walking [1] 40/2
want [12] 5/3 6/1 15/15 20/14 59/16 102/22 104/18 111/8 112/1 119/15 119/15 120/14
wanted [2] 113/1 95/21 100/5 100/5
wants [2] 15/21 18/5
warrant [2] 16/24 19/19
was [168]
wasn't [1] 117/15
way [5] 7/23 9/21 95/25
Waypoint [4] 64/2 64/3 64/6 78/19
we [149]
We'll [2] 118/21 118/21
we're [3] 22/13 95/12 119/22
we've [2] 115/5 120/5
web [2] 82/23 82/24
Wednesday [1] 116/12
week [5] 4/20 50/19 92/3 118/10 118/10
weekend [3] 11/13 14/20 22/1
weeks [4] 6/13 8/1 118/13 120/1
welcome [1] 22/2
well [5] 5/20 7/24 8/19 9/10 9/24 10/8 10/15 11/12 15/24 18/13 22/11 24/13 26/23 30/5 54/11 78/5 87/12 88/22 91/18 92/14 92/18 94/15 94/18 99/18 102/4 104/24 111/16 113/11 115/15 117/17
Welsh [1] 32/10
went [4] 16/16 17/16 53/14 117/7
were [78] 6/9 8/1 8/17 8/17 9/4 9/6 9/12 9/13 11/2 11/8 16/23 17/17 17/19 20/8 21/8 22/24 23/22 24/11 25/21 25/22 27/5 27/7 27/17 36/22 39/14 48/17 48/19 49/25 56/16 56/24 62/23 62/24 67/8 67/24 69/11 70/18 73/4 73/21 82/4 83/16 88/9 90/6 94/18 95/11 95/15 95/17 96/3 96/7 96/8 96/8 96/12 96/17 97/12 97/24 98/1 98/4 98/7 98/8 98/12 98/24 99/5 99/9 99/23 100/10 102/12 102/18 102/21 102/24 106/24 110/16 110/22 111/13 111/15 112/5 114/17 117/19 119/9
weren't [3] 19/7 120/1 120/25
West [1] 1/20 2/11 35/2
what [262]
what's [3] 14/2 16/7 72/23
whatever [2] 20/7 20/14
when [24] 7/7 7/14 9/6 16/23 22/12 33/14 33/15 57/1 58/10 65/14 82/13 83/1 86/11 86/15 86/20 88/18 92/1 92/9 98/17 100/15 101/7 101/18 116/10 118/6
where [20] 13/25 15/13 16/9 16/9 16/10 16/24 17/5 17/6 17/17 30/21 38/21 39/14 43/7 55/15 95/8 96/9 104/12 116/15 118/6 118/15
wherein [1] 90/3
whether [9] 5/7 9/3 12/7 14/20 15/4 24/10 92/12 93/7 96/3
which [39] 6/22 9/3 10/13 10/23 11/4 13/8 15/16 17/21 18/2 18/9 18/24 24/2 37/12 40/4 42/2 43/8 45/25 50/15 51/19 53/16 54/8 57/3 62/5 62/11 63/15 63/23 64/12 67/7 70/18 80/4 82/24 83/13 98/12 104/5 114/23 119/23 120/1 120/3 120/19
while [3] 19/1 90/12 96/7
Whiteside [4] 43/3 49/7 49/22 53/14
who [34] 7/16 17/19 25/3 55/2 55/4 59/20 60/8 66/14 73/7 83/18 83/25 88/18 88/23 88/25 89/12 91/6 94/8 97/11 98/25 99/15 99/17 99/20 101/24 102/1 102/6 105/15 106/24 111/4 112/11 112/13 114/14 117/7 117/17 117/25
whole [2] 12/19 44/17 57/9
wholesome [1] 13/9
whose [1] 82/13 113/3
will [19] 11/13 11/25 12/18 12/22 14/22 16/2 17/11 22/22 23/9 46/6 54/12 69/1 69/2 69/6 100/21 101/12 118/4 119/23 121/2
wire [11] 11/17 21/14 55/2 55/7 70/3 70/18 70/21 74/23 74/24 78/14 81/9
wires [2] 67/12 74/21
withdraw [3] 53/7 74/1 75/8
withdrawal [13] 30/19 31/7 31/15 45/17 59/18 59/20 60/3 75/5 75/10 75/15 75/16 76/24 77/3
withdrawals [5] 27/17 30/16 59/14 60/13 75/20
withdrawn [9] 27/12 27/25 39/13 45/9 45/21 47/17 53/1 58/8 58/15
withdraws [7] 29/4 29/7 30/9 33/11 48/7 70/7 74/8
withdrew [2] 38/20 40/8
withheld [1] 119/7
within [6] 19/21 59/13 90/5 111/13 111/13 120/4
without [5] 6/22 31/10 78/7 89/21 96/5
witness [22] 4/14 5/5 5/6 5/12 5/17 10/7 10/9 15/11 23/15 31/21 42/18 50/5 63/6 82/2 85/1 105/16 109/3 111/14 118/16 119/18 119/22 120/22
witness's [1] 12/12
witnesses [6] 3/4 3/11 8/25 12/7 105/15 111/17
word [1] 103/16
worded [1] 9/21
work [14] 87/23 88/2 90/22 91/1 91/10 93/1 99/16 99/21 108/6 108/17 119/20
worked [4] 106/5 112/8 112/11 112/12
working [7] 90/12 91/18 95/16 113/1 114/5 117/19 119/18
works [1] 115/15
would [63] 4/14 4/20 4/23 7/2 7/20 8/20 10/16 12/1 14/4 14/5 15/3 15/18 21/24 22/3 25/4 25/16 25/18 31/2 31/19 36/13 40/17 45/24 52/21 54/17 63/5 72/23 75/19 75/21 79/17 80/2 81/25 85/9 89/16 91/5 91/14 92/4 92/11 93/1 95/8 96/9 96/12 96/14 96/15 96/16 96/18 97/4 97/7 97/14 97/14 97/15 97/21 97/23 98/1 98/4 98/11 107/4 107/19 112/23 113/13 113/16 114/16 119/5 119/25
wouldn't [1] 40/2
writing [1] 11/21 95/9
written [2] 94/24 103/16
wrong [1] 21/3
WYMAN [6] 2/5 4/6 23/3 23/14 94/9 117/7

## X

X-Law [4] 45/10 45/12 48/8 58/19

## Y

Yeah [1] 116/9
year [2] 114/10 120/4
years [21] 15/17 19/8 19/8 87/24 90/12 91/19 92/3 93/15 93/23 94/2 95/18 95/20 96/9 96/22 97/12 97/19 103/10 110/7 114/8 115/9
yellow [5] 26/5 26/9 26/15 49/13 82/9
yes [124]
yesterday [9] 13/16 13/21 23/21 88/5 94/20 109/20 109/21 109/24 116/1
you [376]
you're [5] 12/14 65/14 84/17 89/22 96/5
you've [1] 92/5
your [156]
yourself [2] 114/14 118/15

## Z

zero [12] 29/2 29/23 44/12 48/1 48/13 53/15 56/23 59/7 64/11 65/20 68/11 73/20
zeroed [1] 33/15
zoom [4] 49/18 62/13 74/2 82/20

# Exhibit B

**REDACTED**