UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

MICHAEL AVENATTI,

Defendant.

**MEMORANDUM
OPINION & ORDER**

(S1) 19 Cr. 373 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

A jury convicted Michael Avenatti of transmitting interstate communications with intent to extort, in violation of 18 U.S.C. § 875(d) (Count One); Hobbs Act extortion, in violation of 18 U.S.C. § 1951 (Count Two); and honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346 (Count Three).  (Verdict (Dkt. No. 265))

On July 8, 2021, this Court imposed an aggregate sentence of 30 months' imprisonment and three years' supervised release.  (Judgment (Dkt. No. 339))  Because of inadequate briefing, this Court deferred decision on the Government's application for an order of restitution.  (Sentencing Tr. (Dkt. No. 341) at 47-48; Judgment (Dkt. No. 339) at 7)  The parties have made supplemental submissions addressing restitution (July 14, 2021 Govt. Supp. Ltr. (Dkt. No. 338); July 21, 2021 Def. Supp. Ltr. (Dkt. No. 340)), and this Court now has an adequate record on which to base a decision regarding restitution.

## **BACKGROUND**[1]

I. **AVENATTI's EXTORTION OF NIKE**

Avenatti's offenses arise from his representation of Gary Franklin, the coach of an amateur youth basketball program sponsored by Nike.  After the 2018 season, Nike withdrew its

---

[1]  The evidence is discussed at length in this Court's July 6, 2021 Memorandum Opinion & Order.  (Dkt. No. 336)  Familiarity with that opinion is assumed.

sponsorship of Franklin's youth basketball program.  Franklin claimed that he had lost the sponsorship because of his refusal to engage in the corrupt acts of certain Nike employees, including improper payments to players' families and handlers, and the submission of falsified invoices to Nike.  (Trial Transcript ("Tr.") 266, 716, 1520, 1528-30, 1622-32)  Franklin sought assistance from Jeffrey Auerbach, whose son Franklin had coached.  (Tr. 1530-31, 1634-36)  On or around March 1, 2019, Auerbach contacted Avenatti about assisting Franklin in regaining his Nike sponsorship and repairing his relationship with Nike.  (Tr. 713-15, 900, 1534-36)  On March 4, 2019, Avenatti recruited  a well-known Los Angeles lawyer – Mark Geragos – to assist him in approaching Nike regarding Franklin's claims.  (Tr. 199, 1854; GX 103A)

On March 12, 2019, Geragos contacted Casey Kaplan, a lawyer he knew in Nike's legal department, about Franklin's claims.  (Tr. 201, 1856; GX 206)  After speaking with Geragos, Kaplan reported the substance of their conversation with Robert Leinwand, Nike's vice president and chief litigation officer, who agreed to meet with Geragos and Avenatti.  (Tr. 1125, 1128, 1146-50)  Nike's outside counsel – Scott Wilson, a partner at Boies Schiller Flexner LLP – contacted Geragos, who told Wilson that Nike had an "Adidas problem."  (Tr. 203-04)  Wilson – who understood Geragos to be asserting that Nike was involved in corrupt activities in amateur youth basketball – arranged a March 19, 2019 meeting to be attended by Geragos, Avenatti, Wilson, and Leinwand, at which Franklin's claims would be discussed.  (Tr. 199-204, 207-08, 1855)

On March 19, 2019, Avenatti and Geragos met with Wilson, Benjamin Homes – a Boies Schiller associate – and Leinwand at Geragos's New York offices.  (Tr. 208, 1138-39, 1149-50, 1414)  At the meeting, Avenatti told the Nike lawyers that he represented a whistleblower who could expose corruption in Nike's amateur youth basketball program, and he

shared certain confidential documents Franklin and Auerbach had provided to him.  (Tr. 211, 253, 272)  Avenatti stated that if Nike did not agree to (1) pay a $1.5 million settlement to Franklin; and (2) hire Avenatti and Geragos to conduct an internal investigation at Nike, he would hold a press conference the next day that "would take billions of dollars off the company's market cap."  (Tr. 217-18, 242-44, 265, 1157, 1244, 1418-20)

Nike's lawyers had been in contact with the U.S. Attorney's Office for the Southern District of New York in connection with Nike's response to a grand jury subpoena, and they contacted the U.S. Attorney's Office soon after their meeting with Avenatti and Geragos. (Tr. 272, 1139, 1296)  Avenatti's subsequent interactions with the Nike lawyers were recorded by agents of the Federal Bureau of Investigation (the "FBI").  (Tr. 272-75, 282, 285-86, 303-04; GX 1, 2, 3, 4)  Those interactions included a March 19, 2019 call with Wilson, and a March 21, 2019 meeting at Geragos's New York office.

At the outset of the March 21, 2019 meeting, Avenatti handed Wilson a draft settlement agreement and general release.  (GX 2 at 14:00-14:35)  Avenatti demanded the Nike pay him and Geragos a $12 million retainer to conduct an internal investigation at Nike.  The internal investigation would range in cost from a minimum of $15 million to a maximum of $25 million.  (Id. at 17:36-17:57)  Later in the meeting, Avenatti told Wilson that Nike could forego an internal investigation, and obtain "full confidentiality," if it agreed to pay him and Geragos $22.5 million.  He and Geragos would then "ride off into the sunset."  (Id. at 34:12-35:01) Avenatti, Geragos and Wilson agreed to meet again at noon on March 25, 2019, at Boies Schiller's office.  At that meeting, Nike would inform Avenatti whether it agreed to his demands. (Id. at 38:35-55, 1:01:17-28)  Avenatti was arrested on March 25, 2019, in the vicinity of the Boies Schiller office building in Hudson Yards.  (Tr. 1840-41, 1897; GX S-1)

## II.   <u>NIKE'S INVOLVEMENT IN THE PROSECTION OF AVENATTI</u>

The Indictment in this case was filed on May 22, 2019.  (Dkt. No. 8)

In response to Government subpoenas, Nike produced relevant documents to the

Government, which were then shared with Avenatti pursuant to a protective order.  (<u>See</u> Am.

Protective Order (Dkt. No. 44))  In September 2019 – pursuant to Fed. R. Crim P. 17(c) –

Avenatti sought permission to serve a subpoena <u>duces</u> <u>tecum</u> on Nike seeking the production of

additional documents.  (Dkt. Nos. 50-52)  On behalf of Nike, Boies Schiller moved to quash the

subpoena.  (Dkt. No. 58)  The Government separately opposed Avenatti's request to subpoena

Nike.  (Dkt. No. 62)  Avenatti later subpoenaed five Nike employees to testify at trial.  Nike also

moved to quash those subpoenas.  (Dkt. Nos. 114, 115, 227, 228, 229, 246, 247)

In January 2020, Boies Schiller moved to quash a subpoena <u>duces</u> <u>tecum</u> in which

Avenatti sought documents from both Nike and Boies Schiller.  (Dkt. No. 138)

Because the Government's witnesses at trial included Nike's in-house counsel and

outside lawyers, Boies Schiller moved pursuant to Fed. R. Evid. 502(d) for an order stating that

the testimony of these lawyers would not result in a waiver of Nike's attorney-client and work

product privileges.  (Dkt. No. 217)

Boies Schiller also worked to help prepare Nike witnesses for their trial

testimony, including both Nike employees and Boies Schiller lawyers who had represented Nike.

Boies Schiller lawyers attended nearly every pretrial conference as well as the trial, including

<u>voir</u> <u>dire</u> and jury deliberations.

## III.   <u>RELEVANT SENTENCING SUBMISSIONS</u>

On May 13, 2020, the Probation Office issued its Presentence Investigation

Report for Avenatti.  (Dkt. No. 295)  The report states that "[r]estitution is not an issue."  (<u>Id.</u> ¶¶

145-46; <u>see also</u> <u>id.</u> at page 44 (noting restitution is "[n]ot applicable" and "[n]ot recommended"))

On June 16, 2021, the Government filed a sentencing brief, which includes a request for restitution as to Nike, but not as to Franklin.  (Govt. Br. (Dkt. No. 321) at 17-19)  The Government appended a victim impact statement from Nike, prepared by Boies Schiller.  (Dkt. No. 321-1)  The Government contends that Nike is entitled to restitution based on "the attorneys' fees [Nike] has incurred in connection with its cooperation with the Government's investigation and prosecution of this case."  (Govt. Sent. Br. (Dkt. No. 321) at 18)  "Nike conservatively estimate[d] those costs to be at least $1 million."  (<u>Id.</u>; <u>see also</u> Nike Victim Stmt. (Dkt. No. 321-1) at 6)  Avenatti requested an adjournment of his sentencing – then scheduled for June 30, 2021 – to address the Government's restitution request.  (Dkt. No. 324)

On June 23, 2021, the Court ordered the parties to submit "additional briefing and billing records demonstrating that the fees sought fall within recoverable categories, as set forth in <u>Lagos [v. United States</u>, 138 S. Ct. 1684 (2018)]" so that the Court could "determine what amount, if any, of Nike's attorneys' fees are subject to restitution."  (Dkt. No. 326)

On June 25, 2021, the Government filed a supplemental letter regarding restitution (Dkt. No. 329), along with a letter from Nike addressing restitution (Dkt. No. 329-1). Nike sought restitution of $1 million for attorneys' fees billed by Boies Schiller, claiming that it is entitled to restitution for work performed in connection with the following matters:

1. Assisting in the [G]overnment's investigation of Mr. Avenatti, including participating in recorded meetings and calls, conferring with the prosecutors and the FBI, and responding to the government's requests for documents and information;

2. Preparing Nike and [Boies Schiller] witnesses for interviews by the [G]overnment and to testify at Mr. Avenatti's trial;

3. Analyzing court filings and engaging in motion practice;

4. Attending hearings and the trial;

5. Addressing Mr. Avenatti's ongoing assault on Nike following his arrest, which is described in detail in Nike's Victim Impact Statement (Dkt. 321, Ex. A); and

6. Representing Nike in connection with sentencing and restitution.

(June 25, 2021 Nike Ltr. (Dkt. No. 329-1) at 3-4)[2]  In support of its application, Nike submitted a summary of the billable rates for the attorneys and non-legal staff who worked on the matter, the amounts paid by Nike, and monthly diary entries from Boies Schiller lawyers and non-legal staff, which Boies Schiller "redacted to remove privileged information and entries for which Nike does not seek restitution."  (Id.)  The diary entries submitted total more than 100 pages.  (See Dkt. No. 329-4)

Avenatti filed his opposition on July 1, 2021.  (July 1, 2021 Def. Ltr. (Dkt. No. 332))  Avenatti objects to Nike's restitution request, arguing that "Nike is not a 'victim'" that is entitled to recover legal expenses, and that the expenses for which Nike seeks reimbursement "were obviously not 'necessary.'"  Avenatti also complains that the Boies Schiller lawyers and staff engaged in block billing, which makes it impossible to segregate recoverable expenses from those that are not.  (July 1, 2021 Def. Ltr. (Dkt. No. 332) at 1-2)  Finally, Avenatti annotated the Boies Schiller diary entries with a series of specific objections.  (Id., Ex. 1 (Dkt. No. 332-1))

Avenatti was sentenced on July 8, 2021.  (Dkt. Nos. 339, 341)  Pursuant to 18 U.S.C. § 3664(d)(5), the Court deferred decision on the Government's application for restitution for 90 days.[3]  The Court explained that an appropriate restitution award could not be determined at that time because of inadequate submissions from the Government and from Nike:

---

[2]  Nike claimed that "at least $1,705,116.45 is properly collectible as restitution, of which Nike seeks restitution only for $1 million."  (June 25, 2021 Nike Ltr. (Dkt. No. 329-1) at 5)
[3]  Section 3664(d)(5) provides that "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or probation officer shall so

As to Nike, the submissions to date are not adequate to permit me to make a determination as to restitution. The billing records submitted in support of the application have been redacted in such a way to make it impossible to determine whether the fees sought fall within the recoverable categories as set forth in Lagos v. United States, 138 S. Ct. 1684 (2018).

Moreover, Nike seeks recovery for expenses that do not fall within recoverable categories. As I stated in a June [23rd], 2021 order, courts in this district have "interpreted Lagos as limiting restitution to expenses incurred for investigatory activities that the government expressly and specifically invited or requested." . . . But Nike seeks to recover fees for, among other things, Avenatti's ongoing assault on Nike following his arrest." . . . Avenatti's post-arrest "assault on Nike" cannot have had any bearing on the government's prosecution of Avenatti, nor is there any reason to believe the government "specifically invited and requested" that Nike address Avenatti's post-arrest attack on the company.

In sum, the papers submitted by Nike provide an example of what is not appropriate under Lagos[,] where the Supreme Court stated that the restitution statute should be narrowly construed to relieve the district courts from the "significant administrative burdens" of resolving "potentially time-consuming controversies as part of criminal sentencing[,]" particularly "in cases involving multimillion dollar investigation expenses

---

inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. §3664(d)(5). The Second Circuit has noted, however, that "the purpose behind the statutory ninety-day limit on the determination of victims' losses is not to protect defendants from drawn-out sentencing proceedings or to establish finality; rather, it is to protect crime victims from the willful dissipation of defendants' assets." United States v. Zakhary, 357 F.3d 186, 191 (2d. Cir. 2004). An extension of the 90-day statutory period is permitted "unless the defendant can show that the extension caused him actual prejudice." United States v. Douglas, 525 F.3d 225, 253 (2d Cir. 2008) (rejecting challenge to four-day extension); see also United States v. Ebrahim, No. 12 CR. 471 JPO, 2013 WL 2216580, at *2 (S.D.N.Y. May 21, 2013) (issuing an order approximately four months after the statutory period had ended, over the defendant's objection).

Here, the Government – on behalf of Nike – requested that payment of any restitution award be delayed until "any individual victims in the defendant's other pending cases are paid restitution, if ordered." (July 14, 2021 Govt. Supp. Ltr. (Dkt. No. 338) at 1) The other case pending in this District – United States v. Avenatti, No. 19 Cr. 374 (S.D.N.Y.) (JSF) – went to trial only recently, and ended in a guilty verdict on February 4, 2022. (Avenatti, No. 19 Cr. 374 (S.D.N.Y.) (JSF), Verdict Form (Dkt. No. 371) at 9)) Sentencing is scheduled for May 24, 2022. (Avenatti, No. 19 Cr. 374 (S.D.N.Y.) (JSF), (Dkt. No. 372)) The third criminal case against Avenatti – United States v. Avenatti, No. 19 Cr. 0061 (C.D. CA) (JVS) – ended in a mistrial on August 24, 2021, and that case is currently on appeal. No new trial date has been set. (Avenatti, No. 19 Cr. 0061 (C.D. CA) (JVS), (Dkt. Nos. 780, 852, 866)) Given these circumstances, this Court will not further delay the determination of restitution in the instant case.

for teams of lawyers." Citing <u>Lagos</u>, 138 S. Ct. at 1689. I will give the government and Nike another opportunity to make a submission as to restitution that complies with <u>Lagos</u>.

(Sentencing Tr. (Dkt. No. 341) at 46-48)

   The Government submitted a letter prepared by Nike's counsel, which states that Nike is seeking only $856,162 in attorneys' fees. (June 14, 2021 Nike Supp. Ltr. (Dkt. No. 338-1)) Avenatti also submitted supplemental briefing. (Dkt. No. 340)

## ANALYSIS

## I.  LEGAL STANDARD

   The Mandatory Victims Restitution Act (the "MVRA") provides that a defendant convicted of a referenced offense, including extortion, must "reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4).[4] Recoverable "'other expenses' include attorneys' fees that a 'victim was required to incur to advance the investigation or prosecution of the offense.'" <u>United States v. Afriyie</u>, No. 16-CR-377 (PAE), 2020 WL 634425, at *1 (S.D.N.Y. Feb. 11, 2020) (quoting <u>United States v. Maynard</u>, 743 F.3d 374, 381 (2d Cir. 2014)). To be recoverable as "other expenses" under the MVRA, a victim's attorneys' fees must be "necessary" and "incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." <u>United States v. Amato</u>, 540 F.3d 153, 161 (2d Cir. 2008) (internal quotation marks and citations omitted).

---

[4] For purposes of the MVRA, "the term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2).

In <u>Lagos v. United States</u>, 138 S. Ct. 1684 (2018), the Supreme Court found that –
while restitution is allowed for expenses incurred by a victim in connection with assisting
"government investigations and criminal proceedings" – recoverable expenses do not include
"the costs of a private investigation that the victim chooses on its own to conduct." <u>Lagos</u>, 138
S. Ct. at 1690. <u>Lagos</u> thus "limit[s] restitution to expenses incurred for investigatory activities
that the government expressly and specifically 'invited or requested.'" <u>United States v. Napout</u>,
No. 15-CR-252 (PKC), 2018 WL 6106702, at *4 (E.D.N.Y. Nov. 20, 2018); <u>accord</u> <u>United
States v. Razzouk</u>, No. 11-CR-430 (ARR), 2021 WL 1422693, at *5 (E.D.N.Y. Apr. 15, 2021)
(requiring specific request by Government for investigative assistance; incidentally "helping and
contributing to the government's investigation [is] not enough to trigger mandatory restitution
under § 3663A(b)(4)"); <u>see</u> <u>also</u> <u>United States v. Mobley</u>, 971 F.3d 1187, 1206-08 (10th Cir.
2020) (in international kidnapping case, denying restitution for attorneys' fees incurred in
returning victim's children to the United States; noting that "[t]here is no evidence that the
government directed or sanctioned this action," or that this action assisted the Government in its
investigation and prosecution).

Courts in this District have identified three categories of legal expenses for which
a corporate victim may seek restitution:  (1) responding to subpoenas and requests from the
Government in connection with assisting in the prosecution; (2) preparation of witnesses who
testify at trial; and (3) preparation of materials in support of a post-verdict request for restitution.
<u>See</u> <u>Afriyie</u>, 2020 WL 634425, at *2.

"[D]ispute[s] as to the proper amount or type of restitution . . . [are resolved
pursuant to] the preponderance of the evidence [standard]."  18 U.S.C. § 3664(e).  The

Government bears the "burden of demonstrating the amount of the loss sustained by a victim as a result of the offense."  Id.

## II.    **ANALYSIS**

The Government argues that Nike – as the victim of Avenatti's extortion scheme – is entitled to restitution for "the attorneys' fees it . . . incurred in connection with its cooperation with the Government's investigation and prosecution of this case."  (Govt. Sent. Br. (Dkt. No. 321) at 18)  "[T]he Government requests that the Court order restitution in the amount of $856,162, to be paid only after any individual victims in the defendant's other pending cases are paid restitution, if ordered, as sought by Nike."  (July 14, 2021 Govt. Supp. Ltr. (Dkt. No. 338))

As discussed above, Nike now seeks restitution of $856,162 for attorneys' fees it paid to Boies Schiller for work performed in connection with the following matters:

(1) Assisting in the [G]overnment's investigation of Mr. Avenatti, including participating in recorded meetings and calls, conferring with the prosecutors and the FBI, and responding to the [G]overnment's requests for documents and information;

(2) Preparing Nike and [Boies Schiller] witnesses for interviews by the [G]overnment and to testify at Mr. Avenatti's trial;

(3) Analyzing court filings and engaging in motion practice;

(4) Attending hearings and the trial; and

(5) Representing Nike in connection with [Mr. Avenatti's] sentencing and [in seeking] restitution.

(July 14, 2021 Nike Supp. Ltr. (Dkt. No. 338-1) at 1)

In its June 25, 2021 letter to the Court, Nike acknowledged that the categories of work for which it sought restitution were not "coextensive" with the permissible categories identified in Afriyie.  Nike argued, however, that the categories for which it sought restitution

"are permissible under the MVRA for similar reasons that the categories of work analyzed in that case were permissible." (June 25, 2021 Nike Ltr. (Dkt. No. 329-1) at 4 (citing <u>Afriyie</u>, 2020 WL 634425, at *2); <u>see</u> <u>also</u> July 14, 2021 Nike Supp. Ltr. (Dkt. No. 338-1) at 4)

Avenatti contends that no restitution award for attorneys' fees is appropriate for the following reasons:

(1) Nike is not a "victim" for purposes of the MVRA, because pecuniary loss is a necessary predicate for a restitution award, and Nike did not "suffer an actual pecuniary loss as a direct result of the offenses of conviction";

(2) the attorneys' fees that Nike incurred were for services that were not (a) requested or invited by the Government, or (b) necessary for purposes of assisting in the Government's investigation and prosecution of him; and

(3) the attorneys' fees are not reasonable,

(July 1, 2021 Def. Ltr. (Dkt. No. 332) at 1-7; July 21, 2021 Def. Supp. Ltr. (Dkt. No. 340) at 1-3)[5]  As noted above, Avenatti has also annotated the Boies Schiller time records with specific objections. (July 1, 2021 Def. Ltr., Ex. 1 (Dkt. No. 332-1) at 2)

---

[5] Avenatti's complete list of general objections is as follows:

Objection 1:  There is no evidence that these activities were required or requested by the government.  Further, the total amount billed for the tasks identified is not reasonable.

Objection 2:  Nike is not permitted to recover for fees for time spent on tasks that are redacted and not fully disclosed.

Objection 3:  Nike may not recover for time spent relating to press and media relations, including time spent monitoring and responding to Mr. Avenatti's exercise of his right to free speech after his arrest on the morning of March 25, 2019.  This is especially true because of the USAO-SDNY press conference held on March 25, 2019 and Nike's public statements after Mr. Avenatti's arrest; Mr. Avenatti had a First Amendment right at all times to publicly defend himself.

Objection 4:  Nike may not recover for any expenses or fees incurred before the government's investigation or prosecution began.

### A.   Whether Nike Is a Victim For Purposes of the MVRA

Avenatti contends that Nike is not a "victim" for purposes of the MVRA because it has not suffered a direct pecuniary loss.  (July 1, 2021 Def. Ltr. (Dkt. No. 332) at 1-3; July 21, 2021 Def. Supp. Ltr. (Dkt. No. 340) at 1)  According to Avenatti, proof of a direct pecuniary loss is a necessary predicate to a victim recovering "other expenses" under 18 U.S.C. § 3663A(b)(4). (July 1, 2021 Def. Ltr. (Dkt. No. 332) at 1-2)

In support of this argument, Avenatti cites United States v. Xue, No. 16-22, 2021 WL 2433857 (E.D. Pa. June 15, 2021), appeal filed, United States v. Tao Li, No. 21-2228 (3d Cir. 2021), in which the court ruled that GlaxoSmithKline was not entitled to restitution for its legal expenses in responding to a subpoena, because it had suffered no pecuniary loss in connection with the theft of trade secrets that was the premise for the prosecution.  The Xue court held that a victim could not recover attorneys' fees as "other expenses" under the MVRA absent a direct pecuniary loss resulting from the offense of conviction.  Xue, 2021 WL 2433857, *4 & n.3.

In reaching this conclusion, Xue rejected United States v. Kuruzovich, No. 09 Cr. 824 (DC), 2012 WL 1319805, *4-5 (S.D.N.Y. Apr. 13, 2012), in which Judge Chin – sitting by designation – found that legal expenses incurred by a victim company in connection with a Government investigation and prosecution constitute a "pecuniary loss."  The Xue court rejected "Kuruzovich – and the Second Circuit precedent it relied upon – [because it] predate[s] the

---

Objection 5:  Includes time spent on tasks that Nike expressly stated in its letter it was not seeking reimbursement for (ECF 329-1:5).

(July 1, 2021 Def. Ltr., Ex. 1 (Dkt. No. 332-1) at 2)  Nike has withdrawn its request for restitution as to expenses that are the subject of Avenatti Objections Two through Five, including "any [fee] entries that relate in any way to press, news media, or Twitter monitoring or analysis." (July 14, 2021 Nike Supp. Ltr. (Dkt. No. 338-1) at 3)

United States Supreme Court's decision in Lagos, where the Court held that the language in

§ 3663A(b)(4) should be narrowly interpreted." Xue, 2021 WL 2433857, at *6 (citing Lagos,

138 S. Ct. at 1689).

Kuruzovich relies on United States v. Amato, 540 F.3d 153 (2d Cir. 2008), in

which the Second Circuit rejected a defendant's argument "that 'other expenses' cannot

encompass attorney fees and accounting costs because such expenses amount only to indirect or

consequential damages, whereas restitution is limited to direct harm." Amato, 540 F.3d at 161.

The court's reasoning is as follows:

> Defendants perpetrated a complicated fraud against a large corporation and a number of
> its clients, as well as the states to which those clients were required to turn over escheated
> funds. That this fraud would force the corporation to expend large sums of money on its
> own internal investigation as well as its participation in the government's investigation
> and prosecution of defendants' offenses is not surprising. There is no doubt that [the
> victim corporation's] attorney fees and auditing costs were a direct and foreseeable result
> of defendants' offenses.

Id. at 162. The same logic applies here: the attorneys' fees Nike incurred in assisting the

Government's investigation and prosecution of Avenatti's crimes "were a direct and foreseeable

result of [his] offenses." (Id.)

Lagos abrogates Amato to the extent that Amato authorizes the recovery of

attorneys' fees expended in connection with an internal investigation, see Lagos, 138 S. Ct. at

1688, but Lagos does not call into question Amato's ruling that attorneys' fees expended in

assisting a government investigation or prosecution are recoverable under the MVRA as a direct

cost.

The issue before the Lagos court was quite narrow: the Supreme Court was called

upon to "decide whether the words 'investigation' and 'proceedings' [as used in the MVRA] are

limited to government investigations and criminal proceedings, or whether they include private

13

investigations and civil proceedings."  The Court concluded that those words "are limited to government investigations and criminal proceedings."  (Id. at 1687)  Nothing in that holding or in the reasoning of Lagos undermines the Amato court's conclusion that attorneys' fees incurred in assisting a government investigation or prosecution are recoverable as direct costs under the MVRA.  See Razzouk, 2021 WL 1422693, at *3 ("The Supreme Court did not interpret the scope of 'other expenses' in Lagos but only interpreted the scope of 'investigation.'" (citing Lagos, 138 S. Ct. at 1687-88)).

Post-Lagos, courts in this District have continued to order restitution for attorneys' fees expended in assisting a government investigation or prosecution, even where the victim corporation did not suffer a loss flowing directly from the defendant's offense.  For example, in Afriyie, the victim corporation was awarded restitution for attorneys' fees it incurred in assisting the Government's investigation and prosecution of an employee who was convicted of insider trading.  Afriyie, 2020 WL 634425, at *2.  There is no suggestion in Afriyie that the corporate victim suffered a "direct provable loss" (July 1, 2021 Def. Ltr. (Dkt. No. 332) at 2) that flowed from the defendant employee's insider trading.

The Court concludes that Nike is a "victim" within the meaning of the MVRA, and that it is entitled to restitution for the reasonable attorneys' fees that it incurred in assisting in the Government's investigation and prosecution of Avenatti's crimes.

**B.      Whether the Attorneys' Fees that Nike Incurred Were "Necessary"**

Avenatti argues that "Nike has failed to establish that the government invited, required, or requested each of the activities for which Nike seeks reimbursement." (July 1, 2021 Def. Ltr. (Dkt. No. 332) at 4)  At sentencing, the Court agreed that Nike sought restitution for attorneys' fees that had not been expended on activities that were invited, required,  requested, or otherwise induced by the Government.  (Sentencing Tr. (Dkt. No. 341) at 47-48)  Nike has since withdrawn its request for restitution regarding certain categories of work, but argues that (1) the remaining expenses for which it seeks restitution qualify for recovery under the MVRA; and (2) it is not required to show that the Government required or requested the legal services for which it seeks restitution.  (July 15, 2021 Nike Supp. Ltr. (Dkt. No. 338-1) at 1, 4)

Nike relies on United States v. Gupta, 925 F. Supp. 2d 581, 585 (S.D.N.Y. 2013), aff'd, 747 F.3d 111 (2d Cir. 2014)), in which the court rejected defendant's argument that a victim "is entitled to restitution of only those fees it can demonstrate were necessarily incurred in connection with specific requests by the government or were otherwise required to be done in the investigation or prosecution." Id. (internal quotation marks and citations omitted).  The Gupta court determined that the Government proved "by a preponderance of evidence[] that nearly all of the expenses [the victim corporation] claims were the necessary, direct, and foreseeable result of the investigation and prosecution of Gupta's offense of conviction and thus well within the statute's coverage as interpreted by the Second Circuit," including expenses incurred during an internal investigation, work related to the advancement of legal fees for Gupta, and fees incurred during a post-verdict restitution proceeding.  Id.  Given Lagos, Gupta's formulation of what expenses are "necessary" under the MVRA is no longer good law.

This Court concludes that restitution under the MVRA is available for attorneys'
fees incurred in connection with services that were invited, required, requested, or otherwise
induced by the Government.  See Razzouk, 2021 WL 1422693, at *4 (holding that "the [legal]
costs covered" by the MVRA are "only those incurred 'at the government's request.'" (citations
omitted); Afriyie, 2020 WL 634425, at *2 (ordering restitution for attorney's fees incurred in
connection with responding to subpoenas, preparing witnesses to testify at trial, and preparing
restitution submission); see also Napout, 2018 WL 6106702, at *4 (denying restitution for fees
incurred by victim in connection with, inter alia, an internal investigation, because the
Government had not invited this investigation and victim was motivated by "self-preservation"
(internal quotation marks and citations omitted)); Mobley, 971 F.3d at 1206-08 (in international
kidnapping case, denying restitution for fees incurred in connection with rescue of children,
where such action was not invited by the Government and did not assist Government's
investigative or prosecutorial efforts).

Accordingly, to the extent that Nike seeks restitution for reasonable attorneys'
fees it incurred in (1) "participating in recorded meetings and calls, conferring with the
prosecutors and the FBI, and responding to the government's requests for documents and
information"; (2) "[p]reparing Nike and [Boies Schiller] witnesses for interviews by the
government and to testify at Mr. Avenatti's trial"; and (3) "[r]epresenting Nike in connection
with sentencing and restitution" (July 14, 2021 Nike Supp. Ltr. (Dkt. No. 338-1) at 1), these
expenses are recoverable under the MVRA.

Nike also seeks restitution for legal services that are not recoverable under the
MVRA, however, including attorneys' fees associated with "[a]nalyzing court filings and
engaging in motion practice," and "[a]ttending hearings and the trial."  (Id.)  "[N]ot every

16

category of attorney work product meets the essential burden in our circuit that the government show all charges were 'required to incur to advance the investigation or prosecution of the offense.'"  United States v. Cuti, 708 F. App'x 21, 24 (2d Cir. 2017) (summary order) (quoting Maynard, 743 F.3d at 381 and citing United States v. Hatfield, No. 06-CR-0550 (JS)(AKT), 2015 WL 13385926, at *13 (E.D.N.Y. Mar. 27, 2015) (denying restitution for legal fees for "attendance at proceedings, reviewing trial transcripts, generating memorand[a] and summaries of motion practice, and drafting press releases").

   For example, Nike requests reimbursement for attorneys' fees generated by several Boies Schiller attorneys who spent hours reviewing, analyzing, researching, and corresponding with Nike about Avenatti's motions to dismiss.  (Revised Nike Time Entries (Dkt. No. 338-2) at 3-4, 8-9), But there is no evidence that Boies Schiller's assessment of Avenatti's motions was invited, required, requested, or otherwise induced by the Government, much less that it was of use to the Government.  Nor has the Government demonstrated how Boies Schiller's review of motions in limine, the jury questionnaire, expert filings, post-trial motions, and other unidentified "SDNY filings" was invited, required, requested, or otherwise induced by the Government, or of use to the Government.  (Id. at 9-15, 17-18, 21-22)  Assuming arguendo that the presence of Nike's counsel in the courtroom was helpful to the Government when Nike's in-house and outside counsel were  testifying, the Government does not explain why it was "necessary" for Nike's counsel to be present for multiple pretrial hearings – in which counsel made no argument to the Court – or for the entire trial.  (Id. at 4, 16-21)  The Court concludes that Nike cannot recover for attorneys' fees it incurred for time spent (1) analyzing court filings and the motions referenced above; (2) attending pretrial conferences and portions of the trial during which Nike witnesses did not testify.

Nike also seeks to recover for attorneys' fees it incurred in moving to quash certain Rule 17(c) subpoenas Avenatti issued to Nike and Nike employees.  In these subpoenas, Avenatti sought documents and information regarding Nike's alleged corrupt role in amateur youth basketball.  (Dkt. Nos. 50, 58, 63, 114-15, 137-39, 191, 202, 225-29, 231-33, 247)  The Government moved to quash these same subpoenas, on relevance grounds.  (Dkt. No. 62)  As Nike admits, its motions to quash were aimed at preventing Avenatti from "obtain[ing] or introduc[ing] evidence relating to Nike's underlying conduct."  (July 14, 2021 Nike Supp. Ltr. (Dkt. No. 338-1) at 5)  "[A] corporation acting out of self-preservation cannot turn around and have its costs reimbursed through restitution."  Napout, 2018 WL 6106702, at *4 (internal quotation marks and citations omitted).

"That [Nike] is not entitled to the full amount of legal expenses claimed, however, does not beget the conclusion that the claim for legal expenses should be disallowed in its entirety," so long as the Court can "make a reasonable approximation of recoverable losses." Hatfield, 2015 WL 13385926, at *13 (citations omitted).  The expenses that the Court finds not "necessary" and thus unrecoverable pertain primarily to "[a]nalyzing court filings and engaging in motion practice" and "[a]ttending hearings and the trial."  (July 14, 2021 Nike Supp. Ltr. (Dkt. No. 338-1) at 1)

This Court's ability to accurately determine recoverable expenses is significantly handicapped by Boies Schiller's use of block billing for its time entries.  Block billing prevents the Court from segregating recoverable expenses from non-recoverable expenses.[6]  In awarding

---

[6]  The following two examples are representative:  In an entry for September 20, 2019, Boies Schiller bills Nike for one hour of time spent "[r]eview[ing] Avenatti response to Rule 17 letter and confer[ring] with client re same; email[ing] correspondence with SDNY."  (Revised Nike Time Entries (Dkt. No. 338-2) at 8)  And in an entry for December 10, 2019,  Boies Schiller bills Nike for 2.8 hours spent "[r]eview[ing] and analyz[ing] motions in limine filed by M. Avenatti;

attorneys' fees, "block billing is not preferred," and it is only permissible where "the records

allow the court to conduct a meaningful review of the hours requested." Restivo v. Hessemann,

846 F.3d 547, 591 (2d Cir. 2017) (citation omitted).

        Here, in many instances, no effort is made to attribute amounts of time to

particular tasks within the same billing entry. "If [Nike's] counsel had anticipated restitution,

they could have kept better track of their hours by implementing separate billing codes or stricter

time card narratives."[7] Cuti, 708 F. App'x at 24.

        This Court cannot now attempt to extricate recoverable expenses from non-

recoverable expenses in block-billing entries. Nor should it. The Supreme Court has sought to

relieve district courts from the "significant administrative burdens" of resolving "potentially

time-consuming controversies as part of criminal sentencing," particularly "in cases involving

multimillion dollar investigation expenses for teams of lawyers." See Lagos, 138 S. Ct. at 1689.

Having carefully reviewed the revised Nike time entries (see Dkt. No. 338-2), the Court has

subtracted from the total requested amount any entry that contains an unrecoverable expense.

The total expenses for which Nike can seek recovery amount to $259,800.50.[8]

---

review[ing] previous productions, discussions, and meeting notes to provide response to SDNY
open asks." (Id. at 11) Boies Schiller thus mixes and mingles recoverable expenses – i.e.,
communicating with the Government and responding to its requests – with non-recoverable
expenses – i.e., analyzing court filings and activity related to Nike's motion to quash.
[7] Nike contemplated a possible award of restitution as early as June 2019, as evidenced by the
following billing entry: "[c]onduct legal research regarding victims' rights statutes; draft and
revise memorandum regarding victims' rights statutes; emails with S. Wilson, P. Skinner, and A.
Michaelson regarding victims' rights statutes." (Revised Nike Time Entries (Dkt. No. 338-2) at
3)
[8] This amount reflects the exclusion of the following entries, identified by page and line number:
(Revised Nike Time Entries (Dkt. No. 338-2) at 2:1, 22; 3:12-14; 4:1, 3-8, 10-12; 5:1-6, 9-13,
15; 6:1-15; 7:1-3, 5, 7-15; 8:1-14; 9:8-10, 12-20; 10:1-2; 11:1-10, 12-15; 12:2-4, 7-9, 11-14, 18-
19; 13:1-18; 14:1-7, 9-13, 15-19; 15:1-2, 4-8, 10-11, 13-14, 16, 18-21; 16:1-7, 11-13, 16-20;
17:1-3, 5-6, 8-13; 18:1, 4, 7, 10, 14-15; 19:2-3, 6-7, 10, 12-14, 16-17; 20:2-5, 9-13, 18-19; 21:1-
15, 21; 22:2-3, 11-12, 23; 23:1, 3-7)

C.    **Whether Boies Schiller's Fees Are Reasonable**

Avenatti complains that Boies Schiller frequently staffed multiple lawyers on the same task, leading to unreasonably high bills.  (July 1, 2021 Def. Ltr. (Dkt. No. 332) at 5-6; July 21 Def. Supp. Ltr. (Dkt. No. 340) at 2)

"The Second Circuit has not yet ruled on the question of whether district courts have a duty to scrutinize the amount of attorneys' fees requested pursuant to the MVRA." Napout, 2018 WL 6106702, at *5 (internal quotation marks, citation, and alteration omitted). "However, courts in this circuit have reduced attorneys' fees in connection with restitution proceedings where they have 'exceeded what was reasonably necessary under the MVRA.'"  Id. at *5-6 (collecting cases); see also Gupta, 925 F. Supp. 2d at 587-88 (reducing restitution award by 10% where "the number of attorneys staffed on a task . . . exceeded what was reasonably necessary under the MVRA," even if the same staffing might be "perfectly appropriate on the assumption that [the corporate victim] wished to spare no expense on a matter of great importance to it").

Here, most of the entries in which multiple Boies Schiller attorneys billed dozens of hours for the same project involve review of pretrial briefs filed by Avenatti or the Government (see, e.g., Revised Nike Time Entries (Dkt. No. 338-2) at 4 (four attorneys reviewing Avenatti motion to dismiss and other filings)), or motion practice related to the motions to quash (see, e.g., id. at 15-16 (three attorneys drafting and editing reply brief)), which the Court has determined are unrecoverable expenses.  This argument is thus moot; no further reductions are necessary.

### D.      <u>Sequence of Restitution Payments</u>

The Government reports that Nike requests that any award of restitution "be paid only after any individual victims in the defendant's other pending cases [– <u>United States v. Avenatti</u>, No. 19 Cr. 374 (JMF) (S.D.N.Y.), and <u>United States v. Avenatti</u>, No. 19 Cr. 61 (C.D. Cal.) –] are paid restitution, if ordered."  (July 15, 2021 Govt. Supp. Ltr. (Dkt. No. 338); Govt. Sentencing Br. (Dkt. No. 321) at 18)  The restitution statute does not authorize the Court to create a schedule for restitution payments that takes into account a hypothetical restitution order in another case, in which no judgment of conviction has been entered.  Accordingly, the application is denied.

### CONCLUSION

For the reasons stated above, the total amount of expenses that Nike can recover is $259,800.50.  By **February 16, 2022**, the Government will submit a proposed order of restitution, including the address to which the Clerk of Court should forward any restitution payments.

Dated:  New York, New York
           February 14, 2022

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge